**ALEXANDER KRAKOW + GLICK LLP**
Michael S. Morrison (State Bar No. 205320)
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: 310.394.0888 | F: 310.394.0811
E: mmorrison@akgllp.com

Attorneys for Plaintiffs
individually, on behalf of themselves,
all others similarly situated,
and the general public.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, et al., on behalf of themselves and all others similarly situated and the general public,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | CASE NO.: 2:16-cv-08979-AB-AGR<br><br>*Assigned to Hon. André Birotte Jr.*<br><br>State Case No.: BC 627757<br>State Action Filed: July 20, 2016<br>Removal Date: December 5, 2016<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: July 10, 2020<br>Time: 10:00 am<br>Location: Crtm. 7B, 350 West First St.,<br>                Los Angeles, CA<br><br><br>Date: July 24, 2020<br>Time: 10:00 am<br>Location: Courtroom 7B<br>                350 West First Street.<br>                Los Angeles, California |

TO CVS PHARMACY, INC., CVS RX SERVICES, INC., GARFIELD BEACH CVS, LLC (collectively "CVS" or "Defendants"), AND THEIIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 24, 2020 at 10:00 a.m., or as soon thereafter as this matter may be heard in the United States District Court for the Central District of California - 350 West First Street, Los Angeles, CA  90012, Courtroom 7B, Plaintiffs Sevag Chalian, Sigfredo Cabrera, Enko Telahun, Christine McNeely, and Patrick Brennan ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their counsel of record, will and hereby do move for an order from the Court that:

1.      Provisionally certifies the following Settlement Classes for settlement purposes only consisting of persons who do not opt-out of this Settlement and who are members of the Pharmacist Settlement Class and/or the Retail Pharmacy Settlement Class immediately listed below:

> **Pharmacist Settlement Class**: All hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and the date of the Preliminary Approval Order, whose claims are not subject to arbitration and who have not previously released and/or adjudicated the Released Claims, and whose LEARNet and/or Site Minder data indicates activity when time punch records do not show he or she was clocked-in.
>
> **Retail Pharmacy Settlement Class**: Any person who is not a member of the Pharmacist Settlement Class who held an hourly, non-exempt position in a CVS retail pharmacy in the State of California between August 3, 2014 and the date of the Preliminary Approval Order who has not previously released and/or adjudicated the Released Claims.

1   2.     Grants preliminary approval of the Settlement reached in this matter,

2   including the Maximum Settlement amount of Nine-Million, Seven-Hundred and

3   Fifty Thousand Dollars ($9,750,000);

4   3.     Approves as to form the Notice of Class Action Settlement and Release

5   of Claims ("Class Notice") and orders that the Class Notice be distributed to the

6   members of the Settlement Classes;

7   4.     Appoints Plaintiffs Sevag Chalian, Sigfredo Cabrera, Enko Telahun,

8   Christine McNeely, and Patrick Brennan as the Class Representatives;

9   5.     Appoints Simpluris, Inc. as the Settlement Administrator;

10  6.     Appoints Alexander, Krakow + Glick LLP, Boyamian Law, the Law

11  Offices of Thomas W. Falvey, Clark Law Group, and United Employees Law Group

12  as Class Counsel;

13  7.     Sets this matter for a hearing on the issues of final approval of the class

14  action settlement on the following matters:

15          a.  Approval of the Service Awards to Plaintiffs as follows: Ten Thousand

16              U.S. Dollars and Zero Cents ($10,000.00 U.S.D.) each to Sevag

17              Chalian, Sigfredo Cabrera, Enko Telahun, and Christine McNeely; and

18              Three Thousand U.S Dollars and Zero Cents ($3,000.00) to Patrick

19              Brennan;

20          b.  Approval of Class Counsel's application for Attorneys' Fees not to

21              exceed $2,925,000.00 and Costs not to exceed $50,000;

22          c.  Approval of the Settlement Administrator's expenses, estimated to be

23              $75,000; and

24          d.  Approval of payment to the Labor and Workforce Development Agency

25              ("LWDA") in the amount of $56,250.00 ($75,000 designated as Private

26              Attorneys General Act ["PAGA"] civil penalties, 75% of which is

27              $56,250); and

28  8.     Grants all other and further relief that the Court deems just and proper.

1
2
3

  This motion is made on the grounds that the settlement was reached as a result of informed arm's length negotiations; is reasonable, fair, and adequate; and is deserving of approval for the benefit of the members of the Settlement Class.

4
5
6
7
8
9

  Plaintiffs' motion is based upon this Notice; the accompanying memorandum of points and authorities; the Parties' Joint Stipulation and Agreement for Class Action Settlement and Release of Claims, the declaration of Michael Morrison, any exhibits thereto which are filed and served concurrently herewith; all pleadings and papers filed in this action; and upon any such other evidence and/or oral argument that may be presented to the Court at the time of the hearing.

10

Dated: June 19, 2020   Respectfully submitted,

11

        ALEXANDER KRAKOW + GLICK LLP

12
13

        By: /s/ Michael Morrison

14
15

         Michael S. Morrison
         Attorneys for Plaintiffs and the proposed
         Classes

16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.    Introduction................................................. 5

II.   Factual Background. ........................................ 6

      A.    Chalian Action. ...................................... 6

      B.    Cabrera Action. ...................................... 7

      C.    Joint Prosecution of Chalian and Cabrera Actions and Settlement... 9

III.  Summary of Settlement Terms. ............................. 13

      A.    Summary of Monetary Terms........................... 13

      B.    Allocation and Distribution of Settlement. ............... 13

      C.    Limited Scope of the Release as to Class Members' Claims....... 15

      D.    Chart of Relevant Dates. .............................. 16

IV.   The Court Should Preliminarily Approve the Class Settlement......... 17

      A.    The Relief Offered in Settlement Compared to the Strength of
            Plaintiffs' Case and the Risk Further Litigation.................. 18

            1.    Almost All Class Members Agreed to Arbitrate, Which
                  Precludes Class Claims............................ 18

            2.    Prior Settlements Involving CVS May Substantially Reduce
                  Class Membership Due to Principles of Res Judicata........ 19

            3.    Off-The-Clock Training Claims (Unpaid Wages, Minimum
                  Wage, and Overtime Violations). ..................... 20

            4.    Meal and Rest Period Claims........................ 22

            5.    Reimbursement Claims............................. 23

            6.    Other Claims..................................... 24

                  a.    Derivative Claims............................ 24

                  b.    PAGA Civil Penalties. ....................... 25

      B.    The Settlement Is Fair, Adequate, and Reasonable Given the Extent
            of Discovery Conducted and the Information Obtained. ......... 28

      C.    Counsel Believe That This Is A Fair Settlement. ............... 29

      D.    The Payment to the Named Plaintiffs For Their Services to the Class
            Is Reasonable and Routinely Awarded by Courts. .............. 30

      E.    The Requested Awards for Plaintiffs' Counsel's Attorneys' Fees and

Costs Are Reasonable, Fair, and Appropriate Under the Common Fund Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

V.   The Proposed Class Should Be Conditionally Certified for Settlement Purposes.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

    A.   The Proposed Classes Meet All Of The Requirements Of Rule 23(a)40

        1.   Numerosity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

        2.   Typicality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

        3.   Commonality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

        4.   Adequacy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

    B.   The Requirements of Rule 23(b) Are Satisfied. . . . . . . . . . . . . . . . . 42

        1.   Common Issues Predominate. . . . . . . . . . . . . . . . . . . . . . . . . 42

        2.   Class Certification is a Superior Means of Resolution . . . . . . 44

VI.   The Proposed Class Notice Is Appropriate. . . . . . . . . . . . . . . . . . . . . . . . 44

    A.   The Class Notice Satisfies Due Process. . . . . . . . . . . . . . . . . . . . . . 44

    B.   The Proposed Class Notice is Accurate and Informative. . . . . . . . . . 45

VII.   The Court Should Schedule a Final Approval Hearing. . . . . . . . . . . . . . . 45

**TABLE OF AUTHORITIES**

<u>**CASES**</u>

*Amaral v. Cintas Corporation No. 2*, 163 Cal.App.4th 1157 (2008). . . . . . . . . . . 25

*Antonpulos v. North American Thoroughbreds, Inc., Fed. Sec.L.Rep.* (CCH), (S.D. Cal. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Association of Mexican-American Educators v. State of California*, 231 F.3d 572 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Bernstein v. Virgin America, Inc.* (N.D. Cal. Nov. 7, 2016) 2016 WL 6576621 (C.D. Cal. March 17, 2016). . . . . 43

*Black v. T-Mobile USA, INC.*, 219 WL 3323087 (N.D. Cal July 24, 2019). . . . . 36

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). . . . . . . . . . . . . . . . . . . . . . . . . 35

*Bower v. Cycle gear, Inc.*, 2016 WL 4439875 (N.D. Cal August 23, 2016). . . . . 38

*Brown v. CVS Pharmacy, Inc.*, 2017 WL 3494297 (C.D. Cal. Apr. 24, 2017). . . 38

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981). . . . . . . . . . . . . . . . . . . . . . 18

*Churchill Village, L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004). . . . . . . . . . . . . . . 17

*Crawford v. Honig*, 37 F.3d 485 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D. Pa 2000). . . . . . . . . . . 38

*Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 7842550 (C.D. Cal. November 11, 2019). . . . . . . . . . . . . . . . . . . . . . . 38

*Dublin v. E.F. Hutton Group, Inc.* 878 F. Supp 616 (S.D.N.Y. 1995). . . . . . . . . . . .

*Edwards v. First Am. Corp.*, 798 F.3d 1172 (9th Cir. 2015) . . . . . . . . . . . . . . . . 42

*Elmore v. CVS Pharmacy, Inc.*, 2016 663525 (C.D. Cal. Nov. 9, 2016). . . . . . . . 19

*Employment Development Department v. Superior Court*, 30 Cal.3d 256 (1981). 43

*Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856 (C.D. Cal. July 21, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Gasperoni v. Metabolife, International*, 2000 WL 33365948 (E.D. Mich. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . 17

*Guiterrez v. Kovacevich "5" Farms* 2004 WL 3745224 (December 2, 2004). . . . 43

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . Passim

*Harris v. Vector Marketing Corp*. 753 F.Supp.2d 996 (N.D. Cal. 2010). . . . . . . . 43

*Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959 (C.D. Cal. Aug. 4, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Hurst v. Buczek Enters., LLC*, 870 F.Supp.2d 810 (N.D. Cal. May 2, 2012). . . . . 25

*In re Acknowledgement Cases*, 239 Cal.App.4th 1498. . . . . . . . . . . . . . . . . . . . . . 24

*In re Activision Securities Litigation*, 723 F. Supp. 1373 (N.D. Cal. 1989. . . . . . 38

*In re Ampicillian Antitrust Litigation*, 526 F.Supp. 494 (D.D.C. 1981). . . . . . . . 38

*In re Corrugated Container Antitrust Litig.,* 643 F.2d 195 (5th Cir. 1981). . . . . . 16

*In re Crazy Eddie Securities Litigation*, 824 F. Supp. 320 (E.D.N.Y. 1993). . . . . 38

*In re Itel Sec. Litg.*, 89 F.R.D. 104 (N.D. Cal. 1981). . . . . . . . . . . . . . . . . . . . . . . 41

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1995). . 29, 38

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Safety Components International, Inc.*, 166 F. Supp.2d 72 (D.N.J. 2001). . 38

*In re Southern Ohio Correctional Facility*,175 F.R.D. 270 (S.D. Ohio 1997). . . 31

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001). . . . . . . . . . . . . . 31

*Kim v. Reins*, 18 Cal.5th  1052 (2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407 (2019). . . . . . . . . . . . . . . . . . . . . . . . 19

*Lo Re v. Chase Manhattan Corp.*, 19 F.E.P. Cas. (BNA) 1366 (S.D.N.Y. 1979). 30

*Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal.4th 592 (2010). . . . . . . . . . . . . . . . 26

*Mayfield v. Dalton,* 109 F.3d 1423 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . 42

*Mendoza v. Nordstrom, Inc.*, 2 Cal.5th 1074 (2017). . . . . . . . . . . . . . . . . . . . . . . 26

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.* (C.D. Cal. 2015) 311 F.R.D. 590. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287 (1988). . . . . . 26

*Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) . . . . . . . . . . . . . . . . 38

*Morton v. Valley Farm Transp., Inc.*, 2007 WL 1113999 (ND. Cal. 2007).. . . . . 40

*O'Connor v. Uber Techs, Inc.*, 904 F.3d 1087. . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Officers for Justice v. Civil Service Commiss'n of San Francisco*,
688 F.2d 615 (9th Cir. 1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Maria P. v. Riles*, 43 Cal. 3d 1281 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999). . . . . . . . . . . . . . . . 31

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. Aug. 1, 2002). . . . . . . . . . . . . . . . . . 31

*Singer v. Beckton Dickinson and Co.*,
2010 WL 2196104 (S.D. Cal. June 1, 2010. . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Six (6) Mexican Workers v. Arizona Citrus Growers*
904 F.2d 1301 (9th Cir. 1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Stearne v. Heartland Payment Systems LLC*,
2018 WL 746492 (E.D. Cal. February 2, 2018) . . . . . . . . . . . . . . . . . . . . . . . . 27

*TBK Partners, Ltd. v. W. Union Corp.*,  675 F.2d 456 (2d Cir. 1982). . . . . . . . . 16

*Titus v. McLane Foodservice, Inc.*,
2016 WL 4797497 (E.D. Cal. September 14, 2016).. . . . . . . . . . . . . . . . . . . . . 27

*Tormey v. Vons Companies, Inc.*,
2014 WL 4403107 (Cal. Ct. App. Aug. 27, 2014) .. . . . . . . . . . . . . . . . . . . . . . 26

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).. . . . . . . . . . . . 40

*Van Gemert v. Boeing Co.*, 516 F. Supp. 412 (S.D.N.Y. 1981). . . . . . . . . . . . . . 38

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995). . . . . . .

*Vasquez v/ Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010). . . . . . . 38

*Villacres v. ABM Industries, Inc.*, 189 Cal.App.4th 562. . . . . . . . . . . . . . . . . . . 20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002). . . . . . . . . . . . . . . . 36

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). . . . . . . . . . . . . . . . . . . . 41

*Wershba v. Apple Computer*, 91 Cal.App.4th 224 (2001). . . . . . . . . . . . . . . . . . 43

*Westside Cmty. for Indep. Living, Inc. v. Obledo*, 33 Cal. 3d 348 (1983). . . . . . . 35

/ / /

# SECONDARY AUTHORITIES

California Code of Civil Procedure
§ 1021.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

California Labor Code
§ 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19
§ 204. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 215. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
§ 226 et seq... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 35
§ 246. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
§ 248.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
§ 510. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 512 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23
§ 514. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
§ 550. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 551. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 558. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 584. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
§ 850. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
§ 851. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
§ 854. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
§ 1174. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 1194 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 22, 35
§ 1197 et seq... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 25
§ 1198. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 2698. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
§ 2699 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27
§ 2800. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 2802. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23
§ 6201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
§ 6202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
§ 6203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
§ 17200 et seq... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

FRCP
23 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
54(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


4 Alba Conte & Herbert Newberg, <u>Newberg on Class Actions</u> (4th ed. 2002),
§ 12:15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 35

Newberg, <u>Manual for Complex Litigation</u>, (3rd ed. 1995)
§30.42. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31, 45

**MEMORNADUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs seek preliminary and conditional approval of a proposed class action settlement ("Settlement") with CVS.  Subject to Final Approval of this Court, Defendants have agreed to settle this action for a <u>non-reversionary</u> amount of Nine-Million, Seven-Hundred and Fifty-Thousand dollars ($9,750,000).  The case would settle the claims of the following two Classes (collectively "Settlement Classes"): (1) <u>Pharmacist Settlement Class</u>: All hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and the date of the Preliminary Approval Order, whose claims are not subject to arbitration and who have not previously released and/or adjudicated the Released Claims, and whose LEARNet and/or Site Minder data indicates activity when time punch records do not show he or she was clocked-in; and (2) <u>Retail Pharmacy Settlement Class</u>: Any person who is not a member of the Pharmacist Settlement Class who held an hourly, non-exempt position in a CVS retail pharmacy in the State of California between August 3, 2014 and the date of the Preliminary Approval Order who has not previously released and/or adjudicated the Released Claims.

The Court should approve the settlement because it is a fair and reasonable result for the Class given Defendants' defenses to this action.  These defenses include: (1) arbitration clauses containing delegation clauses signed by nearly all Class Members which prohibit litigation of individual and class claims in court; (2) participation by Class Members in multiple prior settlements with Defendants which could preclude participation in this lawsuit; (3) a change in Defendants' policy and practice that explicitly prohibited working on training modules from home after January 25, 2017 and significantly limited the technical ability to do so; (4) the presence of unionized employees who are subject to different rules under various Collective Bargaining Agreements with respect to meal and rest periods and overtime; (5) individualized differences between managers and supervisors regarding

the decision to compensate Class Members who reported training outside of their shifts or off-the-clock; and (6) the presence of a facially valid meal and rest period policy and a low violation rate showing training occurring during meal periods. These defenses had the potential to wipe out Plaintiffs' claims in this lawsuit completely. Plaintiffs also considered the likely PAGA penalties for the violations being released based on the data they received from Defendants, being careful not to stack penalties for the same offense.  Ultimately, Plaintiffs succeeded in obtaining a substantial settlement.

The settlement was the result of extensive discovery and arms-length, non-collusive negotiations between the Parties through a well-respected mediator involving multiple mediation sessions. Before settling the case, Plaintiffs had extensively investigated the merits of this action, the damages owed to Class Members, and the likelihood of class certification. As a result, Plaintiffs and their counsel were fully informed as to what a fair settlement amount would be.

It is well within the discretion of this Court to grant preliminary and conditional approval of the proposed Settlement, which satisfies all of the criteria for preliminary settlement approval under California law.  Accordingly, Plaintiffs request that the Court: (1) provisionally and conditionally certify the proposed Settlement Classes; (2) grant preliminary and conditional approval of the proposed Settlement; (3) direct distribution to the Class of the Notice, which provides the Class the opportunity to opt-out of or object to the Settlement; and (4) schedule a final approval hearing.

## II.   FACTUAL BACKGROUND

### A.   Chalian Action

On July 20, 2016, Sevag Chalian filed a putative wage and hour class action against CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS LLC ("CVS") in the Los Angeles County Superior Court of the State of California, and on December 5, 2016, CVS removed that action to the United States District Court for

the Central District of California, Case No. 2:16-cv-08979, where it remains pending (the "Central District of California Action").  Declaration of Michael Morrison ("Morrison Decl."), ¶ 8.

On July 24, 2017, Plaintiff Chalian moved for leave to file a First Amended Complaint to add Tamara Aleksandryan as a second named plaintiff and class representative. In the First Amended Complaint, Plaintiffs sought to represent themselves and all Pharmacists employed by CVS in Region 65 and 72 of California during the relevant period. The First Amended Complaint alleges CVS failed to pay all wages owed and minimum wage violations (Labor Code § 1194), failed to pay overtime compensation (Labor Code § 1194), failed to provide accurate itemized wage statements (Labor Code § 226), incurred waiting time penalties (Labor Code §6 201-23), and engaged in unfair business practices (Bus. & Prof. Code §§ 17200 et seq.).  Morrison Decl., ¶ 9.

Plaintiff Chalian obtained leave to add Tamara Aleksandryan as a second plaintiff but CVS quickly moved to compel arbitration.  The Court granted CVS's motion and dismissed Aleksandryan from the Chalian suit. Morrison Decl., ¶ 10.

Defendants also moved for judgment on the pleadings arguing res judicata barred Plaintiff Chalian from prosecuting this action because he participated as a settlement class member in prior class action settlements with CVS. Although the Court denied Defendants' motion, CVS asserted an intent to pursue the issue again at summary judgment and on appeal, if necessary.  Morrison Decl., ¶ 11.

**B.     Cabrera Action**

On August 3, 2017, Sigfredo Cabrera filed a putative wage and hour class action against CVS in Alameda County Superior Court of the State of California. Morrison Decl., ¶ 12.

On September 5, 2017, Mr. Cabrera amended his action to add Enko Telahun as a second named plaintiff.  Morrison Decl., ¶ 13.

On October 9, 2017, CVS removed Mr. Cabrera's and Mr. Telahun's action to

the United States District Court for the Northern District of California, Case No. 3:17-cv-05803 (the "Northern District of California Action").  Morrison Decl., ¶ 14.

On March 19, 2018, Plaintiffs Cabrera, Telahun and McNeely filed the second amended complaint, which alleges on behalf of Ms. McNeely and other Pharmacy Employees that CVS failed to pay minimum wages and overtime compensation (Labor Code §§ 204, 510, 558, 1194, 1197, 1197.1 and 1198); failed to provide legally compliant meal periods or compensation in lieu thereof (Labor Code §§ 226.7 and 512); failed to provide legally compliant rest periods or compensation in lieu thereof (Labor Coode § 226.7); failed to pay wages owed (Labor Code §§ 201-203); failed to furnish accurate itemized wage statements (Labor Code §§ 226 and 226.3); failed to maintain accurate records (Labor Code §§226(a), 226.3, and 1174); failed to reimburse for necessary work expenses (Labor Code §§ 2800 and 2802); and participated in unfair business practices (Bus. & Prof. Code §§ 17200 et seq.). The second amended complaint also alleged pursuant to the California Private Attorney General Act, Lab. Code §§ 2698, et seq. ("PAGA"), and on behalf of Plaintiffs Cabrera and Telahun, and other aggrieved employees that CVS owes civil penalties for alleged violations of Labor Code §§ 201-203, 204, 226, 226.3, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2800, and 2802 and relevant IWC Wage Orders. (Id.)  Morrison Decl., ¶ 15.

On July 10, 2018, Mr. Cabrera, Mr. Telahun, and Ms. McNeely sent CVS a proposed Third Amended Complaint naming Patrick Brennan as a fourth named plaintiff in the Northern District of California Action.  Morrison Decl., ¶ 16.

On September 14, 2018, the Northern District of California (Hon. William Alsup) denied CVS's motion to compel Ms. McNeely's claims to arbitration subject to an evidentiary hearing to determine whether she validly opted out of CVS's arbitration program.  CVS appealed the decision denying its motion to compel arbitration to the United States Court of Appeals for the Ninth Circuit, Case No. 18-15459 (the "McNeely Appeal").  Morrison Decl., ¶ 17.

On September 25, 2018, the Northern District of California (Judge William Alsup) granted summary judgment in CVS's favor on Mr. Cabrera's and Mr. Telahun's PAGA claims. Specifically, relying on the Court of Appeal decision in *Kim v. Reins*, 18 Cal.5th 1052, 1055 (2017), the Court ruled Cabrera and Telhun were not aggrieved employees because they had voluntarily dismissed their individual and class claims when they filed an amended complaint to avoid arbitration. On January 1, 2019, at Plaintiffs' request, the Court entered a partial final judgment pursuant to Fed. R. Civ. P. 54(b), permitting Mr. Cabrera and Mr. Telahun to appeal the dismissal of their PAGA claims to the United States Court of Appeals for the Ninth Circuit, Case No. 19-15059 (the "Cabrera/Telahun Appeal"). The Plaintiffs appealed and while their case was pending on appeal, the California Supreme Court reversed the *Kim v. Reins* appellate decision, finding that a plaintiff who settled their individual claims for compensation still has standing to pursue a PAGA action. *Kim v. Reins*, 9 Cal.5th 73 (2020). There is therefore little doubt Plaintiffs would have prevailed on appeal and, based on conversations with Defense counsel, Defendants long recognized this was a possibility due to the California Supreme Court having previously granted review of the case. Morrison Decl., ¶ 18.

### C. Joint Prosecution of Chalian and Cabrera Actions and Settlement

In 2018, counsel for the Plaintiffs in the Central District of California Action and the Northern District of California Action decided to work cooperatively and jointly prosecute their respective actions. To that end, the Parties executed new fee sharing agreements with Plaintiffs. Morrison Decl., ¶ 19.

On March 7, 2019, Plaintiffs' counsel submitted a letter to the California Labor and Workforce Development Agency PAGA Administrator on behalf of a potential new Plaintiff, May Eldanaf. The letter claimed CVS failed to pay her and other pharmacists for mandatory training they were required to complete and that she intended to file a wage and hour action on behalf of herself and other aggrieved employees (the "Eldanaf PAGA Claim"). Morrison Decl., ¶ 20.

On July 29, 2019, Claimants and CVS (together, "the Parties") mediated the Central District of California Action, the Northern District of California Action, and the Eldanaf PAGA Claim (collectively, the "Wage and Hour Actions") in San Francisco, California before David A. Lowe, Esq., of Rudy Exelrod Zieff & Lowe LLP, a prominent and well-respected mediator in wage and hour class litigation. Before mediation, there was a robust exchange of information and data, including but not limited to the following:

1.      Class list containing persons who did not execute arbitration agreements;

2.      Excel spreadsheets detailing dates of employment, annual salary, and hourly rate for employees in the Class;

3.      Excel spreadsheets containing LEARNet data, which shows when a sampling of Class Members logged into training;

4.      Excel spreadsheet containing Site Minder data for 2017 and 2018, which reflects Class Member activity on the LEARNet training site;

5.      Excel spreadsheets showing time punches for a sampling of Class Members, which, when compared to LEARNet data, identifies persons who logged onto LEARNet while not clocked in. The same data also helps reveal potential Labor Code section 850-851 and 550-551 violations;

6.      Excel spreadsheet showing what was paid to Class Members each pay period; and

7.      Relevant policies and procedures regarding training modules, off the clock work, sick pay, reimbursement policy, meal and rest periods, etc.  Morrison Decl., ¶ 21.

Plaintiffs hired an expert statistician to analyze the data and determine the damages, interest, and penalties (statutory and civil) owed to Class Members. Specifically, the LEARNet and Site Minder data was used to determine when Class Members logged into CVS's training system as well as the average duration of each session. These figures were then applied to the entire Class.  Morrison Decl., ¶ 22.

Additional information and data were exchanged between the parties during the mediation. Although the actions did not settle at the July 29, 2019 mediation, subsequent discussions and arms-length negotiations through Mr. Lowe caused the parties to schedule a second day of mediation. Before this second mediation, additional data was provided to confirm the class size, average hourly rate of pay, and number of pay periods/workweeks at issue for the Settlement Classes.  Plaintiffs' expert conducted additional calculations using this new information. Morrison Decl., ¶ 23.

On November 11, 2019, the Parties engaged in a second day of mediation before David A. Lowe, Esq., and came to an agreement in principal to resolve all pending wage and hour disputes between them. Subsequent to this, additional pay and time data, as well as additional written policies, were provided to Plaintiffs to further verify the accuracy of their analysis and projections, and to ensure the Settlement was fair, reasonable, and adequate.  Plaintiffs also asked their expert to perform additional calculations based on the new data and information.  Plaintiffs conducted additional legal research too and determined based on this research that the Settlement was a good one.[1]  Morrison Decl., ¶ 24.

On March 5, 2020, the Ninth Circuit remanded the *Cabrera* action after the Parties informed the Court of a settlement. On Mach 10, 2020, the District Court in *Cabrera* transferred the case to the Central District after the Parties filed a stipulation to transfer the case to the same courtroom as the *Chalian* matter.  The stipulation to transfer specifically stated that a transfer was being sought in order to effectuate a class and PAGA settlement in the *Chalian* and *Cabrera* matters.  It also stated that transfer to the Central District was proper because the *Chalian* action was the first filed action.  Thus, the District Court [Judge Alsup, presiding] knew at the time of transfer the precise reasons why a transfer was sought and yet still approved it.  If the

---

[1]  The final Settlement Agreement was executed in late February, early March 2020 by the Parties.  Morrison Decl., ¶ 25; Exhibit "1" to Morrison Decl.

Court was concerned that the transfer was solely being requested to avoid its settlement requirements, it could have denied the stipulation to transfer. Morrison Attached as Exhibit "10" is a true and correct copy of the stipulation to transfer and signed order by Judge Alsup.  Morrison Decl., ¶ 25.

On June 3, 2020, the Parties filed a stipulation with leave to file a consolidated Second Amended Complaint which combines the *Chalian* and *Cabrera* actions into one consolidated action.  The only new claims added were to the PAGA cause of action for Labor Code sections 246, 550-551, and 850-851. These claims were added because they could have been asserted in the underlying action given they arise out of the same nucleus of facts.  In particular, a pharmacy employee working on training modules outside of ones' normal shift may have resulted in work beyond the time limits imposed in Labor Code sections 850-851, or in the employee working seven consecutive days in a workweek (550-551). <u>Plaintiffs' proposed complaint was careful to tie these allegations to the theories previously alleged in the operative complaints – i.e. unpaid work on training modules.</u> *See* proposed Second Amended Complaint, ¶¶ 50 and 51 (Exhibit "8" to Morrison Decl.).  As for Labor Code section 246(i)'s notice requirements for wage statements, both the *Chalian*  and *Cabrera* complaints had alleged other deficiencies relating to employee wage statements from the outset of the respective litigations. Morrison Decl., ¶ 26.

Despite carefully limiting the claims in the SAC to the theories already alleged, nonetheless, on June 5, 2020, Plaintiffs Ryan Hyams and Regine Duhon filed a motion to intervene in this case. According to the moving papers, they did so because the proposed SAC added alleged violations of Labor Code sections 246 and 850-851 to the PAGA cause of action. At the time of settlement, Plaintiffs and their counsel were unaware of the *Hyams* lawsuit. In fact, the *Hyams* Plaintiffs argued to the Northern District Court [the Hon. Haywood S. Gilliam, Jr., presiding] that their case was not related to this action despite the overlapping claims because, among other things, they sought to represent a much broader class of all non-exempt employees of

CVS, not just pharmacy employees. *See* Exhibit "9" to Morrison Decl. The *Hyams* Plaintiffs also never contacted Plaintiffs' counsel in *Chalian* or *Cabrera* until they learned of the Settlement.  Morrison Decl., ¶ 27.

On June 9, 2020, this Court entered an Order denying the Parties' request to consolidate this case and the *Cabrera* Action and file a Second Amended Complaint without prejudice to the re-filing of that request after resolution of the Motion to Intervene. To that end, the Court ordered the Parties to file a Joint Status Report no later than June 15, 2020 and, depending on the status of the case, an appropriate stipulation and order vacating the stay and setting dates necessary to move the case forward.  The Parties did so and Proposed Intervenors filed an objection. Morrison Decl., ¶ 27.

On June 19, 2020, the Court set the hearing for this motion for July 24, 2020 at 10:00 am.  Morrison Decl., ¶ 27.

## III.   SUMMARY OF SETTLEMENT TERMS

### A.     Summary of Monetary Terms

Under the Settlement Agreement, Defendants will pay an amount not to exceed nine-million and seven-hundred and fifty-thousand dollars ($9,750,000 [exclusive of employer payroll taxes]) to settle: (1) the claims of all Settlement Class Members for wages, penalties and interest, as specified herein; (2) all claims for an award of the attorneys' fees, costs and expenses of all Plaintiffs' attorneys or counsel for the Class; (3) any Class Representative service payments awarded by the Court;  (4) payment to the LWDA; and (5) settlement administration expenses.

### B.     Allocation and Distribution of Settlement

Class Members shall be entitled to all of the Net Settlement Amount - which is the Maximum Settlement Amount, less all of the following: Plaintiffs' Attorneys' fees and costs, any Class Representative service payments awarded by the Court, payment to the LWDA, and the costs of settlement administration.  In particular, the Net Fund is calculated by subtracting the following amounts from the Gross Fund of

$9,750,000:

      (1)     Plaintiffs' request for attorneys' fees in the amount of $2,925,000.00;

      (2)     Plaintiffs' litigation costs, not to exceed $50,000 (currently at $32,399.62);

      (3)     Class Representative Service Awards in the amount of Ten Thousand U.S. Dollars and Zero Cents ($10,000.00 U.S.D.), each, to Sevag Chalian, Sigfredo Cabrera, Enko Telahun, and Christine McNeely; and Three Thousand U.S Dollars and Zero Cents ($3,000.00) to Patrick Brennan, each ($43,000 in total);

      (4)     Payment to the LWDA in the amount of $56,250 (75% of $75,000 designated as PAGA civil penalties); and

      (5)     Settlement Administration expenses to be performed by Simpluris, Inc., estimated to be $75,000.

Approximate Reminder Amount: **$6,600,750**.

There is <u>no reversion</u> of funds and all unclaimed amounts shall be provided to California's Unclaimed Property Fund.  Defendants' employer payroll taxes will be paid separately from the Maximum Settlement Amount.

**Distribution formula:**

Except as otherwise provided for herein, the Settlement Administrator shall allocate the non-PAGA portion of the Net Settlement Amount among Settlement Class Members as follows.

i.     The Settlement Administrator shall calculate the total number of weeks worked and the weekly rate for all members of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class. If a Settlement Class Member was employed for only part of a workweek, he or she will be credited for purposes of this Settlement with a fraction of the workweek, rounded up or down to the nearest two-digit decimal and based upon a five-day work week. Each Settlement Class Member's share shall be determined by multiplying an individual's number of qualifying workweeks by the individual's weekly rate (i.e., the individual's rate of pay for a week, which is his or

her hourly rate of pay multiplied by 40 hours) for the applicable class period. This number will be divided by the total number of workweeks worked by all Settlement Class Members multiplied by the total amount of weekly rates for all Settlement Class Members (i.e., sum of all Settlement Class Members' weekly rates) during the applicable class period. The Settlement Administrator shall withhold and separately pay to the relevant government entities all applicable employee-side payroll tax withholdings from the individual settlement shares of the Settlement Class Members.

Net Settlement Amount

X      (Individual Weekly Pay Rate x Individual Workweeks)

_____

(Total of all Settlement Class Members' Weekly Pay Rates x Total Workweeks for all Settlement Class Members)

      ii.      With respect to the PAGA-portion of the Net Settlement Amount, this shall be distributed in the same manner as the non-PAGA portion, except that payments will be made to all members of the Retail Pharmacy Settlement Class employed between August 3, 2016 and the date of preliminary approval regardless of whether they opt-out of the class action settlement.

      C.      **Limited Scope of the Release as to Class Members' Claims**

      The release of Settlement Class Members' claims is limited in scope to "all claims, causes of action, and legal theories of relief that were alleged or that could have been alleged or otherwise raised in Wage and Hour Actions, from August 3, 2014 until the date of the Preliminary Approval Order for Retail Pharmacy Settlement Class members and from July 20, 2012 until the date of the Preliminary Approval Order for Pharmacist Class members …." *See* Settlement Agreement, Section 4.3

(Exhibit "1" to Morrison Decl.) (emphasis added).  This is consistent with case law.[2] *See TBK Partners, Ltd. v. W. Union Corp.*,  675 F.2d 456, 460 (2d Cir. 1982); see also 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 12:15 (4th ed. 2002), at 312 ["2 Newberg"] ["The scope of a judgment must be limited to the claims that were asserted or that may arise out of the transactions or events pleaded in the complaint...."]; *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 326 (3d Cir. 1998) (same); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221-22 (5th Cir. 1981) (same).

Given the case law that unpleaded claims arising from the same facts can be released in a class/representative action settlement, there is nothing improper about Plaintiffs' inclusion of additional violations for civil penalties (Labor code sections 246, 850-851) in the proposed SAC. These claims could have been validly released even without the SAC being filed.

**D.    Chart of Relevant Dates**

| | |
|---|---|
| 14 calendar days after entry of order granting Preliminary Approval | Defendants will provide class list to Claims Administrator |
| 28 days after entry of order granting Preliminary Approval | Mailing of Class Notice, beginning of Notice Period |
| 45 calendar days after mailing of Class Notice (Notice Period) + plus seven days | Last day Settlement Administrator can receive valid Class Member objections to the Settlement or to requests for exclusion from the non-PAGA portions of the Settlement or to disputes related to share of settlement |
| 35 days after Notice Period | File motion for final approval |

[2] The Federal Fair Labor Standards Act ("FLSA") claims will only be released by Class Members who deposit their settlement checks.  The checks will be affixed with language affirming depositing employees' agreement to opt-into the action and release the related FLSA claims. *See* Settlement Agreement, Section 4.5 (Exhibit "1" to Morrison Decl.)

| (TBD) | Final Settlement Approval hearing. |
| 10 days after final approval (if no objections are received) | Defendants to fund Settlement and transmit money to Settlement Administrator |

## IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS SETTLEMENT.

At preliminary approval, the court's task is to "determine whether the proposed settlement is within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (internal quotations omitted). "If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Here, the proposed settlement is manifestly reasonable because it bestows upon class members significant economic benefits with respect to highly contested claims. The District Court should approve it.

The Ninth Circuit, in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), sets forth the following factors for a district court to consider in determining the fairness of a settlement approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of the counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village*, L.L.C. v. GE, 361 F.3d 566, 575 (9th Cir. 2004). Application of these factors here shows the proposed Settlement is "fundamentally fair, adequate, and reasonable," and that it meets the relevant Hanlon factors.

///

///

**A.**     **The Relief Offered in Settlement Compared to the Strength of Plaintiffs' Case and the Risk of Further Litigation.**

"Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of relief offered in the settlement . . . They do not decide the merits of the case or resolve unsettled legal questions."  *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14, (1981) (internal citation omitted).

Although Plaintiffs believe in the strength of their case, they are mindful of the fact that Defendants have a number of defenses to class certification, merits, and damages issues.  Morrison Decl., ¶ 29.

**1.**     **Almost All Class Members Agreed to Arbitrate, Which Precludes Class Claims.**

Perhaps the most important consideration when evaluating the fairness of this settlement is the fact that the overwhelming majority of Retail Pharmacy Settlement Class Members agreed to arbitrate any workplace claims they may have against CVS. Beginning in or around October 2014, CVS instituted an arbitration program for all of its retail employees, including pharmacy employees.  Relatively few Retail Pharmacy Settlement Class Members (approximately 425) opted out of CVS's arbitration program.  The Pharmacist Settlement Class in Regions 65 and 72 (*Chalian* action) by-definition does not include persons who agreed to arbitrate, and the total number of Pharmacist Settlement Class members is less than 400 hundred persons (approximately 397).  Thus, of the more than 20,000 total Class Members, little more than 800 have individual wage and hour claims that a court could adjudicate.[3] Morrison Decl., ¶ 30.

---

[3] Note this Court upheld and enforced CVS's arbitration agreement when it compelled Ms. Aleksandryan's claims to arbitration. The Northern District of California may well have followed suit. It did not deny CVS's motion to compel the arbitration of Ms. McNeely's claim with prejudice, instead ruling a fact-finding hearing as to whether she validly opted-out was necessary.  Morrison Decl., ¶ 30.

In addition, CVS's arbitration agreement contained a delegation clause, which means even challenges to enforceability would be decided by the arbitrator. *See Elmore v. CVS Pharmacy, Inc.*, No. 216CV05603ODWASX, 2016 663525 at *3 (C.D. Cal. Nov. 9, 2016) (holding CVS's arbitration agreement clearly and unmistakably demonstrates the parties' intent to arbitrate the issue of arbitrability). Binding Ninth Circuit authority prohibits the certification of a Rule 23 class that includes employees with arbitration agreements containing a delegation clause. *See O'Connor v. Uber Techs, Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018). Morrison Decl., ¶ 31.

The arbitration agreements also do not explicitly authorize class proceedings, meaning the arbitrations would have to be conducted on a bilateral basis. *See Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407 (2019). As noted, in the *Chalian* case, Defendants successfully compelled arbitration of the proposed class representative's (Tamara Aleksandryan) claims on an individual basis.  Morrison Decl., ¶ 32.

Consequently, if this case proceeded, only a fraction of the Class Members would be eligible to receive wages, liquidated damages, and statutory penalties (such as under Labor Code section 203). The rest could only seek PAGA civil penalties in a court of law, 75% of which would go to the State.  Morrison Decl., ¶ 33.

## 2.   Prior Settlements Involving CVS May Substantially Reduce Class Membership Due to Principles of Res Judicata.

In addition to bilateral arbitration agreements, there are other agreements which could substantially reduce membership in the Classes – prior class action settlement agreements.  Specifically, the claims at issue in this case – minimum wage, overtime, meal and rest periods, waiting time penalties, inaccurate wage statements, and derivative PAGA claims - have all been the subject of past settlements involving CVS and pharmacy employees.  Plaintiffs Cabrera, Telahun, McNeely, Chalian, and Brennan were all settlement class members in prior class action settlements with CVS.  Morrison Decl., ¶ 34.

Defendants contend that participation in the prior class action settlements operates as res judicata with respect to overlapping claims in this case. There is California appellate authority supporting this position. *See Villacres v. ABM Industries, Inc.*, 189 Cal.App.4th 562 (finding dismissal of prior class action due to settlement was res judicata barring employee's claims in subsequent PAGA action). Although Plaintiff Chalian defeated a motion for judgment on the pleadings on this issue, Defendants argue the ruling was erroneous and contrary to established precedent. Defendants would have raised the issue vis-à-vis the other Plaintiffs as well as at summary judgment and would have appealed this ruling in the Central District of California Action following judgment. An adverse ruling is a real possibility. Morrison Decl., ¶ 35.

### 3. <u>Off-The-Clock Training Claims (Unpaid Wages, Minimum Wage, and Overtime Violations)</u>

The primary claim asserted in this case is that CVS failed to compensate its employees for off the clock work, including mandatory training performed outside of their normal shifts or during meal and rest periods. The off-the-clock claims present significant challenges with respect to certifying a class and prevailing on the merits. Morrison Decl., ¶ 36.

First, as stated above, the presence of arbitration and past settlement agreements could have substantially reduced the class size to well under 1000 persons. Morrison Decl., ¶ 37.

With respect to class certification, a court could easily find that the Rule 23 (a) and (b) factors were not satisfied. For example, Defendants argue that Plaintiff Chalian's claims are not typical of the Class because he left the employment of CVS prior to a change in policy with respect to training. Specifically, on January 25, 2017, CVS prevented employees from accessing the training modules from home. In addition, effective April 2018, CVS connected the LEARNet system to its time punch system, which means CVS was including training time in its pay to employees.

Morrison Decl., ¶ 38.

With respect to predominance, Defendants argue that individualized issues abound.  For example, prior to the change in policy regarding training from home, Defendants claim that many Class Members who reported having incurred training time from home were paid for that time by supervisors and managers.  Plaintiffs' investigation uncovered some evidence of this. Consequently, numerous individualized inquiries may be needed to determine which Class Members reported the off-the-clock training time and were paid for this time. Once the policy changed and Class Members were prohibited from accessing training from home, individualized inquiries would have to be conducted to determine if Defendants knew that training was occurring off-the-clock while at work.  Defendants also dispute Plaintiffs' allegations that training could not be completed during an employee's normal shift.  Individualized inquiries could be required to assess the validity of this allegation too.  Morrison Decl., ¶ 39.

With respect to the merits, CVS's written policies prohibit off-the-clock work and require all time worked to be paid.  Further, its policies as of January 2017 explicitly prohibited training from home.  In April of 2018, LEARNet training time was linked to the time punch records, meaning this time was paid in full.  Morrison Decl., ¶ 40.

As for overtime, there are more than 6,500 Class Members who are members of a union and subject to a CBA.  Labor Code section 514 would likely preclude them from recovering the overtime premium for the unpaid hours in a court of law.  Morrison Decl., ¶ 41.

According to Plaintiffs' expert, the potential damages for OTC training is as follows:

For the Pharmacist Settlement Class, the total unpaid wages (regular and overtime wages) are $1,291,932 based on Site Minder data showing an average of 1.33 hrs (Region 65) and1.54 hrs (Region 72) of OTC time per training session.  An

amount of liquidated damages equal to the unpaid regular pay[4] is potentially recoverable under 1194.2, subject to a finding that Defendants did not have a good faith defense.  *See* Cal. Labor Code section 1194.2 (good faith defense). Morrison Decl., ¶ 42.

For the Retail Pharmacy Class, as stated above, only 425 Class Members did not sign arbitration agreements.  The approximate amount of unpaid wages for those who did not sign arbitration agreements is $1,642,726.  Morrison Decl., ¶ 43.

### 4.      Meal and Rest Period Claims

As with the off-the-clock claims, there were several potential, significant hurdles to prevailing on the meal and rest period claims.  The consolidated complaint includes two distinct theories with respect to meal and rest period violations. The first theory is that Class Members performed training during meal periods and rest periods. The second is that some pharmacies are only staffed with one pharmacist per shift, meaning legally compliant meal and rest breaks cannot be taken during store hours because there is no one to relieve the pharmacist from all work. Morrison Decl., ¶ 44.

With respect to the first theory, based on the sample obtained by Plaintiffs, Class Members only worked on training during meal periods .5% of the time.[5]  Such a small violation rate would likely be insufficient to establish a centralized policy of authorizing training to be performed during meal and rest periods.  This is especially

---

[4]  According to Plaintiff's expert, 73% of total unpaid wages were for overtime hours at the appropriate overtime rate.  Conversely, 27% of the wages not paid were regular hours at the regular rate of pay. Morrison Decl., ¶ 42.

[5]  Because rest periods are on the clock, there is no evidence from the pay and time records that Class Members performed training during their rest breaks.  This means Plaintiffs would have to rely upon Class Members' testimony and other anecdotal evidence to establish violations, which is inherently individualistic. Moreover, the low violation rate on training being performed during meal periods undercuts any argument that training was being done during the shorter, ten-minute rest periods. Morrison Decl., ¶ 47.

true in light of Defendants' facially valid policy authorizing meal and rest periods. Numerous individualized inquiries would also need to be conducted to determine if Defendants knew Class Members were performing training during meal periods and rest periods. Accordingly, the most likely value of this claim under this theory is $0. Assuming this claim could be certified, and excluding persons who signed arbitration agreements, the potential value of the claims is just over $3 million dollars. When union membership is factored in, the number drops below $2 million.[6]  Morrison Decl., ¶ 45.

As for the second theory, Defendants do not readily track which shifts are only manned by a single pharmacist. Indeed, the time punch data does not show whether the pharmacist was alone, meaning tens of thousands of store schedules would have to be compared with corresponding time punches to determine the reason for a violation. This means that ascertainability and predominance may not be satisfied for purposes of Rule 23(a) and (b), meaning the likely recovery is $0. In addition, the theory only applies to pharmacists – not other pharmacy retail employees. This substantially reduces the class size. Morrison Decl., ¶ 46.

### 5.  Reimbursement Claims

Perhaps the most difficult claims to certify would have been the claims for reimbursement under Labor Code section 2802. Plaintiffs' theory as outlined in the complaint is that CVS did not reimburse Class Members for (1) use of home

---

[6]  Moreover, for the approximately over 6,500 Class Members who are subject to a Collective Bargaining Agreement, they are unlikely to recovery anything for meal period violations in court. *See* Cal. Labor Code § 512(e) (512 does not apply if there is valid collective bargaining agreement that) expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.) The CBAs at issue meet all of these requirements, which means at least 35% of Class Members cannot recover meal period premiums or penalties for missed, shortened, or late meal periods. Morrison Decl., ¶ 48.

computers for training, (2) work related travel, and (3) for professional licenses. Morrison Decl., ¶ 49.

Concerning reimbursement for home computers, CVS contends that all training could have been done in store (indeed, had to be done instore after January 2017) and that individualized issues would predominate with respect to the issue of whether use of a home computer was a necessary work-related expense. With respect to potential damages, it would be completely impractical to attempt to value each Class Members' home computer usage. At best, a civil penalty under the PAGA may be recovered. The *Cabrera* action, which was the first case to assert a PAGA claim for reimbursement, was not filed until August, 2017. CVS changed its policy to prohibit training at home in January 2017. Thus, there is only a small period of time (August 2016 to December 2016) for which PAGA penalties are at issue. Morrison Decl., ¶ 50.

As for travel expenses, CVS has a facially valid, written policies which authorizes reimbursement for work related travel which they provided to Plaintiffs. *See* Exhibits 4" and "5" to Morrison Decl. Also, there is evidence that many Class Members were reimbursed for their travel related expenses such as miles, making certification of this claim extremely difficult due to the lack of a centralized policy and practice. Morrison Decl., ¶ 51.

Finally, by law, CVS is not required to reimburse Class Members for training in connection with professional licenses which are required by law. *See In re Acknowledgement Cases*, 239 Cal.App.4th 1498, 1506. Morrison Decl., ¶ 52.

### 6.    Other Claims

#### a.    Derivative claims

Several other claims alleged in this case – inaccurate wage statements, waiting time penalties, and PAGA – are largely derivative of the meal and rest period and overtime/minimum wage off the clock claims and would succeed or fail for the same reasons as those claims. Morrison Decl., ¶ 53.

With respect to waiting time penalties under Labor Code section 203, Defendants could succeed in arguing that none of the violations were "willful" because there was a good faith dispute as to whether its pay practices were unlawful. *See Amaral v. Cintas Corporation No. 2*, 163 Cal.App.4th 1157, 1201 (2008) ("A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover on the part of the employee.")  The same is true with respect to the "knowing and intentional" element for violations of Labor Code section 226.  *See Hurst v. Buczek Enters.*, LLC, No. C–11–1379, 870 F.Supp.2d 810, 829, 2012 WL 1564733, at *17 (N.D. Cal. May 2, 2012) (no finding of "knowing and intentional" if there is a good faith defense).[7]  Morrison Decl., ¶ 54.

### b.    PAGA Civil Penalties

As for the PAGA claims, Labor Code section 2699, subdivision (f), provides that the trial court "may award a lesser amount than the maximum civil penalty ... specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." (§ 2699, subd. (e)(2).)  If the Court here finds that Defendants presented a good faith defense to Plaintiffs' claims, it could substantially reduce the amount of PAGA penalties to be awarded to the aggrieved employees. Morrison Decl., ¶ 55.

Further, assuming the *Cabrera* case successfully appealed the summary judgment ruling, and without stacking the PAGA penalties for the same violation, the highest amount of penalties that could be awarded for a violation of minimum wage laws (Labor Code section 1197.1) from August 2016 up to April of 2018 (when

---

[7] If limited to the time prior to the change in the policy regarding training from home (e.g. August 3, 2016 to January 2017), the 226(a) PAGA penalties are approximately $4,000,000. If the time period is extended all the way to 2020, the penalties are approximately $24,000,000.  Morrison Decl., ¶ 54.

LEARNet was connected to the time keeping system) is approximately $23,000,000 – based on a violation rate for 90% of employees and 47% of pay periods as revealed by the data.  If the date training at home was prohibited is used (January 2017), the number plunges below $10,000,000.  Morrison Decl., ¶ 56.

Concerning Labor Code sections 850 and 851 (limits on the hours and days worked by pharmacists in two-week period), there is likely no private right of action and recovery would be limited to PAGA civil penalties.  This is because there is no language in these statutes which manifest an intent by the Legislature to allow for a civil lawsuit to be brought by an employee.  *See Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal.4th 592, 596–597 (2010) (*citing Moradi–Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 305 (1988) (The existence of a private right of action depends on whether the Legislature has manifested an intent to create such a right, which is revealed through the language of the relevant statute and its legislative history).  Defendants also contend that the claims are limited to pharmacists and not every employee who happens to work in a store with a pharmacy.  *See, e.g., Association of Mexican-American Educators v. State of California*, 231 F.3d 572, 608 (9th Cir. 2000) (noting that California "heavily regulates the pharmacy industry, including licensing pharmacists, and regulating their authority, duties, and work hours"); *Tormey v. Vons Companies, Inc.*, No. D057912, 2014 WL 4403107, at *8 (Cal. Ct. App. Aug. 27, 2014) (referencing Labor Code section 850 as "restricting the working hours of retail pharmacists").  Morrison Decl., ¶ 57.

Data received from Defendants shows there were approximately 26,000 violations of Labor Code sections 850 and 851 during the relevant time period for pharmacists.  If a full $100 penalty was awarded for each violation regardless of the reason for the violation (i.e. even for reasons other than unpaid training time), the total civil penalties would be $2.6 million.  Morrison Decl., ¶ 58.

Similarly, there is no private right of action for Labor Code sections 550 and 551 (one day's rest in 7).  *See Mendoza v. Nordstrom, Inc.*, 2 Cal.5th 1074 (2017).

Further, pursuant to Labor Code section 584, the sections do not apply in case of emergency, which includes "accident, death, sickness, or epidemic."[8]  Manageability issues thus may arise when determining whether the violations were caused due to an emergency. In terms of the number of observed violations regardless of the reason, there were approximately 8,000+ violations arguably identifiable from the records, with a civil penalty exposure of approximately $800,000.  Morrison Decl., ¶ 59.

Finally, regarding Labor Code section 246(i)'s notice requirements, cases which have considered the issue have ruled that PAGA civil penalties <u>cannot</u> be collected by persons enforcing the law on behalf of the state.  *See Stearne v. Heartland Payment Systems LLC*, 2018 WL 746492, * 2-3 (E.D. Cal. February 2, 2018) (no PAGA  civil penalties for violation of Healthy Workplaces, Healthy Fairness Act of 2014 based on language in Labor Code section 248.5 that states "**any person or entity enforcing this article on behalf of the public as provided for under applicable state law shall, upon prevailing, be entitled only to equitable, injunctive, or restitutionary relief, and reasonable attorney's fees and costs**" [emphasis in original]); *Titus v. McLane Foodservice, Inc.*, 2016 WL 4797497, *5 (E.D. Cal. September 14, 2016) (finding no penalties recoverable for violations of 246's notice requirements by virtue of Labor Code section 2699(g)(2)). This provision states that "[n]o action shall be brought under this part for any violation of a posting, notice, agency, reporting, or filing requirement of [the Labor Code], except where the filing or reporting requirement involves mandatory payroll or workplace injury reporting.") Defendants also provided evidence that the required sick pay notices were in fact posted at CVS stores and that it has a legally compliant sick pay policy.  *See* Exhibits "6" & "7" to Morrison Decl.  As for any notice issues on wage statements relating to sick pay, even if penalties were recoverable, Plaintiffs do not believe that a court would award substantial, additional civil penalties on top of what

---

[8] Labor Code sections 850 and 851 are subject to a similar defense via Labor Code section 854. Morrison Decl., ¶ 59.

it would award for the other wage statement violations in this case.  Stated another way, stacking of penalties here for non-compliant wage statements seems unlikely. Morrison Decl., ¶ 60.

**B.**     **The Settlement Is Fair, Adequate, and Reasonable Given the Extent of Discovery Conducted and the Information Obtained**.

Although this action resolved prior to class certification, Plaintiffs' counsel performed a substantial amount of work in order to investigate the claims, establish a reasonable settlement value, and prepare the case for mediation.  This work included:

(1)     Preparing and serving written discovery;

(2)     Responding to written discovery;

(3)     Locating additional Plaintiffs and filing amended complaints;

(3)     Successfully opposing Defendants' Motion for Judgment on the Pleadings as to Plaintiff Chalian (and unsuccessfully opposing the Motion for Summary Judgment filed in the *Cabrera* action);

(4)     Opposing Defendants' motions to compel arbitration, which demonstrated the enforceability of the arbitration agreements;

(5)     Interviewing numerous Class Members about their work experiences and obtaining declarations;

(6)     Reviewing Defendants' policies and procedures related to the issues at dispute in this lawsuit;

(7)     Reviewing pay records, time punch records, and records related to training time for the Class and hiring an expert statistician to determine the total wages, penalties, and interest owed to Class Members;

(8)     Attending a mediation with a well-respected mediator;

(9)     Reviewing additional data and information from Defendants and doing additional damages calculations and projections in anticipation of a second mediation session;

(10)   Participating in a second mediation session; and

(11)   Reviewing additional data and information provided post-mediation in order to verify the previous calculations made and to ensure the settlement was fair, reasonable, and adequate.

Morrison Decl., ¶ 28.

Accordingly, by the time of settlement, Plaintiffs had a wealth of information upon which to make an informed decision about the appropriate relief necessary to settle this case.  Morrison Decl., ¶ 28.

**C.**   **Counsel Believe That This Is A Fair Settlement**.

The Ninth Circuit has recognized that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).  Class settlements reached in arms-length negotiations between experienced, capable counsels after meaningful discovery are presumed correct.  Manual for Complex Litigation, §30.42 (3rd ed. 1995).

In this case, Plaintiffs and the proposed settlement Class are represented by counsel which are highly experienced in wage and hour and other class action litigation as well as labor and employment law.  See Morrison Decl., ¶¶ 2-6. Defendants are represented by Greenberg Taurig, a firm which has significant experience in class action defense as related to matters arising under state and federal wage and hour laws.  Furthermore, the Parties have negotiated an arms-length settlement in a cordial, yet adversarial manner, before a well-respected third-party mediator.  Morrison Decl., ¶ 61.

Specifically, in anticipation of the mediations with respected mediator David Lowe, both parties submitted comprehensive mediation briefs extensively detailing their legal and factual support.  Additionally, as part of the mediation briefs, Plaintiffs submitted exhibits and other documents to the mediator regarding the claims in the case.  At the two mediation sessions, the parties had an opportunity to learn the legal

and factual strengths and weaknesses of their respective cases.  The case settled after the second mediation. The agreed-upon settlement reflects the realities of each side's case and the information obtained during the discovery process, as well as through informal exchanges, as described above.  The proposed settlement is the result of extensive, informed, arms-length negotiations between counsel with substantial litigation experience, who are fully familiar with the legal and factual issues in this case, and who have specific experience litigating and settling complex and class action cases, including wage and hour class actions.  Morrison Decl., ¶ 62.

Accordingly, Plaintiffs' counsel believe the settlement is eminently fair and reasonable.  The experience of counsel, and the nature and quality of their negotiations, weigh greatly in favor of the District Courts approval.  Morrison Decl., ¶ 63.

**D.** **The Payment to the Named Plaintiffs For Their Services to the Class Is Reasonable and Routinely Awarded by Courts.**

The Representative Plaintiffs seek an incentive/service awards of $10,000.00, each, to Sevag Chalian, Sigfredo Cabrera, Enko Telahun, and Christine McNeely, as well as $3,000.00 to Patrick Brennan.  Plaintiffs' Counsel is of the opinion that the incentive/service awards are reasonable and proper and supported by the particular circumstances of this case and the applicable case law.  Defendants do not oppose this request.

Courts have long acknowledged that active litigants are entitled to be compensated for bearing the risk and time to represent others. *Lo Re v. Chase Manhattan Corp.,* 19 F.E.P. Cas. (BNA) 1366 (S.D.N.Y. 1979).  Where class representatives are provided with special compensation as part of a class settlement, the Court should ensure that it is fair and reasonable.  However, "[i]t is the complete package, taken as a whole, rather than the individual component parts, that must be examined." *Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).

Indeed, incentive awards "are not uncommon and can serve an important function in promoting class action settlements." *Sheppard v. Consol. Edison Co. of N.Y., Inc*., U.S.D.C. Case No. 94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314, at *16 (S.D.N.Y. Aug. 1, 2002);  *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) (noting that class representatives frequently receive substantial incentive payments); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation", *and cases cited therein*).

The modest incentive payments to the named Plaintiffs is intended to recognize their time and efforts on behalf of the Class.  "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *see also Complex Manual* § 30.42 n.763 (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery").  In the *Coca-Cola* case, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  (200 F.R.D. at 694; *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) (approving $50,000 participation award).

The respective service awards to each named Plaintiff are reasonable give the risks they each undertook and bore for the benefit of other members of the Settlement Class and their level of participation in the case. Plaintiffs spent significant time reviewing documents, discussing their experience with Class Counsel, responding to discovery, and reviewing settlement documents, among other things. Throughout the course of the litigation, Plaintiffs provided consistent support to Class Counsel so that

they were able to understand the facts of the matter and adequately prosecute the action. Morrison Decl., ¶ 65.

Plaintiff Sevag Chalian initiated suit against CVS through the *Chalian* action on July 20, 2016.  Since the beginning of this action, Plaintiff Chalian has been deeply involved in this litigation.  Early on, Plaintiff Chalian attended multiple meetings at his counsel's offices in Glendale, California and Santa Monica, California in order to provide information and documents concerning CVS's practices and policies relating to training time for their California pharmacists.  As a pharmacist who had worked in CVS Regions 65 and 72, Plaintiff Chalian was able to provide invaluable information on CVS's policies and practices over a range of pharmacies that Defendants operated.  Plaintiff Chalian's information helped guide Class Counsel's discovery efforts in this action.  Moreover, Plaintiff Chalian has always remained available to discuss with Class Counsel developments in the case, to answer questions Class Counsel may have had about CVS's policies and practices, and to assist Class Counsel in understanding the types of records that CVS has maintained.  In addition, Plaintiff Chalian spent numerous hours with Class Counsel in preparing responses to Defendants' First Set of Special Interrogatories and Requests for Production of Documents.  Further, over the almost four years that this litigation has been pending, Plaintiff Chalian has provided information to his former co-workers about the lawsuit, how they might become involved, and directing them to Class Counsel if they had questions that he could not answer.  Finally, Plaintiff Chalian reviewed the settlement agreement in this action in detail before agreeing to its terms on behalf of the class.  All in all, collectively over the past several years, Plaintiff Chalian estimates that he has spent at least 30 hours of his time in assisting Class Counsel in prosecuting this matter.  Morrison Decl., ¶ 66.

Plaintiff Sigfredo Cabrera filed the original complaint in the *Cabrera* action on August 3, 2017 and has been actively participating in this lawsuit since June 2017. Plaintiff Cabrera underwent in-depth client interview with Class Counsel, responded

to formal written discovery propounded by Defendants, regularly communicated with and provided documentation in support of his claims to Class Counsel, and reviewed various documents, including settlement documents, to assist Class Counsel throughout the litigation. Morrison Decl., ¶ 67.

Plaintiff Enko Telahun was added as a named Plaintiff in the first amended complaint filed on September 5, 2017 and has actively participated in the litigation of this action since August 2017. In preparation for his inclusion into the *Cabrera* action, Plaintiff Telahun underwent an in-depth client interview with Class Counsel and provided important documentation related to his claims, including text messages and emails from the time he worked at CVS. Plaintiff Telahun also responded to formal written discovery propounded by Defendants, and was regularly responsive to Class Counsel's requests for information and clarification. Plaintiff Telahun was also an active participant in the settlement process prior to reviewing and signing the settlement agreement. Morrison Decl., ¶ 68.

Plaintiff Christine McNeely was added as a named Plaintiff in the second amended complaint filed on March 19, 2018 in the *Cabrera* action. Plaintiff McNeely has been involved in the *Cabrera* litigation since October 2017 when she underwent and in-depth intake interview with Class Counsel regarding her experience working as a Pharmacy Technician at CVS.  Plaintiff McNeely responded to formal written discovery propounded by Defendants and provided Class Counsel with important information related to this case, including names and contact information of potential witnesses. In addition, Plaintiff McNeely spent significant time preparing for a deposition in March and April of 2018, although the deposition was ultimately not held. Plaintiff McNeely was also actively involved in the settlement process, maintaining contact with Class Counsel prior to reviewing and signing the settlement agreement. Morrison Decl., ¶ 69.

Plaintiff Patrick Brennan was added as a named Plaintiff, on behalf of himself and the proposed Pharmacist Settlement Class, in the recently filed consolidated

complaint. However, Plaintiff Brennan has been involved in the *Cabrera* matter since June 2018. Plaintiff Brennan participated in an in-depth intake interview with Class Counsel and provided a declaration in support of the Cabrera action based on his experience working as a Pharmacy Technician at CVS. Since then, Plaintiff Brennan has been on "stand-by" as a potential class representative until the filing of the consolidated complaint. After Class Counsel obtained Plaintiff Brennan's personnel file from CVS, Plaintiff Brennan diligently reviewed the documents to confirm accuracy and provided consistent support to Class Counsel so that they could understand the facts of the matter. Similarly, Plaintiff Brennan was involved in the settlement process and reviewed and signed the settlement agreement, after lengthy discussions with Class Counsel. Morrison Decl., ¶ 70.

Overall, the respective service awards are appropriate as Plaintiffs provided Class Counsel with valuable information that assisted with the prosecution of this Action. All named Plaintiffs provided detailed statements about their experience and undertook the risks associated with bringing this Action, such as being financially responsible in the event the case was unsuccessful. Moreover, by being named representatives in the action, Plaintiffs potentially put themselves at personal risk for costs if the action were to end with a defense verdict. And, as named representatives, Plaintiffs each put their name forward on the public record at the risk of future or potential employers choosing not to hire them based on their undertaking in the action. For the reasons stated above, enhancement awards to each Class Representative are appropriate and reasonable. Morrison Decl., ¶ 71.

## E.   The Requested Awards for Plaintiffs' Counsel's Attorneys' Fees and Costs Are Reasonable, Fair, and Appropriate Under the Common Fund Doctrine.

Plaintiffs' counsel request that the Court approve reimbursement of their costs incurred in prosecuting this matter and anticipated future costs, up to $50,000

(currently at $32,399.62)[9], from the Maximum Settlement Amount.  See Morrison Decl., ¶ 73 and Exhibit "3" to Morrison Decl.  Defendants do not oppose this request.  Plaintiffs' counsel also request that the Court approve an award of attorneys' fees in the amount of $2,925,000 – or approximately 30% of the Maximum Settlement Amount.  Defendants also do not oppose this request.  As discussed below, these amounts are fully warranted in this case and are well within the range awarded in similar cases.

The Plaintiffs are entitled to payment of attorneys' fees and costs.  *See* California Labor Code §§ 218.5, 226, 1194, and 2698, et seq.; California Code of Civil Procedure §1021.5; *Maria P. v. Riles,* 43 Cal. 3d 1281, 1290-91 (1987); *Westside Cmty. for Indep. Living, Inc. v. Obledo*, 33 Cal. 3d 348, 352-53 (1983) (attorney fee awards may be justified even where a lawsuit never reached final judgment).

Here, Plaintiffs seek an award of counsel's attorneys' fees and costs under the common fund doctrine, which federal courts have customarily used in awarding fees and costs in settlements of wage and hour class actions.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Six (6) Mexican Workers v. Arizona Citrus Growers* (9th Cir. 1990) 904 F.2d 1301, 1311.

The common fund doctrine is grounded in the principles of quantum meruit and unjust enrichment.  *See* 2 Newberg, §14:6.  The doctrine prevents the unjust enrichment of the absent members of the class at the expense of the attorneys and class representative, who have assumed the front line risk of prosecuting the case.  *Id.*  The common fund – or "percentage" – method offers the advantage of helping to ensure that the fee award will provide an incentive both for attorneys to take on risky cases where

---

[9] $6,820.12 [AK+G]; $9,152.62 [Boyamian Law]; $12,758.51 [Clark Law Group]; $3,668.37 [Law Offices of Thomas W. Falvey] = **Total: $32,399.62**. Morrison Decl., ¶ 73 and Exhibit "3" to Morrison Decl.

the benefits on recovery are dispersed, and to settle the case rather than litigate it fully to increase a "lodestar" award that is solely a function of billable hours, and rife with adverse incentives to protract the case. *Dublin v. E.F. Hutton Group, Inc.* 878 F. Supp 616, 621 (S.D.N.Y. 1995) ("the percentage method offers the advantage of helping to ensure . . . that attorneys will have an incentive to settle the case rather than to litigate it fully in order to increase the lodestar.").

As summarized in *Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999):

> No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expanded.

A thirty percent fee award of the Maximum Settlement Amount is appropriate in this case.  Courts in the Ninth Circuit have ruled 25% is the benchmark courts should use as a <u>starting point</u> to determine the percentage of attorneys' fees to award from a common fund (see *Hanlon*, 150 F.3d at 1029), <u>with 20%-30% being "the usual range."</u> *See Black v. T-Mobile USA, INC.*, 219 WL 3323087, *6 (N.D. Cal July 24, 2019), *citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Courts can adjust this 25% upward based on the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of the work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards in similar cases.  *Id., citing Vizcaino*, 290 F.3d at 1048-1050.

As will be explained in more detail in Plaintiffs' Motion for Attorneys fees which will be filed before final approval, each of the factors support a modest upward adjustment of 5%.  First, despite the significant factual and legal hurdles described above (e.g. arbitration clauses, class certification issues, policy prohibiting training

outside of work hours, releases from previous settlements with overlapping claims), Plaintiffs were able to obtain a $9.75 million dollar settlement.  Plaintiffs faced a significant risk of recovering nothing if litigation continued.  Indeed, Plaintiff Cabrera's case was dismissed on summary judgment – a fact which shows the perils of litigation such as this.

Plaintiffs' counsel also demonstrated skill in navigating these legal and factual hurdles to achieve this result. For example, Plaintiff Chalian was successful in defeating Defendants' motion for judgment on the pleadings.  Plaintiffs' counsel also spoke to numerous Class Members and obtained detailed declarations from them. These declarations were used to demonstrate Defendants' knowledge that off-the-clock training was occurring throughout California.  Further, Plaintiffs' counsel prepared an extensive damages analysis based on the voluminous and complicated data provide by Defendants.  This was not a case where the range of damages was determined merely by looking at pay and time records.  Instead, Plaintiffs' counsel and their expert reviewed data showing when Class Members logged on to training modules (LEARNet) and separate data showing how long they spent on the training modules (Site Minder) to determine the off-the-clock training time.  This data was cross referenced against their time punches to determine whether the work was done outside of their normal shifts or during meal periods.  Plaintiffs then reviewed the payroll records to ensure this time was unpaid.  Plaintiffs again reviewed the time records to determine if the off-the-clock time should be paid at the OT rate.

Plaintiffs' counsel also advanced all costs in this matter and their fees are entirely contingent in nature.  None of Plaintiffs' counsel have received any compensation for their services during the approximate four years this case has been pending.

Lastly, the award sought by Plaintiffs is commensurate with awards given in

similar cases.[10] *See Bower v. Cycle gear, Inc.*, 2016 WL 4439875, *6 (N.D. Cal August 23, 2016) (awarding 30% of common fund in wage and hour action); *Vasquez v/ Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (granting fees of 1/3 of the common fund in wage and hour action; citing to wage and hour cases where courts approved awards ranging from 30 to 33 percent); *Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 7842550, *9 (C.D. Cal. November 11, 2019) (awarding 35% in wage and hour action); *Brown v. CVS Pharmacy, Inc.*, No. CV 15-7631 PSG (PJWx), 2017 WL 3494297, at *6 *7 (C.D. Cal. Apr. 24, 2017)(awarding 30 percent of the common fund in attorneys' fees in a wage and hour class action settlement); *Fernandez v. Victoria Secret Stores*, LLC, No. CV 06-4149 MMM (SH), 2008 WL 8150856 (C.D. Cal. July 21, 2008) (awarding 34 percent of the common fund in attorneys' fees in a wage and hour class action settlement); *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959 (C.D. Cal. Aug. 4, 2015) (approving attorneys' fees of 30 percent of the settlement fund); *Garcia v. Gordon Trucking, Inc.*, No. CV 10-0324 AWI (SKO), 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (approving fees in the amount of 33 percent of the common fund); *Knight v. Red Door Salons, Inc.*, No. 08-1520 SC, 2009 WL 248367,

---

[10]   Numerous federal courts have awarded attorney fees equal to or higher than 30 percent of the settlement. *See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 (1995 U.S. App. LEXIS 2330) (upholding award of 33 1/3% of $12 million settlement); *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) (affirming award of 33% of 14.8 million settlement); *Antonpulos v. North American Thoroughbreds, Inc.,* Fed. Sec.L.Rep. (CCH), ¶96,058  (S.D. Cal. 1991) (33 1/3 of $3.1 million); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 146-47 (E.D. Pa 2000) (1/3 of $5.97 million); *In re Crazy Eddie Securities Litigation*, 824 F. Supp. 320, 326-327 (E.D.N.Y. 1993) (33.8% of $42 million); *In re Safety Components International, Inc.*, 166 F. Supp.2d 72, 109 (D.N.J. 2001) (1/3 of net $4.31 million); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding 32.8% of $42 million); *In re Ampicillian Antitrust Litigation*, 526 F.Supp. 494 (D.D.C. 1981) (awarding 45% of $7.3 million settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420  (S.D.N.Y. 1981) (awarding 36% of the settlement fund).

at *17 (N.D. Cal. Feb. 2, 2009)("nearly all common fund awards range around 30%"); *Singer v. Beckton Dickinson and Co.*, No. 08-CV-821 IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving an attorneys' fee award of 33.33 percent). These similar fee awards in other wage and hour class action cases also weigh in favor of an upward departure.

Accordingly, Plaintiffs' fee request is fair and reasonable given that Plaintiffs' counsel's effectiveness in prosecuting this case has translated into the following benefits, tangible and intangible, for the Class:

(1)    A Settlement of $9,750,000;

(2)     Class Members will receive money now rather than waiting a number of years for a settlement or verdict and the conclusion of appeals (or worse, not receiving any benefits at all);

(3)    The rights of individuals, whose cases would likely not have been individually prosecuted, were upheld;

(4)    There has been, and will continue to be, an increased awareness on the part of Class Members and those with whom they associate of their legal rights in the workplace under California law.

Counsel therefore requests that the Court preliminarily approve Plaintiffs' request that counsel's costs be reimbursed from the Settlement and that counsel receive thirty percent (30%) of the Settlement.[11] [12]

///

///

///

---

[11] In connection with the Motion for Attorneys' Fees for Final Approval, Plaintiff's counsel will provide their lodestar so the Court may perform the "lodestar" cross-check to determine the reasonableness of the fees sought.

[12] Plaintiff further seeks reimbursement for claims administration expenses not to exceed $75,000 (current estimate is $75,000), and for Simpluris, Inc. to be appointed as Claims Administrator. Morrison Decl., ¶ 74.

# V.   THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES.

## A.   The Proposed Classes Meet All Of The Requirements Of Rule 23(a).

The Plaintiff seeks conditional certification of the following Settlement Classes:

**Pharmacist Settlement Class**: All hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and the date of the Preliminary Approval Order, whose claims are not subject to arbitration and which have not previously been released and/or adjudicated, and whose LEARNet and/or Site Minder data indicates activity when time punch records do not show he or she was clocked-in.

**Retail Pharmacy Settlement Class**: Any person who is not a Pharmacist Settlement Class Member who held an hourly, non-exempt position in a CVS retail pharmacy in the State of California between August 3, 2014 and the date of the Preliminary Approval Order who has not previously released and/or adjudicated the Released Claims.

Plaintiffs submit that this action meets all of the prerequisites for certification as a class action.  "A court may certify a class if the plaintiff demonstrates that all of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied and at least one of the requirements of Rule 23(b) is satisfied."  *Morton v. Valley Farm Transp., Inc.*, 2007 WL 1113999 at *3 (ND. Cal. 2007); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Federal Rule of Civil Procedure 23 ("Rule 23"), paragraph (a), requires the following four factors be met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  In short, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.  The proposed Class easily meets

all of the Rule 23 requirements.

### 1.    <u>Numerosity</u>

Defendants have represented that the number of Class Members is approximately 20,897.  Morrison Decl., ¶ 72.  Joinder of 20,000+ class members would, of course, be impracticable, and thus the numerosity requirement is easily met.  *See In re Itel Sec. Litg.*, 89 F.R.D. 104, 111-112 (N.D. Cal. 1981).

### 2.    <u>Typicality</u>

To demonstrate typicality, Plaintiffs must show that the named party's claims are typical of the class. Fed.R.Civ.P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.*

Here, Plaintiffs assert they have suffered the same injury as other Class Members as a result of the same course of conduct and that there are no unique defenses to the Plaintiffs.  The typicality requirement is therefore satisfied.

### 3.    <u>Commonality</u>

Commonality requires there be questions of law and fact common to the class. Fed. R. Civ. P. 23(a)(2). A question is common to the class where it is capable of resolution on a class wide basis, meaning that determination of its truth or falsity will directly resolve an issue that is central and valid to each one of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Notably, a single common question is sufficient to satisfy Rule 23(a)(2). *Id*. at 359.

The commonality requirement is met in this case because resolution of the class claims depends on common questions of law and fact about the Class Members' employment with CVS.  For instance, Plaintiffs allege CVS had a common policy of

not compensating Class Members for training done outside of their shifts or during meal periods. This policy led to several other derivative violations, including claims for inaccurate wage statements, waiting time penalties, unpaid overtime, minimum wage violations, etc.  Thus, the commonality requirement is met.

### 4.   Adequacy

Because Class Members who are not named parties are bound by a judgment, due process is satisfied only where the absent class members' interest are adequately protected by the representative class members.  *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994).  The test is whether the named plaintiffs have interests that conflict with, or are antagonistic to, the interests of the other class members.  *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997).  No such conflict of interest exists here.  The named Plaintiffs have an interest in proving liability against Defendants for each of the claims alleged in the Complaint, and this interest is identical to the interest of each absent Class Member.  Further, Plaintiffs' Counsel have significant experience representing classes of employees in wage and hour litigation, and have reached an adequate settlement of this class action.

### B.   The Requirements of Rule 23(b) Are Satisfied

In addition to meeting the requirements outlined in Rule 23(a), the parties seeking class certification must also show the action is maintainable under Rule 23(b). *Hanlon*, 150 F.3d at 1022. Under Rule 23(b)(3) there must be a showing that questions of law or fact predominate over individual questions and that a class action is a superior means of resolving the dispute. Fed. R. Civ. P. 23(b)(3).

### 1.   Common Issues Predominate

Common issues will predominate over individual issues if the common issues "represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015) *quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure*, § 1778 (3 ed. 1998).  Class certification for purposes of settlement is

proper even if minor factual differences exist between the class members. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  Moreover, the law is clear that the class certification is appropriate where the plaintiff challenges a common policy or practice which is applicable to all class members.  *See Wershba v. Apple Computer*, 91 Cal.App.4th 224, 238 (2001) (Where all "class members have suffered a common alleged wrong", class action is appropriate);  *Gasperoni v. Metabolife, International*, 2000 WL 33365948, *6 (E.D. Mich. 2000) (holding where all plaintiffs allege a common method of misrepresentation and all allege the same legal claim, class action is appropriate); *Employment Development Department v. Superior Court*, 30 Cal.3d 256, 265 (1981) (stating class action appropriate where a large number of applicants have been harmed on the basis of an invalid administrative practice).

In this case, Plaintiffs' claims arise from CVS's common policies and practices. For example, Plaintiffs assert that CVS has a uniform policy and practice of failing to compensate its pharmacy employees for the time they are required to spend on training modules performed outside of their normal shifts or during meal periods. To prove this, Plaintiffs intend to rely on Defendants' records, which reveal Class Members' activity on the LEARNet site, and whether that time was accounted for in time records and compensated.  A number of the claims plead in the complaint are derivative of this policy and practice and therefore can be proved based on CVS own records.

These facts are sufficient to certify a class for off-the-clock training time.  See *Bernstein v. Virgin America, Inc.* (N.D. Cal. Nov. 7, 2016) 2016 WL 6576621 at * 13-14 (certifying off-the-clock claims premised in part on mandatory training done outside of shifts); *Moore v. International Cosmetics and Perfumes, Inc.* (C.D. Cal. March 17, 2016) 2016 WL 7644849 at *16 (certifying class for off-the-clock training); *Harris v. Vector Marketing Corp.* (N.D. Cal. 2010) 753 F.Supp.2d 996, 1019 (certifying unpaid training class where training was mandatory); *Guiterrez v. Kovacevich "5" Farms* (December 2, 2004) 2004 WL 3745224 at *9-11.

Indeed, that some stores may have paid <u>some</u> employees for the training done outside of their normal shifts is not enough to defeat class certification.  See *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.* (C.D. Cal. 2015) 311 F.R.D. 590, 616-617 (granting class certification even though employer submitted evidence some bag checks occurred on-the-clock; finding overwhelming majority of bag checks were off-the-clock).

### 2.   Class Certification is a Superior Means of Resolution

Class certification must be a superior means of resolution. Fed. R. Civ. P. 23(b)(3).  In this case, certification of the Settlement Class will permit the small claims of over 20,000 Class Members – virtually all of which would otherwise have to be resolved in individual arbitration - to be resolved at the same time. Thus, the individuals will have the opportunity to obtain redress for claims that may otherwise be too insignificant to warrant individual litigation. Additionally, certification will also eliminate the possibility of repetitive litigation. Furthermore, the members of the Settlement Classes have the opportunity to control the litigation by electing to exclude themselves from the settlement. Therefore, class wide resolution is a superior method of resolving the dispute.

## VI.   THE PROPOSED CLASS NOTICE IS APPROPRIATE.

### A.   The Class Notice Satisfies Due Process.

The notice plan here entails mailing the notice to all known and reasonably ascertainable Class Members based on records maintained by Defendants. Defendants have agreed to provide the addresses for all settlement Class Members. To the extent any of the addresses are no longer current, a "skip trace" will be conducted to locate the particular Class Member.  Such notice is more than sufficient to satisfy due process.  The Parties believe that the method of notice will prove to be effective.

Given the addresses of each of the Class Members are available from Defendants' records, the parties do not believe it would be cost effective to employ

other methods of notice, such as notice by publication.  A website created by the Claims Administrator will be used to keep Class Members updated on the approval process.

**B.      The Proposed Class Notice is Accurate and Informative.**

The proposed Notice of Settlement (Exhibit 2 Morrison decl.) provides information on the meaning and nature of the proposed Settlement Class; the terms and provisions of the Settlement; the relief the Settlement will provide Settlement Class members; how Class Members will receive their portion of the settlement proceeds; the application by Plaintiffs' counsel for reimbursement of costs and attorneys' fees; the date, time and place of the final Settlement approval hearing; and the procedure and deadlines for opting out of the Settlement or for submitting comments and objections.

The Notice of Settlement also fulfills the requirement of neutrality in class notices.  It summarizes the proceedings to date, and the terms and conditions of the settlement, in an informative and coherent manner, in compliance with the Complex Manual's statement that "the notice should be accurate, objective, and understandable to class members."  Complex Manual § 30.211.  The Notice of Settlement clearly states it does not constitute an admission of liability by Defendants, and recognizes the Court has not ruled on the merits of the action.  It also states that the final settlement approval decision has yet to be made.  Accordingly, the Notice of Settlement complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.  See Fed. R. Civ. P. 23(c)(2); 23(e); Complex Manual §§ 30.211, 30.212.

**VII.   THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.**

The last step in the settlement approval process is the formal hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed Settlement.  At that hearing, proponents of the settlement may explain and describe its terms and conditions and offer argument in support of settlement approval;

members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Settlement Agreement.


Dated: June 19, 2020                    Respectfully submitted,

                                         ALEXANDER KRAKOW + GLICK LLP


                                         By:  /s/ Michael Morrison
                                              Michael S. Morrison
                                              Attorneys for Plaintiffs and the proposed
                                              Classes

# CERTIFICATE OF SERVICE

I, Michael Morrison, an employee in the City of Los Angeles, certify that on June 19, 2020, caused a true and correct copies of the foregoing be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who has registered for receipt of documents filed in this matter:

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES;

DECLARATION OF MICHAEL MORRISON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E) OF THE FEDERAL RULES OF CIVIL PROCEDURE;

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, SETTING OF A FINAL APPROVAL HEARING, AND APPROVAL OF NOTICE TO THE CLASS;

JOINT STIPULATION TO EXTEND PAGE LIMIT FOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL;

[PROPOSED] ORDER EXTENDING PAGE LIMIT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

## [SEE SERVICE LIST]

June 19, 2020                    ALEXANDER KRAKOW + GLICK LLP


                                 By:    s/ Michael Morrison
                                        MICHAEL MORRISON
                                        Attorneys for Plaintiff,
                                        Sevag Chalian

## SERVICE LIST

| *Counsel for Defendant:* | *Co-Counsel for Plaintiff:* |
|---|---|
| Tyler R. Andrews, Esq.<br>Roger L. Scott, Esq.<br>Christina Signs, Esq.<br>GREENBERG TRAURIG, LLP<br>3161 Michelson Drive, Suite 1000<br>Irvine, California 92162<br>Tel: 949 732 6500<br>Fax: 949 732 6501<br>Email: andrewst@gtlaw.com<br>scottro@gtlaw.com<br><br>R. Craig Clark, Esq.<br>The Clark Law Group<br>3258 Fourth Avenue<br>San Diego, California 92103<br>Tel: 619 239 1321<br>Fax: 888 273 4554<br>Email: cclark@clarklawyers.com<br>mrodriguez@clarklawyers.com | Michael H. Boyamian, Esq.<br>Armand R. Kizirian, Esq.<br>Boyamian Law, Inc.<br>550 N. Brand Blvd., Suite 1500<br>Glendale, California 91203<br>Tel: 818 547 52300<br>Fax: 818 547 5678<br><br>Thomas W. Falvey, Esq.<br>Law Offices of Thomas W. Falvey<br>550 N. Brand Blvd., Suite 1500<br>Glendale, California 91203<br>Tel: 818 547 5200<br>Fax: 818 500 9307 |