1

**ALEXANDER KRAKOW + GLICK LLP**
Michael S. Morrison (State Bar No. 205320)
2   1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
3   T: 310.394.0888 | F: 310.394.0811
E: mmorrison@akgllp.com

4
Attorneys for Plaintiffs
5   individually,
on behalf of themselves, all others
6   similarly situated, and the general public.

7

8                    **UNITED STATES DISTRICT COURT**

9              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10   SEVAG CHALIAN, an Individual, et al.,          CASE NO.: 2:16-cv-08979-AB-AGR
on behalf of themselves and all others
11   similarly situated and the general public,     *Assigned to Hon. André Birotte Jr.*

12                              Plaintiffs,
State Case No.: BC 627757
13          vs.                                     State Action Filed: July 20, 2016
Removal Date: December 5, 2016
14   CVS PHARMACY, INC., a Rhode Island
corporation; CVS RX SERVICES, INC.,
15   a New York corporation; GARFIELD               **DECLARATION OF MICHAEL**
BEACH CVS, LLC, a California limited             **MORRISON IN SUPPORT OF**
16   liability company; and DOES 1 through          **PLAINTIFFS' MOTION FOR**
100, inclusive,                                 **PRELIMINARY APPROVAL OF**
17                                                  **SETTLEMENT AND DIRECTION**
Defendants.                    **OF NOTICE UNDER RULE 23(E)**
18                                                  **OF THE FEDERAL RULES OF**
**CIVIL PROCEDURE**
19

20                                                  Date: July 24, 2020
Time: 10:00 am
21                                                  Location: Crtm. 7B,
350 West First St.,
22                                                           Los Angeles, CA

23

24

25

26

27

28

## DECLARATION OF MICHAEL MORRISON

I, Michael Morrison, declare as follows:

1.     I am an attorney-at-law and of-counsel at the law firm of Alexander Krakow + Glick LLP.  I am duly admitted to practice before this Honorable Court and am one of the attorneys of record for Plaintiff in this action.  I have personal knowledge of the facts set forth herein, (except where indicated upon information and belief) and if called as a witness, could and would testify competently thereto.  I am making this declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement and Direction of Notice Under Rule 23(e) of the Federal Rules of Civil Procedure.

## LEGAL EXPERIENCE AND EXPERIENCE WITH COMPLEX LITIGATION

2.     I am a 1999 graduate of the University of California at Los Angeles School of Law and was admitted to the California State Bar in 1999.

3.     Since admission to the California State Bar, I have been in continuous practice, which now spans over 20 years. My main areas of practice since becoming an attorney are: (1) class action litigation, including wage and hour class actions, equal pay act class actions, constitutional class actions, employment class actions and civil torts class actions; (2) employment and labor law; (3) constitutional/civil rights law, including police misconduct cases; (4) appellate law; and (5) civil tort litigation.

4.     I have been a member of the United States Supreme Court Bar since 2004.  I co-authored a merits briefs to the United States Supreme Court in the case *Muehler, et al. v. Mena* (2004) 544 U.S. 93. In addition, three cases I personally briefed and argued at the appellate level have been published. These cases are *Blankenhorn v. City of Orange, et al.* (9th Cir. 2007) 485 F.3d 463; *Macias v. County of Los Angeles, et al.* (2006) 144 Cal.App.4th 313; and *Cinquegrani, Royea v. Department of Motor Vehicles for the State of California, et al.* (2008) 163

Cal.App.4th 741. I also briefed and argued a published decision at the district court level – *Dalkilic v. Titan Corp.* (S.D. Cal. 2007) 516 F. Supp. 2d 1177.

5.     I have been class counsel on a number of class action cases where substantial settlements were achieved. These include, but are not limited to, the following:

a.     *Shoff v. AT&T Services, Inc., et al.* [United States District Court, Central District of California, Case No. CV 07-3289 DSF (AGRx)] (mis-classification wage and hour case resulting in $16 million settlement);

b.     *Doyle v. AT&T Services, Inc.* [United States District Court, Southern District of California, Case No. 08-1275 JAH Wmc] (mis-classification wage and hour case resulting in $10.5 million settlement);

c.     *Waters v. AT&T Services, Inc.* [United States District Court, Northern District of California, Case No. Case No. CV 09-3983 BZ] (mis-classification wage and hour case resulting in $17 million settlement);

d.     *Lita v. Bunim-Murray* [Los Angeles County Superior Court, Case No. BC 350590] (overtime case against reality television company resulting in $5 million settlement);

e.     *Avery v. OCTA, TCA* [Orange County Superior Court, Case No.: 07CC00004] (constitutional class action against toll road agencies resulting in over $40 million in economic benefits to class members and sweeping injunctive relief);

f.     *Morrison, et al. v. Six Flags Theme Park, Inc.* [Los Angeles County Superior Court, Case No. BC 253314] (race and ethnic discrimination case resulting in settlement over $5 million);

g.     *Cinquegrani v. Department of Motor Vehicles* [Los Angeles County Superior Court, Case No. BC 355720] (due process class action against the DMV resulting in $5,600,000 settlement);

        h.       *Odrick v. UnionBancal Corporation* [United States District Court, Northern District of California, Case No. CV 10 5565 SBA] (misclassification class action on behalf of 132 class members; $3,500,000 settlement); and

        i.       *Mendez, et al. v. R+L Carriers, Inc., et al.* [Northern District of California, Case No. CV 11-02478 CW] (meal and rest break, minimum wage claim resulting in $9,500,000 settlement);

        j.       *Contreras v. Performance Food Group, Inc., et al.* [Northern District of California, Case No: 4:14-CV-03380-PJH] (meal and rest break, minimum wage claim resulting in $3,750,000 settlement.

        k.       I was also a member of the steering committee for the Plaintiff's side in the coordinated action The Clergy Cases (Clergy I), Case No. JCCP 4286, which settled for over $660 million dollars with the Archdiocese of Los Angeles for sexual abuse committed against minors by priests of the Los Angeles Archdiocese.

      6.       I am currently lead counsel on no less than 10 class action cases. I also am regularly asked to speak at seminars and CLE's on wage and hour and employment related issues. For example, I have spoken at the State Bar Convention, the State Bar Wage and Hour Convention, and Los Angeles County Bar Labor and Employment Symposium.

## HISTORY OF THIS LITIGATION

      7.       I am fully familiar with the facts and history of this case as I have been one of the lead counsel since the inception of the class action case.

## Chalian Action

      8.       On July 20, 2016, Sevag Chalian filed a putative wage and hour class action against CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS LLC ("CVS") in the Los Angeles County Superior Court of the State of California, and on December 5, 2016, CVS removed that action to the United States District Court for the Central District of California, Case No. 2:16-cv-08979, where it

remains pending (the "Central District of California Action").

9.      On July 24, 2017, Plaintiff Chalian moved for leave to file a First Amended Complaint to add Tamara Aleksandryan as a second named plaintiff and class representative. In the First Amended Complaint, Plaintiffs sought to represent themselves and all Pharmacists employed by CVS in Region 65 and 72 of California during the relevant period. The First Amended Complaint alleges CVS failed to pay all wages owed and minimum wage violations (Labor Code § 1194), failed to pay overtime compensation (Labor Code § 1194), failed to provide accurate itemized wage statements (Labor Code § 226), incurred waiting time penalties (Labor Code §6 201-23), and engaged in unfair business practices (Bus. & Prof. Code §§ 17200 et seq.).

10.     Plaintiff Chalian obtained leave to add Tamara Aleksandryan as a second plaintiff but CVS quickly moved to compel arbitration. The Court granted CVS's motion and dismissed Aleksandryan from the Chalian suit.

11.     Defendants also moved for judgment on the pleadings arguing *res judicata* barred Plaintiff Chalian from prosecuting this action because he participated as a settlement class member in prior class action settlements with CVS. Although the Court denied Defendants' motion, CVS has said it intends to pursue the issue again at summary judgment and on appeal, if necessary.

### Cabrera Action

12.     On August 3, 2017, Sigfredo Cabrera filed a putative wage and hour class action against CVS in Alameda County Superior Court of the State of California.

13.     On September 5, 2017, Mr. Cabrera amended his action to add Enko Telahun as a second named plaintiff.

14.     On October 9, 2017, CVS removed Mr. Cabrera's and Mr. Telahun's action to the United States District Court for the Northern District of California, Case

No. 3:17-cv-05803 (the "Northern District of California Action").

15.     On March 19, 2018, Plaintiffs Cabrera, Telahun and McNeely filed the second amended complaint, which alleges on behalf of Ms. McNeely and other Pharmacy Employees that CVS failed to pay minimum wages and overtime compensation (Labor Code §§ 204, 510, 558, 1194, 1197, 1197.1 and 1198); failed to provide legally compliant meal periods or compensation in lieu thereof (Labor Code §§ 226.7 and 512); failed to provide legally compliant rest periods or compensation in lieu thereof (Labor Coode § 226.7); failed to pay wages owed (Labor Code §§ 201-203); failed to furnish accurate itemized wage statements (Labor Code §§ 226 and 226.3); failed to maintain accurate records (Labor Code §§226(a), 226.3, and 1174); failed to reimburse for necessary work expenses (Labor Code §§ 2800 and 2802); and participated in unfair business practices (Bus. & Prof. Code §§ 17200 et seq.). The second amended complaint also alleged pursuant to the California Private Attorney General Act, Lab. Code §§ 2698, et seq. ("PAGA"), and on behalf of Plaintiffs Cabrera and Telahun, and other aggrieved employees that CVS owes civil penalties for alleged violations of Labor Code §§ 201-203, 204, 226, 226.3, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2800, and 2802 and relevant IWC Wage Orders. (Id.)

16.     On July 10, 2018, Mr. Cabrera, Mr. Telahun, and Ms. McNeely sent CVS a proposed Third Amended Complaint naming Patrick Brennan as a fourth named plaintiff in the Northern District of California Action.

17.     On September 14, 2018, the Northern District of California (Hon. William Alsup) denied CVS's motion to compel Ms. McNeely's claims to arbitration subject to an evidentiary hearing to determine whether she validly opted out of CVS's arbitration program.  CVS appealed the decision denying its motion to compel arbitration to the United States Court of Appeals for the Ninth Circuit, Case No. 18-15459 (the "McNeely Appeal").

18.     On September 25, 2018, the Northern District of California (Judge William Alsup) granted summary judgment in CVS's favor on Mr. Cabrera's and Mr. Telahun's PAGA claims. Specifically, relying on the Court of Appeal decision in *Kim v. Reins*, 18 Cal.5th 1052, 1055 (2017), the Court ruled Cabrera and Telhun were not aggrieved employees because they had voluntarily dismissed their individual and class claims when they filed an amended complaint to avoid arbitration. On January 1, 2019, at Plaintiffs' request, the Court entered a partial final judgment pursuant to Fed. R. Civ. P. 54(b), permitting Mr. Cabrera and Mr. Telahun to appeal the dismissal of their PAGA claims to the United States Court of Appeals for the Ninth Circuit, Case No. 19-15059 (the "Cabrera/Telahun Appeal"). The Plaintiffs appealed and while their case was pending on appeal, the California Supreme Court reversed the *Kim v. Reins* appellate decision, finding that a plaintiff who settled their individual claims for compensation still has standing to pursue a PAGA action. *Kim v. Reins*, 9 Cal.5th 73 (2020). There is therefore little doubt Plaintiffs would have prevailed on appeal and, based on conversations with Defense counsel, Defendants long recognized this was a possibility due to the California Supreme Court having previously granted review of the case.

### Joint Prosecution of Chalian and Cabrera Actions and Settlement

19.     In 2018, counsel for the Plaintiffs in the Central District of California Action and the Northern District of California Action decided to work cooperatively and jointly prosecute their respective actions. To that end, the Parties executed new fee sharing agreements with Plaintiffs.

20.     On March 7, 2019, Plaintiffs' counsel submitted a letter to the California Labor and Workforce Development Agency PAGA Administrator on behalf of a potential new Plaintiff, May Eldanaf. The letter claimed, among other things, CVS failed to pay her and other pharmacists for mandatory training they were required to complete and that she intended to file a wage and hour action on behalf of herself and

other aggrieved employees (the "Eldanaf PAGA Claim").

21.   On July 29, 2019, Claimants and CVS (together, "the Parties") mediated the Central District of California Action, the Northern District of California Action, and the Eldanaf PAGA Claim (collectively, the "Wage and Hour Actions") in San Francisco, California before David A. Lowe, Esq., of Rudy Exelrod Zieff & Lowe LLP, a prominent and well-respected mediator in wage and hour class litigation. Before mediation, there was a robust exchange of information and data, including but not limited to the following:

a.   Class list containing persons who did not execute arbitration agreements;

b.   Excel spreadsheets detailing dates of employment, annual salary, and hourly rate for employees in the Class;

c.   Excel spreadsheets containing LEARNet data, which shows when a sampling of Class Members logged into training;

d.   Excel spreadsheet containing Site Minder data for 2017 and 2018, which reflects Class Member activity on the LEARNet training site;

e.   Excel spreadsheets showing time punches for a sampling of Class Members, which, when compared to LEARNet data, identifies persons who logged onto LEARNet while not clocked in. The same data also helps reveal potential Labor Code section 850-851 and 550-551 violations;

f.   Excel spreadsheet showing what was paid to Class Members each pay period; and

7.   Relevant policies and procedures regarding training modules, off the clock work, sick pay, reimbursement policy, meal and rest periods, etc.

22.   Plaintiffs hired an expert statistician to analyze the data and determine the damages, interest, and penalties (statutory and civil) owed to Class Members. Specifically, the LEARNet and Site Minder data was used to determine when Class

Members logged into CVS's training system as well as the average duration of each session. These figures were then applied to the entire Class.

23.     Additional information and data were exchanged between the parties during the mediation. Although the actions did not settle at the July 29, 2019 mediation, subsequent discussions and arms-length negotiations through Mr. Lowe caused the parties to schedule a second day of mediation. Before this second mediation, additional data was provided to confirm the class size, average hourly rate of pay, and number of pay periods/workweeks at issue for the Settlement Classes. Plaintiffs' expert conducted additional calculations using this new information.

24.     On November 11, 2019, the Parties engaged in a second day of mediation before David A. Lowe, Esq., and came to an agreement in principal to resolve all pending wage and hour disputes between them. Subsequent to this, additional pay and time data, as well as additional written policies, were provided to Plaintiffs to verify further the accuracy of their analysis and projections, and to ensure the Settlement was fair, reasonable, and adequate. Plaintiffs also asked their expert to perform additional calculations based on the new data and information. Plaintiffs conducted additional legal research too and determined based on this research that the Settlement was a good one.

25.     The final Settlement Agreement was executed in late February, early March 2020 by the Parties. Attached as Exhibit "1" is a true and correct copy of the agreement.  On March 5, 2020, the Ninth Circuit remanded the *Cabrera* action after the Parties informed the Court of a settlement. On Mach 10, 2020, the District Court in *Cabrera* transferred the case to the Central District after the Parties filed a stipulation to transfer the case to the same courtroom as the *Chalian* matter.  The stipulation to transfer specifically stated that a transfer was being sought in order to effectuate a class and PAGA settlement in the *Chalian* and *Cabrera* matters.  It also stated that transfer to the Central District was proper because the *Chalian* action was

the first filed action.  Thus, the District Court [Judge Alsup, presiding] knew at the time of transfer the precise reasons why a transfer was sought and yet still approved it.  If the Court was concerned that the transfer was solely being requested to avoid its settlement requirements, it could have denied the stipulation to transfer. Morrison Attached as Exhibit "10" is a true and correct copy of the stipulation to transfer and signed order by Judge Alsup.

26.     On June 3, 2020, the Parties filed a stipulation with leave to file a consolidated Second Amended Complaint ("SAC") which combines the *Chalian* and *Cabrera* actions into one consolidated action. The only new claims added were to the PAGA cause of action for Labor Code sections 246, 550-551, and 850-851. These claims were added because they could have been asserted in the underlying action given they arise out of the same nucleus of facts. In particular, a pharmacy employee who worked on training modules outside of ones' normal shift may have resulted in work beyond the time limits imposed in Labor Code sections 850-851, or in the employee working seven consecutive days in a workweek (550-551). Plaintiffs were careful to tie the allegations in the proposed SAC to theories previously alleged in the operative complaints – i.e. training modules. *See* proposed Second Amended Complaint, ¶¶ 50 and 51 (Exhibit "8" to Morrison Decl.). As for Labor Code section 246(i)'s notice requirements for wage statements, both the *Chalian* and *Cabrera* complaints had alleged other deficiencies relating to employee wage statements from the outset of the respective litigations.

27.     On June 5, 2020, Plaintiffs Ryan Hyams and Regine Duhon filed a motion to intervene in this case. According to the moving papers, they did so because the proposed SAC added alleged violations of Labor Code sections 246 and 850-851 to the PAGA cause of action. At the time of settlement, Plaintiffs and their counsel were unaware of the *Hyams* lawsuit. In fact, the *Hyams* Plaintiffs argued to the Northern District Court [the Hon. Haywood S. Gilliam, Jr., presiding] that their case

was not related to this action despite the overlapping claims because, among other things, they sought to represent a much broader class of all non-exempt employees of CVS, not just pharmacy employees.  Attached as Exhibit "9" is a true and correct copy of the Joint Case Management Conference Statement filed by the Hyams Plaintiff. The *Hyams* Plaintiffs also never contacted Plaintiffs' counsel in *Chalian* or *Cabrera* until they learned of the Settlement.  On June 9, 2020, this Court entered an Order denying the Parties' request to consolidate this case and the *Cabrera* Action and file a Second Amended Complaint without prejudice to the re-filing of that request after resolution of the Motion to Intervene. To that end, the Court ordered the Parties to file a Joint Status Report no later than June 15, 2020 and, depending on the status of the case, an appropriate stipulation and order vacating the stay and setting dates necessary to move the case forward.  The Parties did so and Proposed Intervenors filed an objection.  On June 19, 2020, the Court set the hearing for this motion for July 24, 2020 at 10:00 am.

## SUBSTANTIAL WORK WAS PERFORMED BY PLAINTIFFS' COUNSEL TO RESOLVE THE CASE

28.     Although this action resolved before class certification, Plaintiffs' counsel performed a substantial amount of work to investigate the claims, establish a reasonable settlement value, and prepare the case for mediation. This work included:

(1)     Preparing and serving written discovery;

(2)     Responding to written discovery;

(3)     Locating additional Plaintiffs and filing amended complaints;

(3)     Successfully opposing Defendants' Motion for Judgment on the Pleadings as to Plaintiff Chalian (and unsuccessfully opposing the Motion for Summary Judgment filed in the *Cabrera* action);

(4)     Opposing Defendants' motions to compel arbitration, which demonstrated the enforceability of the arbitration agreements;

(5)     Interviewing numerous Class Members about their work experiences and obtaining declarations;

(6)     Reviewing Defendants' policies and procedures related to the issues at dispute in this lawsuit;

(7)     Reviewing pay records, time punch records, and records related to training time for the Class and hiring an expert statistician to determine the total wages, penalties, and interest owed to Class Members;

(8)     Attending a mediation with a well-respected mediator;

(9)     Reviewing additional data and information from Defendants and doing additional damages calculations and projections in anticipation of a second mediation session;

(10)    Participating in a second mediation session; and

(11)    Reviewing additional data and information provided post-mediation to verify the previous calculations made and to ensure the settlement was fair, reasonable, and adequate.

Accordingly, by the time of settlement, Plaintiffs had a wealth of information upon which to make an informed decision about the appropriate relief necessary to settle this case.

## LIABILITY IS CONTESTED, AND THE SETTLEMENT PROVIDES FOR REASONABLE COMPENSATION OF CLASS MEMBERS' DAMAGES AND OTHER RELIEF.

29.     Although Plaintiffs believe in the strength of their case, they are mindful that Defendants have a number of defenses to class certification, merits, and damages.

## Almost All Class Members Agreed to Arbitrate on an Individual Basis, Which Precludes Class Claims.

30.     Perhaps the most important consideration when evaluating the fairness

of this settlement is the fact that the overwhelming majority of Retail Pharmacy Settlement Class Members agreed to arbitrate any workplace claims they may have against CVS. Beginning in or around October 2014, CVS instituted an arbitration program for all retail employees, including pharmacy employees. Relatively few Retail Pharmacy Settlement Class Members (approximately 425) opted out of CVS's arbitration program. The Pharmacist Settlement Class in Regions 65 and 72 (*Chalian* action) by-definition does not include persons who agreed to arbitrate, and the total number of Pharmacist Settlement Class members is less than 400 hundred persons (397). Thus, of the more than 20,000 total Class Members, little more than 800 have individual wage and hour claims that a court could adjudicate. And note this Court upheld and enforced CVS's arbitration agreement when it compelled Ms. Aleksandryan's claims to arbitration. The Northern District of California may well have followed suit. It did not deny CVS's motion to compel arbitration of Ms. McNeely's claim with prejudice, instead ruling a fact-finding hearing as to whether she validly opted-out was necessary.

31.     In addition, CVS's arbitration agreement contained a delegation clause, which means even challenges to enforceability would be decided by the arbitrator. *See Elmore v. CVS Pharmacy, Inc.*, No. 216CV05603ODWASX, 2016 663525 at *3 (C.D. Cal. Nov. 9, 2016) (holding CVS's arbitration agreement clearly and unmistakably demonstrates the parties' intent to arbitrate the issue of arbitrability). Binding Ninth Circuit authority prohibits the certification of a Rule 23 class that includes employees with arbitration agreements containing a delegation clause. *See O'Connor v. Uber Techs, Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018).

32.     The arbitration agreements also do not explicitly authorize class proceedings, meaning the arbitrations would have to be conducted on an individual basis. *See Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407 (2019). As noted, in the *Chalian* case, Defendants successfully compelled arbitration of the proposed class

representative's (Tamara Aleksandryan) claims on an individual basis.

33.     Consequently, if this case proceeded, only a fraction of the Class Members – less than 5% - would be eligible to receive wages, liquidated damages, and statutory penalties (such as under Labor Code section 203). The rest could only seek PAGA civil penalties in a court of law, 75% of which would go to the State.

**Prior Settlements Involving CVS May Substantially Reduce Class Membership Due to Principles of Res Judicata.**

34.     In addition to bilateral individual arbitration agreements, there are other agreements which could substantially reduce membership in the Classes – prior class action settlement agreements. Specifically, the claims at issue in this case – minimum wage, overtime, meal and rest periods, waiting time penalties, inaccurate wage statements, and derivative PAGA claims - have all been the subject of past settlements involving CVS and pharmacy employees. Plaintiffs Cabrera, Telahun, McNeely, Chalian, and Brennan were all settlement class members in prior class action settlements with CVS.

35.     Defendants contend that participation in these prior class action settlements operates as *res judicata* with respect to overlapping claims in this case. There is California appellate authority supporting this position. *See Villacres v. ABM Industries, Inc.*, 189 Cal.App.4th 562 (finding dismissal of prior class action due to settlement was *res judicata* barring employee's claims in subsequent PAGA action). Although Plaintiff Chalian defeated a motion for judgment on the pleadings on this issue, Defendants argue the ruling was erroneous and contrary to established precedent. Defendants would have raised the issue vis-à-vis the other Plaintiffs as well as at summary judgment and would have appealed any ruling following judgment. An adverse ruling is a real possibility.

///

///

## Off-The-Clock Training Claims (Unpaid Wages, Minimum Wage, and Overtime Violations)

36.     The primary claim asserted in this case is that CVS failed to compensate its employees for off-the-clock work, including mandatory training performed outside of their normal shifts or during meal and rest periods. The off-the-clock claims present significant challenges with respect to certifying a class and prevailing on the merits.

37.     First, as stated above, the presence of arbitration and past settlement agreements could have substantially reduced the class size to well under 1000 persons.

38.     With respect to class certification, a court could easily find that the Rule 23 (a) and (b) factors were not satisfied. For example, Defendants argue Plaintiff Chalian's claims are not typical of the Class because he left the employment of CVS prior to a change in policy with respect to training. Specifically, on January 25, 2017, CVS prevented employees from accessing the training modules from home. In addition, effective April 2018, CVS connected the LEARNet system to its time punch system, which means CVS was including training time in its pay to employees.

39.     With respect to predominance, Defendants argue individualized issues abound. For example, prior to the change in policy regarding training from home, Defendants claim many Class Members who reported having incurred training time from home were paid for that time by supervisors and managers. Plaintiffs' investigation uncovered some evidence of this. Consequently, numerous individualized inquiries may be needed to determine which Class Members reported the off-the-clock training time and were paid for this time. Once the policy changed and Class Members were prohibited from accessing training from home, individualized inquiries would have to be conducted to determine if Defendants knew that training was occurring off-the-clock while at work. Defendants also dispute

Plaintiffs' allegations that training could not be completed during an employee's normal shift. Individualized inquiries could be required to assess the validity of this allegation too.

40.     With respect to the merits, CVS's written policies prohibit off-the-clock work and require all time worked to be paid. Further, its policies as of January 2017 explicitly prohibited training from home. In April of 2018, LEARNet training time was linked to the time punch records, meaning this time was paid in full.

41.     As for overtime, there are more than 6,500 Class Members who are members of a union and subject to a CBA. Labor Code section 514 would likely preclude them from recovering the overtime premium for the unpaid hours in a court of law.

42.     According to Plaintiffs' expert, the potential damages for OTC training is as follows: For the Pharmacist Settlement Class, the total unpaid wages (regular and overtime wages) are $1,291,932 based on Site Minder data showing an average of 1.33 hrs (Region 65) and 1.54 hrs (Region 72) of OTC time per training session. An amount of liquidated damages equal to the unpaid regular pay is potentially recoverable under 1194.2, subject to a finding that Defendants did not have a good faith defense. *See* Cal. Labor Code section 1194.2 (good faith defense). According to Plaintiff's expert, 73% of total unpaid wages were for overtime hours at the appropriate overtime rate. Conversely, 27% of the wages not paid were regular hours at the regular rate of pay.

43.     For the Retail Pharmacy Class, as stated above, only 425 Class Members did not sign arbitration agreements. The approximate amount of unpaid wages for those who did not sign arbitration agreements is $1,642,726.

### Meal and Rest Period Claims

44.     As with the off-the-clock claims, there were several potential, significant hurdles to prevailing on the meal and rest period claims. The consolidated complaint

includes two distinct theories with respect to meal and rest period violations. The first theory is that Class Members performed training during meal periods and rest periods. The second is that some pharmacies are only staffed with one pharmacist per shift, meaning legally compliant meal and rest breaks cannot be taken during store hours because there is no one to relieve the pharmacist from all work.

45.     With respect to the first theory, based on the sample obtained by Plaintiffs, Class Members only worked on training during meal periods .5% of the time. Such a small violation rate is likely insufficient to establish a centralized policy of authorizing training to be performed during meal and rest periods. This is especially true in light of Defendants' facially valid policy authorizing meal and rest periods.  Numerous individualized inquiries would also need to be conducted to determine if Defendants knew Class Members were performing training during meal periods and rest periods. Accordingly, the most likely value of this claim under this theory is $0. Assuming this claim could be certified, and excluding persons who signed arbitration agreements, the potential value of the claims is just over $3 million dollars. When union membership is factored in, the number drops below $2 million.

46.     As for the second theory, Defendants do not readily track which shifts are only manned by a single pharmacist. Indeed, time punch data does not show whether the pharmacist was alone, meaning tens of thousands of store schedules would have to be compared with corresponding time punches to determine the reason for a violation. This means ascertainability and predominance may not be satisfied for purposes of Rule 23(a) and (b), meaning the likely recovery is $0. In addition, the theory only applies to pharmacists – not other pharmacy retail employees. This substantially reduces the class size.

47.     Because rest periods are on the clock, there is no evidence from the pay and time records that Class Members performed training during their rest breaks. This means Plaintiffs would have to rely upon Class Members' testimony and other

anecdotal evidence to establish violations, which is inherently individualistic. And, the low violation rate on training being performed during meal periods undercuts any argument that training was being done during the shorter, ten-minute rest periods.

48.     Moreover, for the approximately over 6,500 Class Members who are subject to a Collective Bargaining Agreement, they are unlikely to recovery anything for meal period violations in court. See Cal. Labor Code § 512(e) (512 does not apply if there is valid collective bargaining agreement that) expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.) The CBAs at issue meet these requirements, which means at least 35% of Class Members cannot recover meal period premiums or penalties for missed, shortened, or late meal periods.

## **Reimbursement Claims**

49.     Perhaps the most difficult claims to certify would have been the claims for reimbursement under Labor Code section 2802. Plaintiffs' theory as outlined in the complaint is that CVS did not reimburse Class Members for (1) use of home computers for training, (2) work related travel, and (3) for professional licenses.

50.     Concerning reimbursement for home computers, CVS contends that all training could have been done in store (indeed, had to be done instore after January 2017) and that individualized issues would predominate with respect to the issue of whether use of a home computer was a necessary work-related expense. With respect to potential damages, it would be completely impractical to attempt to value each Class Members' home computer usage. At best, a civil penalty under the PAGA may be recovered. The *Cabrera* action, which was the first case to assert a PAGA claim for reimbursement, was not filed until August 2017. CVS changed its policy to

prohibit training at home in January 2017. Thus, there is only a small period of time (August 2016 to December 2016) for which PAGA penalties are at issue.

51.     As for travel expenses, CVS has a facially valid, written policies which authorizes reimbursement for work related travel which they provided to Plaintiffs. Attached as Exhibits "4" and "5" are true and correct copies of CVS' travel reimbursement policies. Also, there is evidence CVS reimbursed many Class Members for their travel related expenses such as miles, making certification of this claim extremely difficult due to the lack of a centralized policy and practice.

52.     Finally, CVS is not required to reimburse Class Members for training in connection with professional licenses which are required by law. *See In re Acknowledgement Cases*, 239 Cal.App.4th 1498, 1506.

## Other Claims

### Derivative claims

53.     Several other claims alleged in this case – inaccurate wage statements, waiting time penalties, and PAGA – are largely derivative of the meal and rest period and overtime/minimum wage off the clock claims and would succeed or fail for the same reasons as those claims.

54.     As for waiting time penalties under Labor Code section 203, Defendants could succeed in arguing that none of the violations were "willful" because there was a good faith dispute as to whether its pay practices were unlawful. *See Amaral v. Cintas Corporation No. 2*, 163 Cal.App.4th 1157, 1201 (2008) ("A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover on the part of the employee.") The same is true with respect to the "knowing and intentional" element applicable to alleged violations of Labor Code section 226. *See Hurst v. Buczek Enters.*, LLC, No. C–11–1379, 870 F.Supp.2d 810, 829, 2012 WL 1564733, at *17 (N.D. Cal. May 2, 2012) (no finding of "knowing and intentional" if there is a good

faith defense). If limited to the time before the change in policy regarding training from home (e.g. August 3, 2016 to January 2017), the 226(a) PAGA penalties are approximately $4,000,000. If the time period is extended to 2020, the penalties are approximately $24,000,000.

### PAGA Civil Penalties

55.     As for the PAGA claims, Labor Code section 2699, subdivision (f), provides that the trial court "may award a lesser amount than the maximum civil penalty ... specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." (§ 2699, subd. (e)(2).) If the Court here finds Defendants presented a good faith defense to Plaintiffs' claims, it could substantially reduce the amount of PAGA penalties to be awarded to the aggrieved employees.

56.     Further, assuming the *Cabrera* case successfully appealed the summary judgment ruling, and without stacking PAGA penalties for the same violation, the data reveals that the highest amount of penalties that could be awarded for a violation of minimum wage laws (Labor Code section 1197.1) from August 2016 up to April of 2018 (when LEARNet was connected to the time keeping system) is approximately $23,000,000 – based on an alleged violation rate for 90% of employees and 47% of pay periods. If the date training at home was prohibited is used (January 2017), the number plunges below $10,000,000.

57.     Concerning Labor Code sections 850 and 851 (limits on the hours and days worked by pharmacists in two-week period), it appears there is no private right of action so recovery would be limited to PAGA civil penalties. This is because there is no language in these statutes which manifest an intent by the Legislature to allow for a civil lawsuit to be brought by an employee. *See Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal.4th 592, 596–597 (2010) (*citing Moradi–Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 305 (1988) (The existence of a private right of

action depends on whether the Legislature has manifested an intent to create such a right, which is revealed through the language of the relevant statute and its legislative history). Defendants also contend the claims are limited to pharmacists and do not include every employee who happens to work in a store with a pharmacy. *See, e.g., Association of Mexican-American Educators v. State of California*, 231 F.3d 572, 608 (9th Cir. 2000) (noting California "heavily regulates the pharmacy industry, including licensing pharmacists, and regulating their authority, duties, and work hours"); *Tormey v. Vons Companies, Inc.*, No. D057912, 2014 WL 4403107, at *8 (Cal. Ct. App. Aug. 27, 2014) (referencing Labor Code section 850 as "restricting the working hours of retail pharmacists").

58.    Pro-rated data received from Defendants shows there were approximately 26,000 instances from which one might argue a violation of Labor Code sections 850 and 851 occurred during the relevant time period for pharmacists. If a full $100 penalty was awarded for each alleged violation, regardless of the reason for the violation (i.e. even for reasons other than unpaid training time), the total civil penalties would be $2.6 million.

59.    There is similarly no private right of action for Labor Code sections 550 and 551 (one day's rest in 7). *See Mendoza v. Nordstrom, Inc.*, 2 Cal.5th 1074 (2017). Further, pursuant to Labor Code section 584, these sections do not apply in case of emergency, which includes "accident, death, sickness, or epidemic." Labor Code sections 850 and 851 are subject to a similar defense via Labor Code section 854. Manageability issues thus may arise when determining whether the claimed violations were caused due to an emergency. In terms of the number of observed violations regardless of the reason for the violation, there were approximately 8,000+ violations arguably identifiable from the records, with a civil penalty exposure of approximately $800,000.

60.    Regarding Labor Code section 246(i)'s notice requirements, cases which

have considered the issue have held PAGA civil penalties <u>cannot</u> be collected by persons enforcing the law on behalf of the state. *See Stearne v. Heartland Payment Systems LLC*, 2018 WL 746492, * 2-3 (E.D. Cal. February 2, 2018) (no PAGA  civil penalties for violation of Healthy Workplaces, Healthy Fairness Act of 2014 based on language in Labor Code section 248.5 that states "**any person or entity enforcing this article on behalf of the public as provided for under applicable state law shall, upon prevailing, be entitled only to equitable, injunctive, or restitutionary relief, and reasonable attorney's fees and costs**" [emphasis in original]); *Titus v. McLane Foodservice, Inc.*, 2016 WL 4797497, *5 (E.D. Cal. September 14, 2016) (finding no penalties recoverable for violations of 246's notice requirements by virtue of Labor Code section 2699(g)(2)). This provision states "[n]o action shall be brought under this part for any violation of a posting, notice, agency, reporting, or filing requirement of [the Labor Code], except where the filing or reporting requirement involves mandatory payroll or workplace injury reporting.") Defendants also provided evidence that the required sick pay notices were in fact posted at CVS stores and that it has a legally compliant sick pay policy. *See* Exhibits "6" & "7" to Morrison Decl. As for any notice issues on wage statements relating to sick pay, even if penalties were recoverable, Plaintiffs do not believe a court would award substantial, additional civil penalties on top of what it would award for the other alleged wage statement violations in this case. Stated another way, stacking of penalties here for non-compliant wage statements is unlikely.

## THE SETTLEMENT WAS THE RESULT OF ARMS'-LENGTH, NON-COLLUSIVE BARGAINING BETWEEN THE PARTIES AND IS FAIR AND REASONABLE.

61.    Plaintiffs and the proposed settlement Class are represented by counsel which are highly experienced in wage and hour and other class action litigation as well as labor and employment law. Defendants are represented by Greenberg Taurig,

a firm which has significant experience in class action defense as related to matters arising under state and federal wage and hour laws. Furthermore, the Parties have negotiated an arms-length settlement in a cordial, yet adversarial manner, before a well-respected third-party mediator.

62.     Specifically, in anticipation of the mediations with respected mediator David Lowe, both parties submitted comprehensive mediation briefs extensively detailing their legal and factual support. Additionally, as part of the mediation briefs, Plaintiffs submitted exhibits and other documents to the mediator regarding the claims in the case. At the two mediation sessions, the parties had an opportunity to learn the legal and factual strengths and weaknesses of their respective cases. The case settled after the second mediation. The agreed-upon settlement reflects the realities of each side's case and the information obtained during the discovery process, as well as through informal exchanges, as described above. The proposed settlement is the result of extensive, informed, arms-length negotiations between counsel with substantial litigation experience, who are fully familiar with the legal and factual issues in this case, and who have specific experience litigating and settling complex and class action cases, including wage and hour class actions.

63.     Accordingly, Plaintiffs' counsel believe the settlement is eminently fair and reasonable. The experience of counsel, and the nature and quality of their negotiations, weigh greatly in favor of the District Courts approval.

**CLASS REPRESENTATIVE SERVICE AWARDS/ENHANCEMENTS**

64.     I am of the opinion that the incentive/service awards sought by the Representative Plaintiffs are fair and reasonable. As demonstrated above, I have substantial class action experience. Consequently, I am very familiar with the caliber of representative plaintiffs that participate in class actions. In my view, the Plaintiffs in this case are deserving of the incentive/service awards sought.

65.     The respective service awards to each named Plaintiff are reasonable give the risks they each undertook and bore for the benefit of other members of the Settlement Class and their level of participation in the case. Plaintiffs spent significant time reviewing documents, discussing their experience with Class Counsel, responding to discovery, and reviewing settlement documents, among other things. Throughout the course of the litigation, Plaintiffs provided consistent support to Class Counsel so that they were able to understand the facts of the matter and adequately prosecute the action.

66.     Plaintiff Sevag Chalian initiated suit against CVS through the *Chalian* action on July 20, 2016. Since the beginning, Plaintiff Chalian has been deeply involved in this litigation. Early on, Plaintiff Chalian attended multiple meetings at his counsel's offices in Glendale, California and Santa Monica, California to provide information and documents concerning CVS's practices and policies relating to training time for their California pharmacists. As a pharmacist who had worked in CVS Regions 65 and 72, Plaintiff Chalian was able to provide invaluable information on CVS's policies and practices over a range of pharmacies that Defendants operated. Plaintiff Chalian's information helped guide Class Counsel's discovery efforts in this action. Moreover, Plaintiff Chalian has always remained available to discuss with Class Counsel developments in the case, to answer questions Class Counsel may have had about CVS's policies and practices, and to assist Class Counsel in understanding the types of records that CVS has maintained.  In addition, Plaintiff Chalian spent numerous hours with Class Counsel in preparing responses to Defendants' First Set of Special Interrogatories and Requests for Production of Documents. Further, over the almost four years this litigation has been pending, Plaintiff Chalian has provided information to his former co-workers about the lawsuit, how they might become involved, and directing them to Class Counsel if they had questions that he could not answer. Finally, Plaintiff Chalian reviewed the settlement agreement in this action in

detail before agreeing to its terms on behalf of the class. All in all, collectively over the past several years, Plaintiff Chalian estimates he has spent at least 30 hours of his time in assisting Class Counsel in prosecuting this matter.

67.    Plaintiff Sigfredo Cabrera filed the original complaint in the *Cabrera* action on August 3, 2017 and has been actively participating in this lawsuit since June 2017. Plaintiff Cabrera underwent an in-depth client interview with Class Counsel, responded to formal written discovery propounded by Defendants, regularly communicated with and provided documentation in support of his claims to Class Counsel, and reviewed various documents, including settlement documents, to assist Class Counsel throughout the litigation.

68.    Plaintiff Enko Telahun was added as a named Plaintiff in the first amended complaint filed on September 5, 2017 and has actively participated in the litigation of this action since August 2017. In preparation for his inclusion into the *Cabrera* action, Plaintiff Telahun underwent in-depth client interview with Class Counsel and provided important documentation related to his claims, including text messages and emails from the time he worked at CVS. Plaintiff Telahun also responded to formal written discovery propounded by Defendants, and was regularly responsive to Class Counsel's requests for information and clarification. Plaintiff Telahun was also an active participant in the settlement process prior to reviewing and signing the settlement agreement.

69.    Plaintiff Christine McNeely was added as a named Plaintiff in the second amended complaint filed on March 19, 2018 in the *Cabrera* action. Plaintiff McNeely has been involved in the *Cabrera* litigation since October 2017 when she underwent and in-depth intake interview with Class Counsel regarding her experience working as a Pharmacy Technician at CVS. Plaintiff McNeely responded to formal written discovery propounded by Defendants and provided Class Counsel with important information related to this case, including names and contact information

of potential witnesses. In addition, Plaintiff McNeely spent significant time preparing for a deposition in March and April of 2018, although the deposition was ultimately not held. Plaintiff McNeely was also actively involved in the settlement process, maintaining contact with Class Counsel prior to reviewing and signing the settlement agreement.

70.     Plaintiff Patrick Brennan was added as a named Plaintiff, on behalf of himself and the proposed Pharmacist Settlement Class, in the recently filed consolidated complaint. However, Plaintiff Brennan has been involved in the *Cabrera* matter since June 2018. Plaintiff Brennan participated in an in-depth intake interview with Class Counsel and provided a declaration in support of the Cabrera action based on his experience working as a Pharmacy Technician at CVS. Since then, Plaintiff Brennan has been on "stand-by" as a potential class representative until the filing of the consolidated complaint. After Class Counsel obtained Plaintiff Brennan's personnel file from CVS, Plaintiff Brennan diligently reviewed the documents to confirm accuracy and provided consistent support to Class Counsel so that they could understand the facts of the matter. Similarly, Plaintiff Brennan was involved in the settlement process and reviewed and signed the settlement agreement, after lengthy discussions with Class Counsel.

71.     Overall, the respective service awards are appropriate as Plaintiffs provided Class Counsel with valuable information that assisted with the prosecution of this Action. All named Plaintiffs provided detailed statements about their experience and undertook the risks associated with bringing this Action, such as being financially responsible in the event the case was unsuccessful. Moreover, by being named representatives in the action, Plaintiffs potentially put themselves at personal risk for costs if the action were to end with a defense verdict. And, as named representatives, Plaintiffs each put their name forward on the public record at the risk of future or potential employers choosing not to hire them based on their undertaking

in the action. For the reasons stated above, enhancement awards to each Class Representative are appropriate and reasonable.

## NUMEROSITY AND ASCERTAINABILITY

72.     Defendants' records show that the proposed Settlement Class consists of approximately 20,897 Class Members.  397 members belong to the Pharmacist Settlement Class, and 20,500 belong to the Retail Pharmacy Settlement Class.

## COSTS AND CLAIMS ADMINITRATION EXPENSES

73.     I have reviewed the costs incurred in this case.  All of these costs and expenses were reasonable and necessary to bring this case to closure and are typically billed to a client. The amount of outstanding costs for my firm and the other law firms are as follows: $6,820.12 [AK+G]; $9,152.62 [Boyamian Law]; $12,758.51 [Clark Law Group]; $3,668.37 [Law Offices of Thomas W. Falvey] = **Total: $32,399.62**. Attached as Exhibit "3" are true and correct copies of the invoices of costs expended in this matter. Overall, Plaintiff's counsel anticipates some additional costs will be incurred. Plaintiffs will provide a final accounting of his costs at the time of final approval.

74.     The parties have selected Simpluris, Inc. to be the Settlement Administrator. Simpluris estimates the costs of Settlement Administration to be $75,000. I believe this is a fair and reasonable cost given the number of Class Members to whom a Notice packet must be sent.

///

///

///

///

///

///

///

## **SETTLEMENT AGREEMENT AND OTHER ATTACHED EXHIBITS**

75.     Attached hereto as Exhibit "1" is a true and correct copy of the Global Settlement Agreement.  Attached as Exhibit "2" to the Settlement Agreement is the Notice.  Attached as Exhibit "8" is the proposed SAC (attached to the stipulation), lodged on June 3, 2020.

I declare under penalty of perjury the foregoing to be true and correct. Executed this 19th day of June 2020 in Los Angeles, California.


                                        /s/Michael Morrison
                                       Michael Morrison

**EXHIBIT 1**

## GLOBAL SETTLEMENT AGREEMENT

This Global Settlement Agreement (the "**Agreement**"), is made and entered into by and between Claimants Sevag Chalian, Sigfredo Cabrera, Enko Telahun, Christine McNeely, Patrick Brennan, and May Eldanaf (together, "**Claimants**"), on behalf of themselves and on behalf of the putative class members proposed in this Agreement, on the one hand, and CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS, LLC ("**CVS**"), on the other, and by Alexander Krakow & Glick, the Law Offices of Thomas W. Falvey, Boyamian Law, Inc., Clark Law Group and United Employees Law Group.

WHEREAS, on July 20, 2016, Sevag Chalian filed a putative wage and hour class action against CVS in the Los Angeles County Superior Court of the State of California, and on December 5, 2016, CVS removed that action to the United States District Court for the Central District of California, Case No. 2:16-cv-08979, where it remains pending (the "**Central District of California Action**");

WHEREAS, on August 3, 2017, Sigfredo Cabrera filed a putative wage and hour class action against CVS in Alameda County Superior Court of the State of California;

WHEREAS, on September 5, 2017, Mr. Cabrera amended his action to add Enko Telahun as a second named plaintiff;

WHEREAS, on October 9, 2017, CVS removed Mr. Cabrera's and Mr. Telahun's action to the United States District Court for the Northern District of California, Case No. 3:17-cv-05803 (the "**Northern District of California Action**");

WHEREAS, on March 19, 2018, Mr. Cabrera and Mr. Telahun filed a Second Amended Complaint naming Christine McNeely as a third named plaintiff in the Northern District of California Action;

WHEREAS, on July 10, 2018, Mr. Cabrera, Mr. Telahun, and Ms. McNeely sent CVS a proposed Third Amended Complaint naming Patrick Brennan as a fourth named plaintiff in the Northern District of California Action;

WHEREAS, on September 14, 2018, the Northern District of California (Hon. William Alsup) denied CVS's motion to compel Ms. McNeely's claims to arbitration, which decision CVS appealed to the United States Court of Appeals for the Ninth Circuit, Case No. 18-15459 (the "**McNeely Appeal**");

WHEREAS, on September 25, 2018, the Northern District of California (Judge William Alsup) granted summary judgment in CVS's favor on Mr. Cabrera's and Mr. Telahun's claims and, on January 1, 2019, entered partial judgment pursuant to Fed. R. Civ. P. 54(b), which decision Mr. Cabrera and Mr. Telahun appealed to the United States Court of Appeals for the Ninth Circuit, Case No. 19-15059 (the "**Cabrera/Telahun Appeal**");

EXHIBIT "1"

WHEREAS, on March 7, 2019, May Eldanaf submitted a letter pursuant to the California Private Attorney General Act, Cal. Lab. Code §§ 2698, *et seq.* ("**PAGA**") to the California Labor and Workforce Development Agency PAGA Administrator. The letter claimed CVS failed to pay her and other pharmacists for mandatory training they were required to complete and that she intended to file a wage and hour class action (the "**Eldanaf PAGA Claim**");

WHEREAS, on July 29, 2019, Claimants and CVS (together, "**the Parties**") mediated the Central District of California Action, the Northern District of California Action (as set forth in the proposed Third Amended Complaint), and the Eldanaf PAGA Claim (collectively, the "**Wage and Hour Actions**") in San Francisco, California before David A. Lowe, Esq., of Rudy Exelrod Zieff & Lowe LLP, a prominent and well-respected mediator in wage and hour class litigation;

WHEREAS, although the Actions did not settle at the July 29, 2019 mediation, subsequent discussions and arms-length negotiations through Mr. Lowe caused the parties to schedule a second day of mediation;

WHEREAS, on November 11, 2019, the Parties engaged in a second day of mediation before David A. Lowe, Esq., and came to an agreement in principal to resolve all pending wage and hour disputes between them;

WHEREAS, CVS denies that is has committed any wrongdoing or violated any state or federal law pertaining to payment of wages or hours of work and has vigorously defended the claims asserted by Claimants;

WHEREAS, to avoid the expense and burden of further litigation and/or arbitration, the Parties now desire to resolve any and all California wage and hour claims, including PAGA claims, that were or could have been asserted by Claimants on behalf of (i) anyone who held an hourly, non-exempt retail pharmacy position in California from August 3, 2014 to the date the court enters an order granting preliminary approval of the class action settlement; and (ii) anyone who worked in an hourly, non-exempt retail pharmacist position in Regions 65 and 72 from July 20, 2012 to the date the court enters an order granting preliminary approval of the class action settlement whose claims are not subject to arbitration and whose LEARNet and/or Siteminder data indicates activity when time punch records do not show he or she was clocked in; and

WHEREAS, for purposes of settlement, CVS represents that there are approximately 19,000 people who have or could have asserted the claims identified in the preceding paragraph;

NOW, THEREFORE, in consideration of the foregoing and the promises contained herein, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **DEFINITIONS.**

In addition to various terms defined elsewhere, the terms listed in this Section shall have the meanings ascribed to them for purposes of this Agreement:

EXHIBIT "1"

1.1   **Settlement Administrator** means Simpluris, Inc., the entity jointly selected by the Parties to provide notice to the Settlement Classes (as defined herein) and administer payments under the terms of this Agreement.

1.2   **Class Counsel** means Alexander Krakow + Glick LLP, the Law Offices of Thomas W. Falvey, Boyamian Law, Inc., Clark Law Group, and United Employees Law Group. For purposes of providing any notices required under this Agreement, Class Counsel shall refer to Michael Morrison, Alexander Krakow + Glick LLP, 1900 Avenue of the Stars, Suite 900, Los Angeles, California 90067.

1.3   **Defendant's Counsel or CVS's Counsel** means Greenberg Traurig LLP. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to James N. Boudreau, Greenberg Traurig LLP, 1717 Arch Street, Suite 400, Philadelphia, Pennsylvania 19103.

1.4   **Final Approval Order** means the order entered by the United States District Court for the Central District of California that finally and unconditionally approves of the settlement, grants final certification of the Settlement Class for settlement purposes only, authorizes payment to Settlement Class Members, the Settlement Administrator, Class Counsel, and the State of California, as provided for in this Agreement, fully and finally extinguishes the Released Claims as set forth herein, and dismisses the consolidated Central District of California and Northern District of California Actions in their entirety with prejudice and without costs (except as otherwise provided herein), with the Court retaining jurisdiction over the Actions for purposes of ensuring compliance with the terms of this Agreement and any order of the Court issued in connection therewith.

1.5   **Notice Period** means the period beginning on the date the Settlement Administrator mails notice of the Parties' settlement, as provided for in Section 7.2, and ending on the date forty-five (45) days thereafter, except that the Parties may agree to extend the Notice Period for people to whom notice was mailed and returned as undeliverable, to the extent that the Settlement Administrator re-sends notice after following up through skip-tracing efforts. The Notice Period may only be extended under these circumstances upon agreement and consent of all Parties.

1.6   **Pharmacist Settlement Class** means hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and the date of the Preliminary Approval Order, whose claims are not subject to arbitration and which have not previously been released and/or adjudicated, and whose LEARNet and/or Siteminder data indicates activity when time punch records do not show he or she was clocked-in.

1.7   **Retail Pharmacy Settlement Class** means any person who held an hourly, non-exempt position in a CVS retail pharmacy in the State of California between August 3, 2014 and the date of the Preliminary Approval Order who has not previously released and/or adjudicated the Released Claims.

EXHIBIT "1"

1.8     **Preliminary Approval Order** means an order entered by the United States District Court for the Central District of California that conditionally certifies the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class for settlement purposes only, for the purposes of providing notice as described in Section 7, that preliminarily approves of the Parties' proposed settlement, that requires any requests for exclusion from the settlement or objections to the settlement to be postmarked and received by the last day of the Notice Period, and that sets a date for a hearing concerning final approval of the settlement (the "**Final Approval Hearing**") no sooner than 100 days but no later than 125 days after the entry of the Preliminary Approval Order.

1.9     **QSF** means a qualified settlement fund, within the meaning of Treasury Regulation § 1.468B-1, *et seq.*, set up by the Settlement Administrator for administration of the settlement.

1.10     **Released Claims** means those claims released by the Settlement Class Members as set forth in Section 4.3.

1.11     **Settlement Class Members** or **Settlement Class** refers to the people in the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class who do not opt out of this settlement pursuant to Section 7.4.

1.12     **Settlement Effective Date** means the date after which the Final Approval Order will be final and no longer subject to appeal. Specifically:

    a.     If no appeal is taken, on the date on which the time to appeal (including any possible extension of time to appeal) has expired (sixty-one (61) days absent a longer extension), or

    b.     If an appeal is taken, the date on which all appeals, including petitions for rehearing or re-argument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal (including any potential extension of time) has expired.

1.13     **Wage and Hour Actions** means the Central District of California Action, the Northern District of California Action (as set forth in the proposed Third Amended Complaint), and the Eldanaf PAGA Claim, collectively.

## 2. NO ADMISSION OF LIABILITY AND NO CONCESSION AS TO THE MERITS.

CVS enters into this Agreement to avoid the risks, uncertainty, expense and burden of further litigation. CVS denies that it violated the law in any manner and specifically denies that it violated any statutory or common law as alleged by Claimants. The Parties agree and acknowledge that neither this Agreement nor their settlement shall be alleged or construed by anyone to be an admission of any violation of any federal, state or local statute, ordinance, or regulation, or of any duty owed by CVS to current or former employees, and that the sole purpose of this Agreement is to avoid the cost of further

litigation. This Agreement is a settlement document and shall be inadmissible as evidence in any proceeding, except in a proceeding to approve, interpret, or enforce its terms.

3.  **MAXIMUM SETTLEMENT AMOUNT AND ALLOCATION**

3.1  **Maximum Settlement Amount** as used herein means the maximum amount that will be paid under this Agreement, inclusive of all payments made to Settlement Class Members, to Claimants, including any service awards paid to Claimants, to Class Counsel for attorneys' fees and costs, to the California Labor and Workforce Development Agency ("LWDA") in settlement of PAGA claims, to the Settlement Administrator for settlement administration costs, including CAFA notices, and of penalties, interest and taxes.

The Maximum Settlement Amount is equal to Nine Million Seven Hundred Fifty Thousand U.S. Dollars and Zero Cents ($9,750,000.00 U.S.D.). In no event shall CVS be liable for more than the Maximum Settlement Amount as a result of this settlement, except for the employer's share of payroll taxes, which CVS shall be obligated to pay separate and apart from the Maximum Settlement Amount. The Maximum Settlement Amount shall be allocated as described in this Section 3.

3.2  **Attorneys' Fees And Litigation Costs.**

a.  Class Counsel may seek court approval of, and CVS will not oppose Class Counsel's request for, attorneys' fees in an amount not to exceed 30% of the Maximum Settlement Amount, Two Million Nine Hundred and Twenty-Five U.S. Dollars and Zero Cents ($2,925,000.00 U.S.D.), in addition to reasonable litigation costs incurred by Class Counsel in litigation and settlement of the Wage and Hour Actions (not to exceed $50,000). Any such request shall be filed no later than twenty-eight (28) calendar days before the Final Approval Hearing.

b.  Any attorneys' fees and costs approved and paid as part of this settlement ("**Attorneys' Fees and Costs**") shall be paid from the Maximum Settlement Amount.

c.  Any amounts not approved and awarded by the Court shall be added to the portion of the Net Settlement Amount that does not include PAGA payments for pro rata distribution to Settlement Class Members.

d.  If the Court reduces or does not approve the requested Attorneys' Fees and Costs, Class Counsel shall not have the right to revoke this settlement or Agreement, which shall remain binding.

e.  The Settlement Administrator shall issue Class Counsel an IRS Form 1099 for the payment of Attorneys' Fees and Costs, as required by law.

EXHIBIT "1"

f.   Attorneys' Fees and Costs shall be paid directly to Class Counsel, by wire transfer from the QSF within fourteen (14) calendar days after the Settlement Effective Date.

3.3   **Service Awards.**

a.   In exchange for their service as Class Representatives and/or as Representative for the State of California under PAGA, Class Counsel may petition for an award of service payments to Claimants. Any such petition shall be filed no later than twenty-eight (28) calendar days before the date of the Final Approval Hearing.

b.   Any service payments awarded to Claimants shall be paid from the Maximum Settlement Amount and shall reduce the Net Settlement Amount.

c.   Any service payments awarded to Claimants shall be in addition to any payments they are entitled to receive as members of the Settlement Class pursuant to Section 3.6.

d.   Any such service payments awarded by the Court shall be distributed by the Settlement Administrator in separate checks mailed contemporaneously with the mailing of checks pursuant to Section 3.6(d). Such service payment checks shall be allocated 100% as non-wage income, for which a Form 1099 shall issue to the Claimant, and shall be reported to state and federal taxing authorities as such. These checks will expire one-hundred and eighty (180) calendar days after they are issued, but a failure to deposit or cash a check within this time shall have no effect on the Claimant's release of Released Claims pursuant to Section 4.2.

e.   CVS will not oppose any request by Class Counsel for service payments to the Claimants of up to the following amounts:

   i.   Ten Thousand U.S. Dollars and Zero Cents ($10,000.00 U.S.D.) each to Sevag Chalian, Sigfredo Cabrera, Enko Telahun, and Christine McNeely; and

   ii.  Three Thousand U.S Dollars and Zero Cents ($3,000.00) to Patrick Brennan.

f.   To the extent that the Court does not approve the entire amount of service payments requested by Class Counsel for each Claimant, the outstanding and unapproved portion of the total requested amount shall be added to the portion of the Net Settlement Amount that does not include PAGA payments for pro rata distribution to Settlement Class Members.

3.4   **PAGA Payments.** Seventy-Five Thousand U.S. Dollars ($75,000.00 U.S.D.) of the Maximum Settlement Amount shall be allocated to the settlement of the PAGA claims asserted by Claimants. Seventy-five percent (75%) of the PAGA allocation,

EXHIBIT "1"

or $56,250.00 U.S.D., shall be paid to the State of California LWDA no later than fourteen (14) calendar days following the Settlement Effective Date. Twenty-five percent (25%) of the PAGA allocation, or $18,750.00 U.S.D., shall be paid to Retail Pharmacy Settlement Class members employed between August 3, 2016 and the date of preliminary approval ("PAGA Payment"), as described below.

3.5   **Settlement Administration Costs.** Settlement administration costs, including but not limited to the costs of printing, distributing, and tracking documents for this settlement; distributing notices and settlement payments to Settlement Class Members; providing necessary reports and declarations; and other duties and responsibilities necessary to administer this settlement, as requested jointly by the Parties, shall be paid out of the Maximum Settlement Amount by wire transfer from the QSF within One-Hundred and Eighty (180) calendar days after the Settlement Effective Date. Settlement Administration Costs shall not exceed $75,000.00.

3.6   **Net Settlement Amount.** The "Net Settlement Amount" is the Maximum Settlement Amount less Attorneys' Fees and Litigation Costs, Service Awards, PAGA Payment to the California LWDA, and Settlement Administration Costs.

a.   A portion of the Net Settlement Amount equal to $75,000.00 U.S.D. shall be deemed penalties and interest paid pursuant to the PAGA (of which 75% (or $56,250.00 U.S.D.) shall be distributed to the LWDA and 25% of which (or $18,750.00 U.S.D.) shall be allocated for settlement of employees' PAGA claims and thus remain in the Net Settlement Amount). A separate PAGA-only fund will be created from the Net Settlement Amount to distribute the PAGA Payment ($18,750.00) to Retail Pharmacy Settlement Class members employed between August 3, 2016 and the date of preliminary approval.

b.   Of the remaining Net Settlement Amount (which excludes the $18,750.00 PAGA Payment to employees), one-third (1/3) shall be deemed wages subject to Form W-2 reporting, one-third (1/3) shall be deemed non-PAGA civil penalties subject to Form 1099 reporting, and one-third (1/3) shall be deemed interest subject to Form 1099 reporting. The Settlement Administrator shall be responsible for issuing to Settlement Class Members a form W-2 for the amounts deemed wages and an IRS Form 1099 for the amounts allocated as penalties and interest. The PAGA portion will be treated as civil penalties subject to Form 1099 reporting.

c.   Payments of the Net Settlement Amount to Settlement Class Members shall be reduced as necessary to account for mandatory payroll withholdings. Recipients of payments pursuant to this Agreement are exclusively responsible for all other tax obligations except the employer's share of payroll taxes, which shall be paid by CVS separate and apart from the Maximum Settlement Amount.

d.   The Settlement Administrator shall issue and mail all settlement payment checks to each Settlement Class Member who does not opt out of the settlement within twenty-one (21) calendar days of the Settlement Effective Date.

EXHIBIT "1"

e.   **Payments to Settlement Class Members:** Except as otherwise provided for herein, the Settlement Administrator shall allocate the non-PAGA portion of the Net Settlement Amount among Settlement Class Members as follows.

i.   The Settlement Administrator shall calculate the total number of weeks worked and the weekly rate for all members of the Pharmacist Settlement Class Members and the Retail Pharmacy Settlement Class. If a Settlement Class Member was employed for only part of a workweek, he or she will be credited for purposes of this Settlement with a fraction of the workweek, rounded up or down to the nearest two-digit decimal and based upon a five-day work week. Each Settlement Class Member's share shall be determined by multiplying an individual's number of qualifying workweeks by the individual's weekly rate (i.e., the individual's rate of pay for a week, which is his or her hourly rate of pay multiplied by 40 hours) for the applicable class period. This number will be divided by the total number of workweeks worked by all Settlement Class Members multiplied by the total amount of weekly rates for all Settlement Class Members (i.e., sum of all Settlement Class Members' weekly rates) during the applicable class period. The Settlement Administrator shall withhold and separately pay to the relevant government entities all applicable employee-side payroll tax withholdings from the individual settlement shares of the Settlement Class Members.

$$\text{Net Settlement Amount} \quad \times \quad \frac{(\text{Individual Weekly Pay Rate x Individual Workweeks})}{(\text{Total of all Settlement Class Members' Weekly Pay Rates x Total Workweeks for all Settlement Class Members})}$$

ii.   With respect to the PAGA-portion of the Net Settlement Amount, this shall be distributed in the same manner as the non-PAGA portion, except that payments will be made to all members of the Retail Pharmacy Settlement Class employed between August 3, 2016 and the date of preliminary approval regardless of whether they opt-out.

## 4. RELEASES

4.1   The releases contained in this Section apply to release CVS and their parent companies, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, business units, shareholders, members, and all of its and their predecessors and successors, officers, directors, agents, employees and assigns, and all persons acting through, under or in concert with them (the "**Released Parties**"), as set forth below.

8 of 23

EXHIBIT "1"

4.2    **General Release By Claimants (Except May Eldanaf).** As of the Settlement Effective Date, in consideration for the promises set for this in this Agreement, including the service awards, each Claimant, individually, with the exception of May Eldanaf, and for their successors, assigns, agents, executors, heirs, and personal representatives, voluntarily waives and releases any and all claims, obligations, demands, actions, rights, causes of action and liabilities against the Released Parties of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, state, federal and/or local law, statute, ordinance, regulation, constitution, common law, or other source of law or contract, whether known or unknown and whether anticipated or unanticipated, including all claims arising from or relating to any and all acts, events and omissions occurring prior to the date of the signing of this Agreement, including but not limited to, all claims which relate in any way to each Claimant's employment and/or separation of employment with CVS or any of the Released Parties.

     **Section 1542 of the California Civil Code**. This Agreement is intended to be effective as a general release of and bar to all claims as stated in this Section 4.2. Claimants specifically waive the protections of California Civil Code Section 1542, which states:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

CVS and Claimants, except May Eldanaf, acknowledge that Claimants may later discover claims or facts in addition to or different from those which Claimants now know of or believe to exist with regards to the subject matter of this Agreement, and which if known or suspected at the time of executing this Agreement, may have materially affected its terms. Claimants, except May Eldanaf, nevertheless waive any and all claims that might arise as a result of such different or additional claims or facts.

**Specific Release of ADEA Claims**. In further consideration of the payments and benefits provided to Claimants in this Agreement, Claimants, with the exception of May Eldanaf, irrevocably and unconditionally waive, release, and discharge the Released Parties from any and all claims, whether known or unknown, arising under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, as amended, and its implementing regulations. By signing this Agreement, Claimants each acknowledge and confirm that they:

EXHIBIT "1"

     (a)     have read this Agreement in its entirety and understand all of its terms;

     (b)     have been advised in writing to consult with an attorney and have in fact consulted with an attorney before signing this Agreement;

     (c)     knowingly, freely, and voluntarily agree to all of the terms and conditions set out in this Agreement including, without limitation, the waiver, release, and covenants contained in it;

     (d)     are executing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which Claimants are otherwise entitled;

     (e)     were given at least twenty-one (21) days to consider the terms of this Agreement and to consult with an attorney of their choice before signing it, although Claimants may sign the Agreement sooner if desired;

     (f)     understand that they have seven (7) days from the date of signing this Agreement to revoke it by delivering notice of revocation to James N. Boudreau, Esq., Greenberg Traurig LLP, 1717 Arch Street, Suite 400, Philadelphia, Pennsylvania, 19103 by overnight delivery in a manner in which receipt can be confirmed before the end of the seven (7) day period; and

     (g)     understand that the release in this paragraph does not apply to rights and/or claims that may arise after the date on which Claimants sign this Agreement.

4.3    **Release by Settlement Class Members.** As of the Settlement Effective Date, all Settlement Class Members (including Claimants) forever, fully, irrevocably and unconditionally release and discharge the Released Parties from all claims, causes of action, and legal theories of relief that were alleged or that could have been alleged or otherwise raised in Wage and Hour Actions, from August 3, 2014 until the date of the Preliminary Approval Order for Retail Pharmacy Settlement Class members and from July 20, 2012 until the date of the Preliminary Approval Order for Pharmacist Class members (whichever period is longer if a Settlement Class Member is a member of both the Retail Pharmacy and Pharmacist Classes) (the "**Released Claims**"). The Released Claims include, but are not limited to: (a) failure to pay minimum wages; (b) failure to pay overtime wages; (c) failure to pay all wages or amounts due under the Labor Code and/or federal Fair Labor Standards Act; (d) failure to comply with Labor Code Sections 850, 851, 851.5, 852 and/or 29 U.S.C. § 201 *et seq.*; (e) failure to provide proper meal periods, or premium pay for non-compliant meal periods; (f) failure to authorize and permit rest periods, or premium pay for non-compliant rest periods; (g) failure to provide complete, accurate, and/or properly formatted wage statements; (h) failure to reimburse all necessary business expenses; (i) failure to timely pay wages due or final wages due; (j) all claims under the California Private Attorneys General Act of 2004 ("PAGA") that were or could have been asserted based on the facts, claims, causes of action

or legal theories described above or on any of the claims, causes of action, facts or legal theories of relief pleaded in the Wage and Hour Actions; and (k) all damages, penalties, including penalties under Labor Code Sections 203 and 558, interest, costs (including attorney's fees) and other amounts recoverable under said claims or causes of action as to the facts and/or legal theories alleged or which could have been alleged in the operative complaint. The period of the Released Claims shall extend to the date of the Preliminary Approval Order.

4.4   All Settlement Class Members understand and agree that the Releases described above are full and final releases applying to both those Released Claims that are presently known, anticipated, or disclosed to the Settlement Class Members and to the Released Claims that are presently unknown, unanticipated, or undisclosed to the Settlement Class Members.

4.5   To release claims under the Fair Labor Standards Act that were or could have been asserted based on the facts, claims, causes of action or legal theories described above or on any of the claims, causes of action, facts or legal theories of relief pleaded in the Wage and Hour Actions, each check shall be affixed with the following language on the back: "I have received and read the Class Notice in *Chalian, et al. v. CVS*. By negotiating this check and accepting payment, I: (i) consent to join this lawsuit; (ii) elect to participate in the Settlement, and (iii) agree I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and Notice. This Release shall become effective on the Settlement Effective Date." Uncashed checks shall be deposited in California's Unclaimed Property Fund, as set forth in section 10.5 below.

EXHIBIT "1"

5. **PRELIMINARY APPROVAL OF SETTLEMENT.** All terms of this Agreement are contingent upon final approval of the Parties' settlement and final certification by the Court of the Settlement Class for settlement purposes only. The Parties agree to cooperate and take all steps necessary and appropriate to obtain a Preliminary Approval Order and a Final Approval Order and to otherwise effectuate all aspects of this Agreement.

5.1 **Voluntary Dismissal of Appeals.** No later than seven (7) calendar days after the date on which all Parties to this Agreement have executed it, the Parties shall file a stipulated motion to voluntarily dismiss the appeals without prejudice to reinstate them in the event this Agreement is not approved and final judgment is not entered. The stipulated motions shall inform the Ninth Circuit Court of Appeals that Appellants and Appellees have reached a settlement of said Appeals contingent on the settlement being finally approved in the Central District of California. The stipulated motions shall also request the Ninth Circuit Court of Appeals transfer the Northern District of California Action to the United States District Court for the Central District of California, as a related first-filed Action.

5.2 **Transfer of Northern District of California Action.** In the event the Ninth Circuit Court of Appeals does not transfer the Northern District of California Action within seven (7) calendar days of the Ninth Circuit Court of Appeals approving the stipulated motions set forth in in Paragraph 5.1, the Parties shall file a stipulation requesting the Northern District of California Action be transferred to the Central District of California (the first-filed Action), and that the two Actions be consolidated in the Central District of California for settlement purposes in accordance with 28 U.S.C. §§ 1404, 1407 and Fed. R. Civ. P. 42. Should the Northern District of California decline to transfer the Northern District of California Action for whatever reason, Claimants agree that no later than seven (7) calendar days after such declination is entered on the docket, they will file a joint stipulation of voluntary dismissal without prejudice of the Northern District of California Action so the claims that were asserted or could have been asserted in the Northern District of California Action may be resolved via settlement in the Central District of California Action as per Section 5.3.

EXHIBIT "1"

5.3     **Amended Complaint.** Within thirty (30) calendar days of the date on which the Northern District of California Action is transferred and/or voluntarily dismissed without prejudice, Class Counsel shall, with CVS's written consent, file an Amended Complaint in the Central District of California Action pursuant to Fed. R. Civ. P. 15(a)(2). The Parties agree that the purpose of this Amended Complaint is to consolidate the parties and claims, to the extent possible, asserted in the Wage and Hours Actions in the Central District of California for settlement purposes only, and that said claims added via the amendment (*i.e.*, the claims alleged or that could have been alleged in the Northern District of California Action) shall relate back to August 3, 2014, and no earlier, notwithstanding any statute of limitations that might provide for an earlier relation back date. The Parties agree to cooperate and not oppose any actions necessary to effectuate the consolidation of the Wage and Hour Actions.

a.      The Parties stipulate and agree that CVS shall not be required to serve or file a response to the Amended Complaint. If for any reason: (i) the Court denies the Parties' request for Preliminary Approval, (ii) the Court does not enter a Final Approval order; or (iii) the Settlement Effective Date does not occur, Class Counsel shall withdraw the Amended Complaint. In the event Class Counsel withdraws the Amended Complaint pursuant to this paragraph, no Party shall argue CVS's consent to the filing of the Amended Complaint or Class Counsel's withdrawal of the same has any bearing on the merits of any subsequent motion or effort to amend or dismiss the operative complaint in the Central District of California Action, and Claimants shall be free to refile the Appeals in the Northern District of California Action as if they had not been voluntarily dismissed without prejudice.

5.4     **Class Certification for Settlement Purposes Only.** CVS stipulates to the certification of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class, defined in Section 1 to include the alleged putative PAGA representative action, for settlement purposes only. If the Court does not grant either preliminary or final approval of this settlement, the Parties stipulate that class certification will be revoked without prejudice.

a.      If the Court does not enter a Final Approval Order or the settlement or the Settlement Effective Date does not occur, CVS expressly reserves its right to challenge the propriety of class certification and/or or the appropriateness of any PAGA representative action for any purpose as if the Parties had never entered into this Agreement.

b.      The proposed form of class certification order shall expressly state the Parties and Class Counsel agree certification of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class is a conditional certification for settlement purposes only, and that CVS retains its right to object to class certification and/or the appropriateness of a representative action in the Central District of California Action or in any other putative class or representative action, whether a wage and hour action or otherwise.

    c. The Parties and Class Counsel agree that, if approved, certification of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class is in no way an admission by CVS that certification is proper in the Central District of California Action or in any other putative class or representative action. The Parties and Class Counsel further agree that the certification of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class for settlement purposes, and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, shall not be admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation the Wage and Hour Actions.

5.5 **Motion for Preliminary Approval of Settlement.**

    a. The Parties agree that they will sign a mutually agreeable Joint Motion for Settlement Class Certification and Preliminary Approval of Class Action (the "**Joint Motion**") seeking class certification for settlement purposes only and preliminary approval of the Parties' proposed class action settlement. Claimants will file the Joint Motion within twenty-eight (28) calendar days of filing their Amended Complaint in the Central District of California Action, unless another date is agreed to in writing by the Parties.

    b. The Parties agree that if the Court does not approve any material term in the Parties' Joint Motion or requires as a condition to granting the Joint Motion any term that effects a material change in this Agreement, then this Agreement may be voided at either Party's option. The Parties further agree that CVS being required to pay any amount greater than the amount specified in Section 3.1 (with the exception of employer taxes) shall be deemed a material change that will allow CVS (at its option) to void the Settlement. If CVS exercises its option under this section to void the Settlement, it alone shall be responsible for any expenses incurred as a result of administering the Settlement to date, including, but not limited to, expenses associated with the mailing of Class Notice. The Parties further agree that any ruling the Court may make regarding Class Counsel's attorneys' fees and costs pursuant to Section 3.2 shall not constitute a material change in this Agreement, unless such award has the effect of increasing the total amount CVS must pay in complete settlement of all claims addressed by this Agreement.

    c. In conjunction with the filing of the Joint Motion, the Parties will jointly request that the Court hold a fairness hearing regarding the Parties' request for approval of their proposed settlement not less than one hundred (100) calendar days after the filing of the Joint Motion. Counsel for the Parties will communicate with the Clerk of the Court and make any further filings necessary to secure the approval of their request.

EXHIBIT "1"

6. **NOTICES MANDATED BY STATUTE.**

6.1    Upon the filing of the Joint Motion pursuant to Section 5.5, the Parties will instruct the Settlement Administrator to mail notices of the Parties' proposed settlement to an "appropriate federal official" and "appropriate state officials" (collectively, "Government Officials") no later than ten (10) days thereafter as required by 28 U.S.C. § 1715.

6.2    The Settlement Administrator, with CVS's assistance, shall prepare the notices referenced in the preceding Section, which shall include the information required by 28 U.S.C. § 1715.

6.3    The mailings described in this Section shall not be subject to the non-disclosure obligations in Section 11, and neither Party shall be deemed in breach of those non-disclosure obligations as a result of the Settlement Administrator's mailing of such materials to the Government Officials or as a result of any other disclosures made to Government Officials regarding such mailings.

6.4    Pursuant to Labor Code § 2689 *et seq.*, Claimants Cabrera, Telahun, and Eldanaf filed a PAGA claim notice with the LWDA and sent a copy to CVS. More than 60 days have elapsed since the filing of the PAGA claim notice(s). Accordingly, the Amended Complaint contemplated by Section 5.3 will include a PAGA claim. Claimants agree to provide a file-stamped copy of the Amended Complaint to the LWDA. Claimants further agree to provide a copy of this Agreement to the LWDA, along with any judgments or orders from the Court pertaining to PAGA penalties.

7. **NOTICE TO POTENTIAL SETTLEMENT CLASS MEMBERS.**

7.1    **Class Member Data.** Within fourteen (14) calendar days after the Court grants Preliminary Approval of the Parties' proposed settlement, CVS will provide the Settlement Administrator and Class Counsel with a list, in electronic form, of the names, last known addresses, telephone numbers (to the extent readily available), dates of employment, and gross pay rates, of all Pharmacist Settlement Class and the Retail Pharmacy Settlement Class members. The data provided by CVS to the Settlement Administrator pursuant to this Agreement (other than the address and telephone information) shall be presumed to be accurate unless otherwise challenged by a Settlement Class Member as provided in Section 7.3.

7.2    **Mailing of Notices.**

a.    Within twenty-eight (28) calendar days after the Court grants Preliminary Approval of the Parties' proposed settlement, the Settlement Administrator will compile and mail to members of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class notice of the Parties' proposed settlement in a form agreed upon by the Parties (the "**Class Notice**"). The Class Notice will contain an estimated individual settlement payment, dates of employment, instructions for opting out of the settlement, and instructions for objecting to the settlement and/or the motion for attorneys' fees and costs.

b.   The Settlement Administrator shall send the Notice by certified First Class U.S. Mail to each member of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class at such individuals' last known address as provided by CVS.

c.   For any returned Notices, the Settlement Administrator shall conduct reasonable address verification efforts consistent with the customary practices in the settlement administration industry and, within forty-five calendar (45) calendar days of the initial mailing, shall re-mail Notice Packets to any class member whose initial Notice Packet was returned to the Settlement Administrator as undeliverable.

d.   The Settlement Administrator shall notify Class Counsel and CVS's Counsel of any Notice Packets returned as undeliverable.

7.3   **Disputes to Class Member Data.** Settlement Class Members will have the opportunity, should they disagree with CVS's records regarding their dates of employment, to provide documentation and/or an explanation to show contrary dates of employment.  If there is a dispute the Settlement Administrator shall determine the eligibility for, and the amounts of, any payments under the agreement. The Settlement Administrator's determination shall be binding upon the Settlement Class Member and the Parties.

7.4   **Opting Out of the Settlement.** Individuals may request to be excluded from the Settlement Class (but not the PAGA representative action) by sending a written letter to the Settlement Administrator stating that they want to opt out of or be excluded from the Settlement Classes. This letter must include the individual's name, address, telephone number, signature and the last four digits of his or her Social Security Number ("**Opt-Out Letter**"). To be effective, an Opt-Out Letter must be (A) postmarked during the Notice Period and (B) received by the Settlement Administrator no later than seven (7) calendar days after the close of the Notice Period. Any Pharmacist Settlement Class member and/or Retail Pharmacy Settlement Class member who does not timely opt out will become a Settlement Class Member and will be bound by the release(s) set forth in Section 4.3. The Settlement Administrator will periodically inform both Class Counsel and CVS of any Opt-Out Letters received.

7.5   **Objecting to the Settlement and/or Motion for Attorneys' Fees and Costs.** Individuals (other than those who have opted out pursuant to Section 7.4) may present objections to the proposed settlement and/or motion for attorneys' fees and costs at the Final Approval Hearing. To do so, an objector must first present his or her objections to the Settlement Administrator in writing. To be considered, such objections must be postmarked during the Notice Period and received by the Settlement Administrator no later than seven (7) calendar days after the close of the Notice Period. The Settlement Administrator shall file any and all objections with the Court within fourteen (14) calendar days of the close of the Notice Period.

a. An objector has the right to appear at the Final Approval Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Final Approval Hearing must state his or her intention to do so at the time he/she submits his/her written objections to the Settlement Administrator. Any objector may withdraw his/her objections at any time. No Settlement Class Member may appear at the Final Approval Hearing to object to the settlement and/or motion for attorneys' fees and costs unless he/she has filed a timely objection that complies with Section 7.5.

## 8. FINAL APPROVAL OF SETTLEMENT.

8.1 Within 35 days of the close of the Notice Period, the Parties will file a joint motion seeking a Final Approval Order as defined in Section 1.4 above.

8.2 The Parties may file written responses to any filed objections with the Court at the same time they file their motion for final approval of the settlement.

8.3 The Parties agree that if the settlement does not become final for any reason, the Parties will cooperate to place themselves in the exact position as if no settlement had been attempted. The Parties agree the Amended Complaint in the Central District of California Action shall be withdrawn, any settlement classes shall be decertified without prejudice, and the Action shall proceed in the exact form it was in before this Agreement. Similarly, the Eldanaf PAGA Claim may proceed as if no settlement has been attempted. Regarding the Northern District of California Action, Claimants may refile their appeals in the exact same form as they existed immediately prior to the execution of this Agreement, and CVS agrees that any applicable statute(s) of limitation shall relate back to the same extent as if the Action had not been voluntarily dismissed pursuant to this Agreement. CVS retains the right to contest the merits of any and all claims as if the settlement had never been contemplated. This includes, but is not limited to, the right to contest class certification and/or the propriety of a representative action in any form in any proceeding. During the period of the Settlement approval process, all statues of limitations shall be tolled as to the Eldanaf PAGA claim.

## 9. FUNDING OF SETTLEMENT ACCOUNT.

Within ten (10) business days after entry of a Final Approval Order by the Court, CVS, as transferor, will transfer funds in the amount of the Maximum Settlement Amount into the QSF. The Settlement Administrator will be the administrator of the QSF.

9.1 The amount deposited into the QSF plus interest, less any notice and administrative costs that have been incurred, shall be returned to CVS within 5 business days of any of the following events: (i) CVS elects to terminate the settlement in accordance with the terms of this Agreement, including Section 5.5(b) or Section 13 below; (ii) a Final Approval Order entered by the District Court is set aside by an appellate court, unless otherwise agreed in writing by the Parties; or (iii) the settlement is terminated in accordance with Section 14.

EXHIBIT "1"

9.2     Except as provided for in the preceding paragraph, all funds specified in this section shall remain in the QSF until the Settlement Effective Date.

## 10. PAYMENTS TO SETTLEMENT CLASS MEMBERS.

10.1    Following the Settlement Effective Date, the Settlement Administrator shall mail each Settlement Class Member his or her share of the Net Settlement Amount.

10.2    Checks issued pursuant to this Agreement shall expire one hundred and eighty (180) calendar days after they are issued, but a failure by any Settlement Class Member to deposit or cash a check within the period allotted shall have no effect on that individual's release pursuant to Section 4.3. Subject to good cause shown by the Settlement Class Member, the Settlement Administrator may reissue a check for up to an additional thirty (30) calendar days following the original one hundred and eighty (180) day period.

10.3    If any issued checks are not cashed or deposited after 60 calendar days of issuance, the Settlement Administrator will send a written reminder to each individual reminding them that if they fail to cash their check by the 180-day deadline, it will expire and become non-negotiable, and offer to reissue the check if it was lost or misplaced. Any issued checks that are not cashed or deposited after 120 calendar days of issuance, the Settlement Administrator will send a written reminder and make a telephone call to each individual who has an outstanding settlement check reminding them that if they fail to cash their check by the 180-day deadline, it will expire and become non-negotiable, and offer to reissue the check if it was lost or misplaced.

10.4    The payments to Settlement Class Members are fully dependent and conditioned upon a full and complete release of all Released Claims as defined in Section 4.3.

10.5    All funds represented by uncashed checks remaining in the QSF 211 days after CVS funded the QSF shall be tendered to California's Unclaimed Property Fund.

## 11. CONFIDENTIALITY/NON-DISCLOSURE/NO SOLICITATION.

11.1    The Parties will keep the terms of this Agreement confidential until they file their Joint Motion for preliminary approval of the settlement as contemplated by Section 5.5 above. Up through and including Final Approval, Claimants, CVS, and counsel for the respective Parties agree not to issue any press release(s) or otherwise make any public statement about this settlement or its terms, except as required by law to secure approval of this settlement. To the extent Class Counsel or Claimants are approached by outside persons regarding this settlement, they may state, in substance, only that this matter has been resolved. CVS may respond to inquiries from media outlets regarding the settlement by stating, in substance, that the company denies any liability, is committed to complying with the law, and has settled to avoid the burden of continued litigation. CVS may further make public disclosures as required to comply with regulatory disclosure obligations and/or

18 of 23

Generally Accepted Accounting Principles. Notwithstanding the foregoing, nothing herein shall prevent Class Counsel from communicating with members of the Settlement Class about the Parties' settlement or the Agreement, and nothing herein shall prevent CVS from communicating with its current employees on any subject.

11.2　To the extent consistent with professional rules and law, Class Counsel and CVS's Counsel will not solicit or encourage any member of the Pharmacist Settlement Class or the Retail Pharmacy Settlement Class to reject, contest, or opt out of this settlement. Further, to the extent consistent with professional rules and law, up until Final Approval of this settlement, Class Counsel will not represent, encourage, solicit, or otherwise assist any member of the Pharmacist Settlement Class or the Retail Pharmacy Settlement Class who contests the settlement or attempts to litigate with CVS over the Released Claims. Nothing in this Paragraph is intended to prevent or restrain Class Counsel from suggesting to any rejecting, contesting or opting-out member of the Pharmacist Settlement Class or the Retail Pharmacy Settlement Class the option of obtaining separate counsel.

## 12. DOCUMENTS AND DISCOVERY.

Within sixty (60) days after the Settlement Effective Date, Class Counsel shall take steps necessary to destroy or erase all documents and data CVS produced under a protective order to Class Counsel in connection with the Wage and Hour Actions that are currently in Class Counsel's possession, custody, or control. Class Counsel shall certify to CVS in writing they have made good faith efforts to comply with their obligations under this provision. In accordance with the professional rules and law, Class Counsel may retain all papers and property to which the client is entitled, and may keep their own work product and filed briefs and pleadings that may refer to, quote, or incorporate documents and data.

## 13. TERMINATION OF SETTLEMENT AGREEMENT

If five percent (5%) or more of the members of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class, in the aggregate, seek to be excluded from the Parties' settlement, this Agreement shall be voidable at CVS's option, provided that CVS exercises this option no later than fourteen (14) calendar days before the Final Approval Hearing. If CVS exercises its option to void the Agreement pursuant to this Section, CVS, and CVS alone, shall be responsible for any costs incurred to date relating to administration of the Settlement per Section 3.5. In addition, the Agreement shall be null and void and of no effect whatsoever, except for Section 11.1. By signing this Agreement, Claimants agree they will not seek to be excluded from the Parties' settlement.

## 14. ESCALATOR CLAUSE

If the size of the Retail Pharmacy Settlement Class, which CVS represents to be approximately 19,000 individuals, increases by more than ten percent (10%) (*i.e.* by at least 1,900 individuals), Plaintiffs may re-negotiate for an increase in the Maximum Settlement Amount. If this clause is triggered, and the Parties cannot reach agreement on a revised Maximum Settlement Amount within thirty (30) days of Claimants requesting

in writing to renegotiate the Maximum Settlement Amount, the Agreement shall be voidable by Plaintiffs upon seven (7) days written notice to CVS.

## 15. DISPUTES REGARDING ADMINISTRATION OF SETTLEMENT

Any disputes not resolved by the Parties, following a good faith effort to meet and confer, concerning administration of the settlement will be resolved by the Central District of California under the laws of the state of California.

## 16. COMPLETE AGREEMENT.

Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility, therefore. This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

## 17. MODIFICATION OF AGREEMENT

This Agreement, and any and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their counsel of record.

## 18. KNOWING AND VOLUNTARY AGREEMENT

Claimants each agree they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Each further affirms that s/he has not been coerced, threatened, or intimidated into signing this Agreement and that s/he has been advised to and has in fact consulted with an attorney before signing this Agreement. Class Counsel represent that they have conducted a thorough investigation into the facts of the Wage and Hour Cases and have diligently pursued an investigation of the claims asserted on behalf of members of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class against CVS. Based on their own independent investigation and analysis of information provided by CVS, Class Counsel is of the opinion that the settlement with CVS is fair, reasonable, and adequate, and in the best interest of members of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class, in light of all known facts and circumstances, including the risks of significant delay and defenses asserted by CVS.

## 19. GOVERNING LAW.

This Agreement shall be governed by the laws of California, without regard to that state's choice of law provisions or any other jurisdiction, and, when applicable, the laws of the United States.

EXHIBIT "1"

20. **EXCLUSIVE AND CONTINUING JURISDICTION**

The Parties agree to submit to the exclusive and continuing jurisdiction of the United States District Court for the Central District of California for all purposes relating to the review, approval, and enforcement of the terms of this Agreement, including any post-judgment matters as may be appropriate.

21. **BINDING ON SUCCESSORS AND ASSIGNS.**

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, issue, next-of-kin, executors, administrators, successors, and assigns.

22. **COUNTERPARTS AND SIGNATURES.**

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties. Facsimile or electronic signatures will be accepted and shall be binding on the Parties.

23. **HEADINGS.**

The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

**IN WITNESS WHEREOF,** the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered as of the respective dates written below.

CLASS COUNSEL:

_____
Alexander Krakow + Glick LLP

Dated: 2-28-20

CVS PHARMACY, INC.; CVS RX SERVICES, INC., AND GARFIELD BEACH CVS, LLC:

_____

Title: _____

Dated: _____

EXHIBIT "1"

## 20. EXCLUSIVE AND CONTINUING JURISDICTION

The Parties agree to submit to the exclusive and continuing jurisdiction of the United States District Court for the Central District of California for all purposes relating to the review, approval, and enforcement of the terms of this Agreement, including any post-judgment matters as may be appropriate.

## 21. BINDING ON SUCCESSORS AND ASSIGNS.

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, issue, next-of-kin, executors, administrators, successors, and assigns.

## 22. COUNTERPARTS AND SIGNATURES.

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties. Facsimile or electronic signatures will be accepted and shall be binding on the Parties.

## 23. HEADINGS.

The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

**IN WITNESS WHEREOF**, the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered as of the respective dates written below.

CLASS COUNSEL:

CVS PHARMACY, INC.; CVS RX SERVICES, INC., AND GARFIELD BEACH CVS, LLC:

_____

Alexander Krakow + Glick LLP

Dated: _____

Title: _Senior Vice President_

Dated: _2/25/2020_

CLASS COUNSEL

_____
Clark Law Group

Dated: **February 27, 2020**

CVS'S COUNSEL:

_____
Greenberg Traurig, LLP

Dated: _____

CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

Dated: _____

CLASS COUNSEL

_____
Bovarnian Law, Inc

Dated: **February 27, 2020**

CLASS COUNSEL:

_____
United Employees Law Group

Dated: **Feb 20, 2020**

_____
SEAN O'GHENEIAN     Dated: _____

_____
SIGFREDO CABRERA V Dated

52 of 75

EXHIBIT "1"

CLASS COUNSEL:                                    CVS'S COUNSEL:

_____                          _____
Clark Law Group                                  Greenberg Traurig, LLP

Dated: _____                           Dated: 3/2/2020


CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

Dated: _____

CLASS COUNSEL:


_____
Boyamian Law, Inc.

Dated: _____

CLASS COUNSEL:


_____
United Employees Law Group

Dated: _____


_____
SEVAG CHALIAN    Dated: _____


_____
SIGFREDO CABRERA  Dated: _____

EXHIBIT "1"

CLASS COUNSEL:                              CVS'S COUNSEL:

_____            _____
Clark Law Group                            Greenberg Traurig, LLP

Dated: _____                     Dated: _____


CLASS COUNSEL:

_____
The Law Office of Thomas W Falvey

Dated: 2/26/002 0


CLASS COUNSEL:

_____
Boyamian Law, Inc.

Dated: _____


CLASS COUNSEL:

_____
United Employees Law Group

Dated: _____


_____
SEVAG CHALIAN    Dated: _____


_____
SIGFREDO CABRERA  Dated: _____

22 of 23

EXHIBIT "1"

CLASS COUNSEL:                          CVS'S COUNSEL:

_____                _____
Clark Law Group                        Greenberg Traurig, LLP

Dated: _____                 Dated: _____


CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

Dated: _____

CLASS COUNSEL:


_____
Boyamian Law, Inc.

Dated: _____

CLASS COUNSEL:


_____
United Employees Law Group

Dated: _____

_____
SEVAG CHALIAN   Dated:  2/27/2020


_____
SIGFREDO CABRERA  Dated: _____

22 of 23

EXHIBIT "1"

CLASS COUNSEL:

_____
Clark Law Group

Dated: _____

CVS'S COUNSEL:

_____
Greenberg Traurig, LLP

Dated: _____

CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

Dated: _____

CLASS COUNSEL:

_____
Boyamian Law, Inc.

Dated:_____

CLASS COUNSEL:

_____
United Employees Law Group

Dated:_____

_____
SEVAG CHALIAN   Dated:_____

SIGFREDO CABRERA   Dated: 2/26/2020

22 of 23

EXHIBIT "1"

ENKO TELAHUN      Dated: 2-21-20

CHRISTINE MCNEELY Dated:_____

PATRICK BRENNAN Dated:_____

MAY ELDANDAF   Dated:_____

23 of 23

EXHIBIT "1"

ENKO TELAHUN      Dated:_____

CHRISTINE MCNEELY Dated: 2/24/20

PATRICK BRENNAN Dated:_____

MAY ELDANDAF      Dated:_____

EXHIBIT "1"

ENKO TELAHUN      Dated:_____

CHRISTINE MCNEELY Dated:_____

PATRICK BRENNAN Dated:___2 / 2 4 / 2 0 2 0

MAY ELDANDAF      Dated:_____

23 of 23

EXHIBIT "1"

ENKO TELAHUN        Dated:_____

CHRISTINE MCNEELY Dated:_____

PATRICK BRENNAN Dated:_____

MAY ELDANDAF     Dated:___ 02/27/2020

23 of 23

EXHIBIT "1"

# EXHIBIT 2

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**
*Sevag Chalian et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:16-cv-08979 (C.D. Cal.)
*Sigfredo Cabrera et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:20-cv-02401 (C.D. Cal.)

**NOTICE OF CLASS ACTION SETTLEMENT AND RELEASE OF CLAIMS**

JOHN DOE
ADDRESS
DATES OF EMPLOYMENT: [Insert]

**PLEASE READ THIS COURT-APPROVED NOTICE CAREFULLY.
IT INFORMS YOU ABOUT YOUR LEGAL RIGHTS.**

**BASIC INFORMATION**

**1.  What is the purpose of this notice?**

The purpose of this notice is to inform you of your rights and options **and the deadlines to exercise them** under a class action and California Private Attorneys General Act of 2004 ("PAGA") settlement in the lawsuits identified above, which the parties reached after two full days of mediation before David A. Lowe, Esq., and which the United States District Court for the Central District of California (Birotte, J.) has provisionally certified for purposes of settlement. The Court still must decide whether finally to approve the settlement. Settlement payments will only be made if the Court finally approves the settlement and after any appeals are resolved.

**2.  Why am I receiving this notice?**

You are receiving this notice because CVS records show you were employed: (a) as an hourly, non-exempt Pharmacist in a CVS retail pharmacy located in Region 65 or 72 in the State of California between July 20, 2012 and the present and you did not sign an arbitration agreement or previously release and/or adjudicate certain wage and hour claims; or (b) as an hourly, non-exempt employee in a CVS retail pharmacy in the State of California between August 3, 2014 and the present, who has not previously released and/or already adjudicated certain wage and hour claims. Based on this information, you are believed to be a provisional Settlement Class Member in the consolidated cases captioned *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:16-cv-08979, and *Sigfredo Cabrera et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:20-cv-02401 (together, the "Lawsuits").

**THE SETTLEMENT BENEFITS - WHAT YOU GET**

**3.  What does the settlement provide?**

CVS has agreed to pay a total amount not to exceed $9,750,000.00 to settle the claims asserted in the Lawsuits. This includes payments for attorneys' fees and costs, enhancement payments to the named Plaintiffs, payment of amounts under PAGA allocated to the State of California, and the cost of administering the settlement, as summarized below. If the Court finally approves the settlement, all Settlement Class Members will receive a settlement check representing an allocated portion of the PAGA settlement and all Settlement Class Members who do not opt out in accordance with the procedure described below will be mailed an additional settlement check and deemed to have released all claims that were pled in the Lawsuits or that could have been pled in the Lawsuits in accordance with the settlement agreement.

EXHIBIT "2"

**4.  How much will my payment be?**

Each Settlement Class Member will receive a share of the settlement based on his or her dates of employment and pay rate (See Section B(1)-(2) below for payment formula.) Based on the settlement terms, you should expect to receive approximately $[insert amount] based on [insert weeks] that you worked for CVS during the class period, less applicable withholdings. If you wish to challenge the information set forth above, then you must submit a written, signed dispute challenging the information along with supporting documents, to the Settlement Administrator at _____ no later than _____ [forty-five (45) days after the Notice mailing date].

As noted above, the Court has preliminarily approved the settlement as fair and reasonable. If the Court finally approves the settlement and it is not reversed by an appellate court, individuals who receive this notice will receive a settlement check representing an allocated portion of the PAGA settlement and all Settlement Class Members who do not opt out of the class will be eligible to receive an additional check for their settlement shares. (See Summary of Settlement Terms, section B, below, for the payment formula.)

## LAWSUIT BACKGROUND

On July 20, 2016, Plaintiff Sevag Chalian filed a complaint in the Los Angeles County Superior Court entitled *Sevag Chalian v. CVS Pharmacy, Inc., et al.*, case number BC627757, on behalf of himself and a proposed class of allegedly similarly situated pharmacists. The complaint originally alleged claims for: (1) failure to pay all wages due (Cal. Labor Code § 1194), (2) failure to pay overtime compensation allegedly due (Cal. Labor Code § 1194), (3) failure to provide accurate itemized statements (Cal. Labor Code § 226), (4) waiting time penalties (Cal. Labor Code §§ 201-203), and (5) unfair business practices (Cal. Business and Professions Code §§ 17200 *et seq.*). On December 5, 2016, CVS removed the case to the United States District Court for the Central District of California. On September 5, 2017, the complaint was amended to name Tamara Aleksandryan as a plaintiff on behalf of herself and the proposed class. On October 17, 2017, the Court ordered Ms. Aleksandryan to proceed with her claims on an individual basis in arbitration.

On August 3, 2017, Plaintiff Sigfredo Cabrera filed a complaint in the Alameda County Superior Court entitled *Sigfredo Cabrera v. CVS Rx Services, Inc. et al.*, case number RG 17870184, on behalf of himself and a proposed class of allegedly similarly situated individuals. The complaint alleged claims for: (1) failure to pay minimum wages and overtime compensation (Cal. Labor Code §§ 204, 510, 1194, 1197, 1197.1, and 1198), (2) failure to provide legally compliant meal periods or compensation in lieu thereof (Cal. Labor Code §§ 226.7 and 512), (3) failure to provide legally compliant rest periods or compensation in lieu thereof (Cal. Labor Code § 226.7), (4) failure to pay wages owed (Cal. Labor Code §§ 201, 202, and 203), (5) failure to furnish accurate itemized wage statements (Cal. Labor Code § 226), (6) failure to maintain accurate records (Cal. Labor Code §§ 226(a) and 1174), (7) failure to reimburse for necessary work expenses (Cal. Labor Code §§ 2800 and 2802), and (8) unfair business practices (Cal. Business and Professions Code §§ 17200 *et seq.*). On September 5, 2017, the complaint was amended to name Enko Telahun as a named plaintiff on behalf of himself and the proposed class and to add a claim under the: (9) Private Attorneys General Act of 2004 (Cal. Labor Code § 2698 *et seq.*). On October 9, 2017, CVS removed the case to the United States District Court for the Northern District of California. On March 19, 2018, the complaint was amended to add Christine McNeely as a named plaintiff on behalf of herself and the proposed class in the place of Sigfredo Cabrera and Enko Telahun as to Counts 1-8. On August 3, 2018, a draft amended complaint adding Patrick Brennan as a named plaintiff on behalf of himself and the proposed class with respect to Counts 1-8 was circulated. The draft amended complaint added claims under Labor Code Sections 558 and 226.3, and incorporated by reference class member Lynn Brickman's June 28, 2018 letter to the California Department of Labor and Workforce Development Agency ("LWDA").

EXHIBIT "2"

On September 25, 2018, the court granted summary judgment in CVS's favor on Mr. Cabrera's and Mr. Telahun's Count 9 under the Private Attorneys General Act of 2004. On January 2, 2019, at the request of Messrs. Cabrera and Telahun, the court entered partial judgment in CVS's favor, and on January 9, 2019, Mr. Cabrera and Mr. Telahun appealed that judgment to the Ninth Circuit Court of Appeals. Meanwhile, by letter dated March 7, 2019, class member May Eldanaf informed the LWDA of her intent to pursue claims to recover all wages and associated penalties owed to her and other aggrieved pharmacy employees under all Labor Code sections which permit the recovery of unpaid wages and penalties.

All parties subsequently agreed to mediate the disputes in accordance with certain court orders. On July 29, 2020, the parties attended a mediation before David A. Lowe, Esq. of the law firm Rudy, Exelrod, Zieff & Lowe, L.L.P. in San Francisco, California. The parties did not reach an agreement and, on November 11, 2019, held a second day of mediation before David A. Lowe, Esq., at which the parties reached a fair and reasonable settlement of their disputes.

By order dated March 5, 2020, pursuant to the agreement of the parties, the Ninth Circuit dismissed the Cabrera appeal without prejudice and, on March 10, 2020, the United States District Court for the Northern District of California transferred the case to the United States District Court for the Central District of California so the case could be joined with the first-filed *Chalian* case and the claims could be resolved together per the terms of the settlement agreement. On May XX, 2020, the United States District Court for the Central District of California (Birotte, J.) consolidated the *Chalian* and *Cabrera* actions and designated the *Chalian* action as the lead case and approved the filing of an amended, consolidated complaint.

CVS contends the claims in these Lawsuits are without merit and disputes all claims for damages and other relief. CVS also contends that many of the potential Class Members have agreed to individual arbitration of any potential claims precluding those persons from claims in these consolidated lawsuits. No court has ruled fully on the merits of the Lawsuits. Plaintiffs have vigorously prosecuted these and related cases, and CVS has vigorously defended the cases. The Parties have engaged in discovery, both formal and informal, to assess the relative merits of the various alleged claims and CVS's defenses to those claims. Plaintiffs' attorneys have extensively litigated this matter, interviewed numerous potential settlement class members, reviewed extensive documents and data produced by CVS, and filed, opposed, and argued motions.

The Class Representatives and Class Counsel support this settlement. Class Counsel believe further proceedings in these cases, including a trial and multiple potential appeals, would be very expensive and protracted. There is a real risk class certification could be denied in whole or in part and that the Court may find that the PAGA claims are not manageable. There is also a prevalence of legal issues, including but not limited to the fact that many Settlement Class Members are subject to collective bargaining agreements, individual arbitration agreements, and individual res judicata arguments, that render the prospect of any class-wide relief such as achieved here difficult to obtain, and Defendants claim unlikely. No one can predict how the various legal questions at issue, including the amount of damages, would ultimately be resolved. Therefore, upon careful consideration of all facts and circumstances of these cases, Class Counsel believe the proposed settlement is fair, reasonable and adequate.

## SUMMARY OF THE PROPOSED SETTLEMENT

A.      There are two settlement classes:

1.  "Pharmacist Settlement Class" means hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and the date of the Preliminary Approval Order, whose claims are not subject to arbitration and which have not previously been released and/or adjudicated, and whose LEARNet and/or Siteminder data indicates activity when time punch records do not show he or she was clocked-in.

EXHIBIT "2"

2. "Retail Pharmacy Settlement Class" means persons, other than those in the Pharmacist Settlement Class, who held certain hourly, nonexempt positions in a CVS retail pharmacy in the State of California between August 3, 2014 and the date of the Preliminary Approval Order who have not previously released and/or adjudicated the Released Claims.

B.     Settlement Formula:

1. Each Settlement Class Member will be entitled to a payment based on a payment ratio that considers the total number of weeks he or she worked and his or her weekly pay rate. If a Settlement Class Member was employed for only part of a workweek, he or she will be credited for purposes of this Settlement with a fraction of the workweek, rounded up or down to the nearest two-digit decimal and based upon a five-day work week.

2. Each Settlement Class Member's share shall be determined by multiplying the Member's number of qualifying workweeks by the Member's weekly pay rate (i.e., the individual's rate of pay for a week, which is his or her hourly rate of pay multiplied by 40 hours) during the applicable class period. This number will then be divided by the total number of workweeks worked by all Settlement Class Members multiplied by the total amount of weekly rates for all Settlement Class Members (i.e., sum of all Settlement Class Members' weekly rates) during the applicable class period. To the extent an individual is a Class Member in both classes, he or she shall be eligible to receive whichever class settlement payment is larger.

C.     Class Representatives: The Court has approved Named Plaintiffs Sevag Chalian and Patrick Brennan as Class Representatives for the Pharmacist Settlement Class and Named Plaintiff Christine McNeely as the Class Representative for the Retail Pharmacy Settlement Class. The Class Representatives will apply to the Court for service awards and will be eligible for such amounts as the Court determines to be fair and reasonable. The parties' agreement proposes a payment of no more than $43,000 total for service awards to the Class Representatives and three other named plaintiffs. Class Counsel considers this amount to be fair, reasonable and adequate given the time the Class Representatives and the other named plaintiffs expended and their agreement to release all claims against CVS.

D.     Attorneys' Fees and Costs: Plaintiffs' attorneys' fees request shall not exceed 30% of the settlement amount, or $2,925,000.00. In addition, Class Counsel will seek to be reimbursed for all costs and expenses incurred by them in prosecuting the Lawsuits, in an amount not to exceed $50,000.

E.     Costs of Settlement Administration: Class Counsel will seek costs of settlement administration not to exceed $75,000 to be paid from the Settlement Amount to the third-party settlement administrator.

F.     PAGA Payment: The parties have designated $75,000 of the settlement amount as payment for civil penalties under the California Labor Code Private Attorneys General Act of 2004. Seventy-five percent of that amount – by law – will be provided to the State of California and 25% will go to Class Members.

## EFFECT OF THE SETTLEMENT

Each Settlement Class Member who does not opt out will release and forever discharge CVS from all claims, causes of action, and legal theories of relief that were alleged or that could have been alleged or otherwise raised in the Lawsuits, from August 3, 2014 until the date of the Preliminary Approval Order for Retail Pharmacy Settlement Class members and from July 20, 2012 until the date of the Preliminary Approval Order for Pharmacist Class members (the "Released Claims"). The Released Claims include, but are not limited to: (a) failure to pay minimum wages; (b) failure to pay overtime wages; (c) failure to pay all wages or amounts due under the Labor

8

Code and/or federal Fair Labor Standards Act; (d) failure to comply with Labor Code Sections 850, 851, 851.5, 852 and/or 29 U.S.C. § 201 et seq.; (e) failure to provide proper meal periods, or premium pay for non-compliant meal periods; (f) failure to authorize and permit rest periods, or premium pay for non-compliant rest periods; (g) failure to provide complete, accurate, and/or properly formatted wage statements; (h) failure to reimburse all necessary business expenses; (i) failure to timely pay wages due or final wages due; (j) all claims under PAGA that were or could have been asserted based on the facts, claims, causes of action or legal theories described above or on any of the claims, causes of action, facts or legal theories of relief pleaded in the Lawsuits; and (k) all damages, penalties, including penalties under Labor Code Sections 203 and 558, interest, costs (including attorney's fees) and other amounts recoverable under said claims or causes of action as to the facts and/or legal theories alleged or which could have been alleged in the Lawsuits. This release shall not apply to claims for workers' compensation benefits, unemployment insurance benefits, or any other claim or right that as a matter of law cannot be waived or released.

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| DO NOTHING TO PARTICIPATE IN THE SETTLEMENT AND RECEIVE A PAYMENT | If you wish to settle your claims and receive a payment, you do not have to do anything at this time.  If the settlement is finally approved by the Court, you will receive a check in the mail. |
|---|---|
| OPT OUT | By opting out of the settlement, you give up any right to receive a payment from this settlement for the non-PAGA portion. You will keep any rights to sue CVS on the same legal claims asserted in the Lawsuits other than those made pursuant to PAGA, provided you do so within the applicable statute of limitations. If you are subject to an arbitration agreement, you may also be required to litigate any such potential claims in arbitration and not in a State or Federal court. |
| OBJECT | You may write to the Court about why you do not like the class action settlement. |

## HOW YOU GET A PAYMENT

**5. How can I get my payment?**

If you wish to receive a settlement payment from the settlement fund, you do not need to do anything at this time. If the settlement is finally approved by the Court, you will receive a check in the mail.

**6. When will I get my settlement payment?**

The Court will hold a final approval/fairness hearing on ＿＿＿＿＿＿ to decide whether to grant final approval of the settlement. If the Court approves the settlement and there are no appeals, then your payment will be mailed to you after the Settlement Effective Date.

**7. Will I still get a payment if I have filed for bankruptcy while the lawsuit was pending?**

If you filed for bankruptcy while these Lawsuits were pending, contact your bankruptcy attorney to discuss whether the bankruptcy will have any impact on your ability to collect a settlement payment.  In consultation with your bankruptcy attorney, you must take the necessary steps to advise the bankruptcy trustee of your settlement payment.

EXHIBIT "2"

## EXCLUDING YOURSELF FROM THE SETTLEMENT

**8.  How do I exclude myself from the settlement?**

If you want to keep the right to sue CVS on your own about the legal issues in this case, other than for relief under the PAGA, then you must exclude yourself from the class. The process for excluding yourself is sometimes referred to as "opting out."

To opt out, you must send by First Class U.S. mail a written, signed statement to the Settlement Administrator that includes your name, address, telephone numbers, signature, and last four digits of your social security number and states that you want to opt out of or be excluded from the settlement. To be effective, your opt-out statement must be postmarked no later than _____ and must be mailed to: _____.

If you opt out, you will not receive a settlement payment and you cannot object to the settlement.

## OBJECTING TO THE SETTLEMENT

**9.  How do I tell the Court that I object to the settlement?**

You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval of the settlement, then no settlement payments will be sent out and the Lawsuits will continue. If that is what you want to happen, you must object.

To object, you must first present your objections to the Settlement Administrator in writing. Such objections must be postmarked no later than _____ and received no later than _____ by: _____. You can also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.

**10.  What's the difference between objecting to the settlement and opting out?**

Objecting is telling the Court that you do not like something about the settlement. To object, you must remain a Settlement Class Member. In contrast, opting out is telling the Court that you do not want to be part of the Lawsuits. If you opt out, you cannot object because the Lawsuits no longer affect you. Based on objections, the Court may require the parties to revise the settlement or refuse to approve it, in which case no payments will issue and the case will be rescheduled for trial. Also, if the settlement is not approved, many of the Settlement Class Members may be subject to individual arbitration clauses and thus unable to recover as part of any Class wide trial.

## THE LAWYERS REPRESENTING YOU

**11.  Do I have a lawyer in this case?**

Yes. Every Settlement Class Member in the Lawsuits is represented by the following attorneys, who the Court has appointed as Class Counsel. You may obtain information about Class Counsel, their practices, and their lawyers' experience by visiting their respective websites.

**Class Counsel:**

| ALEXANDER KRAKOW + GLICK LLP | LAW OFFICES OF THOMAS W. FALVEY |
|---|---|
| Michael S. Morrison (State Bar No. 205320) | Thomas W. Falvey, SBN 65744 |
| 1900 Ave. of the Stars, Suite 900 | 550 North Brand Boulevard, Suite 1500 |
| Los Angeles, California 90067 | Glendale, California 91203 |

EXHIBIT "2"

| | |
|---|---|
| T: 310.394.0888 \| F: 310.394.0811<br>E: mmorrison@akgllp.com | T: (818) 547-5200 \| F: (818) 500-9307<br>E-mail: thomaswfalvey@gmail.com |
| **BOYAMIAN LAW, INC.**<br>Michael H. Boyamian, SBN 256107<br>Armand R. Kizirian, SBN 293992<br>550 North Brand Boulevard, Suite 1500<br>Glendale, California 91203<br>T: (818) 547-5300 \| F: (818) 547-5678<br>E: michael@boyamianlaw.com,<br>   armand@boyamianlaw.com | **UNITED EMPLOYEES LAW GROUP**<br>Walter Haines, SBN 071075<br>5500 Bolsa Avenue, Suite 201<br>Huntington Beach, CA 92649<br>Telephone: (562) 256-1047<br>Facsimile: (562) 256-4554 |
| **CLARK LAW GROUP**<br>R. Craig Clark, SBN 129219<br>3258 4th Ave.<br>San Diego, CA 92103<br>T: (619) 239-1321 \| F: (888) 273-4554<br>cclark@clarklawyers.com<br>clgadmin@clarklawyers.com | |

## 12.  How will the lawyers be paid?

As noted above, the settlement agreement provides that Class Counsel will ask the Court to approve payment to them of attorneys' fees from the settlement fund in an amount not to exceed $2,925,000.00, or 30% of the Maximum Settlement Amount. In addition, Class Counsel will ask the Court to approve payment to them for reasonable litigation costs incurred by Class Counsel in the litigation and settlement of the Lawsuits.

### THE COURT'S FAIRNESS HEARING

## 13.  When and where will the Court decide whether to approve the settlement agreement?

The Court will hold a fairness hearing at TIME on DATE at the United States District Court for the Central District of California at 350 West First Street, Los Angeles, CA 90012, before Judge André Birotte Jr. in Courtroom 7B. You may attend and you may ask to speak, but you do not have to. At the fairness hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are any objections, the Court will consider them at that time. After the hearing, the Court will decide whether to grant final approval of the settlement.

## 14.  Do I have to come to the fairness hearing?

Class Counsel will represent you at the hearing and you do not need to attend. Of course, you are welcome to attend (at your own expense) if you so desire. The Court will consider any objections received in a timely manner, even if the individual who sent in the objection does not appear at the fairness hearing. You may also pay a different lawyer of your own choosing to attend the fairness hearing and represent your interests.

EXHIBIT "2"

**15.  May I speak at the fairness hearing?**

If you send in your objection by the deadline, you may ask the Court for permission to speak at the fairness hearing. To be eligible to raise an objection at the fairness hearing, you must first present your objections to the Settlement Administrator in writing. Such objections must be postmarked no later than _____ and received no later than _____ by _____.

Again, you cannot speak at the hearing if you opt out.

**GETTING MORE INFORMATION**

**16.  Are there more details about the settlement?**

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please read the settlement agreement. You may obtain a copy by visiting [insert class administrator website link], contacting class counsel at their email addresses and phone numbers listed above, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Central District of California, *[insert appropriate Court location here]*, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

**VISIT [WEBSITE URL] FOR FURTHER INFORMATION AND ANNOUNCEMENTS REGARDING THE SETTLEMENT. NOTICE OF ANY RULINGS, INCLUDING ISSUANCE OF A FINAL JUDGMENT, WILL BE POSTED ON THE WEBSITE.**

EXHIBIT "2"

**EXHIBIT 3**

**<u>Chalian v. CVS</u>**
Accounting as of June 4, 2020

Total Retainer: $0

| Vendor | Date | Description | Amount |
|--------|------|-------------|--------|
| Berger Consulting | 7.27.19 | Inv. 2505 | $968.75 |
| | 12.1.19 | Inv. 2757 | $828.13 |
| | 5.20.20 | Inv. 3150 | $405.00 |
| | 6.5.20 | Additional work | $135.00 |
| Express Connection | 7.25.17 | Rush courtesy copies to Court | $63.77 |
| | | | |
| First Legal Attorney Service | 10.18.16 | Association of Counsel | $54.23 |
| | | | |
| Mark Rudy Investigation | 6.17.19 | Mediation | $4,250.00 |
| | | | |
| UPS | 3.3.17 | | $24.31 |
| | 8.11.17 | | $17.49 |
| | 9.5.17 | | $23.60 |
| | 10.5.17 | | $24.49 |
| | | | |
| Bill4Time | 8.25.17 | | $25.35 |
| | | **T otal:** | **$6,820.12** |

EXHIBIT "3"

EXHIBIT "3"

Boyamian Law, Inc.                                                                                    Chalian v. CVS

| | *Chalian v. CVS - Boyamian Law, Inc. Costs* | | | |
|---|---|---|---|---|
| **Date** | **Vendor** | **Notes (if applicable)** | **Amount** | **Source** |
| 2018-07-20 | USPS | SASE Transition Letter | $0.47 | |
| 2018-07-20 | GSO | Fee Split Transition Letter | 8.21 | |
| 2018-11-27 | USPS | Mass mailing | $47.00 | |
| | | | | |
| 2018-12-5 | USPS | | 1.41 | |
| | July In-House Copy Costs | | $0.50 | |
| | September In-House Copy Costs | | $0.20 | |
| | November In-House Copy Costs | | $79.40 | |
| | December In-House Copy Costs | | $79.40 | |
| 2019-03-01 | February In-house Photocopy Costs | | 131.8 | |
| 2019-04-10 | USPS | Class Mailing | $460.00 | BLFI Chase Visa 1979 |
| 2019-05-01 | April In-house Photocopy Costs | | $398.40 | |
| 2019-06-03 | May In-house Photocopy Costs | | $2.80 | |
| 2019-07-08 | Rudy, Exelrod, Zieff & Lowe, LLP | Mediation | $2,125.00 | Check No. 1095 |
| 2019-07-08 | USPS | Mailing | $0.50 | stamps.com account |
| 2019-07-29 | Mendocino Farms - S.F. | Lunch | $63.92 | Visa 1979 |
| 2019-07-29 | Burbank Airport | Parking | $32.00 | Visa 0707 |
| 2019-07-29 | Southwest Airlines | Flight | $358.96 | |
| 2019-08-01 | July In-House Copy Costs | | $26.40 | |
| 2019-09-01 | August In-House Copy Costs | | $26.20 | |
| 2019-11-01 | Jet Blue | Flight | $616.00 | AmEx |
| 2019-11-06 | Rudy, Exelrod, Zieff & Lowe, LLP | Mediation (Second Day) | $2,375.00 | Check 1117 |
| 2019-11-06 | Golden State Overnight (GSO) | Courier | $10.48 | Visa 0707 |
| 2019-11-09 | Lowes Regency Hotel | Hotel | $511.19 | AmEx |
| 2019-12-04 | Berger Consulting Group | Expert Services | $828.13 | Check 1121 |
| 2020-01-16 | Berger Consulting Group | Expert Services | $968.75 | Check 1124 |
| 2020-01-16 | USPS | Mailing | $0.50 | |
| | | | | |
| | | | | |
| | | | | |
| | | **TOTAL** | **$9,152.62** | |

EXHIBIT "3"

EXHIBIT "3"

**R. CRAIG CLARK, PC**
**Cabrera v. CVS**
**All Transactions**

| Type | Date | Num | Source Name | Memo | Amount |
|---|---|---|---|---|---|
| **Client Costs** | | | | | |
| Credit Card Charge | 08/05/2017 | | One Legal LLC | | 1,574.26 |
| General Journal | 08/09/2017 | SS 012 | | Postage | 7.50 |
| Bill | 09/07/2017 | 4223899 | Knox Attorney Service | P's 1st amended complain... | 101.15 |
| Bill | 09/13/2017 | 4224719 | Knox Attorney Service | 1st Amended Complaint | 114.55 |
| Bill | 09/13/2017 | 4224758 | Knox Attorney Service | 1st Amended Complaint | 114.55 |
| Bill | 09/13/2017 | 4224720 | Knox Attorney Service | 1st Amended Complaint | 62.30 |
| General Journal | 09/17/2017 | SS 015 | | Postage | 26.87 |
| Bill | 09/28/2017 | 4226806 | Knox Attorney Service | Notice of Hearing | 65.75 |
| Bill | 10/09/2017 | 4228540 | Knox Attorney Service | Proof of Service | 65.75 |
| Credit Card Charge | 10/10/2017 | | CourtCall LLC | Case Mgmt Conference | 86.00 |
| Bill | 10/14/2017 | 4229206 | Knox Attorney Service | Case Mgmt Stmt, P of Serv | 95.75 |
| Credit Card Charge | 10/27/2017 | | Pacer Service Center | Legal Research | 0.00 |
| General Journal | 12/31/2017 | SS 038 | Cabrera/CVS Rx | Postage | 25.66 |
| Credit Card Charge | 01/29/2018 | | Southwest Air | SAN-SFO RCC | 242.96 |
| Credit Card Charge | 02/23/2018 | | Hotels.Com | Lodging | 185.57 |
| Credit Card Charge | 02/28/2018 | | Tsubasa Sushi | Cabrera | 105.05 |
| Credit Card Charge | 02/28/2018 | | Zuni Cafe | | 81.78 |
| Credit Card Charge | 02/28/2018 | | Nojo Ramen | | 54.25 |
| Credit Card Charge | 02/28/2018 | | Bart | BART | 22.00 |
| Credit Card Charge | 03/01/2018 | | Southwest Air | SJC San | 220.98 |
| Credit Card Charge | 03/01/2018 | | Willow Creek Grill | | 30.85 |
| Credit Card Charge | 03/01/2018 | | Jamba Juice | | 8.52 |
| Credit Card Charge | 03/01/2018 | | Uber | | 3.00 |
| Credit Card Charge | 03/01/2018 | | Uber | | 15.94 |
| Credit Card Charge | 03/01/2018 | | Uber | | 7.75 |
| Credit Card Charge | 03/01/2018 | | Uber | | 65.34 |
| Credit Card Charge | 03/23/2018 | | Federal Express | McNeely RFPs and SROGs | 29.78 |
| Credit Card Charge | 03/23/2018 | | Federal Express | McNeely RFPs and SROGs | 50.75 |
| Credit Card Charge | 03/27/2018 | | US Court of Appeals | MRR Application to the Ni... | 230.00 |
| General Journal | 08/01/2018 | SS 039 | Cabrera/CVS Rx | Postage | 113.48 |
| Credit Card Charge | 08/06/2018 | | Federal Express | Overnight Shipment of Ap... | 72.69 |
| Bill | 08/15/2018 | 9198319 | Knox Attorney Service | Briefs, Excerpts | 65.25 |
| Credit Card Charge | 09/14/2018 | | Southwest Air | MRR SAN SFO SAN | 375.96 |
| Credit Card Charge | 09/18/2018 | | Uber | Uber: MRR | 15.52 |
| Credit Card Charge | 09/18/2018 | | Priceline Hotels | Priceline Hotels | 412.98 |
| Bill | 09/20/2018 | | Monique Rodriguez | Reimb 9/18 Meal @ Airport | 2.59 |
| Bill | 09/20/2018 | | Monique Rodriguez | Reimb 9/18 Meal | 32.00 |
| Bill | 09/20/2018 | | Monique Rodriguez | Reimb 9/19 Meal | 8.34 |
| Bill | 09/20/2018 | | Monique Rodriguez | Reimb 9/19 Meal | 40.03 |
| Bill | 09/20/2018 | | Monique Rodriguez | Reimb 9/20 Meal | 11.29 |
| Bill | 09/20/2018 | | Monique Rodriguez | Trans (BART) | 20.00 |
| Credit Card Charge | 09/20/2018 | | Uber | Uber: MRR | 6.61 |
| Check | 09/28/2018 | 4727 | Belle Ball | Ct. Reporter | 97.75 |
| General Journal | 09/30/2018 | SS 073 | | Postage | 13.10 |
| Credit Card Charge | 10/09/2018 | | Pay.Gov | Notice of Appeal to Ninth ... | 505.00 |
| Bill | 10/17/2018 | 4274179 | Knox Attorney Service | Delivery to 450 Golden Ga... | 130.95 |
| General Journal | 10/31/2018 | SS 074 | | Postage | 13.10 |
| General Journal | 11/30/2018 | SS 075 | | Postage | 13.10 |
| Credit Card Charge | 12/04/2018 | | Southwest Air | MRR SAN SFO | 213.96 |
| Credit Card Charge | 12/04/2018 | | Hotels.Com | Lodging | 115.28 |
| Bill | 12/12/2018 | 4280865 | Knox Attorney Service | Delivery for USDC | 86.75 |
| Credit Card Credit | 12/14/2018 | | Southwest Air | MRR SAN SFO | 0.00 |
| Credit Card Credit | 12/14/2018 | | Hotels.Com | Lodging Refund | -115.28 |
| Credit Card Charge | 01/09/2019 | | Pay.Gov | Notice of Appeal to Ninth ... | 505.00 |
| General Journal | 01/31/2019 | SS 083 | | Allocate Postage | 6.55 |
| Credit Card Charge | 04/24/2019 | 43635 | Federal Express | Delivery of paper copies o... | 83.18 |
| Bill | 04/25/2019 | 9227979 | Knox Attorney Service | Copu AOB and Excerpts | 373.72 |
| General Journal | 04/30/2019 | SS 086 | | Allocate Postage | 7.45 |
| General Journal | 06/30/2019 | SS 087 | | Allocate Postage | 1.00 |
| Credit Card Charge | 07/19/2019 | | Southwest Air | MRR Travel | 50.00 |
| Credit Card Charge | 07/22/2019 | | Hyatt Regency San Fran... | Lodging: 7/29/19 | 183.97 |
| Bill | 07/27/2019 | | Berger Consulting Group... | Chalian v CVS Analysis | 1,937.50 |
| Credit Card Charge | 07/28/2019 | | Bart | BART | 20.00 |
| Credit Card Charge | 07/28/2019 | | Hog Island | | 81.08 |

EXHIBIT "3"

**12:57 PM**

**R. CRAIG CLARK, PC**

**06/04/20**

**Cabrera v. CVS**

**Accrual Basis**

**All Transactions**

| Type | Date | Num | Source Name | Memo | Amount |
|------|------|-----|-------------|------|--------|
| Credit Card Charge | 07/28/2019 | | Angler Restaurant | | 191.01 |
| General Journal | 07/28/2019 | SS 091 | Cabrera/CVS Rx | Meal | 11.45 |
| Credit Card Charge | 07/29/2019 | | Uber | RCC | 11.37 |
| Credit Card Charge | 07/29/2019 | | Walgreens | | 22.77 |
| Credit Card Charge | 07/29/2019 | | Hyatt Regency San Fran... | | 75.56 |
| General Journal | 07/29/2019 | SS 092 | Cabrera/CVS Rx | RCC Travel Expenses | 400.00 |
| Credit Card Charge | 07/30/2019 | | Uber | RCC | 5.00 |
| Credit Card Charge | 07/30/2019 | | Uber | RCC | 11.02 |
| General Journal | 07/31/2019 | SS 090 | | Allocate Postage | 6.95 |
| Credit Card Charge | 08/06/2019 | | Uber | RCC | 5.00 |
| Credit Card Charge | 10/16/2019 | | Hotel Fusion | Lodging | 620.45 |
| Credit Card Charge | 10/16/2019 | | Southwest Air | | 50.00 |
| General Journal | 10/31/2019 | SS 097 | | Allocate Postage | 14.90 |
| General Journal | 11/30/2019 | SS 096 | | Allocate Postage | 1.00 |
| Bill | 12/01/2019 | 2757 | Berger Consulting Group... | Continuatipm Analysis | 1,656.25 |
| Bill | 12/18/2019 | | Monique Rodriguez | 11/8/19: Coffee | 4.80 |
| Bill | 12/18/2019 | | Monique Rodriguez | 11/11/19: Water | 1.75 |
| Bill | 12/18/2019 | | Monique Rodriguez | 11/11/9: Meal | 43.81 |
| General Journal | 12/31/2019 | SS 098 | | Allocate Postage | 6.95 |
| Credit Card Charge | 02/12/2020 | | Federal Express | O'night delivery of Appella... | 73.41 |
| Bill | 02/14/2020 | 9255426 | Knox Attorney Service | Reply Brief for 9th Circuit | 53.70 |
| General Journal | 02/29/2020 | SS 100 | | Allocate Postage | 78.40 |
| General Journal | 03/31/2020 | SS 101 | | Allocate Postage | 15.95 |
| Check | 05/27/2020 | 4949 | Berger Consulting Group... | May 2020 Analysis | 202.50 |
| Total Client Costs | | | | | 12,758.51 |
| **TOTAL** | | | | | **12,758.51** |

EXHIBIT "3"

**EXHIBIT 4**

| Document No: CTRL-0002 | TITLE: | CVS Health Travel and Expense Reporting Policy | |
|---|---|---|---|
| **Parent Document(s):  N/A** | | | |
| **Effective Date:** See Document Information Page | **Last Review Date:** See Review and Revision History Section | **Business Process Owner Title (Name Optional):** VP, Strategic Procurement | |
| **Exhibit(s):  N/A** | | | |
| **Document Type:** | X  Policy and Procedure | ☐  Standard | ☐  Work Instructions /Training Manual |

## POLICY

- This policy applies to all CVS Health Employees, including all subsidiaries and business units, at all levels of the company.

- It is CVS Health policy that reasonable travel expenses that would otherwise have not been incurred by Employees in the performance of their assigned duties, and approved non-travel related business expenses will be reimbursed. Reimbursable expenses include but are not limited to:

- Business travel expenses including airfare and other transportation expenses, car rental, accommodations, meals, certain business entertainment, and other miscellaneous expenses (fax costs, photocopies, etc).

- The goal is to ensure the use of cost-effective travel to achieve CVS Health business objectives while improving the management and control of travel expenses incurred while conducting business for CVS Health.  Employees are responsible for determining if there is a way to meet their objective without traveling.  Teleconferencing, video conferencing, or web conferencing may meet those objectives at a lower cost to the company.

- As a general principle, Employees should spend CVS Health money less freely than they would spend their own.

## ACCOUNTABILITY

- Compliance to this policy is the responsibility of the traveler (employee) and the approver of the expense report.

- Employees are responsible for ensuring that travel related expenditures are in compliance with policy and submitted for reimbursement according to policy.  By submitting an expense report, the employee acknowledges that all expenses were incurred according to policy

- Management is responsible for timely review and approval of all expense reports. By approving an expense report, the Manager acknowledges that they have reviewed the expense report and all expenses incurred are consistent with policy.

---

Confidential and Proprietary
©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA = OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY

CONFIDENTIAL                    SUBJECT TO PROTECTIVE ORDER                    CVS 000454

EXHIBIT "4"

| TITLE: | CVS Health Travel and Expense Reporting Policy |
|---|---|

- CVS Health holds all Employees and their supervisors approving expense reports accountable for the completion, submission, and approval of an expense report in compliance with policy.

- CVS Health will not reimburse for unreasonable or excessive charges and reserves the right to deny reimbursement for those charges deemed unreasonable or excessive.

## EMPLOYEE OBLIGATIONS

- Employees are required to book travel through our designated travel provider, currently Egencia, or through Conference blocks.  CVS Health reserves the right to deny reimbursement for travel arranged outside of Egencia unless approval is received from the Corporate Travel Manager prior to the travel occurring

- Employees are required to use the USBank Corporate Card for business travel and related expenses if you travel for business more than twice per year.  The USBank Corporate Card is to be used only by the cardholder for their business expenses and not for personal purchases or other associates' travel arrangements.

- Employees are required to submit expense reports within 30 days of incurring the expense.  Expense reports should be submitted using the Concur T&E system. Information for using Concur T&E can be found on Accounts Payable's myLife page.

- Employees are required to sign up for direct deposit to ensure timely receipt of expense reimbursement.  Direct deposit enrollment can be done by contacting T&E_ACH@CVSCaremark.com and requesting a Direct Deposit Authorization form.   Any reimbursements made by check will only be disbursed on the 11th day of each month.

## RECEIPT REQUIREMENTS

- All expenses $25 and over must be supported by a detailed receipt and proof of payment or the expense will not be reimbursed.

## PROCEDURES

1. **Travel Arrangements**
   a. Trip Planning
      i. In order to build volumes, track expenditures, and take advantage of negotiated discounts in travel, all travelers must arrange their own travel through our designated travel agency, Egencia.
      ii. The Travel Department should be consulted when travel involves numerous trips to the same destination or for projects requiring extensive travel when planning.  The Travel Department can be reached via email at Travel@CVSCaremark.com.
   b. Traveler Profiles

©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA = OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY
CONFIDENTIAL                 SUBJECT TO PROTECTIVE ORDER                 CVS 000455
EXHIBIT "4"

| TITLE: | CVS Health Travel and Expense Reporting Policy |
|---|---|

    i.   A travel profile is required for all CVS Health Employees who travel using Egencia.

    ii.   All travelers are responsible for maintaining current information in their profiles in Egencia to ensure billing accuracy.

**2. Air Travel**
  a. For all USBank Corporate Cardholders, airline purchases such as airfare, exchange fees and baggage fees billed to a corporate card are centrally paid by CVS Health and therefore should not be included on expense reports.
  b. Fares and Service Levels
    i.   Non-refundable tickets must be booked when available
    ii.   Travel must be booked within 14 days of departure or earlier. Employees must accept the lowest price logical flight including connections, direct, and non-stop flights.
    iii.   Coach class must be booked for domestic flights including to/from Hawaii and Puerto Rico.
       1. First Class/Business Class is not permitted unless pre-approved by the Vice President, Strategic Procurement.
       2. Upgrades to first class/business class at check-in or to a preferred or premium seat (i.e. United's extra legroom) which require an additional fee are not reimbursable.
       3. International flights of 8 hours or more may be booked in business class.
    iv.   Chartered flights are not permitted and will not be reimbursed.
  c. Tickets
    i.   Airline tickets are non-transferable
    ii.   E-tickets will be issued for travel.  Additional fees for paper tickets are not reimbursable.
    iii.   Unused tickets remain the property of CVS Health.  Employees should make every effort to use an open ticket on your next business flight.
  d. Frequent Flyer Programs and Air Clubs
    i.   Employees should not allow the potential for earning additional frequent flyer mileage influence their airline choice.
    ii.   Airline Club and TSA Pre-check memberships are not reimbursable.

**3. Auto Rentals**
  a. Auto Rentals must be reserved with the preferred CVS Health auto rental providers
  b. Negotiated rental agreements booked through Egencia include discounted corporate rates and insurance coverage. Additional coverage and upgrade fees are non-reimbursable; therefore, the driver should decline those options at the time of rental.
  c. Compact or mid-sized cars must be reserved unless a group is travelling together at which time a full size vehicle is allowed.
  d. Fuel Expenses for Auto Rental
    i.   To avoid the higher cost of gasoline charged by auto rental providers, Employees must fill the gas tank prior to returning the rental unless doing so would result in missing flights

Confidential and Proprietary
©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA = OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY

CONFIDENTIAL      SUBJECT TO PROTECTIVE ORDER      CVS 000456

EXHIBIT "4"

| TITLE: | CVS Health Travel and Expense Reporting Policy |
|---|---|

      ii.    If the total driving distance is less than 75 miles, associates must present a receipt for the purchase of fuel or you will be automatically charged the flat fuel fee applicable at the time with the auto rental provider.

e. Traffic fines, parking violations, theft or damage of personal items and effects while operating a rental vehicle are the responsibility of the driver and are not reimbursable by CVS Health.

f. In the event of a vehicle accident, regardless of fault or severity, the Employee must immediately report the accident to police, the rental company, and the Risk Management Department.

**4. Other Transportation**

a. Personal Vehicle Expenses

    i.   CVS Health will reimburse Employees at a rate of $.47 for each business mile driven with a personal vehicle net of normal daily commuting mileage. Normal daily commuting mileage must be deducted from the total business trip miles prior to submission for reimbursement.

        1. The reimbursement of $.47 per mile is meant to cover all expenses related to business use of a personal vehicle. Therefore CVS Health will not reimburse for any other vehicle expenses (i.e. gas, maintenance, insurance, damage).

    ii.  Colleagues who work from home must use the following factors to determine their tax home. If you satisfy all three factors, your tax home is the home where you regularly live. If you satisfy only two factors, you may have a tax home depending on all the facts and circumstances. If you satisfy only one factor, your tax home is wherever you work and you cannot deduct travel expenses. If the place you regularly live is determined to be your tax home then mileage reimbursements would be applicable on all miles traveled for business purposes.

        1. You perform part of your business in the area of your main home and use that home for lodging while doing business in the area.

        2. You have living expenses at your main home that you duplicate because your business requires you to be away from that home.

        3. You have not abandoned the area in which both your historical place of lodging and your claimed main home are located; you have a member or members of your family living at your main home; or you can often use that home for lodging.

    iii. CVS Health will not reimburse for damages as a result of collision, theft, or vandalism, or any other casualty when using a personal vehicle for business.

    iv. Any Employee in a position included in the Runzheimer program or who receives a company vehicle or any vehicle related allowance are not eligible to receive mileage reimbursement through the expense reimbursement process.

b. Limousine or Car Services -- The preferable means of transportation between home and airport is your personal vehicle although car services/taxis will be reimbursed when the cost of the car service/taxi is more economical than using a personal vehicle..

c. Parking fees and tolls are reimbursable when appropriate documentation is submitted

©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA = OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY

CONFIDENTIAL                SUBJECT TO PROTECTIVE ORDER           CVS 000457

EXHIBIT "4"

| TITLE: | CVS Health Travel and Expense Reporting Policy |
|---|---|

    i.    Employees should use short-term airport parking for trips one day or less

    ii.    Employees should use long term parking facilities for business trips lasting more than one day.

**5.  Accommodations**
   a.  Hotels must be booked through the CVS Health designated travel agency, currently Egencia.
   b.  Employees are required to book a CVS Health preferred hotel as indicated in the Egencia booking tool.  If a preferred hotel does not appear on Egencia, please reach out to the Travel Department to have it added.
   c.  Hotel expenses must be itemized in Concur.  Egencia itineraries and receipts are required to be submitted via the Egencia/Concur interface.

**6.  Meals**
   a.  Personal Meals
      i.  Meals are reimbursable when travel requires an overnight stay or 8 hours or more of travel away from your home /office area.
      ii.  Personal meals should be reasonably priced and itemized on your expense report.
         1.  The original detailed receipt with the restaurant's name clearly imprinted on the receipt must be submitted along with the credit card slip as proof of payment.
         2.  CVS Health will reimburse for personal meals up to $75 per day (excluding tips) when traveling within the 50 States (including Hawaii, Alaska and District of Columbia) and Puerto Rico.  When traveling outside of the United States, CVS Health will reimburse up to $115 per day for personal meals (excluding tips).  Expenses exceeding those limits will be adjusted, no exceptions will be made.
         3.  Tips are not to exceed 20% of the food/beverage bill
         4.  While CVS Health only approves of alcoholic beverages associated with a business meal, reasonable alcoholic beverages associated with a legitimate business event will be reimbursed.  CVS Health reserves the right to deny reimbursement of excessive alcoholic beverages submitted.
   b.  "Business Meals" are those meals attended by only CVS Health Employees and should be submitted as such.
      i.  Business meals will be reimbursed up to $75 per person (excluding tip) when traveling within the 50 States (including Hawaii, Alaska and District of Columbia) and Puerto Rico.  When traveling outside of the United States, CVS Health will reimburse up to $115 per day for business meals (excluding tips).  Provided, there is a valid business reason and the appropriate documentation is submitted as follows:
         1.  Clear and specific written statement as to the business purpose
         2.  The date and establishment name
         3.  The name(s), title(s), and company of each attendee is listed

Confidential and Proprietary
©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA = OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY

CONFIDENTIAL          SUBJECT TO PROTECTIVE ORDER          CVS 000458

EXHIBIT "4"

| TITLE: | CVS Health Travel and Expense Reporting Policy |
|---|---|

       ii.    Detailed receipts for all expenditures related to the meal are to be submitted for all group meals.

      iii.   The most senior person in attendance must submit for reimbursement

      iv.   While CVS Health only approves of alcoholic beverages associated with a business meal, reasonable alcoholic beverages associated with a legitimate business event will be reimbursed.  CVS Health reserves the right to deny reimbursement of excessive alcoholic beverages submitted.

c. Business Meals/Entertainment Clients

      i.    Entertainment includes any activity associated with conducting CVS Health business considered to constitute entertainment, amusement, or recreation such as restaurants, sporting events, movies, plays, or similar.

      ii.    Events attended by CVS Health Employees as well as representatives outside of CVS Health (i.e. vendors, clients, etc.) are considered "Entertainment Meals" and should be submitted as such.

      iii.   Business meals and/or entertainment will be reimbursed up to $75 per person (excluding tip) provided there is a valid business reason and the appropriate documentation is submitted as follows:

          1.  Clear and specific written statement as to the business purpose

          2.  The date of the business meeting or entertainment

          3.  The name(s), title(s), and company of each attendee is listed

          4.  Detailed receipts for all expenditures related to the entertainment are to be submitted

      iv.   The most senior person in attendance must submit the expenses for reimbursement

          1.  If a member of the Business Planning Committee is the most senior person in attendance, it is acceptable for their direct reports to pay for and submit for the expense reimbursement.

      v.    Entertainment expenses incurred while travelling alone (i.e. golf, health clubs, in-room movies, etc) are considered personal expenses and therefore not reimbursable.

      vi.   Gifts

          1.  Unsolicited gifts of a nominal value such as pens, notepads, mugs or similar promotional items with CVS labeling provided to customer or potential customer are reimbursable.  Gifts of cash or cash equivalents, such as gift cards are not reimbursable.

          2.  Meals, gifts or entertainment provided to any public official is highly regulated and can present a liability if an improper advantage was received, in fact or appearance.  Please refer to the Gifts and Entertainment or Global Anti-Corruption Compliance Policy for further information.

d. Expenses otherwise excluded from the meals and entertainment policy may be approved only if related to entertainment of an existing or potential client or business partner, and approved by a second level of management (minimum VP approval required).

e. Reasonable department functions such as safety lunches and department planning lunches will be reimbursed when the business purpose is clearly stated, the Employees

©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA = OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY

CONFIDENTIAL             SUBJECT TO PROTECTIVE ORDER             CVS 000459

EXHIBIT "4"

| TITLE: | CVS Health Travel and Expense Reporting Policy |
|---|---|

attending are properly listed, all detailed receipts are submitted, and appropriate approvals have been obtained.

    i.   Any department function totaling  $2,500 to $4,999 requires SVP level approval

    ii.   Any department function totaling $5,000 to $9,999 requires EVP level approval

    iii.   Any department function over $10,000 requires BPC approval

    iv.   Unacceptable department functions including but not limited to the following will not be reimbursed:

        1.   Excessive department dinners, lunches

        2.   Events including Employees' spouses or family members

        3.   Group trips or meetings held at gambling establishments or adult entertainment venues

f.   Reimbursement of expenses related to spouse or guest travel and entertainment expenses is generally prohibited and will only be paid if approved by Chief Compliance officer or their designee.  Furthermore the Gifts and Entertainment policy does not permit Employees to accept vendor funded meals and entertainment for spouses or guests.  Please refer to the Gifts and entertainment policy for further information.

## 7.  Other Miscellaneous Business and Travel Expenses

a.   Laundry and/or dry cleaning expenses will be reimbursed up to $10 per day when a business trip exceeds five (5) consecutive business days.

b.   Broadband access fees and home office expenses are generally not reimbursable, unless there is a unique situation, which requires manager approval.

c.   Personal cell phone expenses incurred for business

    i.   If an Employee has not been provided with a corporate liable cell phone, CVS Health will reimburse an Employee for business use of their personal cell phone for the actual per minute cost of the bill up to $.11 per business minute, not to exceed the total amount of the bill pertaining to the employee's unit only net of all non-reimbursable charges (i.e. text messaging, data plans, special features, tracking, etc.)

    ii.   The following costs related to cellular usage are not reimbursable:

        1.   Special features such as call waiting, call forwarding, voice mail, conferencing, text and picture messaging, chaperone/tracking, data plans, insurance, etc.

        2.   Additional hardware, device payments or accessories such as battery chargers, car adapters, hands-free kits, carriers, etc.

d.   Pharmacist Licenses (initial and renewals) are generally not reimbursable, unless there is a unique situation, which requires manager approval.

e.   Employee Remembrances will be reimbursed for one remembrance (donations, gift baskets, flowers, etc.) up to $100.  CVS Health preferred remembrance provider is ProFlowers. ProFlowers should be used for corporate remembrances.  Reimbursable remembrances include :

    i.   Employee's hospitalization

    ii.   Birth or adoption

Confidential and Proprietary
©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA = OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY
CONFIDENTIAL        SUBJECT TO PROTECTIVE ORDER        CVS 000460

EXHIBIT "4"

| TITLE: | CVS Health Travel and Expense Reporting Policy |
|--------|------------------------------------------------|

      iii.    Death of an Employee's immediate family member

f.  CVS Health will reimburse for job-related telephone calls, fax costs, photo copy costs, express mail and other postage when the appropriate documentation is submitted.

g.  Employee rewards and recognition of any type submitted through expense reports are not reimbursable.  Rewards and recognition are to be requested through the applicable process developed by Human Resources.

h.  Passport /Visa fees will be reimbursed to Employees traveling abroad.

## 8.  Non-Covered Expenses

a.  Expenses considered to be of a personal nature are not reimbursable by CVS Health. These include but are not limited to:

    i.    Personal gifts (i.e. flowers, lunch, dinner, etc.)including Administrative Assistant Day gifts

    ii.    Gift Cards

    iii.    Car maintenance for personal vehicles (i.e. oil change, tire repair, car washes, etc.)

    iv.    Delinquency charges, interest on delinquencies, and rush fees on personal or corporate credit cards

    v.    Egencia booking fees (direct billed to CVS Health)

    vi.    Home broadband, unless pre-approved by their manager

    vii.    Emergency room and hospital stay expenses

    viii.    Mobile broadband (MIFI)

    ix.    Child care expenses

    x.    Lost or stolen equipment

    xi.    Any fines or violations of law

    xii.    Gasoline for personal vehicles

    xiii.    Gasoline not charged to Fleet Card for fleet vehicles

    xiv.    Gas/Fuel service package for rentals, unless approved by their manager

    xv.    Hotel spa/gym fees

    xvi.    In-room movies, in-room video games or safes

    xvii.    Luggage, briefcases

    xviii.    Personal celebrations – birthdays, anniversaries, decorations, cakes

    xix.    Greeting cards (i.e. holiday and birthday)

    xx.    Personal flight insurance

    xxi.    Personal reading materials (i.e. books, magazines, newspapers, etc.)

    xxii.    Pet care

    xxiii.    Office celebrations, including but not limited to new hire, anniversaries, "fill-in-the-blank" day (i.e. cupcake day), etc.

    xxiv.    Satellite radio for rentals

    xxv.    Shampoo, toothpaste, other toiletries including over the counter medications

    xxvi.    Special clothing when your duties require you to be in a non-office environment (i.e. suits, tuxedo, formal dresses, etc.)

    xxvii.    Travel and entertainment for spouses, partners, or guests of CVS Health associates

    xxviii.    Unauthorized trips, transportation, gifts, and donations

    xxix.    Gifts that are a violation of the Gift & Entertainment  Policy

©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA = OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY

CONFIDENTIAL                SUBJECT TO PROTECTIVE ORDER              CVS 000461

EXHIBIT "4"

| TITLE: | CVS Health Travel and Expense Reporting Policy |
|---|---|

    xxx.    Immigration services (i.e. Visa stamping fees, premium processing fees, consular processing fees, passport renewal fees, dependent Visa expenses or travel associated with maintenance of immigration status.), generally not reimbursable, unless there is a unique situation, which requires manager approval

## 9. Travel Advances
    a.  CVS Health does not allow travel advances

## 10. Expense Report Submission
    a.  Completion
        i.    Expense reports must be completed and submitted for approval within the 30 day period in which the expense occurs.
        ii.   Any expenses over 60 days old will require 2 levels of approval including a minimum level of VP approval.
    b.  Required Documentation
        i.    All detailed receipts and proof of payment (i.e. cleared check, credit card statement, credit card slip, etc) must be attached to the Expense Report in Concur or a missing receipt affidavit (if applicable).
        ii.   Egencia itineraries are required to be submitted via the Egencia/Concur interface. If a receipt and/or proof of payment are missing from the submission, the value of the missing receipts and/or proof of payment may be deducted from the total expenses submitted and the report will be processed even if a missing affidavit is used.
        iii.  Regardless of the level of approval, CVS Health reserves the right to request additional support for any expenses submitted for reimbursement.
    c.  Approvals
        i.    The Employee's supervisor is responsible for timely review and approval of all expense reports.  Expense reports not approved within 7 days will be escalated to the next level approver.
        ii.   Individuals approving expense reports have primary responsibility and accountability for ensuring that items submitted for reimbursement are properly documented and compliant to policy.
        iii.  Any exceptions to this policy must be approved by the CAO and Controller, or their designate.

## 11. Policy Violations
    a.  Any violations of this policy will result in immediate disciplinary action up to and including termination of employment with CVS Health, as permitted by law.


**DEFINITIONS** (All defined words in this document should be displayed with initial capitals, except for acronyms.)

    1.  **CVS Health:**  CVS Health Corporation and each of its subsidiaries and affiliates including but not limited to CVS Pharmacy, Inc., Coram, Caremark Rx LLC., and MinuteClinic.

Confidential and Proprietary
©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA = OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY

CONFIDENTIAL        SUBJECT TO PROTECTIVE ORDER        CVS 000462

EXHIBIT "4"

| TITLE: | CVS Health Travel and Expense Reporting Policy |
|--------|------------------------------------------------|

2. **Employee**:  Any full-time, part-time, or temporary employee of CVS Health including interns.

## REVIEW AND REVISION HISTORY

| Date | Revision No. | Reason for Change | Sections Affected |
|------|--------------|-------------------|-------------------|
| 06/13/2007 | 1.0 | Created document at an enterprise level | All |
| 05/09/2008 | 2.0 | Minor Updates | All |
| 01/01/2009 | 3.0 | Updated Procedures | Procedures |
| 04/17/2009 | 4.0 | Converted to most current P&P template | All |
| 01/19/2010 | 5.0 | Updated mileage rate. | Procedure 4 |
| 4/01/2011 | 6.0 | Annual review, updated Definitions, Procedure 2, 3, 7 and 10. | Definitions & Procedures |
| 1/19/2012 | 7.0 | Annual Review; Updated All | All |
| 3/8/2012 | 8.0 | Updated Procedures Section 4b | Procedures |
| 4/4/2012 | 9.0 | Removed Section 6A Meals 1C, Updated Mileage Reimbursement Section 4A, Updated Policy Section 1.<br><br>Removed language Expense Report Submission from Section 10b, ii. | Procedures, Policy<br><br>Procedures |
| 5/9/2012 | 10.0 | Added language to Procedures Section 3B | Procedures |
| 5/25/12 | 11.0 | Converted to most current P&P CCIG-0076 Template | All |
| 10/17/13 | 12.0 | Updated personal meal allowances | All |
| 7/17/2014 | 13.0 | Updated Corporate Card information | Policy and Procedures |
| 3/26/2015 | 14.0 | Updated company name to CVS Health<br><br>Updated receipt requirement to include $25 and over<br><br>Updated mileage rate and addressed normal work commute for work from home associates | All<br><br>Receipt Requirements<br><br>Procedure 4<br><br>Procedure 6 |

©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA = OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY
CONFIDENTIAL                    SUBJECT TO PROTECTIVE ORDER                    CVS 000463

EXHIBIT "4"

| TITLE: | **CVS Health Travel and Expense Reporting Policy** |
|---|---|

| | | Modified Group Meals and Business Meals | Procedure 7 & 8 |
|---|---|---|---|
| | | Added manager approvals required for misc. and non-covered expenses | |

Confidential and Proprietary
©2015 CVS Health and/or one of its affiliates. All rights reserved.
Not To Be Reproduced Or Disclosed to Others Without Prior Written Approval
ELECTRONIC DATA – OFFICIAL VERSION – PAPER COPY – INFORMATIONAL ONLY

CONFIDENTIAL          SUBJECT TO PROTECTIVE ORDER          CVS 000464

EXHIBIT "4"

| Document ID: CTRL-0002 | Title: CVS Health Travel and Expense Reporting Policy | |
|---|---|---|
| Parent Documents: N/A | | |
| Effective Date: See Document Information Page | Last Review Date: See Review and Revision History Section | Business Process Owner (BPO): VP, Strategic Procurement, Store Supply-Purchasing |
| Exhibit(s): N/A | | |
| Document Type: Policy and Procedure | | |

## PURPOSE

The purpose of this policy is to provide clear and consistent guidelines on how to submit an expense report as well as what is allowed per company policy.

## SCOPE

This policy applies to CVS Health ® Corporation and each of its subsidiaries and affiliates.

## POLICY

- It is CVS Health policy that reasonable and necessary travel expenses incurred by Employees in the performance of their assigned duties and approved non-travel related business expenses will be reimbursed.
- Reimbursable expenses include but are not limited to:
  - Business travel expenses including airfare and other transportation expenses such as mileage, car rental, accommodations, meals, certain business entertainment, and other miscellaneous expenses (e.g., cell phone costs, fax costs, photocopies, etc.).
- The goal is to minimize expenses incurred when conducting business for CVS Health while still achieving CVS Health business objectives.
- Employees are expected to use the least expensive means to achieve business objectives. Employees are responsible for determining if there is a way to meet their business objective without traveling or incurring other expenses. Teleconferencing, video conferencing, or web conferencing may meet objectives at a lower cost to the company.
- As a general principle, Employees should spend CVS Health money less freely than they would spend their own.
- Retail colleagues should refer to the CVS Retail Travel Time and Mileage Reimbursement for Daily Travel Time Policy (DOC-051060) for information on travel time compensation and travel expense reimbursement for daily travel time.

## ACCOUNTABILITY

- CVS Health holds all Employees and their managers approving expense reports accountable for the completion, submission, and approval of accurate expense reports in compliance with Company policy.

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY   CVS 000465

EXHIBIT "4"

| Document ID: | Title: |
| --- | --- |
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

- Employees are responsible for ensuring that travel and other business-related expenditures are submitted for reimbursement in a timely fashion in accordance with policy to ensure full, accurate and timely reimbursement. By submitting an expense report, the employee acknowledges in good faith that all expenses are reimbursable according to applicable CVS policies, including but not limited to this policy and the CVS Retail Travel Time and Mileage Reimbursement for Daily Travel Time Policy.

- Management is responsible for timely review and approval of all expense reports. By approving an expense report, the manager acknowledges that he/she has reviewed the expense report and all expenses being reimbursed are consistent with policy. CVS Health reserves the right to deny reimbursement for unreasonable, unnecessary and/or excessive charges.

- Employees should contact their manager or Human Resource Business Partner if they have questions concerning whether certain expenses are reimbursable or if they believe they have not been reimbursed for all business expenses.

- If a manager knows or has reason to know that an employee is or may be due reimbursement that has not been paid per policy, he or she should follow up with that employee to confirm that full and accurate reimbursement is made consistent with policy. Failure to ensure that employees are fully reimbursed in accordance with Company policy may result in discipline for the manager, up to and including termination.

## EMPLOYEE OBLIGATIONS

- Employees are required to book travel through our designated travel provider, currently Egencia, or through Conference blocks. CVS Health reserves the right to deny reimbursement for travel arranged outside of Egencia unless approval is received from the Corporate Travel Manager prior to the travel occurring.

- Employees who travel for business more than twice per year are required to obtain and use the Corporate T&E Card for business travel and related expenses. (This does not include employees who only incur expenses related to short daily travel.) The Corporate T&E Card is to be used only by the cardholder for his/her business expenses and not for personal purchases or other employees' travel arrangements.

- Employees are required to submit expense reports within 30 days of incurring the expense. Expense reports must be submitted using the Concur T&E system. Information for using Concur T&E can be found on Procurement's myLife page. Non-Exempt employees are required to submit their expense reports while clocked into the Company's timekeeping system (i.e. while on the clock) during working hours.

- Employees are encouraged to sign up for direct deposit to ensure timely receipt of expense reimbursement. Direct deposit enrollment can be done by contacting ACH_PBM@CVSCaremark.com and requesting a Direct Deposit Authorization form.

## RECEIPT REQUIREMENTS

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY

CVS 000466

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

- All expenses $25 and over must be supported by a detailed receipt and proof of payment.

## PROCEDURES

1. **Travel Arrangements**
   a. Trip Planning
      i. In order to build volumes, track expenditures, and take advantage of negotiated discounts in travel, all travelers must arrange travel through our designated travel agency, Egencia.
      ii. The Travel Department should be consulted when travel involves numerous trips to the same destination or for projects requiring extensive travel. The Travel Department can be reached via email at Travel@CVSCaremark.com.
   b. Traveler Profiles
      i. A travel profile is required for all CVS Health Employees who use Egencia.
      ii. All travelers are responsible for maintaining current information in their profiles in Egencia to ensure billing accuracy.

2. **Air Travel**
   a. Airline purchases made through our designated travel agency; Egencia; are centrally paid by CVS Health and will not be reimbursed even if included on expense reports.
   b. Fares and Service Levels
      i. Non-refundable tickets must be booked when available.
      ii. Travel must be booked within 14 days of departure or earlier. Employees must accept the lowest priced logical flight including connections, direct, and non-stop flights.
      iii. Coach class must be booked for domestic flights including to/from Hawaii and Puerto Rico.
         1. First Class/Business Class will not be reimbursed unless pre-approved by the Vice President, Strategic Procurement.
         2. Upgrades to First Class/Business class at check-in or to a preferred or premium seat (e.g., United's extra legroom) which require an additional fee are not reimbursable.
      iv. International flights of 8 hours or more may be booked in Business Class.
      v. Scheduled chartered flights are only permitted when secured through our designated travel provider, Egencia.
      vi. Airline tickets are non-transferable.
      vii. E-tickets will be issued for travel. Additional fees for paper tickets are not reimbursable.
      viii. Unused tickets remain the property of CVS Health. Employees should make every effort to use an open and unused ticket on their next business flight.
   c. Frequent Flyer Programs and Air Clubs
      i. Employees should not allow the potential for earning additional frequent flyer mileage influence their airline choice.
      ii. Airline Club memberships are not reimbursable.

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY

CVS 000467

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

3. **Auto Rentals**
   a. Auto Rentals must be reserved with the preferred CVS Health auto rental providers.
   b. Negotiated rental agreements booked through Egencia include discounted corporate rates and insurance coverage. Additional coverage and upgrade fees are non-reimbursable; therefore, the driver should decline those options at the time of rental.
   c. Compact or mid-sized cars must be reserved unless a group is traveling together at which time a full size vehicle is allowed.
   d. Fuel Expenses for Auto Rental
      i. To avoid the higher cost of gasoline charged by auto rental providers, Employees must fill the gas tank prior to returning the rental unless doing so would result in missing flights.
      ii. If the total driving distance is less than 75 miles, employees must present a receipt for the purchase of fuel or you will be automatically charged the flat fuel fee applicable at the time with the auto rental provider.
   e. Traffic fines, parking violations, theft or damage of personal items and effects while operating a rental vehicle are the responsibility of the Employee and are not reimbursable by CVS Health.
   f. In the event of a vehicle accident, regardless of fault or severity, the Employee must immediately report the accident to police, the rental company, and the Risk Management Department.

4. **Other Transportation**
   a. Personal Vehicle Expenses
      i. CVS Health will reimburse Employees at a rate of $.47 for each business mile driven, as explained below.
         1. Time spent traveling prior to the start of the work day from an Employee's home to his or her regular work location, and from the regular work location to his or her home at the conclusion of the work day is considered the Employee's "ordinary commute" and is not reimbursable. Employees are eligible to be reimbursed for all reasonable and necessary travel expenses incurred for work purposes beyond this ordinary commute, including for travel expenses incurred for work purposes during the work day (e.g., trips between two work locations during the work day, bank runs, etc.).
         2. There are certain positions where Employees are assigned to more than one regular work location (e.g., floater pharmacists). In those positions, an Employee's regular work location includes any of the work locations at which the Employee is expected to and does work in the normal course of their employment (e.g., typically all work locations within a district). An Employee would not be eligible for mileage reimbursement or other travel expenses when traveling to any of their multiple regular work locations. There may be a very few limited exceptions where the Employee may be required to work at a

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   SUBJECT TO PROTECTIVE ORDER
ELECTRONIC DATA — SUBJECT TO NON-PUBLIC INFORMATION ONLY

CVS 000468

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

location within their district that requires a significant amount of travel time and the Employee has been provided preapproval to receive mileage and other travel time expense reimbursement when commuting to this particular work location within the district. In addition, when Employees assigned to multiple work locations are required by the Company to report to a work site other than one of the Employee's regular work locations, the Employee may be eligible for reimbursement for all mileage or travel expense incurred.

3. The reimbursement of $.47 per mile is meant to cover all expenses related to business use of a personal vehicle. Therefore CVS Health will not separately reimburse for any other vehicle expenses (e.g., gas, maintenance, insurance, damage) except when the Employee's actual cost is greater than $0.47 per mile. An Employee must provide sufficient documentation and/or information showing that he/she incurred costs greater than $0.47 per mile in order to receive reimbursement for his/her actual costs. If an Employee believes his/her reasonable and necessary work-related costs are greater than $.47 per mile, he/she should contact his/her manager or Human Resource Business Partner before submitting for expense reimbursement. Managers or Human Resource Business Partners who determine that an employee is entitled to be reimbursed more than $.47 per mile will contact the Concur Team to assist with the reimbursement.

4. CVS Health Retail colleagues (field and stores) should review the CVS Retail Travel Time Policy for Daily and Overnight Travel for Non-Exempt Colleagues (DOC-051060) for additional information regarding the payment of travel time and mileage reimbursement.

ii.   Colleagues who work from home must use the following factors to determine their tax home. If you satisfy all three factors, your tax home is the home where you regularly live. If you satisfy only two factors, you may have a tax home depending on all the facts and circumstances. If you satisfy only one factor, your tax home is wherever you work and you cannot deduct travel expenses. If the place you regularly live is determined to be your tax home then mileage reimbursement would be applicable on all miles traveled for business purposes.

1. You perform part of your business in the area of your main home and use that home for lodging while doing business in the area.

2. You have living expenses at your main home that you duplicate because your business requires you to be away from that home.

3. You have not abandoned the area in which both your historical place of lodging and your claimed main home are located; you have a member or members of your family living at your main home; or you can often use that home for lodging.

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER FORMATION ONLY   CVS 000469

EXHIBIT "4"

| Document  ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

    iii.    CVS Health will not reimburse for damages as a result of collision, theft, or vandalism, or any other casualty when using a personal vehicle for business.

    iv.    Any Employee in a position included in the Runzheimer program or who receives a company vehicle or any vehicle-related allowance is not eligible to receive mileage reimbursement through the expense reimbursement process because their costs are paid separately through that program.

b. Limousine, Car or Taxi Services -- The preferable means of transportation between home and airport is your personal vehicle although car services/taxis will be reimbursed when the cost of the car service/taxi is more economical than using a personal vehicle.

c. Parking fees and tolls are reimbursable when appropriate supporting documentation is submitted.

    i.    Employees should use short-term airport parking for business trips of one day or less.

    ii.    Employees should use long term parking facilities for business trips lasting more than one day.

## 5.  Accommodations

a. Hotels must be booked through CVS Health's designated travel agency, currently Egencia.

b. Employees are required to book a CVS Health preferred hotel as indicated in the Egencia booking tool. If a preferred hotel does not appear on Egencia, please reach out to the Travel Department at Travel@CVSCaremark.com to have it added.

c. Hotel expenses must be itemized in Concur to match the breakdown of the costs of your stay. Egencia itineraries and receipts are required to be submitted via the Egencia/Concur interface.

## 6.  Meals/Entertainment

a. Personal Meals

    i.    Personal Meals are reimbursable when travel requires an overnight stay or 8 hours or more of travel away from your home/office area.

    ii.    Personal meals should be reasonably priced and itemized to separate meal from tip/service charges on the Employee's expense report.

        1.    The original detailed receipt with the restaurant's name clearly imprinted on the receipt must be submitted along with the credit card slip as proof of payment.

        2.    CVS Health will reimburse for personal meals up to $75 per day (excluding tips) when traveling within the 50 States (including Hawaii, Alaska and District of Columbia) and Puerto Rico. When traveling outside of the United States, CVS Health will reimburse up to $115 per day for personal meals (excluding tips). Expenses exceeding those limits must be adjusted to match the limits and Employees will be responsible for the remainder of the expense.

        3.    Tips will be reimbursed only up to 20% of the food/beverage bill.

    iii.    CVS Health only reimburses for reasonable alcoholic beverages associated with a Business Meal or Client Entertainment as defined below. CVS

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY

CVS 000470

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

Health reserves the right to deny reimbursement of excessive alcoholic beverages.

b.  Business Meals are those meals attended by only CVS Health Employees and should be submitted as such.

    i.  Business meals will be reimbursed up to $75 per person, per day (excluding tip) when traveling within the 50 States (including Hawaii, Alaska and District of Columbia) and Puerto Rico. When traveling outside of the United States, CVS Health will reimburse up to $115 per person, per day for business meals (excluding tips). Employee must submit a valid business reason and the following documentation in order to be reimbursed for Business Meals:

        1.  Clear and specific written statement as to the business purpose,

        2.  The date,

        3.  Establishment name, and

        4.  The name(s), title(s), and business line of each attendee.

    ii.  Detailed receipts for all expenditures related to the meal are to be submitted for all group meals.

    iii.  The most senior person in attendance with a Corporate T&E Card must pay for and submit for the expense reimbursement.

c.  Client Entertainment / Entertainment Meals

    i.  Client Entertainment includes any activity associated with conducting CVS Health business considered to constitute entertainment, amusement, or recreation such as restaurants, sporting events, movies, plays, or similar.

    ii.  Meals attended by CVS Health Employees as well as representatives outside of CVS Health (e.g., vendors, clients, etc.) are considered "Entertainment Meals" and should be submitted as such.

    iii.  Client Entertainment and/or Entertainment Meals will be reimbursed provided there is a valid business reason and the appropriate documentation is submitted as follows:

        1.  Clear and specific written statement as to the business purpose,

        2.  The date of the business meeting or entertainment,

        3.  The name(s), title(s), and company of each attendee, and

        4.  Detailed receipts for all expenditures related to the entertainment.

    iv.  The most senior person in attendance with a Corporate T&E Card must pay for and submit for the expense reimbursement

        1.  If a member of the Business Planning Committee is the most senior person in attendance, it is acceptable for their direct reports to pay for and submit for the expense reimbursement.

    v.  Entertainment expenses incurred alone while traveling (e.g., golf, health clubs, in-room movies, etc.) are considered personal expenses and therefore are not reimbursable.

    vi.  Expenses not specifically mentioned in this policy will be reimbursed only if related to entertainment of an existing or potential client or business partner and approved by a second level of management (minimum VP approval required).

d.  Gifts

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER — INFORMATION ONLY   CVS 000471

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

    i.   Unsolicited gifts of a nominal value such as pens, notepads, mugs or similar promotional items with CVS Health labeling provided to a customer or potential customer are reimbursable. Gifts of cash or cash equivalents, such as gift cards, are not reimbursable.

    ii.   Meals, gifts or entertainment provided to any public official are highly regulated and can present a liability if an improper advantage was received, in fact or appearance. Please refer to the CVS Health Meals, Gifts and Entertainment Policy (CCIG-0069) or the Global Anti-Corruption Compliance Policy (CCIG-048655) for further information.

    iii.   The CVS Health Meals, Gifts and Entertainment Policy does not permit Employees to accept vendor funded meals and entertainment for spouses or guests. Please refer to that Policy for further information.

e.  Reasonable department functions such as safety lunches and department planning lunches will be reimbursed when the business purpose is clearly stated, the Employees attending are listed, all detailed receipts are submitted, and appropriate approvals have been obtained as set forth below:

    i.   Any department function totaling $2,500 to $4,999 requires approval from SVP level or above.

    ii.   Any department function totaling $5,000 to $9,999 requires approval from EVP level or above.

    iii.   Any department function over $10,000 requires BPC approval.

    iv.   Unacceptable department functions, including but not limited to the following, will not be reimbursed:

        1.   Excessive department meals

        2.   Events including Employees' spouses or family members

        3.   Group trips or meetings held at gambling establishments

f.  Reimbursement of expenses related to spouse or guest travel is generally prohibited and will only be paid if approved by Chief Compliance Officer or his/her designee.

## 7.  Cell Phone Expenses

a.  Personal cell phone expenses

    i.   Employees who have not been provided with a corporate liable cell phone and are not in the Bring Your Own Device ("BYOD") Program generally should not need to use their personal cell phones for work-related purposes. Such Employees are expected to communicate in person or use Company provided equipment, such as telephones, computers and walkie-talkies when communication is necessary as part of their job duties.

    ii.   However, if an Employee who is not provided with a corporate liable cell phone and is not in the BYOD program is required to use his or her personal cell phone for work-related purposes, CVS Health will reimburse the Employee as follows:

        1.   <u>Phone calls</u>. $.11 per business minute or the actual cost of the Employee's per minute business usage, whichever is greater. Employees are responsible for providing sufficient supporting documentation and/or information showing that the actual cost per minute is greater than $.11 per minute, such as a billing statement

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY   CVS 000472

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

showing charge detail for the full billed amount being claimed with business call history clearly marked. If an Employee believes he or she is entitled to reimbursement for work-related phone calls beyond $.11 per business minute, the Employee should contact his or her manager before submitting for reimbursement. Managers or Human Resource Business Partners who determine that an Employee is entitled to be reimbursed more than $.11 per business minute should contact the Concur Team to assist with the reimbursement.

2. <u>Text Messaging/Data Charges.</u> CVS will reimburse Employees for all reasonable and necessary charges incurred for text messages sent or received for business purposes or data charges necessarily incurred due to business purposes. Employees will be required to submit documentation and/or information sufficient to show that the text messaging/data usage charges were incurred for business purposes and the amount paid for such services (e.g., a billing statement showing charge detail for the full billed amount being claimed with business usage history clearly marked). If an Employee believes he or she is entitled to reimbursement for work-related text messaging or data charges, the Employee should contact his or her manager before submitting for reimbursement. Managers or Human Resource Business Partners who determine that an Employee is entitled to be reimbursed for text messaging/data charges should contact the Concur Team to assist with the reimbursement.

iii. The following costs related to cellular usage are not reimbursable:
1. Special features such as call waiting, call forwarding, voicemail, conferencing, chaperone/tracking, insurance, etc.
2. Ringtones, games, screensavers, etc.
3. Additional hardware, device payments or accessories such as battery chargers, car adapters, hands-free kits, carriers, etc.
4. Data usage incurred for the use of any non-work-related applications

iv. Non-exempt employees must record all hours worked, including all time spent making required work-related phone calls and sending work-related text messages, in CVS Health's timekeeping system. Employees should review the Timekeeping and Payroll Practices Policy (DOC-048745) for additional information.

v. Employees who have been provided a corporate phone or who are in the BYOD program are covered by the Enterprise Wireless Policy (CPRO-0006) and/or the Bring Your Own Device Responsibilities and Acceptable Use Policy (ISPOL-048321) and should review those policies for additional information regarding reimbursement.

## 8. Other Miscellaneous Business and Travel Expenses

a. Home office expenses and Internet access fees are generally not reimbursable.

i. Employees are expected to make work-related telephone calls, and send work-related faxes, photocopies, mail, and print, etc. at their work location using Company-provided resources.

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY   CVS 000473

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

    ii.    Employees who require Internet access as part of their job duties are expected to use Company-provided Internet. This includes using the Internet available at the Employee's office or work location or using a Company-provided portable wireless router that acts as a mobile Wi-Fi hotspot (e.g., use a "MiFi" or a Company-provided cell phone as a "mobile hotspot").

    iii.    In the unique situation where an Employee is unable to use Company-provided office equipment or Internet and incurs charges due to required work usage, the Employee should contact his or her manager or Human Resources Business Partner before submitting for reimbursement. Managers Human Resource Business Partners who determine that an Employee is entitled to be reimbursed for home office expenses and internet access fees should contact the Procurement Department to assist with the reimbursement.

b. CVS Health ordinarily does not reimburse employees for cleaning their uniforms, as they are wash-and-wear and require only minimal care. If an Employee believes that his/her uniform requires special laundering (e.g., dry cleaning), he/she should contact his supervisor. Supervisor pre-approval is required for reimbursement of any special uniform cleaning costs.

c. For Employees on business travel, laundry and/or dry cleaning expenses will be reimbursed up to $10 per day when a business trip exceeds five (5) consecutive business days.

d. Professional Licenses (initial and renewals) are generally not reimbursable, unless there is a unique situation, which requires manager approval.

e. Employee Remembrances will be reimbursed for one remembrance (donations, gift baskets, flowers, etc.) up to $100. CVS Health's preferred remembrance providers' information can be found on Procurement's myLife page. Reimbursable remembrances include:

    i.    Employee's hospitalization
    ii.    Birth or adoption
    iii.    Death of an Employee or their immediate family member

f. Employee rewards and recognition of any type submitted through expense reports are not reimbursable. Rewards and recognition are to be requested through the applicable process developed by Human Resources.

g. Passport /Visa fees will be reimbursed to Employees traveling abroad.

## 9. Non-Covered Expenses

a. Expenses considered to be of a personal nature are not reimbursable by CVS Health. These include but are not limited to:

    i.    Personal gifts (e.g., flowers, lunch, dinner, etc.) including, but not limited to, Administrative Assistant Day or Pharmacist/Nurse's Week gifts
    ii.    Gift Cards or re-loadable cards
    iii.    Delinquency charges, interest on delinquencies, and rush fees on personal or corporate credit cards
    iv.    Office expenses and internet charges, unless pre-approved by Employee's manager (see Section 8 above)

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY   CVS 000474

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

  v. Emergency room and hospital stay expenses

  vi. Child care expenses

  vii. Lost or stolen equipment

  viii. Any fines or violations of law

  ix. For fleet vehicles, gasoline not charged to Fleet Card, unless approved by your manager

  x. Gas/Fuel service package for car rentals, unless approved by Employee's manager

  xi. Hotel spa/gym fees

  xii. In-room movies, in-room video games or safes

  xiii. Luggage, briefcases

  xiv. Personal celebrations – birthdays, anniversaries, decorations, cakes

  xv. Greeting cards (i.e. holiday and birthday)

  xvi. Personal flight insurance

  xvii. Personal reading materials (i.e. books, magazines, newspapers, etc.)

  xviii. Pet care

  xix. Office celebrations, including but not limited to new hire, anniversaries, "fill-in-the-blank" day (i.e. cupcake day), etc.

  xx. Satellite radio for car rentals

  xxi. Shampoo, toothpaste, other toiletries, including over the counter medications

  xxii. Special clothing when your duties require you to be in a non-office environment (e.g., suits, tuxedo, formal dresses, etc.)

  xxiii. Travel and entertainment for spouses, partners, or guests of CVS Health associates

  xxiv. Unauthorized trips, transportation, gifts, and donations

  xxv. Gifts that are a violation of the CVS Health Meals, Gifts and Entertainment Policy (CCIG-0069)

  xxvi. Immigration services (e.g., Visa stamping fees, premium processing fees, consular processing fees, passport renewal fees, dependent Visa expenses or travel associated with maintenance of immigration status), unless there is a unique situation, which requires manager approval

## 10. Travel Advances

 a. CVS Health does not allow travel advances.

## 11. Expense Report Submission

 a. Completion

  i. Expense reports must be completed and submitted for approval within the 30 day period in which the expense occurs.

  ii. Any expenses over 60 days old could require up to 2 levels of approval including a minimum level of VP approval.

 b. Required Documentation

  i. All detailed receipts and proof of payment (e.g., cleared check, credit card statement, credit card slip, etc.) must be attached to the Expense Report in

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL  ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY

CVS 000475

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

  Concur or the Employee must provide a missing receipt affidavit (if applicable).

 ii. Egencia itineraries are required to be submitted via the Egencia/Concur interface. If a receipt and/or proof of payment are missing from the submission, the value of the missing receipts and/or proof of payment may be deducted from the total expenses submitted and the report may be processed even if a missing receipt affidavit is used.

 iii. Regardless of the level of approval, CVS Health reserves the right to request additional support for any expenses submitted for reimbursement.

 iv. If an Employee believes that a rate or amount of reimbursement provided in this policy is not sufficient to fully reimburse the Employee for the Employee's actual work-related expenses, Employee should immediately contact his or her manager or Human Resources Business Partner. Managers or Human Resource Business Partners who determine that an Employee is entitled to additional reimbursement but need assistance with obtaining the reimbursement should contact the Concur team.

 c. Approvals

  i. The Employee's supervisor is responsible for timely review and approval of all expense reports. Expense reports not approved within 7 days will be escalated to the next level approver.

  ii. Individuals approving expense reports are responsible for ensuring that items submitted for reimbursement are properly documented and compliant with policy.

  iii. Any exceptions to this policy must be approved by the CAO and Controller, or their designate.

**12. Policy Violations**

 a. Any violations of this policy may result in immediate disciplinary action up to and including termination of employment.

**DEFINITIONS** (All defined words in this document should be displayed with initial capitals, except for acronyms.)

1. **CVS Health®:** CVS Health Corporation and each of its subsidiaries and affiliates.
2. **Employee**: Any full-time, part-time, temporary, or casual employee of CVS Health, including, but not limited to, interns and externs employed by CVS Health

**REVIEW AND REVISION HISTORY**

| Date | Revision No. | Reason for Change | Sections Affected |
|---|---|---|---|
| 06/13/07 | 1.00 | Created document at an enterprise level | All |
| 05/09/08 | 2.00 | Minor Updates | All |
| 04/17/09 | 3.00 | Updated Procedures Converted to most current P&P template | Procedures All |

Confidential and Proprietary
©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY

CVS 000476

EXHIBIT "4"

| Document ID:<br>CTRL-0002 | | Title:<br>CVS Health Travel and Expense Reporting Policy | |
|---|---|---|---|

| 01/19/10 | 4.00 | Updated mileage rate. | All |
|---|---|---|---|
| 04/01/11 | 5.00 | Annual review, updated Definitions, Procedure 2, 3, 7 and 10. | Definitions & Procedures |
| 01/19/12 | 6.00 | Annual Review; Updated All | All |
| 03/08/12 | 7.00 | Updated Procedures Section 4b | Procedures |
| 04/04/12 | 8.00 | Removed Section 6A Meals 1C, Updated Mileage Reimbursement Section 4A, Updated Policy Section 1. Removed language expense report submission from section 10b, ii. | Procedures, Policy Procedures |
| 05/25/12 | 9.00 | Added language to Procedures Section 3B.  converted to most current P&P CCIG-0076  Template | Procedures All Procedures |
| 10/17/13 | 10.00 | Updated personal meal allowances | All |
| 07/17/14 | 11.00 | Updated Corporate Card information | Policy and Procedures |
| 03/30/16 | 12.00 | Updated company name to CVS Health. Updated receipt requirement to include $25 and over. Updated mileage rate and addressed normal work commute for work from home associates. Modified group meals and Business Meals. Added manager approvals required for misc and non-covered expenses. Updated Definitions area to meet compliance requirements. | All Receipt Requirements Procedure 4 Procedure 6 Procedure 7 & 8     All |
| 04/05/16 | 13.00 | Annual Review; no changes | N/A |
| 03/30/17 | 14.00 | Removed mention of vendor names. Introduce new retail travel & mileage  policy. Add reasonable work related costs and cell phone expense. | All |
| 03/22/18 | 15.00 | Updated verbiage regarding retail travel & mileage policy | All |

©2018 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY                CVS 000477

EXHIBIT "4"

| Document ID: CTRL-0002 | Title: CVS Health Travel and Expense Reporting Policy | |
|---|---|---|
| Parent Documents: N/A | | |
| Effective Date: See Document Information Page | Last Review Date: See Review and Revision History Section | Business Process Owner (BPO): VP, Strategic Procurement, Store Supply-Purchasing |
| Exhibit(s): N/A | | |
| Document Type: Policy and Procedure | | |

## PURPOSE

The purpose of this policy is to provide clear and consistent guidelines on how to submit an expense report as well as what is allowed per company policy.

## SCOPE

This policy applies to all CVS Health® and Aetna Domestic/US based Colleagues, including all subsidiaries and business units, at all levels of the company.

## POLICY

- It is CVS Health policy that reasonable and necessary travel expenses incurred by Colleagues in the performance of their assigned duties and approved non-travel related business expenses will be reimbursed.
- Reimbursable expenses include but are not limited to:
  - Business travel expenses including airfare and other transportation expenses such as mileage, car rental, accommodations, meals, certain business entertainment, and other miscellaneous expenses (e.g., cell phone costs, fax costs, photocopies, etc.).
- The goal is to minimize expenses incurred when conducting business for CVS Health while still achieving CVS Health business objectives.
- Colleagues are expected to use the least expensive means to achieve business objectives. Colleagues are responsible for determining if there is a way to meet their business objective without traveling or incurring other expenses. Teleconferencing, video conferencing, or web conferencing may meet objectives at a lower cost to the company.
- As a general principle, Colleagues should spend company money less freely than they would spend their own.
- CVS Retail colleagues should refer to the CVS Retail Travel Time and Mileage Reimbursement for Daily Travel Time Policy (DOC-051060) for information on travel time compensation and travel expense reimbursement for daily travel time.

## ACCOUNTABILITY

- CVS Health holds all Colleagues and their managers approving expense reports accountable for the completion, submission, and approval of accurate expense reports in compliance with Company policy.

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
CONFIDENTIAL ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY

CVS 000478

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

- Colleagues are responsible for ensuring that travel and other business-related expenditures are submitted for reimbursement in a timely fashion in accordance with policy to ensure full, accurate and timely reimbursement. By submitting an expense report, the colleague acknowledges in good faith that all expenses are reimbursable according to applicable CVS policies, including but not limited to this policy and the CVS Retail Travel Time and Mileage Reimbursement for Daily Travel Time Policy.

- Management is responsible for timely review and approval of all expense reports. By approving an expense report, the manager acknowledges that he/she has reviewed the expense report and all expenses being reimbursed are consistent with policy. CVS Health reserves the right to deny reimbursement for unreasonable, unnecessary and/or excessive charges.

- Colleagues should contact their manager or Human Resource Business Partner if they have questions concerning whether certain expenses are reimbursable or if they believe they have not been reimbursed for all business expenses.

- If a manager knows or has reason to know that a colleague is or may be due reimbursement that has not been paid per policy, he or she should follow up with that colleague to confirm that full and accurate reimbursement is made consistent with policy. Failure to ensure that colleagues are fully reimbursed in accordance with Company policy may result in discipline for the manager, up to and including termination.

## COLLEAGUE OBLIGATIONS

- Colleagues are required to book travel through our designated travel provider or through Conference blocks. CVS Health reserves the right to deny reimbursement for travel arranged outside of policy unless approval is received from the Corporate Travel Manager prior to the travel occurring.

- Colleagues who travel for business are required to obtain and use the Corporate T&E Card for business travel and related expenses. (This does not include colleagues who only incur expenses related to short daily travel.) The Corporate T&E Card is to be used only by the cardholder for his/her business expenses and not for personal purchases or other colleagues' travel arrangements.

- Colleagues are required to submit expense reports within 30 days of incurring the expense. Expense reports must be submitted using the Concur T&E system. Non-Exempt colleagues are required to submit their expense reports while clocked into the Company's timekeeping system (i.e. while on the clock) during working hours.

## RECEIPT REQUIREMENTS

Business areas may determine a more stringent receipt requirement provided the following published receipt requirements are met:

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   SUBJECT TO PROTECTIVE ORDER   ELECTRONIC DATA SUBJECT TO ERROR AND/OR MISINFORMATION ONLY   CVS 000479

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

- All corporate credit card transactions of $75 or greater require a detailed receipt and proof of payment
- Cash/Personal Credit Card expenses of $50 and over must be supported by a detailed receipt and proof of payment.
- All Hotel, Airfare and Car Rental expenses

## PROCEDURES

1. **Travel Arrangements**
   a. Trip Planning
      i. All travel arrangements (air, hotel, and car rental) must be booked on the company's designated online booking tool.
      ii. In order to build volumes, track expenditures, and take advantage of negotiated discounts in travel, all travelers must arrange travel through our designated travel agency.
      iii. For risk management purposes, the following air travel restrictions apply:
         1. Not more than 2 Direct Reports to an Executive Committee Member may travel on the same flight.
         2. Not more than 25 of any combination of CVS Health or Aetna associates may travel on the same flight.

2. **Air Travel**
   a. Fares and Service Levels
      i. Non-refundable tickets must be booked when available.
      ii. Travel must be booked within 14 days of departure or earlier. Trips booked less than 14 days in advance will be reported to senior management.
      iii. Colleagues must accept the lowest logical coach fare available including connections, direct, and non-stop flights.
      iv. Coach class must be booked for domestic flights including to/from Hawaii and Puerto Rico.
         1. First Class/Business Class will not be reimbursed unless pre-approved by the Vice President, Strategic Procurement.
         2. Upgrades to First Class/Business class at check-in or to a preferred or premium seat (e.g., United's extra legroom) which require an additional fee are not reimbursable.
      v. International flights exceeding 8 hours in continuous air time may be booked in Business Class.
      vi. Scheduled chartered flights are only permitted when secured through our designated travel provider.
      vii. Airline tickets are non-transferable.
      viii. E-tickets will be issued for travel. Additional fees for paper tickets are not reimbursable.

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER FORMATION ONLY   CVS 000480

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

    ix.    Unused tickets remain the property of CVS Health. Colleagues should make every effort to use an open and unused ticket on their next business flight.

  b.  Frequent Flyer Programs and Air Clubs

    i.    Colleagues should not allow the potential for earning additional frequent flyer mileage influence their airline choice.

    ii.    Airline Club memberships are not reimbursable.

    iii.    TSA Pre-Check Fee is reimbursable with prior manager approval.

**3. Auto Rentals**

  a.  Auto Rentals must be reserved with the preferred CVS Health auto rental providers (where available).

  b.  Negotiated rental agreements booked with our preferred auto rental providers include discounted corporate rate and insurance coverage. Additional coverage an upgrade fees are non-reimbursable; therefore, the driver should decline those options at the time of rental.

  c.  Compact or mid-sized cars must be reserved unless a group is traveling together at which time a full size vehicle is allowed.

  d.  Fuel Expenses for Auto Rental

    i.    To avoid the higher cost of gasoline charged by auto rental providers, Colleagues must fill the gas tank prior to returning the rental unless doing so would result in missing flights.

  e.  Traffic fines, parking violations, theft or damage of personal items and effects while operating a rental vehicle are the responsibility of the Colleague and are not reimbursable.

  f.  In the event of a vehicle accident, regardless of fault or severity, the Colleague must immediately report the accident to police, the rental company, and the Risk Management Department.

**4. Other Transportation**

  a.  Personal Vehicle Expenses

    i.    CVS Health will reimburse Colleagues at Current IRS rate of $0.58 for each business mile driven, as explained below.

      1.    Time spent traveling prior to the start of the work day from an Colleague's home to his or her regular work location, and from the regular work location to his or her home at the conclusion of the work day is considered the Colleague's "ordinary commute" and is not reimbursable. Colleagues are eligible to be reimbursed for all reasonable and necessary travel expenses incurred for work purposes beyond this ordinary commute, including for travel expenses incurred for work purposes during the work day (e.g., trips between two work locations during the work day, bank runs, etc.).

      2.    The reimbursement of $.58 per mile is meant to cover all expenses related to business use of a personal vehicle. Therefore CVS Health will not separately reimburse for any other vehicle expenses (e.g., gas, maintenance, insurance, damage) except when the Colleague's actual

Confidential and Proprietary

©2019 CVS Health and/or one of its affiliates. All rights reserved.

Not to be Reproduced Or Disclosed to Others Without Prior Written Approval

Not subject to disclosure under FOIA, including exemption 4 or otherwise

CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY   CVS 000481

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

cost is greater than $0.58 per mile. A Colleague must provide sufficient documentation and/or information showing that he/she incurred costs greater than $0.58 per mile in order to receive reimbursement for his/her actual costs. If a Colleague believes his/her reasonable and necessary work-related costs are greater than $.58 per mile, he/she should contact his/her manager or Human Resource Business Partner before submitting for expense reimbursement. Managers or Human Resource Business Partners who determine that a colleagues are entitled to be reimbursed more than $.58 per mile will contact the Concur Team to assist with the reimbursement.

    3. CVS Health Retail colleagues (field and stores) should review the Travel & Mileage Reimbursement Policy for Daily Travel for additional information regarding the payment of travel time and mileage reimbursement.

  ii. Colleagues who work from home must use the following factors to determine their tax home. If you satisfy all three factors, your tax home is the home where you regularly live. If you satisfy only two factors, you may have a tax home depending on all the facts and circumstances. If you satisfy only one factor, your tax home is wherever you work and you cannot deduct travel expenses. If the place you regularly live is determined to be your tax home then mileage reimbursement would be applicable on all miles traveled for business purposes.

    1. You perform part of your business in the area of your main home and use that home for lodging while doing business in the area.

    2. You have living expenses at your main home that you duplicate because your business requires you to be away from that home.

    3. You have not abandoned the area in which both your historical place of lodging and your claimed main home are located; you have a member or members of your family living at your main home; or you can often use that home for lodging.

  iii. CVS Health will not reimburse for damages as a result of collision, theft, or vandalism, or any other casualty when using a personal vehicle for business.

  iv. Any Colleague in a position included in the Motus program or who receives a company vehicle or any vehicle-related allowance is not eligible to receive mileage reimbursement through the expense reimbursement process because their costs are paid separately through that program.

b. Ground Travel – Associates should utilize the most reasonable option for group transportation to and from the airport or any other business meeting. Limousine/sedan service should not generally be used unless they are the most cost effective.

c. Parking fees and tolls are reimbursable when appropriate supporting documentation is submitted.

  i. Toll replenishments are not reimbursed.

  ii. Colleagues should use short-term airport parking for business trips of one day or less.

  iii. Colleagues should use long term parking facilities for business trips lasting more than one day.

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER NFORMATION ONLY   CVS 000482

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

5. **Accommodations**
   a. Hotels must be booked through the company's designated travel agency.
   b. Colleagues are required to stay at a preferred hotel as indicated in the booking tool. If a preferred hotel is not available, the city cap is $175 per night (not including tax), excluding major metropolitan cities, (Atlanta, Boston, Chicago, Los Angeles, Miami, NYC, San Francisco and Washington DC).
   c. Hotel expenses must be itemized in Concur to match the breakdown of the costs of your stay. Hotel folio and receipts are required to be submitted for reimbursement.
   d. Colleagues are responsible for cancelling guaranteed hotel reservations by the cut-off time designated by the hotel and will not be reimbursed for "no show" charges resulting from their own negligence.

6. **Meals/Entertainment**
   a. Individual Meals
      i. Individual Meal expenses, include breakfast, lunch dinner, snack and associated gratuities.
      ii. Individual Meals are reimbursable when travel requires an overnight stay or 8 hours or more of travel away from your home/office area.
      iii. CVS Health will reimburse for individual meals up to $75 per day including tip when traveling within the 50 States.
         1. When traveling to a major metropolitan city, CVS Health will reimburse up to $100 per day including tip
            a. Major metropolitan cities include: Boston, New York, Washington DC, Atlanta, Miami, Chicago, Los Angeles and San Francisco.
         2. When traveling outside of the United States, CVS Health will reimburse up to $115 per day including tip for individual meals.
         3. Expenses exceeding those limits must be adjusted to match the limits and Colleagues will be responsible for the remainder of the expense.
      iv. CVS Health only reimburses for reasonable alcoholic beverages associated with a Business Meal or Client Entertainment as defined below. CVS Health reserves the right to deny reimbursement of excessive alcoholic beverages.
         1. For colleagues submitting for meal reimbursement that is in support of Government business alcohol is not a reimbursable expense even when consumed in conjunction with a meal.
   b. Business Meals
      i. Business Meals are those meals attended by only CVS Health Colleagues and should be submitted as such.
      ii. Business meals will be reimbursed up to $75 per person including tip.
         1. Major metropolitan cities cannot exceed $100 per person including tip.
            a. Major metropolitan cities include: Boston, New York, Washington DC, Atlanta, Miami, Chicago, Los Angeles and San Francisco.

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY   CVS 000483

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

    iii.    When traveling outside of the United States, colleagues will reimburse up to $115 per person or business meals (including tips). Colleagues must submit a valid business reason and the following documentation in order to be reimbursed for Business Meals:

        1. Clear and specific written statement as to the business purpose,
        2. The date,
        3. Establishment name, and
        4. The name(s), title(s), and business line of each attendee.

    iv.    Detailed receipts for all expenditures related to the meal are to be submitted for all group meals.

    v.    The most senior person in attendance with a Corporate T&E Card must pay for and submit for the expense reimbursement.

  c.  Client Entertainment / Entertainment-Clients

    i.    Client Entertainment includes any activity associated with conducting CVS Health business considered to constitute entertainment, amusement, or recreation such as restaurants, sporting events, movies, plays, or similar.

    ii.    Meals attended by CVS Health Colleagues as well as representatives outside of CVS Health (e.g., vendors, clients, etc.) are considered "Entertainment - Clients" and should be submitted as such.

    iii.    Client Entertainment and/or Entertainment-Clients will be reimbursed provided there is a valid business reason and the appropriate documentation is submitted as follows:

        1. Clear and specific written statement as to the business purpose,
        2. The date of the business meeting or entertainment,
        3. The name(s), title(s), and company of each attendee, and
        4. Detailed receipts for all expenditures related to the entertainment.

    iv.    The most senior person in attendance with a Corporate T&E Card must pay for and submit for the expense reimbursement

        1. If a member of the Business Planning Committee is the most senior person in attendance, it is acceptable for their direct reports to pay for and submit for the expense reimbursement.

    v.    Entertainment expenses incurred alone while traveling (e.g., golf, health clubs, in-room movies, etc.) are considered personal expenses and therefore are not reimbursable.

    vi.    Expenses not specifically mentioned in this policy will be reimbursed only if related to entertainment of an existing or potential client or business partner and approved by a second level of management (minimum VP approval required).

    vii.    Entertainment of non-US public or government officials must be pre-approved by head of International Legal or International Compliance.

  d.  Gifts

    i.    Unsolicited gifts of a nominal value such as pens, notepads, mugs or similar promotional items with CVS Health or Aetna labeling provided to a customer or potential customer are reimbursable. Gifts of cash or cash equivalents, such as gift cards, are not reimbursable.

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL    SUBJECT TO PROTECTIVE ORDER
ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY    CVS 000484

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

   ii. Meals, gifts or entertainment provided to any public official are highly regulated and can present a liability if an improper advantage was received, in fact or appearance. Please refer to the CVS Health Meals, Gifts and Entertainment Policy (CCIG-0069) or the Global Anti-Corruption Compliance Policy (CCIG-048655) for further information.

   iii. The CVS Health Meals, Gifts and Entertainment Policy does not permit Colleagues to accept vendor funded meals and entertainment for spouses or guests. Please refer to that Policy for further information.

 e. Reasonable department functions such as safety lunches and department planning lunches will be reimbursed when the business purpose is clearly stated, the Colleagues attending are listed, and all detailed receipts are submitted

   i. Unacceptable department functions, including but not limited to the following, will not be reimbursed:

    1. Excessive department meals

    2. Events including Colleagues' spouses or family members

    3. Group trips or meetings held at gambling establishments

 f. Reimbursement of expenses related to spouse or guest travel is generally prohibited unless related to a qualified company sponsored incentive. Purchase must be pre-approved by Chief Compliance Officer or his/her designee.

## 7. Cell Phone Expenses

 a. Personal cell phone expenses

   i. Colleagues who have not been provided with a corporate liable cell phone and are not in the Bring Your Own Device ("BYOD") Program generally should not need to use their personal cell phones for work-related purposes. Such colleagues are expected to communicate in person or use Company provided equipment, such as telephones, computers and walkie-talkies when communication is necessary as part of their job duties.

   ii. Non-exempt colleagues must record all hours worked, including all time spent making required work-related phone calls and sending work-related text messages, in CVS Health's timekeeping system. Colleagues should review the Timekeeping and Payroll Practices Policy (DOC-048745) for additional information.

   iii. Colleagues who have been provided a corporate phone or who are in the BYOD program are covered by the Enterprise Wireless Policy (CPRO-0006) and/or the Bring Your Own Device Responsibilities and Acceptable Use Policy (ISPOL-048321) and should review those policies for additional information regarding reimbursement.

   iv. Please reference the Enterprise Wireless Policy (DOC-CPRO-0006) for direction on how this environment will be governed.

## 8. Other Miscellaneous Business and Travel Expenses

 a. Home office expenses and Internet access fees are generally not reimbursable.

   i. Colleagues are expected to make work-related telephone calls, and send work-related faxes, photocopies, mail, and print, etc. at their work location using Company-provided resources.

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER
ELECTRONIC DATA — SUBJECT TO PROTECTED INFORMATION ONLY
CVS 000485

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

    ii.    Colleagues who require Internet access as part of their job duties are expected to use Company-provided Internet. This includes using the Internet available at the Colleague's office or work location or using a Company-provided portable wireless router that acts as a mobile Wi-Fi hotspot (e.g., use a "MiFi" or a Company-provided cell phone as a "mobile hotspot").

    iii.    In the unique situation where a Colleague is unable to use Company-provided office equipment or Internet and incurs charges due to required work usage, the Colleague should contact his or her manager or Human Resources Business Partner before submitting for reimbursement. Managers Human Resource Business Partners who determine that a Colleague is entitled to be reimbursed for home office expenses and internet access fees should contact the Procurement Department to assist with the reimbursement.

  b.  CVS Health ordinarily does not reimburse colleagues for cleaning their uniforms, as they are wash-and-wear and require only minimal care. If a Colleague believes that his/her uniform requires special laundering (e.g., dry cleaning), he/she should contact his supervisor. Supervisor pre-approval is required for reimbursement of any special uniform cleaning costs.

  c.  For Colleagues on business travel, laundry and/or dry cleaning expenses will be reimbursed up to $25 when a business trip exceeds five (5) consecutive business days.

  d.  Professional Licenses (initial and renewals) are generally not reimbursable, unless there is a unique situation, which requires manager approval.

  e.  Colleague Remembrances will be reimbursed for one remembrance (donations, gift baskets, flowers, etc.) up to $100. Reimbursable remembrances include:

    i.    Colleague's hospitalization

    ii.    Birth or adoption

    iii.    Death of an Colleague or their immediate family member

  f.  Colleague rewards and recognition of any type submitted through expense reports are not reimbursable. Rewards and recognition are to be requested through the applicable process developed by Human Resources.

  g.  Passport /Visa fees will be reimbursed to Colleagues traveling abroad.

## 9. Non-Covered Expenses

  a.  Expenses considered to be of a personal nature are not reimbursable by CVS Health. These include but are not limited to:

    i.    Personal gifts (e.g., flowers, lunch, dinner, etc.) including, but not limited to, Administrative Assistant Day or Pharmacist/Nurse's Week gifts

    ii.    Gift Cards or re-loadable cards

    iii.    Delinquency charges, interest on delinquencies, and rush fees on personal or corporate credit cards

    iv.    Emergency room and hospital stay expenses

    v.    Child care expenses

    vi.    Lost or stolen equipment

    vii.    Any fines or violations of law

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY   CVS 000486

EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

    viii.   For fleet vehicles, gasoline not charged to Fleet Card, unless approved by your manager

    ix.   Gas/Fuel service package for car rentals, unless approved by Colleague's manager

    x.   Hotel spa/gym fees

    xi.   In-room movies, in-room video games or safes

    xii.   Luggage, briefcases

    xiii.   Personal celebrations – birthdays, anniversaries, decorations, cakes

    xiv.   Greeting cards (i.e. holiday and birthday)

    xv.   Personal flight insurance

    xvi.   Personal reading materials (i.e. books, magazines, newspapers, etc.)

    xvii.   Pet care

    xviii.   Office celebrations, including but not limited to new hire, anniversaries, "fill-in-the-blank" day (i.e. cupcake day), etc.

    xix.   Satellite radio for car rentals

    xx.   Shampoo, toothpaste, other toiletries, including over the counter medications

    xxi.   Special clothing when your duties require you to be in a non-office environment (e.g., suits, tuxedo, formal dresses, etc.)

    xxii.   Travel and entertainment for spouses, partners, or guests of CVS Health associates

    xxiii.   Unauthorized trips, transportation, gifts, and donations

    xxiv.   Gifts that are a violation of the CVS Health Meals, Gifts and Entertainment Policy (CCIG-0069)

    xxv.   Immigration services (e.g., Visa stamping fees, premium processing fees, consular processing fees, passport renewal fees, dependent Visa expenses or travel associated with maintenance of immigration status), unless there is a unique situation, which requires manager approval

## 10. Travel Advances

    a.  CVS Health does not allow travel advances.

## 11. Expense Report Submission

    a.  Completion

        i.   Expense reports must be completed and submitted for approval within the 30 day period in which the expense occurs.

        ii.   Any expenses over 60 days old could require up to 2 levels of approval including a minimum level of VP approval.

    b.  Required Documentation

        i.   All detailed receipts and proof of payment (e.g., cleared check, credit card statement, credit card slip, etc.) must be attached to the Expense Report in Concur or the Colleague must provide a missing receipt affidavit (if applicable).

        ii.   Regardless of the level of approval, CVS Health reserves the right to request additional support for any expenses submitted for reimbursement.

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER FORMATION ONLY   CVS 000487
EXHIBIT "4"

| Document ID: | Title: |
|---|---|
| CTRL-0002 | CVS Health Travel and Expense Reporting Policy |

        iii.    If a Colleague believes that a rate or amount of reimbursement provided in this policy is not sufficient to fully reimburse the Colleague for the Colleague's actual work-related expenses, Colleague should immediately contact his or her manager or Human Resources Business Partner. Managers or Human Resource Business Partners who determine that a Colleague is entitled to additional reimbursement but need assistance with obtaining the reimbursement should contact the Concur team.

   c.  Approvals

        i.    The Colleague's supervisor is responsible for timely review and approval of all expense reports. Expense reports not approved within 7 days will be escalated to the next level approver.

        ii.    Individuals approving expense reports are responsible for ensuring that items submitted for reimbursement are properly documented and compliant with policy.

        iii.    Any exceptions to this policy must be approved by the CAO and Controller, or their designate.

## 12. Policy Violations

   a.  Any violations of this policy may result in immediate disciplinary action up to and including termination of employment.

**DEFINITIONS** (All defined words in this document should be displayed with initial capitals, except for acronyms.)

1. **CVS Health®:** CVS Health Corporation and each of its subsidiaries and affiliates.
2. **Colleague**: Any full-time, part-time, temporary, or casual employee of CVS Health® and each of its subsidiaries and affiliates, along with paid interns and externs employed by CVS Health® and each of its subsidiaries and affiliates

## REVIEW AND REVISION HISTORY

| Date | Revision No. | Reason for Change | Sections Affected |
|---|---|---|---|
| 06/13/07 | 1.00 | Created document at an enterprise level | All |
| 05/09/08 | 2.00 | Minor Updates | All |
| 04/17/09 | 3.00 | Updated Procedures Converted to most current P&P template | Procedures All |
| 01/19/10 | 4.00 | Updated mileage rate. | All |
| 04/01/11 | 5.00 | Annual review, updated Definitions, Procedure 2, 3, 7 and 10. | Definitions & Procedures |
| 01/19/12 | 6.00 | Annual Review; Updated All | All |
| 03/08/12 | 7.00 | Updated Procedures Section 4b | Procedures |
| 04/04/12 | 8.00 | Removed Section 6A Meals 1C, Updated Mileage Reimbursement Section 4A, Updated Policy Section 1. Removed language expense report submission from section 10b, ii. | Procedures, Policy Procedures |

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY

CVS 000488

EXHIBIT "4"

| Document ID: | | Title: | |
|---|---|---|---|
| CTRL-0002 | | CVS Health Travel and Expense Reporting Policy | |

| 05/25/12 | 9.00 | Added language to Procedures Section 3B. converted to most current P&P CCIG-0076 Template | Procedures All Procedures |
|---|---|---|---|
| 10/17/13 | 10.00 | Updated personal meal allowances | All |
| 07/17/14 | 11.00 | Updated Corporate Card information | Policy and Procedures |
| 03/30/16 | 12.00 | Updated company name to CVS Health. Updated receipt requirement to include $25 and over. Updated mileage rate and addressed normal work commute for work from home associates. Modified group meals and Business Meals. Added manager approvals required for misc and non-covered expenses. Updated Definitions area to meet compliance requirements. | All Receipt Requirements Procedure 4 Procedure 6 Procedure 7 & 8     All |
| 04/05/16 | 13.00 | Annual Review; no changes | N/A |
| 03/30/17 | 14.00 | Removed mention of vendor names. Introduce new retail travel & mileage policy. Add reasonable work related costs and cell phone expense. | All |
| 03/22/18 | 15.00 | Updated verbiage regarding retail travel & mileage policy | All |
| 03/18/19 | 16.00 | Annual Review; no changes | N/A |
| 03/28/19 | 17.00 | Removed mention of vendor names. Introduce new retail travel & mileage policy. Add reasonable work related costs and cell phone expense. | All |

Not for External Distribution

Confidential and Proprietary
©2019 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4 or otherwise
CONFIDENTIAL   ELECTRONIC DATA SUBJECT TO PROTECTIVE ORDER INFORMATION ONLY   CVS 000489
EXHIBIT "4"

**EXHIBIT 5**

| Document ID: DOC-051060 | Title: CVS Retail Travel & Mileage Reimbursement Policy For Daily Travel | |
|---|---|---|
| Parent Documents: CTRL-0002 | | |
| Effective Date: See Document Information Page | Last Review Date: See Review and Revision History Section | Business Process Owner (BPO): VP, Labor Relations, Labor Relations |
| Exhibit(s): N/A | | |
| Document Type: Policy and Procedure | | |

## PURPOSE

The purpose of the CVS Retail Travel & Mileage Reimbursement Policy for Daily Travel is to provide clear and consistent guidelines for when colleagues, who are working in the field or in stores, are eligible for compensation for daily travel time and mileage reimbursement.  The CVS Health Travel & Expense Reporting Policy should be reviewed for additional details concerning travel expense reimbursement.

## SCOPE

This policy applies to all colleagues in the Retail division.

Both non-exempt and exempt colleagues are eligible for certain mileage reimbursement as set forth by this policy.  Non-exempt colleagues are also eligible for compensation for certain daily travel time as set forth by this policy; exempt colleagues are not.  Colleagues who have been provided a company car or who participate in the Runzheimer car program will not be entitled to mileage reimbursement but may be entitled to other non-car related expenses (e.g., tolls, parking fees) and, if non-exempt, will be entitled to compensation for certain travel time as set forth below.

## POLICY

### Travel & Mileage Reimbursement Policy for Daily Travel CVS Retail – Field and Store Colleagues

### I:  General Provisions

- All colleagues using their own automobiles to travel for Company business must have private automobile insurance.
- Mileage, for both exempt and non-exempt colleagues, is paid at the current Company rate per mile as set forth in the CVS Health Travel & Expense Reporting Policy (refer to Reimbursement Procedures below for current rate).  Except as specifically set forth in this policy, the CVS Health Travel & Expense Reporting Policy will govern mileage and other travel expense reimbursement.
- Compensable travel time for non-exempt colleagues is paid at the colleague's normal rate of pay and will be included in overtime calculations.
- Colleagues must accurately record all compensable travel time and all mileage and travel expenses to be reimbursed pursuant to this policy.  Colleagues should use MapQuest or a similar mileage mapping service to determine mileage.

### II:  Rules Concerning Colleague Commuting Time and Travel between Work Sites

A:  For those colleagues who have one assigned regular work location:
- Time spent traveling prior to the start of the workday from home to the colleague's assigned regular work location and from the regular work location to home at the conclusion of the workday is considered the colleague's "ordinary commute" and is not considered compensable work time.

Confidential and Proprietary
©2017 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

CVS 000289

EXHIBIT "5"

CVS_CHALIAN_0000718

| Document ID:<br>DOC-051060 | Title:<br>CVS Retail Travel & Mileage Reimbursement Policy For Daily Travel |
|---|---|

Travel from home to the regular work location and from the regular work location to home is not eligible for mileage reimbursement.

- When a colleague is required by the Company to report to a work site other than **the colleague's** regular work location, the following rules will apply:
  - o If the colleague travels directly from home to a work site other than his/her regular work location, then travel time *in excess* **of the colleague's ordinary commute time will be treated** as compensable time for non-exempt colleagues.  Colleague is expected to accurately include the excess travel time on his or her time card report.
  - o Mileage *in excess* **of the colleague's ordinary commute, as determined by MapQuest or other** similar mapping services, will be reimbursed for both exempt and non-exempt colleagues in accordance with Store Reimbursement Procedures set forth in Section IV below.
  - o Colleagues who voluntarily request to work at an alternative work location will not be entitled to compensation for travel time or reimbursement for mileage.
  - o Non-exempt colleagues who accept a seasonal transfer will be eligible for compensation and mileage reimbursement for travel time to the transfer store location that is in excess of the **colleague's or**dinary commute to his or her originally assigned regular work location; exempt colleagues will be eligible for reimbursement for excess mileage.
- If the colleague first reports to the regular work location and is then required to travel to another site to work during that same day, the following rules will apply:
  - o **All time spent traveling directly from the colleague's regular work location to the assigned** work site will be treated as compensable work time for non-exempt colleagues.
  - o Mileage from the colle**ague's regular work location to the assigned site will be reimbursed for** both exempt and non-exempt colleagues.
  - o Travel time *in excess* **of the colleague's ordinary commute time from last work site to home** will be treated as compensable work time for non-exempt **colleagues if the colleague's last** work location is not his or her regular work location.
  - o Mileage *in excess* **of the colleague's ordinary commuting distance from last work site to** home shall be eligible for mileage reimbursement for both exempt and non-exempt colleagues.

B:  Certain job positions where colleagues are assigned to more than one regular work location (e.g., floater pharmacists, market investigators, etc.):

- The colleague is employed in a position where colleagues are assigned to more than one regular work location. **The travel time and mileage spent in the colleague's commute to** any **of the colleague's** regular work locations from home and from any **of the colleague's regular work locations to home is** the colleague's "ordinary commute." The co**lleague's ordinary commute is not considered** **compensable working time nor is it eligible for mileage reimbursement.**
- **The colleague's regular work location includes any of the work locations at which the colleague is** expected to and does work in the normal course of his or her employment.  Unless otherwise **specified, a colleague's regular work location will be any store or** work location within the **colleague's district.  There may be some exceptions where the colleague's regular work locations** include stores from multiple districts.  There may also be a very few limited exceptions where the colleague may be required to work at a store within his or her district that requires a significant amount of travel time and mileage and the pharmacy supervisor has provided preapproval for the colleague to receive travel time compensation and mileage reimbursement when commuting to this **particular work location within the district.  A colleague's regular work locations may change at any** time to meet business needs.  Colleagues should immediately contact their supervisors if they have any questions or concerns about their assigned regular work locations and whether they are eligible for travel time compensation or mileage.

Confidential and Proprietary                                                                                                                                    Page 2 of 5
©2017 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY                     CVS 000290

EXHIBIT "5"

CVS_CHALIAN_0000719

| Document ID: | Title: |
|---|---|
| DOC-051060 | CVS Retail Travel & Mileage Reimbursement Policy For Daily Travel |

- Travel time other than the ordinary commute:
  - When an colleague is required by the Company to report to a work site other than one of the **colleague's regular work locat**ions (e.g., a store that is <u>outside</u> **the colleague's assigned district(s)), travel time from the colleague's home to the alternative work site and from the alternative work site to the colleague's home will be treated as compensable time for non-**exempt colleagues, and both exempt and non-exempt colleagues will be eligible for mileage reimbursement for the entire trip.
  - Time spent traveling between work sites during the work day is treated as compensable work time for non-exempt colleagues.
  - Mileage incurred by exempt and non-exempt colleagues when traveling between work sites during the work day is reimbursable in accordance with Company policy.
  - Colleagues who voluntarily request to work at a work location other than one of the colleague's regular work locations will not be entitled to compensation for travel time or reimbursement for mileage.

## III.   Examples of other Compensable Daily Travel Time versus Non-Compensable Travel Time.

- <u>Compensable/Reimbursable Travel Time</u>: In addition to the situations described above, the following are other examples of where both exempt and non-exempt colleagues may be entitled to mileage/other expense reimbursement and non-exempt colleagues may be entitled to compensable daily travel time for work related travel:
  - Daily business banking
  - Travel to CVS business meetings, post office, copy center, etc.
  - Tolls associated with business travel (for both exempt and non-exempt)
  - Rx Delivery
  - Transfer of Merchandise or other items from one location to another

- <u>Non-Compensable/Reimbursable Travel</u> includes but is not limited to the following:
  - **Parking charges at the colleague's home store(s), except for management colleagues who have** received prior authorization from the Region Manager
  - Personal travel during a break
  - Ordinary Commuting time as set forth above.

- Colleagues should contact their managers, Human Resource Business Partner, or Employee Relations Manager if they have any questions concerning whether travel time is compensable and/or mileage reimbursable.  For additional examples and restrictions, refer to the CVS Health Travel & Expense Reporting Policy.

## IV:  Mileage Reimbursement Procedures

- CVS Health will reimburse Colleagues at a rate of $.47 for each business mile eligible for reimbursement pursuant to this policy.
  - The reimbursement of $.47 per mile is meant to cover all expenses related to business use of a personal vehicle. Therefore CVS Health will not separately reimburse for any other vehicle expenses (i.e. gas, maintenance, insurance, damage).
  - CVS Health will not reimburse for damages as a result of collision, theft, or vandalism, or any other casualty when using a personal vehicle for business.
- Managers must process mileage reimbursements using the following steps at store level:
  - Log onto the Financial Workbench within SMART.

Confidential and Proprietary
©2017 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

CVS 000291

EXHIBIT "5"

CVS_CHALIAN_0000720

| Document ID: | Title: |
|---|---|
| DOC-051060 | CVS Retail Travel & Mileage Reimbursement Policy For Daily Travel |

- o **Select "Cash Management" and then "Paid Outs".**
- o **Select F2 to "Add" a new paid out and then F11 to select "Mileage/Parking"** from the paid out list.
- o Fill in all required information and then select F9 once complete.
- o The paid out form along with a barcode will print out – scan the barcode at POS to process the paid out for the colleague.
- o When requesting reimbursement for mileage under this policy, Colleagues should submit a print-out from MapQuest or other similar mapping services in support of the request.

- The colleague is responsible for submitting his or her mileage reimbursement in a timely fashion so as to ensure full, accurate and timely reimbursement. If a colleague believes that the rate of reimbursement provided in the reimbursement procedures is not sufficient to reimburse the colleague for actual costs in use of his or her personal vehicle in business travel, the colleague should immediately contact his or her supervisor or HR Business Partner.
- If a manager or supervisor knows or has reason to know that a colleague is or may be due reimbursement that has not been paid (either for travel time or mileage), he or she should follow up with that colleague to confirm that full and accurate reimbursement is made consistent with the terms of this policy. Failure to follow this policy to ensure that colleagues are fully reimbursed could result in discipline for the manager or supervisor, up to and including termination of employment.

## V. Frequently Asked Questions

Q: If an colleague works in more than one store (for example, a full time floater who works 20 hours in one store each week, 10 hours in a second store each week, and 10 hours in a third store each week, all of which **are located in the colleague's district), does the colleague** receive pay for travel time and mileage reimbursement for travel to any of these stores if she travels to only one store per day?

*A: No, because the colleague is assigned to these three stores that are located in the colleague's district and thus has **multiple regular work locations, which are all part of the colleague's ordinary** commute.*

Q. What if the colleague (who is non-exempt) travels and works at one of his assigned stores in the morning and then travels to a second assigned store in the afternoon?

*A. The colleague would not be entitled to compensation for travel from home to the first store, **which would constitute the colleague's ordinary commute. The colleague** would however be entitled to compensation for the full amount of travel time from the first store to the second store, plus mileage reimbursement for the miles traveled between stores. Finally, the colleague would not be entitled to compensation for travel time from the last assigned store at which he or she worked and his or her home.*

Q. If a non-exempt SMIT travels to the bank during the workday in order to make a work related deposit, would the travel time constitute compensable work time and would the SMIT be eligible for mileage reimbursement? What if it was an exempt Store Manager who traveled to the bank during the workday in order to make the work related deposit?

*A. The non-exempt SMIT would be entitled to both compensation for the time he or she spent traveling to the bank and to reimbursement for the mileage. The Store Manager would only be eligible for reimbursement for the mileage.*

Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

CVS 000292

EXHIBIT "5"

CVS_CHALIAN_0000721

| Document ID: | Title: |
|---|---|
| DOC-051060 | CVS Retail Travel & Mileage Reimbursement Policy For Daily Travel |

Q:  If a non-exempt colleague has a regular work location(s) and is required to travel at the start of the workday to an alternative work site for training, does the colleague receive pay for travel time and mileage for the travel to the training site?

　　　*A:  If the non-exempt colleague is assigned to only <u>one</u> regular work location (as described in Section IIA), the colleague will be entitled to compensation for travel time and mileage that is <u>in</u> <u>excess</u> of his or her ordinary commute when required to travel to an alternative work location for training.  If the non-exempt colleague is assigned to <u>multiple</u> work locations (as described in Section IIB), the colleague will be entitled to compensation for all travel time and reimbursement for all mileage incurred from the* **colleague's home to the alternative work locat***ion and from the alternative work location to the* **colleague's home.**

**Note**:  Colleagues have varied work arrangements and not every scenario is specifically addressed in this policy or FAQs.  Please contact your Human Resources Business Partner or Colleague Relations Manager with any questions or to discuss how this policy applies to your travel.

**PROCEDURE**

N/A

**DEFINITIONS**

N/A

**REVIEW AND REVISION HISTORY**

| Date | Revision No. | Reason for Change | Sections Affected |
|---|---|---|---|
| 10/18/16 | 1.00 | New Document | N/A |
| 08/11/17 | 2.00 | Purpose; Template Update | Updated verbiage; All |

Confidential and Proprietary
©2017 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

CVS 000293

EXHIBIT "5"

CVS_CHALIAN_0000722

**EXHIBIT 6**

Division of Labor Standards Enforcement                    Office of the Labor Commissioner

**THIS POSTER MUST BE DISPLAYED WHERE EMPLOYEES CAN EASILY READ IT**
*(Poster may be printed on 8 ½" x 11" letter size paper)*

# HEALTHY WORKPLACES/HEALTHY FAMILIES ACT OF 2014
# PAID SICK LEAVE

**Entitlement:**

- An employee who, on or after July 1, 2015, works in California for 30 or more days within a year from the beginning of employment is entitled to paid sick leave.

- Paid sick leave accrues at the rate of one hour per every 30 hours worked, paid at the employee's regular wage rate. Accrual shall begin on the first day of employment or July 1, 2015, whichever is later.

- Accrued paid sick leave shall carry over to the following year of employment and may be capped at 48 hours or 6 days.  However, subject to specified conditions, if an employer has a paid sick leave, paid leave or paid time off policy (PTO) that provides no less than 24 hours or three days of paid leave or paid time off, no accrual or carry over is required if the full amount of leave is received at the beginning of each year in accordance with the policy.

**Usage**:

- An employee may use accrued paid sick days beginning on the 90th day of employment.

- An employer shall provide paid sick days upon the oral or written request of an employee for themselves or a family member for the diagnosis, care or treatment of an existing health condition or preventive care, or specified purposes for an employee who is a victim of domestic violence, sexual assault, or stalking.

- An employer may limit the use of paid sick days to 24 hours or three days in each year of employment.

Retaliation or discrimination against an employee who requests paid sick days or uses paid sick days or both is prohibited.  An employee can file a complaint with the Labor Commissioner against an employer who retaliates or discriminates against the employee.

For additional information you may contact your employer or the local office of the Labor Commissioner. Locate the office by looking at the list of offices on our website http://www.dir.ca.gov/dlse/DistrictOffices.htm using the alphabetical listing of cities, locations, and communities. Staff is available in person and by telephone.

DLSE Paid Sick Leave Posting                                        11/2014
                                                                   CVS 001921

CVS_CHALIAN_0000723

# EXHIBIT 7

| Document ID:<br>DOC-049670 | Title: Sick Pay Policy | |
|---|---|---|
| Parent Documents: N/A | | |
| Effective Date:<br>See Document Information Page | Last Review Date:<br>See Review and Revision History Section | Business Process Owner (BPO):<br>VP,HR Benefits, Benefits |
| Exhibit(s): Exhibit 1: STATE AND LOCAL PAID SICK/SAFE TIME REQUIREMENTS; | | |
| Document Type: Policy and Procedure | | |

## PURPOSE

The purpose of this Retail Sick Time Policy is to establish a consistent process of authorizing retail sick time ("retail sick time"), and to establish the procedure for the use of retail sick time. This policy also provides an overview of various state and local mandated paid sick leave laws and explains the differences between state and local mandated paid sick leave and retail sick time.

## SCOPE

This policy applies to all, retail based employees who work in a store. In locations where there is a state or local paid sick leave law in effect, the state or local law will govern the eligibility, provision, and usage of paid sick leave to eligible colleagues working in those locations. The chart below briefly describes the state and local mandated paid sick leave laws that are currently in effect. Employees can contact Advice & Counsel for policy clarification or their manager or HRBP for additional information concerning these laws and ordinances.

### Eligibility:
1. Hourly employees who work 30 hours or more a week and who are not covered by a collective bargaining agreement may be eligible for retail sick time after one year of continuous full-time service. Please note that in contrast, both full time and part time colleagues may be eligible for state/local mandated paid sick leave in locations where a state/local mandated paid sick leave law is in effect (see chart below).
2. Full-time pharmacists and management employees are eligible for retail sick time upon employment.
3. Retail sick time will be granted for absences due to personal or a family member's illness or medical condition. A family member is defined as child (including biological, adopted, foster, step child, or who is 18 years of age or older and incapable of self-care due disability), spouse, domestic partner, mother or father.
4. Retail sick time will not be granted for time the employee is actually present and working his or her schedule. Falsely reporting work time as sick time is a violation of this policy.

## POLICY

Confidential and Proprietary<br>©2017 CVS Health and/or one of its affiliates. All rights reserved.<br>Not to be Reproduced Or Disclosed to Others Without Prior Written Approval<br>Not subject to disclosure under FOIA, including exemption 4, or otherwise<br>ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

EXHIBIT "7"

CVS_CHALIAN_0000760

| Document ID: | Title: |
|---|---|
| DOC-049670 | Sick Pay Policy |

CVS Health provides retail sick time to employees to prevent loss of wages due to personal or family illness or medical condition. Retail sick time is different from state/local mandated paid sick leave (e.g., see chart below) and does not provide colleagues the same protections as does state/local mandated paid sick leave. In contrast to state/local mandated paid sick leave, retail sick time is not earned or accrued, and the use of retail sick time is treated as an unauthorized absence under the CVS Health Attendance policy unless otherwise protected by federal, state or local law.

## PROCEDURES

### Retail Sick Time Coverage:

1. Employees are required to comply with applicable notification/calling out procedures on days where the employee will be absent due to a personal or a family member's illness or medical condition.
   a. Similar to state/local mandated paid sick leave, supervisors may not require an employee to find another employee to work his or her shift as a precondition of using retail sick time.
2. Employees are paid their rate of pay, for the scheduled hours, up to a maximum of 8.0 hours per day.
3. If an employee must leave work early due to personal or family member's illness or medical condition, the remaining portion of their scheduled shift will be covered by retail sick time. The employee must comply with applicable notification/calling out procedures when leaving work early.
4. If an employee must arrive late to work due to a personal or a family member's illness or medical condition, the portion of the employee's shift that was missed will be covered by retail sick time. The employee must comply with applicable notification/calling out procedures when arriving late to work.
5. Missed overtime hours are not eligible for retail sick time coverage. .
6. For extended personal or family member's illness or medical condition (e.g., after three consecutive days), the employee is required to contact the Leave of Absence (LOA) department to discuss a leave of absence, including leave under the Family and Medical Leave Act ("FMLA"). In addition, the employee will be required to apply for Short-Term Disability coverage effective on the eighth consecutive day of his or her own personal illness or medical condition.
7. CVS reserves the right to require a medical provider's statement as a condition for retail sick time coverage when the colleague exhibits certain use patterns or excessive use of retail sick time. . Medical documentation should never be requested to verify a colleague's use of state/local mandated paid sick leave.
8. Retail sick time is not accrued or earned under this policy and is not in any way paid out at time of termination of employment. The use of retail sick time for a personal or family illness or medical condition is treated as an unauthorized absence under the CVS Attendance Policy unless otherwise protected under federal, state or local law. Any abuse of retail sick time will be subject to disciplinary actions, up to and including termination of employment, and will be taken into account in the employee's performance evaluations. The use of retail sick time coverage may be suspended in extreme cases, with the approval of the HRBP and Employee Relations Department.

Confidential and Proprietary
©2017 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

EXHIBIT "7"

CVS_CHALIAN_0000761

| Document  ID: | Title: |
|---|---|
| DOC-049670 | Sick Pay Policy |

**DEFINITIONS:**

1. CVS Health®:  CVS Health Corporation and each of its subsidiaries  and affiliates.
2. CVS Pharmacy®:  CVS Pharmacy,  Inc., and each of its retail,  mail and specialty pharmacy  subsidiaries  and affiliates.
3. CVS Retail:  Operations of CVS Health to include  the retail pharmacy  and retail front store businesses.
4. Employee/Colleague:  Any full-time,  part-time,  temporary,  or casual employee of CVS Health,  including,  but not limited  to, interns and externs employed by CVS Health

**REVIEW  AND REVISION  HISTORY**

| Date | Revision No. | Reason for Change | Sections Affected |
|---|---|---|---|
| 04/01/16 | 1.00 | Policy Harmonization/Publication | All |
| 09/22/16 | 2.00 | Updated/simplified  collective bargaining language. | Scope |
| 03/22/17 | 3.00 | Updated document format  Updated state listing | All Appendix |
| 11/09/17 | 4.00 | Updated/clarified  policy: Purpose, Scope, Eligibility, Policy, Procedures, Definitions. Mandated State and Local Paid Sick/Safe Leave Requirements chart updated | Purpose, Scope, Eligibility,  Policy, Procedures, Definitions and Sick/Safe Leave Requirement  Chart |

Confidential and Proprietary
©2017 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

EXHIBIT "7"

CVS_CHALIAN_0000762

| Document ID: | Title: |
|---|---|
| DOC-049670 | Sick Pay Policy |

**EXHIBITS/APPENDICES**

**MANDATED STATE AND LOCAL PAID SICK/SAFE LEAVE REQUIREMENTS**

The following chart provides an overview of mandated state and local paid sick/safe leave requirements. Leaders should consult with their Human Resources Business Partner for additional guidance if they have any specific questions relating to these requirements. **Under no circumstances should any retaliation or disciplinary action be taken against a colleague for taking earned paid sick/safe leave for any of the permissible uses covered under the law.**

| Employees Location | Protected Paid Sick/Safe Time Use | Permissible Uses |
|---|---|---|
| **State Requirements** | | |
| Arizona | Up to 40 hours in one year | • To aid or care for a personal illness, injury or health condition (including preventative care);<br>• To aid or care for a family member's illness, injury or health condition (including preventative care);<br>• To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual violence, abuse or stalking;<br>• The closure of the employee's place of business, or the closure of their child's school or place of care, due to a public health emergency; or<br>• To care for oneself or family member when it has been determined that they have been exposed to or infected with a communicable disease. |
| California | Up to 24 hours or 3 full work days in one year, whichever is greater | • Medical need of the employee or the employee's family member; and/or<br>• To aid or care for a personal issue caused by being a victim of domestic violence, sexual assault, or stalking. |
| Connecticut | Up to 40 hours in one year | • To aid or care for a personal or a family member's illness, injury, or health condition (including preventative care);<br>• To aid or care for a personal issue caused by being a victim of domestic violence, sexual assault, or stalking |
| Massachusetts | Up to 40 hours in one year | • To aid or care for a personal or family member's illness, injury, or health condition (including preventative care);<br>• To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual assault, or stalking |
| Oregon | Up to 40 hours in one year | • To aid or care for a personal or family member's illness, injury or medical condition, including the employee's pregnancy;<br>• To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual assault, or stalking;<br>• The employee's place of business or the school or child care center of the employee's family member is closed by order of a public official due to a public health emergency; or<br>• To deal with or grieve the loss of a family member. |
| Vermont | Up to 40 hours in one year | • To aid or care for a personal or family member's illness, injury or medical condition, including the employee's pregnancy; |

Confidential and Proprietary
©2017 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

EXHIBIT "7"

CVS_CHALIAN_0000763

| Document ID:<br>DOC-049670 | Title:<br>Sick Pay Policy |
|---|---|

| | | • To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual assault, or stalking;  or<br>• The employee's place of business or the school or child care center of the employee's family member is closed by order of a public official due to a public health emergency |
|---|---|---|
| Washington, D.C. | Up to 56 hours in one year | • To aid or care for a personal or a family member's illness, injury, or health condition (including preventative care);<br>• To aid or care for a personal or a family member's issue caused by being a victim of domestic violence, sexual assault, or stalking |

| Employees Location | Protected Paid Sick/Safe Time Use | Permissible Uses |
|---|---|---|
| **Local Requirements** | | |
| Berkeley, CA | Unlimited accrual and use but can only bank up to 72 hours at a time | • To aid or care for a personal illness or injury;<br>• To aid or care for a personal issue relating to being a victim of domestic violence, sexual assault, or stalking;<br>• To aid or care for the following persons when they are ill or injured:<br>   ○ Child;<br>   ○ Parent;<br>   ○ Legal guardian or ward;<br>   ○ Sibling;<br>   ○ Grandparent;<br>   ○ Grandchild;<br>   ○ Spouse; and<br>   ○ Registered domestic partner under any state or local law, or designated person |
| Chicago, IL | Effective July 1, 2017, all eligible colleagues frontloaded with 41 hours to be used for the remainder of 2017. | • To aid or care for a personal illness or injury (including preventative care and mental illness) or recuperation of the same;<br>• To aid or care for a family member's illness or injury (including preventative care and mental illness) or recuperation of the same;<br>• To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual violence or stalking;<br>• The closure of the employee's place of business, or the closure of their child's school or place of care, due to a public health emergency |
| Cook County, IL | Effective July 1, 2017, all eligible colleagues frontloaded with 41 hours to be used for the remainder of 2017. | • To aid or care for a personal illness or injury (including preventative care and mental illness) or recuperation of the same;<br>• To aid or care for a family member's illness or injury (including preventative care and mental illness) or recuperation of the same;<br>• To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual violence or stalking;<br>• The closure of the employee's place of business, or the closure of their child's school or place of care, due to a public health emergency |
| Bloomfield, NJ | Up to 40 hours in one year | • To aid or care for a personal or family member's illness or injury (including preventative care); or<br>• Due to the closure of the employee's place of business or the employee's child's school or day care by order of a public official |

Confidential and Proprietary<br>©2017 CVS Health and/or one of its affiliates. All rights reserved.<br>Not to be Reproduced Or Disclosed to Others Without Prior Written Approval<br>Not subject to disclosure under FOIA, including exemption 4, or otherwise<br>ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

EXHIBIT "7"

CVS_CHALIAN_0000764

| Document ID:<br>DOC-049670 | Title:<br>Sick Pay Policy |
|---|---|

| East Orange, NJ | Up to 40 hours in one year | • To aid or care for a personal or family member's illness or injury (including preventative care); or<br>• Due to the closure of the employee's place of business or the employee's child's school or day care by order of a public official |
|---|---|---|
| Elizabeth, NJ | Up to 40 hours in one year | • To aid or care for a personal or family member's illness or injury (including preventative care); or<br>• Due to the closure of the employee's place of business or the employee's child's school or day care by order of a public official |
| Emeryville, CA | Up to 72 hours in one year | • To aid or care for a personal illness or injury;<br>• To aid or care for a personal issue relating to being a victim of domestic violence, sexual assault, or stalking;<br>• To aid or care for the following persons when they are ill or injured:<br>  o Child;<br>  o Parent;<br>  o Legal guardian or ward;<br>  o Sibling;<br>  o Grandparent;<br>  o Grandchild;<br>  o Spouse; and<br>  o Registered domestic partner under any state or local law, or designated person<br>• To aid or care for a personal or a family member's guide dog, signal dog, or service dog |
| Jersey City, NJ | Up to 40 hours in one year | • To aid or care for a personal or family member's illness or injury (including preventative care); or<br>• Due to the closure of the employee's place of business or the employee's child's school or day care by order of a public official |
| Minneapolis, MN | Effective July 1, 2017, all eligible colleagues accrue up to 48 hours in a year; however, all unused time remaining at the end of the year may be carried over to the next year, but colleagues may only bank up to 80 hours at a time | • To aid or care for a personal illness, health condition or injury (including mental illness and preventative care);<br>• To aid or care for a family member's illness, health condition or injury (including mental illness and preventative care);<br>• To aid or care for a personal or family member's issue caused by domestic abuse, sexual assault or stalking;<br>• To take legal action (involving the colleague or colleague's family member), including preparing for or participating in any civil or legal proceeding related to or resulting from domestic abuse, sexual assault, or stalking; or<br>• The closure of the employee's place of business, or the closure of their family member's school or place of care, due to a public health emergency, inclement weather, or any other unexpected closure including a loss of power, heating, or water. |
| Montclair, NJ | Up to 40 hours in one year | • To aid or care for a personal or family member's illness or injury (including preventative care); or<br>• Due to the closure of the employee's place of business or the employee's child's school or day care by order of a public official |
| New York City | Up to 40 hours in one year | • The employee's mental or physical illness, injury, or health condition;<br>• The employee's need for medical diagnosis, care, or treatment of a mental or physical illness, injury, or health condition; |

Not for External Distribution

©2017 CVS Health and/or one of its affiliates. All rights reserved.<br>
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval<br>
Not subject to disclosure under FOIA, including exemption 4, or otherwise<br>
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

EXHIBIT "7"

CVS_CHALIAN_0000765

| Document ID: | Title: |
|---|---|
| DOC-049670 | Sick Pay Policy |

| | | |
|---|---|---|
| | | • The employee's need for preventative medical care;<br>• The employee's elective surgery, including organ donations;<br>• For the care of family member who needs medical diagnosis, care, or treatment of an illness, injury, or health condition, or who needs preventative medical care;<br>• Care of a family member who has elective surgery, including organ donations;<br>• Closure of the employee's place of business due to a public health emergency (declared by the NYC Department of Health or Mayor); or<br>• The employee's need to care for a child whose school or child care provider is closed due to a public health emergency |
| Newark, NJ | Up to 40 hours in one year | • To aid or care for a personal or family member's illness or injury (including preventative care); or<br>• Due to the closure of the employee's place of business or the employee's child's school or day care by order of a public official |
| Oakland, CA | Unlimited accrual and use but can only bank up to 72 hours at a time | • To aid or care for a personal illness or injury;<br>• To aid or care for a personal issue relating to being a victim of domestic violence, sexual assault, or stalking;<br>• To aid or care for the following persons when they are ill or injured:<br>   ○ Child;<br>   ○ Parent;<br>   ○ Legal guardian or ward;<br>   ○ Sibling;<br>   ○ Grandparent;<br>   ○ Grandchild;<br>   ○ Spouse; and<br>   ○ Registered domestic partner under any state or local law, or designated person |
| Passaic, NJ | Up to 40 hours in one year | • To aid or care for a personal or family member's illness or injury (including preventative care); or<br>• Due to the closure of the employee's place of business or the employee's child's school or day care by order of a public official |
| Philadelphia, PA | Up to 40 hours in one year | • To aid or care for a personal or family member's illness, injury, or health condition (including preventative care);<br>• To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual assault, or stalking |
| Portland, OR | Up to 40 hours in one year | • To aid or care for a personal or family member's illness, injury, or health condition (including preventative care);<br>• To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual assault, or stalking;<br>• Due to the closure of the employee's place of business or the employee's child's school or day care by order of a public official;<br>• Care for a covered family member when it has been determined by a public health authority or by a health care provider that the family member's presence in the community would jeopardize the health of others; or<br>• Employer exclusion of an employee from the workplace for health reasons per any law or regulation that requires such exclusion |

Confidential and Proprietary
©2017 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

EXHIBIT "7"

CVS_CHALIAN_0000766

| Document ID:<br>DOC-049670 | | Title:<br>Sick Pay Policy |
|---|---|---|

| Los Angeles, CA | Up to 48 hours in one year | <ul><li>To aid or care for a personal illness or injury;</li><li>To aid or care for a family member when they are ill or injured; and/or</li><li>To aid or care for a personal issue caused by being a victim of domestic violence, sexual assault, or stalking</li></ul>**"Family Member"** is defined broadly to include:<ul><li>A biological, adopted, or foster child, stepchild, legal ward, or a child to whom the employee stands *in loco parentis* (in place of parent);</li><li>A biological, adoptive, or foster parent, stepparent, or legal guardian of an employee or the employee's spouse or registered domestic partner, or a person who stood *in loco parentis* (in place of parent) when the employee was a minor child;</li><li>Spouse;</li><li>Registered domestic partner;</li><li>Grandparent;</li><li>Grandchild;</li><li>Sibling; and</li><li>Any individual related by blood or affinity whose close association with the employee is the equivalent of a family relationship.</li></ul> |
|---|---|---|
| San Francisco, CA | Unlimited accrual and use but can only bank up to 72 hours at a time | <ul><li>To aid or care for a personal illness or injury;</li><li>To aid or care for a personal issue relating to being a victim of domestic violence, sexual assault, or stalking;</li><li>To aid or care for the following persons when they are ill or injured:<ul><li>Child;</li><li>Parent;</li><li>Legal guardian or ward;</li><li>Sibling;</li><li>Grandparent;</li><li>Grandchild;</li><li>Spouse; and</li><li>Registered domestic partner under any state or local law, or designated person</li></ul></li></ul> |
| St. Paul, MN | Effective July 1, 2017, all eligible colleagues accrue up to 48 hours in a year; however, all unused time remaining at the end of the year may be carried over to the next year, but colleagues may only bank up to 80 hours at a time | <ul><li>To aid or care for a personal illness, health condition or injury (including mental illness and preventative care);</li><li>To aid or care for a family member's illness, health condition or injury (including mental illness and preventative care);</li><li>To aid or care for a personal or family member's issue caused domestic abuse, sexual assault or stalking;</li><li>To take legal action (involving the colleague or colleague's family member), including preparing for or participating in any civil or legal proceeding related to or resulting from domestic abuse, sexual assault, or stalking; or</li><li>The closure of the employee's place of business, or the closure of their family member's school or place of care, due to a public health emergency, inclement weather, or any other unexpected closure including a loss of power, heating, or water.</li></ul> |
| San Diego, CA | Up to 40 hours in one year | <ul><li>To aid or care for a personal or family member's illness, injury or medical condition, including the employee's pregnancy;</li></ul> |

Confidential and Proprietary
©2017 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

EXHIBIT "7"

CVS_CHALIAN_0000767

| Document ID: | Title: |
|---|---|
| DOC-049670 | Sick Pay Policy |

| | | |
|---|---|---|
| | | • To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual assault, or stalking; or<br>• The employee's place of business or the school or child care center of the employee's family member is closed by order of a public official due to a public health emergency |
| Santa Monica, CA | Up to 72 hours in one year | • Medical need of the employee or the employee's family member; and/or<br>• To aid or care for a personal issue caused by being a victim of domestic violence, sexual assault, or stalking |
| Seattle, WA | Up to 108 hours in one year | • To aid or care for a personal or family member's illness, injury or medical condition;<br>• To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual assault, or stalking; or<br>• The employee's place of business is closed by order of a public official due to a public health emergency |
| Spokane, WA | Up to 40 hours in one year | • To aid or care for a personal or family member's illness, injury, or health condition (including preventative care); or<br>• To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual assault, or stalking |
| Tacoma, WA | Up to 40 hours in one year | • To aid or care for a personal or family member's illness, injury or medical condition;<br>• To aid or care for a personal or family member's issue caused by being a victim of domestic violence, sexual assault, or stalking;<br>• The employee's place of business or the school or child care center of the employee's family member is closed by order of a public official due to a public health emergency; or<br>• For bereavement of a family member |
| Trenton, NJ | Up to 40 hours in one year | • To aid or care for a personal or family member's illness or injury (including preventative care); or<br>• Due to the closure of the employee's place of business or the employee's child's school or day care by order of a public official |

Not for External Distribution

©2017 CVS Health and/or one of its affiliates. All rights reserved.
Not to be Reproduced Or Disclosed to Others Without Prior Written Approval
Not subject to disclosure under FOIA, including exemption 4, or otherwise
ELECTRONIC DATA = OFFICIAL VERSION / PAPER COPY = INFORMATION ONLY

EXHIBIT "7"

CVS_CHALIAN_0000768

**EXHIBIT 8**

1   Michael H. Boyamian, SBN 256107
    Armand R. Kizirian, SBN 293992
2   **BOYAMIAN LAW, INC.**
    550 N. Brand Blvd., Suite 1500
3   Glendale, CA 91203
    Telephone:  (818) 547-5300
4   Facsimile:   (818) 547-5678
    E-mail: michael@boyamianlaw.com
5           armand@boyamianlaw.com

6   Attorneys for Plaintiffs SEVAG CHALIAN,
    SIGFREDO CABRERA, ENKO TELAHUN,
7   CHRISTINE MCNEELY, PATRICK BRENNAN,
    and the Putative Class
8
    James N. Boudreau (SBN PA 77891)
9   Christiana L. Signs (SBN PA 317851)
    **GREENBERG TRAURIG, LLP**
10  2700 Two Commerce Square, 2001 Market Street
    Philadelphia, Pennsylvania 19103
11  Telephone: 215.988.7800
    Facsimile: 215.988.7801
12  boudreauj@gtlaw.com
    signsc@gtlaw.com
13
    Attorneys for Defendants CVS PHARMACY, INC.,
14  CVS RX SERVICES, INC., and GARFIELD
    BEACH CVS, LLC
15
    (*Additional Counsel Listed on Following Page*)
16
                    **UNITED STATES DISTRICT COURT**
17
             **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
18

| | |
|---|---|
| 19 SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general 20 public, | CASE NO.: 2:16-cv-08979-AB-AGR *Related Case No.: 2:20-cv-02401-AB-AGR* |
| 21 Plaintiffs, | *Assigned to Hon. Andre Birotte Jr.* |
| 22 v. | **JOINT STIPULATION TO CONSOLIDATE THE RELATED ACTIONS OF *CHALIAN V. CVS* AND *CABRERA V. CVS*** |
| 23 CVS PHARMACY, INC., a Rhode Island corporation; CVS RX 24 SERVICES, INC., a New York corporation; GARFIELD BEACH 25 CVS, LLC, a California limited liability company; and DOES 1 thru 26 100, inclusive, | Complaint Filed: July 20, 2016 Action Removed: December 5, 2016 |
| 27 Defendants. | |

28

EXHIBIT "8"

1   Michael S. Morrison, SBN 205320
    **ALEXANDER KRAKOW + GLICK LLP**
2   1900 Avenue of the Stars, Suite 900
    Los Angeles, California 90067
3   Telephone:   (310) 394-0888
    Facsimile:    (310) 394-0811
4   E-mail: mmorrison@akgllp.com

5   R. Craig Clark, SBN 129219
    **CLARK LAW GROUP**
6   205 West Date Street
    San Diego, CA 92101
7   Telephone:   (619) 239-1321
    Facsimile:    (888) 273-4554
8   E-mail: cclark@clarklawyers.com

9   Thomas W. Falvey, SBN 65744
    **LAW OFFICES OF THOMAS W. FALVEY**
10  550 N. Brand Blvd., Suite 1500
    Glendale, CA 91203
11  Telephone:   (818) 547-5200
    Facsimile:    (818) 500-9307
12  E-mail: thomaswfalvey@gmail.com

13  Walter Haines, SBN 071075
    **UNITED EMPLOYEES LAW GROUP**
14  5500 Bolsa Avenue, Suite 201
    Huntington Beach, CA 92649
15  Telephone: (562) 256-1047
    Facsimile: (562) 256-4554
16
    Attorneys for Plaintiffs SEVAG CHALIAN,
17  SIGFREDO CABRERA, ENKO TELAHUN,
    CHRISTINE MCNEELY, PATRICK BRENNAN,
18  and the Putative Class

19  Tyler R. Andrews (SBN CA 250686)
    **GREENBERG TRAURIG, LLP**
20  3161 Michelson Drive, Suite 1000
    Irvine, California 92612
21  Telephone: 949.732.6500
    Facsimile: 949.732.6501
22  andrewst@gtlaw.com

23  Attorneys for Defendants CVS PHARMACY, INC.,
    CVS RX SERVICES, INC., and GARFIELD
24  BEACH CVS, LLC

25

26

27

28

1

EXHIBIT "8"

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Plaintiffs Sevag Chalian, individually and on behalf of the putative class ("Plaintiff"), and Defendants CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS, LLC ("Defendants" or "CVS"), collectively the "Parties", by and through their counsel of record, HEREBY STIPULATE AND AGREE to consolidate this action with the case entitled *Sigfredo Cabrera, et al. v. CVS Rx Services, Inc., et al.*, CACD Case No. 2:20-cv-02401-AB-AGR, as follows:

WHEREAS, the above-captioned case is a putative wage and hour class action that was filed on August 20, 2016 in Los Angeles County Superior Court.

WHEREAS, Defendants removed this matter to the Central District of California on December 5, 2016. *See* Dkt. No 1, Notice of Removal.

WHEREAS, the putative class in this matter encompasses pharmacists who worked in either CVS Region 65 or 72 in the State of California who completed mandatory training modules outside of their scheduled shifts. *See* Dkt. No. 44, First Amended Complaint, ¶ 15.

WHEREAS, in essence, Plaintiff alleges that he and the other putative class members completed mandatory training modules outside of their scheduled shifts, were not compensated for such time by CVS, and as a result suffered various Labor Code violations including, but not limited to, wage and hour, record-keeping and notice violations. Dkt. No. 44, First Amended Complaint, ¶¶ 21-22, 24-28.[1]

WHEREAS, the *Cabrera* action is also a putative wage and hour class action suit, filed by Plaintiffs Sigfredo Cabrera, Enko Telahun, and Christine McNeely ("*Cabrera* Plaintiffs"), against Defendants CVS Rx Services, Inc., a New York corporation, CVS Pharmacy, Inc., a Rhode Island corporation, and Garfield Beach CVS, LLC a California limited liability company (i.e., the same Defendants as in the *Chalian* action).

---

[1] On October 17, 2017, this Court dismissed Tamara Aleksandryan, who was previously a Plaintiff and proposed Class Representative, from this suit, granting Defendants' Motion to Compel Arbitration. *See* Dkt. No. 52.

EXHIBIT "8"

1       WHEREAS, similar to the Plaintiff in this matter, the *Cabrera* Plaintiffs

2  seek to represent a class of California CVS pharmacy employees who allegedly

3  worked off the clock to meet the needs of the pharmacy and/or to complete

4  mandatory training modules, in addition to asserting other wage and hour claims.

5  *See* Cabrera, Dkt. 49, Second Amended Complaint, ¶¶ 8, 29-38.

6       WHEREAS, the *Cabrera* action was initially filed in Alameda County

7  Superior Court on August 3, 2017.

8       WHEREAS, on October 9, 2017, Defendants removed the *Cabrera* action to

9  the Northern District of California.  *See Cabrera*, Dkt. No. 1, Notice of Removal.

10       WHEREAS, on March 9, 2020, the *Cabrera* action was transferred to the

11  Central District of California.  *See Cabrera*, Dkt. No. 124, Joint Stipulation and

12  Order to Transfer Venue and Consolidate Action.

13       WHEREAS, on March 23, 2020, at Plaintiff's request, this action was

14  related to the *Cabrera* action, with this action being designated as the lead case.

15  *See* Dkt. No. 133, Order Transfer Pursuant to General Order 19-03 (Related

16  Cases).

17       WHEREAS, major claims in both the *Chalian* and *Cabrera* actions arise

18  from the same alleged wage and hour violations stemming from CVS's policies

19  and practices allegedly resulting in off-the-clock work, including the completion of

20  mandatory pharmacy employee training off-the-clock.

21       WHEREAS, the claims in *Chalian* and *Cabrera* thus arise from the same or

22  closely related events, as they call for determination of the same or substantially

23  related questions of law and fact, and to avoid duplication of labor and the

24  possibility of inconsistent rulings, this action and the *Cabrera* action should be

25  heard by the same judge.

26       WHEREAS, Plaintiff in this action and the *Cabrera* Plaintiffs are

27  represented by the same counsel, and thus Plaintiff's Counsel in this action and the

28  *Cabrera* action support consolidation of the two suits.

EXHIBIT "8"

1    NOW, THEREFORE, the Parties request that the Court consolidate the

2    *Cabrera* matter with the *Chalian* action pursuant to Federal Rule of Civil

3    Procedure 42(a)(2), and designate this action as the lead case.

4    **IT IS SO STIPULATED.**

5

6    Dated: June 3, 2020            **BOYAMIAN LAW, INC.**
                                    **ALEXANDER KRAKOW + GLICK LLP**
7                                   **LAW OFFICES OF THOMAS W. FALVEY**

8

9                                   By: /s/ Armand R. Kizirian
10                                  Michael H. Boyamian
                                    Armand R. Kizirian
11                                  Michael S. Morrison
                                    Thomas W. Falvey
12                                  R. Craig Clark
                                    Walter Haines
13                                  Attorneys for Plaintiffs SEVAG CHALIAN,
                                    SIGFREDO CABRERA, ENKO TELAHUN,
14                                  CHRISTINE MCNEELY, PATRICK
                                    BRENNAN, and the Putative Class
15

16   Dated: June 3, 2020            **GREENBERG TRAURIG, LLP**
17

18
                                    By: /s/ James N. Boudreau
19                                  James N. Boudreau
                                    Christiana L. Signs
20                                  Tyler R. Andrews
                                    Attorneys for Plaintiffs SEVAG CHALIAN,
21                                  SIGFREDO CABRERA, ENKO
                                    TELAHUN, CHRISTINE MCNEELY,
22                                  PATRICK BRENNAN, and the Putative
                                    Class
23

24

25

26

27

28

1

## **ATTESTATION**

2

3        I hereby attest that the concurrence in the filing of this document has been

obtained from James N. Boudreau of Greenberg Traurig, LLP, Attorneys for

4

Defendants.

5

6    Dated: June 3, 2020               By:   /s/ Armand R. Kizirian
                                              Armand R. Kizirian
7                                       Attorneys Attorneys for Plaintiffs SEVAG
                                        CHALIAN, SIGFREDO CABRERA, ENKO
8                                       TELAHUN, CHRISTINE MCNEELY,
                                        PATRICK BRENNAN, and the Putative
9                                       Class

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          2

EXHIBIT "8"

# ATTACHMENT

## DRAFT CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

1
**ALEXANDER KRAKOW + GLICK LLP**
Michael S. Morrison (State Bar No. 205320)
2
1900 Ave. of the Stars, Suite 900
Los Angeles, California 90067
3
T: 310.394.0888 | F: 310.394.0811
E: mmorrison@akgllp.com
4
**BOYAMIAN LAW, INC.**
5
Michael H. Boyamian, SBN 256107
Armand R. Kizirian, SBN 293992
6
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
7
T: (818) 547-5300 | F: (818) 547-5678
E: michael@boyamianlaw.com,
8
    armand@boyamianlaw.com
9
**CLARK LAW GROUP**
R. Craig Clark, SBN 129219
10
cclark@clarklawyers.com
3258 4th Ave.
11
San Diego, CA 92103
T: (619) 239-1321 | F: (888) 273-4554
12
Attorney for Plaintiffs SEVAG CHALIAN,
SIGFREDO CABRERA, ENKO TELAHUN,
13
CHRISTINE MCNEELY, PATRICK BRENNAN,
and the Putative Class
14
*Additional Counsel Listed on Following Page*
15

**UNITED STATES DISTRICT COURT**
16

**CENTRAL DISTRICT OF CALIFORNIA**
17

| | |
|---|---|
| 18  SEVAG CHALIAN, SIGFREDO CABRERA, ENKO TELAHUN, 19  CHRISTINE MCNEELY, and PATRICK BRENNAN as individuals, 20  on behalf of themselves, and all other persons similarly situated, | Case No.: 2:16-cv-08979-AB-AGR  Consolidated with *Cabrera, et al. v. CVS Rx Services, Inc, et al.*, 2:20-cv-02401-AB-AGR  **CLASS & REPRESENTATIVE ACTION** |
| 21                                   Plaintiffs, 22                  v. | **CONSOLIDATED SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF AND CIVIL PENALTIES:** |
| 23  CVS PHARMACY, INC., a Rhode 24  Island corporation; CVS RX SERVICES, INC., a New York 25  corporation; GARFIELD BEACH CVS, LLC, a California limited 26  liability company; and DOES 1 to 10 inclusive, | **(1) FAILURE TO PAY MINIMUM WAGES (Labor Code §§ 204, 558, 1194, 1197, 1197.1, and 1198);**  **(2) FAILURE TO PAY OVERTIME COMPENSATION (Labor Code §§ 510 and 1994);** |
| 27                                   Defendants. 28 | **(3) FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS OR** |

**COMPENSATION IN LIEU THEREOF (Labor Code §§ 226.7 and 512);**

**(4) FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code § 226.7);**

**(5) FAILURE TO PAY WAGES OWED AT THE TIME OF SEPARATION (Labor Code §§ 201, 202, and 203);**

**(6) FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS (Labor Code §§ 226 and 226.3);**

**(7) FAILURE TO MAINTAIN ACCURATE RECORDS (Labor Code §§ 226(a), 226.3, and 1174);**

**(8) FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES (Labor Code §§ 2800 and 2802);**

**(9) UNFAIR BUSINESS PRACTICES (Bus. & Prof. Code §§ 17200 et. seq.);**

**(10) PRIVATE ATTORNEYS GENERAL ACT OF 2004 (Labor Code §§ 2698 *et seq.*).**

**DEMAND FOR JURY TRIAL**

**LAW OFFICES OF THOMAS W. FALVEY**
Thomas W. Falvey, SBN 65744
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
T: (818) 547-5200 | F: (818) 500-9307
E-mail: thomaswfalvey@gmail.com

**UNITED EMPLOYEES LAW GROUP**
Walter Haines, SBN 071075
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
T: (562) 256-1047
F: (562) 256-4554

Attorney for Plaintiffs SEVAG CHALIAN,
SIGFREDO CABRERA, ENKO TELAHUN,
CHRISTINE MCNEELY, PATRICK BRENNAN,
and the Putative Class

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

1.     Plaintiffs Sevag Chalian, Sigfredo Cabrera, Enko Telahun, Christine McNeely, and Patrick Brennan ("Plaintiffs"), by and through their attorneys of record, bring this action on behalf of themselves and all persons similarly situated, against Defendants CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS, LLC (collectively "Defendants" or "CVS"), as set forth below.

2.     The purpose of this Consolidated Second Amended Complaint ("SAC") is to consolidate claims in this action with claims in the action entitled *Cabrera, et al. v. CVS Rx Services, Inc., et al.*, CACD Case No. 2:20-cv-02401-AB-AGR and to assert all claims which may flow from the violations described herein.

## INTRODUCTION

3.     This action is brought by Plaintiffs on behalf of themselves and all current or former employees of Defendants who held non-exempt, hourly positions as pharmacists, pharmacy technicians, pharmacy managers, and pharmacy service associates (collectively "pharmacy employees") who worked at CVS locations throughout the state of California. Plaintiffs allege that primarily as a result of CVS' policies relating to mandatory training, they were not properly compensated for all hours worked, were not provided with all legally compliant meal and rest periods, were not paid all wages owed upon termination of the employment relationship, were provided with inaccurate wage statements, were not provided proper written notice regarding their eligibility for paid sick leave, were not reimbursed for necessary work expenses, and were subject to Defendants' unlawful, unfair, and fraudulent business practices, among other wage and hour violations.

4.     Plaintiffs seek damages, statutory and civil penalties, liquidated damages, injunctive relief, and restitution, as well as reasonable attorneys' fees and litigation costs, as provided under California law.

5.     All allegations in this SAC are based upon information and belief, except those allegations that pertain to Plaintiffs named herein and their counsel, which are based upon personal knowledge. Each allegation in this SAC has

1

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## CONSOLIDATION OF CASES

6.     On June XX, 2020, Central District of California cases *Chalian v. CVS Pharmacy, Inc., et al.*, Case No. 2:16-cv-08979-AB-AGR and *Cabrera, et al. v. CVS Rx Services, Inc., et al.*, CACD Case No. 2:20-cv-02401-AB-AGR were consolidated for all proceedings, with the *Chalian* matter designated as the lead case.

## JURISDICTION AND VENUE

7.     On December 5, 2016, Defendants removed this action pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332, because: (a) the proposed class members number at least 100; (b) the amount in controversy exceeds $5,000,000 and (c) Plaintiff Sevag Chalian and at least one Defendant and Plaintiffs are citizens of different states.  On April 11, 2017, Plaintiff Sevag Chalian's Motion for Remand was denied.

8.     Defendants are subject to personal jurisdiction in California because this case arises from Defendants' alleged wrongful conduct in California, where Defendants employed Plaintiffs and members of the proposed Plaintiff Class.

9.     Venue is proper in this district and county in accordance with 28 U.S.C. § 1391 because Defendants employed Plaintiff Sevag Chalian and numerous members of the Plaintiff Class in Los Angeles County and many of the harms occurred in Los Angeles County.

10.     Venue is proper pursuant to 28 U.S.C. § 1441 because the action was removed to the district court embracing the location where the state court action was pending.

11.     Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events and omissions giving rise to Plaintiffs' and members of the Plaintiff Class's claims occurred in this district.

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

<u>**CLASS DEFINITIONS**</u>

12.    The members of the proposed classes are defined as follows during the period commencing on the date that is within four years prior to the filing of the initial complaint and through the present date (hereinafter the "Class Period").

      (a)    All hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and continuing through the present, whose claims are not subject to arbitration and which have not previously been released and/or adjudicated, and whose LEARNet and/or Siteminder data indicates activity when time punch records do not show he or she was clocked-in (the "Pharmacist Settlement Class").

      (b)    All persons, other than those in the Pharmacist Settlement Class, who held an hourly, nonexempt position in a CVS retail pharmacy in the State of California between August 3, 2014 and continuing through the present who have not previously released and/or adjudicated the Released Claims (the "Retail Pharmacy Settlement Class").

13.    Members of the class and/or classes are all "employees" as the term is used in the Labor Code and the IWC Wage Orders regulating wages, hours, and working conditions in the state of California.

14.    A more precise definition of the class and/or classes may be determined after further investigation and discovery is conducted.

<u>**THE PARTIES**</u>

**I.    PLAINTIFFS**

15.    Plaintiff Sevag Chalian, at all material times mentioned herein:

      (a)    Was employed by CVS from approximately 2009 to September 2013 as a pharmacist in Regions 65 and 72 during the Class Period;

      (b)    Was paid an hourly wage;

EXHIBIT "8"

(c)   Was mandated by CVS to complete various training modules;

(d)   Never signed an arbitration agreement with CVS;

(e)   Was not paid for all his time spent completing the required training modules;

(f)   Was directed by CVS to work off the clock to complete required training;

(g)   Was not paid for all his time spent working off the clock;

(h)   Was not paid all wages owed upon termination of the employment relationship;

(i)   Was provided with inaccurate and incomplete wage statements;

(j)   Was subject to CVS' unlawful, unfair, and fraudulent business practices;

(k)   Believes his payroll records are inaccurate and not properly maintained by Defendants;

(l)   Is a member of the class and/or classes identified herein.

16.   Plaintiff Sigfredo Cabrera, at all material times mentioned herein:

(a)   Was employed by CVS from January 2016 to January 2017 as a non-exempt pharmacy service associate and a non-exempt pharmacy technician;

(b)   Worked at multiple CVS locations, including in Oakland, San Leandro and Palo Alto, California;

(c)   Was paid an hourly wage;

(d)   Was mandated by CVS to complete various training modules;

(e)   Was not paid for all his time spent completing the required training modules;

(f)   Was directed by CVS to work off the clock to meet the needs of the pharmacy and/or complete required training which on occasion

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

resulted in him working more than nine hours per day on average in a two-week period;

(g) Was not paid for all his time spent working off the clock;

(h) Was not provided with legally compliant meal periods or compensation in lieu thereof;

(i) Was not provided with legally compliant rest periods (including legally required days of rest) or compensation in lieu thereof;

(j) Was not paid all wages owed, including sick leave, upon termination of the employment relationship;

(k) As a result of the above, was provided with inaccurate and incomplete wage statements;

(l) Was not reimbursed for necessary work expenses, including but not limited to the costs for his licensing and background check;

(m) Was subject to CVS' unlawful, unfair, and fraudulent business practices;

(n) Believes his payroll records are inaccurate and not properly maintained by Defendants;

(o) Is an "aggrieved employee" as defined by Labor Code § 2699(c);

(p) Complied with all requirements outlined in Labor Code §§ 2698 *et seq*.

17. Plaintiff Enko Telahun, at all material times mentioned herein:

(a) Was employed by CVS from June 2010 to February 2017 as a non-exempt pharmacist and a non-exempt pharmacy manager;

(b) Worked at a CVS location in San Diego, California;

(c) Was paid an hourly wage;

(d) Was required by CVS to complete various training modules which on occasion resulted in him working more than nine hours per day on average in a two-week period;

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

(e) Was not paid for all time spent completing the various training modules;

(f) Was required to work off the clock to complete the required training and/or meet the needs of the pharmacy;

(g) Was not paid for all his time spent working off the clock;

(h) Was not provided with legally compliant meal periods or compensation in lieu thereof;

(i) Was not provided with legally compliant rest periods (including legally required days of rest) or compensation in lieu thereof;

(j) Was not paid all wages owed, including sick leave, upon termination of the employment relationship;

(k) Was provided with inaccurate and incomplete wage statements;

(l) Was not reimbursed for necessary work expenses;

(m) Was subject to CVS' unlawful, unfair, and fraudulent business practices;

(n) Believes his payroll records are inaccurate and not properly maintained by Defendants;

(o) Is an "aggrieved employee" as defined by Labor Code § 2699(c);

(p) Complied with all requirements outlined in Labor Code §§ 2698 *et seq.*

18. Plaintiff Christine McNeely at all material times mentioned herein:

(a) Was employed by CVS from March 2014 to July 2016 as a non-exempt pharmacy technician;

(b) Worked at two CVS locations in Auburn and Grass Valley, California;

(c) Was paid an hourly wage;

(d) Was mandated by CVS to complete various training modules;

(e) Sent an opt-out letter to CVS indicating she did not wish to be bound by the arbitration agreement that she was forced agree to in CVS' mandated training;

(f) Was not paid for all her time spent completing the required training modules;

(g) Was directed by CVS to work off the clock to meet the needs of the pharmacy and/or complete required training;

(h) Was not paid for all her time spent working off the clock;

(i) Was not provided with legally compliant meal periods or compensation in lieu thereof;

(j) Was not provided with legally compliant rest periods or compensation in lieu thereof;

(k) Was not paid all wages owed upon termination of the employment relationship;

(l) Was provided with inaccurate and incomplete wage statements;

(m) Was not reimbursed for necessary work expenses, including but not limited to the costs for her licensing and background check;

(n) Was subject to CVS' unlawful, unfair, and fraudulent business practices;

(o) Believes her payroll records are inaccurate and not properly maintained by Defendants;

(p) Is a member of the class and/or classes identified herein.

19. Plaintiff Patrick Brennan at all material times mentioned herein:

(a) Was employed by CVS from its acquisition of Longs Drugs in 2008 to April 2017 as a non-exempt pharmacist;

(b) Worked at a CVS location in Grass Valley, California;

(c) Was paid an hourly wage;

(d) Was mandated by CVS to complete various training modules;

7

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

(e)   Sent an opt-out letter to CVS indicating he did not wish to be bound by the arbitration agreement that he was forced agree to in CVS' mandated training;

(f)   Was not paid for all his time spent completing the required training modules;

(g)   Was directed by CVS to work off the clock to meet the needs of the pharmacy and/or complete required training;

(h)   Was not paid for all his time spent working off the clock;

(i)   Was not provided with legally compliant meal periods or compensation in lieu thereof;

(j)   Was not provided with legally compliant rest periods or compensation in lieu thereof;

(k)   Was not paid all wages owed upon termination of the employment relationship;

(l)   Was provided with inaccurate and incomplete wage statements;

(m)  Was not reimbursed for necessary work expenses, including but not limited to the costs for his licensing and background check;

(n)   Was subject to CVS' unlawful, unfair, and fraudulent business practices;

(o)   Believes his payroll records are inaccurate and not properly maintained by Defendants;

(p)   Is a member of the class and/or classes identified herein.

## II.   DEFENDANTS

20.   Defendant CVS Pharmacy, Inc., is a Rhode Island corporation, which operates as a subsidiary of CVS Health Corporation that is engaged in the business of providing pharmacy services and operating retail stores that sell pharmaceuticals and general merchandise throughout the United States and the state of California.

///

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

Case 2:16-cv-08979-AB-AGR Document 89-1 Filed 06/19/20 Page 150 of 210 Page ID
#:2835
Case 2:16-cv-08979-AB-AGR Document 74-1 Filed 06/05/20 Page 16 of 58 Page ID #:1494

21.    Defendant CVS Rx Services, Inc., is a New York corporation, which operates as a subsidiary of CVS Health Corporation that is engaged in the business of providing pharmacy services throughout the United States and the state of California.

22.    Defendant Garfield Beach CVS, LLC, is a California limited liability company, which operates as a subsidiary of CVS Health Corporation that is engaged in the business of operating drug and proprietary stores throughout the state of California.

23.    The true names and capacities, whether individual, corporate, subsidiary, partnership, associate, or otherwise of Defendant Does 1 through 10, are unknown to Plaintiffs, who therefore sues these defendants by such fictitious names pursuant to Code Civ. Proc. § 474. Plaintiffs will amend their complaint to allege the true names and capacities of Does 1 through 10 when they are ascertained.

24.    At all times mentioned herein, each defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venture of the other defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter ego and/or in furtherance of the joint venture.

25.    At all times mentioned herein, the acts and omissions of each of the defendants concurrently contributed to the various acts and omissions of each and every one of the other defendants in proximately causing the wrongful conduct, harm, and damages alleged herein. Each of the defendants approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained herein. Each defendant and all doe defendants were and are acting with the authority of each and every other defendant and are acting as agents of each and every other defendant or doe defendant.

## **FACTUAL ALLEGATIONS**

26.    Plaintiff Chalian was employed by CVS from approximately 2009 to September 2013. During his employment, he worked at various CVS locations in

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

Regions 65 and 72. During his employment, Plaintiff Chalian worked as a pharmacist and was paid an hourly wage.

27.    Plaintiff Cabrera was employed by CVS from approximately January 2016 to January 2017. During his employment, he worked at CVS locations in Oakland, San Leandro, and Palo Alto, California. Plaintiff Cabrera worked as both a pharmacy service associate and a pharmacy technician and was paid an hourly wage.

28.    Plaintiff Telahun was employed by CVS from about June 2010 to February 2017. During his employment, he worked at a CVS location in San Diego, California. Plaintiff Telahun worked as both a pharmacist and pharmacy manager and was paid an hourly wage.

29.    Plaintiff McNeely was employed by CVS around March 2014 to July 2016. During her employment, she worked as a pharmacy technician and was paid an hourly wage.

30.    Plaintiffs assert that CVS employs individuals as non-exempt pharmacists, pharmacy technicians, pharmacy service associates or similarly named titles at its various CVS locations throughout the state of California. To their knowledge, these pharmacy employees are paid on an hourly basis.

31.    Plaintiffs allege, based on information and belief, that all non-exempt pharmacy employees in the state of California are subject to the same and/or similar policies, practices, and/or procedures described herein.

32.    As a policy, practice, guideline and/or procedure CVS sets an amount of available work hours for each CVS location based on prescription volume from the previous year.

33.    As a policy, practice, guideline, and/or procedure CVS instructs its store managers and/or pharmacy managers not to go over the set amount of available work hours for each CVS location.

///

///

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

<u>Uncompensated Training Time</u>

34.    Upon hire, CVS requires all pharmacy employees to complete an extensive, initial training session. As a policy, practice, guideline, and/or procedure CVS also requires pharmacy employees to complete ongoing training sessions, which are offered about once a month. Plaintiffs understood that they and other pharmacy employees were subject to discipline, including termination, if they did not complete the mandated trainings. To Plaintiffs' knowledge these training sessions are not essential for any state certification, licensing, or regulation.

35.    As a policy, practice, guideline and/or procedure CVS routinely sends notices via email to pharmacy employees when an upcoming training session is required and available for completion. The notices provide information about the upcoming training, a time estimate for completion, and a due date. CVS also sends out reminder notices, as a policy, practice, guideline and/or procedure, to pharmacy employees who have yet to complete the training by the upcoming due date.

36.    Based on information and belief, Plaintiffs allege that failure to complete the training in a timely fashion may result in disciplinary action, including but not limited to a reduction in assigned work hours.

37.    As a policy, practice, guideline and/or procedure CVS's training modules are typically completed on a CVS web-based training system, usually referred to as LEARNet. Plaintiffs believe the web-based system keeps record of all log-in and log-out times, as well as the total time the pharmacy employee spends to complete each training module.

38.    As a policy, practice, guideline and/or procedure CVS purportedly permits pharmacy employees to complete their training while clocked in during a scheduled shift. Due to CVS's staffing policies, practices, and/or procedures, and the busy nature of the pharmacy, however, Plaintiffs allege they and other pharmacy employees typically do not have time to complete the required trainings during their scheduled shifts.

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

39.     As a policy, practice, guideline and/or procedure to ensure pharmacy employees complete their training, CVS provides all pharmacy employees with unique remote access log-in credentials so they may access the web-based training system from a remote location, such as the employee's home.

40.     As a policy, practice, guideline and/or procedure CVS assigns an approximate time frame in which each training module should be completed. However, the trainings often take Plaintiffs and other pharmacy employees more time to complete than the time prescribed.

41.     Even though CVS knows or should know that training takes more time than suggested, it has a policy, procedure, guideline and/or practice of instructing store managers to only pay pharmacy employees for the allocated training time instead of the actual time the pharmacy employees spend completing the training.

42.     As a policy, procedure, guideline and/or practice CVS typically uses its cash registers to operate as the CVS timekeeping system. Based on information and belief Plaintiffs allege CVS's training system is not integrated with the timekeeping system. CVS does not keep track of training time nor does CVS automatically add the training time to the pharmacy employees' clocked hours at their work locations. As a result, all training completed off the clock must be entered manually by a manager, despite the fact that log-in and log-out times are available to CVS through the training software.

43.     As a policy, procedure, guideline and/or practice, CVS instructs pharmacy employees to track their time spent engaging in training on a separate sheet of paper that allegedly is to be manually entered by a store manager. However, pharmacy employees often endure difficulties with management when reporting their training time due to the direction and pressure by CVS to minimize labor costs and restrict overtime. CVS's scheme has created a disincentive for store managers to manually enter the actual time pharmacy employees spent completing the training remotely. Ultimately, this scheme has knowingly deterred pharmacy employees

EXHIBIT "8"

from reporting their actual time spent participating in training. Therefore much, if not all, of the time pharmacy employees spend remotely completing the required training is never logged by CVS and the employees are not paid for that time.

44.     CVS is aware and/or should be aware of their failure to compensate pharmacy employees because they have payroll records for all pharmacy employees, as well as training records for all pharmacy employees. From such records, CVS has the capability to determine whether a pharmacy employee is appropriately compensated for their time spent participating in the mandated training.

45.     As a policy, procedure, guideline, and/or practice CVS also used its training program to mandate pharmacy employees to participate in a training module entitled "Arbitration of Workplace Legal Disputes" wherein the pharmacy employee could not complete the training without agreeing to arbitrate his or her legal claims. Instead the training informed individuals they had the "limited opportunity" to "opt-out" by mailing a written notice to CVS indicating that they wished to "opt-out" of the policy.

46.     Plaintiffs McNeely and Telahun were subject to the training module described above. These Plaintiffs allege management threatened them to complete the training thereby making them subject to the agreement.

47.     Shortly after completing the "Arbitration of Workplace Legal Disputes" training module, Plaintiff McNeely and other pharmacy employees sent written letters to CVS headquarters stating they did not wish to be bound by the arbitration agreement. Plaintiff McNeely further believes a copy of such letter is included in her personnel file.

48.     Based on information and belief, Plaintiffs assert that CVS provides an arbitration agreement to pharmacy employees upon hire to which a relatively small percentage of pharmacy employees have elected not to sign.

///

///

13

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

Other Uncompensated Time; Meal and Rest Break Violations

49.     Plaintiffs Cabrera, Telahun, McNeely, and Brennan further allege that due to CVS's policy, practice, guideline and/or procedure of strictly allocating work hours based on prescription volume from the previous year and the busy nature of the pharmacy, they and other pharmacy employees were often directed to work off the clock before and after their scheduled shifts, as well as during their meal and rest periods to meet the needs of the pharmacy and/or to complete the required training. As a result, pharmacy employees often worked more than eight or nine hours in a day, and/or forty hours in a week, and sometimes for seven consecutive days in a defined work week without any day of rest.

50.     Moreover, Plaintiffs Cabrera (pharmacy technician), Telahun (in her capacity as a non-exempt pharmacy manager), and McNeely (pharmacy technician) further allege they worked an average of more than nine hours in a day, more than 108 hours in a consecutive two-week period, and/or more than 12 days in a consecutive two-week period due to the regular training CVS required pharmacy employees to complete. Plaintiffs Cabrera, Telahun, and McNeely allege that such violations have occurred because they would often have to complete training off-the-clock outside of their formal shifts immediately prior to or after their shifts at the pharmacy or at home, during off-the-clock meal breaks, and during rest breaks. Plaintiffs Cabrera, Telahun, and McNeely allege that because CVS did not acknowledge this time worked by Plaintiffs and the other pharmacy employees, CVS did not factor this time in setting work limits for any given employee to an average of nine hours in a day, 108 hours in a consecutive two-week period, and 12 days in a consecutive two-week period.

51.     Plaintiffs further allege CVS failed to provide them and other Retail Pharmacy Class Members with one day's rest in seven days of work due to the regular training CVS required pharmacy employees to complete. Plaintiffs allege that such violations have occurred as they would often have to complete training off-

EXHIBIT "8"

the-clock outside of their formal shifts on days where they were not otherwise scheduled to work. Plaintiffs allege that because CVS did not acknowledge this time worked by Plaintiffs and the other pharmacy employees on their ostensible days off, CVS did not take into account these days worked in ensuring that any given employee was given one day's rest from seven days of work as required by Labor Code Sections 550 and 551.

52.     Plaintiffs Cabrera, Telahun, McNeely, and Brennan allege that it is CVS's policy, practice, guideline and/or procedure to discipline pharmacy employees for refusing to work off the clock, such as by reducing the employee's scheduled work hours.

53.     CVS's policies, practices, and/or procedures have knowingly resulted in pharmacy employees not being compensated for some or all the time they were engaged in work.

54.     Plaintiffs Cabrera, Telahun, McNeely, and Brennan further allege that as a policy, practice, guideline and/or procedure CVS required pharmacy employees to clock out for meal periods, even though pharmacy employees were working through their meal periods to meet the needs of the pharmacy and/or complete their required training(s).

55.     Plaintiffs Cabrera, Telahun, McNeely, and Brennan contend that CVS knew or should have known that pharmacy employees were working through their meal periods because (a) various managers, supervisors, and personnel saw pharmacy employees working during their meal periods, (b) LEARNet shows that pharmacy employees were completing trainings, while they were clocked out for a meal period; (c) the work accomplished could not have been completed within the documented number of hours, and (d) Plaintiff Cabrera personally complained to his superiors about not receiving adequate meal and rest periods.

56.     Plaintiffs allege California regulations provide that a pharmacist must be on the premises at all times and be fully aware of all activities performed by a

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

1   pharmacy technician. Plaintiff Telahun contends that as a policy, practice, guideline
2   and/or procedure CVS on occasion schedules only one pharmacist on duty for a
3   period of four to six hours and sometimes more than seven consecutive days in a
4   defined work week. Due to this scheduling practice, pharmacists, such as Plaintiff
5   Telahun, were not provided with meal periods that were free of all duty, as they
6   were on call during their meal periods and/or were unable to leave the premises. As
7   such, Plaintiff Telahun and other current or former pharmacists were not provided
8   with legally compliant meal periods.

9       57.    Plaintiffs Cabrera, Telahun, McNeely, and Brennan further allege that
10  they and other current or former pharmacy employees did not receive a second meal
11  period when they worked more than ten hours.  This was largely because Plaintiffs
12  and other pharmacy employees were working off the clock as described herein.

13      58.    Plaintiffs Cabrera, Telahun, McNeely, and Brennan and other current or
14  former pharmacy employees were not compensated for noncompliant meal periods
15  as provided by California law.

16      59.    As a policy, practice, guideline and/or procedure CVS did not provide
17  Plaintiffs Cabrera, Telahun, McNeely, and Brennan and other current or former
18  employees with legally required rest periods, despite its written policy due to the
19  busy nature of the pharmacy and the pressure of CVS to meet its goals.

20      60.    Due to CVS's alleged policy, practice, guideline and/or procedure of
21  only scheduling one pharmacist for a period of four to six hours and California
22  regulations, pharmacists, such as Plaintiff Telahun were unable to take off-duty rest
23  periods or required days of rest as they were expected to be on-call and available at
24  all times.

25      61.    Plaintiffs Cabrera, Telahun, McNeely, and Brennan, and other current or
26  former employees were not compensated for noncompliant rest periods in violation
27  of California law.

28  ///

16
CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

62.     CVS also has a policy, practice, guideline and/or procedure of failing to reimburse and/or indemnify Plaintiffs Cabrera, Telahun, McNeely, and Brennan and other current or former pharmacy employees for expenses incurred as a direct result of their employment, such as the use of personal computers and internet to complete the mandatory training from a remote location, even though CVS knew and/or had reason to know that pharmacy employees were completing the training from their personal computers and using their own internet without reimbursement.

63.     Additionally, on information and belief, CVS has a policy, practice, guideline and/or procedure of failing to reimburse and/or indemnify Plaintiff Cabrera and other current or former pharmacy technicians for the costs of their required license, background check, and travel, which CVS required. Thus, CVS knew or had reason to know that pharmacy technicians were not being reimbursed for their required work-related expenses.

64.     Because CVS failed to pay Plaintiffs and other current or former employees for all time worked, as well as premiums for noncompliant meal and rest periods and required days of rest, CVS willfully failed to pay, in a timely manner, all wages owed to Plaintiffs and other former pharmacy employees upon termination of their employment.

65.     Due to CVS's policies, practices, and procedures described herein, CVS failed to provide accurate itemized wage statements to all Plaintiffs and other current or former pharmacy employees in violation of California law because the wage statements did not properly reflect the number of hours worked, the gross wages and net wages earned, their sick leave balances, nor was the information properly itemized in a manner pharmacy employees could easily determine the information.

66.     Because of CVS' policies, practices, and procedures, described herein, CVS also failed to maintain accurate records by failing to accurately and properly

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

1  record all time worked and maintain accurate payroll records as required by

2  California law.

3      67.    On June 22, 2016, Plaintiff Cabrera submitted notice to the LWDA and

4  CVS informing them of CVS' alleged Labor Code violations pursuant to PAGA. A

5  true and correct copy of the notice is attached hereto as **Exhibit 1** and is

6  incorporated herein by reference. On August 22, 2017, Plaintiffs Cabrera and Telaun

7  submitted an amended notice to the LWDA, which included Mr. Telahun as an

8  additional representative and included additional facts and theories to support the

9  alleged Labor Code violations, to the LWDA. A true and correct copy of the

10  amended notice is attached hereto as **Exhibit 2** and is incorporated herein by this

11  reference. As of the date of this pleading the LWDA has yet to respond to either

12  notice. As such, Plaintiffs Cabrera and Telahun file this representative action in their

13  representative capacity pursuant to Labor Code §§ 2698 *et seq*.

14      68.    Plaintiffs believe other violations may be discovered and therefore

15  reserve their right to allege additional violations of law that may constitute

16  violations of the Business and Professions Code and/or Labor Code, as investigation

17  and discovery warrants. In the event Plaintiffs discover other violations through the

18  discovery process, Plaintiffs will seek to amend the operative complaint.

19                          **CLASS ALLEGATIONS**

20      69.    Plaintiffs Sevag Chalian, Christine McNeely, and Patrick Brennan

21  brings this action on behalf of themselves and on behalf of all persons within the

22  defined class and/or classes included herein.

23      70.    This class action meets the statutory prerequisites for the maintenance

24  of a class action, as set forth in Code Civ. Proc. § 382, Civ. Code § 1781 and the

25  Federal Rues of Civil Procedure ("Fed. R. Civ. P."), Rule 23, in that:

26          (a)    The persons who comprise the class and/or classes are so numerous

27                 that the joinder of all such persons is impracticable and the

28

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

disposition of their claims as a class will benefit the parties and the Court;

(b) Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this SAC are common to the Class and will apply uniformly to every member of the Class, and as a practical matter be dispositive of the interests of the other members not party to the adjudication;

(c) The parties opposing the Class have acted or have refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole; and

(d) Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

   i. The interests of Class Members in individually controlling the prosecution or defense of separate actions;

   ii. The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

   iii. The desirability or undesirability of concentrating the litigation of the claims in this particular forum; and

   iv. The difficulties likely to be encountered in the management of a class action.

71.    The Court should permit this action to be maintained as a class action pursuant to Code Civ. Proc. § 382, Civ. Code § 1781, and Fed. R. Civ. P. 23 because:

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

(a)   Questions of law and fact common to the Class are substantially similar and predominate over any questions affecting only individual members;

   i. Common questions of law include, *inter alia*, whether CVS had an unlawful policy in place that did not compensate pharmacists and other pharmacy employees for all the time they spent on off-the-clock work, including time they spent on training modules outside of their shifts, during meal breaks, and during rest breaks.

   ii. Common questions of fact include, *inter alia*, whether CVS's pharmacists and other pharmacy employees were able to access and complete CVS's training modules outside of their shifts or while on a meal or rest break, whether CVS had in place a policy and practice that compensated pharmacists and other pharmacy employees for only the estimated length of time that a training module was set to require as opposed to the actual time an employee spent on a given training module, and whether CVS was aware that pharmacists and other pharmacy employees were spending their days and time off incurring uncompensated time in completing training modules.

(b)   A class action is superior to any other available method for the fair and efficient adjudication of Class Members' claims;

(c)   The members of the Class are so numerous that it is impractical to bring all Class Members before the Court;

(d)   Plaintiffs' claims are typical of the claims of the Class;

(e)   Plaintiffs and the other members of the Class will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

(f)     There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations and other improprieties alleged, and in obtaining adequate compensation for the damages that Defendants' actions have inflicted upon the Class;

(g)     Plaintiffs can, and will, fairly and adequately protect the interest of the Class;

(h)     There is a community of interest in ensuring that the combined assets and available insurance of Defendants are sufficient to adequately compensate the members of the Class for the injuries sustained; and

(i)     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(By Plaintiffs Chalian, McNeely, and Brennan Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

### FAILURE TO PAY MINIMUM WAGES

**[Labor Code §§ 204, 558, 1194, and 1197, 1197.1, and 1198]**

72.     As a separate and distinct cause of action, Plaintiffs reallege and incorporate by reference, as though fully set forth herein, all the allegations contained in the preceding paragraphs of this SAC, excepting those allegations which are inconsistent with this cause of action.

73.     Plaintiffs Chalian, McNeely, and Brennan allege that CVS willfully and intentionally violated the Labor Code by failing to compensate them and other current or former pharmacy employees for all hours worked.

74.     Labor Code § 204 establishes the fundamental right of all employees in the state of California to be paid wages in a timely fashion for their work.

21

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

75.     Section 1197 of the Labor Code provides, "[t]he minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."

76.     Pursuant to California law, an employer must pay each employee "not less than the applicable minimum wage for all hours worked in the payroll period, whether the remunerations is measured by time, piece, commission, or otherwise." *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 44.

77.     Labor Code § 1194(a) states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

78.     Labor Code § 558(a) further provides:

> Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:
>
> (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages.
>
> (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.
>
> (3) Wages recovered pursuant to this section shall be paid to the affected employee.

79.     As a policy, practice, guideline and/or procedure CVS requires all pharmacy employees to participate in regular training. CVS allegedly permits pharmacy employees to complete their training during scheduled shifts or from a remote location including home by using provided log-in credentials. However,

EXHIBIT "8"

when training is completed off-the-clock, the pharmacy employee's time is not automatically recorded. CVS management must manually enter any training time completed off-the-clock.

80.     CVS also has a policy, practice, guideline and/or procedure of instructing and/or requiring store managers to only compensate pharmacy employees for the estimated time for completion of training instead of the actual time spent completing the training. Because CVS requires store managers to limit their labor costs, CVS's policies, practices, and/or procedures serve as a disincentive for store managers to compensate pharmacy employees for their training time. As a result, pharmacy employees are not compensated the legal minimum wage for all or some of the training time that occurs off-the-clock.

81.     As described herein, CVS has a policy, practice, guideline and/or procedure of limiting the number of available work hours, based on performance from the prior year. CVS instructs its store managers not to go over the set amount of available work hours. As a result, pharmacy employees were often instructed and expected to work off the clock before and after their scheduled shifts, including weekends or during their meal and/or rest periods to meet the needs of the pharmacy. If a pharmacy employee refused to work off the clock, the pharmacy employee was often disciplined by having his or her hours cut.

82.     CVS has intentionally created a common scheme and practice to deter pharmacy employees from reporting and being paid for all hours worked.

83.     By virtue of CVS's unlawful failure to compensate Plaintiffs Chalian, McNeely, Brennan and current or former pharmacy employees for all of their time worked, pharmacy employees have suffered, and will continue to suffer, damages in amounts which are presently unknown to them, but which exceed the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

84.     Having received less than the legal minimum wage, Plaintiffs Chalian, McNeely, and Brenann and other current or former pharmacy employees who

EXHIBIT "8"

comprise the Classes are entitled to, and now seek to recover all wages owed, penalties, including penalties available under Labor Code § 558, as well as interest, reasonable attorneys' fees and costs pursuant to Labor Code § 1194.

85.     Plaintiffs Chalian, McNeely, and Brennan on behalf of themselves and other current or former pharmacy employees, also request further relief as described in the below prayer.

## CAUSES OF ACTION

### SECOND CAUSE OF ACTION

**(By Plaintiffs Chalian, McNeely, and Brennan Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

### FAILURE TO PAY OVERTIME COMPENSATION

**[Labor Code §§ 510, 558, and 1194]**

86.     As a separate and distinct cause of action, Plaintiffs reallege and incorporate by reference, as though fully set forth herein, all the allegations contained in the preceding paragraphs of this SAC, excepting those allegations which are inconsistent with this cause of action.

87.     Plaintiffs Chalian, McNeely, and Brennan allege that CVS willfully and intentionally violated the Labor Code by failing to compensate them and other current or former pharmacy employees for all hours worked in excess of eight (8) hours per day and forty (40) hours per workweek at a rate of no less than 1 ½ times their regular rates of pay, and for all hours worked in excess of twelve (12) hours per day, or in excess of eight (8) hours per day on their seventh consecutive day of work, at a rate of no less than 2 times their regular rates of pay.

88.     Labor Code § 204 establishes the fundamental right of all employees in the state of California to be paid wages in a timely fashion for their work.

89.     Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work. <u>Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek</u> and the first eight hours

EXHIBIT "8"

worked on the seventh day of work in any one workweeks shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work. (Emphasis added.)

90. An employee may not waive his or her right to overtime compensation and any agreement by the employee to accept less than the statutorily required rate is unenforceable as a matter of law. *Early v. Superior Court* (2000) 79 Cal.App.4th 1420, 1430.

91. Labor Code § 1194(a) states:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

92. Labor Code § 558(a) further provides:

Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(4) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages.

(5) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(6) Wages recovered pursuant to this section shall be paid to the affected employee.

93. As a policy, practice, guideline and/or procedure CVS requires all pharmacy employees to participate in regular training. CVS allegedly permits

EXHIBIT "8"

pharmacy employees to complete their training during scheduled shifts or from a remote location by using provided log-in credentials. When training is completed off-the-clock, however, the pharmacy employee's time is not automatically recorded. CVS management must manually enter any training time completed off-the-clock.

94.     CVS has a policy, practice, guideline and/or procedure of instructing and/or requiring store managers to only compensate pharmacy employees for the estimated time for completion of training instead of the actual time spent completing the training. Because CVS requires store managers to limit their labor costs, CVS's policies, practices, and/or procedures serve as a disincentive for store managers to pay pharmacy employees properly for their training time. As a result, pharmacy employees are not compensated with overtime wages for all or some of the training time that occurs off-the-clock, when that pharmacy employee has otherwise worked eight (8) hours in a day or forty (40) hours in a workweek.

95.     As described herein, CVS has a policy, practice, guideline and/or procedure of limiting the number of available work hours, based on performance from the prior year. CVS instructs its store managers to not go over the set amount of available work hours. As a result, pharmacy employees were often instructed and expected to work off the clock before and after their scheduled shifts, or during their meal and/or rest periods to meet the needs of the pharmacy. If a pharmacy employee refused to work off the clock, the pharmacy employee was often disciplined by having his or her hours cut.

96.     CVS has intentionally created a common scheme and practice to deter pharmacy employees from reporting and being paid for all overtime hours worked.

97.     By virtue of CVS's unlawful failure to compensate Plaintiffs Chalian, McNeely, Brennan and current or former pharmacy employees for their time worked, pharmacy employees have suffered, and will continue to suffer, damages in

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

amounts which are presently unknown to them, but which exceed the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

98.     Having received less than the required overtime wages, Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees are entitled to, and now seek to recover all overtime wages owed, penalties, including penalties available under Labor Code § 558, as well as interest, reasonable attorneys' fees and costs pursuant to Labor Code § 1194.

99.     Plaintiffs Chalian, McNeely, and Brennan on behalf of themselves and other current or former pharmacy employees who comprise the Classes, also request further relief as described in the below prayer.

**THIRD CAUSE OF ACTION**

**(By Plaintiffs McNeely and Brennan Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

**FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS OR COMPENSATION IN LIEU THEREOF**

**[Labor Code §§ 226.7 and 512]**

100.    As a separate and distinct cause of action, Plaintiffs reallege and incorporate by reference, as though fully set forth herein, all allegations contained in the preceding paragraphs of this SAC, excepting those allegations which are inconsistent with this cause of action.

101.    Labor Code § 512(a) provides:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived. (Emphasis added.)

27

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

102. In pertinent part, Labor Code § 226.7(c) provides:

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for workday that the meal or rest or recovery period is not provided.

103. Under California law, the meal period requirement is generally satisfied if the employee: (a) has at least 30 minutes uninterrupted; (b) is free to leave the premises; and (c) is relieved of all duty for the entire period. *See Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1036 [citing DLSE Opn. Letter No. 1996.07.12 (July 12, 1996) p.1].

104. At all relevant times, Plaintiffs McNeely and Brennan and other current or former pharmacy employees were typically scheduled to work an eight-hour day.

105. Plaintiffs McNeely and Brennan allege they and other current or former pharmacy employees typically did not receive legally compliant meal periods.

106. Plaintiffs McNeely and Brennan allege they and other current or former employees were directed to work through their meal periods to meet the needs of the pharmacy.

107. Meal periods that are not free from all duty and/or are less than thirty (30) minutes violate California law.

108. Plaintiffs McNeely and Brennan believes CVS knew or should have known that they and other current or former pharmacy employees were not receiving legally compliant meal periods because: (a) various managers, supervisors, and personal saw pharmacy employees working during their meal periods; (b) LEARNet showed pharmacy employees were completing training while clocked out for lunch, (c) the work accomplished could not have been completed in the number of

1  documented hours; and (d) Plaintiffs McNeely and Brennan complained to their
2  superiors about not receiving legally compliant meal periods.

3      109.    Additionally, due to California regulations which require a pharmacist
4  to be on the premises at all times and CVS's policy, practice, guideline and/or
5  procedure of scheduling only one pharmacist on duty for a period of four to six
6  hours, often times pharmacists, were not provided with the opportunity to take a
7  duty-free meal period, as they were often on call and/or unable to leave the
8  premises. As such, pharmacists were not provided with legally compliant meal
9  periods.

10      110.    Plaintiffs McNeely and Brennan further allege they and other current or
11  former pharmacy employees did not receive a second meal period when they worked
12  more than ten hours. Plaintiffs McNeely and Brennan contend this largely resulted
13  when pharmacy employees worked off the clock, as described herein.

14      111.    CVS failed to pay Plaintiffs McNeely and Brennan and other current or
15  former pharmacy employees the required premium wage for each noncompliant
16  meal period, as required by California law.

17      112.    Due to CVS's unlawful conduct, Plaintiffs McNeely and Brennan and
18  other current or former pharmacy employees suffered, and will continue to suffer,
19  damages in an amount which is presently unknown, but which exceeds the
20  jurisdictional limits of this Court and which will be ascertained according to proof at
21  trial.

22      113.    Pursuant to Labor Code § 226.7(c) and the relevant IWC Wage Orders,
23  Plaintiffs McNeely and Brennan and other current or former pharmacy employees
24  are entitled to, and seek to, recover the full amount of unpaid premium wages for
25  noncompliant meal periods.

26      114.    Pursuant to Labor Code § 218.6, Plaintiffs McNeely and Brennan and
27  other current or former pharmacy employees are entitled to, and seek to, also
28  recover prejudgment interest on the amount of premium wages owed.

115.    Plaintiffs McNeely and Brennan and other current or former pharmacy employees are entitled to, and seek to, recover reasonable attorneys' fees as permitted by Labor Code § 218.5.

116.    Plaintiffs McNeely and Brennan, on behalf of themselves and other current or former pharmacy employees who comprise the Classes, request further relief as described in the below prayer.

**FOURTH CAUSE OF ACTION**

**(By Plaintiffs McNeely and Brennan Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

**FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS OR COMPENSATION IN LIEU THEREOF**

**[Labor Code § 226.7]**

117.    As a separate and distinct cause of action, Plaintiffs reallege and incorporate by reference, as though fully set forth herein, all the allegations contained in the preceding paragraphs of this SAC, excepting those allegations which are inconsistent with this cause of action.

118.    In pertinent part, Labor Code § 226.7 provides:

> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and health.

> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Divisor of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for workday that the meal or rest or recovery period is not provided.

///

///

30

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

119. At all relevant times, Plaintiffs McNeely and Brennan and other current or former pharmacy employees were typically scheduled to work an eight-hour work day.

120. Plaintiffs McNeely and Brennan alleges that they and other current or former pharmacy employees regularly did not receive off-duty rest periods despite CVS's written policy because of busy nature of the pharmacy and the pressure by CVS to meet the stores goals.

121. Additionally, pharmacists were also unable to take off-duty rest periods due to CVS's policy of only scheduling one pharmacist on duty for a period of four to six hours and California regulations, which require a pharmacist to always be on the premises.

122. CVS did not compensate Plaintiffs McNeely and Brennan and other current or former pharmacy employees the required premium wage for each noncompliant rest period, as required by California law.

123. Plaintiffs McNeely and Brennan asserts that CVS knew or should have known that she and other current or former pharmacy employees were not receiving adequate rest periods due to the busy nature of the pharmacy, production, and staffing.

124. As a result of CVS's unlawful conduct, Plaintiffs McNeely and Brennan and other current or former pharmacy employees suffered, and will continue to suffer, damages in an amount which is presently unknown, but which exceeds the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

125. According to Labor Code § 226.7(c) and the relevant IWC wage orders, Plaintiffs McNeely and Brennan and other current or former pharmacy employees are entitled to, and seek to, recover the full amount of unpaid premium wages for noncompliant rest periods.

///

31

EXHIBIT "8"

126.    Pursuant to Labor Code § 218.6, Plaintiffs McNeely and Brennan and other current or former pharmacy employees are entitled to, and seek to, also recover prejudgment interest on the amount of premium wages owed.

127.    Plaintiffs McNeely and Brennan and other current or former pharmacy employees are entitled to, and seek to, recover reasonable attorneys' fees and costs as permitted by Labor Code § 218.5.

128.    Plaintiffs McNeely and Brennan, on behalf of themselves and other current or former pharmacy employees who comprise the Classes, requests further relief as described in the prayer below.

**FIFTH CAUSE OF ACTION**

**(By Plaintiffs Chalian, McNeely, and Brennan Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

**FAILURE TO PAY WAGES OWED AT THE TIME OF SEPARATION**
**[Labor Code §§ 201, 202, and 203]**

129.    As a separate and distinct cause of action, Plaintiffs reallege and incorporate by reference, as though fully set forth herein, all the allegations contained in the preceding paragraphs of this SAC, excepting those allegations which are inconsistent with this cause of action.

130.    The term "wages" is defined in Labor Code § 200(a) to include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time…or other method of calculation. Subsection (b) further defines "labor" to include all "labor, work or service whether rendered or performed under contract, subcontract, partnership…"

131. Labor Code § 201(a) provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

///

///

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

132. According to Labor Code § 202(a):

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of mailing shall constitute the date of payment for purposes of the requirement to provide payment with 72 hours of the notice of quitting.

133. Labor Code § 203 further provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereof is commenced; but the wages shall not continue for more than 30 days.

134. CVS's common scheme of limiting work hours and mandating training, knowingly prevented pharmacy employees from being compensated for all time worked.

135. A number of pharmacy employees, including Plaintiffs Chalian, McNeely, and Brennan, are no longer employed by CVS. To date, CVS has yet to pay the wages owed to them as required under California law.

136. As a consequence of CVS's willful and deliberate refusal to tender such wages, affected pharmacy employees are entitled to, and therefore seek a maximum of 30 days' wages at their daily rate of pay as a waiting time penalty. *See* Labor Code § 203.

137. Plaintiffs Chalian, McNeely, and Brennan, on behalf of themselves and other pharmacy employees, also request further relief as described in the below prayer.

///

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

**SIXTH CAUSE OF ACTION**

**(By Plaintiffs Chalian, McNeely, and Brennan Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

**FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

**[Labor Code §§ 226 and 226.3]**

138.   As a separate and distinct cause of action, Plaintiffs reallege and incorporate by reference, as though fully set forth herein, all the allegations contained in the preceding paragraphs of this SAC, excepting those allegations which are inconsistent with this cause of action.

139.   Labor Code § 226 states in pertinent part:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee… (4) all deductions… (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid… (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during each period and the corresponding number of hours worked at each hourly rate by the employee…"

140.   Labor Code § 226(e)(1) further provides:

> An employee suffering injury as a result of knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

141.   Labor Code § 266(h) states "an employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorneys' fees."

///

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

Case 2:16-cv-08979-AB-AGR  Document 74-1  Filed 06/05/20  Page 44 of 58  Page ID #:1520

142.   An injury occurs where the employer fails to provide accurate information and the employee cannot "promptly and easily determine" the total number of hours worked or the "applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." Labor Code § 226(a)(9)-(e)(2)(B)(i).

143.   Labor Code § 226(e)(2)(c) explains that the phrase "promptly and easily determine" means that "a reasonable person would be able to readily ascertain the information without reference to documents or information."

144.   CVS's policies, practices, and procedures related to training, staffing, and payroll records has resulted in wage statements which do not accurately reflect the gross and/or net wages earned since, CVS has not paid pharmacy employees for all time worked. Additionally, the wage statements and subsequent records do not accurately reflect all time worked, since off the clock time was not properly tracked and/or entered into the payroll system. Thus, the total hours worked and any accrued sick leave balances listed on the wage statements are inaccurate. The wage statements also do not properly reflect premium payments received for noncompliant meal and rest periods. As a result, Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees were unable to readily ascertain from their wage statements whether they were properly compensated.

145.   Pursuant to California law, Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees are deemed to have suffered injury due to CVS's knowing and intentional failure to provide them with accurate itemized wage statements.

146.   According to Labor Code § 226(e), Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees are entitled to and seek to recover liquidated damages in the amount of $50.00 for the initial violation and $100.00 for each subsequent violation per employee, not to exceed $4,000.00.
///

147.   Additionally, pursuant to Labor Code § 226(h), Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees are entitled to, and therefore seek, injunctive relief to ensure CVS complies with Labor Code § 266.

148.   Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees are entitled to, and seek, attorneys' fees and costs provided by Labor Code § 266(h).

149.   Plaintiffs Chalian, McNeely, and Brennan, on behalf of herself and other current or former pharmacy employees who comprise the Classes, also request further relief as described in the below prayer.

## SEVENTH CAUSE OF ACTION

**(By Plaintiffs Chalian, McNeely, and Brennan Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

## FAILURE TO MAINTAIN ACCURATE RECORDS
### [Labor Code §§ 226(a), 226.3, and 1174]

150.   As a separate and distinct cause of action, Plaintiffs reallege and incorporate by reference, as though fully set forth herein, all the allegations contained in the preceding paragraphs of this SAC, excepting those allegations which are inconsistent with this cause of action.

151.   In pertinent part Labor Code § 226(a) states "a copy of the statement and the record of deductions shall be kept on file by the employer for at least three years…"

152.   Labor Code § 1174(d) states:

> "[e]very person employing labor in this state shall keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this

36

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

purpose by commission, but in case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned."

153.   Plaintiffs Chalian, McNeely, and Brennan allege that CVS intentionally and willfully failed to maintain accurate payroll records showing the number of hours worked each day by Plaintiffs and other current or former pharmacy employees, including the time spent engaged in training and working off the clock, because CVS knew or should have known that pharmacy employees were working off the clock as described herein.

154.   Due to CVS's deliberate and unlawful conduct, Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees suffered, and continue to suffer, injuries and damages, because CVS has failed to abide by the requirements outlined in the Labor Code.

155.   More specifically, Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees have been injured because they were denied both their legal right and protected interest, in having accurate and complete payroll records available to them.

156.   Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees are entitled to and do seek the damages outlined in Labor Code § 226.7(e)(1).

157.   Plaintiffs Chalian, McNeely, and Brennan, on behalf of themselves and other current or former pharmacy employees who comprise the Classes, also request further relief as described in the below prayer.

///
///
///
///
///

EXHIBIT "8"

# EIGHTH CAUSE OF ACTION

## (By Plaintiffs McNeely and Brennan Individually and on Behalf of the Class(es) against Defendants and Does 1-10)

## FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES

### [Labor Code §§ 2800 and 2802]

158.   As a separate and distinct cause of action, Plaintiffs reallege and incorporate by reference, as though fully set forth herein, all the allegations contained in the preceding paragraphs of this SAC, excepting those allegations which are inconsistent with this cause of action.

159.   Pursuant to Labor Code §§ 2800 and 2802, an employer must reimburse employees for all necessary expenditures incurred by the employee in direct consequence of the discharge of his or her job duties or in direct consequence of his or her job duties or in direct consequence of his or her obedience to the directions of the employer.

160.   Plaintiffs McNeely and Brennan and other current and former pharmacy employees incurred necessary business-related expenses and costs, such as use of a personal computer or device, use of internet, licensing, background check, and travel.

161.   CVS has intentionally and willfully failed to reimburse Plaintiffs McNeely and Brennan and other current or former pharmacy employees for all necessary business-related expenses and costs, even though CVS knew or had reason to know that employees were using their personal computers/devices and internet for work related activities.

162.   CVS also knew or had reason to know that pharmacy technicians were paying for the cost of their license, background checks, and travel, because they were requirements imposed by CVS.

163.   Plaintiffs McNeely and Brennan and other current or former pharmacy employees are entitled to recover, and therefore seek to recover, from CVS, their

EXHIBIT "8"

business-related expenses and costs incurred during the course and scope of their employment, in addition to interest accrued from the date on which the employee incurred the necessary expenditures at the same rate as judgments in civil actions in the state of California.

164.   Plaintiffs McNeely and Brennan, on behalf of themselves and other current or former pharmacy employees who comprise the Classes, also request further relief as described in the below prayer.

## NINTH CAUSE OF ACTION

**(By Plaintiffs Chalian, McNeely, and Brennan Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

### UNFAIR BUSINESS PRACTICES

**[Bus. & Prof. Code §§ 17200 *et seq*.]**

165.   As a separate and distinct cause of action, Plaintiffs reallege and incorporate by reference, as though fully set forth herein, all the allegations contained in the preceding paragraphs of this SAC, excepting those allegations which are inconsistent with this cause of action.

166.   As codified in Bus. & Prof. Code §§ 17200 *et seq.*, California's Unfair Competition Law ("UCL") broadly prohibits "any unlawful, unfair or fraudulent business act or practice."

167.   The UCL permits a cause of action to be brought if a practice violates some other law.  In effect, the "unlawful" prong of the UCL makes a violation of the underlying law a per se violation of Bus. & Prof. Code § 17200.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180. Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for a § 17200 "unlawful" violation. *Farmers Ins. Exch. v. Superior Court* (1992) 2 Cal.4th 377, 383.

168.   Under the UCL, a practice may be "unfair" even if some other law does not specifically proscribe it. *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 20

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

Cal.4th 1134, 1143 [internal citations omitted]. Pursuant to the California Supreme Court, the "unfair" standard is intentionally broad to allow courts maximum discretion in prohibiting new schemes to defraud. *Cel-Tech Commc'ns, Inc., supra*, 20 Cal.4th at 180-181.

169.   A business act or practice is deemed "fraudulent" under Bus. & Prof. Code § 17200 where "members of the public are likely to be deceived." *Blakemore v. Superior Court*, (2005) 129 Cal.App.4th 36, 49. A showing of actual deception, reasonable reliance, or damages is not required. *Id*. The fraudulent prong may be used to attack the deceptive manner in which otherwise lawful contract terms are presented to an individual. *Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253. As such, even a true statement may be unlawful under § 17200 if it is "couched in such a manner that is likely to mislead or deceive…, such as by failing to disclose other relevant information." *Id*.

170.   As discussed herein, CVS's business practices violate all three prongs of California's UCL.

<u>Unlawful</u>

171.   As described herein, CVS violated the Labor Code by refusing to properly compensate pharmacy employees for all time worked, including where Plaintiffs and other pharmacy employees worked 7 or more consecutive days in a workweek  and permitting, encouraging, and/or requiring Plaintiffs and other pharmacy employees to work 7 or more days in a workweek without paying them premium compensation as required by California's laws and regulations. Failure to compensate pharmacy employees for all time worked is a clear violation of California law, and thus a per se violation of the UCL. *Cel-Tech Commc'ns, Inc., supra*, 20 Cal.4th at 180. Additionally, CVS failed to compensate pharmacy employees for non-compliant meal and rest periods as provided by California law. CVS's failure to promptly pay wages owed upon termination, failure to furnish accurate wage statements, failure to reimburse for necessary business expenses, as

EXHIBIT "8"

well as failing to maintain accurate records are also violations of California law. CVS has therefore engaged in unlawful business practices pursuant to Bus. & Prof. Code § 17200.

<u>Unfair</u>

172. CVS's practice of minimizing available work hours and staff, as well as requiring pharmacy employees to work off the clock is an inherently unfair practice because it knowingly prohibits pharmacy employees from being compensated for all hours worked.

173. CVS's practice of failing to provide off-duty meal and rest periods to its pharmacy employees, is an unfair practice because it knowingly strips pharmacy employees of the rights and protections afforded to them by the Labor Code.

174. CVS's practice of failing to pay prompt wages upon termination, failing to provide itemized and accurate wage statements, and failing to reimburse for necessary business expenses are also unfair practices because such practices are contrary to the Labor Code, as well as unethical.

<u>Fraudulent</u>

175. CVS's practice of providing Plaintiffs Chalian, McNeely, and Brennan and pharmacy employees with inaccurate and incomplete wage statements is not only unlawful but constitutes a fraudulent business practice under the UCL. This is particularly true as Plaintiffs Chalian, McNeely, and Brennan and other pharmacy employees are likely to be, and actually are deceived as to their earned wages because they are unable to determine from their wage statements whether or not they were paid for all work performed.

176. CVS's practice of failing to maintain accurate records is also a fraudulent business practice because the lack of records intentionally misled Plaintiffs Chalian, McNeely, and Brennan and other pharmacy employees as to their total hours worked and total wages earned.

///

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

177.   As a direct and proximate result of CVS's unlawful, unfair, and fraudulent business practices, Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees have suffered injury-in-fact and have lost wages rightfully owed to them.

178.   Through their unlawful, unfair, and fraudulent conduct, CVS has been unjustly enriched by receiving and continuing to receive benefits and profits at the expense of pharmacy employees. Therefore, pursuant to Bus. & Prof. Code § 17200, CVS should be enjoined from this activity and made to disgorge all ill-gotten gains and restore Plaintiffs Chalian, McNeely, and Brennan and other current or former pharmacy employees the wages wrongfully withheld from them.

179.   The unlawful, unfair, and fraudulent conduct alleged herein has continued, and there is no indication that CVS will refrain from such activity in the future. This is especially true since CVS has purposefully created an atmosphere that deters the accurate reporting of work time. Plaintiffs Chalian, McNeely, and Brennan believe and alleges that if CVS is not enjoined from the conduct described herein, they will continue to violate California law at the expense of its pharmacy employees.  Accordingly, Plaintiffs Chalian, McNeely, and Brennan request that the Court issue a preliminary and permanent injunction against CVS.

180.   Plaintiffs Chalian, McNeely, and Brennan, on behalf of themselves and other current or former pharmacy employees who comprise the Classes, also request further relief as described in the below prayer.

## TENTH CAUSE OF ACTION

### (By Plaintiffs Cabrera and Telahun in their Representative Capacity against Defendants and Does 1-10)

### PRIVATE ATTORNEY GENERAL ACT OF 2004

### (Labor Code §§ 2698 *et seq.*)

181.   As a separate and distinct cause of action, Plaintiffs reallege and incorporate by reference, as though fully set forth herein, all the allegations

42

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

1    contained in the preceding paragraphs of this SAC, excepting those allegations

2    which are inconsistent with this cause of action.

3        182.   The Private Attorneys General Act of 2004 ("PAGA") expressly

4    provides that any provision of the Labor Code allowing for a civil penalty to be

5    assessed and collected by the Labor and Workforce Development Agency

6    ("LWDA"), or any of its departments, division, commissions, boards, agencies, or

7    employees, for a violation of the Labor Code may be recovered through a civil

8    action brought by an aggrieved employee on behalf of himself or herself, and other

9    current or former employees. These civil penalties are in addition to any other relief

10   available under the Labor Code, and pursuant to Labor Code § 2699(i), must be

11   allocated seventy-five percent (75%) to the LWDA and twenty-five percent (25%) to

12   the aggrieved employees.

13       183.   During all, or a portion of, the one-year period before Plaintiffs Cabrera

14   and Telahun filed notice of their claims with the LWDA. Plaintiffs Cabrera and

15   Telahun and each of the other current or former employees they represent were

16   employed by Defendants in the state of California.

17       184.   Plaintiff Cabrera, Plaintiff Telahun and other current or former

18   pharmacy employees are "aggrieved employees" under PAGA, as they were

19   employed by Defendants within the past year and suffered one or more violations of

20   the Labor Code.

21       185.   Plaintiffs Cabrera and Telahun have complied with the notice

22   requirements outlined in Labor Code § 2699.3. On June 22, 2016, Plaintiff Cabrera

23   submitted notice to the LWDA and Defendants informing them of CVS's alleged

24   Labor Code violations pursuant to PAGA. *See* Exhibit 1. The LWDA had until

25   August 28, 2017 to provide notice of whether it intended to investigate the alleged

26   violations. As of the date of this SAC, the LWDA has not provided notice of

27   whether it intends to investigate the alleged violations. Therefore, pursuant to Labor

28

EXHIBIT "8"

Code § 2699.3, Plaintiff Cabrera has the right to, and does seek to pursue his claims under PAGA in a representative capacity.

186.   On August 22, 2017, Plaintiffs Cabrerea and Telahun submitted an amended notice which included Mr. Telahun as an additional representative and included additional facts and theories to support the alleged Labor Code violations, to the LWDA. *See* Exhibit 2. The LWDA has 65 days from the date of submission to notify the parties whether it intends to investigate. As of the date of this SAC, the LWDA has not provided notice of whether it intends to investigate the alleged violations.  Therefore, pursuant to Labor Code § 2699.3, Plaintiffs Cabrera and Telahun have the right to, and do seek to pursue their claims under PAGA in a representative capacity.

187.   As set forth herein, CVS has committed, and continues to commit, numerous violations for which the Labor Code entitles Plaintiffs Cabrera and Telahun, in their representative capacity, to recover, on behalf of themselves and all other current or former employees, and the general public, attorneys' fees and costs, as well as statutory penalties against CVS for its Labor Code violations.

188.   Plaintiffs Cabrera and Telahun, in their representative capacity, seek to recover civil penalties pursuant to PAGA for violations of the following Labor Code provisions for the reasons described herein:

> (a) Failure to pay minimum wages and overtime compensation in violation of Labor Code §§ 204, 510, 1194, 1197, 1197.1, and 1198 and relevant IWC Wage Orders;
>
> (b) Failure to provide legally compliant meal periods or compensation in lieu thereof in violation of Labor Code §§ 226.7 and 512 and relevant IWC Wage Orders;
>
> (c) Failure to provide legally compliant rest periods or compensation in lieu thereof in violation of Labor Code § 226.7 and relevant IWC Wage Orders;

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

(d)     Failure to pay wages owed in violation of Labor Code §§ 201 – 203;

(e)     Failure to provide one day's rest in seven days of work (Labor Code §§ 551 and 552);

(f)     Failure to limit working hours of pharmacy employees (Labor Code §§ 850-851);

(g)     Failure to limit work for pharmacy employees to an average of nine hours in a day, in violation of Labor Code §§ 550-551;

(h)     Failure to furnish accurate itemized wage statements in violation of Labor Code §§ 226 and 226.3, 246, 247.5 and relevant IWC Wage Orders;

(i)     Failure to comply with Labor Code § 246 with respect to notice of paid sick leave;

(j)     Failure to maintain accurate records in violation of Labor Code §§ 226, 226.3, 247.5, and 1174 and relevant IWC Wage Orders;

(k)     Failure to reimburse for necessary work expenses in violation of Labor Code §§ 2800 and 2802.

189.   Labor Code § 226.3 imposes a civil penalty of $250 per pharmacy employee per violation and $1,000 per pharmacy employee for each subsequent violation of Labor Code § 226(a).  Therefore, Plaintiff Cabrera, Plaintiff Telahun and other current or former employees are entitled to and seek the described civil penalty.

190.   Labor Code § 2699(f) imposes a civil penalty of $100 per pay period, per pharmacy employee for initial violation, and $200 per pay period, per pharmacy employee for each subsequent violation for all Labor Code provisions for which a civil penalty is not specifically provided, including Labor Code §§ 201, 202, 203 204, 216, 226, 226.3, 226.7, 246(i), 510, 512, 551, 552, 850, 851,1174, 1194, 1197, 1197.1, 1198, 2800, 2802, and 2698, et seq. Plaintiff Cabrera, Plaintiff Telahun and

other current or former employees are entitled to, and therefore seek the above described civil penalty.

191.  Lastly, Labor Code § 2699(g)(1) provides that an employee who prevails in a civil action brought pursuant to PAGA shall be entitled to an award of reasonable attorneys' fees and costs. As such, Plaintiff Cabrera and Plaintiff Telahun are entitled to and therefore seeks attorneys' fees and costs.

192.  Plaintiffs Cabrera and Telahun, in their representative capacity, request further relief as described in the below prayer.

## **PRAYER FOR RELIEF**

Plaintiffs, in their respective capacities, pray for judgment against Defendants as follows:

1.  For an order determining that this action may be maintained as a class action with Plaintiffs Chalian, McNeely, and Brennan as the class representatives;

2.  For all attorneys appearing on the above caption to be named class counsel;

3.  For an order determining that this action may be maintained as a representative action with Plaintiffs Cabrera and Telahun as the representatives;

4.  For all minimum wages and overtime compensation owed pursuant to Labor Code §§ 510, 1194, 1197.1, and/or other applicable law;

5.  For premium wages, pursuant to Labor Code § 226.7 and/or other applicable law;

6.  For waiting time penalties pursuant to Labor Code § 203 and/or other applicable law;

7.  For damages, pursuant to Labor Code § 226 and/or other applicable law;

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

8.  For unreimbursed business expenses, pursuant to Labor Code §§ 2800 and 2802 and/or other applicable law;

9.  For all liquidated damages, pursuant to Labor Code §§ 1194.2(a), 1197.1, and/or other applicable law;

10. For civil penalties, pursuant to Labor Code §§ 226.3, 558, 1197.1, and/or other applicable law;

11. For statutory penalties, pursuant to Labor Code § 226(e) and/or other applicable law;

12. For PAGA civil penalties pursuant to Labor Code §§ 2698 *et seq.*;

13. For injunctive relief, pursuant to Labor Code § 266(h), Bus. & Prof. Code § 17203, and/or other applicable law;

14. For restitution for Defendants' unfair, unlawful, and fraudulent business practices;

15. For reasonable attorneys' fees and costs of suit pursuant to Labor Code §§ 226(e)(1), 2699(g), 1194, and/or other applicable law;

16. For pre-judgment and post-judgment interest as provided by California law;

17. For appropriate equitable relief; and

///

///

///

///

///

47

CONSOLIDATED SECOND AMENDED COMPLAINT

EXHIBIT "8"

18. For all such other and further relief, the Court may deem just and proper.

DATED: June 3, 2020

**ALEXANDER KRAKOW + GLICK LLP**
**BOYAMIAN LAW, INC.**
**CLARK LAW GROUP**
**LAW OFFICES OF THOMAS W. FALVEY**
**UNITED EMPLOYEES LAW GROUP**


By: _____
Michael S. Morrison
Michael H. Boyamian
Armand R. Kizirian
R. Craig Clark
Thomas W. Falvey
Walter Haines
Attorneys for Plaintiffs SEVAG
CHALIAN, SIGFREDO CABRERA,
ENKO TELAHUN, CHRISTINE
MCNEELY, and PATRICK BRENNAN
and the Proposed Class

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: June 3, 2020

**ALEXANDER KRAKOW + GLICK LLP**
**BOYAMIAN LAW, INC.**
**CLARK LAW GROUP**
**LAW OFFICES OF THOMAS W. FALVEY**
**UNITED EMPLOYEES LAW GROUP**


By: _____

Michael S. Morrison
Michael H. Boyamian
Armand R. Kizirian
R. Craig Clark
Thomas W. Falvey
Walter Haines
Attorneys for Plaintiffs SEVAG
CHALIAN, SIGFREDO CABRERA,
ENKO TELAHUN, CHRISTINE
MCNEELY, and PATRICK BRENNAN
and the Proposed Class

CONSOLIDATED SECOND AMENDED COMPLAINT
EXHIBIT "8"

**EXHIBIT 9**

BETH A. GUNN, CA Bar No. 218889
beth@gunncoble.com
CATHERINE J. COBLE, CA Bar No. 223461
cathy@gunncoble.com
DAVID Z. FEINGOLD, CA Bar No. 280194
dfeingold@gunncoble.com
GUNN COBLE LLP
101 S. 1st Street, Suite 407
Burbank, CA 91502
Telephone:     818.900.0695
Facsimile:     818.900.0723

Attorneys for Plaintiff
RYAN HYAMS

JENNIFER B. ZARGAROF, CA BAR NO. 204382
jzargarof@sidley.com
SONIA A. VUCETIC, CA BAR NO. 307414
svucetic@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
LOS ANGELES, CA 90013
Telephone:  213.896.6058
Facsimile:  213.896.6600

Attorneys For Defendants
CVS HEALTH CORPORATION; CVS PHARMACY, INC.
GARFIELD BEACH CVS, L.L.C.; CVS RX SERVICES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN HYAMS, an individual, on behalf of himself, and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CVS HEALTH CORPORATION, a Rhode Island Corporation, CVS PHARMACY, INC., a Rhode Island Corporation, GARFIELD BEACH CVS, LLC, a California Corporation, and CVS RX SERVICES, INC., a New York Corporation, DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 3:18-cv-06278-HSG<br><br>CLASS ACTION<br><br>[Assigned For All Purposes To Hon. Haywood S. Gilliam, Jr.]<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Dept.:     Courtroom 2<br>Date:      January 15, 2019<br>Time:      2:00 p.m.<br><br>**State Court Action Filed:   August 21, 2018**<br>**Trial Date:                None Set** |

1

EXHIBIT "9"

**TO THE HONORABLE COURT**:

Plaintiff RYAN HYAMS, on behalf of himself, and all others similarly situated ("Plaintiff"), and Defendants CVS HEALTH CORPORATION, CVS PHARMACY, INC., GARFIELD BEACH CVS, LLC, and CVS RX SERVICES, INC., ("Defendants") (hereinafter collectively referred to as the "Parties"), by and through their counsel of record, hereby submit this Joint Case Management Statement pursuant to the Federal Rules of Civil Procedure, Civil Local Rules, and General Orders of the Northern District of California in anticipation of the initial status conference currently scheduled for January 15, 2019 at 2:00 p.m. in Courtroom 2 on the 4th Floor of the United States District Courthouse, Northern District of California, located at 1301 Clay Street, Oakland, California.

The Parties hereby state as follows:

1. <u>Jurisdiction and Service</u>:  Plaintiff filed this action in the Superior Court of the State of California, County of San Francisco on August 21, 2018.  On September 7, 2018, the complaint was amended to include a cause of action for civil penalties pursuant to the California Private Attorneys General Act ("PAGA").  On October 12, 2018, Defendants removed the action to the United States District Court, Northern District of California under the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1453.  All parties have been served, and there are no issues regarding personal jurisdiction or venue.

2. <u>Facts</u>:

a. PLAINTIFF:  This case seeks penalties under PAGA, based on Defendants' routine scheduling of Plaintiff and other current and former non-exempt pharmacy employees in California in excess of the prescribed time limitations set forth in Labor Code sections 850 and 851. Plaintiff also alleges Defendants failed to provide him and other current and former employees in California: (1) notice of their paid sick leave balance, in violation of Labor Code section 246(i); (2) reimbursement for the use of their personal cellular telephones for work purposes, in violation of Labor Code section 2802; and (3) one day's rest in seven, in violation of Labor Code sections 551, 552, and 852.  Plaintiff further alleges he and other current and former non-exempt employees of Defendants in California routinely: were not provided meal periods or authorized and permitted to take rest breaks, and were not compensated for the same, including the payment of penalties for such

2

EXHIBIT "9"

meal period and/or rest break violations; were required to work off-the-clock, but were not compensated for such time; were not properly paid all overtime at the applicable regular rate of pay; were not paid all wages owed at the time of separation; were not timely paid all wages owed each month; and received inaccurate wage statements and did not have accurate timekeeping records.

        b.    DEFENDANTS:  Defendants deny liability in this matter, and deny that Plaintiff or any of Defendants' pharmacists were aggrieved in a manner that warrants the imposition of penalties under the Private Attorneys General Act.  Defendants further contend that this case is not suitable for class treatment because, *inter alia*, common questions of law and fact do not predominate over individual issues.  Defendants further contend that this case is not suitable as a PAGA representative action because, *inter alia*, individualized issues will make the case unmanageable.

        3.    <u>Legal Issues</u>:

        The parties agree that the threshold legal issues in this matter are:  (1) whether Plaintiff's class-wide claims are suitable for class treatment; (2) whether Plaintiff and the putative class were unlawfully denied minimum wages and overtime compensation for off-the-clock work; (3) whether Plaintiff and the putative class were denied compliant meal periods and rest breaks, or compensation in lieu thereof; (4) Plaintiff and the putative class were provided with compliant wage statements; (5) whether Plaintiff and the putative class were reimbursed for work-related expenses; (6) whether Plaintiff and the putative class timely received all wages owed each month and at the time of separation of employment; (7) whether Plaintiff and the putative class received adequate written notice of their paid sick leave balance; (8) whether Plaintiff and the putative class worked without receiving one day's rest in seven; and (9) whether Plaintiff and the putative class worked in excess of the prescribed time limitations set forth in Labor Code sections 850 and 851.

        Defendants also believe that there is a threshold legal issue as to whether Plaintiff's PAGA claims are suitable for representative treatment; Plaintiff disagrees, as PAGA does not contain procedural requirements to determine suitability for representative actions to proceed. *See Arias v. Sup. Ct.,* 46 Cal.4th 969 (2009) (holding that class certification requirements do

3

EXHIBIT "9"

1    not need to be met for representative actions brought under PAGA).

2        In addition, Defendants intend to argue that their arbitration agreement program

3    requires some members of the putative class to arbitrate their claims on the basis that the

4    arbitration agreement contains a class action waiver.  Plaintiff contends that he was not bound

5    by an arbitration agreement, and Defendants have not provided evidence to the contrary.

6    Plaintiff anticipates that the applicability of any class action waivers will be decided as part of

7    the class certification motion, as Defendants lack standing to bring a motion to compel

8    arbitration.

9        In addition, Defendants argue that neither CVS Health Corporation nor CVS Pharmacy,

10   Inc. is properly named as a Defendant because neither employ pharmacists or any other non-

11   exempt CVS store employees as alleged in the Complaint.  Plaintiff maintains that Defendants

12   were joint employers.

13       4.    Motions:

14       The Parties have not filed any motions in this action to date.  The Parties will bring *in limine*

15   motions per code as appropriate and Plaintiff anticipates filing a motion for class certification and

16   potentially a motion for summary judgment.

17       Defendants anticipate filing an Opposition to Plaintiff's Motion for Class Certification and

18   potentially a motion for summary judgment.  Defendants also anticipate seeking a ruling from the

19   Court on the issue of whether a PAGA case may proceed as a representative action here, and if so,

20   as to what group of employees and as to what claims, by way of a motion to strike representative

21   allegations, briefing on Plaintiff's proposed trial plan, or other procedural mechanism agreed upon

22   by the parties or ordered by the Court.  Plaintiff disputes Defendants' procedural basis for filing a

23   motion seeking a ruling as to whether a PAGA case may proceed as a representative action because

24   the class certification criteria do not apply.  *See Arias v. Sup. Ct.,* 46 Cal.4th 969 (2009).

25       5.    Amendment of Pleadings: The Parties do not presently believe they will amend

26   the pleadings in this action but propose a deadline of March 30, 2019 for doing so.

27       6.    Evidence Preservation: The Parties confirm they have taken all appropriate steps

28   to preserve evidence relevant to the issues in this case, including taking steps to prevent the

EXHIBIT "9"

loss or destruction of potentially relevant evidence and reviewing the Guidelines Relating to the Discovery of Electronically Stored Information. Additionally, the Parties have discussed a potential stipulated e-discovery order, but have determined that such an order is unnecessary at this time.

7.   <u>Disclosures</u>: The Parties have agreed to exchange initial disclosures pursuant to Fed. R. Civ. P. 26 by January 29, 2019.

8.   <u>Discovery</u>:

Plaintiff anticipates seeking discovery necessary to establish grounds for class certification and liability on each of the causes of action alleged in the First Amended Complaint. Defendants, who have propounded requests for production of documents, anticipate seeking discovery to establish whether Plaintiff can proceed with his case as a class action and/or representative action pursuant to Labor Code section 2699 (PAGA). Defendants have also noticed Plaintiff's deposition for January 31, 2019.

At this time, the parties do not propose any limitations or modifications of the discovery rules and will meet and confer in good faith as to any issues that arise, including as to the propriety of certain discovery prior to a ruling on class certification or representative status. The parties do not currently anticipate any issues about claims of privilege or of protection as trial-preparation materials.

The parties propose the following phased discovery plan:

a.   The parties anticipate that they will assess the possibility of early resolution of this matter following the exchange of some initial formal and/or informal discovery to take place over a 60-90 day period. If the parties agree to mediate this matter, they anticipate that it will take approximately another 60-90 days – or until approximately July 31, 2019 – to secure a mediation date with a mutually-agreeable mediator.

b.   If by, approximately April 30, 2019, the parties have not agreed to attempt to resolve this matter, the parties anticipate a substantial amount of discovery to be produced and reviewed in this matter related to class certification, including records and testimony related to timekeeping, scheduling, and payroll for thousands of employees over more than a four-year period. The parties

currently estimate that this process will take approximately ten months following the phase of early resolution assessment, or until approximately January 31, 2020. The parties propose that the Court set a class certification motion briefing schedule following this anticipated discovery period, with a class certification filing date of March 15, 2020. The parties further propose that the Court set a further case management conference to schedule merits-based discovery deadlines and trial dates following the ruling on the class certification motion. Counsel for the parties have reviewed the Procedural Guidance for Class Action Settlements.

8.   Plaintiff provides the following additional information related to the maintenance of a class action:

a.   Plaintiff intends to move for class certification under Fed. R. Civ. P. 23(a), (b)(1), and (b)(3).

b.   Plaintiff describes the class and subclasses on whose behalf the action is brought as follows:

i.   The CLASS: All current and former employees of DEFENDANTS in the State of California at any time within the period beginning four (4) years prior to the filing of this action and ending at the time this action settles or proceeds to final judgment (the "CLASS PERIOD").

ii.   "NON-EXEMPT EMPLOYEE SUBCLASS:" All current and former non-exempt employees of DEFENDANTS in the State of California at any time within the CLASS PERIOD.

iii.   "PHARMACY EMPLOYEE SUBCLASS:" All current and former employees of DEFENDANTS in the State of California at any time within the CLASS PERIOD who were employed to sell at retail drugs and medicines or to compound physicians' prescriptions.

iv.   "FORMER EMPLOYEE SUBCLASS:" All former employees of DEFENDANTS in the State of California at any time within the CLASS PERIOD.

v.   "BUSINESS EXPENSE SUBCLASS:" All current and former employees of DEFENDANTS in the State of California at any time within the CLASS PERIOD who used personal cell phones for work-related purposes without adequate reimbursement.

6

EXHIBIT "9"

vi.   "VACATION PAY SUBCLASS:" All current and former employees of DEFENDANTS in the State of California at any time within the CLASS PERIOD who were not provided all vacation time, or wages in lieu thereof, in compliance with California law.

c.   The following facts show that Plaintiff is entitled to maintain the action under Fed. R. Civ. P. 23(a) and (b);

i.   Defendants' Notice of Removal states that the proposed class is numerous, in that it contains over 5,800 members.  *See* Notice of Removal, Dkt. 1.

ii.   Common questions of law or fact exist, as class members were subject to the same policies, practices and conduct that resulted in the wage-and-hour violations alleged in the First Amended Complaint.  *See* FAC ¶¶ 28, 33-41.  Such common questions predominate over any questions affecting individual class members.

iii.   Plaintiff's claims are typical of the class' claims, since Plaintiff was employed as a non-exempt Pharmacist for Defendants during the class period, and was subject to the same policies and practices as the class.

iv.   Plaintiff and his counsel will represent the class fairly and adequately.

v.   Prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members.

d.   As set forth above, the parties propose that the Court set a briefing schedule for Plaintiff's motion for class certification, and further request that the class certification motion be filed on March 15, 2020; Defendants' opposition be filed on May 15, 2020; and Plaintiff's reply be filed on June 26, 2020, with a hearing date of July 14, 2020.

9.   Related Cases: As set forth in their Notice of Related Cases, Defendants have indicated the following actions are related to this case:

a.   *Chalian, et al. v. CVS Pharmacy, et al.*, Case No. 2:16-cv-08979-AB-AGR, United States District Court, Central District.  This action is related in that: (1) the cases involve overlapping employees (non-exempt pharmacists) and Defendant entities; (2) are based on similar questions of law and fact, namely, claims related to off-the-clock work; and (3) brings claims under the California Labor Code as purported class claims.

7

JOINT CASE MANAGEMENT STATEMENT

EXHIBIT "9"

b.  *Cabrera, et al. v. CVS Pharmacy, et al.*, Case No. 17-cv-05803-WHA, United States District Court, Northern District.  This action is related in that: (1) the cases are putative wage and hour class or representative/PAGA actions involving overlapping employees (non-exempt pharmacists) and Defendant entities; (2) are based on similar questions of law and fact, namely, claims related to off-the-clock work, meal periods, rest breaks and pay stubs; and (3) bring claims under PAGA as well as putative class claims under the California Labor Code.

c.  *Kang v. CVS Pharmacy, et al.*, Case No. BC702290, Los Angeles Superior Court.  This action is related in that: (1) the cases involve overlapping employees (non-exempt pharmacists) and Defendant entities; (2) are based on similar questions of law and fact, namely, claims related to off-the-clock work, meal periods, rest breaks and pay stubs; and (3) bring claims for penalties under PAGA.

Plaintiff does not agree the above cases are related to this case.  First, this case is the only one that involves claims for failure to adhere to the time limitations set forth in Labor Code sections 850 and 851 (with respect to current and former pharmacy employees), failure to provide adequate notice of paid sick leave, failure to adhere to the time limitations set forth in Labor Code sections 850 and 851 (with respect to current and former pharmacy employees), and failure to provide one day's rest in seven.  Second, although the *Cabrera* action contains a reimbursement claim under Labor Code section 2802, the factual basis for that claim differs from Plaintiff's reimbursement claim.  Neither of the other cases Defendants identified contains a reimbursement claim.  Third, the cases above each limit the scope of their putative classes to current and former pharmacy employees.  In contrast, Plaintiff seeks to represent *all* current and former employees in California with respect to his reimbursement claim, and seeks to represent *all* current and former non-exempt employees in California with respect to his claims concerning meal period and rest breaks premiums, unpaid minimum wages and overtime, waiting time penalties, untimely pay each month, Defendants' failure to maintain required records, and Defendants' failure to furnish accurate itemized wage statements.  Thus, this case is far broader than those Defendants have identified above, and does not meet the Northern District's definition for related cases.

JOINT CASE MANAGEMENT STATEMENT

EXHIBIT "9"

10. <u>Relief</u>:

   a. PLAINTIFF: Plaintiff seeks unpaid wages, including overtime, premiums and statutory penalties as provided in the Labor Code and applicable Wage Order, restitution, injunctive relief and civil penalties, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs. Plaintiff does not currently have the information necessary to calculate the amount of damages sought in this action, but anticipates being able to do so once the parties have engaged in discovery.

   b. DEFENDANTS: Defendants seek the following relief: (1) that the First Amended Complaint be dismissed in its entirety; (2) that Plaintiff takes nothing by reason of his Complaint and that judgment be rendered in favor of Defendants; (3) that Plaintiff's request for injunctive relief be denied in its entirety; (4) that Plaintiff's request for monetary relief be denied in its entirety; (5) that Plaintiff's request for civil penalties be denied in its entirety; (6) that Plaintiff's request for attorneys' fees and costs be denied in its entirety; (7) and that Defendants be awarded their costs of suit and attorneys' fees incurred in defense of this action.

11. <u>Settlement and ADR</u>: As set forth above, the Parties anticipate a preliminary phase of determining whether this matter is appropriate for private resolution, to conclude by April 30, 2019. If so, the Parties anticipate engaging in private mediation by July 31, 2019.

12. <u>Consent to Magistrate Judge For All Purposes</u>: Plaintiff does not consent to have a magistrate judge conduct any proceedings in this matter.

13. <u>Other References</u>: The Parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

14. <u>Narrowing of Issues</u>: With the exception of the anticipated class certification motion and Defendants' proposed briefing related to whether a PAGA case may proceed as a representative action, the parties currently do not believe the issues in this case can be narrowed by agreement or by motion. Other than phased discovery, and the class certification procedures, the parties do not request bifurcation of the issues, claims, or defenses at trial. Defendants will further assess whether, and to what extent, individual and/or class releases impact the scope of this action. <u>Expedited Trial Procedure</u>: The parties do not believe this case is appropriate for

9

EXHIBIT "9"

1   Expedited Trial Procedure under General Order No. 64, Attachment A.

2       15.   <u>Scheduling</u>:  The parties propose that the Court set dates for designation of

3   experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial after the

4   class certification hearing.

5       16.   <u>Trial</u>:  Plaintiff requested a jury trial. The parties expect trial to last 7-10 days.

6       17.   <u>Disclosure of Non-party Interested Entities or Persons</u>:  Plaintiff filed a

7   Certification of Interested Entities or Persons on January 8, 2019.  Plaintiff hereby recertifies

8   that as of this date, other than the named parties and Plaintiff's counsel, there is no such interest

9   to report.   Defendants filed a Certification of Interested Parties on October 12, 2018.

10  Defendants hereby recertify that as of this date, other than the named parties, there is no such

11  interest to report.

12      18.   <u>Professional Conduct</u>:  Counsel for the parties have reviewed the Guidelines for

13  Professional Conduct for the Northern District of California.

14      19.   At this time, the parties have not identified any other matters that may facilitate

15  the just, speedy and inexpensive disposition of this matter.

16

17  DATED:  January 8, 2019          GUNN COBLE LLP

18

19

20                                   By: <u>/s/ Beth A. Gunn</u>
                                         Beth A. Gunn
21                                       Catherine J. Coble
                                         David Z. Feingold
22
                                     Attorneys for Plaintiff RYAN HYAMS,
23                                   on behalf of himself, and all others similarly
                                     situated
24

25

26

27

28

10

EXHIBIT "9"

DATED:  January 8, 2019

SIDLEY AUSTIN LLP


By: /s/ Jennifer B. Zargarof
    Jennifer B. Zargarof
    Sonia A. Vucetic

    Attorneys for Defendants
    CVS HEALTH CORPORATION;
    CVS PHARMACY, INC.
    GARFIELD BEACH CVS, L.L.C.;
    CVS RX SERVICES, INC.

JOINT CASE MANAGEMENT STATEMENT

EXHIBIT "9"

**EXHIBIT 10**

1  R. Craig Clark (CA SBN 129219)
   cclark@clarklawyers.com
2  Monique R. Rodriguez (CA SBN 304223)
   mrodriguez@clarklawyers.com
3  **CLARK LAW GROUP**
   3258 Fourth Avenue
4  San Diego, CA 92103
   Telephone: (619) 239-1321
5  Facsimile: (888) 273-4554
   *Attorneys for Plaintiffs*
6  [Additional counsel on following page]

7  James N. Boudreau (PA SBN 77891)
   boudreauj@gtlaw.com
8  Christiana Signs (PA SBN 317851)
   signsc@gtlaw.com
9  **GREENBERG TRAURIG, LLP**
   2727 Arch Street, Suite 400
10 Philadelphia, PA 19103
   Telephone: (215) 988-7800
11 Facsimile: (215). 717-5232
   *Attorneys for Defendants*
12 [Additional counsel on following page]

13

14              **UNITED STATES DISTRICT COURT**

15    **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

16 SIGFREDO CABRERA, ENKO          CASE NO.: 3:17-CV-05803-WHA
   TELAHUN, AND CHRISTINE
17 MCNEELY, as individuals, on behalf of   [Assigned to Hon. William H. Alsup, Courtroom
   themselves, and all other persons similarly   12]
18 situated,
                                    **JOINT STIPULATION TO TRANSFER**
19                   Plaintiffs,    **VENUE TO THE CENTRAL DISTRICT OF**
                                    **CALIFORNIA AND TO CONSOLIDATE**
20          v.                      **THE *CABRERA* ACTION WITH *CHALIAN***
                                    **ACTION; AND [PROPOSED] ORDER**
21                                  **THEREON**
   CVS RX SERVICES, INC., a New York
22 corporation, CVS PHARMACY, INC., a
   Rhode Island corporation; GARFIELD
23 BEACH CVS, LLC, a California limited
   liability company; and DOES 1 to 10
24 inclusive,

25                   Defendants.

26

27

28
                                      1
   JOINT STIPULATION TO TRANSFER VENUE AND TO CONSOLIDATE WITH THE
      *CHALIAN* ACTION AND [PROPOSED] ORDER THEREON
                              EXHIBIT "10"

1   **ADDITIONAL COUNSEL:**

2   Walter Haines (CA SBN 071075)
    **UNITED EMPLOYEES LAW GROUP**
3   5500 Bolsa Avenue, Suite 201
    Huntington Beach, CA 92649
4   Telephone: (562) 256-1047
    Facsimile:  (562) 256-4554
5   *Attorneys for Plaintiffs*

6   Tyler R. Andrews (CA SBN 250686)
    andrewst@gtlaw.com
7   **GREENBERG TRAURIG, LLP**
    3161 Michelson Drive, Suite 1000
8   Irvine, CA 92612
    Telephone: (949) 732-6500
9   Facsimile:  (949) 732-6501
    *Attorneys for Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION TO TRANSFER VENUE AND TO CONSOLIDATE WITH THE
*CHALIAN* ACTION AND [PROPOSED] ORDER THEREON
EXHIBIT "10"

Plaintiffs Sigfredo Cabrera, Enko Telahun, and Christine McNeely (collectively, "Plaintiffs") and Defendants CVS Rx Services, Inc., CVS Pharmacy, Inc., and Garfield Beach CVS, LLC (together, "Defendants") stipulate to the following and request the Court enter an order as follows:

WHEREAS, on July 20, 2016, the plaintiff in another matter filed *Sevag Chalian et al. v. CVS Pharmacy, Inc., et al.*, case number 2:16-cv-08979-AB-AGR in the United States District Court, Central District of California ("*Chalian* Action").

WHEREAS, on August 3, 2017, Plaintiff Sigfredo Cabrera filed *Sigfredo Cabrera et al. v. CVS Rx Services, Inc. et al.*, case number 3:17-cv-05803-WHA in the United States District Court, Northern District of California ("*Cabrera* Action").

WHEREAS, the parties have agreed to resolve all claims raised in the *Chalian* Action and the *Cabrera* Action.

WHEREAS, the parties agree that it is in the best interest of all parties and the Court to transfer the *Cabrera* Action to the United States District Court, Central District of California ("Central District") under 28 U.S.C. § 1404. Transferring the *Cabrera* Action to the Central District and consolidating the *Cabrera* Action with the first-filed *Chalian* Action will conserve juridical and private resources, promote efficiency, and is in the interest of justice and avoids the risk of inconsistent or conflicting rulings.

WHEREAS, the Central District is also an appropriate venue for the *Cabrera* Action because Defendants conduct business and have offices in the County of Los Angeles and because the first-filed *Chalian* Action is already pending in the Central District.

WHEREAS, the parties agree that it is in the interests of justice to consolidate the *Cabrera* Action with the *Chalian* Action in the Central District pursuant to Rule 42 of the Federal Rules of Civil Procedure to avoid unnecessary costs and delay.

IT IS HEREBY STIPULATED THAT:

1. The *Cabrera* Action is transferred to the United States District Court, Central District of California pursuant to 28 U.S.C. § 1404.

3

JOINT STIPULATION TO TRANSFER VENUE AND TO CONSOLIDATE WITH THE
*CHALIAN* ACTION AND [PROPOSED] ORDER THEREON

EXHIBIT "10"

2.   Upon transfer, the parties will move to consolidate the *Cabrera* Action with the first-filed *Chalian* Action pursuant to Rule 42 of the Federal Rules of Civil Procedure.

**IT IS SO STIPULATED.**

Dated: March 5, 2020                                   **CLARK LAW GROUP**

                                                    By:  _/s/ Monique R. Rodriguez___
                                                       R. Craig Clark
                                                       Monique R. Rodriguez
                                                       *Attorneys for Plaintiffs*

Dated: March 5, 2020                                   **GREENBERG TRAURIG, LLP**

                                                    By:  __/s/ James N. Boudreau___
                                                       James N. Boudreau
                                                       Christiana Signs
                                                       *Attorneys for Defendants*

## [PROPOSED] ORDER

Pursuant to stipulation of the parties and good cause appearing IT IS HEREBY ORDERED that:

1.   The *Cabrera* Action shall be transferred to the United States District Court, Central District of California pursuant to 28 U.S.C. § 1404.

2.   Upon transfer of the *Cabrera* Action, the parties shall move to consolidate the *Cabrera* Action with the *Chalian* Action.

**IT IS SO ORDERED.**

Dated: _____          _____
                                       Hon. William H. Alsup
                                       U.S. District Judge

JOINT STIPULATION TO TRANSFER VENUE AND TO CONSOLIDATE WITH THE *CHALIAN* ACTION AND [PROPOSED] ORDER THEREON

EXHIBIT "10"

# SIGNATURE CERTIFICATION

I, Monique R. Rodriguez, hereby certify that the contents of this document are acceptable to counsel for Defendants and that I have obtained counsel for Defendants' authorization to affix their electronic signature to this document.

Dated: March 5, 2020

**CLARK LAW GROUP**

By: _/s/ Monique R. Rodriguez__
R. Craig Clark
Monique R. Rodriguez
*Attorneys for Plaintiffs*

JOINT STIPULATION TO TRANSFER VENUE AND TO CONSOLIDATE WITH THE *CHALIAN* ACTION AND [PROPOSED] ORDER THEREON
EXHIBIT "10"

# CERTIFICATE OF SERVICE

I, Michael Morrison, an employee in the City of Los Angeles, certify that on June 19, 2020, caused a true and correct copies of the foregoing be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who has registered for receipt of documents filed in this matter:

> PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES;
>
> DECLARATION OF MICHAEL MORRISON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E) OF THE FEDERAL RULES OF CIVIL PROCEDURE;
>
> [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, SETTING OF A FINAL APPROVAL HEARING, AND APPROVAL OF NOTICE TO THE CLASS;
>
> JOINT STIPULATION TO EXTEND PAGE LIMIT FOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL;
>
> [PROPOSED] ORDER EXTENDING PAGE LIMIT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

## [SEE SERVICE LIST]

June 19, 2020                ALEXANDER KRAKOW + GLICK LLP


                             By:    s/ Michael Morrison
                                    MICHAEL MORRISON
                                    Attorneys for Plaintiff,
                                    Sevag Chalian

## SERVICE LIST

| *Counsel for Defendant:* | *Co-Counsel for Plaintiff:* |
|---|---|
| Tyler R. Andrews, Esq.<br>Roger L. Scott, Esq.<br>Christina Signs, Esq.<br>GREENBERG TRAURIG, LLP<br>3161 Michelson Drive, Suite 1000<br>Irvine, California 92162<br>Tel: 949 732 6500<br>Fax: 949 732 6501<br>Email: andrewst@gtlaw.com<br>scottro@gtlaw.com<br><br>R. Craig Clark, Esq.<br>The Clark Law Group<br>3258 Fourth Avenue<br>San Diego, California 92103<br>Tel: 619 239 1321<br>Fax: 888 273 4554<br>Email: cclark@clarklawyers.com<br>mrodriguez@clarklawyers.com | Michael H. Boyamian, Esq.<br>Armand R. Kizirian, Esq.<br>Boyamian Law, Inc.<br>550 N. Brand Blvd., Suite 1500<br>Glendale, California 91203<br>Tel: 818 547 52300<br>Fax: 818 547 5678<br><br>Thomas W. Falvey, Esq.<br>Law Offices of Thomas W. Falvey<br>550 N. Brand Blvd., Suite 1500<br>Glendale, California 91203<br>Tel: 818 547 5200<br>Fax: 818 500 9307 |