BETH A. GUNN, CA Bar No. 218889
beth@gunncoble.com
CATHERINE J. COBLE, CA Bar No. 223461
cathy@gunncoble.com
GUNN COBLE LLP
101 S. 1st Street, Suite 407
Burbank, CA 91502
Telephone:  818.900.0695
Facsimile:   818.900.0723

Attorneys for Plaintiffs-Intervenors
RYAN HYAMS and REGINE DUHON,
on behalf of themselves, and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,<br><br>　　　　　　Defendants. | CASE NO.: 2:16-cv-08979-AB-AGR<br>Assigned to Hon. Andre Birotte Jr.<br>*Related Case No.:*2:20-cv-02401-AB-AGR<br><br>**DECLARATION OF BETH GUNN IN SUPPORT OF PROPOSED INTERVENORS' OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(e) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>DATE:　July 10, 2020<br>TIME:　10:00 a.m.<br>PLACE:　350 West First Street<br>　　　　　Courtroom 7B<br>　　　　　Los Angeles, CA 90012<br><br>Complaint Filed: July 20, 2016<br>Action Removed: December 5, 2016 |

# DECLARATION OF BETH GUNN

I, Beth Gunn, declare as follows:

1. I am an attorney duly licensed to practice in this Court, and am counsel of record for the putative class and Plaintiffs-Proposed Intervenors Ryan Hyams and Regine Duhon ("Intervenors") in the separately pending action styled *Ryan Hyams, et al. v. CVS Health Corporation, et al.*, Northern District of California Case No. 4:18-cv-06278-HSG (the "*Hyams* action"). I have firsthand and personal knowledge of the facts set forth in this declaration, as well as information obtained from my law firm's documents, and publicly available court documents, and if called to testify regarding the facts set forth herein, I could and would do so competently and under oath.

2. The Defendants in this action, CVS Pharmacy, Inc., CVS RX Services, Inc., and Garfield Beach CVS, LLC (collectively, "Defendants" or "CVS"), are related entities of a large, Fortune 5 company that employs tens of thousands of employees in the State of California. CVS has been sued many times for violations of California's Labor Code and other employment laws, including wage-and-hour class actions such as those at issue here. However, CVS has successfully avoided the full consequences of many of these lawsuits by using its arbitration policy – which includes a class action waiver – to defeat them. At the same time, CVS selectively waives its own obligation to arbitrate disputes by attempting to persuade would-be class and PAGA representatives to settle claims on a class-wide basis for an extreme discount that, while undervaluing the claims and potential recovery of thousands of CVS employee/class members, provides a windfall for the plaintiffs' counsel and class representatives who otherwise would have severely limited recovery. I am aware of at least two instances where CVS used its class action arbitration waiver in this manner.

3. As part of litigating Proposed Intervenors' case since August 2018, my firm has conducted a substantial amount of discovery, including numerous FRCP 30(b)(6) depositions and, to date, has obtained over 8,700 pages of formally produced

documents, including large data sets. Proposed Intervenors needed to pursue this information vigorously, as Defendants did not produce substantial information until it was compelled via court orders. Even then, Defendants took over a year to produce information and sent discoverable documents in dribs and drabs, including informative documents withheld until the tail end of the process. I have spent an unusual amount of time sifting through Defendants' incomplete discovery responses, following up on promises to produce information and documents, flagging misleading information, and holding them accountable for complying with their discovery obligations. I have engaged in extensive meet and confer efforts and multiple appearances before the magistrate judge to compel Defendants' compliance with its discovery obligations. These efforts have taken up the majority of my work time for several months. As a result, Proposed Intervenors possess information that was not informally cherry-picked by Defendants, including information that conflicts with the information that Plaintiff Chalian has relied upon in evaluating the risks of litigation.

4. During the week of June 22-26, 2020, I reviewed my firm's files for this case, as they are maintained in the ordinary course and scope of our business, to confirm my understanding of the discovery conducted in the *Hyams* action to date. Based on my review of those files, as well as my own personal involvement in most of the discovery, I calculated that, on behalf of Intervenors, the California Labor and Workforce Development Agency ("LWDA") and the putative class/aggrieved employees we represent, my firm has propounded 40 interrogatories, 118 requests for production of documents, and 9 requests for admission. This discovery resulted in the production of key information pertaining to over 60,000 putative class members, and over 8,700 pages of documents, including relevant CVS policies and practices, training materials, and complete data sets (not sampling) of comprehensive scheduling, time punch, and pay data, that Plaintiffs will use to demonstrate grounds for class treatment, class-wide liability, and civil penalties under PAGA.

5. I, along with my partner, Cathy Coble, took multiple FRCP 30(b)(6)

depositions on approximately 40 topics at issue in the lawsuit, and Intervenors themselves appeared for one full day of deposition each. I also met and conferred with CVS' counsel to provide business organizational information and detailed information regarding training via signed declarations in lieu of conducting FRCP 30(b)(6) depositions on those topics. In addition, my firm's team has interviewed over 45 current and former retail pharmacy employees, from eight separate regions, who fall within the scope of the class defined in the proposed settlement, to ascertain the viability of the class claims and the evidence to support Intervenors' legal theories.

6. My firm has also retained the services of statistical analysis expert, Richard Drogin at Drogin, Kakigi & Associates, to process and analyze the vast amounts of data produced in this case. Mr. Drogin and his firm assisted us in preparing and populating a damages model for mediation, and in our efforts to prepare a comprehensive damages report (which, until June 24, was expected to be exchanged on June 30, 2020). Mr. Drogin has also provided a declaration in support of Intervenors' opposition to Plaintiff Chalian's Preliminary Approval Motion, setting forth many results of the work he has performed thus far, and which contains more specific potential damages information. Mr. Drogin and his firm, at my request, have conducted various analyses of CVS' scheduling, time and pay records, and other data produced by CVS, including thorough damages and liability analyses.

7. My firm has expended a substantial amount of attorney time in this case for more than two years, and, to date, has incurred significant expenses of over $140,000 in vigorously litigating this case.

8. Attached hereto as **Exhibit A** is a true and correct copy of the *Cabrera* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment in the matter of *Cabrera v. CVS RX Services, Inc., et al.*, Case No. 3:17-cv-05803-WHA, United States District Court, Northern District of California, filed as ECF No. 75, filed on August 23, 2018, and publicly available via the Northern District of California's Public Access to Court Electronic Records ("PACER") website.

9. During the course of discovery, based on documents and deposition testimony, I learned that CVS' alleged arbitration agreements are not actually "executed" by employees, as CVS' usual process is to require that employees take the training module on the arbitration program and confirm that they have completed the training. Unless CVS receives a mailed-in opt-out from the arbitration program, it considers employees to be bound by the arbitration program. While allegedly there is another process wherein CVS has employees sign arbitration agreements during their onboarding experience, despite my best efforts, I was not able to obtain any records evidencing the receipt of such information regarding CVS' arbitration program by employees during the onboarding process. Instead of providing that information, which CVS contended did not exist, CVS provided Intervenors with a list of individuals who have ostensibly completed training in relation to its arbitration program. The employee information in that list covers arbitration training from October 2014 to the present. CVS also produced a class list designating employees it deems to have opted out of arbitration. Based on my review of CVS' alleged arbitration agreement, the language specifically excludes from its scope any currently pending litigation. From this, I concluded that any individuals who took the training or were hired after the inception of the lawsuit, even if they did not opt out, should not be considered subject to arbitration for the asserted claims. Attached hereto as **Exhibit B** is a true and correct copy of a document Bates stamped CVS001906-907, which Defendants produced during discovery in this matter.

10. I asked Mr. Drogin to determine what percentage of pharmacy employees had names that appeared on the arbitration training list prior to the filing date of Intervenors' lawsuit (August 21, 2014), and did not appear in the class list as an opt-out. The results of this inquiry are contained in Mr. Drogin's declaration. (*See* concurrently filed Declaration of Richard Drogin ("Drogin Declaration")).

11. CVS' FRCP 30(b)(6) deponent regarding the alleged arbitration agreement, Lorne W. Dunkerton, when asked during his deposition on November 21,

2019, what CVS employees received in exchange for agreeing to go to arbitration, admitted that "I'm not aware of any benefit that any employee might conceive that they would receive for this [arbitration agreement]." I took Mr. Dunkerton's deposition, and have reviewed the deposition transcript of Ms. Dunkerton, and am familiar with that testimony. The time limit for Mr. Dunkerton to submit any changes to his deposition transcript has passed and no changes were received. Attached hereto as **Exhibit C** is a true and correct copy of the relevant excerpts from Mr. Dunkerton's deposition.

12. CVS has represented that it has produced all of the scheduling data, time data, and payroll data regarding the putative class in Intervenors' case. As part of my instructions to Mr. Drogin, I requested that his firm analyze the data for *all* shifts affected by CVS' failure to limit the work times of CVS' employees who "sell at retail drugs and medicine" to determine whether they worked more than nine hours in a day, more than 108 hours in a two-week period, or more than 12 consecutive days in a row. This information is set forth in the Drogin Declaration.

13. On November 20, 2019, I also took the deposition of CVS' FRCP 30(b)(6) witness on the topic of compliance with Labor Code sections 850 and 851, in which CVS' witness Brian Neal confirmed that CVS made no effort to schedule any California employees within the defined statutory limits. I have reviewed the deposition transcript of Mr. Neal and am familiar with that testimony. The time limit for Mr. Neal to submit any changes to his deposition transcript has passed and no changes were received. Attached hereto as **Exhibit D** is a true and correct copy of the relevant excerpts from Mr. Neal's deposition. I have also reviewed discovery responses in which CVS stated that it had no documents demonstrating compliance with Labor Code sections 850 and 851 other than one email that was sent by CVS' California Human Resources Directors on February 7, 2020, to California Regional Directors stating that effective immediately, CVS would now schedule California retail pharmacy employees for no more than 9 hours per day in a workweek and one

1  day off for every consecutive/rolling 7 days.  These changes reflect scheduling requirements for those employed to sell at retail drugs and medicines pursuant to California Labor Code Sections 850 and 851.

14.  In the course of discovery in this matter, I have reviewed all of the versions of CVS' rest break policy and accompanying trainings on it, and taken depositions of witnesses who testified about it.  Based on that information, I am aware that, until June 2017, CVS had a rest break policy, and accompanying trainings about the taking of rest breaks, that did not allow CVS employees to leave the premises during their rest breaks.  I am also aware of numerous employee interviews in which employees almost universally stated that they could not take their rest breaks due to the pressures of the business and their managers.  Training documents also made clear that, while employees could leave the premises during meal breaks, no similar permission was given for leaving the premises during rest breaks.  Training documents also showed that, while meal period premiums are paid based on time records, CVS has no mechanism for paying rest break premium pay in the event of a missed breaks.  Results from Mr. Drogin's work have revealed that only a handful of rest break premiums were paid throughout all of the time records for the class.

15.  As a result of my review of documents and FRCP 30(b)(6) depositions I took in Intervenors' case, I learned that CVS uses a centralized program for scheduling its employees called mySchedule.  MySchedule uses CVS' labor budgets to build a model that schedules employees based on the anticipated demand at the location, which is informed by historical data and work done by CVS' Industrial Engineering Team.  The Industrial Engineering Team puts together stringent "workload" expectations of the amount of time required to complete all of the expected tasks per shift.  On June 15, 2020, when I deposed CVS' FRCP 30(b)(6) deponent on the topic of the Industrial Engineering Team's factoring of rest breaks into the anticipated workload time, Adam O'Hara, he testified that, prior to April 2017, he was unaware of any efforts CVS took to factor in rest break time, and that after April 2017, the

Industrial Engineering Team factored in only one 15-minute rest period for every 8-hour increment of time. I have reviewed the rough deposition transcript of Mr. O'Hara and am familiar with that testimony. Review of Mr. O'Hara's deposition transcript was not requested during the deposition pursuant to FRCP 30. Attached hereto as **Exhibit E** is a true and correct copy of relevant excerpts from Mr. O'Hara's deposition.

16. Based on my review of documents and discovery responses in this case, I am aware that CVS did not pay its non-exempt pharmacy employees for the use of their personal cell phones, nor did CVS provide any method for such employees to be reimbursed for such expenses. Further, based on information from interviews with schedulers and pharmacists, and documents pertaining to the scheduling process, I discovered that pharmacists were regularly required to communicate via their personal cell phones with their managers and schedulers pursuant to CVS' class-wide pharmacist scheduling policies and practices. I asked Mr. Drogin to provide me with information regarding the number of pay periods worked by pharmacists during the class period. Using this information, I determined that half of the pay periods reflected a month in which cell phone bills would have required reimbursement. I further assumed that a reasonable amount for a cell phone plan would be at least $25 per month, and provided a damages calculation accordingly, which is reflected in the chart set forth in Intervenors' Opposition to Plaintiff's Motion.

17. In Intervenors' case, CVS has not asserted that any prior class settlements apply, and even though fact discovery has closed, CVS has not produced any applicable settlement agreements in discovery or identified them in its FRCP 26 disclosures. Rather, CVS represented to the magistrate judge, when Plaintiff sought to compel such settlement agreements, that none applied. On March 31, 2020, I attended the discovery hearing before the Honorable Robert M. Illman, Magistrate Judge, regarding Plaintiff's Joint Discovery Letter Briefs in this matter. I have reviewed the hearing transcript and am familiar with that testimony. Attached hereto

as **Exhibit F** is a true and correct copy of the relevant excerpts from the March 31, 2020 hearing transcript.

18. Based on my review of documents in Intervenors' case, and FRCP 30(b)(6) deposition testimony, I learned that, at certain Target locations, CVS did not pay its pharmacists for about five minutes of work that necessarily had to be performed off-the-clock each time they either opened or closed pharmacies until CVS changed its policies to provide for automatic paid grace periods for such shifts in 2019. Attached hereto as **Exhibit G** are true and correct copies from the deposition transcript of Diana Ibrahim, CVS' FRCP 30(b)(6) witness on this topic, who provided testimony on this issue.

19. Intervenors' meal break claim relies upon universal policy and training documents and testimony demonstrating that pharmacists who worked alone were not able to leave the premises for meal breaks as a result of a common, class-wide policy and practice, as well as class-wide legal requirements. It also relies upon timekeeping data showing when pharmacists worked alone, as well as data for all pharmacy employees indicating when timely meal breaks were not recorded, when no waiver applied, and no meal break premium was paid. Attached hereto as **Exhibit H** is a true and correct copy of a document titled "Pharmacy technicians; nondiscretionary tasks; direct supervision of pharmacists; ratios; duties in health care facilities," which I printed from Westlaw, an electronic research database, on June 2, 2020. Also attached at **Exhibit H**, is a document bates stamped CVS0003582-3624, which Defendants produced during discovery in this matter.

20. Based on documents and deposition testimony in this matter, including information on the class list provided to Intervenors in discovery, I am aware that CVS collects its employees' personal cell phone contact information as a matter of course during the hiring process. I am also aware, from Intervenors' own efforts to contact these class members via text, that it is a more practicable, and more cost-efficient, method of reaching the class than mailing is.

21. Attached here as **Exhibit I** is a true and correct copy of the California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement in matter of *O'Connor v. Uber Technologies,* Case No. 13-cv-03826-EMC, United States District Court, Northern District of California filed as ECF No. 736 on July 29, 2016 and publicly available via the Northern District of California's PACER website .

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 26, 2020, in Sherman Oaks, California.

        /s/ Beth Gunn
        Beth Gunn