BETH A. GUNN, CA Bar No. 218889
beth@gunncoble.com
CATHERINE J. COBLE, CA Bar No. 223461
cathy@gunncoble.com
GUNN COBLE LLP
101 S. 1st Street, Suite 407
Burbank, CA 91502
Telephone: 818.900.0695
Facsimile: 818.900.0723

Attorneys for Plaintiffs-Intervenors
RYAN HYAMS and REGINE DUHON,
on behalf of themselves, and all others similarly situated

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,<br><br>Defendants. | CASE NO.: 2:16-cv-08979-AB-AGR<br>Assigned to Hon. Andre Birotte Jr.<br>*Related Case No.:2:20-cv-02401-AB-AGR*<br><br>**SUPPLEMENTAL DECLARATION OF BETH GUNN IN SUPPORT OF PROPOSED INTERVENORS' MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**<br><br>DATE: July 24, 2020<br>TIME: 10:00 a.m.<br>PLACE: 350 West First Street<br>　　　　Courtroom 7B<br>　　　　Los Angeles, CA 90012<br><br>Complaint Filed: July 20, 2016<br>Action Removed: December 5, 2016 |

# DECLARATION OF BETH GUNN

I, Beth Gunn, declare as follows:

1. I am an attorney duly licensed to practice in this Court, and am counsel of record for the putative class and Plaintiffs-Proposed Intervenors Ryan Hyams and Regine Duhon ("Intervenors") in the separately pending action styled *Ryan Hyams, et al. v. CVS Health Corporation, et al.*, Northern District of California Case No. 4:18-cv-06278-HSG ("Intervenors' action"), which has been asserted against the Defendants in this action, CVS Pharmacy, Inc., CVS RX Services, Inc., and Garfield Beach CVS, LLC (collectively, "Defendants" or "CVS"). I have firsthand and personal knowledge of the facts set forth in this declaration, as well as information obtained from my law firm's documents, and publicly available court documents, and if called to testify regarding the facts set forth herein, I could and would do so competently and under oath.

2. I first learned that the plaintiff in the instant case, Sevag Chalian ("Chalian" or "Plaintiff"), had entered into a settlement agreement to resolve the claims at issue in Intervenors' action on June 4, 2020, when I received from opposing counsel in Intervenors' action a copy of the settlement agreement signed by Chalian, his counsel, and plaintiffs in the matter of *Cabrera, et al. v. CVS RX Services, Inc., e. al.*, Case No. 3:17-CV-05803-WHA (the "*Cabrera* plaintiffs") and their counsel. Counsel stated that the agreement was being provided in anticipation of mediation (and marked as subject to the confidential mediation privilege), which was scheduled for June 9, 2020, "given the significant overlap" with the claims at issue in Intervenors' action.

3. I was shocked to see that settlement agreement contained an unlimited release of claims for violations of California Labor Code sections 246, 550-552, and 850-852, for two reasons: First, I had reviewed the prior complaints in the *Chalian* and *Cabrera* matters to determine whether Intervenors' action was related to them, and knew that such claims were not part of either of those lawsuits at that time. I also

relied on the fact that, at the time Intervenors' action was filed and removed to federal court, it appeared that the case would not proceed as a class action because the plaintiffs had been compelled to arbitration, and later, their PAGA claims had been dismissed with prejudice and judgment had been entered against them. It also appeared that CVS was attempting to compel another proposed plaintiff to arbitration, and the matter was tied up with appeals. As a result, it did not appear that the case fell within the definition of related cases as defined by the local rules. Before filing the initial complaint in Intervenors' action, we were careful to not include any bases for liability that might infringe on Plaintiff's action as it was pled at that time.

4. Second, I had been led to believe, through written discovery responses and a hearing regarding the sufficiency of those responses from CVS and its counsel, that no such settlement agreements existed. Specifically, through written discovery in Intervenors' action in late 2019, Intervenors had requested all documents pertaining to settlement agreements related to any of the claims in Intervenors' case. CVS' counsel in that matter, Jennifer Zargarof and Sonia Vucetic of Morgan Lewis, had met and conferred with me extensively over this issue, and the parties could not reach agreement as to a production. As a result, Intervenors filed a joint discovery letter brief, as required by the local rules in the Northern District of California, to compel the documents. On March 31, 2020, Magistrate Judge Robert Illman held a hearing regarding the substance of that letter brief. During the hearing, Ms. Zargarof represented to the Court that the only documents pertaining to relevant settlement agreements were those signed by individual employees during one-off settlements, and argued that it would be too burdensome for CVS to produce such documents. I noted that there was at least one other class action lawsuit in which a class settlement agreement had been reached (referring to the matter of *Felix Perez, et al. v. CVS Health Corporation, et al.*), and that Intervenors needed to understand whether any settlement agreements might be asserted to bar the full recovery Intervenors sought in the case. Ms. Zargarof informed the court that there were no such settlements. Therefore, on

the evening of June 4, 2020 when I received the settlement agreement signed by the *Chalian* and *Cabrera* plaintiffs and their counsel on February 25, 2020 and February 27, 2020 and CVS on March 2, 2020, I realized that CVS had deliberately hidden the settlement agreement from Intervenors in discovery and had made misrepresentative statements to the court. A true and correct copy of the transcript from the March 31 hearing was attached to my declaration in support of Intervenors' Opposition to Plaintiff's Motion for Preliminary Approval in this matter as ECF 96-1, pp. 94-103.

5. Shortly after I learned of the existence of the settlement agreement on the evening of June 4, 2020, I immediately contacted counsel at Alexander, Glick and Krakow. I first spoke with Gail Glick, who told me to speak with Mike Morrison, one of Chalian's counsel of record in this matter and the best way to contact him was via e-mail. I emailed Mr. Morrison to try to talk to him that evening, but he did not make himself available to talk to me until the next day, June 5, 2020. I had a series of phone calls with Mr. Morrison on June 5, during which I asked him how it came about that Intervenors' claims were being inserted into Chalian's lawsuit. Mr. Morrison explained that he had not known about Intervenors' case until after the settlement agreement was signed. He also stated that it was not his idea to add the new claims, but the mediator in the case made it clear that CVS insisted on adding these claims to the settlement. He further informed me that the mediator convinced him that it made sense because the claims might be derivative claims. Mr. Morrison also stated that he had no choice but to proceed with the proposed settlement because he was bound by the terms of the settlement agreement he had entered into before he became aware of Intervenors' case. It was clear to me, from the substance of our conversation, that neither Mr. Morrison nor other counsel for the plaintiffs who signed off on the settlement inquired about why CVS was so determined to insert Intervenors' claims into the lawsuit, but that they acquiesced so that they could resolve the case. It was obvious that CVS had insisted that Intervenors' claims be inserted into Plaintiff's lawsuit as a means of circumventing Intervenors' case and the threat of significant

liability as a result of those claims.

6. Both the expansion of claims in the instant case and the expansion of claims in the *Perez* case came about during the same time frame that Intervenors were insisting on receiving actual discovery responses and full data sets, including timekeeping, payroll and scheduling data for all class members in their case in order to properly evaluate the claims at issue. Specifically, through court filings, I learned that the *Perez* parties agreed to mediate in the months prior to January 2020, and the instant settlement in this matter was mediated in November, 2019. CVS agreed to mediate those cases during the time frame of July-October 2019. During that same time period, Intervenors were insisting that CVS provide them with non-cherry-picked complete data sets to properly evaluate the scope of damages and prepare for their mediation scheduled in September 2019, which CVS then moved to December 2019, before CVS unilaterally canceled it.

7. I attended Columbia Law School, from which I graduated with honors in 2000, and served as a member of the Columbia Law Review. I then clerked for two years for the Honorable Theodore M. MacMillian at the United States Court of Appeals for the Eighth Circuit before entering private practice. I am currently a partner with the law firm Gunn Coble LLP, which I co-founded with my partner Catherine Coble in July 2017. Prior to opening our firm, which focuses exclusively on plaintiff's side employment law, Ms. Coble and I worked together at the employment defense litigation firm Ogletree Deakins. Ms. Coble and I have each been practicing law for over seventeen years. As employment defense counsel, I acted as primary counsel on more than 30 wage and hour class action matters, and Ms. Coble acted as primary counsel on over 25 wage and hour class action matters venued in California state and federal courts. We represented several large national employers spanning several industries, including retailers. As a result of this experience, we are uniquely qualified to track down information and data from employer defendants in wage and hour class actions. We also are very experienced in working with data to generate potential

liability, and we understand the risk factors that employers evaluate when negotiating class action settlements.

8.      While representing employers, Ms. Coble and I became very familiar with wage and hour class action litigation defense strategies followed by employers, which frequently included holding back information from plaintiffs' counsel if at all possible, often by suggesting a data sampling and/or limited pre-mediation information exchange rather than participating in formal discovery and producing full employee class data sets.  It was well known that if a plaintiff accepted cherry-picked information prior to mediation, it was more likely to lead to a desirable settlement because the defense could control the information and ensure that the most damaging information would not be revealed prior to settlement negotiations.  When employers who were facing multiple wage and hour class action lawsuits wanted to target the counsel who would enable them to make the most advantageous deal, the focus was not on the experience level of the counsel, but rather on the willingness of the counsel to accept a limited pre-mediation information exchange rather than force the employer to engage in formal discovery.

9.      As part of my extensive experience in litigating wage and hour class action and negotiating class action settlements for employers, I worked with many attorneys to craft settlement language.  It was quite common for diligent plaintiffs' counsel to refuse to agree to language in a settlement release that was broader than the specific claims at issue in the lawsuit, and to question any efforts to expand the release. It was also common for plaintiffs' counsel to refuse to include language releasing claims that "could have been asserted," as too overbroad, not permitted by applicable law, and detrimental to the class.

10.     As part of the documents filed in opposition to Plaintiff's Preliminary Approval Motion, I created charts that were inserted into the opposition brief.  Those charts summarized information obtained from Plaintiff's Preliminary Approval Motion and information received from Intervenors' retained expert, Richard Drogin.

*See* ECF 100, 20:13-26.  I performed additional calculations to assess the discrepancies between Intervenors' and Plaintiff's separate evaluations of the potential liability for the claims at issue in the settlement.  According to those calculations, the settlement amount Plaintiff agreed to in exchange for the release of Intervenors' claims is **less than 1.5%** of the potential liability at stake for Intervenors' claims.  The amount of $56,250 earmarked for the LWDA in Plaintiff's proposed settlement is **less than .03%** of the total value of the claims based on Intervenors' analysis of the evidence and legal theories involved.  Based on the damages information and theories in Intervenors' case, pharmacy employees stand to gain the most substantial amounts of potential damages if Intervenors prevail on their claims.

      11.    In February 2020, I became aware of another settlement that potentially affected the claims at issue in Intervenors' case, in the matter of *Felix Perez, et al. v. CVS Health Corporation, et al.*  Again, CVS had hidden the existence of this case from Intervenors by failing to inform Intervenors or the court of it by failing to file a Notice of Related Cases as required by the Northern District of California local rules. CVS had also produced discovery allegedly covering the entire class of nonexempt California employees as defined in Intervenors' operative complaint, but had omitted, without informing Intervenors, information regarding nonexempt distribution center employees who fell within Intervenors' class definition.  In essence, CVS had decided to carve out a portion of Intervenors' case while representing that they were providing full class information.  After CVS threatened to compel the plaintiff in the *Perez* case to arbitration, he filed a second amended complaint that expanded his case to include all claims for all violations of the Labor Code for all nonexempt employees in California, which then encompassed the claims and employees at issue in Intervenors' case.  I repeatedly attempted to meet and confer with CVS' counsel to obtain information regarding the scope of the settlement at issue in that case, as well as information to satisfy the fiduciary duties we had to putative class members to ensure that we properly investigated their claims before removing them from Intervenors'

lawsuit. I also requested that Plaintiff's counsel in the *Perez* action file an amended complaint which corrected any expansion of his case to encompass the claims in Intervenor's action. After multiple failed attempts to obtain such information, Intervenors filed a motion to intervene. The court in the *Perez* matter agreed with Intervenors that the operative second amended complaint upon which the intervention was based impermissibly exceeded the scope of the claims at issue, and it was "troubled" by the parties' "unsubstantiated and provably false assertion" regarding the expanded complaint. The second amended complaint in *Perez* attempted to transform an original potential class of approximately 3,000 employees to about 60,000 employees; here, the Parties are attempting to enlarge the class size from about 1,700 employees to 20,000 employees.

12. On June 26, 2020, I finally received information from CVS regarding the requested information pertaining to the *Perez* class members. After reviewing this information, and the newly-filed third amended complaint that altered the scope of the proposed employees to its original definition and size, Intervenors elected not to re-file a motion to intervene (as the prior motion had been taken off calendar by court order).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 3, 2020, in Sherman Oaks, California.

　　　　　　　　　　　　　　　　　　/s/ Beth Gunn
　　　　　　　　　　　　　　　　　Beth Gunn