James N. Boudreau (SBN PA 77891)
Christiana L. Signs (SBN PA 317851)
GREENBERG TRAURIG, LLP
1717 Arch Street, Suite 400
Philadelphia, Pennsylvania 19103
Telephone: 215.988.7800
Facsimile: 215.988.7801
boudreauj@gtlaw.com
signsc@gtlaw.com

Tyler R. Andrews (SBN CA 250686)
GREENBERG TRAURIG, LLP
18565 Jamboree Road, Suite 500
Irvine, California 92612
Telephone: 949.732.6500
Facsimile: 949.732.6501
andrewst@gtlaw.com

Attorneys for Defendants CVS Pharmacy, Inc., CVS Rx
Services, Inc., Garfield Beach CVS, LLC, and Does 1
through 100

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, on behalf of himself and all others similarly situated and the general public,<br><br>     Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California Limited Liability Company; and DOES1 through 100, inclusive,<br><br>     Defendants. | CASE NO.  2:16-cv-08979-AB-AGR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>DATE:   7/24/20<br>TIME:    10:00 a.m.<br>CTRM:   7B<br>JUDGE:  Hon. André Birotte, Jr. |

In November 2019, CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS LLC ("CVS") reached a global settlement of California wage and hour claims brought against them on a putative class basis by retail pharmacy employees in two different, long-pending lawsuits: *Sevag Chalian v. CVS Pharmacy, Inc et al*, 2:16-cv-08979-AB-AGR (C.D. Cal.) ("*Chalian*") and *Cabrera et al v. CVS RX Services, Inc. et al*, 2:20-cv-02401-AB-AGR (C.D. Cal.) ("*Cabrera*"). On June 19, 2020, the pharmacy employees in these cases moved for preliminary approval of the proposed class settlement. Motion for Preliminary Approval, ECF No. 89. On June 26, 2020, non-parties Ryan Hyams and Regine Duhon, who have their own putative class and PAGA action pending against CVS,[1] somewhat inexplicably filed an Opposition to the Motion for Preliminary Approval. Opposition, ECF No. 95 (corrected by errata at ECF No. 100).

## I.   THE COURT SHOULD STRIKE THE OPPOSITION BECAUSE THE *HYAMS* PLAINTIFFS LACK STANDING TO OPPOSE THE SETTLEMENT NOW.

Only class members may object to a proposed settlement. Fed. R. Civ. P. 23(e)(5)(A) ("any <u>class member</u> may object ….") (emphasis added); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals."). Non-parties who are not (or not yet) settlement class members lack standing to object. *See, e.g.*, *Feder v. Electronic Data Sys.*, 248 F. App'x 579, 580 (5th Cir. 2007) ("only class members have an interest in the settlement funds, and therefore only class members have standing to object to a settlement"); *Douglas v. W. Union Co.*, No. 19-1868, at *6 (7th Cir. Apr. 13, 2020) ("under Rule 23(e)(5)(A) only a 'class member' may object to a class settlement, so the rule does not create standing for nonclass members"); *San Francisco Naacp v. San Francisco Unif. School*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) ("nonclass members have no standing to object to the settlement of a class action").

///

---

[1] *Hyams v. CVS Health Corporation*, No. 4:18-cv-06278-HSG (N.D. Cal.) ("*Hyams*")

This Court has not yet certified a settlement class. Nor has it approved, preliminarily or otherwise, of the proposed settlement. As a result, at least at present, the *Hyams* Plaintiffs may not oppose the parties' proposed settlement because they are not—and may never be—settlement class members. Entertaining their Opposition at this point effectively elevates them above putative class members. Doing so lets the *Hyams* Plaintiffs both object to the settlement now <u>and</u> retain the right to later opt out. Rule 23 simply does not permit this. As a result, the Court should strike the *Hyams* Plaintiffs' Opposition. *See In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013 WL 7985367, at *2 (C.D. Cal. Dec. 23, 2013) (overruling objections for reasons stated in prior "Order Striking Objections for Failure to Show Class Memberships"); *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *10 (N.D. Cal. Feb. 20, 2015) (collecting cases finding it proper to strike objections by non-parties who failed to prove they were settlement class members); *see also Osborne v. County of Riverside*, 385 F. Supp. 2d 1048, 1052 (C.D. Cal. 2005) ("Courts have a duty to raise issues of standing *sua sponte*.").

## II.   REGARDLESS, THE OPPOSITION SHOULD NOT PREVENT THIS COURT FROM GRANTING THE MOTION FOR PRELIMINARY APPROVAL.

Although CVS should not have to defend against the *Hyams* claims in this case, CVS feels compelled to respond to the Opposition because it contains misrepresentations that, if not clarified, will confuse (if not deliberately mislead) this Court.

### A.   <u>The Opposition Misstates Facts Related To CVS's Arbitration Program</u>

The most glaring misstatements of fact in the *Hyams* Plaintiffs' Opposition concern CVS's arbitration program. The *Hyams* Plaintiffs argue CVS does not "actually 'execute[]'" arbitration agreements with its employees and "does not have records showing the majority of its employees have even been made aware of the arbitration program." ECF No. 100, Page ID 3721. To support this "fact," they cite the declaration of their counsel, Beth Gunn. *Id.* Ms. Gunn states she "learned that CVS' alleged arbitration agreements are not actually 'executed' by employees" through discovery in the *Hyams* matter. ECF No. 96, Page ID 3442. She claims, "CVS' usual process is to require that employees take the training module

on the arbitration program and confirm they have completed the training." *Id.* She goes on to recognize that "allegedly there is another process wherein CVS has employees sign arbitration agreements during their onboarding experience," but states "despite [her] best efforts," she was "not able to obtain any records evidencing the receipt of such information regarding CVS' arbitration program by employees during the onboarding process." *Id.*[2]

Ms. Gunn's statements conflict with information she elicited in a corporate deposition in *Hyams. See* Exhibit 1, Excerpts from Nov. 21, 2019 Deposition of L. Dunkerton. And she need have looked no further than the public docket for the records she claims to seek. Along with the deposition testimony (*see* Exhibit 1) documents publicly filed in the *Cabrera* action prove her description of CVS's arbitration program incorrect. As the moving papers in *Cabrera* reveal, in October 2014, CVS implemented an optional CVS Health Arbitration of Workplace Legal Disputes Policy. Case No. 2:20-cv-02401-AB-AGR (C.D. Cal.), ECF No. 19-1, ¶ 6. As part of the Policy's initial implementation, CVS devised one means of introducing the Policy to its current employees and a second means for introducing it to individuals it hired thereafter. With respect to its then-current pharmacy employees—including Mr. Telahun, a named Plaintiff in the *Cabrera* case—it first introduced the Policy through a training module, "Arbitration of Workplace Legal Disputes." *Id.* at ¶¶ 6-10. The training module required employees to read and acknowledge a "CVS Health Colleague Guide to Arbitration." *Id.* at ¶ 8. Afterwards, employees acknowledged they had read the Guide and the Policy and agreed that, by being covered by the Policy and not opting out, they were obligated to arbitrate covered claims. *Id.* at ¶ 9.

At the same time, CVS began providing a CVS Health Arbitration Agreement to all new-hires and re-hires as part of its onboarding process. Case No. 2:20-cv-02401-AB-AGR (C.D. Cal.), ECF No. 18-1, ¶¶ 7-8. Specifically, before an individual can begin work, he or she must review the Agreement electronically, and: (1) type in his or her name, (2) type in the date, and (3) use a mouse, mousepad, or touchscreen to sign his or her name to the

---

[2] Notably, the *Hyams* Plaintiffs did not enter into arbitration agreements with CVS, so there are no arbitration agreements to discover.

document. *Id.* at ¶ 8. Mr. Cabrera followed these steps to sign the CVS Health Arbitration Agreement filed in support of CVS's Motion to Compel Arbitration. *See id.* at ¶ 10.

Because Ms. Gunn only acknowledges the first way an individual may become obligated to arbitrate, she incorrectly concludes that "only about 37.9% of the pharmacy employees at issue in Intervenors' case could possibly be subject to the arbitration program." *Cf.* ECF No. 100, Page ID 3722. Ms. Gunn is wrong because she assumes CVS employees can only be subject to arbitration if they took "arbitration training." *See* ECF No. 96, Page ID 3442, ¶¶ 6, 10 (Ms. Gunn asked her retained expert to "determine what percentage of pharmacy employees had names that appeared on the arbitration training list"). As described above, however, taking the training is only one means of being bound to arbitrate. Employees like Mr. Cabrera are bound to arbitration because they signed CVS Health Arbitration Agreements, not because they ever underwent training.

Ms. Gunn's claim that only 37.9% of pharmacy employees are subject to arbitration is wrong for another reason, too: it grossly misinterprets the arbitration agreement. Proposed Intervenors argue three facts lead to the conclusion that no CVS employee in California who agreed to arbitrate on or after August 21, 2018 is subject to arbitration:

> (1) The Arbitration Agreement states it "does not apply to claims raised in litigation pending as of the date You first received the Agreement," *see, e.g.*, ECF No. 96-1, Page ID 3483, ¶ 3;
>
> (2) Proposed Intervenors filed a putative class action on August 21, 2018; and
>
> (3) Proposed Intervenors purport to represent all CVS employees in California.

*See* ECF No. 100, Page ID 3721-22 (arguing "any individuals hired after the inception of the lawsuit should not be considered subject to arbitration").

But this creative (if not desperate) argument crumbles because none of the putative class members Ms. Gunn insists are excepted from the arbitration agreement had pending claims against CVS when they entered into the agreement, *i.e.*, as of the date of their hire.

This is because a putative class does not acquire an independent legal status unless and until it is certified under Rule 23. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Because no court has yet certified a class in the *Hyams* case, no putative class members' claims are "raised" and "pending" in that case. The Arbitration Agreement's exclusion of pending litigation simply does not apply to those she insists it does.

Two other points related to CVS's arbitration program bear mentioning. First, the argument that CVS "exploits" its arbitration program by enforcing some arbitration agreements and waiving others, *see* ECF No. 100, PageID 3716, ignores the single most basic premise of arbitration. "[A]rbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, __ U.S. __, 139 S. Ct. 1407, 1415 (2019). Parties are thus well within their rights if they choose to waive agreements to arbitrate.

Second, the *Hyams* Plaintiffs' attack on the enforceability of CVS's arbitration agreements, *see, e.g.*, ECF No. 100, Page ID 3722, does not withstand scrutiny. Putting aside that their obvious lack of knowledge of the arbitration program renders them inadequate proponents, their arguments conveniently ignore the delegation clause in CVS's arbitration agreements, which renders resolution of arbitrability issues for the arbitrator. And notable in this regard is that this Court (like many before it) has already upheld CVS's arbitration agreement, including its delegation clause. *See* ECF No. 52 (upholding delegation provision); *Elmore v. CVS Pharmacy, Inc.*, 2016 WL 6635625 (C.D. Cal. Nov. 9, 2016) (same); *Opie v. CVS Health Corp.*, 2017 WL 9324521 (D. Mont. June 30, 2017) (compelling claims to arbitration).

## B.    The Opposition Misstates Facts Related To CVS's Rest Period Policy.

In their effort to undermine the proposed settlement, the *Hyams* Plaintiffs also make unfounded allegations regarding CVS's rest break policy, which this Court should disregard. They argue CVS's rest break policy is illegal on its face because, "prior to June 2017, CVS' policy did not allow employees to leave the premises, in violation of California law as articulated in *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016), *as modified on denial of reh'g* (March 15, 2017)." ECF No. 100, Page ID 3723. But, again, this is not

true. California law does not prohibit employers from requiring employees to take rest breaks on-site. As the Hon. David O. Carter explained in a recent opinion, "Plaintiffs' argument that a policy requiring an employee to remain on-premises violates California law is incorrect . . . . *Augustus* held that a uniform policy requiring an employee to stay on-premises <u>does not</u>, by itself, establish employer control over an employee."[3] *Le v. Walgreen Co.*, No. CV 18-1548-DOC (ADS), 2020 WL 3213684, at *6 (C.D. Cal. Apr. 27, 2020) (emphasis added). *See also, e.g.*, *Bowen v. Target Corp.*, No. EDCV162587JGBMRWX, 2020 WL 1931278, at *6 (C.D. Cal. Jan. 24, 2020) (dismissing claim that Target's rest period policy violated California law by requiring employees to remain on site, noting "several district courts within the Ninth Circuit have cited to *Augustus* as authority to dismiss rest period claims premised on an on-premises rest period theory").[4]

## C.   <u>The Opposition Misstates Facts In An Effort To Support The *Hyams* Plaintiffs' Claim of "Reverse Auction."</u>

The *Hyams* Plaintiffs' central argument is that the proposed settlement, simply because it purports to be a "global" one, is the product of a nefarious "reverse auction." ECF No. 100, Page ID 3719-20, 3728-29. But there is nothing shocking or untoward about

---

[3] The California Division of Labor Standard Enforcement ("DLSE") long took the position that employers could legally require employees to remain on-site during rest breaks. *Bowen*, 2020 WL 1931278, at *8. In 2017, however, the DLSE reversed its position, opining that a policy that requires employees to remain on site during rest-breaks may mean such employees never received them. Even though most courts have declined to grant deference to the DLSE's flip-flop, it is irrelevant here. This is because, as the *Hyams* Plaintiffs admit, CVS began expressly permitting off-site rest breaks as of 2017. Thus, under any scenario, CVS's rest break policy has always been legally compliant and valid.

[4] In *Augustus*, the issue was whether defendant ABM Security violated California law by requiring security guards "to keep their radios and pagers on, remain vigilant, and respond when needs arose" during rest breaks. *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, at 261. The California Supreme Court answered in the affirmative, holding "on-call rest periods do not satisfy an employer's obligation to relieve employees of all work-related duties and employer control." *Id.* at 270. In reaching this conclusion, it noted that the requirement that employees remain on site or nearby "is not sufficient to establish employer control" by itself, but when paired with an on-call requirement becomes "irreconcilable with employees' retention to use rest periods for their own purposes." *Id.*

pursuing a settlement that resolves all pending claims. "Broad class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005).

The *Hyams* Plaintiffs tell this Court CVS began negotiating with the *Chalian* and *Cabrera* Plaintiffs after refusing to provide them with "more substantive information to investigate their claims" and after cancelling a scheduled mediation. ECF No. 100, Page ID 3728. In other words, they paint a picture of CVS realizing the *Hyams* Plaintiffs' demands were too steep and thus turning to the *Chalian* and *Cabrera* Plaintiffs for settlement. This is simply not reality.

Beginning in October 2018, as required by this case's scheduling order, Plaintiffs' counsel and CVS' counsel began discussing mediation and potential mediators. They encountered numerous scheduling conflicts, ultimately agreeing in February 2019 to mediate before David Lowe, Esq. A testament to his ability, Mr. Lowe had little availability in Spring 2019, resulting in the first day of mediation occurring on July 29, 2019. As of that date, the *Hyams* Plaintiffs and CVS were still engaged in pre-mediation discovery disputes. Upon the conclusion of the July 29, 2019 mediation, CVS and the *Chalian* and *Cabrera* Plaintiffs agreed enough progress had been made to warrant a second day of mediation (which the parties would ultimately schedule for November 11, 2019). But it was not the planned second day of mediation that caused CVS to cancel its mediation with the *Hyams* Plaintiffs. Rather, what caused CVS to cancel the *Hyams* mediation was that the parties were enmeshed in unresolved discovery disputes and there were simply too many areas of disagreements as to the various claims to make mediation productive.

The *Hyams* Plaintiffs also accuse CVS of violating an inapplicable Local Rule. They argue CVS failed to inform the *Chalian* Plaintiffs of the *Hyams* lawsuit in violation of Local Rule 83-1.4.1. ECF No. 100, Page ID 3715. That rule requires attorneys to file a "Notice of Pendency of Other Actions or Proceedings" "with the original complaint or petition filed with this Court" when "a civil action filed in or removed to this Court involves all or a

material part of the subject matter" of another action. Local Rule 83-1.4.1. It never applied here, because *Hyams* was not filed until <u>years</u> after *Chalian*.

## III.   CONCLUSION

In sum, the Court should strike the *Hyams* Plaintiffs' Opposition because they lack standing to object to the settlement the parties propose at this stage of the proceedings. Regardless, the Opposition raises no valid arguments that should dissuade this Court from granting the Motion for Preliminary Approval.


DATED:  July 6, 2020                        GREENBERG TRAURIG, LLP


By _____*/s/ James N. Boudreau*_____
                James N. Boudreau
                Attorneys for Defendants CVS Pharmacy, Inc.,
                CVS Rx Services, Inc., Garfield Beach CVS, LLC,
                and Does 1 through 100