**ALEXANDER KRAKOW + GLICK LLP**
Michael S. Morrison (State Bar No. 205320)
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: 310.394.0888 | F: 310.394.0811
E: mmorrison@akgllp.com

Attorneys for Plaintiffs SEVAG CHALIAN,
SIGFREDO CABRERA, ENKO TELAHUN, and
CHRISTINE MCNEELY and the Putative Class

(*Additional Counsel Listed on Following Page*)

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, et al., on behalf of themselves and all others similarly situated and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: 2:16-cv-08979-AB-AGR <br><br> *Consolidated with Case No.: 2:20-cv-02401-AB-AGR* <br><br> *Assigned to Hon. André Birotte Jr.* <br><br> **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E) OF THE FEDERAL RULES OF CIVIL PROCEDURE** |
| SIGFREDO CABRERA, ENKO TELAHUN and CHRISTINE MCNEELY, as individuals, on behalf of themselves, and all other persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CVS RX SERVICES, INC., a New York corporation; CVS PHARMACY, INC., a Rhode Island corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 10, inclusive, <br><br> Defendants. | [*Filed concurrently with Declaration of Michael S. Morrison in Support of Plaintiffs' Reply Brief in Support of Motion for Preliminary Approval*] <br><br> Date: July 24, 2020 <br> Time: 10:00 am <br> Location: Courtroom 7B <br>         350 West First Street. <br>         Los Angeles, California <br><br> State Case No.: BC627757 <br> State Action Filed: July 20, 2016 <br> Removal Date: December 5, 2016 <br> Consolidated: July 1, 2020 |

i

Michael H. Boyamian, SBN 256107
Armand R. Kizirian, SBN 293992
**BOYAMIAN LAW, INC.**
550 N. Brand Blvd., Suite 1500
Glendale, CA 91203
T: (818) 547-5300 | F:(818) 547-5678
E-mail: michael@boyamianlaw.com
          armand@boyamianlaw.com

R. Craig Clark, SBN 129219
**CLARK LAW GROUP**
3258 4th Ave.
San Diego, CA 92103
T: (619) 239-1321 | F: (888) 273-4554
E-mail: cclark@clarklawyers.com

Thomas W. Falvey, SBN 65744
**LAW OFFICES OF THOMAS W. FALVEY**
550 N. Brand Blvd., Suite 1500
Glendale, CA 91203
Telephone:   (818) 547-5200
Facsimile:    (818) 500-9307
E-mail: thomaswfalvey@gmail.com

Walter Haines, SBN 071075
**UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Telephone: (562) 256-1047
Facsimile: (562) 256-4554

Attorney for Plaintiffs SEVAG CHALIAN,
SIGFREDO CABRERA, ENKO TELAHUN, and
CHRISTINE MCNEELY and the Putative Class

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

# **Table of Contents**

I.    INTRODUCTION ........................................................................... 1

II.   ARGUMENT ................................................................................. 2

    A.   Proposed Intervenors Do Not Have Standing to Oppose the
        Settlement at This Time. ..................................................... 2

    B.   There Is No Indicia of Collusion. ....................................... 4

    C.   The Release Is Not Overbroad and Does Not Encompass
        Disparate Legal Theories Arising from a Different Factual
        Predicate. ............................................................................. 8

    D.   Arbitration Agreements Were A Significant Barrier to Recovery. .... 10

    E.   The Settlement is Fair, Reasonable, and Adequate. .......... 12

    F.   Plaintiffs Can Validly Settle the PAGA Claims. ............... 20

    G.   Courts Have Routinely Approved Settlements Which Have
        Allocated Similar Amounts to The PAGA Portion of The
        Settlement. .......................................................................... 22

    H.   The Proposed Method of Notice Is Proper. ....................... 25

1

## <u>Table of Authorities</u>

2

3

### <u>Cases</u>

4

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ................................... 6

*Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 U.S. Dist.

5

    LEXIS 189820 (C.D. Cal. Dec. 30, 2013) ................................................ 24

6

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) .......................................... 3

7

*Alvidrez v. Unifirst Corporation*, 2016 WL 3459602, No. CIVRS-13-08105 (San

8

    Bernardino Sup. Ct. 2016) ................................................................ 23

9

*Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016) ......................... 17

10

*Bararsani v. Coldwell Banker Residential Brokerage Company*, No. BC495767 (Los

11

    Angeles Sup. Ct. 2016) ....................................................................... 23

12

*Bell v. Home Depot U.S.A., Inc.*, No. 212CV02499JAMCKD, 2017 WL 1353779

13

    (E.D. Cal. Apr. 11, 2017) ................................................................... 17

14

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015)..................... 5

15

*Brewer v. General Nutrition Corp.*, 2014 WL 5877695 (N.D. Cal. November 12,

16

    2014)................................................................................................ 12

17

*Calderon v. Thompson*, 523 U.S. 538 (1998)............................................. 22

18

*Camilo v. Ozuna*, 2020 WL 1557428 (N.D. Cal. April 1, 2020) ................................. 5

19

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ................................... 24

20

*Castrejon v. O'Connell Landscape Maintenance Inc.*, 2015 WL 11257039, No. RIC-

21

    12-12798 (Riv. Sup. Ct. 2015) ......................................................... 23

22

*Chavez v. PVH Corp.*, 2015 WL 12915109 (N.D, Cal. August 6, 2016)..................... 3

23

*Ching v. Siemens Industry, Inc.*, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .......... 5

24

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)......................... 7, 20

25

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ...................................... 24

26

*East v. Comprehensive Educational Services Inc.*, 2015 WL 6683879, No. 11-CECG-

27

    04226 (Fresno Sup. Ct. 2015) ........................................................... 23

28

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

*Echavez v. Abercrombie & Fitch Co., Inc.*, 2017 WL 3669607 (C.D. Cal. 2017) .....25

*Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 U.S. Dist. LEXIS 154590 (C.D. Cal. Aug. 12, 2011)................................................................24

*Gibbins v. Hishmeh Enterprises Inc.*, 2017 WL 935563, No. 56-2015-00468352-CU-PO-VTA (Ventura Sup. Ct. 2017)...........................................................................23

*Hadjavi v. CVS Pharmacy, Inc.*, 2011 WL 3240763 (C.D. Cal. July 25, 2011)........ 18

*Hart v. Parkview Community Hospital Medical Center*, 2016 WL 5243101, No. RIC-14-06044 (Riv. Sup. Ct. 2016) ..................................................................................23

*Harvey v. Morgan Stanley Smith barney LLC*, 2020 WL 1031801 (N.D. Cal. March 3, 2020).................................................................................................................... 3

*Harvey v. Morgan Stanley Smith Barney LLC*, 2020 WL 1031801 (N.D. Cal. March 3, 2020)..................................................................................................................21

*Hernandez v. Houdini, Inc.*, 2017 WL 8223987 (C.D. Cal. March 21, 2017)...........21

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir.), cert. denied 562 U.S. 1003 (2010)..... 8

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 946 (9th Cir. 2011)...................4

*In re Uber FCRA Litigation*, 2017 WL 2806698, No. 14-CV-05200-EMC (N.D. Cal., June 29, 2017) .........................................................................................................22

*Kelley v. The Related Companies of California L.L.C.*, 2016 WL 2846938, No. CIVDS-13-07167 (San Bernardino Sup. Ct. 2016) ...............................................23

*Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73 (2020).......................................................21

*Lane v. Facebook, Inc.*, 2009 WL 3458198 (N.D. Cal. Oct. 23, 2009) ....................... 3

*Lao v. H&M Hennes & Mauritz, L.P.*, 2017 WL 4808814 (N.D. Cal. October 25, 2017)..........................................................................................................................9

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 U.S. Dist. LEXIS 83677 (N.D. Cal. June 15, 2012) .................................................................24

*Martino v. Ecolab Inc.*, 2017 WL 1165443, No. 3:14CV04358 (N.D. Cal. Feb. 1, 2017)........................................................................................................................23

*Mathein v. Pier 1 Imports (U.S.), Inc.*, 2018 WL 1993727, No.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

116CV00087DADSAB (E.D. Cal., Apr. 27, 2018) ................................................ 23

*McNeary–Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.Supp.2d 928 (N.D. Cal. Mar. 26, 2012) ......................................................................................................... 9

*Mejia v. DHL Express (USA) Inc.*, 2017 WL 1165440, No. 2:15CV00890 (C.D. Cal. 2017) .................................................................................................................... 23

*Moody v. Charming Shoppes of Del., Inc.*, No. C 07-6073 MHP (JL), 2009 WL 10699672 (N.D. Cal. Dec. 18, 2009) ..................................................................... 20

*Moppin v. Los Robles Medical Center*, 2017 WL 1135884, No. 5:15CV01551 (C.D. Cal. 2017) ........................................................................................................... 23

*Morales v. Pachen Management Corp.*, 2019 WL 4544421 (C.D. Cal. July 9, 2019) .................................................................................................................................. 13

*Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091 (9th Cir. 2008) ...... 8

*Nehrlich v. RPM Mortgage Inc.*, 2017 WL 2312257, No. 30-2013-00666783-CU-OE-CXC (Orange County Sup. Ct. 2017) ..................................................................... 23

*Nelson v. Dollar Tree Stores, Inc.*, 2011 WL 3568498 (E.D. Cal. Aug. 15, 2011) .... 13

*Ochoa-Hernandez v. Cjaders Foods*, 2010 WL 1340777 (N.D. Cal. April 2, 2010) ... 3

*Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ................................................................................................................ 24

*Ordonez v. Radio Shack, Inc.*, 2013 WL 210223 (C.D. Cal. Jan. 17, 2013) .............. 18

*Prieto v. U.S. Bank National Association*, 2012 WL 4510933 (N.D. Cal. Sept. 30, 2012) ........................................................................................................................ 9

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir.2006) ................... 8

*Rico v. Cardinal Health 200 Inc.*, 2017 WL 1191051, No. CIVRS-14-01451 (San Bernardino Sup. Ct. 2017) .................................................................................... 23

*Rivas v. Coverall N. Am., Inc.*, 2019 WL 7166972 (C.D. Cal. Feb. 28, 2019) ........... 21

*Rodriguez v. Wet Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) .............................. 5

*Roes, 1-2 v. SFBSC Management LLC*, 944 F.3d 1035 (2019) ..................................... 6

*Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425 (9th Cir. 2015) ......................... 3

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

*Schneider v. Chipotle Mexican Grill*, 2020 WL 511953 (N.D. Cal. January 31, 2020)5

*Scott-George v. PVH Corporation*, No., 2:13CV00441 (E.D. Cal. 2017) .................. 23

*Smith v. CRST Van Expedited, Inc*, 2012 WL 5873701 (C.D. Cal. November 20, 2012) ........................................................................................................................ 20

*Snow v. United Parcel Service, Inc.*, 2020 WL 1638250 (C.D. Cal. April 1, 2020)... 14

*Stearne v. Heartland Payment Sys. LLC*, 2018 WL 746492 (E.D. Cal. February 6, 2018) ........................................................................................................................ 15

*Summer York v. Starbucks Corp.*, No. CV0807919GAFPJWX, 2012 WL 12507388 (C.D. Cal. Nov. 1, 2012) ...................................................................................... 18

*Syed v. M-I, L.L.C.* 2017 WL 3190341, No. 112CV01718DADMJS (E.D. Cal., July 27, 2017) .................................................................................................................. 23

*Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, No. 113CV01137DADBAM (E.D. Cal., Oct. 13, 2016) ................................................................................................ 23

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012) ...................... 24

*Titus v. McLane Foodservice, Inc.*, 2016 WL 4797497 (E.D. Cal. September 14, 2016) ........................................................................................................................ 15

*Trotsky v. Los Angeles Federal Savings & Loan Ass'n.*, 48 Cal.App.3d 134 (1975).... 8

*Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118 (9th Cir. 2013)............................ 2

*Viceral v. Mistras Group, Inc.*, 2016 WL 5907869 (N.D. Cal. October 11, 2016) .... 24

*Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562 (2010) ...................................... 20

*Waisbein v. UBS Fin. Servs. Inc.*, No. C-07-2328 MMC, 2007 WL 4287334 (N.D. Cal. Dec. 5, 2007)................................................................................................... 20

*Williams v. Boeing Co.*, 517 F.3d 1120 (9th Cir.2008) ................................................ 8

*York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) ................................................................................................ 19

**_Statutes_**

Code of Civil Procedure § 1284.1 ................................................................................ 11

Federal Rules of Civil Procedure, Rule 23 .................................................................. 25

Federal Rules of Civil Procedure, Rule 60 ................................................ 22

Labor Code § 210 ................................................................................... 14

Labor Code § 226 ................................................................ 10, 13, 21, 24

Labor Code § 246 ............................................................................. 15, 21

Labor Code § 248.5 ................................................................................ 15

Labor Code § 2699 .......................................................................... 15, 24

Labor Code § 512 ................................................................................... 11

Labor Code § 514 ................................................................................... 11

Labor Code § 550-551 ...................................................................*passim*

Labor Code § 850-851 ...................................................................*passim*

Labor Code § 852 ................................................................................ 7, 9

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

## I.   <u>INTRODUCTION</u>

Proposed Intervenors' opposition to the motion for preliminary approval spends a great deal of time analyzing their case in the Northern District, and very little time on this one.  Turning logic on its head, Proposed Intervenors argue for an expansive reading of the scope of the release contained in the Parties' Settlement Agreement to cover all the different claims and legal theories asserted in their case. Not only is this just factually wrong given the Class they seek to represent (all of CVS's non-exempt workforce in California), it ignores the case law in this Circuit – and from this Court – that a class action settlement can only release disparate legal theories in other cases arising from <u>the same factual predicate.</u>  If Proposed Intervenors had not filed a Motion to Intervene where they accused Plaintiffs' counsel of colluding with CVS within 24 hours of learning of the Settlement, they could have discussed with Plaintiffs the potential scope of the release. They chose not to – leaving the Parties in the present situation.

Proposed Intervenors' opposition to the Settlement should be overruled. Procedurally, Proposed Intervenors lack standing to object to the Class portion of the Settlement at this time and the PAGA portion at any time according to case law.

With respect to the merits of their motion, Proposed Intervenors state that the indicia of collusion are present without attempting to analyze the very factors courts look to in this Circuit to determine if there is collusion.  When these factors are examined, it is clear there are no indicia of collusion, as courts presented with similar circumstances have found.  Indeed, it is hard to imagine how Plaintiffs could have colluded to undermine a case they did not know about until after Settlement.

Pursuant to well-established case law, Plaintiffs have standing to release derivative PAGA claims and claims previously unasserted that arise from the facts and allegations in the Complaint.  Further, while Proposed Intervenors complain the release is too broad, they cite no case law showing the scope is improper.  It is not. Worse, they ignore the law in this Circuit regarding the force and effect of class

1
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

action releases, presumably so they can loop their case into this one and argue the recovery is inadequate, thereby derailing a hard-fought settlement.

Concerning the potential range of damages, Proposed Intervenors' main criticism is Plaintiffs did not properly evaluate the legal theories in their distinct case. But when the claims that are actually part of Plaintiffs' case(s) are examined, it is clear the Settlement is fair, reasonable, and adequate.  As for the critique that not enough money was allocated to the PAGA portion, Plaintiffs cite below numerous cases – state and federal – from across the state where the same or a lesser percentage was allocated to PAGA.  Apparently, the preference of Proposed Intervenors is to take wages from Class Members and give them to the state as penalties.  This is not even something the real party in interest – the LWDA – is urging Plaintiffs to do despite having notice of the Settlement.

Ultimately, despite significant factual and legal hurdles involving arbitration, changes in policies and practices during the class period, challenges posed by union Collective Bargaining Agreements, differences in store practices, etc., Plaintiffs have obtained a $9.75 million Settlement where Class Members can receive payment sooner rather than later. This is a significant result and warrants approval so Class Members can weigh in on the Settlement and give their feedback. The Settlement should be preliminarily approved.

## II.   ARGUMENT

### A.   Proposed Intervenors Do Not Have Standing to Oppose the Settlement at This Time.

At the outset, it is important to note Proposed Intervenors do not have standing at the Preliminary Approval stage to oppose this Settlement. Concerning the PAGA portion of the Settlement, the real Party in interest is the state of California[1], which is the only entity required to receive notice of the Settlement.  Based on these facts,

---

[1] *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1124 (9th Cir. 2013) (PAGA plaintiffs such sue "as the proxy or agent of the state's labor law enforcement agencies," [internal citations omitted], and do not enjoy "property rights or any other substantive rights" under the statute they enforce.).

several courts have concluded PAGA aggrieved employees have no ability to exclude themselves or object to a settlement. *See Harvey v. Morgan Stanley Smith barney LLC*, 2020 WL 1031801 at \*11 (N.D. Cal. March 3, 2020) (citing to earlier order, court finds that PAGA aggrieved employees have no ability to exclude themselves or object to a PAGA settlement); *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 436 (9th Cir. 2015) ("Unlike Rule 23(c)(2), PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt-out of a PAGA action."); *Ochoa-Hernandez v. Cjaders Foods*, 2010 WL 1340777 at \*5 (N.D. Cal. April 2, 2010) ("Unnamed employees need not be given notice of the PAGA claim, nor do they have the ability to opt-out of the representative PAGA claim.  There is no indication that the unnamed plaintiffs can contest a settlement, if any, reached between the parties.").

With respect to the Class portion of the Settlement, Proposed Intervenors' Motion to Intervene has not been granted, meaning they are not a party to the action. In addition, this Court has not yet ordered notice of the Settlement be sent to Class Members, as required by Rule 23, in order to gauge their reaction.  There is also nothing in the text of Rule 23 (or the local rules) which suggests objections are appropriate at the preliminary approval stage.  *Chavez v. PVH Corp.*, 2015 WL 12915109 at \*3 (N.D, Cal. August 6, 2016) (Objector cites no Civil Local Rule, Federal Rule of Civil Procedure, or other authority that permits a putative class member to file objections to a motion for preliminary approval); *see also Lane v. Facebook, Inc.*, 2009 WL 3458198 at \*5 (N.D. Cal. Oct. 23, 2009) (party which sought to object to motion for preliminary approval of class action settlement "failed to establish any significantly protectable interest incumbent in an opportunity to object to preliminary approval as opposed to the right to object to final approval."); *Allen v. Bedolla*, 787 F.3d 1218, 1221 (9th Cir. 2015) (noting that district court considered objections to preliminary approval of class action settlement after the court granted leave to object at the preliminary approval stage).

Ordinarily, a party who objects to a class action settlement is bound by its terms if the objection is not sustained.  But here Proposed Intervenors get a free bite at the apple whereby they can object to the Settlement, be overruled, and still be able to object again or opt-out.  This is unfair to the Parties, who may now have to respond to Proposed Intervenors' objections multiple times during this settlement approval process.

Plaintiffs are mindful that the Court's orders in this case seem to permit Proposed Intervenors to oppose this Settlement at the Preliminary Approval stage. This is why Plaintiffs will thoroughly respond to the substantive points raised in Proposed Intervenors' Opposition.  However, the Court can still find that the objection is untimely and wait until Final Approval to rule on Proposed Intervenors' Objections, having the benefit of the Class' reaction before doing so.

**B.     There Is No Indicia of Collusion.**

Proposed Intervenors reassert the baseless claim from their Motion to Intervene that Plaintiffs and their counsel have colluded with CVS.  The facts and relevant case law contradict this conclusion.

Although the Ninth Circuit has established factors courts should examine to determine if there is collusion in a class action settlement, Proposed Intervenors' motion fails to mention these factors at all or analyze them.  Specifically, with respect to settlements achieved prior to class certification, district courts are required to look for "subtle signs" of collusion by examining: (1) whether counsel has received a disproportionate share of the settlement; (2) whether the parties have negotiated a "clear sailing agreement"; and (3) whether there is a reversion of unclaimed funds to the defendant. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 946 (9th Cir. 2011).  The *Bluetooth* factors strongly point to a finding of no collusion here.

Plaintiffs' counsel has not received a disproportionate share of the settlement. When evaluating this factor, courts are to compare the actual payout to the class with the fees requested by counsel.  *Camilo v. Ozuna*, 2020 WL 1557428 at *8 (N.D. Cal.

4

April 1, 2020), *citing Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal. 2015). Plaintiffs seek 30% of the settlement fund ($2,925,000), or 44% of the $6,600,750 actually being paid to the Class after all applicable deductions.  Courts have approved similar fee requests without a finding of collusion.  *See Camilo*, 2020 WL 1557428 at *8 (finding no collusion where Plaintiffs requested 30% of settlement fund in fees and 52% of the total payout to the Class); *Schneider v. Chipotle Mexican Grill*, 2020 WL 511953 at *9 (N.D. Cal. January 31, 2020) (granting preliminary approval after evaluation of *Bluetooth* factors; "Even if the Court were to award 30% in attorneys' fees, the majority of the settlement cash will still be distributed to Class Members."); *Ching v. Siemens Industry, Inc.*, 2014 WL 2926210 at *6 (N.D. Cal. June 27, 2014) (finding no collusion where attorney fees sought were 30% where payout to the Class was greater).

With respect to the second factor, while there is a clear sailing agreement in the Settlement Agreement, the attorneys' fees are to be distributed from the Settlement fund.  They are not being separately paid.  *See Id.* ("Clear sailing provisions generally do not raise the same concerns where, as here, the fees are to come from the settlement fund."); *compare Rodriguez v. Wet Publishing Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009) (collusion generally inferred from "clear sailing" provision where attorneys' fees are paid on top of the settlement fund). In addition, the settlement was achieved with the assistance of a mediator, which also weighs in favor of a finding of non-collusiveness.  *Ching*, 2020 WL 1557428 at *8 (while participation of a mediator is not dispositive of whether the settlement is fair, reasonable, and adequate, it is "a factor weighing in favor of a finding of non-collusiveness."); *quoting In re Bluetooth*, 654 F.3d at 948.  Finally, there is no reversion of unclaimed funds to Defendants.  As such, the *Bluetooth* factors merit a finding of no collusion.

Not only does Proposed Intervenors' motion fail to analyze the *Bluetooth* factors, it does not even bother to compare the actions of counsel in this case to those cited in their brief.  For example, in *Roes, 1-2 v. SFBSC Management LLC*, 944 F.3d

5

1035 (2019), the settlement provided for $2 million in cash, $950,000 of which was earmarked as attorneys' fees. This amount was greater than what the class would receive. *Id.* at 1043.  The *Roes* settlement also had a reversion of a significant portion of the benefits provided to the class.  *Id.* at 1042.  These factors are not present here.

This case is also distinguishable from *Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007), where the plaintiffs: (1) negotiated their attorneys fees at the same time as the class relief; (2) insisted on injunctive relief only to abandon it after reaching a settlement with one defendant and agreeing to join another defendant in the settlement; and (3) only added the injunctive relief into the settlement after objectors pointed out problems, and defendants agreed to do so without additional consideration.  Here, by contrast, attorneys' fees were not simultaneously negotiated with class relief, Plaintiffs did not forgo seeking any type of relief to appease Defendants, and the Parties did not alter the scope of the release or material aspects of the Settlement after signing the MOU.

Despite the above facts and case authority, Proposed Intervenors nevertheless argue that collusion can be inferred simply because Plaintiffs included claims in their Settlement which were not originally part of their lawsuit.  However, as explained in detail in their opposition to Proposed Intervenors' Motion to Intervene, Plaintiffs only added claims which arise from the same factual predicate as the combined *Chalian* and *Cabrera* actions.[2]  Specifically, the proposed consolidated Second Amended Complaint ("SAC") directly ties the new Labor Code 850-851 and 550-551 claims to the practice of off-the-clock training.  *See* SAC ¶¶ 50 and 51 (ECF No. 74).  Simply put, if Plaintiffs were colluding with CVS, they would not insist on filing a Complaint which limits the scope of the Labor Code section 850-851 and 550-551 claims to off-the-clock training or work. As for Proposed Intervenors' statements that Plaintiffs could not reach a settlement without the addition of these claims (ECF No. 95, p. 18),

[2] Collusion is also lacking because Plaintiffs and their counsel were unaware of Proposed Intervenors' action.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

this is pure conjecture and – even if true (which it is not) – does not give rise to an inference of collusion given their relationship to the claims already alleged.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("[A] federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.' ").

Proposed Intervenors also argue that the "assessment of potential available damages relies heavily on the availability of PAGA damages *that were only available to him as a result of incorporating the new claims that he did not thoroughly investigate.*" ECF No. 95, p. 18.  (emphasis in original).  This is plainly wrong. Proposed Intervenors' own opposition recognizes that Plaintiffs' assessment of the claims where they provide a dollar value (after taking into account arbitration) is close to $28,000,000 without the inclusion of Labor Code sections 850-851, 852, 550-551. ECF No. 95, p. 15.

Furthermore, the fact that Cabrera Plaintiffs complained about a lack of necessary discovery when opposing CVS's motion for summary judgment is not an admission Plaintiffs did not have adequate data and information <u>at the time of settlement</u> to evaluate the claims.  Following the summary judgment motion, CVS provided voluminous amounts of data and information to Plaintiffs before the first mediation, during the first mediation, in between mediations, during the second mediation, and following the second mediation. Plaintiffs have engaged their experts on numerous occasions over the past year to analyze and quantify this information for purposes of Settlement. Proposed Intervenors' misrepresentation here is emblematic of their Herculean efforts to launch baseless allegations in order to tear down this Settlement at all costs. Ultimately, if Proposed Intervenors' argument were accepted, the "reverse auction argument would lead to the conclusion that no settlement could ever occur in circumstances of parallel or multiple class actions – none of the

7

competing cases could settle without being accused by another of participating in a collusive reverse auction." *Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091 (9th Cir. 2008).

### C.  The Release Is Not Overbroad and Does Not Encompass Disparate Legal Theories Arising from a Different Factual Predicate.

Strangely, Proposed Intervenors urge this Court to adopt an expansive view of the scope of the release in this case as encompassing <u>all of the claims</u> in their lawsuit. Factually, this is incorrect.  This lawsuit is limited to pharmacy employees and therefore cannot affect the majority of Proposed Intervenors' case.  Legally, Proposed Intervenors ignore the case law in this Circuit – and the decision handed down by this Court in this case – that class action releases cannot bar subsequent claims premised on different factual circumstances not plead in the case.

Indeed, even when relying on California contract principles in interpreting a class release, the Ninth Circuit has cautioned that while a defendant "may have drafted the settlement agreement to include as broad a release as possible, the release would have only been enforceable as to subsequent 'claims relying upon a legal theory different from that relied upon in the class action complaint, but depending upon the same set of facts.' " *Williams v. Boeing Co.*, 517 F.3d 1120, 1134 (9th Cir.2008) (emphasis in original); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir.2006) (a settlement release encompasses a plaintiff's claims if they arise from an identical factual predicate as the claims asserted by the settling party in the previous litigation); *see also generally Trotsky v. Los Angeles Federal Savings & Loan Ass'n.*, 48 Cal.App.3d 134, 121 Cal.Rptr. 637 (1975) (a settlement term outside the scope of the complaint was not valid). And while it is true that a class settlement may cover claims that were not presented and even not presentable in the action, the principle applies "only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir.), cert. denied 562 U.S. 1003 (2010) (internal citation & quotation marks omitted). As one court has observed

8

this "identical factual predicate" doctrine is part of the court's interpretation of which claims fall within the terms of the settlement. *McNeary–Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.Supp.2d 928, 949 (N.D. Cal. Mar. 26, 2012).

To illustrate these principles, an overtime claim premised on the failure to pay non-exempt employees for work performed on Sunday arises from a different factual predicate than a failure to pay overtime based on a misclassification of the employee. *See Prieto v. U.S. Bank National Association*, 2012 WL 4510933 at *7 (N.D. Cal. Sept. 30, 2012). Similarly, a claim for waiting time penalties premised on meal and rest period violations arises from a different factual predicate than waiting time penalties stemming from security checks or an incorrect regular rate of pay. *See Lao v. H&M Hennes & Mauritz, L.P.*, 2017 WL 4808814 at *4 (N.D. Cal. October 25, 2017). At the time of settlement, Plaintiffs' counsel were intimately familiar with these cases as they were briefed as part of Plaintiffs' opposition to the motion for judgment on the pleadings. *See* ECF No. 57.

Here, the release is limited to "all claims, causes of action, and legal theories of relief that were alleged or that could have been alleged or otherwise raised in the [complaints and PAGA letters]." More specifically, with respect to any claim for "damages", "penalties", and "other amounts recoverable", they must relate "to the facts and/or legal theories alleged or which could have been alleged." Similarly, as to the PAGA claims, they are limited to the "facts, claims, causes of action or legal theories described" in the complaints and PAGA letters. *See* Exhibit "1" to the Declaration of Michael Morrison submitted in support of the MPA [ECF 89-1], section 4.3. The release is perfectly lawful and, according to the case law cited above, cannot encompass distinct legal theories arising from a different factual predicate.

As such, the reimbursement for cell phone use, penalties for violations Labor Code sections 550-551, 852 and 850-851 not caused by off-the-clock work, and overtime violations caused by an incorrect pay rate are not included in the scope of

9

the release based on the allegations in the lawsuits and SAC.  SAC ¶¶ 50-51, 93, 158-164 [ECF No. 104]. Similarly, inaccurate wage statements which do not list the applicable hourly rates as well as wage statements not maintained for three-years also arise from a different factual predicate than what is alleged in Plaintiffs' Labor Code section 226 claims (e.g. derivative violation of off-the-clock claims). SAC ¶¶ 138-157 [ECF No. 104]. Proposed Intervenors can argue in their case that the scope of the release does not encompass these claims at the appropriate time – similar to what Plaintiffs in this case did – but it is not grounds to hold up this Settlement.  This is a much more logical approach than arguing for a broad release which serves no other purpose than to increase the potential damages in order to strengthen Proposed Intervenors' argument that the Settlement is not fair, reasonable, and adequate.

### D.  Arbitration Agreements Were A Significant Barrier to Recovery.

Proposed Intervenors' accuse Plaintiffs with a lack of diligence with respect to the effect of arbitration on this case.  This ignores that three of the Plaintiffs in these actions were actually compelled to arbitration after contested briefing.  In other words, arbitration had more than a theoretical effect on Plaintiffs' cases – it proved to be a significant hurdle to recovery.

The chief criticism of Proposed Intervenors is their contention that only 37.9% of employees in their case are subject to arbitration agreements, and even less in the earlier filed *Chalian* and *Cabrera* actions.  This is incorrect. The problem with Proposed Intervenors' analysis is that is only recognizes one source for the presentation of the arbitration agreements – the arbitration training program.  As detailed in CVS's declarations, in October 2014, CVS implemented an arbitration program where all current employees were required to review CVS's arbitration program in a training module.  *See* Declaration of Robert Bailey, ¶¶ 3-4 [ECF No. 47-1].  Based on Plaintiffs' analysis, only 425 people from the *Cabrera* class opted out of this program before the *Cabrera* lawsuit was filed.  See Declaration of Michael Morrison Re: Plaintiffs' Reply Brief ("Morrison Decl."), ¶ 2.

In addition, CVS also required new hires as part of the on-boarding process to log onto StarSource and click on the link to the arbitration agreement. *See* Declaration of Susan McClure, ¶¶ 11 [ECF No. 47-6].  This is completely omitted from Proposed Intervenors' analysis.  Finally, the Collective Bargaining Agreement for CVS pharmacists and pharmacist techs contains an arbitration clause and provides for the wages, hours of work, and working conditions of the employees, and provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage. Exhibit "1" to Morrison Decl.  Thus, at a minimum, union Class Members' overtime claims are subject to arbitration pursuant to Labor Code section 514[3], which would include any claims that off-the-clock work led to overtime pay violations. These claims would likely have to be arbitrated on an individual basis <u>first</u> before the other claims could be litigated in court.  See Cal. Code of Civil Procedure section 1284.1. Proposed Intervenors ignore this as well.  Morrison Decl., ¶ 3.

Based on Plaintiffs' analysis, 2,997 employees in the pharmacy were hired after Cabrera's lawsuit was filed.  Of these, more than 1,154 are unionized pharmacists and pharmacy techs subject to arbitration. Any Class Member employed before the *Cabrera* lawsuit who did not opt-out is bound by the arbitration agreement. This means, at most, 1,843 Class Members who were hired after August 2017 have claims which <u>may</u> not be subject to arbitration – a point CVS vehemently disputes. However, because the off-the-clock training issue was rectified by this point (January 2017), <u>none</u> of these Class Members would have suffered cognizable off-the-clock training violations and the resulting derivative violations, which is most of Plaintiffs' case.[4] Morrison Decl. ¶ 4.

---

[3] In their moving papers, Plaintiffs erroneously stated that union pharmacists would be subject to Labor Code section 512(e).  This is incorrect.

[4] There is no evidence that Class Members prefer arbitrating their clams on an individual basis over participation in a class settlement.  And, if Class Members do prefer arbitrating their individual claims after receiving Notice of this Class Settlement, they may opt out of the Settlement and proceed individually in an

### E.        The Settlement is Fair, Reasonable, and Adequate.

Proposed Intervenors spend much of their analysis discussing their case as opposed to the *Chalian* and *Cabrera* actions. When the claims and defenses at issue in Plaintiffs' cases are analyzed, it is clear this Settlement falls well-within the range of reasonableness such that notice can be given to the Class.  Morrison Decl., ¶ 5.

Off-the-Clock Claims: Proposed Intervenors say nothing about Plaintiffs' off-the-clock training claims.  These claims, which are the heart of the case, pose difficult challenges both factually and legally, as described in Plaintiffs' moving papers.  The only criticism Proposed Intervenors make is that Plaintiffs in this action did not account for another source of off-the-clock work related to 5 minutes of opening and closing activities related to a subset of Class Members who worked at Target. Assuming the scope of the release covers this type of off the clock claim, the total sum of lost wages according to Proposed Intervenors' is at maximum $1,000,000 – a sum which does not call into question the fairness of the Settlement given the difficulty of certifying and prevailing on these claims.  *See, e.g., Brewer v. General Nutrition Corp.*, 2014 WL 5877695 at *11 (N.D. Cal. November 12, 2014) (declining to certify off-the-clock class for unpaid closing activities; recognizing that where the employee is clocked out, the presumption is the employee was not working; also requiring substantial evidence that employer knew of off-the-clock work where there is a policy prohibiting off-the-clock work).  It is also unclear whether Proposed Intervenors accounted for arbitration when analyzing the value of this claim, which could reduce the amounts recoverable even more.  Morrison Decl., ¶ 6.

Reimbursement Claims:  Proposed Intervenors say nothing about the type of unreimbursed business expenses detailed in the complaints, SAC, and PAGA letters related to travel, background checks, use of home computers for training, and professional licenses.  *See* SAC ¶¶ 158-164 [ECF No. 104]. Instead, they focus on their cell phone reimbursement claim. Plaintiffs have not plead a cell phone

---

individual arbitration proceeding.

reimbursement claim. Given the unique facts necessary to plead such a claim, it likely does not arise from the same factual predicate. *See Morales v. Pachen Management Corp.*, 2019 WL 4544421 at \*6 (C.D. Cal. July 9, 2019) (motion to dismiss granted where cell phone reimbursement claim failed to allege employer knew or had reason to know the expense was incurred and willfully failed to reimburse it), citing *Nelson v. Dollar Tree Stores, Inc.*, 2011 WL 3568498 at \*2 (E.D. Cal. Aug. 15, 2011). Morrison Decl., ¶ 7.

Plaintiffs' counsel do not believe these claims could be certified or litigated without causing substantial manageability issues because of (1) the facially valid reimbursement policies submitted with Plaintiffs moving papers, (2) the factual dispute over whether a home computer was a necessary business expense, and (3) the fact that professional licenses are not a recoverable expense. Further, they do not believe a court would award substantial PAGA penalties in light of these factors. Plaintiffs maintain that recovery on these claims was extremely unlikely. Morrison Decl., ¶ 8.

Overtime Claims: Proposed Intervenors criticize Plaintiffs for failing to analyze an overtime claim based on use of an incorrect regular rate of pay which does not account for incentive bonuses. Plaintiffs have never asserted such a claim premised on incentive bonuses, which clearly arises from a unique and completely different factual predicate. *See* SAC ¶¶ 86-99 [ECF No. 104]. Proposed Intervenors do not criticize any other portion of the overtime claim, which is derivative of the off-the-clock claims. Morrison Decl., ¶ 9.

Wage Statements: Proposed Intervenors claim that CVS does not retain the entirety of pay data for the three-year period as required by Labor Code section 226, nor does it list all applicable hourly rates. This type of wage statement claim arises from a different factual predicate from Plaintiffs' case. The wage statement claims in Plaintiffs' cases focus on the failure of CVS to include all hours worked and gross/net wages earned due to off-the-clock time not being accounted for in the time records.

13

*See* SAC ¶¶ 138-157 [ECF No. 104].  Morrison Decl., ¶ 10.

Labor Code sections 850-851:  In their moving papers, Plaintiffs provided the Court with an overview of CVS's defenses to the section 850-851 PAGA claims. Based on a spreadsheet provided by CVS, there were 26,000 pay periods where pharmacists exceed the time limits imposed in these statutes, resulting in a maximum exposure of $2.6 million. The analysis did not distinguish the reasons for the alleged violations, however. Morrison Decl., ¶ 11.

As alleged in the SAC, Plaintiffs' legal theory is that off-the-clock training time caused members of the Class to exceed the limits proscribed in these statutes. With respect to violations caused by off-the-clock training incurred prior to the policy prohibiting remote training, the maximum PAGA penalties for 11,998 pharmacy employees (not just pharmacists) are $4,292,100.  This is based on a finding that 23% of the pay periods had such a violation caused by remote training – i.e. 42,921 pay periods of the 190,599.  Because these are derivative claims, they will succeed or fail for the same reasons as the off-the-clock claims.  Further, Plaintiffs do not believe it is likely that for one off-the-clock training violation the court will award wages, liquidated damages in an equal amount, penalties for minimum wage violations, penalties for overtime violations, penalties for non-compliant wage statements, waiting time penalties, Labor Code 210 penalties, and section 850-851 penalties. This type of stacking has been discouraged by Courts.  *See Snow v. United Parcel Service, Inc.*, 2020 WL 1638250 at *3 (C.D. Cal. April 1, 2020) (in context of a motion for remand, court only considers one penalty for each violation and not for each statutory violation alleged);  *Smith v. Lux Retail North America, Inc.*, 2013 WL 2932243 at *4 (N.D. Cal. June 13, 2013) (rejecting stacking a penalties for the same violation). Accordingly, Plaintiffs believe that a Court will substantially reduce the penalties here and that the likely recovery of penalties for this derivative violation will range from $0 to $800,000 (approximately 20% of the maximum exposure). Morrison Decl., ¶ 12.

14

Labor Code section 550-551:  As with the Labor Code section 850-851 cases, Plaintiffs presented in their moving papers CVS's defenses with respect to these potential violations.  Based on the data provided by CVS, the PAGA exposure was $800,000 irrespective of the reason for the violations.  However, Plaintiffs' legal theory with respect to these claims is that off-the-clock training may have occasionally caused Class Members to work seven consecutive days in the same week.  Pursuant to this legal theory, in the sample analyzed by Plaintiffs, there were zero observed violations of these Labor Code sections caused by off-the-clock work.  Thus, Plaintiffs value these claims based on their theory at $0.  Morrison Decl., ¶ 13.

Labor Code section 246(i) claims: Proposed Intervenors fail to assign a dollar value to this claim.  There is perhaps a good reason for this. Courts have not found that this type of violation warrants PAGA penalties.  *See Stearne v. Heartland Payment Sys. LLC*, 2018 WL 746492, * 2-3, 6 (E.D. Cal. February 6, 2018) (no PAGA civil penalties for violation of Healthy Workplaces, Healthy Families Act of 2014 based on language in Labor Code section 248.5 that states "**any person or entity enforcing this article on behalf of the public as provided for under applicable state law shall, upon prevailing, be entitled only to equitable, injunctive, or restitutionary relief, and reasonable attorney's fees and costs**" [emphasis in original]); *Titus v. McLane Foodservice, Inc.*, 2016 WL 4797497, *5, 11-12 (E.D. Cal. September 14, 2016) (finding no penalties recoverable for violations of 246's notice requirements by virtue of Labor Code section 2699(g)(2)). This provision states that "[n]o action shall be brought under this part for any violation of a posting, notice, agency, reporting, or filing requirement of [the Labor Code], except where the filing or reporting requirement involves mandatory payroll or workplace injury reporting.").  Morrison Decl., ¶ 14.

Rest Period Claims: Proposed Intervenors argue the rest period claims are potentially worth $100 million in unpaid premium wages when accounting for arbitration and $55 million in PAGA penalties.  See ECF No. 97, ¶¶ 6(c)(iv) and 6

15

(d)(i). With respect to the wage potion, this is presumably based on Proposed Intervenors' assumption that almost 63% of Class Members are not subject to arbitration agreements covering the claims in this case.  Plaintiffs estimate, when accounting for all sources of arbitration, that between 4% (those who opted-out of arbitration and members of *Chalian* class = 825) and arguably 18% (including the 2,997 new hires after *Cabrera* was filed) are not subject to arbitration.  This would result in damages ranging from $18,412,698 to $82,857,142 before any deductions for liability, damages, and class certification issues.  Morrison Decl., ¶ 15.

Looking at the merits and damages analysis, Proposed Intervenors state that Class Members were not permitted to leave the store during rest periods up through June 2017.  Proposed Intervenors damages calculations run from August 21, 2014 to a least **September or December 30, 2019[5]** (ECF No. 97, ¶ 6(d)(i)) – more than two years after Proposed Intervenors say the policy on remaining in the store for rest periods was changed. ECF No. 95, p. 12.  Therefore, the amount of unpaid wages based on this theory should be lowered by at least 40%, resulting in a range of $11,047,618.80 and $49,714,285. A further reduction is warranted <u>because anyone hired after June 2017 would not be affected by this policy</u> – nearly 3000 employees. The $49 million figure, which is based on new hires after *Cabrera*, should be eliminated.  In addition, the PAGA period analyzed by Proposed Intervenors' expert begins <u>after</u> the policy change (ECF No. 97, ¶ 6(c)(iv)) – so this cannot be the basis for the $55 million in civil penalties. Morrison Decl., ¶ 16.

Moreover, the actual rest break policy in effect before June of 2017 does not state employees were prohibited from leaving the store. It is silent about where the rest period can be taken but does state that an employee "must be relieved of all work duties and responsibilities."  This is consistent with the law – meaning the policy on its face is lawful.  Morrison Decl., ¶ 17 and Exhibit "2" to Morrison Decl.

---

[5] The precise time period is unclear from Drogin's declaration, so Plaintiffs will rely upon the September 30, 2019 date.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

Even if Proposed Intervenors are correct that CVS' policy prohibited Class Members from leaving the store during rest periods, this does not automatically translate into a victory for Plaintiffs. Proposed Intervenors rely on *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016). *Augustus* concerned security guards who lacked the opportunity for lawful rest breaks because they had to remain at their workstations and be reachable via radio and pager to quickly respond to calls requesting, for example, an escort out to the parking lot. *Id.* at 268-72. Given this requirement, rest breaks could not be used to complete personal tasks. *Id.* Unlike in *Augustus*, this case does not involve on-call security guards who must respond to emergency assignments during rest breaks. Pharmacists are not required to carry pagers or radios during rest breaks and respond to work. Morrison Decl., ¶ 18.

In *Augustus*, the Supreme Court further held that under Wage Order Number 4 an employer could not "satisfy its obligation to relieve employees from duties and employer control during rest periods when the employer nonetheless require[d] its employees to remain on call." *Id.* In that case, however, the Supreme Court specifically noted that **"[b]ecause rest periods are 10 minutes in length . . . one would expect that employees will ordinarily have to remain on site or nearby,"** and that this constraint alone **"is not sufficient to establish employer control."** *Id.* at 270 (emphasis added). Thus, *Augustus* turned on the "additional constraints imposed by on-call arrangements," which "compel employees to remain at the ready and capable of being summoned to action . . . ." *Id.* Consistent with this analysis, in *Bell*, Home Depot lawfully required cashiers to remain on premises for every rest break. *Bell v. Home Depot U.S.A., Inc.*, No. 212CV02499JAMCKD, 2017 WL 1353779, at *2 (E.D. Cal. Apr. 11, 2017). According to the Court, it did not matter that the policy restricted the cashier's movement—there was no requirement that they remain "on call" and "Augustus did not directly consider an on-premises rest break policy…" *Id.*

Based on Plaintiffs' interviews with Class Members, the ability of Class Members to take rest periods, as well as where they could take rest periods, varied

17

from store to store and depended in large part on the supervisors in charge.  This undercuts Proposed Intervenors' argument that CVS's scheduling tool uniformly prohibited pharmacists from taking rest periods. This is also why Plaintiffs' counsel in *Chalian* did not assert these claims in the original action (*Cabrera* first asserted the rest period claim).  Morrison Decl., ¶ 19.

One must also keep in mind that CVS has hundreds of pharmacies and employed over 20,000 persons throughout the state during the relevant time period in a retail setting.  These claims are inherently difficult to certify and prevail on due to individualized differences, manageability issues, etc.  When settling this claim, Plaintiffs were aware of the case authority denying class certification under similar circumstances.[6]  Morrison Decl., ¶ 19.

Ultimately, taking into account arbitration, merits, and class certification issues, as well as Proposed Intervenors' evidence, Plaintiffs will revise their estimate to reflect a 10 to 25% chance of certifying a statewide class and winning a favorable

_____

[6] Indeed, several years ago, one of Plaintiffs' attorneys helped prosecute a state-wide wage and hour action on behalf of CVS pharmacists where the court declined to grant class certification.  *See Hadjavi v. CVS Pharmacy, Inc.*, 2011 WL 3240763, at *4 (C.D. Cal. July 25, 2011) ("In this present action, Plaintiffs have failed to demonstrate that Defendants had a uniform or common policy in place that "prevented" employees from taking meal and rest breaks and did not provide overtime wages throughout all California locations. Defendants proffered declarations from pharmacists employed at various locations that contradict Plaintiffs' claim that a system wide policy or practice was in place that prevented pharmacists from taking rest or meal breaks.").  The *Hadjavi* decision is why the *Chalian* matter asserted a putative class only on behalf of the CVS regions that Mr. Chalian worked in, as opposed to on a state-wide basis; counsel's goal was to make class certification more tenable given the prior court's ruling in *Hadjavi*.  Morrison Decl., ¶ 19.  Other cases also illustrate the difficulty of maintaining class certification in a retail setting.  *See Summer York v. Starbucks Corp.*, No. CV0807919GAFPJWX, 2012 WL 12507388, at *5 (C.D. Cal. Nov. 1, 2012) ("If there was a thirty minute period where the two partner rule did not apply, Plaintiff could have taken a perfectly legal off-duty break then. And if she did not do so, it is a highly individualized inquiry as to why that was the case."); *Ordonez v. Radio Shack, Inc.*, 2013 WL 210223, at *11 (C.D. Cal. Jan. 17, 2013) ("Because of the competing testimony before the Court, plaintiff's evidence that defendant *may* have an illegal, written rest break policy is insufficient for this Court to find that common issues predominate. Unlike other cases where a defendant had a purportedly illegal rest or meal break policy and courts found that common issues predominated, there is substantial evidence in this case that defendant's actual practice was to provide rest breaks in accordance with California law") (emphasis in original).

18

judgment.  Using the $11 million figure above (which is at least potentially tethered to a class wide policy), this would mean the unpaid premium wages would range from just over $1 million to just under $3 million.  Morrison Decl., ¶ 20.

Meal Periods: Proposed Intervenors' analysis of the meal period claims contains several flaws.  First, they assert the time punch data reveals $16 million in unpaid premium pay for the arbitration subgroup.  As shown above, the Parties have widely different estimates of the number of persons subject to arbitration. Plaintiffs believe the $16 million number should be substantially reduced. Second, Proposed Intervenors do not state what the violation rate is. According to their expert, there are 23.99 million shifts, but only 820,000 shifts where a meal period violation was observed (and only 400,000 shifts for the arbitration subgroup).  ECF No. 97, ¶¶ 5, 6(d)(2).  That would be a violation rate of well under **3.3%!** There is no plausible way a practice of not providing meal periods can be inferred from such a miniscule violation rate.[7]  This is especially true in light of CVS's facially valid meal period policy.  Morrison Decl., ¶ 21.

As for the single pharmacist theory[8], CVS ignores that during the relevant time period, CVS updated its policies to explicitly allow single pharmacists in their discretion to take a break and leave the pharmacy open, or close it down if they believe the security of the drugs would be at risk to take a meal period.  Exhibit "3" to Morrison Decl.  More importantly, even before this policy update, the records simply do not show a high violation rate.  Thus, anecdotal evidence would be required to determine if CVS dissuaded or discouraged the pharmacists from taking a meal period when the prior policy was silent as to whether solo pharmacists could

---

[7] *See, e.g., York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *26 (C.D. Cal. Nov. 23, 2011) (declining to certify class where meal breaks were taken by plaintiff on 569 of 580 shifts).
[8] The time punches in Plaintiffs' possession could not reveal if the pharmacist was the lone pharmacist during a particular shift.  CVS has claimed their scheduling tool does not account for this as not all stores use the tool. Crediting Proposed Intervenors' evidence, as said above, this does not change the analysis given the low observable violation rate for meal periods.  Morrison Decl., ¶ 23.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

step away for such a break. Given this is a huge employer with hundreds of California locations employing thousands of workers, certification and manageability issues could easily derail these claims.

**F.      Plaintiffs Can Validly Settle the PAGA Claims.**

Proposed Intervenors argue none of the Plaintiffs have standing to pursue the PAGA claims they seek to settle.  This ignores the case law cited in Plaintiffs' Opposition to the Motion to Intervene (filed a week before their opposition) which demonstrates there is nothing improper about releasing derivative PAGA claims Plaintiffs never asserted or have standing to litigate.  *See Waisbein v. UBS Fin. Servs. Inc.*, No. C-07-2328 MMC, 2007 WL 4287334, at *3, 9 (N.D. Cal. Dec. 5, 2007) (release of Labor Code and PAGA claims in earlier settlement agreement barred later PAGA action even though original plaintiffs never exhausted administrative remedies); *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 587 (2010) (release of "all claims" included PAGA claims even though plaintiffs did not exhaust administrative remedies or allege PAGA in their complaint); *Moody v. Charming Shoppes of Del., Inc.*, No. C 07-6073 MHP (JL), 2009 WL 10699672, at *42 (N.D. Cal. Dec. 18, 2009)("[A]lthough PAGA was not [pleaded] in the operative complaint, nor were the administrative remedies exhausted, PAGA penalties can still be properly and validly included in the release."); *see also Smith v. CRST Van Expedited, Inc*, 2012 WL 5873701 at *3 (C.D. Cal. November 20, 2012) (finding it is "well within this court's authority to release derivative claims, even if they are not expressly asserted in the complaint"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("[A] federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.' ") (italic emphasis omitted). Indeed, contrary to what Proposed Intervenors imply, "PAGA's administrative exhaustion requirement is designed to protect the interests of the LWDA and

20

Defendants, not PAGA plaintiffs." *See Harvey v. Morgan Stanley Smith Barney LLC*, 2020 WL 1031801 at *47 (N.D. Cal. March 3, 2020) (underlined emphasis added).  Plaintiffs are therefore adequate representatives to <u>settle</u> these claims.

Proposed Intervenors completely ignore these authorities, instead citing to cases which do not involve the settlement of PAGA claims and where the defendant opposed the litigation of PAGA claims not properly exhausted. *See Hernandez v. Houdini, Inc.*, 2017 WL 8223987 at *11 (C.D. Cal. March 21, 2017) (in context of motion to dismiss filed by the defendant, court finds plaintiff could not pursue PAGA claims not previously exhausted with the LWDA); *Rivas v. Coverall N. Am., Inc.*, 2019 WL 7166972 (C.D. Cal. Feb. 28, 2019) (granting motion to dismiss without prejudice as to PAGA claims not previously exhausted with the LWDA).  The disparate factual circumstances present in these cases means they are completely inapplicable to the current situation where Defendants are not objecting to the inclusion of the PAGA claims in the Settlement.

As shown above, as plead in the SAC, the 550-551, 850-851 claims are derivative of the off-the-clock training claims.  Concerning the Labor Code section 246 notice claim, assuming for the sake of argument that PAGA civil penalties could be awarded for such violations, Plaintiffs had previously alleged a number of deficiencies relating to wage statements entitling them to civil penalties.  Section 246 makes clear a PAGA plaintiff cannot obtain both section 246 and 226 civil penalties and Plaintiffs believe it is unlikely a court would assess multiple civil penalties for each deficient wage statement.

Also, while Proposed Intervenors are correct the *Cabrera* PAGA Plaintiffs had judgment entered against them and had not completed the appellate process, there is no question based on *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73 (2020) that they would have been successful. Plaintiffs are unaware of any law which prevents the Parties from settling claims during an appeal following an adverse judgment against Plaintiffs, especially when the underlying issue has been resolved in Plaintiffs' favor

21

during the pendency of the appeal.[9]  A settlement made prior to inevitable appellate result certainly does not raise any inference of malfeasance or nefarious intentions.[10]

### G.   Courts Have Routinely Approved Settlements Which Have Allocated Similar Amounts to The PAGA Portion of The Settlement.

Proposed Intervenors take issue with the amount of money allocated to the PAGA claims ($75,000).  In what is a perplexing argument, it appears Proposed Intervenors believe a more fair and reasonable outcome would be to rip money from the hands of Class Members in order to give it to the state of California.  This, of course, does not serve the best interests of Class Members and seems calculated to achieve one goal – stopping the Settlement so Proposed Intervenors alone can settle claims with Defendants.  The irony here is that Proposed Intervenors' counsel has agreed to Settlements where even less money was allocated to PAGA when she was defense counsel.  *See* Exhibit "4" to Morrison Decl. and ¶ 24 ($12,000,000 settlement with only $50,000 allocated to PAGA where Beth Gunn was the defense counsel).

Numerous settlements have been approved by Courts where similar or far lesser amounts of money have been allocated to PAGA in hybrid PAGA and class action settlements.  *See In re Uber FCRA Litigation*, 2017 WL 2806698, No. 14-CV-05200-EMC (N.D. Cal., June 29, 2017) (Court approves a settlement agreement of

[9] Proposed Intervenors also make the technical argument that Plaintiffs cannot pursue a PAGA claim because they dismissed their *Cabrera* appeal in order to effectuate the instant settlement.  (Opposition at 7.)  However, this argument ignores the fact that the Settlement Agreement includes a clause that states that "the Parties will cooperate to place themselves in the exact position as if no settlement had been attempted" if final approval is not granted (¶ 8.3), the Northern District could reopen the *Cabrera* judgment under FRCP 60(b)(6), and the Ninth Circuit could even recall its mandate in the *Cabrera* appeal.  *See Calderon v. Thompson*, 523 U.S. 538, 549 (1998).
[10] Proposed Intervenors again accuse Plaintiffs of forum shopping.  As made clear in Plaintiffs' Opposition to the Motion to Intervene and the Motion for Preliminary Approval, Judge Alsup was apprised of the precise reasons for the transfer to this Court to consolidate and settle the cases.  The *Chalian* action was the first filed action and there is nothing improper about seeking a transfer of related cases to the Court with the first filed case.  This Court is more than competent to assess the validity of the Settlement and is not bound by Judge Alsup's "Notice Regarding Factors to be Evaluated For any Proposed Class Action Settlement."  Indeed, Judge Alsup's requirements directly contradict the case authority above, including from the Ninth Circuit.

$7.5 million, where the amount allocated to the PAGA claims was only $7,500 -

.01% of the total settlement amount); *Martino v. Ecolab Inc.*, 2017 WL 1165443, No.

3:14CV04358 (N.D. Cal. Feb. 1, 2017) ($100,000 allotted as PAGA penalties or

0.48% of $21,000,000 settlement amount); *Scott-George v. PVH Corporation*, No.,

2:13CV00441 (E.D. Cal. 2017) ($15,000 allotted as PAGA penalties or 0.46% of

$3,250,000 settlement amount).[11]

     In addition to the numerous cases which have approved similar PAGA

allocations, Proposed Intervenors ignore the fact that "[i]t is the complete package

taken as a whole, rather than the individual component parts, that must be examined

for overall fairness." *Officers for Justice v. Civil Service Commission of San*

---

[11] *See also Hart v. Parkview Community Hospital Medical Center*, 2016 WL 5243101, No. RIC-14-06044 (Riv. Sup. Ct. 2016) ($10,000 allotted as PAGA penalties or 0.39% of $2,550,000 settlement amount); *Nehrlich v. RPM Mortgage Inc.*, 2017 WL 2312257, No. 30-2013-00666783-CU-OE-CXC (Orange County Sup. Ct. 2017) ($10,000 allotted as PAGA penalties or 0.40% of $2,500,000 settlement amount); *Kelley v. The Related Companies of California L.L.C.*, 2016 WL 2846938, No. CIVDS-13-07167 (San Bernardino Sup. Ct. 2016) ($10,000 allotted as PAGA penalties or 0.50% of $2,000,000 settlement amount); *Alvidrez v. Unifirst Corporation*, 2016 WL 3459602, No. CIVRS-13-08105 (San Bernardino Sup. Ct. 2016) ($5,000 allotted as PAGA penalties or 0.45% of $1,100,000 settlement amount); *Gibbins v. Hishmeh Enterprises Inc.*, 2017 WL 935563, No. 56-2015-00468352-CU-PO-VTA (Ventura Sup. Ct. 2017) ($5,000 allotted as PAGA penalties or 0.37% of $1,350,000 settlement amount); *Mejia v. DHL Express (USA) Inc.*, 2017 WL 1165440, No. 2:15CV00890 (C.D. Cal. 2017) ($5,000 allotted as PAGA penalties or 0.34% of $1,450,000 settlement amount); *Castrejon v. O'Connell Landscape Maintenance Inc.*, 2015 WL 11257039, No. RIC-12-12798 (Riv. Sup. Ct. 2015) ($5,000 allotted as PAGA penalties or 0.33% of $1,500,000 settlement amount); *Syed v. M-I, L.L.C.* 2017 WL 3190341, No. 112CV01718DADMJS (E.D. Cal., July 27, 2017) (PAGA allocation of $100,000 on a $7 million total settlement - which is 1.4% of the total settlement); *Mathein v. Pier 1 Imports (U.S.), Inc.*, 2018 WL 1993727, No. 116CV00087DADSAB (E.D. Cal., Apr. 27, 2018) (PAGA allocation of $15,000 on a $3.5 million total settlement - which is .4% of the total settlement); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, No. 113CV01137DADBAM (E.D. Cal., Oct. 13, 2016) (PAGA allocation of $20,000 on a $3.75 million total settlement - which is .53% of the total settlement); *East v. Comprehensive Educational Services Inc.*, 2015 WL 6683879, No. 11-CECG-04226 (Fresno Sup. Ct. 2015) ($10,000 allotted as PAGA penalties or 0.13% of $7,595,846 settlement amount); *Bararsani v. Coldwell Banker Residential Brokerage Company*, No. BC495767 (Los Angeles Sup. Ct. 2016) ($10,000 allotted as PAGA penalties or 0.22% of $4,500,000 settlement amount); *Rico v. Cardinal Health 200 Inc.*, 2017 WL 1191051, No. CIVRS-14-01451 (San Bernardino Sup. Ct. 2017) ($5,000 allotted as PAGA penalties or 0.14% of $3,500,000 settlement amount); *Moppin v. Los Robles Medical Center*, 2017 WL 1135884, No. 5:15CV01551 (C.D. Cal. 2017) ($15,000 allotted as PAGA penalties or 0.40% of $3,775,000 settlement amount).

*Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). Where a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself, because such "a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *See Viceral v. Mistras Group, Inc.*, 2016 WL 5907869 at *9 (N.D. Cal. October 11, 2016) (citations omitted). Here, Plaintiffs have obtained a robust $9.75 million settlement despite numerous legal and factual hurdles to class certification and prevailing on the merits. *Id.* (approving settlement where 0.15% of settlement allocated to PAGA because there was a substantial risk of recovering nothing on the claims).[12]

Finally, contrary to what Proposed Intervenors claim, Plaintiffs have provided notice of this Settlement to the LWDA. The LWDA has not objected or opposed the Settlement despite having notice. Morrison Decl., ¶ 25 and Exhibit "5" to Morrison Decl. This is tacit approval of the allocation amount and weighs in favor of granting

---

[12] It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil penalties. Cal. Lab. Code § 2699(h). *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018) (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 U.S. Dist. LEXIS 154590, at *9 (C.D. Cal. Aug. 12, 2011).

For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—or 0.21% of the maximum—and stated that this reduction was warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed. *Id.* at 529. Likewise, in *Covidien*, the court reduced the potential penalties by over 82%, awarding $500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 U.S. Dist. LEXIS 154590, at *9; *see also Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction under specified PAGA claim where the employer produced evidence that it took its obligations seriously); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 U.S. Dist. LEXIS 83677, at *53 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of Labor Code section 226 as redundant with recovery on a class basis pursuant to section 226, directly); *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 U.S. Dist. LEXIS 189820, at *5-*7 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000, after rejecting numerous other PAGA claims).

24

preliminary approval. *See Echavez v. Abercrombie & Fitch Co., Inc.*, 2017 WL 3669607, *3 (C.D. Cal. 2017) ("[T]he Court finds persuasive that LWDA was invited to file a response to the proposed settlement agreement in this case and elected not to file any objections or opposition thereto. The Court infers LWDA's non-response is tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount.").

### H.     The Proposed Method of Notice Is Proper.

Proposed Intervenors further allege that Plaintiffs' proposed method of notice via U.S. mail is not the best practicable method under the circumstances. Proposed Intervenors assert that a more practicable method of reaching the Class Members would be to send texts with a link to the class action website. Proposed Intervenors' argument is not compelling.

FRCP 23(c)(2)(B) recognizes different methods of notice and states that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." The rule retains the requirement that a court "direct to class members the best notice that is practicable under the circumstances." Traditionally, courts required class notice to be provided by U.S. mail, and although U.S. mail is no longer the presumptive method of notice, it may still be the most reliable method in certain cases. Here, Plaintiffs specifically selected to mail the notice via U.S mail to all known and reasonably ascertainable Class Members based on the records maintained by Defendants. As part of the settlement process, Defendants have agreed to provide the addresses, and not personal cell phone numbers, for all settlement Class Members. Given the addresses of each and every Class Member are available from Defendants' records, Plaintiffs believe that sending the notice via U.S. mail is the most effective and best practicable method under the circumstances. In addition, such notice is the most reliable way to ensure individual notice in this case and is more than sufficient to satisfy due process.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

Dated: July 6, 2020                    Respectfully submitted,

                                       ALEXANDER KRAKOW + GLICK LLP


                                       By:  /s/ Michael Morrison
                                             Michael S. Morrison
                                             Attorneys for Plaintiffs SEVAG CHALIAN,
                                             SIGFREDO CABRERA, ENKO
                                             TELAHUN, CHRISTINE MCNEELY,
                                             PATRICK BRENNAN, and the Putative
                                             Class




## ATTESTATION

I hereby attest that the concurrence in the filing of this document has been obtained from Michael S. Morrison of Alexander Krakow + Glick LLP, Attorneys for Plaintiffs.

Dated: July 6, 2020                    By:   /s/ Armand R. Kizirian
                                             Armand R. Kizirian
                                             Attorneys for Plaintiffs SEVAG CHALIAN,
                                             SIGFREDO CABRERA, ENKO TELAHUN,
                                             CHRISTINE MCNEELY, PATRICK
                                             BRENNAN, and the Putative Class

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL