R. Craig Clark (SBN 129219)
cclark@clarklawyers.com
Alicja A. Urtnowski (SBN 321215)
aurtnowski@clarklawyers.com
**CLARK LAW GROUP**
3258 Fourth Avenue
San Diego, CA 92103
Telephone: (619) 239-1321
Facsimile: (888) 273-4554

Walter Haines (SBN 071075)
admin@uelglaw.com
**UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Telephone: (562) 256-1047
Facsimile: (562) 256-1006

Attorneys for Plaintiffs SEVAG CHALIAN,
SIGFREDO CABRERA, ENKO TELAHUN,
CHRISTINE MCNEELY, PATRICK BRENNAN,
and the Settlement Class

(*Additional Counsel Listed on Following Page*)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public,<br><br>          Plaintiffs,<br><br>      v.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,<br><br>          Defendants. | Case No.: 2:16-cv-08979-AB-AGR<br><br>*Related Case No.: 2:20-cv-02401-AB-AGR*<br><br>*Assigned to Hon. Andre Birotte Jr.*<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      December 4, 2020<br>Time:      10:00 a.m.<br>Location:  Courtroom 7B<br><br>Complaint Filed: July 20, 2016<br>Action Removed: December 5, 2016 |

1

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

Michael H. Boyamian, SBN 256107
Armand R. Kizirian, SBN 293992
**BOYAMIAN LAW, INC.**
550 N. Brand Blvd., Suite 1500
Glendale, CA 91203
Telephone:   (818) 547-5300
Facsimile:   (818) 547-5678
E-mail: michael@boyamianlaw.com
         armand@boyamianlaw.com

Michael S. Morrison, SBN 205320
**ALEXANDER MORRISON + FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:   (310) 394-0888
Facsimile:   (310) 394-0811
E-mail: mmorrison@amfllp.com

Thomas W. Falvey, SBN 65744
**LAW OFFICES OF THOMAS W. FALVEY**
550 N. Brand Blvd., Suite 1500
Glendale, CA 91203
Telephone:   (818) 547-5200
Facsimile:   (818) 500-9307
E-mail: thomaswfalvey@gmail.com

Attorneys for Plaintiffs SEVAG CHALIAN,
SIGFREDO CABRERA, ENKO TELAHUN,
CHRISTINE MCNEELY, PATRICK BRENNAN,
and the Settlement Class

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 4, 2020 at 10:00 am, or as soon thereafter as the matter may be heard in the United States District Court for the Central District of California - 350 West First Street, Los Angeles, CA 90012, Courtroom 7B, Plaintiffs Sevag Chalian, Sigfredo Cabrera, Enko Telahun, Christine McNeely, and Patrick Brennan ("Plaintiffs") will and hereby do move the Court for an Order Granting An Award of Attorneys' Fees, Costs, Settlement Administration Expenses, and Class Representative Enhancement Awards.

This notice and motion are made pursuant to Rules 23(h) and 54 of the Federal Rules of Civil Procedure and on the grounds that the proposed class settlement appears to be fair, reasonable and adequate. The motion is unopposed by Defendants.

This motion is also based upon this notice; the Memorandum of Points and Authorities submitted herewith; the Declarations and exhibits filed concurrently herewith; the other records, pleadings, and papers filed in this action; and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this motion.

Dated: October 27, 2020

CLARK LAW GROUP
UNITED EMPLOYEES LAW GROUP
ALEXANDER MORRISON + FEHR LLP
BOYAMIAN LAW, INC.
LAW OFFICES OF THOMAS W. FALVEY

By: /s/ R. Craig Clark
R. Craig Clark
Alicja A. Urtnowski
Attorneys for Plaintiffs SEVAG CHALIAN,
SIGFREDO CABRERA, ENKO TELAHUN,
CHRISTINE MCNEELY, PATRICK
BRENNAN, and the Settlement Class

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION……………………………………………………………..12

II.   FACTUAL BACKGROUND……………………………………………...14

      A.    Chalian Action…………………………………………………14

      B.    Cabrera Action…………………………………………………15

      C.    Joint Prosecution of Chalian and Cabrera Actions and Settlement……….17

III.  INCREASE IN THE MAXIMUM SETTLEMENT AMOUNT……………...21

IV.   AN AWARD OF 30% OF THE GROSS SETTLEMENT AMOUNT IN
      ATTORNEYS' FEES IS FAIR AND REASONABLE…………………………23

      A.    Class Counsel's Fee is Properly Calculated as a Percentage of the Total
            Class Settlement………………………………………………………..23

      B.    Class Counsel's Request for 30% of the Common Fund is Reasonable….25

      C.    The Lodestar Approach Demonstrates that Class Counsel's Attorneys' Fee
            Request is Fair, Reasonable and Justified Under the Facts of this Case….29

            1. The Total Number of Hours Claimed Is Reasonable…………………..32

            2. Class Counsel Are Entitled to Local Market Rates and the Hourly Rates
            Claimed are Reasonable…………………………………………………..33

      D.    The Substantial Risks of Contingent Nature of this Litigation Support the
            Requested Fee Award……………………………………………………34

      E.    Plaintiffs' Request for Reimbursement of Costs as Part of the Fee Award is
            Reasonable and Proper……………………………………………………36

      F.    Settlement Administration Expenses are Reasonable……………………37

V.    THE PAYMENT TO THE CLASS REPRESENTATIVES FOR THEIR
SERVICES TO THE CLASS IS REASONABLE AND ROUTINELY AWARDED BY
COURTS………………………………………………………………………………38

VI.   CONCLUSION…………………………………………………………44

4

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Acosta v. Frito-Lay, Inc.*
2018 U.S. Dist. LEXIS 75998 (N.D. Cal. May 4, 2018)…………….…......……34,37,39

*Antonopulos v. North American Thoroughbreds, Inc.*
1991 WL 427893 (S.D. Cal. 1991)……………………………………………….......28

*Barbosa v. Cargill Meat Solutions Corp.*
297 F.R.D. 431, 451 (E.D. Cal. 2013)………………………………….…………...29

*Beckman v. KeyBank N.A.*
293 F.R.D. 467, 481–82 (S.D.N.Y. 2013)……………………………….…………31

*Black v. T-Mobile USA, INC.,*
219 WL 3323087 (N.D. Cal July 24, 2019)…………………………..…………...26

*Boeing Co. v. Van Gemert*
444 U.S. 472, 478 (1980)………………………………………..……….....23

*Bower v. Cycle gear, Inc.,*
2016 WL 4439875 (N.D. Cal August 23, 2016)……………………………….........28

*Brown v. CVS Pharmacy, Inc.,*
No. CV 15-7631 PSG (PJWx), 2017 WL 349429 (C.D. Cal. Apr. 24,
2017)……………………………………………………………...…………….28

*Chun v. Bd. of Trustees of E.R.S.*
992 P.2d 127 (Haw. 2000)………………………………………………….....24

*Cullen v. Whitman Medical Corp.*
197 F.R.D. 136, 146-47 (E.D. Pa. 2000)……………….…………………………28

*Cunningham v. Cnty of L.A.,*
879 F.2d 481, 488 (9th Cir. 1988) …………………………………………...29

*Davis v. J.P. Morgan Chase & Co.*
827 F.Supp.2d 172, 184–86 (W.D.N.Y.2011)…………………………....…..…31

*Dawson v. Hitco Carbon Composites, Inc.,*
2019 WL 7842550, *9 (C.D. Cal. November 11, 2019) ……….…....……........…………28

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

1

*Fernandez v. Victoria Secret Stores, LLC.*
No. CV 06-4149 MMM (SH), 2008 WL 8150856 (C.D. Cal. July 21, 2008)………...28

2

3

*Garcia v. Gordon Trucking, Inc.*,
No. CV 10-0324 AWI (SKO), 2012 WL 5364575 (E.D. Cal. Oct. 31,
2012)……………………………………………………………………….........28-29

4

5

6

*Goldberger v. Integrated Resources, Inc.*
209 F.3d 43, 50 (2d Cir. 2000)………………………...………………………....29

7

8

*Gottlieb v. Barry*
43 F.3d 474, 482 (10th Cir. 1994)……………………………………….…....24

9

10

*Harris v. Marhoefer*
24 F.3d 16, 19 (9th Cir. 1994) ……………………………………...…………37

11

12

*Hensley v. Eckerhart*
461 U.S. 424, 437, n. 12) (1983)…………………….……….....…………….32

13

14

*Hightower v. JPMorgan Chase Bank, N.A.*,
No. CV 11-1802 PSG (PLAx), 2015 WL 9664959 (C.D. Cal. Aug. 4, 2015) …….....28

15

16

*In re Activision Securities Litigation*
723 F. Supp.1373,1375 (N.D. Cal. 1989)……………………...……………….28

17

18

*In re Ampicillian Antitrust Litigation*
526 F. Supp. 494 (D.D.C. 1981)…………………….……………………..…29

19

20

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d at 941……………………………………….……………....…...29

21

22

*In re Businessland Sec. Litig.*
(N.D. Cal. June 14, 1991) 1991 U.S. Dist. …………………...……………….36

23

24

*In Re Cendant Corp. PRIDES Litigation*
243 F.3d 722, 736 (3rd Cir. 2001)………………….……………………….26

25

26

27

*In re Crazy Eddie Securities Litigation*
824 F. Supp. 320, 326-327 (E.D.N.Y. 1993)………………………..………..…..28

28

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

*In re GNC Shareholder Litig.*
(W.D. Pa. 1987) 668 F.Supp. 450, 452……………………………...………......34

*In re Pacific Enterprises Securities Litigation,*
47 F.3d at 379 (9th Cir. 1995)…..………………………………………...…..23,28

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*
148 F.3d 283, 342 (3d Cir. 1998)…………..…………………….……….......29

*In re Quantum Health Resources, Inc.*
962 F. Supp. 1254, 1257 (C.D. Cal. 1997)……………….…..…..……..……..25

*In re Safety Components International, Inc.*
166 F. Supp. 2d 72, 109 (D.N.J. 2001)………………………………….......28

*In re Southern Ohio Correctional Facility*
175 F.R.D. 270, 272 (S.D. Ohio 1997)...............………………..…..…..…….39

*In re Thirteen Appeals Arising Out of San Juan*
56 F.3d 295, 305-06 (1st Cir. 1995)…………………………………..……….24

*In re Warner Communications Sec. Litig.*
618 F.Supp. 735 (S.D.N.Y. 1985)…………………………..……………..36

*Ingram v. The Coca-Cola Co.*
200 F.R.D. 685, 694 (N.D. Ga. 2001)…………………………………………39

*Johnson v. Brennan*
2011 WL 4357376 (S.D.N.Y. 2011)…………………………….....………....31

*Kim v. Reins*
9 Cal.5th 73 (2020) …………………………….……..………………......16

*Kim v. Reins*
18 Cal.5th 1052, 1055 (2017) …………………………..…..……………16

*Kirchoff v. Flynn*
786 F.2d 320, 325-26 (7th Cir. 1986)…….…..………………….……………....24

*Koehl v. Verio, Inc.*
142 Cal. App. 41th 1313, 1328 (2006)…………………………………………40

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

*Maley v. Del Global Techs. Corp.*
186 F.Supp.2d 358, 371 (S.D.N.Y. 2002)……………..…...……….…….…...……31

*Matter of Continental Illinois Securities Litigation*
962 F.2d 566, 572 (7th Cir. 1992)……………………………………...………...24

*McKenzie v. Federal Exp. Corp.*
2012 WL 2930201 (C.D. Cal. July 2, 2012)…………..………………….....……31

*Mexican Workers v. Arizona Citrus Growers*
904 F.2d 1301, 1311 (9th Cir. 1990)...........................................................23

*Morris v. Lifescan, Inc.*
54 Fed. Appx. 663 (9th Cir. 2003)…………………………….........………..28

*Officers for Justice v. Civil Service Commission of San Francisco*
688 F.2d 615, 628 (9th Cir. 1982)…………………………………………...…..…38

*Ontiveros v. Zamora*
303 F.R.D. 356, 375 (E.D. Cal. 2014) ……………………...............…..…36

*Paul, Johnson, Alston & Hunt v. Graulty*
866 F.2d 268 (9th Cir. 1989)…………………………..………………...…………….23

*Perkins v. Mobile Housing Board*
847 F.2d 735, 738 (11th Cir. 1998)………………………………..……………….32

*Petrovic v. Amoco Oil Co.*
200 F.3d 1140 (8th Cir. 1999)…………………………………………...…..…39

*Prudential Ins. Co. America Sales Practice Litigation Agent Actions*
(3d Cir. 1998) 148 F.3d 283, 342………………………………………...………..29

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*
2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)……………………………………..31

*Rawlings v. Prudential-Bache Properties, Inc.*
9 F.3d 513, 517 (6th Cir. 1993)…………………..……………………...…..…24

*Roberts v. Texaco, Inc.*
979 F. Supp. 185, 200 (S.D.N.Y. 1997)…………………………………………….39

1
2
*Rodriguez v. West Publ'g Corp.,*
563 F.3d at 958-959……………………………………………….…………38

3
4
*Sheppard v. Consol. Edison Co. of N.Y., Inc.*
U.S.D.C. Case No. 94-CV-0403 (JG), 2002 U.S. Dist. (S.D.N.Y. Aug. 1, 2002)…..39,40

5
*Staton v. Boeing Co.,* 327 F.3d 938, 967-72 (9th Cir. 2003) …………………….…...23

6
7
*Swedish Hosp. Corp. v. Shalala*
1 F.3d 1261, 1266-67 & fn.3, 127 (D.C. Cir.1993)………..……………………….…..24

8
9
*United Steelworkers of Am. v. Phelps Dodge Corp.*
896 F.2d 403, 407 (9th Cir. 1990)……………..……………….........................34

10
11
*Van Bronkhorst v. Safeco Corp.*
529 F.2d 943, 950 (9th Cir. 1976)…………………………..……………………..35

12
13
*Van Gemert v. Boeing Co.*
516 F. Supp. 412, 420 (S.D.N.Y. 1981)………………………………………………29

14
15
*Van Vranken v. Alt. Richfield Co.,*
901 F.Supp. 294, 299 (N.D. Cal. 1995) ……………..…………….......………..38,39
.

16
17
*Vasquez v. Coast Valley Roofing, Inc.,*
266 F.R.D. 482, 492 (E.D. Cal. 2010) ……………………………………..............28

18
19
*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043- 1051 (9th Cir. 2002) ………………………………..…24,25,26,31

20
21
*Whiteway v. Fedex Kinkos Office & Print Services, Inc.*
2007 U.S. Dist. LEXIS 95398 (N.D. Cal. 1997)……………………………….......40

22
23
*Williams v. MGM-Pathe Communications Co.*
129 F.3d 1026, 1027 (9th Cir. 1997)………..……………………….……………..25

24
25
*Zeltser v. Merrill Lynch & Co., Inc.*
2014 WL 4816134 (S.D.N.Y. 2014)………………..………………………..…...31

26
27   */ / /*

28
9

**Statutes:**

Bus. & Prof. Code

    §§ 17200 et seq…………………………………………..…………...14,16

California Labor Code

    §1174……………………………………………………………….15

    §§201-203……………………………………………………...15,16

    §§204……………………………………………………….…14,15

    §§226…………………………………………………………13,15

    §§226(a) ……………………………………………………….…15

    §§226.3……………………………………………….……………14

    §§226.7……………………………………………………...…….14

    §§2698……………………………………………………….……15

    §§2800……………………………………………………...…15,16

    §§2802…………………………………………………….....15,16

    §§512……………………………………………………….15,16

    §1194…………………………………………………...…14,15,16

    §1197………………………………………………….…..15,16

    §1197.1……………………………………………………….15,16

    §1198………………………………………………………….15,16

    §246………………………………………………….…...19,20

    §510………………………………………………………….15,16

    §550-551…………………………………………….………18,19

    §558……………………………………………….………….....15

    §6 201-23………………………………………….…...….………14

    §850-851………………………………………….18, 19,20

Fed. R. Civ. P.

    54(b) ………………………………….………….…………16

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

**Other Authorities**

*Newberg on Class Actions*
    (3rd Ed. 1992), § 14.03; c.f. In Re Cendant Corp. PRIDES Litigation  243 F.3d 722, 736 (3rd Cir. 2001)…………...……………………….……………….……....26

*Newberg on Class Actions* § 11.41 (4th Ed., 2002) …………...……………………….....35

Newberg on Class Actions, section 15:86 (5th Ed. 2015)……...……………….....…...29

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Named Plaintiffs Sevag Chalian, Sigfredo Cabrera, Enko Telahun, Christine McNeely, and Patrick Brennan (collectively, "Plaintiffs" or "Class Representatives") have reached a settlement of the class action case they brought against Defendants CVS Pharmacy, Inc., CVS RX Services, Inc., Garfield Beach CVS, LLC ("Defendants" or "CVS").  Defendant has agreed to pay a non-reversionary amount of **$10,371,346.60**[1] to resolve the claims of the following two Classes (collectively "Settlement Classes"): (1) Pharmacist Settlement Class: All hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and August 5, 2020 (the date of the Preliminary Approval Order), whose claims are not subject to arbitration and who have not previously released and/or adjudicated the Released Claims, and whose LEARNet and/or Site Minder data indicates activity when time punch records do not show he or she was clocked-in; and (2) Retail Pharmacy Settlement Class: Any person who is not a member of the Pharmacist Settlement Class who held an hourly, non-exempt position in a CVS retail pharmacy in the State of California between August 3, 2014 and August 5, 2020 (the date of the Preliminary Approval Order) who has not previously released and/or adjudicated the Released Claims.

The settlement will also pay for the Class Counsel's attorneys' fees and costs, including the costs of settlement administration, payment to the Labor and Workforce Development Agency ("LWDA"), employer and employee payroll taxes, and provide enhancement awards to the Class Representatives.

---

[1] As explained in more detail below, the parties recently negotiated an increase in the total settlement amount because the settlement class is larger than the estimate at the time of settlement due to the protracted time between the settlement and the time of preliminary approval. As a result, the original settlement amount of $9,750,000 increased by $621,346.57. Therefore, the total settlement amount with the added Class Members is now $10,371,346.60. In any case, attorneys' fees will not exceed 30% of the gross settlement amount.

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

In this motion, the Class Counsel seeks an award of attorneys' fees in the amount of $3,111,403.98 (30% of the Maximum Settlement Amount). Plaintiffs further seek their litigation costs in the amount of $32,385.77 and settlement administration costs in the amount of $98,750.00. The Class Representatives also seek a $10,000 enhancement award each to Class Representatives Sevag Chalian, Sigfredo Cabrera, Enko Telahun, and Christine McNeely, and $3,000 to Patrick Brennan.

With respect to the request for 30% of the Maximum Settlement Amount for attorneys' fees, this should be granted for the following reasons:

**Degree of Success:** Despite all the hardships, Class Counsel and Plaintiffs obtained a high, eight-figure settlement amount of $10,371,346.60 which demonstrates that Plaintiffs and their counsel have conferred a substantial benefit to Class Members.

**Risks of Continued Litigation:** The excellent result achieved in this case was obtained in the face of a substantial risk of receiving nothing or a substantially reduced amount if litigation continued. As detailed in the forthcoming Motion for Final Approval, Defendants had potentially several strong defenses to this case that would either completely defeat Plaintiffs' claims or substantially limit their value.

**Fees Awarded by Other Courts:** The percentage sought by Class Counsel is within the historical range of fees awarded by other federal and state courts in similar class actions.

**Time Expended and Lodestar Cross-Check:** Class Counsel performed significant work to achieve the settlement. The lodestar to date is $1,931,323.50. The multiplier of 1.62 which Plaintiffs seek is well within the range of multipliers awarded by state and federal courts in California.

**Contingent Nature of Litigation:** During the pendency of the case, Class Counsel has not received any money and has advanced all costs to date.

**Class Representative Enhancement Awards:** With respect to the Class Representative Enhancement Awards, this should be granted based on: (1) the degree of

success achieved in this consolidated action; (2) the time and effort expended by Plaintiffs/Class Representatives; (3) the significant threat of loss of future job opportunities by lending their name to the lawsuits; and (4) the fact that the Class Representatives executed a general release of claims, whether known or unknown.

Accordingly, the motion should be granted in its entirety.

## II.   FACTUAL BACKGROUND

### A. <u>Chalian Action</u>

On July 20, 2016, Sevag Chalian filed a putative wage and hour class action against CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS LLC ("CVS") in the Los Angeles County Superior Court of the State of California, and on December 5, 2016, CVS removed that action to the United States District Court for the Central District of California, Case No. 2:16-cv-08979, where it remains pending (the "Central District of California Action"). Declaration of Michael Morrison ("Morrison Decl."), ¶ 8.

On July 24, 2017, Plaintiff Chalian moved for leave to file a First Amended Complaint to add Tamara Aleksandryan as a second named plaintiff and class representative. In the First Amended Complaint, Plaintiffs sought to represent themselves and all Pharmacists employed by CVS in Region 65 and 72 of California during the relevant period. The First Amended Complaint alleges CVS failed to pay all wages owed and minimum wage violations (Labor Code § 1194), failed to pay overtime compensation (Labor Code § 1194), failed to provide accurate itemized wage statements (Labor Code § 226), incurred waiting time penalties (Labor Code §6 201-23), and engaged in unfair business practices (Bus. & Prof. Code §§ 17200 et seq.). Morrison Decl., ¶ 9.

Plaintiff Chalian obtained leave to add Tamara Aleksandryan as a second plaintiff but CVS quickly moved to compel arbitration.  The Court granted CVS's motion and dismissed Aleksandryan from the Chalian suit. Morrison Decl., ¶ 10.

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

1    Defendants also moved for judgment on the pleadings arguing res judicata barred

2    Plaintiff Chalian from prosecuting this action because he participated as a settlement

3    class member in prior class action settlements with CVS. Although the Court denied

4    Defendants' motion, CVS asserted an intent to pursue the issue again at summary

5    judgment and on appeal, if necessary.  Morrison Decl., ¶ 11.

6    **B. Cabrera Action**

7    On August 3, 2017, Sigfredo Cabrera filed a putative wage and hour class action

8    against CVS in Alameda County Superior Court of the State of California.  Morrison

9    Decl., ¶ 12.

10   On September 5, 2017, Mr. Cabrera amended his action to add Enko Telahun as a

11   second named plaintiff.  Morrison Decl., ¶ 13.

12   On October 9, 2017, CVS removed Mr. Cabrera's and Mr. Telahun's action to the

13   United States District Court for the Northern District of California, Case No. 3:17-cv-

14   05803 (the "Northern District of California Action"). Morrison Decl., ¶ 14.

15   On March 19, 2018, Plaintiffs Cabrera, Telahun and McNeely filed the second

16   amended complaint, which alleges on behalf of Ms. McNeely and other Pharmacy

17   Employees that CVS failed to pay minimum wages and overtime compensation (Labor

18   Code §§ 204, 510, 558, 1194, 1197, 1197.1 and 1198); failed to provide legally

19   compliant meal periods or compensation in lieu thereof (Labor Code §§ 226.7 and 512);

20   failed to provide legally compliant rest periods or compensation in lieu thereof (Labor

21   Coode § 226.7); failed to pay wages owed (Labor Code §§ 201-203); failed to furnish

22   accurate itemized wage statements (Labor Code §§ 226 and 226.3); failed to maintain

23   accurate records (Labor Code §§226(a), 226.3, and 1174); failed to reimburse for

24   necessary work expenses (Labor Code §§ 2800 and 2802); and participated in unfair

25   business practices (Bus. & Prof. Code §§ 17200 et seq.). The second amended

26   complaint also alleged pursuant to the California Private Attorney General Act, Lab.

27   Code §§ 2698, et seq. ("PAGA"), and on behalf of Plaintiffs Cabrera and Telahun, and

28

15

other aggrieved employees that CVS owes civil penalties for alleged violations of Labor Code §§ 201-203, 204, 226, 226.3, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2800, and 2802 and relevant IWC Wage Orders. (Id.) Morrison Decl., ¶ 15.

On July 10, 2018, Mr. Cabrera, Mr. Telahun, and Ms. McNeely sent CVS a proposed Third Amended Complaint naming Patrick Brennan as a fourth named plaintiff in the Northern District of California Action. Morrison Decl., ¶ 16.

On September 14, 2018, the Northern District of California (Hon. William Alsup) denied CVS's motion to compel Ms. McNeely's claims to arbitration subject to an evidentiary hearing to determine whether she validly opted out of CVS's arbitration program.  CVS appealed the decision denying its motion to compel arbitration the United States Court of Appeals for the Ninth Circuit, Case No. 18-15459 (the "McNeely Appeal"). Morrison Decl., ¶ 17.

On September 25, 2018, the Northern District of California (Judge William Alsup) granted summary judgment in CVS's favor on Mr. Cabrera's and Mr. Telahun's PAGA claims. Specifically, relying on the Court of Appeal decision in *Kim v. Reins*, 18 Cal.5th  1052, 1055 (2017), the Court ruled Cabrera and Telhun were not aggrieved employees because they had voluntarily dismissed their individual and class claims when they filed an amended complaint to avoid arbitration. On January 1, 2019, at Plaintiffs' request, the Court entered a partial final judgment pursuant to Fed. R. Civ. P. 54(b), permitting Mr. Cabrera and Mr. Telahun to appeal the dismissal of their PAGA claims to the United States Court of Appeals for the Ninth Circuit, Case No. 19-15059 (the "Cabrera/Telahun Appeal"). The Plaintiffs appealed and while their case was pending on appeal, the California Supreme Court reversed the *Kim v. Reins* appellate decision, finding that a plaintiff who settled their individual claims for compensation still has standing to pursue a PAGA action. *Kim v. Reins*, 9 Cal.5th 73 (2020). There is therefore little doubt Plaintiffs would have prevailed on appeal and, based on conversations with Defense counsel, Defendants long recognized this was a possibility

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

due to the California Supreme Court having previously granted review of the case. Morrison Decl., ¶ 18.

### C. **Joint Prosecution of *Chalian* and *Cabrera* Actions and Settlement**

In 2018, counsel for the Plaintiffs in the Central District of California Action and the Northern District of California Action decided to work cooperatively and jointly prosecute their respective actions. To that end, the Parties executed new fee sharing agreements with Plaintiffs.  Morrison Decl., ¶ 19.

On March 7, 2019, Plaintiffs' counsel submitted a letter to the California Labor and Workforce Development Agency PAGA Administrator on behalf of a potential new Plaintiff, May Eldanaf. The letter claimed CVS failed to pay her and other pharmacists for mandatory training they were required to complete and that she intended to file a wage and hour action on behalf of herself and other aggrieved employees (the "Eldanaf PAGA Claim").  Morrison Decl., ¶ 20.

On July 29, 2019, Claimants and CVS (together, "the Parties") mediated the Central District of California Action, the Northern District of California Action (as set forth in the proposed Third Amended Complaint), and the Eldanaf PAGA Claim (collectively, the "Wage and Hour Actions") in San Francisco, California before David A. Lowe, Esq., of Rudy Exelrod Zieff & Lowe LLP, a prominent and well-respected mediator in wage and hour class litigation. Before mediation, there was a robust exchange of information and data, including but not limited to the following:

1.    Class list containing persons who did not execute arbitration agreements;

2.    Excel spreadsheets detailing dates of employment, annual salary, and hourly rate for employees in the Class;

3.    Excel spreadsheets containing LEARNet data, which shows when a sampling of Class Members logged into training;

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

4.      Excel spreadsheet containing Site Minder data for 2017 and 2018, which reflects Class Member activity on the LEARNet training site;

5.      Excel spreadsheets showing time punches for a sampling of Class Members, which, when compared to LEARNet data, identifies persons who logged onto LEARNet while not clocked in. The same data also helps reveal potential Labor Code section 850-851 and 550-551 violations;

6.      Excel spreadsheet showing what was paid to Class Members each pay period; and

7.      Relevant policies and procedures regarding training modules, off the clock work, sick pay, reimbursement policy, meal and rest periods, etc.  Morrison Decl., ¶ 21.

Plaintiffs hired an expert statistician to analyze the data and determine the damages, interest, and penalties (statutory and civil) owed to Class Members. Specifically, the LEARNet and Site Minder data was used to determine when Class Members logged into CVS's training system as well as the average duration of each session. These figures were then applied to the entire Class.  Morrison Decl., ¶ 22.

Additional information and data were exchanged between the parties during the mediation. Although the actions did not settle at the July 29, 2019 mediation, subsequent discussions and arms-length negotiations through Mr. Lowe caused the parties to schedule a second day of mediation. Before this second mediation, additional data was provided to confirm the class size, average hourly rate of pay, and number of pay periods/workweeks at issue for the Settlement Classes.  Plaintiffs' expert conducted additional calculations using this new information. Morrison Decl., ¶ 23.

On November 11, 2019, the Parties engaged in a second day of mediation before David A. Lowe, Esq., and came to an agreement in principal to resolve all pending wage and hour disputes between them. Subsequent to this, additional pay and time data, as well as additional written policies, were provided to Plaintiffs to further verify the accuracy of their analysis and projections, and to ensure the Settlement was fair,

reasonable, and adequate.  Plaintiffs also asked their expert to perform additional calculations based on the new data and information.  Plaintiffs conducted additional legal research too and determined based on this research that the Settlement was a good one.[2]  Morrison Decl., ¶ 24.

On March 5, 2020, the Ninth Circuit remanded the *Cabrera* action after the Parties informed the Court of a settlement. On Mach 10, 2020, the District Court in *Cabrera* transferred that case to the Central District after the Parties filed a stipulation to transfer the case to the same courtroom as the *Chalian* matter. Morrison Decl., ¶ 25.

On June 3, 2020, the Parties filed a stipulation with leave to file a consolidated Second Amended Complaint which combines the *Chalian* and *Cabrera* actions into one consolidated action.  The only new claims added were to the PAGA cause of action for Labor Code sections 246, 550-551, and 850-851. These claims were added because they could have been asserted in the underlying action given they arise out of the same nucleus of facts.  Among other things, a pharmacy employee working on training modules outside of ones' normal shift may have resulted in work beyond the time limits imposed in Labor Code sections 850-851, or in the employee working seven consecutive days in a workweek (550-551). Plaintiffs' proposed complaint was careful to tie these allegations to the theories previously alleged in the operative complaints. *See* Second Amended Complaint, ¶¶ 50 and 51 (Exhibit "3" to Morrison Decl.).  As for Labor Code section 246(i)'s notice requirements for wage statements, both the *Chalian* and *Cabrera* complaints had alleged other deficiencies relating to employee wage statements from the outset of the respective litigations. Morrison Decl., ¶ 26.

On June 5, 2020, Plaintiffs Ryan Hyams and Regine Duhon filed a motion to intervene in this case. According to the moving papers, they did so because the proposed SAC added alleged violations of Labor Code sections 246 and 850-851 to the

_____
[2] The final Settlement Agreement was executed in late February, early March 2020 by the Parties.  Morrison Decl., ¶ 25.

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

PAGA cause of action. At the time of settlement, Plaintiffs and their counsel were unaware of the *Hyams* lawsuit. (In fact, the *Hyams* Plaintiffs argued to the Northern District Court [the Hon. Haywood S. Gilliam, Jr., presiding] that their case was not related to this action despite the overlapping claims because, among other things, they sought to represent a much broader class of all non-exempt employees of CVS, not just pharmacy employees. *See* Exhibit "4" to Morrison Decl.) The *Hyams* Plaintiffs also never contacted Plaintiffs' counsel in *Chalian* or *Cabrera* until they learned of the Settlement. Morrison Decl., ¶ 27.

On June 9, 2020, this Court entered an Order denying the Parties' request to consolidate this case and the *Cabrera* Action and file a Second Amended Complaint without prejudice to the re-filing of that request after resolution of the Motion to Intervene. To that end, the Court ordered the Parties to file a Joint Status Report no later than June 15, 2020 and, depending on the status of the case, an appropriate stipulation and order vacating the stay and setting dates necessary to move the case forward. The Parties did so and Proposed Intervenors filed an objection. On June 19, 2020, the Court set the hearing for the Motion to Intervene and Motion for Preliminary Approval for July 24, 2020 at 10:00 am. Morrison Decl., ¶ 27.

On July 2, 2020, the Court granted the amended stipulation to consolidate the *Cabrera* and *Chalian* actions and file an amended, consolidated complaint ("SAC"). The SAC is the operative complaint. Morrison Decl., ¶ 28.

One July 31, 2020, the Court denied the *Hyams* Plaintiffs' motion to intervene. Morrison Decl., ¶ 29.

On June 22, 2020, the Parties sent notice of the proposed Settlement to the LWDA. The LWDA has not objected to the Settlement. Morrison Decl., ¶ 30.

On August 5, 2020, the Court granted the Parties' motion for preliminary approval. Morrison Decl., ¶ 30 and Exhibit "5" to Morrison Decl.

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

On August 28, 2020, the *Hyams* Plaintiffs' filed a notice of appeal with respect to the ruling on the motion to intervene. Morrison Decl., ¶ 31.

On September 3, 2020, the Parties filed a stipulation to amend the class Notice to advise Class Members of the possible impact of this Settlement on other cases involving CVS and pharmacy employees.  On September 9, 2020, the Court signed the stipulation. Morrison Decl., ¶ 32.

On September 22, 2020, the Settlement Administrator mailed notice of this Settlement to Class Members. The Court Approved notice informed the Class Members of all relevant facts of the Settlement and of all relevant dates including dates to opt out or object to the settlement and the date of the Final Approval Motion Hearing on December 4, 2020. The notices/disclosures required by the Class Action Fairness Act were mailed at this time. Morrison Decl., ¶ 33.

So far, the Settlement Administrator has received only three requests for exclusion from Settlement and one objection. Declaration of Mary Butler ("Butler Decl."), ¶¶ 12,13.

### III.   <u>INCREASE IN THE MAXIMUM SETTLEMENT AMOUNT</u>

The Settlement Agreement ¶ 14 regarding Escalator Clause states as follows: "If the size of the Retail Pharmacy Settlement Class, which CVS represents to be approximately 19,000 individuals, increases by more than ten percent (10%) (*i.e.* by at least 1,900 individuals), Plaintiffs may re-negotiate for an increase in the Maximum Settlement Amount…"  Clark Decl. ¶ 27.

After learning that the Settlement Class is larger than the estimate at the time of the settlement, due to the protracted time between the Settlement and the time of Preliminary Approval, Plaintiffs promptly invoked the Escalator Clause and began negotiating an increase in the Maximum Settlement Amount. After weeks of negotiations, the parties reached an agreement to increase the original Maximum

Settlement Amount of $9,750,000 by $621,346.57, As such, the revised Maximum Settlement Amount is **$10,371,346.60**. Clark Decl. ¶ 28.

In order to negotiate the revised Maximum Settlement Amount, the parties engaged in calculations and analysis based on the increase in the size of the settling Class due primarily to Class Members who became employed by the CVS pharmacy departments after the case was settled in mediation but before the date of preliminary approval. In other words, the increase in the class numbers was primarily the newest hires. Clark Decl. ¶ 29.

The parties calculated the increase based on the increase in the number of work weeks worked because the payout to each Class Member is based on their number of work weeks during the Class Period and the added Class Members increased the total workweeks proportionately. The payout to the Class was always intended to be made according to the number of work weeks for each employee in the Class.  Importantly, the amount added to the Settlement will not diminish any previous' Class members' share as indicated on the Notice he or she received. Clark Decl. ¶ 30.

The final class list provided by Defendants contains 24,309 employees with a total of 33,133,555 work weeks. The class list provided prior to mediation plus an addition of workers in order to increase that list to 20,900 workers (20,900 is the number in the Escalator Clause that triggered the renegotiation) resulted in total weeks worked by 20,900 workers on the class list to equal 2,945,837 work weeks. The difference between the total weeks worked by all 24,309 people on the class list and the total weeks worked by the 20,900 people on the class list referenced above is 187,718 weeks (3,133,555-2,945,837). Clark Decl. ¶ 31.

As such, based on the calculations, there are additional 187,718 work weeks in new data which are subject to the Escalator Clause. The mathematically accurate increase in the Maximum Settlement Amount was the additional 187,718 work weeks at the same rate that the work weeks were to be compensated for the agreed threshold in

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

the Escalator Clause (which is $3.30999995 per work week). The increase of 187,718 work weeks of the most recent and newly added Class Members at $3.30999995 per work week calculates to an equally proportionate increase of the Maximum Settlement Amount. Simply, 187,718 x $3.30999995 = $621,346.57 increase. As such, the total revised Maximum Settlement Amount with the added Class Members/work weeks is **$10,371,346.60** [$9,750,000+$621,346.57]. All other elements of the Settlement, as approved by the Court, remain the same. Importantly, attorneys' fees will not exceed 30% of the Maximum Settlement Amount as was stated in the Court approved Notice which went out to all Class Members. Clark Decl. ¶ 32.

## IV.   AN AWARD OF 30% OF THE GROSS SETTLEMENT AMOUNT IN ATTORNEYS' FEES IS FAIR AND REASONABLE

### A.   Class Counsel's Fee Is Properly Calculated as a Percentage of the Total Class Settlement

It is well-established that when a litigant's efforts create or preserve a fund from which others derive benefits, the court may spread litigation costs proportionately among all the beneficiaries to compensate those who created the fund. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than…his client is entitled to a reasonable attorneys' fee from the fund as a whole."); *see also Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990).

Indeed, it is an accepted practice in wage and hour class action settlements to award attorneys' fees to Class Counsel based on a total settlement value agreed upon by the parties. *See e.g. Staton v. Boeing Co.,* 327 F.3d 938, 967-72 (9th Cir. 2003).

In fact, courts have made "the percentage-of-the-benefit approach the preferred method for determining fees" in cases like this one. See *In re Pacific Enterprises Securities Litigation,* 47 F.3d 373, 379 (9th Cir. 1995); *Paul, Johnson, Alston & Hunt v. Graulty,* 866 F.2d 268 (9th Cir. 1989). This is because the lodestar approach encourages

1  inefficiency and wasteful attorney hours. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043,
2  1050 (9th Cir. 2002) ("[I]t is widely recognized that the lodestar method creates
3  incentives for counsel to expend more hours than may be necessary on litigating a case
4  so as to recover a reasonable fee").

5       Other courts have declared a preference for the percentage method because
6  deficiencies of the lodestar method "ha[ve] stimulated greater judicial willingness to
7  evaluate a fee award as a percentage of the recovery." *In re Thirteen Appeals Arising*
8  *Out of San Juan,* 56 F.3d 295, 305-06 (1st Cir. 1995); *Gottlieb v. Barry,* 43 F.3d 474,
9  482 (10th Cir. 1994); *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517
10  (6th Cir. 1993); *Matter of Continental Illinois Securities Litigation,* 962 F.2d 566, 572
11  (7th Cir. 1992); *Chun v. Bd. of Trustees of E.R.S.,* 992 P.2d 127 (Haw. 2000); *Swedish*
12  *Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1266-67 & fn.3, 1271 (D.C. Cir.1993) (noting that
13  the lodestar approach "encourages significant elements of inefficiency," by giving
14  attorneys an "incentive to spend as many hours as possible" and "a strong incentive
15  against early settlement"; the percentage of the fund approach "more accurately reflects
16  the economics of litigation practice," and "the monetary amount of the victory is often
17  the true measure of success, and therefore it is most efficient that it influence the fee
18  award"; and stating "we join the Third Circuit Task Force and the Eleventh Circuit,
19  among others, in concluding that a percentage-of-the-fund method is the appropriate
20  mechanism for determining the attorney fees...."). [1]

21       The percentage of the fund method also more accurately reflects the fees counsel
22  deserves and the benefit conferred upon the class in cases, like this one, where the case
23  resolves before class certification or trial. *See Kirchoff v. Flynn,* 786 F.2d 320, 325-26
24  (7th Cir. 1986) ("The contingent fee uses private incentives rather than careful

26  [1](*Mashburn v. National Healthcare, Inc.,* 684 F. Supp. 679, 695 (M.D. Ala. 1988) ["One of the reasons
27  for supporting a percentage fee award is to encourage early settlement of cases," citing H. Newberg, Attorney Fee Awards, § 2.07 at 48-51]).

28
MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains…The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants…At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation."); *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) ("As critics have noted, the lodestar method needlessly increases judicial workload, creates disincentive for early settlement, and causes unpredictable results. The court agrees with these criticisms.") (internal citations omitted).

Courts have long recognized that a percentage of recovery for attorneys' fees is properly awarded on the basis of the total value ***rather*** than the claims payments made. *Boeing*, 444 U.S. at 478, 480-81 (fees of approximately $2,000,000 approved on settlement value of $7,000,000 where claims totaled $706,600 or 47% of the total available); *Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) (attorney fee award should be based on 33.3% as agreed by the parties based on total recovery value of $4.5 million, though actual payout totaled less; "court abused its discretion by basing the fee on the class members' claims against the fund rather than on the percentage of the entire fund or on the lodestar"); *Vizcaino*, 290 F.3d at 1049-50 (no abuse of discretion in awarding percentage of the common fund).  Accordingly, basing the fee award on the total settlement amount is appropriate and justified under the circumstances.

**B.**   **Class Counsel's Request for 30% of the Common Fund is Reasonable**

Class counsel requests $3,111,403.98 in attorneys' fees, which constitutes 30% of the Maximum Settlement Amount created by their efforts.  Historically, attorneys' fee awards in common fund cases range from 20% to 50% of the fund, depending on the

circumstances of the case. *Newberg on Class Actions* (3rd Ed. 1992), § 14.03; *c.f. In Re Cendant Corp. PRIDES Litigation,* 243 F.3d 722, 736 (3rd Cir. 2001) (finding that "most fee award range 'from nineteen percent to forty-five percent of the settlement fund.'").

According to Newberg:

> No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented.

(*Newberg*, § 14.03).

A 30% fee award of the Maximum Settlement Amount is appropriate in this case. Courts in the Ninth Circuit have ruled 25% is the benchmark courts should use as a starting point to determine the percentage of attorneys' fees to award from a common fund (see *Hanlon*, 150 F.3d at 1029), with 20%-30% being "the usual range." *See Black v. T-Mobile USA, INC.*, 219 WL 3323087, *6 (N.D. Cal July 24, 2019), *citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Courts can adjust this 25% upward based on the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of the work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards in similar cases. *Id., citing Vizcaino*, 290 F.3d at 1048-1050.

Here, a modest upward adjustment of 5% is fully justified. Plaintiff obtained a $10,371,346.60 settlement despite the significant factual and legal hurdles including arbitration clauses for the majority of Class Members, class certification issues, policy prohibiting training outside of work hours, and releases from previous settlements with overlapping claims. Plaintiffs faced a significant risk of recovering nothing if litigation continued. Furthermore, Plaintiff Cabrera's case was in fact dismissed on summary judgment (which was pending review by the Appellate Court)– a fact which shows the perils of litigation such as this.

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

Notably, Plaintiffs also successfully re-negotiated an increase in the Maximum Settlement Amount for the benefit of the Class by timely invoking the Escalator Clause as discussed above.

Navigating challenging legal and factual issues in order to achieve a $10,371,346.60 settlement required exceptional skills from Plaintiffs' counsel. For instance, Plaintiff Chalian was successful in defeating Defendants' motion for judgment on the pleadings. Plaintiffs' counsel also spoke to numerous Class Members and obtained detailed declarations from them. These declarations were later used to demonstrate Defendants' conduct which, Plaintiffs' alleged, violated various provisions of the California Labor Code.

Moreover, Plaintiffs' counsel prepared an extensive damages analysis based on the voluminous and complicated data provided by Defendants. This was not a case where the range of damages was determined merely by looking at pay and time records. For example, Plaintiffs' counsel and their expert reviewed extensive data showing when Class Members logged on to training modules (LEARNet) and separate data showing how long they spent on the training modules (Site Minder) to evaluate one aspect of the off-the-clock training time. This data was cross referenced against their time punches to determine whether the work was done outside of their normal hours of work or during meal periods. Plaintiffs then reviewed the payroll records to ensure this time was unpaid. Plaintiffs again reviewed the time records to determine if the off-the-clock time should be paid at the overtime rate. Overall, before the first mediation, after the first mediation but before the second, and after the second mediation, Plaintiffs' counsel received data and information from Defendants to assess the validity of the Settlement. Plaintiffs' counsel analyzed this information and repeatedly engaged their expert to perform calculations to ensure the Settlement was fair, reasonable, and adequate.

In addition, Plaintiffs' counsel advanced all costs in this matter and their fees are entirely contingent in nature. None of Plaintiffs' counsel have received any

1  compensation for their services during the approximate four years this case has been
2  pending.

3     Importantly, California and federal courts have approved numerous attorneys' fee
4  requests in similar cases seeking an equal or greater percentage of the settlement fund
5  than that sought by Plaintiffs here. *See Bower v. Cycle gear, Inc.*, 2016 WL 4439875, *6
6  (N.D. Cal August 23, 2016) (awarding 30% of common fund in wage and hour action);
7  *In re Pacific Enterprises Securities Litigation*, 47 F.3d at 379 (upholding award of 33
8  1/3% of $12 million settlement); *Morris v. Lifescan, Inc.,* 54 Fed. Appx. 663 (9th Cir.
9  2003) (affirming award of 33% of 14.8 million settlement); *Vasquez v/ Coast Valley
10 Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (granting fees of 1/3 of the common
11 fund in wage and hour action; citing to wage and hour cases where courts approved
12 awards ranging from 30 to 33 percent); *Antonopulos v. North American Thoroughbreds,
13 Inc., 1991* WL 427893, at *4 (S.D. Cal. 1991) (33 1/3 of $3.1 million); *Dawson v. Hitco
14 Carbon Composites, Inc.*, 2019 WL 7842550, *9 (C.D. Cal. November 11, 2019)
15 (awarding 35% in wage and hour action); *Brown v. CVS Pharmacy, Inc.*, No. CV 15-
16 7631 PSG (PJWx), 2017 WL 3494297, at *6 *7 (C.D. Cal. Apr. 24, 2017) (awarding 30
17 percent of the common fund in attorneys' fees in a wage and hour class action
18 settlement); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 146-47 (E.D. Pa. 2000)
19 (1/3 of $5.97 million); *In re Crazy Eddie Securities Litigation,* 824 F. Supp. 320, 326-
20 327 (E.D.N.Y. 1993) (33.8% of $42 million); *In re Safety Components International,
21 Inc.,* 166 F. Supp. 2d 72, 109 (D.N.J. 2001) (1/3 of net $4.31 million); *In re Activision
22 Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding 32.8% of $42
23 million); *Fernandez v. Victoria Secret Stores*, LLC, No. CV 06-4149 MMM (SH), 2008
24 WL 8150856 (C.D. Cal. July 21, 2008) (awarding 34 percent of the common fund in
25 attorneys' fees in a wage and hour class action settlement); *Hightower v. JPMorgan
26 Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959 (C.D. Cal. Aug. 4,
27 2015) (approving attorneys' fees of 30 percent of the settlement fund); *Garcia v.

28

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

*Gordon Trucking, Inc.*, No. CV 10-0324 AWI (SKO), 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (approving fees in the amount of 33 percent of the common fund); *In re Ampicillian Antitrust Litigation,* 526 F. Supp. 494 (D.D.C. 1981) (awarding 45% of $7.3 million settlement fund); *Van Gemert v. Boeing Co.,* 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding 36% of the settlement fund).

### C. **The Lodestar Approach Demonstrates that Class Counsel's Attorneys' Fee Request is Fair, Reasonable and Justified Under the Facts of this Case**

The lodestar number is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the lawyer. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941. The lodestar number is "presumably reasonable." *Cunningham v. Cnty of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988).

If the Court chooses to perform a lodestar analysis, case law is clear the Court is not required to closely scrutinize each claimed attorney-hour, but instead "focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." 5 Rubenstein, Newberg on Class Actions, section 15:86 (5th Ed. 2015) at 331 ; see also *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court"); *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions,* 148 F.3d 283, 342 (3d Cir. 1998) (agreeing with district court that **detailed time summaries were unnecessary where, as here, it was merely using the lodestar calculation to double check its fee award** [emphasis added]; *Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431, 451 (E.D. Cal. 2013) ("Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours.").

29

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

Here, the lodestar approach supports the conclusion that the fee award sought by Class Counsel is fair and reasonable.

Class Counsel's lodestar to date is as follows:

| Law Firm | Hours | Lodestar |
|---|---|---|
| Clark Law Group | 1308.70 | $750,963.50 |
| United Employees Law Group | 75.10 | $50,692.50 |
| Boyamian Law, Inc. | 842.20 | $430,875.00 |
| Alexander Morrison + Fehr LLP | 688.90 | $470,042.50 |
| Law Offices of Thomas W. Falvey | 241.00 | $228,750 |
| **TOTAL** | **3,155.90** | **$1,931,323.50** |

Declaration of R. Craig Clark ["Clark Decl."], ¶¶ 44-47 and Exhibit 2; Declaration of Walter Haines ["Haines Decl."], ¶¶ 5-6; Declaration of Michael Boyamian ["Boyamian Decl.], ¶ 11 and Exhibit 1; Declaration of Armand Kizirian ["Kizirian Decl.] ¶ 5 and Exhibit 1; Morrison Decl. ¶¶ 41, 44, 46 and Exhibits 8, 9, 10; Declaration of Thomas Falvey [Falvey Decl.] ¶¶ 13, 14 and Exhibit 1.

The figures above do not include the extensive time Class Counsel will spend dealing with inquiries from Class Members, preparing final approval papers, appearing at the final approval hearing, preparing a distribution report, appearing at post-final approval distribution hearings, and defending against the *Hyams* Plaintiffs' appeal. Importantly, the appeal alone will take numerous hours. Using a multiplier of **1.62** would result in a lodestar of $3,128,744.07.

While the amount of attorneys' fees the Class Representative and Class Counsel are seeking is higher than their lodestar, this is clearly a case where a multiplier is justified. Despite significant obstacles to recovery, as will be described in more detail in

the Motion for Final Approval and already described in the preliminary approval motion, the Class Representatives and their counsel obtained class-wide relief without the need for protracted litigation, with settlement payments reflecting the amount of weeks each Class Member worked (i.e. the more weeks worked, the higher the payment).

Moreover, courts have routinely approved much greater multipliers than the one Class Counsel are seeking here. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050-51 (upholding 28% fee award that constituted a 3.65 multiplier); *id.* at 1052-54 (noting district court cases in the Ninth Circuit *approving multipliers as high as 6.2*, and citing only 3 of 24 decisions with approved multipliers below 1.4); *McKenzie v. Federal Exp. Corp.,* 2012 WL 2930201 at \*10 (C.D. Cal. July 2, 2012) (in wage and hour action, approving percentage-based fee award that represented multiplier of *3.2*); *Johnson v. Brennan,* 2011 WL 4357376, at \*20 (S.D.N.Y. 2011) (in wage and hour action, noting that "[c]ourts regularly award lodestar multipliers from *two to six times* lodestar") (emphasis added); *Beckman v. KeyBank N.A.,* 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (in wage and hour action, approving of *6.3 multiplier* in lodestar cross-check analysis); citing *Ramirez v. Lovin' Oven Catering Suffolk, Inc.,* 2012 WL 651640, at \*4 (S.D.N.Y. Feb. 24, 2012) (in wage and hour action, approving of *6.8 multiplier* in lodestar cross-check analysis); *Davis v. J.P. Morgan Chase & Co.,* 827 F.Supp.2d 172, 184–86 (W.D.N.Y.2011) (in wage and hour action, approving of *5.3 multiplier* in lodestar cross-check analysis); *see also Zeltser v. Merrill Lynch & Co., Inc.,* 2014 WL 4816134, at \*10 (S.D.N.Y. 2014) (in wage and hour action, approving of *5.1 multiplier* in lodestar cross-check analysis and noting "[w]hile this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing Plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial."); *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 371 (S.D.N.Y. 2002) ("*modest multiplier" of 4.65* in wage and hour class action

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

was "fair and reasonable") (emphasis added).  This is further proof that the amount of fees sought by Class Counsel is reasonable.

### 1.      The Total Number of Hours Claimed Is Reasonable

The declarations of Class Counsel unequivocally demonstrate that the hours spent on this case in order to obtain the important benefits conferred upon Class Members are reasonable. Clark Decl. ¶¶ 44-47 and Exhibit 2; Haines Decl. ¶¶ 5-6; Boyamian Decl. ¶ 11 and Exhibit 1; Kizirian Decl ¶ 5 and Exhibit 1; Morrison Decl. ¶¶ 41, 44, 46 and Exhibits 8, 9, 10; Falvey Decl. ¶¶ 13, 14 and Exhibit 1; see also *Perkins v. Mobile Housing Board,* 847 F.2d 735, 738 (11th Cir. 1998) ("Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of time required in the usual case...."). To deny compensation, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." (*Id.*). The applicant need not detail how each minute was expended; rather counsel should identify 'the general subject matter of his time expenditures.'" *Hensley v. Eckerhart,* 461 U.S. 424, 437, n. 12 (1983).

Although this case settled before class certification (as are the vast majority of Class Action settlements), substantial work was performed by Class Counsel, including: conducting a pre-litigation investigation of this case which included reviewing documents and contacting witnesses; drafting a detailed demand letters and notices to the LWDA of the alleged violations committed by CVS; drafting the complaints; drafting pleadings; drafting and responding to written discovery; meet and confer letters; reviewing Defendants' policies and procedures related to the issues at dispute in this lawsuit; reviewing pay records, time punch records, and records related to training time for the Class and hiring an expert statistician to determine the total wages, penalties, and interest owed to Class Members; attending court hearings; analyzing Class Members' payroll and time records provided by CVS; working with an expert statistician to determine the overall wages, penalties, and interest owed to Class

Members; interviewing numerous Class Members about their experiences at CVS and obtaining their declarations; opposing Defendants' Motion for Judgment on the Pleadings as to Plaintiff Chalian; opposing the Motion for Summary Judgment filed in the *Cabrera* action; opposing Defendants' motions to compel arbitration; preparing detailed mediation briefs; preparing for and attending two full day mediation sessions; negotiating a long form settlement agreement; opposing motions to intervene and to stay the case filed by the *Hyams* Plaintiffs, among other things. Morrison Decl., ¶¶ 34, 41, 42; Clark Decl., ¶ 45; Boyamian Decl. ¶ 9; Kizirian Decl. ¶ 6. Each of these tasks were necessary to prosecute the Action and to obtain the recovery outlined in the Settlement Agreement for the benefit of the Settlement Class. Clark Decl. ¶ 47. Therefore, the number of hours claimed is reasonable.[3]

### 2. Class Counsel Are Entitled to Local Market Rates and the Hourly Rates Claimed Are Reasonable

When determining the reasonable hourly rate, the court should consider the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation. *Acosta*, 2018 U.S. Dist. LEXIS 75998 at *36. For purposes of determining the rate prevailing in the community, the court generally looks at the "forum in which the district court sits." *Id*.

---

[3] Class Counsel is dividing the attorneys' fee award as follows:
   a. Clark Law Group and United Employees Law Group shall collectively receive 50% of any and all attorneys' fees awarded by the Court or recovered in the lawsuit. As between Clark Law Group and United Employees Law Group, with respect to such 50% share of the fees, Clark Law Group shall receive 66.67% of such portion of the fees, and United Employees Law Group shall receive the remaining balance of 33.3% of such portion of the fees.
   b. Alexander Morrison + Fehr LLP shall receive 25% of any and all attorneys' fees awarded by the Court or recovered in the lawsuit.
   c. Boyamian Law, Inc. shall receive 16.75% of any and all attorneys' fees awarded by the Court or recovered in the lawsuit.
   d. Law Offices of Thomas W. Falvey shall receive 8.25% of any and all attorneys' fees awarded by the Court or recovered in the lawsuit. Clark Decl., ¶ 43.

33

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

The background of Class Counsel and the reasonableness of their hourly fees are set forth in the declarations of Class Counsel submitted contemporaneously with this motion. These declarations demonstrate that Class Counsel's hourly rates are well within the range for comparable attorneys of their skill and experience. Clark Decl. ¶¶ 3-12, 46; Haines Decl. ¶ 4; Boyamian Decl. ¶¶ 2-8, 10; Kizirian Decl ¶¶ 2-5; Morrison Decl. ¶¶ 2-6, 40, Exh. 7 (demonstrating Bay Area rates); Falvey Decl. ¶¶ 2-7, 14.

The hourly rates of Class Counsel are fully supported by their extensive experience and reputation in litigating wage and hour class, collective, and representative actions in California, as well as other complex actions. *Id*. *See also United Steelworkers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.") Class Counsel's hourly rates commensurate with the prevailing market rates in the greater San Diego, Los Angeles and San Francisco areas for attorneys of comparable experience and skill. Clark Decl. ¶ 46. Class Counsel has also been approved at the hourly rates requested by various state and federal courts. *Id*. The hourly rates requested are also comparable to the Laffey Matrix. *Id*. Thus, the hourly rates requested are reasonable and should be approved.

### D.   The Substantial Risks and Contingent Nature of this Litigation Support the Requested Fee Award

Defendants vigorously contested liability, the scope and amount of the claimed damages and the propriety of class certification.  While Plaintiffs and their attorneys believe that they would ultimately prevail on the merits in this litigation, Plaintiffs and their counsel realize the risks in defending against Defendants' positions, as detailed in the forthcoming Motion for Final Approval. Resolution of these issues through motion

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

practice, at trial and/or on appeal present a risk at each juncture that the class would not recover. These risks must be considered in assessing the fairness of the settlement, which guarantees a prompt and substantial recovery from Defendants.  The settlement agreement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is particularly true in class action suits. *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976); *Newberg on Class Actions* § 11.41 (4th Ed., 2002) (citing cases).

Furthermore, Class Counsel risked not only a great deal of time but also a great deal of expense to ensure the successful litigation of this action on behalf of the entire Class. There was the prospect of the enormous cost inherent in class action litigation, as well as a long battle with a corporate defendant that had a retained premier defense firm.  That prospect has become a reality in other class action litigation.  The expense of protracted litigation is formidable and can run on the tens of thousands if not hundreds of thousands of dollars.  Therefore, the risks of litigation undertaken by Class Counsel support the fee requested.  Further, since the perception that Plaintiff's counsel is prepared to litigate often results in settlement discussions, the strength and reputation of counsel were undoubtedly critical and an important component of this outstanding result in this matter.

The public policy in favor of settlement of class actions and other complex cases applies with particular force in this case. Certainty of recovery is enhanced by an equitable settlement such as that under consideration in this case.  Accordingly, consideration of the expense, time and risk associated with continued prosecution of this matter weigh in favor of settlement.

In addition, this litigation was initiated over four years ago and the attorneys' fees were wholly contingent in nature.  Class Counsel's attention to this difficult case was undertaken in lieu of work on other cases.  Clark Decl., ¶ 42.  The delay Class Counsel has experienced in receiving any compensation in this case requires that Counsel be

fairly compensated at the end of the case; otherwise, Class Counsel would not take on such risky litigation. Indeed, the expectation in class action cases such as this is that Class Counsel would receive several times the amount of their actual lodestar – not just their lodestar. Thus, cutting Class Counsel's fee award could discourage other, similar litigation to this in the future.

### E.   Plaintiffs' Request for Reimbursement of Costs as Part of the Fee Award is Reasonable and Proper

It is well-established that an attorney who has created a common fund for the benefit of the class is to be reimbursed from the common fund for reasonable litigation expenses. *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014). In wage and hour class actions, courts typically award litigation costs and expenses – including reasonable travel expenses. *Acosta*, 2018 U.S. Dist. LEXIS 75998 at *42.

In total, as set forth in the declarations of counsel to this Court, Class Counsel has incurred an aggregate of $**32,385.77** in unreimbursed costs and expenses in prosecuting this case. Clark Decl. ¶ 49 and Exhibit 3 ($13,065.01); Haines Decl. ¶ 8 ($30.44); Boyamian Decl. ¶ 12 and Exhibit 2 ($9,429.02); Morrison Decl. ¶ 35 and Exhibit 6 ($6,820.12); Falvey Decl. ¶ 15 and Exhibit 2 ($3041.18).

Since the inception of the litigation, Class Counsel has incurred expert costs, mediation costs, etc. All of these costs and expenses were reasonable and necessary to bring this case to closure. *Id*. As one commentator noted, "the prevailing view is that expenses are awarded in addition to the fee percentage." Conte, Attorney Fee Awards § 2.08 (2d Ed. 1977) at 50-51.

Courts routinely reimburse plaintiff's counsel for the costs incurred in prosecuting cases on a contingent fee basis. *See In re Businessland Sec. Litig*., 1991 U.S. Dist. LEXIS 8962 at *6 (N.D. Cal. 1991) (and cases cited therein); *In re Warner Communications Sec. Litig*., 618 F.Supp. 735 (S.D.N.Y. 1985); *In re GNC Shareholder*

*Litig.*, 668 F.Supp. 450, 452 (W.D. Pa. 1987). Each of the expenses incurred are of the type that would normally be billed to and paid for by the client, such as filing fees, legal research, attorney services, litigation support, mediation fees, travel, food and lodging, and other miscellaneous expenses. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Since the expenses and costs were incurred by Class Counsel for the benefit of the Settlement Class, the requested Class Counsel Costs Award is reasonable and should be approved.

### F.    Settlement Administration Expenses are Reasonable

Courts regularly award administrative costs associated with providing notice to the class. *Acosta*, 2018 U.S. Dist. LEXIS 75998 at *44. The total costs of settlement administration are $98,750.00, which exceed the $75,000 originally estimated. Butler Decl., ¶ 15; Morrison Decl. ¶ 36. Settlement administration fees had increased due to the increase in class size from the estimated 19,000 Class Members to 24,706 Class Members which accounts for the increase in mailing, Call Center and Disbursement costs. Butler Decl., ¶ 16. These increased costs are also due to the need to prepare the notices required under the Class Action Fairness Act ("CAFA") [which was originally not budgeted for], and because Simpluris employees were required to work overtime to mail out the Notices in a timely fashion after the Parties determined a need to amend the Notice. Morrison Decl. ¶ 36.

In Class Counsel's view and experience, this is a reasonable cost for claims administration given the size of the class and the type of case. Morrison Decl., ¶ 36

### V.    THE PAYMENT TO THE CLASS REPRESENTATIVES FOR THEIR SERVICES TO THE CLASS IS REASONABLE AND ROUTINELY AWARDED BY COURTS

Incentive awards are typical in class action cases as they are generally meant to "compensate class representatives for work done on behalf of the class, to make up for

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

financial or reputational risk undertaking and bring the action, and sometime, to recognize their willing to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d at 958-959. When determining whether an incentive award is reasonable courts generally consider:

> (1) the risk to the representative in commencing the suit, both financially and otherwise; (2) the notoriety and personal difficulties encountered by the representative; (3) the amount of time and effort spent by the representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the representative as a result of the litigation.

*Van Vranken v. Alt. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995). Where a plaintiff undertakes a significant "reputational risk" such as by bring a wage and hour suit against a former employer, an incentive award is appropriate. *Rodriguez*, 563 F.3d at 958-959.

The Class Representatives seek a service payment or enhancement of $10,000 each to Sevag Chalian, Sigfredo Cabrera, Enko Telahun, and Christine McNeely, and $3,000 to Patrick Brennan. Class Counsel is of the opinion that the requested enhancements are reasonable and proper and supported by the particular circumstances of this case and the applicable case law. Defendants do not oppose this request.

Courts have long acknowledged that active litigants are entitled to be compensated for bearing the risk and time to represent others. *Lo Re v. Chase Manhattan Corp,* 19 F.E.P. Cas. (BNA) 1366 (S.D.N.Y. 1979). Where class representatives are provided with special compensation as part of a class settlement, the Court should ensure that it is fair and reasonable. However, "[i]t is the complete package, taken as a whole, rather than the individual component parts, that must be examined." *Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).

Indeed, enhancements or service awards "are not uncommon and can serve an important function in promoting class action settlements." *Sheppard v. Consol. Edison*

*Co. of N.Y., Inc.,* U.S.D.C. Case No. 94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314, at *16 (S.D.N.Y. Aug. 1, 2002);  see also *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) (noting that class representatives frequently receive substantial incentive payments); *In re Southern Ohio Correctional Facility* 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation", *and cases cited therein*).

The reasonable service awards to the named Plaintiffs are intended to recognize their time and efforts on behalf of the Class.  "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001); *see also Complex Manual* § 30.42 n.763 (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery").  In the *Coca-Cola* case, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Ingram,* 200 F.R.D. at 694; *see also Van Vranken v. Atlantic Richfield Co.* 901 F. Supp. 294 (N.D. Cal. 1995) (approving $50,000 participation award).

Service payments are justified when the representatives risk retaliation as a result of their participation. *See, e.g., Ingram*, 200 F.R.D. at 694.  Specifically in the context of employment-related cases, many courts have recognized that a class representative "lends his or her name and efforts to the prosecution of litigation at some personal peril." *Sheppard*, 2002 U.S. Dist. LEXIS at *17 [*citing Roberts v. Texaco, Inc.* 979 F. Supp. 185, 200 (S.D.N.Y. 1997)].

Indeed, retaliation extends outside the immediate workplace.  It is common knowledge that the modern day workforce is quite mobile, with employees holding

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

several jobs in a career during their lifetime.  It is also true that prospective employers in this computer age "Google" and/or do extensive background checks and have access to court databases to see if applicants have ever filed a lawsuit or ever have been sued. The Class Representatives' prior lawsuits against his employers will not be lost on a prospective employer who has to choose between an applicant who has sued an employer and one that has not.  Plaintiffs therefore risked future employment opportunities by bringing this lawsuit.

The Class Representatives also risked having a potential judgment entered against them.  In fact, several judgments against Class Representatives have been entered. *See, e.g., Koehl v. Verio, Inc.,*142 Cal. App. 41th 1313, 1328 (2006) (a wage and hour class action where Defendant prevailed at trial and the named plaintiffs were held liable, jointly and severally, for the Defendants' attorney fees); *Whiteway v. Fedex Kinkos Office & Print Services, Inc.*, 2007 U.S. Dist. LEXIS 95398 (N.D. Cal. 1997) (cost award of $56,788 was entered against the Named Plaintiff after the Court granted Summary Judgment in a misclassification case).

The service payments being sought here are also justified by the level of participation of the Plaintiffs and the personal sacrifices they made.

**Chalian:**

Plaintiff Sevag Chalian initiated suit against CVS through the *Chalian* action on July 20, 2016.  Since the beginning of this action, Plaintiff Chalian has been deeply involved in this litigation.  Early on, Plaintiff Chalian attended multiple meetings at his counsel's offices in Glendale, California and Santa Monica, California in order to provide information and documents concerning CVS's practices and policies relating to training time for their California pharmacists.  As a pharmacist who had worked in CVS Regions 65 and 72, Plaintiff Chalian was able to provide invaluable information on CVS's policies and practices over a range of pharmacies that Defendants operated. Plaintiff Chalian's information helped guide Class Counsel's discovery efforts in this

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

1    action.  Moreover, Plaintiff Chalian has always remained available to discuss with Class

2    Counsel developments in the case, to answer questions Class Counsel may have had

3    about CVS's policies and practices, and to assist Class Counsel in understanding the

4    types of records that CVS has maintained.  In addition, Plaintiff Chalian spent numerous

5    hours with Class Counsel in preparing responses to Defendants' First Set of Special

6    Interrogatories and Requests for Production of Documents.  Further, over the almost

7    four years that this litigation has been pending, Plaintiff Chalian has provided

8    information to his former co-workers about the lawsuit, how they might become

9    involved, and directing them to Class Counsel if they had questions that he could not

10   answer.  Finally, Plaintiff Chalian reviewed the settlement agreement in this action in

11   detail before agreeing to its terms on behalf of the class.  All in all, collectively over the

12   past several years, Plaintiff Chalian estimates that he has spent at least 55 hours of his

13   time in assisting Class Counsel in prosecuting this matter. Declaration of Sevag Chalian

14   ["Chalian Decl."], ¶¶ 3-11.

15   **Cabrera:**

16        Plaintiff Cabrera went above and beyond what was required of him in this

17   litigation; undoubtedly, without Plaintiff Cabrera's participation and efforts on behalf of

18   the absent class members, there would have been no case and no recovery. As the class

19   representative, Plaintiff Cabrera has performed his duties to the Settlement Class

20   without exception. Plaintiff Sigfredo Cabrera filed the original complaint in the *Cabrera*

21   action on August 3, 2017 and has been actively participating in this lawsuit since June

22   2017. Plaintiff Cabrera underwent in-depth client interview with Class Counsel,

23   responded to formal written discovery propounded by Defendants, regularly

24   communicated with and provided documentation in support of his claims to Class

25   Counsel, and reviewed various documents, including settlement documents, to assist

26   Class Counsel throughout the litigation. As a former CVS pharmacy service associate

27   and pharmacy technician, Plaintiff Cabrera provided invaluable information regarding

28

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

this case. Plaintiff Cabrera has always been very responsive and eager to provide additional information as needed. Plaintiff Cabrera estimates that he has spent approximately 80 hours on the above tasks in this case. Declaration of Sigfredo Cabrera ["Cabrera Decl."], ¶¶ 7-11.

**Telahun:**

As a former CVS pharmacist and pharmacy manager, Plaintiff Telahun has provided significant assistance in this case, including meeting with his counsel, reviewing the pleadings in this case, and providing invaluable input as to Defendants' alleged policies and practices. Plaintiff Enko Telahun was added as a named Plaintiff in the first amended complaint filed on September 5, 2017 in the *Cabrera* case and has actively participated in the litigation of this action since August 2017. In preparation for his inclusion into the *Cabrera* action, Plaintiff Telahun underwent an in-depth client interview with Class Counsel and provided important documentation related to his claims, including text messages and emails from the time he worked at CVS. The text messages and emails provided by Plaintiff Telahun were invaluable in Class Counsel's understanding of the claims raised by this lawsuit. Plaintiff Telahun also responded to formal written discovery propounded by Defendants, and was regularly responsive to Class Counsel's requests for information and clarification. Plaintiff Telahun was also an active participant in the settlement process prior to reviewing and signing the settlement agreement. Throughout this lawsuit, Plaintiff Telahun continued his efforts to hold CVS accountable for its conduct. Plaintiff Telahun estimates that he spent approximately 75 hours working on this lawsuit. Declaration of Enko Telahun ["Telahun Decl."], ¶¶ 7-13.

**McNeely:**

Plaintiff McNeely was invaluable in assisting her counsel's prosecution of the case. Plaintiff Christine McNeely was added as a named Plaintiff in the second amended complaint filed on March 19, 2018 in the *Cabrera* action. Plaintiff McNeely has been involved in the *Cabrera* litigation since October 2017 when she underwent and in-depth

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT
ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS

intake interview with Class Counsel regarding her experience working as a Pharmacy Technician at CVS.  Plaintiff McNeely's insight was instrumental in Class Counsel's understanding of the claims and defenses in this litigation. Plaintiff McNeely responded to formal written discovery propounded by Defendants and provided Class Counsel with important information related to this case, including names and contact information of potential witnesses. In addition, Plaintiff McNeely spent significant time preparing for a deposition in March and April of 2018, although the deposition was ultimately not held. Plaintiff McNeely was also actively involved in the settlement process, maintaining contact with Class Counsel prior to reviewing and signing the settlement agreement. Plaintiff McNeely estimates that she has spent approximately 72 hours working on this lawsuit. Declaration of Christine McNeely ["McNeely Decl."], ¶¶ 7-14.

**<u>Brennan:</u>**

Plaintiff Brennan's efforts in litigating this action have unquestionably conferred a substantial monetary benefit upon the members of the Settlement Class. Plaintiff Patrick Brennan was added as a named Plaintiff, on behalf of himself and the proposed Pharmacist Settlement Class, in the recently filed consolidated complaint. However, Plaintiff Brennan has been involved in the *Cabrera* matter since June 2018. Plaintiff Brennan participated in an in-depth intake interview with Class Counsel and provided a declaration in support of the Cabrera action based on his experience working as a Pharmacy Technician at CVS. Since then, Plaintiff Brennan has been on "stand-by" as a potential class representative until the filing of the consolidated complaint. After Class Counsel obtained Plaintiff Brennan's personnel file from CVS, Plaintiff Brennan diligently reviewed the documents to confirm accuracy and provided consistent support to Class Counsel so that they could understand the facts of the matter. Similarly, Plaintiff Brennan was involved in the settlement process and reviewed and signed the settlement agreement, after lengthy discussions with Class Counsel. Plaintiff Brennan

MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, SETTLEMENT ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT AWARDS

estimates that has spent approximately 40 hours working on this case. Declaration of Patrick Brennan ["Brennan Decl."], ¶¶ 7-16.

It is undoubtable that without Plaintiffs' active participation and commitment to this litigation, there would be no action and therefore no recovery for the members of the Settlement Class. Therefore, this Court should grant Plaintiffs' requests for Service Awards for the time, expense and risk they undertook in prosecuting this action and the conferred benefits.

**VI.    CONCLUSION**

For all of the foregoing reasons, Plaintiffs' motion should be granted in its entirety.

Dated: October 27, 2020

CLARK LAW GROUP
UNITED EMPLOYEES LAW GROUP
ALEXANDER MORRISON + FEHR LLP
BOYAMIAN LAW, INC.
LAW OFFICES OF THOMAS W. FALVEY

By: /s/ R. Craig Clark
R. Craig Clark
Alicja A. Urtnowski
Attorneys for Plaintiffs SEVAG CHALIAN, SIGFREDO CABRERA, ENKO TELAHUN, CHRISTINE MCNEELY, PATRICK BRENNAN, and the Settlement Class