BETH A. GUNN, CA Bar No. 218889
beth@gunncoble.com
CATHERINE J. COBLE, CA Bar No. 223461
cathy@gunncoble.com
GUNN COBLE LLP
303 N. Glenoaks Blvd., Suite 200
Burbank, CA 91502
Telephone: 818.900.0695
Facsimile: 818.900.0723

JENNIFER KRAMER, CA Bar No. 203385
jennifer@laborlex.com
BARBARA DUVAN-CLARKE, CA Bar No. 259268
barbara@laborlex.com
ASHLEY H. CRUZ, CA Bar No. 306235
ashley@laborlex.com
JENNIFER KRAMER LEGAL, APC
5015 Eagle Rock Blvd., Suite 202
Los Angeles, CA 90041
Telephone: 213.955.0200
Facsimile: 213.226.4358

Attorneys for Plaintiffs-Intervenors
RYAN HYAMS and REGINE DUHON,
on behalf of themselves, and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public,<br>Plaintiffs,<br>*v.*<br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,<br>Defendants. | CASE NO.: 2:16-cv-08979-AB-AGR<br>Assigned to Hon. Andre Birotte Jr.<br>*Related Case No.:2:20-cv-02401-AB-AGR*<br><br>**PROPOSED INTERVENORS' EX PARTE APPLICATION FOR CLARIFICATION AS TO EFFECT OF TEMPORARY RESTRAINING ORDER ON INDIVIDUALS REPRESENTED BY THEIR COUNSEL**<br><br>Complaint Filed: July 20, 2016<br>Action Removed: December 5, 2016 |

**TO THE HONORABLE COURT, AND TO PLAINTIFF, RELATED PARTIES, DEFENDANTS, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Third Party Plaintiffs and Proposed Intervenors Ryan Hyams and Regine Duhon ("Proposed Intervenors") on behalf of themselves and all others similarly situated, the plaintiffs in a related class action and Private Attorneys General Act ("PAGA") representative action pending in the United States District Court for the Northern District of California, hereby apply ex parte for clarification from the Court as to the effect of its October 30, 2020 temporary restraining order on Proposed Intervenors' counsel's communicate with individuals:

(a) who have formally retained them as counsel;

(b) who have otherwise formed an attorney-client relationship with them; or

(c) who have sought information from them regarding the *Hyams* matter.

This ex parte application is made on the grounds that because opt outs and objections to the *Chalian* must be received by November 6, 2020, these proposed settlement class members have an immediate need to ensure that Proposed Intervenors' Counsel ("Counsel") is acting in accordance with their promised scope of representation. If Counsel cannot communicate with their clients regarding these issues, their clients will be irreparably harmed, as they will be deprived of the rights conferred via Federal Rule of Civil Procedure 23 and the Notice to the proposed settlement class.

On November 2, 2020, counsel for Proposed Intervenors emailed counsel for Plaintiff Chalian and CVS to notify them that Proposed Intervenors would be seeking ex parte clarification from the Court. Counsel for Plaintiff Chalian and CVS both stated that they needed additional information before they could determine their position on Proposed Intervenors' anticipated motion. (*See* Declaration of Beth Gunn ("Gunn Decl."), ¶ 8.)

## I. INTRODUCTION

On October 30, 2020, this Court issued a Temporary Restraining Order ("TRO") against Proposed Intervenors Ryan Hyams and Regine Duhon and their counsel (collectively, "Proposed Intervenors"), prohibiting them from communicating, either directly or indirectly, with any proposed settlement class members in this case. The Court's Order was in response to the Parties' application for injunctive relief related to the website Proposed Intervenors had used to communicate with settlement class members, including an opt-out form.

As the Court is aware, it issued an Order dated Thursday, October 29, 2020 that preliminarily certified for settlement purposes only classes of persons who do not opt-out of the settlement in this matter and appointed Plaintiffs' counsel as class counsel. (ECF 164). Proposed Intervenors immediately disabled their website upon receipt of that Order, which changed the circumstances under which the website was operating. As a result, since Thursday, October 29, 2020, (1) the website in question displays a message that it is currently not available; (2) proposed settlement class members are no longer able to submit opt-out forms via the website; and (3) Proposed Intervenors are not sending any further communications to proposed settlement class members. (*See* Declaration of Beth Gunn ("Gunn Dec."), ¶ 2).

The next day, the Court issued an order granting the Parties' TRO. (ECF 166). The portion of the TRO sought to be clarified is the language stating: "the Court ORDERS the *Hyams* Plaintiffs to immediately cease communicating, directly or indirectly, with settlement class members about the *Chalian* action." The TRO does not address whether Proposed Intervenors' counsel ("Counsel") may communicate with individuals:

(a) who have formally retained them as counsel;

(b) who have otherwise formed an attorney-client relationship with them; or

(c) who have sought information from them regarding the *Hyams* matter.

Because Counsel have fiduciary duties to communicate with these individuals to accomplish the goals of the representation, and because these individuals are relying upon Counsel, as the attorneys of their choice, Counsel seeks clarification as to the scope of the TRO's limitations on communications with these proposed settlement class members. Emergency relief is necessary because these proposed settlement class members have an immediate need to ensure that Counsel is acting in accordance with their promised scope of representation, including communicating with them regarding filing objections on their behalf and providing consultation or information in relation to their rights to opt out or object, as contemplated by the Court's preliminary approval order.

Those opt outs or objections must be received by November 6, 2020. If Counsel cannot communicate with their clients regarding these issues, their clients will be irreparably harmed, as they will be deprived of the rights conferred via Federal Rule of Civil Procedure ("FRCP") 23 and the Notice to the proposed settlement class ("Notice").

As a result, Proposed Intervenors' *ex parte* application respectfully requests clarification of the effect of the Order on these attorney-client communications between Counsel and these represented individuals, as described more fully below.

## II. LEGAL AUTHORITY FOR REQUEST FOR CLARIFICATION

Counsel has made a good faith attempt to determine the Court's intent as to the communications it has enjoined, and to discern whether the limitations on communications could be implemented without further clarification – at least until the Court has an opportunity to fully hear the matter at issue. Counsel has an honest inability to reconcile portions of the Order with the rights of certain proposed settlement class members who have been guaranteed options in the Notice, as well as Counsel's fiduciary duties in providing the representation that such individuals are relying upon. Thus, clarification of the scope of the TRO is appropriate.

The purpose of an injunction is to preserve the status quo. *See Welchen v. Harris*, No. 216CV00185TLNKJN, 2016 WL 430517, at *1 (E.D. Cal., Feb. 4, 2016,); *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Here, it is unclear whether the Court intended a significant departure from the status quo, because the TRO could be read to enjoin communications between Counsel and represented parties which presumptively were in compliance with the Court's expectations in this matter. "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." FRCP 60(a). Generally, "courts would not be apt to withhold a clarification in the light of a concrete situation that left parties . . . in the dark as to their duty toward the court." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945).

In addition, amendments to preliminary injunctive relief are based on equitable considerations and "[a] court of equity cannot rely on a simple formula but must evaluate a number of potentially competing considerations to determine whether to modify or vacate an injunction entered by consent or otherwise" *Orantes-Hernandez v. Gonzales*, 504 F.Supp.2d 825, 831 (C.D. Cal. Jul. 24, 2007), aff'd sub nom. *Orantes-Hernandez v. Holder*, 321 Fed.Appx. 625 (9th Cir. 2009) (citing *Building and Const. Trades Council of Philadelphia and Vicinity, AFL–CIO v. N.L.R.B.*, 64 F.3d 880, 888 (3d Cir.1995)). "Modification may be warranted when changed factual conditions make compliance substantially more onerous, when an injunction proves to be unworkable because of unforeseen obstacles, or when enforcement of the decree without modification would be detrimental to the public interest." *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d at 830 (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)).

## III. REQUESTS FOR CLARIFICATION

### A. Does the TRO Intend to Limit Communications With Individuals Who Have Retained Counsel to Act on Their Behalf in this Matter?

In addition to Proposed Intervenors themselves,[1] four individuals have executed retainer agreements with Counsel to represent them in filing objections in this case. (Gunn Dec., ¶ 4). The subject matter of the representation must be accomplished no later than November 6, 2020, and Counsel must communicate with these individuals in order to provide the promised representation. Therefore, it is a matter of urgency to obtain clarity as to whether the Court intended to divest these individuals of representation of the attorneys of their choice. A TRO to that effect is in direct conflict with the language in the Notice stating: "You may also pay a different lawyer of your own choosing to appear at the fairness hearing and represent your interests."

For those who have signed retainer agreements, there is no question that these individuals are represented by Counsel and that Counsel has several fiduciary duties in relation to them, including duties to: (1) reasonably consult with their clients to accomplish the objectives of the representation; and (2) keep clients and/or prospective clients reasonably informed about significant developments relating to the representation. *See* California Rules of Professional Conduct 1.4(a). Allowing communications with these individuals is consistent with a client's right to retain the attorney of his or her choice, which is paramount. *See Fracasse v. Brent*, 6 Cal.3d 784, 790 (1972); *see also Cohen v. United States District Court for the Northern District of California*, 586 F.3d 703 (9th Cir. 2009) (a plaintiff has the right to select counsel). It is also consistent with the due process rights of individuals potentially

[1] Counsel assumes that the Court does not intend to prevent them from attorney-client communications with Proposed Intervenors but given the Court's language about its power to regulate Proposed Intervenors, clarification on that point is also requested.

subject to a release of their claims through a proposed class action and PAGA settlement. *See Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 475 (N.D. Cal. 1978) ("Adequate representation goes to the heart of the problem of binding class members to a judgment litigated in their absence without denying them due process of law."); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–77 (1974) ("Due process rights of the individual class members dictates that they must have the right to intelligently and individually choose whether to continue in a suit as class members"). "To meet the constitutional guarantee of procedural due process inherent in FRCP 23, 'notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."'" *Id.* at 174 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

For these reasons, Counsel seeks clarity as to whether the TRO intended to prohibit Counsel from necessary attorney-client communications required to represent these individuals from proceeding with the attorneys of their own choosing.

### B. **Does the TRO Intend to Limit Communications With Individuals Who Have an Established Pre-Existing Attorney-Client Relationship with Counsel in Proposed Intervenors' Matter?**

On May 18, 2020, prior to the Parties' disclosure of the settlement agreement in this matter, Proposed Intervenors sent a text directing putative class members to the original web site in the *Hyams* matter for assistance in providing factual information to the Court to support their class certification motion. (Gunn Dec., ¶ 5). Thousands of individuals responded with interest. (*Id.*) Over the course of the following months, Counsel and their staff engaged in lengthy interviews with 83 of those individuals who are also members of the proposed settlement class in this case.

(*Id.*) Counsel obtained declarations from 50 of those individuals, which were filed in support of their motion for class certification. (*Id.*)

Even where no retainer agreement has been signed, an attorney-client relationship has been formed, as "[w]hen a party seeking legal advice consults an attorney and secures that advice, the relation of attorney and client is established prima facie." *Miller v. Metzinger,* 91 Cal.App.3d 31, 39 (1979) (quoting *Perkins v. West Coast Lumber Co.,* 129 Cal. 427, 429 (1900)); see also *People ex rel. Department of Corporations v. Speedee Oil Change Services, LLC,* 20 Cal.4th 1135, 1147-1148 (1999) (same); *Beery v. State Bar,* 43 Cal.3d 802, 811-812 (1987) (same). In particular, when putative class members in a pending class action respond to inquiries from putative class counsel, a type of attorney-client relationship is formed. *See Barton v. U.S. Dist. Court for Central Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005) (finding that putative class members who filled out a questionnaire that was "designed so that a person filling it out and submitting it is likely to think that he is requesting that the law firm include him in the class action mentioned at the beginning of the form" were in an attorney-client relationship, even if it was undecided whether the person would ultimately become a class member). In fact, the Ninth Circuit noted that "the changes in law and technology that allow lawyers to solicit clients on the internet and receive communications from thousands of potential clients cheaply and quickly do not change the applicable principles." *Id.* at 1112; *see also Mitchell v. Acosta Sales, LLC*, No. CV 11-1796-GAF (OPX), 2011 WL 13309072, at *3 (C.D. Cal., Aug. 29, 2011) (finding putative class members entitled to the privilege attaching to communications generated in an attorney-client relationship by virtue of "the fact that the putative class members contacted the plaintiffs' counsel") (citing *id.*).

Here, all those who responded to Counsel as part of the *Hyams* litigation, including providing information through interviews and signing declarations, formed

an attorney-client relationship to some degree, such that it is appropriate for Counsel to apply the Rules of Professional Conduct to its actions in relation to them. *See Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517, at *9 (N.D. Cal., Dec. 6, 2007) (finding that an attorney-client relationship had developed when putative class counsel had obtained declarations from the individuals as part of the class action); *see also Kullar v. Foot Locker Retail, Inc.*, 191 Cal.App.4th 1201, 1207 (2011) (relying on same). This includes apprising these individuals of the proposed settlement's impact on their participation in the *Hyams* class action, and being available for other consultation consistent with their pre-established relationship. Counsel are the only attorneys knowledgeable enough about the *Hyams* case to do so. In fact, Counsel were independently approached by Trent Andrews, who stated that, as a declarant in the *Hyams* matter (prior to preliminary approval of the *Chalian* settlement), he was confused about the Notice, what it meant for his continued participation in the *Hyams* class action, and also about how to get information from the *Hyams* attorneys about it. (*See* Declaration of Trent Andrews, ECF 153-3 at 3-15, Gunn Dec., ¶ 6). Moreover, Counsel has learned from several individuals prior to the issuance of the Amended Order on October 29, 2020, that they had not received the Notice regarding the proposed settlement here, and it is incumbent on Counsel to ensure that any client who believes that Counsel are representing their interests in the *Hyams* action understand that the *Chalian/Cabrera* proposed settlement could preclude them from continued participation. (Gunn Dec., ¶ 6). It is urgent such individuals receive this critical update regarding the matter for which they have participated in an attorney-client relationship. Since the deadline to opt-out/object is November 6, 2020, they must have sufficient time and information to consider whether or not to participate in the proposed settlement.

For these reasons, Counsel seeks clarity as to whether the TRO intended to prohibit Counsel from such necessary attorney-client communications.

### C. Does the TRO Intend to Limit Communications With Individuals Who Have Sought Information from Counsel Regarding Proposed Intervenors' Matter?

Proposed Intervenors' website was structured so that its original content – asking individuals to contact them if they wished to assist in the prosecution of the *Hyams*' class action – was below the new content regarding the "update" involved in the TRO. (Gunn Dec., ¶ 7). Individuals could submit the contact form at the bottom, after reading or scrolling through the content describing the *Hyams* matter, asking to be contacted by Counsel. Approximately 200 individuals filled out this form, requesting consultation from Counsel. (*Id.*)

Each of these individuals entered into the attorney-client relationship with Counsel that applies to prospective clients. It is unclear, from the contact form, whether the individual sought (1) representation as a potential objector, (2) independent legal advice for use in determining whether to be bound by the proposed settlement (including understanding the status and substance of the *Hyams* class action, which was not included in the Notice), or (3) was attempting to opt out. If Counsel are prevented from contacting these individuals in response to their contact request, the individuals may be deprived of their due process rights or from representation/consultation with the attorneys of their choice, as detailed above.

Further, if these individuals believe they opted out of the settlement, they could be barred from pursuing their claims when they do not want to be. As another California district court has noted, even where a lawyer who "represents the named plaintiff in a class which has been certified immediately assumes responsibility to class members for diligent, competent prosecution of the certified claims… it cannot truly be said that he fully 'represents' prospective class members until it is determined that they are going to participate in the class action." *Moreno v. Autozone, Inc.*, 2007 WL

4287517, at *10. As a result, there is no conflict with Counsel responding to inquiries from these individuals who have asked to be contacted by them.

For this reason, it is urgent that the Court clarify whether Counsel may communicate with these individuals who have attempted to enter into an attorney-client relationship by requesting consultation with Counsel.

**D. <u>Clarification of Counsel's Ability to Communicate With The Individuals With Whom it Has Any Attorney-Client Relationship is Tailored to Protect the Interests of the Proposed Settlement Class.</u>**

Clarifying that Counsel may engage in attorney-client communications with the individuals described above is consistent with settled case law holding that, when fashioning orders limiting communications with potential class members, "a weighing of the need for a limitation and the potential interference with the rights of the parties … should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981); *see also Domingo v. New England Fish Co.*, 727 F.2d 1429, 1440 n. 9 (9th Cir.1984); *Zarate v. Younglove*, 86 F.R.D. 80, 105-106 (1980) (holding that a court order enjoining all communications from counsel soliciting information and potential class members is an overbroad and impermissible restraint on First Amendment rights and public policy favoring class actions, and that any such order must be narrowly tailored to prevent only clearly specified misleading or misrepresentative communications).

**E. <u>Counsel Further Requests that the Court Extend the Opt-Out and Objection Deadline for Any Individuals Represented by Counsel in Any Capacity.</u>**

Several days have passed, as the opt-out/objection deadline nears, in which Counsel have not been able to provide the representation contemplated by the represented parties listed above. Therefore, Proposed Intervenors request that any granting of their request to engage in the type of attorney-client communications listed

above be accompanied with an extension of the opt-out/objection deadline by not less than the same amount of time in which the communications have been prevented. As an equitable matter, the Parties have requested several extensions of deadlines in this matter, and an extension for the purpose of allowing proposed settlement class members to exercise their due process rights would be only fair under the circumstances.

## IV. CONCLUSION

For the reasons set forth above, Proposed Intervenors seek clarification of the TRO's limitations on communications with individuals represented, in one of the above capacities, by Counsel. In the alternative, Proposed Intervenors seek to dissolve the TRO pursuant to FRCP 65 to the extent that it prevents communications with all individuals who are relying on further communications with Counsel in furtherance of asserting their rights to opt out and/or object pursuant to FRCP 23, prior to the expiration of the notice/opt-out/objection period contained in the proposed settlement.

DATED: November 2, 2020

Respectfully sumbitted,

By: /s/ Beth Gunn
Beth Gunn
Catherine J. Coble
Jennifer Kramer
Barbara DuVan-Clarke
Ashley Cruz

Attorneys for Plaintiff
RYAN HYAMS and REGINE DUHON, on behalf of themselves, and all others similarly situated