BETH A. GUNN, CA Bar No. 218889
beth@gunncoble.com
CATHERINE J. COBLE, CA Bar No. 223461
cathy@gunncoble.com
GUNN COBLE LLP
303 N. Glenoaks Blvd., Suite 200
Burbank, CA 91502
Telephone:  818.900.0695
Facsimile:  818.900.0723

JENNIFER KRAMER, CA Bar No. 203385
jennifer@laborlex.com
BARBARA DUVAN-CLARKE, CA Bar No. 259268
barbara@laborlex.com
ASHLEY H. CRUZ, CA Bar No. 306235
ashley@laborlex.com
JENNIFER KRAMER LEGAL, APC
5015 Eagle Rock Blvd., Suite 202
Los Angeles, CA 90041
Telephone:    213.955.0200
Facsimile:    213.226.4358

Attorneys for Plaintiffs-Intervenors
RYAN HYAMS and REGINE DUHON,
on behalf of themselves, and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public,<br><br>　　　　　　Plaintiffs,<br><br>　　　　*v.*<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,<br><br>　　　　　　Defendants. | CASE NO.: 2:16-cv-08979-AB-AGR<br>Assigned to Hon. Andre Birotte Jr.<br>*Related Case No.:2:20-cv-02401-AB-AGR*<br><br>**DECLARATION OF BETH GUNN IN SUPPORT OF PROPOSED INTERVENORS' RESPONSE TO ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Complaint Filed: July 20, 2016<br>Action Removed: December 5, 2016 |

# **DECLARATION OF BETH GUNN**

I, Beth Gunn, declare and state as follows:

1.      I am an attorney duly licensed in the State of California, and admitted to practice before this court, and am counsel of record for the putative class and Plaintiffs-Proposed Intervenors Ryan Hyams and Regine Duhon ("Proposed Intervenors") in the separately pending action styled R*yan Hyams, et al. v. CVS Health Corporation, et al.*, Northern District of California Case No. 4:18-cv-06278-HSG (the "*Hyams* action"). I have firsthand and personal knowledge of the facts set forth in this declaration, as well as information obtained from my law firm's documents, and publicly available court documents, and if called to testify regarding the facts set forth herein, I could and would do so competently and under oath.

2.      On May 18, 2020, before we were aware of the proposed settlement in the *Chalian* matter, as counsel in the *Hyam's* action, we sent a text to putative class members in the separate class action pending in the Northern District of California. The text invited putative class members to a web site containing a contact form for them to reach out to Proposed Intervenors' counsel if they were interested in assisting with the prosecution of the pending class action.  Thousands of putative class members filled out the contact form.  83 individuals who are presumably covered by the proposed settlement in this case spoke with us regarding the case.  Of those, 50 worked extensively with Proposed Intervenors' counsel to submit declarations in support of our pending motion for class certification.  We understand that each of these individuals are relying on us to prosecute the *Hyams* class action on their behalf.

3.      On August 5, 2020, following substantial motion practice on Proposed Intervenors' motion to intervene and their opposition to the preliminary approval motion, this Court issued an Order granting preliminary approval of the proposed settlement in this case. However, that Order did not refer to FRCP 23(g), or provide reasoning as to the FRCP 23(g) factors.  It did not include any language provisionally

certifying the class or appointing Plaintiffs' counsel as class counsel.  In light of the specific language of the Order, as well as the context in which it was issued, Proposed Intervenors interpreted it as an intentional act enabling Proposed Intervenors to continue communications with their own putative class members regarding potential opt-outs and objections to the proposed settlement, a circumstance about which the Court had been well-informed.  Specifically, Proposed Intervenors understood the order to be issued pursuant to FRCP 23(c)(2)(B), which contemplates – *as an alternative to certifying a class* – "ordering notice pursuant to FRCP 23(e)(1)" that gives "notice to a class **proposed to be certified for purposes of settlement**…"

4.     On August 28, 2020, we filed a notice of appeal of the Court's denial of our clients' motion to intervene.  As the Court is already aware, our clients' motion to intervene challenged the adequacy of the proposed class representatives/counsel in this matter, including their standing to resolve Private Attorneys General Act ("PAGA") claims that were not part of their complaints until June 3, 2020 when the Parties filed a consolidated second amended complaint to effectuate the settlement by adding the Labor Code claims that, prior to that point, had only existed as part of our clients' case.

5.     On our clients' behalf we also sought a stay of the proposed settlement in this case, arguing that if the appeal is granted, it would affect the notice to the class and, among other things, if the Court's ruling on the motion to intervene was reversed, we would be able to participate in potential settlement communications, including the communications to putative settlement class members.

6.     On September 3, 2020, knowing that the rights of putative class members/aggrieved employees in our clients' lawsuit and those who might be bound by the proposed settlement was pending before the Ninth Circuit, the Parties in the *Chalian* case filed a joint stipulation to change the notice to be sent to proposed settlement class members **to specifically mention the *Hyams* case**.

7.     The subject matter of the Stipulation deviated significantly from the substance of the preliminary approval motion and the *Chalian* Plaintiffs' counsel's representations at the preliminary approval hearing. In other words, *after* the preliminary approval order to send notice to the proposed settlement class, the *Chalian* Parties agreed to a change in the material terms of the proposed settlement – *i.e.*, that the scope of the release would be much broader than what the *Chalian* Plaintiffs' counsel had previously asserted it was.

8.     The new notice to the proposed settlement class did not include any contextual information, and specifically excluded any statements about: (1) which legal rights and/or claims were overlapping; (2) the extent to which the *Hyams'* case claims might be impacted/waived/barred by the proposed settlement; (3) information regarding Proposed Intervenors' attempts to intervene or their objections to the proposed settlement; (4) information regarding the pending appeal related to that very issue; or (5) contact information for Proposed Intervenors' counsel.  The Court approved the sending of this new notice ("Notice") without requiring the Parties to provide any additional information.  The language of the Order again did not address any of the items missing from the prior Order, including the potential conditional certification of a settlement class or appointment of class counsel, or an analysis of the FRCP 23(g) factors required to support such a ruling.

9.     We were also extremely concerned about upholding our fiduciary duties to the putative class in the *Hyams* action, with whom we perceived to be in the exact same relationship as the *Chalian* Plaintiffs' counsel in the instant action, as according to the Court's prior orders, both counsel had proposed acting as class counsel and neither counsel had been appointed as such.  We consulted with experienced ethics counsel, William Balin, to ensure that we were not violating any ethical duties by communicating with proposed settlement class members who were also our putative class members, and that all such communications were appropriate. I understood Mr. Balin approved our communications as consistent with our ethical

DECLARATION OF BETH GUNN IN SUPPORT OF PROPOSED INTERVENORS' RESPONSE TO OSC

duties under the circumstances.  I also understood Mr. Balin found that we had established an attorney-client relationship with all of the individuals who had consulted with us or otherwise participated in the prosecution of the *Hyams* case.

10. After receiving approval from our ethics attorney, we updated the web site for the *Hyams* action to include the critical information detailed above, and attempted to address questions that individuals contemplating settlement might have. The decision to provide the information in this manner depended almost entirely on our understanding that, in the absence of a FRCP 23(g) order appointing counsel, or a FRCP 23(c) order certifying a class, notice of a class action settlement pursuant to FRCP 23(e) was designed solely to provide necessary information to putative class members, and intentionally deferred other questions regarding certifying a class or appointing counsel for a later time.  A true and correct copy of the web site copy posted on October 21, 2020 is attached hereto as Exhibit A.

11. After this understanding was brought to the Court's attention, on October 29, 2020, the Court issued a new Order conditionally certifying a class and appointing the *Chalian* Plaintiffs' counsel as conditional class counsel.  As soon as we received notice of this Order, we disabled the website.  The following day, the Court issued the instant TRO and Order to Show Cause Why a Preliminary Injunction Should Not Issue.

12. It has always been my understanding that it is acceptable to gather absent class members' forms to mail to the settlement administrator, especially since the spirit of FRCP is to remove any barriers to exercising the right to opt out of a class action settlement, which would include removing barriers created by forcing class members to either write out or type and print an opt-out form, make sure all the relevant information was included, find an envelope and address it, find (and possibly purchase) a stamp, and mail it.  I am aware, from my interactions with other putative class members, that these actions are frequently not easy for the class members.

13.     My co-counsel and myself are the only attorneys knowledgeable enough about the *Hyams* case to educate class members about the impact of the *Chalian* case on the *Hyams* case.  In fact, we were independently approached by Trent Andrews, who stated that, as a declarant in the *Hyams* matter (prior to preliminary approval of the *Chalian* settlement), he was confused about the Notice, what it meant for his continued participation in the *Hyams* class action, and also about how to get information from the *Hyams* attorneys about it.  Mr. Andrews contacted us after he received the notice and before the web site text was issued.

14.     Moreover, we have learned from several individuals prior to the issuance of the Amended Order on October 29, 2020, that they had not received the Notice regarding the proposed settlement here, and it is incumbent on us to ensure that any client who believes that we are representing their interests in the *Hyams* action understand that the *Chalian/Cabrera* proposed settlement could preclude them from continued participation.

15.     The web site at issue was structured so that its original content – asking individuals to contact them if they wished to assist in the prosecution of the *Hyams*' class action – was below the new content regarding the "update" involved in the TRO.  Individuals could submit the contact form at the bottom, after reading or scrolling through the content describing the *Hyams* matter, asking to be contacted by Counsel.  Approximately 200 individuals filled out this form, requesting consultation from Counsel.

///
///
///
///
///
///
///

DECLARATION OF BETH GUNN IN SUPPORT OF PROPOSED INTERVENORS' RESPONSE TO OSC

16.     Attached hereto as Exhibit B are true and correct copies of the Notice of
Class Action Settlement Forms for this matter received by my clients Ryan Hyams
(complete Notice) and Regine Duhon (first page of Notice)  listing the approximate
settlement payments.

I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Executed on November 4, 2020, at Sherman Oaks, California.

/s/ Beth Gunn
Beth Gunn

DECLARATION OF BETH GUNN IN SUPPORT OF PROPOSED INTERVENORS' RESPONSE TO OSC

# EXHIBIT A

# CVS CLASS ACTION EMPLOYMENT LAWSUIT

DOES **CVS** CARE ABOUT *YOUR* BETTER HEALTH?

CVS claims to put its customers "on the path to better health."

We believe that, by violating California's Labor Code in important ways, CVS has sacrificed the health and well-being of its employees, putting at risk the health of the general public.

By placing profits above people, squeezing its employees to work more than what the Labor Code allows – and providing less than what the Labor Code requires – we also believe that CVS competes unfairly in the marketplace.

This lawsuit seeks to hold CVS accountable for its illegal actions, and to provide you with monetary recovery as a victim of CVS' illegal behavior.

**\*\* IMPORTANT UPDATE \*\***

There is another class action case that was filed against CVS that potentially impacts this proposed class action, including your status as a potential class member. That case is called *Chalian v. CVS Pharmacy, Inc.* You probably received a notice in the mail about it. A settlement in a class action must be approved by the court before it can be finalized, and the plaintiffs and CVS in the *Chalian/Cabrera* case have asked the court to approve their proposed settlement – which would include releasing claims that were taken from our case and inserted into their case at the last minute so that CVS will not have to deal with us or our case. If the court approves the *Chalian/Cabrera* settlement, we believe that CVS will argue that the settlement resolves or eliminates most, or maybe all, of your claims in this case. **We strongly disagree with that proposed settlement and its terms.** After all of the work that we have done in this case, we do not think it is a fair or adequate settlement, and we have been trying to do better for the class members, including you, and the state of California.

**If you would like to learn more about what our problems with the** *Chalian/Cabrera* **proposed settlement are**, click here [hyperlink to FAQ]. If you would like to opt out of that other proposed settlement, we will collect and mail your opt-out forms, as long as you **fill them out through this web site by November 5, 2020**. If you want to opt out, please do not delay. Please click here [hyperlink to Opt Out Form] to electronically fill out an opt-out form.

## WHAT IS THE *HYAMS* LAWSUIT ABOUT?

The lawsuit alleges several claims against CVS for California Labor Code violations, including:

- ➢ Requiring employees "who sell at retail drugs and medicines" to work beyond the legal limits (*more than: 9 hours in a day, 108 hours in two weeks, or 12 days in any two consecutive weeks*)
- ➢ Not reimbursing employees who used their personal cell phones for work
- ➢ Not permitting legally-compliant rest breaks or meal breaks
- ➢ Not paying for "off-the-clock" work
- ➢ Not providing one day's rest in seven
- ➢ Not paying wages at the properly calculated regular rate of pay
- ➢ Not reimbursing employees for travel expenses for work
- ➢ Not providing accurate and complete wage statements
- ➢ Not providing required notice of paid sick time available
- ➢ Not paying employees' wages on time

The lawsuit seeks damages on behalf of employees who worked for CVS at any time since August 21, 2014, including penalties for all of the failures to comply with California's Labor Code. It also alleges that CVS engaged in unfair competition by violating the California Labor Code in this way for profit while its competitors were following the law as required. For a full copy of the current complaint at issue in the lawsuit, click here:  [hyperlink to SAC]

Questions?  Call 800-###-####

## WHY WAS I CONTACTED?

You were contacted because CVS provided a list of all potential class members to the attorneys handling the case.  Class members were defined as California employees, who fall into various subclasses based on potential California Labor Code violations.  If the lawsuit is certified as a class action, the attorneys in this case will represent all of the people in the class or subclasses that are certified.  They want to hear from you if you have experienced any of the same issues that the individuals who filed the case have experienced.  If you are considered a class member, you could receive monetary recovery as a result of the lawsuit.

## WHO ARE THE ATTORNEYS?

The attorneys are the law firm of Gunn Coble LLP, as well as other staff who are working on this case.  Their website is here:  [hyperlink to www.gunncoble.com]

## WHO FILED THE LAWSUIT?

Two former employees who worked in San Francisco, Ryan Hyams and Regine Duhon, are the plaintiffs in the lawsuit.

## HOW CAN I PROVIDE INFORMATION OR GET MORE INFORMATION?

If you want more information, or if you want to provide information, please click here to fill out a form for someone to contact you: [hyperlink to contact form] or call 800-###-####.

## WHAT IF I HAVE A FRIEND WHO WASN'T CONTACTED?

You can give your friend the website link above and have them fill out a contact form.  If your friend worked for CVS during the time frame of August 21, 2014 to the present, they may be a class member.

## CONTACT FORM  [FILLABLE]

**NAME: [first] [last]**

**PHONE NUMBER:**

**EMAIL:**

**BEST TIME TO REACH ME?**  [provide buttons for four time slots on each day – Monday through Saturday, Pacific Standard Time, 9-12 am; 12-3 pm; 3-6 pm; 6-9 pm.]

**DATES I WORKED FOR CVS (These do not need to be exact): [beginning] [end]**

**QUESTIONS?  [short fill in; 200 characters or less]**

FREQUENTLY ASKED QUESTIONS

**Why do you think the settlement in the *Chalian/Cabrera* case is not good enough?**

Our biggest problems with the settlement are that:

1.  The *Chalian/Cabrera* plaintiffs and attorneys are adding claims from the *Hyams* case that we think they have no legal authority to add to their case.  For these claims, we have already asked the court in our case to rule in our favor for over $100 million in damages, about $25 million of which would go to class members (the rest would go to the state of California). While we cannot guarantee that we will win that amount, we believe that we can do better than the amount of about $25,000 that would be split among class members for the same claims in the *Chalian/Cabrera* settlement.

2.  The *Chalian/Cabrera* plaintiffs and attorneys are adding claims from the *Hyams* case that they are valuing as worth **zero dollars**.  For example, the settlement includes a release of rest break claims that they have valued as zero dollars.  We understand, from over 130 people we talked to, that rest breaks were not regularly taken.  We also know, from questioning CVS' witnesses and looking at documents, that CVS intentionally scheduled work so that there was only time for one 15-minute rest break in every 8-hour shift.  The *Chalian/Cabrera* attorneys did not get this information and will not consider it in trying to achieve a higher settlement for the class.

3.  The *Chalian/Cabrera* settlement includes a release of meal break claims valued as $2 million dollars, spread throughout about 20,000 people (roughly about $100 per person).  We understand, from all the class members we have interviewed, that when pharmacists are working as the only pharmacist on duty they rarely were able to take uninterrupted meal breaks.  Because of information we demanded from CVS, we have the ability to pinpoint who those individuals were and would like to increase the settlement amounts those employees would receive.

4.  The *Chalian/Cabrera* attorneys have factored in a lot of risk to decrease the settlement amounts because of arbitration agreements.  We believe CVS' arbitration agreement is subject to challenge and that potentially many more people would not be bound by it than those attorneys think.  This is based on our investigation into how the arbitration agreements work. Another court (in Missouri) has already adopted part of our theory.  There is also a chance that the court will not consider arbitration agreements in the *Hyams* case because of technical legal issues.

5.  We believe the *Chalian/Cabrera* attorneys are acting in their own interests, and helping CVS to get a deal that is bad for the class because it will get more money for them.  We believe the *Chalian/Cabrera* attorneys are using the threat of the claims they are trying to take from the Hyams case to increase the amounts they will receive, but are giving CVS a huge discount for this.  For example, they are expecting to receive almost $3 million dollars ($2.925 million), compared to the amount listed on your notice form.

6.  As an example, for our client who was a CVS Pharmacist, the proposed *Chalian/Cabrera* settlement amount is approximately $4.25 per week worked, for a total of $375.  However, we believe that his claims are worth more than $60,000, before attorneys' fees and costs, given his hourly rate and the number of breaks he missed on a regular basis. This means that the other attorneys have evaluated his claims as worth about 0.59% (less than 1%) what we have.  For our client who was a CVS Pharmacy Technician, the proposed *Chalian/Cabrera* settlement amount is about $1.08 per week she worked, when we have estimated her

**FREQUENTLY ASKED QUESTIONS**

damages as over $15,000 (only 0.01% of our calculations). We suspect the same is true for other class members.

**Does the court already know about these problems?**

We have raised these issues to the court, but the judge has decided that he will only consider them if they come from an objector. This is the way the law usually works. The court will consider any objections that are filed before it decides to finally approve the settlement.

**How could it hurt me to opt out of the proposed settlement? What am I giving up?**

If you opt out of the proposed settlement, you will not receive any money from it. You will be giving up the amounts stated in your notice, with no guarantee that we will be able to do better for you. Opting out of the proposed settlement in the *Chalian/Cabrera* case will allow you to continue to pursue your claims in the *Hyams* case we are handling. However, we cannot guarantee that the *Hyams* case will result in an award of money to you equal to or greater than what you would get in the *Chalian/Cabrera* case if you did not opt out.

**Why do you think that you can do better?**

We think we are in a better position to judge what the right settlement might be than the other lawyers. We have done a lot of work that they have not, including reviewing thousands of documents, questioning CVS' corporate witnesses under oath, interviewing over 130 class members like you, and using an expert to review and analyze the complete time and pay records of the class. The other lawyers did not make these same efforts, and accepted much less information from CVS before settling the claims.

In addition to our problems with the proposed settlement amounts listed above, we think that CVS is unwilling to come to a reasonable settlement agreement in our case – when we are seeking a better deal for you – because it thinks it can get a cheaper deal from the *Chalian/Cabrera* plaintiffs. If the court does not approve that settlement, this option will be taken away from CVS.

**Can I talk to someone to get more information about this?**

Of course. You can call Cathy Coble at 818-900-0695. You can also email contact@gunncoble.com and someone will call you back.

**How long will it take?**

All opt-outs need to be received by November 6, 2020. If you click here and fill out the form **and electronically sign it no later than November 5, 2020**, we will mail it on your behalf. It should not take very long to sign the form – probably less than 5 minutes.

**Do I need to appear in court?**

No. But if you want to, you will have an opportunity to appear. The hearing is scheduled for December 4, 2020. It's likely the court appearance will be telephonic or though video, because of the COVID-19 pandemic.

**FREQUENTLY ASKED QUESTIONS**

**Can I talk to the other lawyers in the *Chalian/Cabrera* case?**

The contact information for the other lawyers should be on the notice you received in the mail, if you want to talk to them as well.

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*Sevag Chalian et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:16-cv-08979 (C.D. Cal.)

*Sigfredo Cabrera et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:20-cv-02401 (C.D. Cal.)

## NOTICE OF CLASS ACTION SETTLEMENT AND RELEASE OF CLAIMS



RYAN HYAMS

**PLEASE READ THIS COURT-APPROVED NOTICE CAREFULLY.**
**IT INFORMS YOU ABOUT YOUR LEGAL RIGHTS.**

## BASIC INFORMATION

### 1. What is the purpose of this notice?

The purpose of this notice is to inform you of your rights and options **_and the deadlines to exercise them_** under a class action and California Private Attorneys General Act of 2004 ("PAGA") settlement in the lawsuits identified above, which the parties reached after two full days of mediation before David A. Lowe, Esq., and which the United States District Court for the Central District of California (Birotte, J.) has provisionally certified for purposes of settlement. The Court still must decide whether finally to approve the settlement. Settlement payments will only be made if the Court finally approves the settlement and after any appeals are resolved.

### 2. Why am I receiving this notice?

You are receiving this notice because CVS records show you were employed: (a) as an hourly, non-exempt Pharmacist in a CVS retail pharmacy located in Region 65 or 72 in the State of California between July 20, 2012 and the present and you did not sign an arbitration agreement or previously release and/or adjudicate certain wage and hour claims; or (b) as an hourly, non-exempt employee in a CVS retail pharmacy in the State of California between August 3, 2014 and the present, who has not previously released and/or already adjudicated certain wage and hour claims. Based on this information, you are believed to be a provisional Settlement Class Member in the consolidated cases captioned *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:16-cv-08979, and *Sigfredo Cabrera et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:20-cv-02401 (together, the "Lawsuits").

## THE SETTLEMENT BENEFITS - WHAT YOU GET

### 3. What does the settlement provide?

CVS has agreed to pay a total amount not to exceed $9,750,000.00 to settle the claims asserted in the Lawsuits. This includes payments for attorneys' fees and costs, enhancement payments to the named Plaintiffs, payment of amounts under PAGA allocated to the State of California, and the cost of administering the settlement, as summarized below. If the Court finally approves the settlement, all Settlement Class Members will receive a settlement check representing an allocated portion of the PAGA settlement and all Settlement Class Members who do not opt out in accordance with the procedure described below will be mailed an additional settlement check and deemed to have released all claims that were pled in the Lawsuits or that could have been pled in the Lawsuits in accordance with the settlement agreement.

### 4. How much will my payment be?

Each Settlement Class Member will receive a share of the settlement based on his or her dates of employment and pay rate (See Section B(1)-(2) below for payment formula.) Based on the settlement terms, you should expect to receive approximately $375.99 based on 88.43 weeks that you worked for CVS during the class period, less applicable withholdings. If you wish to challenge the information set forth above, then you must submit a written, signed dispute challenging the information along with supporting documents, to the Settlement Administrator at *Cabrera v. CVS Pharmacy*, P.O. Box 26170, Santa Ana, CA 92799, Phone: (833) 200-8581 no later than November 6, 2020.



As noted above, the Court has preliminarily approved the settlement as fair and reasonable. If the Court finally approves the settlement and it is not reversed by an appellate court, individuals who receive this notice will receive a settlement check representing an allocated portion of the PAGA settlement and all Settlement Class Members who do not opt out of the class will be eligible to receive an additional check for their settlement shares. (See Summary of Settlement Terms, section B, below, for the payment formula.)

## LAWSUIT BACKGROUND

On July 20, 2016, Plaintiff Sevag Chalian filed a complaint in the Los Angeles County Superior Court entitled *Sevag Chalian v. CVS Pharmacy, Inc., et al.*, case number BC627757, on behalf of himself and a proposed class of allegedly similarly situated pharmacists. The complaint originally alleged claims for: (1) failure to pay all wages due (Cal. Labor Code § 1194), (2) failure to pay overtime compensation allegedly due (Cal. Labor Code § 1194), (3) failure to provide accurate itemized statements (Cal. Labor Code § 226), (4) waiting time penalties (Cal. Labor Code §§ 201-203), and (5) unfair business practices (Cal. Business and Professions Code §§ 17200 *et seq.*). On December 6, 2016, CVS removed the case to the United States District Court for the Central District of California. On September 5, 2017, the complaint was amended to name Tamara Aleksandryan as a plaintiff on behalf of herself and the proposed class. On October 17, 2017, the Court ordered Ms. Aleksandryan to proceed with her claims on an individual basis in arbitration.

On August 3, 2017, Plaintiff Sigfredo Cabrera filed a complaint in the Alameda County Superior Court entitled *Sigfredo Cabrera v. CVS Rx Services, Inc. et al.*, case number RG 17870184, on behalf of himself and a proposed class of allegedly similarly situated individuals. The complaint alleged claims for: (1) failure to pay minimum wages and overtime compensation (Cal. Labor Code §§ 204, 510, 1194, 1197, 1197.1, and 1198); (2) failure to provide legally compliant meal periods or compensation in lieu thereof (Cal. Labor Code §§ 226.7 and 512), (3) failure to provide legally compliant rest periods or compensation in lieu thereof (Cal. Labor Code § 226.7), (4) failure to pay wages owed (Cal. Labor Code §§ 201, 202, and 203), (5) failure to furnish accurate itemized wage statements (Cal. Labor Code § 226), (6) failure to maintain accurate records (Cal. Labor Code §§ 226(a) and 1174), (7) failure to reimburse for necessary work expenses (Cal. Labor Code §§ 2800 and 2802), and (8) unfair business practices (Cal. Business and Professions Code §§ 17200 *et seq.*). On September 5, 2017, the complaint was amended to name Enko Telahun as a named plaintiff on behalf of himself and the proposed class and to add a claim under the: (9) Private Attorneys General Act of 2004 (Cal. Labor Code § 2698 *et seq.*). On October 9, 2017, CVS removed the case to the United States District Court for the Northern District of California. On March 19, 2018, the complaint was amended to add Christine McNeely as a named plaintiff on behalf of herself and the proposed class in the place of Sigfredo Cabrera and Enko Telahun as to Counts 1-8. On August 3, 2018, a draft amended complaint adding Patrick Brennan as a named plaintiff on behalf of himself and the proposed class with respect to Counts 1-8 was circulated. The draft amended complaint added claims under Labor Code Sections 558 and 226.3, and incorporated by reference class member Lynn Brickman's June 28, 2018 letter to the California Department of Labor and Workforce Development Agency ("LWDA").

On September 25, 2018, the court granted summary judgment in CVS's favor on Mr. Cabrera's and Mr. Telahun's Count 9 under the Private Attorneys General Act of 2004. On January 2, 2019, at the request of Messrs. Cabrera and Telahun, the court entered partial judgment in CVS's favor, and on January 9, 2019, Mr. Cabrera and Mr. Telahun appealed that judgment to the Ninth Circuit Court of Appeals. Meanwhile, by letter dated March 7, 2019, class member May Eldanaf informed the LWDA of her intent to pursue claims to recover all wages and associated penalties owed to her and other aggrieved pharmacy employees under all Labor Code sections which permit the recovery of unpaid wages and penalties.

All parties subsequently agreed to mediate the disputes in accordance with certain court orders. On July 29, 2020, the parties attended a mediation before David A. Lowe, Esq. of the law firm Rudy, Exelrod, Zieff & Lowe, L.L.P. in San Francisco, California. The parties did not reach an agreement and, on November 11, 2019, held a second day of mediation before David A. Lowe, Esq., at which the parties reached a fair and reasonable settlement of their disputes.

By order dated March 5, 2020, pursuant to the agreement of the parties, the Ninth Circuit dismissed the Cabrera appeal without prejudice and, on March 10, 2020, the United States District Court for the Northern District of California transferred the case to the United States District Court for the Central District of California so the case could be joined with the first-filed *Chalian* case and the claims could be resolved together per the terms of the settlement agreement. On July 1, 2020, the United States District Court for the Central District of California (Birotte, J.) consolidated the *Chalian* and *Cabrera* actions and designated the *Chalian* action as the lead case and approved the filing of an amended, consolidated complaint.

CVS contends the claims in these Lawsuits are without merit and disputes all claims for damages and other relief. CVS also contends that many of the potential Class Members have agreed to individual arbitration of any potential claims precluding those persons from claims in these consolidated lawsuits. No court has ruled fully on the merits of the Lawsuits. Plaintiffs have vigorously prosecuted these and related cases, and CVS has vigorously defended the cases. The Parties have engaged in discovery, both formal and informal, to assess the relative merits of the various alleged claims and CVS's defenses to those claims. Plaintiffs' attorneys have extensively litigated this matter, interviewed numerous potential settlement class members, reviewed extensive documents and data produced by CVS, and filed, opposed, and argued motions.



SIMID  22165

The Class Representatives and Class Counsel support this settlement. Class Counsel believe further proceedings in these cases, including a trial and multiple potential appeals, would be very expensive and protracted. There is a real risk class certification could be denied in whole or in part and that the Court may find that the PAGA claims are not manageable. There is also a prevalence of legal issues, including but not limited to the fact that many Settlement Class Members are subject to collective bargaining agreements, individual arbitration agreements, and individual res judicata arguments, that render the prospect of any class-wide relief such as achieved here difficult to obtain, and Defendants claim unlikely. No one can predict how the various legal questions at issue, including the amount of damages, would ultimately be resolved. Therefore, upon careful consideration of all facts and circumstances of these cases, Class Counsel believe the proposed settlement is fair, reasonable and adequate.

## SUMMARY OF THE PROPOSED SETTLEMENT

A.     There are two settlement classes:

  1.    "Pharmacist Settlement Class" means hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and the date of the Preliminary Approval Order, whose claims are not subject to arbitration and which have not previously been released and/or adjudicated, and whose LEARNet and/or Siteminder data indicates activity when time punch records do not show he or she was clocked-in.

  2.    "Retail Pharmacy Settlement Class" means persons, other than those in the Pharmacist Settlement Class, who held certain hourly, nonexempt positions in a CVS retail pharmacy in the State of California between August 3, 2014 and the date of the Preliminary Approval Order who have not previously released and/or adjudicated the Released Claims.

Settlement Formula:

  1.    Each Settlement Class Member will be entitled to a payment based on a payment ratio that considers the total number of weeks he or she worked and his or her weekly pay rate. If a Settlement Class Member was employed for only part of a workweek, he or she will be credited for purposes of this Settlement with a fraction of the workweek, rounded up or down to the nearest two-digit decimal and based upon a five-day work week.

  2.    Each Settlement Class Member's share shall be determined by multiplying the Member's number of qualifying workweeks by the Member's weekly pay rate (i.e., the individual's rate of pay for a week, which is his or her hourly rate of pay multiplied by 40 hours) during the applicable class period. This number will then be divided by the total number of workweeks worked by all Settlement Class Members multiplied by the total amount of weekly rates for all Settlement Class Members (i.e., sum of all Settlement Class Members' weekly rates) during the applicable class period. To the extent an individual is a Class Member in both classes, he or she shall be eligible to receive whichever class settlement payment is larger.

Class Representatives: The Court has approved Named Plaintiffs Sevag Chalian and Patrick Brennan as Class Representatives for the Pharmacist Settlement Class and Named Plaintiff Christine McNeely as the Class Representative for the Retail Pharmacy Settlement Class. The Class Representatives will apply to the Court for service awards and will be eligible for such amounts as the Court determines to be fair and reasonable. The parties' agreement proposes a payment of no more than $43,000 total for service awards to the Class Representatives and three other named plaintiffs. Class Counsel considers this amount to be fair, reasonable and adequate given the time the Class Representatives and the other named plaintiffs expended and their agreement to release all claims against CVS.

Attorneys' Fees and Costs: Plaintiffs' attorneys' fees request shall not exceed 30% of the settlement amount, or $2,925,000.00. In addition, Class Counsel will seek to be reimbursed for all costs and expenses incurred by them in prosecuting the Lawsuits, in an amount not to exceed $50,000.

Costs of Settlement Administration: Class Counsel will seek costs of settlement administration not to exceed $75,000 to be paid from the Settlement Amount to the third-party settlement administrator.

PAGA Payment: The parties have designated $75,000 of the settlement amount as payment for civil penalties under the California Labor Code Private Attorneys General Act of 2004. Seventy-five percent of that amount – by law – will be provided to the State of California and 25% will go to Class Members.

## EFFECT OF THE SETTLEMENT

Each Settlement Class Member who does not opt out will release and forever discharge CVS from all claims, causes of action, and legal theories of relief that were alleged or that could have been alleged or otherwise raised in the Lawsuits, from August 3, 2014 until the date of the Preliminary Approval Order for Retail Pharmacy Settlement Class members and from July 20, 2012 until the date of the Preliminary Approval Order for Pharmacist Class members (the "Released Claims"). The Released Claims include, but are not limited to: (a) failure to pay minimum wages; (b) failure to pay overtime wages; (c) failure to pay all wages or amounts due under the Labor Code and/or federal Fair Labor Standards Act; (d) failure to comply with Labor Code Sections 850, 851, 851.5, 852 and/or 29 U.S.C. § 201 et seq.; (e) failure to provide proper meal periods, or premium pay for non-compliant meal periods; (f) failure to authorize and permit rest periods, or premium pay for non-compliant rest periods; (g) failure to provide complete, accurate, and/or properly formatted wage statements; (h) failure to reimburse all necessary business expenses; (i) failure to timely pay wages due or final wages due; (j) all claims under PAGA that were or could have been asserted based on the facts, claims, causes of action or legal theories described above or on any of the claims, causes of action, facts or legal theories of relief pleaded in the Lawsuits; and (k) all damages, penalties, including penalties under Labor Code Sections 203 and 558, interest, costs (including attorney's fees) and other amounts recoverable under said claims or causes of action as to the facts and/or legal theories alleged or which could have been alleged in the Lawsuits. This release shall not apply to claims for workers' compensation benefits, unemployment insurance benefits, or any other claim or right that as a matter of law cannot be waived or released.

By its terms, this release includes claims in other active litigation pending against CVS, including *Hyams v. CVS Health Corporation*, No. 4:18-cv-06278-HSG in the Northern District of California and *Assar v. Longs Drug Stores California, LLC*, No. 2:19-cv-02086-KJM-KJN in the Eastern District of California. Your legal rights with respect to any overlapping actions/claims will be impacted and/or waived if you participate in this Settlement.

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| **DO NOTHING TO PARTICIPATE IN THE SETTLEMENT AND RECEIVE A PAYMENT** | If you wish to settle your claims and receive a payment, you do not have to do anything at this time.  If the settlement is finally approved by the Court, you will receive a check in the mail. |
| **OPT OUT** | By opting out of the settlement, you give up any right to receive a payment from this settlement for the non-PAGA portion. You will keep any rights to sue CVS on the same legal claims asserted in the Lawsuits other than those made pursuant to PAGA, provided you do so within the applicable statute of limitations. If you are subject to an arbitration agreement, you may also be required to litigate any such potential claims in arbitration and not in a State or Federal court. |
| **OBJECT** | You may write to the Court about why you do not like the class action settlement. |

### HOW YOU GET A PAYMENT

**5. How can I get my payment?**

If you wish to receive a settlement payment from the settlement fund, you do not need to do anything at this time. If the settlement is finally approved by the Court, you will receive a check in the mail.

**6. When will I get my settlement payment?**

The Court will hold a final approval/fairness hearing on December 4, 2020, to decide whether to grant final approval of the settlement. If the Court approves the settlement and there are no appeals, then your payment will be mailed to you after the Settlement Effective Date.

**7. Will I still get a payment if I have filed for bankruptcy while the lawsuit was pending?**

If you filed for bankruptcy while these Lawsuits were pending, contact your bankruptcy attorney to discuss whether the bankruptcy will have any impact on your ability to collect a settlement payment.  In consultation with your bankruptcy attorney, you must take the necessary steps to advise the bankruptcy trustee of your settlement payment.



SIMID  22165

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 8.  How do I exclude myself from the settlement?

If you want to keep the right to sue CVS on your own about the legal issues in this case, other than for relief under the PAGA, then you must exclude yourself from the class. The process for excluding yourself is sometimes referred to as "opting out."

To opt out, you must send by First Class U.S. mail a written, signed statement to the Settlement Administrator that includes your name, address, telephone numbers, signature, and last four digits of your social security number and states that you want to opt out of or be excluded from the settlement. To be effective, your opt-out statement must be postmarked no later than November 6, 2020 and must be mailed to: *Cabrera v. CVS Pharmacy*, P.O. Box 26170, Santa Ana, CA 92799; Phone: (833) 200-8581.

If you opt out, you will not receive a settlement payment and you cannot object to the settlement.

## OBJECTING TO THE SETTLEMENT

### 9.  How do I tell the Court that I object to the settlement?

You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval of the settlement, then no settlement payments will be sent out and the Lawsuits will continue. If that is what you want to happen, you must object.

To object, you must first present your objections to the Settlement Administrator in writing. Such objections must be postmarked no later than November 6, 2020 and received no later than November 13, 2020 by: *Cabrera v. CVS Pharmacy*, P.O. Box 26170, Santa Ana, CA 92799. You can also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.

### 10.  What's the difference between objecting to the settlement and opting out?

Objecting is telling the Court that you do not like something about the settlement. To object, you must remain a Settlement Class Member. In contrast, opting out is telling the Court that you do not want to be part of the Lawsuits. If you opt out, you cannot object because the Lawsuits no longer affect you. Based on objections, the Court may require the parties to revise the settlement or refuse to approve it, in which case no payments will issue and the case will be rescheduled for trial. Also, if the settlement is not approved, many of the Settlement Class Members may be subject to individual arbitration clauses and thus unable to recover as part of any Class wide trial.

## THE LAWYERS REPRESENTING YOU

### 11.  Do I have a lawyer in this case?

Yes. Every Settlement Class Member in the Lawsuits is represented by the following attorneys, who the Court has appointed as Class Counsel. You may obtain information about Class Counsel, their practices, and their lawyers' experience by visiting their respective websites.

**Class Counsel:**

| | |
|---|---|
| **ALEXANDER KRAKOW + GLICK LLP**<br>Michael S. Morrison (State Bar No. 205320)<br>1900 Ave. of the Stars, Suite 900<br>Los Angeles, California 90067<br>T: 310.394.0888 \| F: 310.394.0811<br>E: mmorrison@akgllp.com | **LAW OFFICES OF THOMAS W. FALVEY**<br>Thomas W. Falvey, SBN 65744<br>550 North Brand Boulevard, Suite 1500<br>Glendale, California 91203<br>T: (818) 547-5200 \| F: (818) 500-9307<br>E-mail:  thomaswfalvey@gmail.com |
| **BOYAMIAN LAW, INC.**<br>Michael H. Boyamian, SBN 256107<br>Armand R. Kizirian, SBN 293992<br>550 North Brand Boulevard, Suite 1500<br>Glendale, California 91203<br>T: (818) 547-5300 \| F: (818) 547-5678<br>E: michael@boyamianlaw.com,<br>E: armand@boyamianlaw.com | **UNITED EMPLOYEES LAW GROUP**<br>Walter Haines, SBN 071075<br>5500 Bolsa Avenue, Suite 201<br>Huntington Beach, CA 92649<br>Telephone: (562) 256-1047<br>Fax: (562) 256-4554 |



**CLARK LAW GROUP**
R. Craig Clark, SBN 129219
3258 4th Ave.
San Diego, CA 92103
T: (619) 239-1321 | F: (888) 273-4554
E: cclark@clarklawyers.com
E: clgadmin@clarklawyers.com

## 12. How will the lawyers be paid?

As noted above, the settlement agreement provides that Class Counsel will ask the Court to approve payment to them of attorneys' fees from the settlement fund in an amount not to exceed $2,925,000.00, or 30% of the Maximum Settlement Amount. In addition, Class Counsel will ask the Court to approve payment to them for reasonable litigation costs incurred by Class Counsel in the litigation and settlement of the Lawsuits.

### THE COURT'S FAIRNESS HEARING

## 13. When and where will the Court decide whether to approve the settlement agreement?

The Court will hold a fairness hearing at 10:00 a.m. on December 4, 2020 at the United States District Court for the Central District of California at 350 West First Street, Los Angeles, CA 90012, before Judge André Birotte Jr. in Courtroom 7B. You may attend and you may ask to speak, but you do not have to. At the fairness hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are any objections, the Court will consider them at that time. After the hearing, the Court will decide whether to grant final approval of the settlement.

## 14. Do I have to come to the fairness hearing?

Class Counsel will represent you at the hearing and you do not need to attend. Of course, you are welcome to attend (at your own expense) if you so desire. The Court will consider any objections received in a timely manner, even if the individual who sent in the objection does not appear at the fairness hearing. You may also pay a different lawyer of your own choosing to attend the fairness hearing and represent your interests.

## 15. May I speak at the fairness hearing?

If you send in your objection by the deadline, you may ask the Court for permission to speak at the fairness hearing. To be eligible to raise an objection at the fairness hearing, you must first present your objections to the Settlement Administrator in writing. Such objections must be postmarked no later than November 6, 2020 and received no later than November 13, 2020 by *Cabrera v. CVS Pharmacy*, P.O. Box 26170, Santa Ana, CA 92799.

Again, you cannot speak at the hearing if you opt out.

### GETTING MORE INFORMATION

## 16. Are there more details about the settlement?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please read the settlement agreement. You may obtain a copy by visiting www.Simpluris.com/Case-Information, contacting class counsel at their email addresses and phone numbers listed above, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Central District of California-Western Division, 350 West 1st Street, Los Angeles, CA 90012-4565, Courtroom 7B, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

**VISIT www.Simpluris.com/Case-Information FOR FURTHER INFORMATION AND ANNOUNCEMENTS REGARDING THE SETTLEMENT. NOTICE OF ANY RULINGS, INCLUDING ISSUANCE OF A FINAL JUDGMENT, WILL BE POSTED ON THE WEBSITE.**



SIMID 22165

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
*Sevag Chalian et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:16-cv-08979 (C.D. Cal.)
*Sigfredo Cabrera et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:20-cv-02401 (C.D. Cal.)

## NOTICE OF CLASS ACTION SETTLEMENT AND RELEASE OF CLAIMS



||||||·····|||·||··||···||·||·||·||·||··||·||·||·||·||·||·||·|||·||·||·|||·||·|||·

REGINE ANGELA DUHON

### PLEASE READ THIS COURT-APPROVED NOTICE CAREFULLY.
### IT INFORMS YOU ABOUT YOUR LEGAL RIGHTS.

## BASIC INFORMATION

**1. What is the purpose of this notice?**

The purpose of this notice is to inform you of your rights and options **and the deadlines to exercise them** under a class action and California Private Attorneys General Act of 2004 ("PAGA") settlement in the lawsuits identified above, which the parties reached after two full days of mediation before David A. Lowe, Esq., and which the United States District Court for the Central District of California (Birotte, J.) has provisionally certified for purposes of settlement. The Court still must decide whether finally to approve the settlement. Settlement payments will only be made if the Court finally approves the settlement and after any appeals are resolved.

**2. Why am I receiving this notice?**

You are receiving this notice because CVS records show you were employed: (a) as an hourly, non-exempt Pharmacist in a CVS retail pharmacy located in Region 65 or 72 in the State of California between July 20, 2012 and the present and you did not sign an arbitration agreement or previously release and/or adjudicate certain wage and hour claims; or (b) as an hourly, non-exempt employee in a CVS retail pharmacy in the State of California between August 3, 2014 and the present, who has not previously released and/or already adjudicated certain wage and hour claims. Based on this information, you are believed to be a provisional Settlement Class Member in the consolidated cases captioned *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:16-cv-08979, and *Sigfredo Cabrera et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:20-cv-02401 (together, the "Lawsuits").

## THE SETTLEMENT BENEFITS - WHAT YOU GET

**3. What does the settlement provide?**

CVS has agreed to pay a total amount not to exceed $9,750,000.00 to settle the claims asserted in the Lawsuits. This includes payments for attorneys' fees and costs, enhancement payments to the named Plaintiffs, payment of amounts under PAGA allocated to the State of California, and the cost of administering the settlement, as summarized below. If the Court finally approves the settlement, all Settlement Class Members will receive a settlement check representing an allocated portion of the PAGA settlement and all Settlement Class Members who do not opt out in accordance with the procedure described below will be mailed an additional settlement check and deemed to have released all claims that were pled in the Lawsuits or that could have been pled in the Lawsuits in accordance with the settlement agreement.

**4. How much will my payment be?**

Each Settlement Class Member will receive a share of the settlement based on his or her dates of employment and pay rate (See Section B(1)-(2) below for payment formula.) Based on the settlement terms, you should expect to receive approximately $118.39 based on 109.14 weeks that you worked for CVS during the class period, less applicable withholdings. If you wish to challenge the information set forth above, then you must submit a written, signed dispute challenging the information along with supporting documents, to the Settlement Administrator at *Cabrera v. CVS Pharmacy*, P.O. Box 26170, Santa Ana, CA 92799, Phone; (833) 200-8581 no later than November 6, 2020.

