BETH A. GUNN, CA Bar No. 218889
beth@gunncoble.com
CATHERINE J. COBLE, CA Bar No. 223461
cathy@gunncoble.com
GUNN COBLE LLP
101 S. 1st Street, Suite 407
Burbank, CA 91502
Telephone:  818.900.0695
Facsimile:   818.900.0723

JENNIFER KRAMER, CA Bar No. 203385
jennifer@laborlex.com
BARBARA DUVAN-CLARKE, CA Bar No. 259268
barbara@laborlex.com
ASHLEY H. CRUZ, CA Bar No. 306235
ashley@laborlex.com
JENNIFER KRAMER LEGAL, APC
5015 Eagle Rock Blvd., Suite 202
Los Angeles, CA 90041
Telephone:   213.955.0200
Facsimile:   213.226.4358

Attorneys for SETTLEMENT CLASS MEMBERS
TRENT ANDREWS, VICTORIA COSIO,
ELIZABETH GARCIA, AND CYNTHIA CARDENAS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public,<br><br>        Plaintiffs,<br><br>        *v.*<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,<br><br>        Defendants. | CASE NO.: 2:16-cv-08979-AB-AGR<br>Assigned to Hon. Andre Birotte Jr.<br>*Related Case No.:2:20-cv-02401-AB-AGR*<br><br>**OJBECTION TO SETTLEMENT UNDER PRIVATE ATTORNEY GENERAL ACT BY CLASS MEMBERS TRENT ANDREWS, VICTORIA COSIO, ELIZABETH GARCIA, AND CYNTHIA CARDENAS AND PROPOSED INTERVENORS**<br><br>DATE:    DECEMBER 4, 2020<br>TIME:    10:00 a.m.<br>PLACE:  Courtroom 7B |

i

# **TABLE OF CONTENTS**

I.   **INTRODUCTION** ..................................................................................1

II.  **LEGAL ARGUMENT**..........................................................................2

   A.   THIS COURT LACKS JURISDICTION OVER PAGA CLAIMS NOT EXHAUSTED THROUGH THE LWDA. ..................................................................3

   B.   THE AMOUNT OF THE PROPOSED SETTLEMENT DOES NOT SERVE THE STATUTORY PURPOSES OF PAGA. ....................................................6

   C.   THE RECORD DOES NOT CONTAIN FACTS TO SUPPORT THE FAIRNESS OR ADEQUACY OF PAGA SETTLEMENT AMOUNT. ..............................10

      1.   *There is an Insufficient Record of Due Diligence in Investigating the Potential Value of PAGA Claims.* .....................................................10

      2.   *The Scope of the Release is Overly Broad, Not Tailored to the Issues in the Lawsuit, and Not Commensurate with the Amounts Allocated for PAGA Claims.*........................................................................................13

      3.   *The Overly Broad Scope of the Release, Combined with the Addition of New PAGA Claims at the Last Minute for No Additional Value, Signifies Collusion.* ......................................................................................20

III. **CONCLUSION** ..................................................................................25

# **TABLE OF AUTHORITIES**

## **CASES**

Alcantar v. Hobart Service, 800 F.3d 1047 (9th Cir. 2015) ........................................5

Ambrosino v. Home Depot U.S.A., Inc., 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014) ......................................................................................................................20

Arias v. Superior Court, 46 Cal.4th 969 (2009) ........................................................6

Belew v. Brink's, Inc., 721 Fed. App'x 734, (9th Cir. 2018) ....................................20

Bradescu v. Hillstone Restaurant Group, Inc., 2014 WL 5312546 (C.D. Cal. Sept. 18, 2014) ............................................................................................................5

Caliber Bodyworks v. Superior Court, 134 Cal.App.4th 365 (2005).........................4

Conti v. L'Oreal USA S/D, Inc., 2020 WL 416403 (E.D. Cal., Jan. 27, 2020)....12, 21

Cotter v. Lyft, Inc., 176 F.Supp.3d 930 (N.D. Cal. 2016)...........................................7

Gonzalez v. CoreCivic of Tenn., LLC, 2018 WL 4388425 (E.D. Cal., Sept. 13, 2018) ...................................................................................11, 15, 17, 18, 20, 21, 22

Henderson v. JPMorgan Chase, 2013 WL 12126772 (C.D. Cal. July 10, 2013).........5

Hendricks v. Starkist Co., 2016 WL 692739 (N.D. Cal. Feb. 19, 2016)....................20

Hoang v. Vinh Phat Supermarket, Inc., 2013 WL 4095042 (E.D. Cal. Aug. 13, 2013) ..................................................................................................................4

Kim v. Reins International California, Inc., 9 Cal.5th 73 (2020)................................6

Lessard v. Trinity Protection Services, 2010 WL 3069265 (E.D. Cal. Aug. 3, 2010).4

McDaniel v. Reinalt-Thomas Corp., 2014 WL 12639092 (C.D. Cal. October 8, 2014) ..................................................................................................................7

Medlock v. Taco Bell Corp., 2014 WL 2154444 (E.D. Cal. May 22, 2014) ...............5

Murray v. Scelzi Enterprises, Inc., 2019 WL 6045146 (E.D. Cal., Nov. 15, 2019)....8, 11, 14

O'Connor v. Uber Techs., Inc., 201 F.Supp.3d 1110 (N.D. Cal. 2016)..1, 6, 7, 10, 11, 18

Ovieda v. Sodexo Operations, LLC, 2013 WL 3887873 (C.D. Cal July 3, 2013) ........5

Schiller v. David's Bridal, Inc., 2010 WL 2793650 (E.D. Cal. July 14, 2010) ..........19

Singletary v. Teavana Corp., 2014 WL1760884 (N.D. Cal. May. 2, 2014) ................5

Stafford v. Dollar Tree Stores, Inc., 2015 WL 1509202 (E.D. Cal. April 1, 2015) .....5

Stoddart v. Express Services, 2019 WL 414489 (E.D. Cal. February 1, 2019) .......6, 8

Viceral v. Mistras Group, Inc., 2016 WL 5907869 (N.D. Cal., Oct. 11, 2016) .........11

Villacres v. ABM Industries, Inc., 189 Cal.App.4th 562 (2011) .................................6

Williams v. Superior Court, 3 Cal.5th 531 (2017) ......................................................6

Wong v. AT & T Mobility Servs. LLC, 2012 WL 8527485 (C.D. Cal. July 2, 2012) 5

## STATUTES

Lab. Code § 2699.3 .................................................................................................4

Lab. Code § 2699(a) ...............................................................................................4

Lab. Code § 2699(i) .................................................................................................4

Lab. Code § 2699(l)(2) ............................................................................................2

## I.     **<u>INTRODUCTION</u>**

[W]here plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound to any judgment [citation omitted] … Such a plaintiff also owes a responsibility to the public at large; they act as the statute's name suggests, as a private attorney general … This duty imposed upon the PAGA representative is especially significant given that PAGA does not require class action procedures, such as notice and opt-out rights. The Court must be cognizant of the risk that despite this responsibility, there may be a temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip, wherein the rights of individuals who may not even be members of the class and the public may be waived for little additional consideration in order to induce the employer to agree to a settlement with the class.

*O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1134 (N.D. Cal. 2016).

Class members Trent Andrews, Victoria Cosio, Elizabeth Garcia, and Cynthia Cardenas ("Objectors"), as well as Proposed Intervenor Ryan Hyams ("Hyams") object to the release of claims under the Private Attorneys General Act of 2004 ("PAGA") in the proposed settlement for the following reasons:

- This Court lacks jurisdiction to grant a release of claims under Lab. Code §§ 241(i), 550-551 and 850-852 as no party to the Settlement has filed the notice required under PAGA with the California Labor and Workforce Development Agency ("LWDA") providing facts or theories under these statutes to allow them to litigate or settle the claims.

- The settlement of PAGA claims are undervalued. While placing a range of $13.4 to $26.4 million on PAGA violations at issue here, only 0.28-0.56% of that value is reflected in the $75,000 allocated to PAGA portion of the settlement.

- The overly broad release of claims is not justified by the facts before the Court, or those litigated in the action.  The true value of these claims are unknown to Plaintiffs as they have not been the focus of their litigation efforts. As part of their Global Settlement Agreement, the Parties seek approval of

Released Claims that include:

> [A]ll claims under the California Private Attorneys General Act of 2004 ("PAGA") that were or could have been asserted based on the facts, claims, causes of action or legal theories described above or on any of the claims, causes of action, facts or legal theories pleaded in the Wage and Hour Actions….

ECF 89-1, p. 39-40 (Section 4.3(j)).  In exchange for this release, Defendants intend to pay $75,000, with 75% payable to the LWDA and 25% payable to the Retail Pharmacy Settlement Class members.  ECF 89-1, p. 35-36 (Section 3.4).  This is inadequate recovery for both the State of California and aggrieved employees.  As detailed below, this proposed settlement is a textbook example of a PAGA claim in a lawsuit being used "merely as a bargaining chip," which would waive the rights of aggrieved employees and the public for little (or no) additional consideration.

The proposed PAGA settlement undercuts the dual statutory purposes of punishment and deterrence and would result in an unjust settlement.  The Court should not approve it.

## II.   <u>LEGAL ARGUMENT</u>

The proposed settlement does not meet the various standards for approval required by Lab. Code § 2699(l)(2), which charges trial courts with reviewing and approving PAGA settlements. As articulated by the LWDA: "It is thus important that when a PAGA claim is settled, the relief provided for under PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public" and "unique public policy role of PAGA."  *See* LWDA Comments on Proposed PAGA Settlement in *O'Connor v. Uber Technologies, Inc.*, (ECF 736), Case No. 13-cv-03826-EMC (N.D. Cal., July 27, 2016).  **Exhibit A**, Objectors' Request for Judicial Notice in Support of Objection to PAGA Settlement ("RJN").

It is of no moment that the "LWDA had not objected or responded to the Notice of Settlement" submitted by Plaintiffs.  ECF 180, p. 19:12-14; see also, 27:16-17. As stated in a communication with Objectors' counsel, Patricia Kelly, an attorney with the LWDA stated:

[The LWDA does] not have the resources to be able to provide any opinion on the proposed settlement or issues raised in support of or opposition to approval of the proposed settlement.

As detailed in the Budget Change Proposal, **it is virtually impossible for the LWDA to evaluate each proposed settlement**, or to comment or object to every inadequate PAGA settlement. **The LWDA also lacks the resources to actively litigate through conclusion court orders or judgments that erroneously approve PAGA settlements**.

**The LWDA's failure to comment, object, or appeal with respect to a PAGA settlement should not be viewed as evidence that the LWDA agrees with the settlement or believes the settlement should be, or should have been, approved**. Instead, and among other things, the LWDA can and does rely on PAGA agents in overlapping cases to bring settlement defects to a court's attention and to otherwise protect the State's interests from the dangers of inadequate or overbroad settlements.

Exhibit E, Kramer Decl. (emphasis added).

Therefore, it is properly the role of objectors and parties to parallel lawsuits to bring to this Court's attention defects with the proposed PAGA settlement here.

## A.   This Court Lacks Jurisdiction over PAGA Claims not Exhausted Through the LWDA.

Plaintiffs have not exhausted claims under PAGA for violations of Lab. Code §§ 241(i), 550-551 and 850-852 ("new PAGA claims"), which were introduced for the first time in their post-settlement Consolidated Complaint on July 3, 2020.  ECF 104.  Plaintiffs' Notice letters submitted to the LWDA in 2017 do not mention these statutes or facts relating to violations of these statutes.  ECF 104, pp. 53-76. Plaintiffs' PAGA notices specifically mention and provide facts and theories for Lab. Code §§ 201-204, 226, 226.7, 510, 512 1174, 1197, 1197.1, 1198, 2800, and 2802, but do not mention any facts or theories associated with the new PAGA claims. *Id*. As laid out below, this Court is without jurisdiction to grant a release for violations of the new PAGA claims.

PAGA was enacted in order to provide employees the right to sue as "private attorneys general" for violations of statutes or regulations which provide for the assessment and collection of civil penalties solely by the LWDA where there was no

3

existing private right of action. Lab. Code § 2699(a).  Prior to PAGA, employees could not recover civil penalties because they did not possess a private right of action. Under PAGA, employees retain 25% of the civil penalties recovered, with the remainder going to the State.  Lab. Code § 2699(i).

A civil action by an aggrieved employee shall commence **only after** notice is filed with the LWDA and mailed to the employer.  Lab. Code § 2699.3(a) and (c). The purpose of the notice requirement is "to allow the LWDA the initial opportunity to investigate and cite employers …."  *Caliber Bodyworks v. Superior Court*, 134 Cal.App.4th 365, 375 (2005).  This procedure allows the state agency to "act first on more 'serious' violations … and give employers an opportunity to cure less serious violations." *Id.*, *quoting*, Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 1809 (2003-2004 Reg. Sess.) as amended July 27, 2004 p. 5.

California district courts have held that, to meet **jurisdictional** requirements, PAGA notices must at a minimum identify the specific Labor Code provisions at issue:

- The court in *Lessard v. Trinity Protection Services*, 2010 WL 3069265 at *3 (E.D. Cal. Aug. 3, 2010), deemed PAGA notice sufficient because the letter clearly stated the "specific provisions" of the Labor Code that were violated and informed the defendant of the facts and theories supporting the allegations—simply that the defendants failed to make timely payments for each employee in violation of Lab. Code § 204.  *Id.* at *4.

- For the same reasons, in *Hoang v. Vinh Phat Supermarket, Inc.*, 2013 WL 4095042 at *9 (E.D. Cal. Aug. 13, 2013), the court noted that plaintiffs' notice letter provided sufficient "facts and theories" to support the Labor Code violations that the employer allegedly committed. The alleged "facts [were] sufficient for the employer to understand the basis of an employee's grievance on the grounds or for the LWDA to initiate an investigation . . . ." *Id.*

- Similarly, in *Medlock v. Taco Bell Corp.*, 2014 WL 2154444 at *3 (E.D. Cal.

May 22, 2014), the court determined that a PAGA notice was sufficient because it listed violations of Lab. Code §§ 51, 1194 and 1198, and it alleged that "wages were not paid in the correct pay period, were not paid for all overtime hours worked and were paid at the incorrect rate because they did not factor in incentives." *Id.*

- A similar result was reached *Henderson v. JPMorgan Chase Bank*, 2013 WL 12126772 (C.D. Cal. July 10, 2013). PAGA notice was sufficient where it: (a) listed the specific wage order sections violated, along with Lab. Code § 1198, and stated the foregoing required an employer to provide suitable seats; and (b) alleged that the employee was not given a suitable seat. *Id.* at *4-5. While the court did not require the notice to "set forth 'every potential fact or every future theory' upon which Plaintiffs may base their claim," it found that "[b]ecause Plaintiffs' letters cite a specific statutory provision and state how it was violated by Defendants, the LWDA letters Plaintiffs sent were sufficient." *Id.* at *5.

Notice letters sent to the LWDA in numerous cases were found to be deficient. *Alcantar v. Hobart Service*, 800 F.3d 1047, 1056-1057 (9th Cir. 2015); *Stafford v. Dollar Tree Stores, Inc.*, 2015 WL 1509202 *4 (E.D. Cal. April 1, 2015); *Ovieda v. Sodexo Operations, LLC*, 2013 WL 3887873 *3-4 (C.D. Cal July 3, 2013); *Bradescu v. Hillstone Restaurant Group, Inc.*, 2014 WL 5312546, *11 (C.D. Cal. Sept. 18, 2014); *Singletary v. Teavana Corp.*, 2014 WL1760884, *3 (N.D. Cal. May. 2, 2014); *Wong v. AT & T Mobility Servs. LLC*, 2012 WL 8527485, at *2 (C.D. Cal. July 2, 2012). For example, in *Alcantar, supra*, 800 F.3d at 1056, the Ninth Circuit upheld the granting of summary judgment on a PAGA claim where the notice letter sent to the LWDA did not contain sufficient facts or theories. The court held the letter was "insufficient to allow the [LWDA] to intelligently assess the seriousness of the alleged violations." *Id*. at 1957.

PAGA's requirement to provide notice of the specific alleged violations has

been emphasized repeatedly by the California Supreme Court.  *See* Lab. Code § 2699.3(a)(1)(A); *Arias v. Superior Court*, 46 Cal.4th 969, 981 (2009); *Williams v. Superior Court*, 3 Cal.5th 531, 545 (2017).

The right to pursue civil penalties belongs to the State, not the employee.  *Kim v. Reins*, 9 Cal.5th 73, 81 (2020).[1]  No Plaintiff in this case has been deputized by California to prosecute the new PAGA claims.  A court can – and should – deny approval of a settlement that includes unnoticed PAGA claims.  *Stoddart v. Express Services*, 2019 WL 414489 *7 (E.D. Cal. February 1, 2019).  The LWDA itself, in a recently filed Amicus Curiae brief submitted to the Ninth Circuit, articulated its official position that only those who have followed the LWDA's administrative statutory notice procedures may settle PAGA claims. **Exhibit B**, RJN.  *See also, O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1131 (N.D. Cal. 2016) (inviting and crediting the LWDA's evaluation when approving PAGA settlement). Therefore, this Court should sustain the objection to PAGA settlement as exceeding the jurisdiction conferred by the LWDA.

## B.    The Amount of the Proposed Settlement Does Not Serve the Statutory Purposes of PAGA.

The $75,000 settlement of PAGA claims here does not advance the purposes of PAGA.  The Senate Daily Journal for the 2003-2004 Regular Session, pages 4754-55 contained the following letter dated July 29, 2004, from Senator Joseph L. Dunn, regarding the intent of PAGA: "*The purpose of the court review of penalties in subdivision (l) is to ensure that settlements involving penalties arising under Labor Code Section 2699 do not undercut the dual statutory purposes of punishment and deterrence, or result in unjust, arbitrary and oppressive, or confiscatory*

---

[1] Plaintiffs have relied heavily on *Villacres v. ABM Industries, Inc.*, 189 Cal.App.4th 562 (2011) to justify their decision to amend their complaint to add the new PAGA claims and label them derivative. However, the California Supreme Court in *Kim*, 9 Cal.5th at 92-93, recently called into question whether *Villacres* is good law, as it distinguished *Villacres* while questioning whether it was "correctly decided."

*settlements."* **Exhibit C,** RJN. The proposed settlement is not fair and adequate in view of the purposes and policies of PAGA.

In their motion for preliminary approval, Plaintiffs estimate the potential value PAGA claims here as follows:

- $10,000,000 to $23,000,000 for Lab. Code § 1197.1 violations;
- $2,600,000 for the Lab. Code §§ 850-852 violations;
- $800,000 for the Lab. Code §§ 550-551 violations;
- $0 for the Lab. Code § 246(i) violations; and
- $0 and/or no discussion of value of the remaining claims pursuant to Lab. Code §§ 201-204, 226, 226.7, 510, 512, 1174, 2800, 2802.

ECF 89, pp. 25-28. Even if these values were based a measured evaluation of competent data, which is disputed more thoroughly below, the settlement amount bears no relation to Plaintiffs' own estimation of the potential values of these claims. As violations of the new PAGA claims were not even on Plaintiffs' radar during the litigation, they were not positioned to analyze a fair settlement value for those claims.

Federal district courts have rejected arbitrarily low PAGA allocations:

- In *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 932 (N.D. Cal. 2016), the district court denied approval in part because the civil penalties awarded under the settlement "was arbitrary, and may have shortchanged the State of California (not to mention the [aggrieved employees]) even more." Of the $12.25 million settlement fund, $122,250 (only 1%) was allocated to PAGA civil penalties. *Id.* at 940.

- In *McDaniel v. Reinalt-Thomas Corp.*, 2014 WL 12639092 *1 (C.D. Cal. October 8, 2014), the district court denied approval in part because it found no justification for limiting PAGA damages to $10,000.

- In *O'Connor, supra,* 201 F.Supp.3d at 1134, the district court denied approval in part because after valuing PAGA claims at $1 billion, the plaintiffs sought to settle those claims for $1 million (0.1%).

7

- In *Stoddart, supra*, 2019 WL 414489 *6-7 (E.D. Cal. February 1, 2019), the district court denied approval in part because the plaintiff had failed to justify the amount of PAGA settlement.

- In *Murray v. Scelzi Enterprises, Inc.*, 2019 WL 6045146, at *11 (E.D. Cal., Nov. 15, 2019), *report and recommendation adopted*, 2019 WL 6840411 (E.D. Cal., Dec. 16, 2019), the court denied approval in part because PAGA claims, which were valued at over $3 million dollars and accounted for 30% of the total verdict value of the case, reflected only 1.1% of the claims' total estimated value.

At the lowest, Plaintiffs have estimated the value of PAGA claims to be $13,400,000.  ECF 89, pp. 25-28. The portion of the settlement assigned to PAGA violations – $75,000 – is just .56% of that value. This reduction appears completely arbitrary and does not reflect the parties' respective risks:

| PAGA Violation: Range of Civil Penalties per Plaintiffs (ECF 89) | Issue | Risk Identified (ECF 89) |
|---|---|---|
| Lab. Code § 201-204: None provided | Unpaid wages | • Prior unidentified settlements<br>• Time paid in full after April 2018 |
| Lab. Code § 226: None provided | Inaccurate wage statements | • Prior unidentified settlements<br>• Time paid in full after April 2018 |
| Lab. Code § 226.7: None provided | Failure to provide breaks | • Prior unidentified settlements |
| Lab. Code § 246(i): None provided | Sick day accrual notice | • No civil penalties under PAGA<br>• Evidence of posting<br>• Stacking defense<br>• Power of the court to reduce civil penalties |
| Lab. Code §§ 510, 1198: None provided | Overtime | • Prior unidentified settlements<br>• CBA preclusion for some<br>• Time paid in full after April 2018 |

8

| Lab. Code § 512: None provided | Meal breaks | • Prior unidentified settlements<br>• Small violation rate during training<br>• Manageability |
| Lab. Code §§ 550-551: $800,000 | Day of rest | • Manageability<br>• Power of the court to reduce civil penalties |
| Lab. Code §§ 850-852: $2.6 million | Limit on hours worked at Pharmacies | • Power of the court to reduce civil penalties |
| Lab. Code § 1174: None provided | Recordkeeping requirements | • Prior unidentified settlements |
| Lab. Code §§ 1197-1197.1, 1198: $10-23 million | Minimum Wage | • Need to appeal summary judgment ruling<br>• Stacking<br>• Power of the court to reduce civil penalties<br>• Time paid in full after April 2018 |
| Lab. Code §§ 2800, 2802: None provided | Expense Reimbursement | • Prior unidentified settlements<br>• Liability issues<br>• Change in policies in January 2017 regarding training at home (small period at issue) |

The risks the aggrieved employees face in the PAGA portion of the case are negligible, particularly when PAGA claims would not be subject to the same arbitration risk as the other claims in this case. [2]

Instead of adequately considering the risks **to CVS** and the value of PAGA claims, Plaintiffs treat them simply as a bargaining chip in obtaining a global settlement, even though PAGA claims alone are worth more than the value of the other claims identified in this lawsuit.  As a reminder, Plaintiffs valued their non-PAGA claims at just under $5 million. ECF 89 at 24-31; 89-1 at 12-20.

---

[2] In their Motion for Preliminary Approval, Plaintiffs stated that "Perhaps the most important consideration when evaluating the fairness of this settlement is the fact that the overwhelming majority of Retail Pharmacy Settlement Class Members agreed to arbitrate any workplace claims they may have against CVS."  ECF 89 at 24:13-15.  PAGA claims are not subject to mandatory arbitration provisions. *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal.4th 348, 386 (2014).

Finding itself in a similar position in *O'Connor*, *supra*, 201 F.Supp.3d at 1135, the district court stated: "Given the sweeping consequences of the proposed PAGA waiver, viewed in the context of a relatively modest settlement amount of the non-PAGA claims, the Settlement Agreement is not as a whole fair, adequate, and reasonable." The same concerns exist here, and this Court should sustain the objection to PAGA settlement as not serving the statutory purposes of PAGA.

**C.** **The Record Does Not Contain Facts to Support the Fairness or Adequacy of PAGA Settlement Amount.**

**1.** **There is an Insufficient Record of Due Diligence in Investigating the Potential Value of PAGA Claims.**

Plaintiffs have not provided the Court with evidence of their investigation of each of PAGA claims listed above. The information provided in *Plaintiffs' Motion For Award Of Attorneys' Fees, et a.l* (ECF 160), as well as the accompanying Declaration of Michael Morrison (ECF 160-3), does not specify any information that was analyzed or reviewed in relation to any of PAGA claims, except for specific data focused on training modules and off-the-clock work. Conspicuously absent from Plaintiffs' description of their investigation efforts is evidence of:

- The number of pay periods or number of aggrieved employees affected by any of PAGA claims;
- The number of pay periods or number of aggrieved employees affected by Lab. Code §§ 850-851 claims arising from off-the-clock work related to training modules;
- Any investigation regarding whether the data showed that Lab. Code §§ 850-851 claims existed based on the time data alone (unrelated to potential off-the-clock work), the rate at which such violations occurred, and the extrapolations made to the aggrieved employees from the sample data provided;
- Any description of facts, data or evidence used in Plaintiffs' pre-mediation investigation of multiple PAGA claims included in the *Cabrera* complaint/s, including facts regarding expense reimbursements, day of rest pay, failure to

10

maintain business records, failure to comply with Lab. Code §§ 226(a) or 246(i), and failure to pay overtime at the correct regular rate of pay; or

- An explanation of the data expert's analysis sufficient to understand what claims were included in it, the size of or methodology used in generating sample data, the statistical reliability of the sample, or other information used to extrapolate the findings from the sample data to the entirety of the aggrieved employees.

(ECF 160 at 18:11-22).  Without such information, it is impossible to determine the extent to which potential damages associated with PAGA claims were examined (if at all), and whether the assumptions made are fair to the absent aggrieved employees. Considering that PAGA claims for over 24,000 people are at stake, such information should be presented to justify the result of the settlement.  *Murray v. Scelzi Enters., Inc.*, 2019 WL 6045146, at *12-13 ("The failure to adequately explain why PAGA penalties were not considered in the calculation of the total value of the suit and the overly-excessive discounts on those penalties prevents the [court] from any 'real evaluation of the reasonableness of this settlement.'") (citing *Gonzalez v. CoreCivic of Tenn.*, LLC, 2018 WL 4388425, at *9 (E.D. Cal., Sept. 13, 2018)); *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, at *9 (N.D. Cal., Oct. 11, 2016) (finding that a settlement of less than 1% of the estimated verdict value of a PAGA claims raises substantial concern because it is far less than what would be indicated by the risk factors in the case); *O'Connor*, *supra*, 201 F. Supp. 3d at 1133 (rejecting a class and PAGA settlement where, without any rationale for it, the plaintiff proposed resolving PAGA claim for "0.1% of its estimated full worth").

The Court has insufficient information to assess the proposed settlement's fairness to the aggrieved employees whose claims would be extinguished by it. While the proposed settlement is structured to include two different classes whose individual settlement amount depends on two separate statute of limitations dates (presumably based on the applicability of the **class** claims to such employees), it

does not propose a similar structure for aggrieved employees tailored to the time frame covered by PAGA claims.  PAGA settlement amounts, which comprise the bulk of the settlement value as described above, are being equally spread among all class members, including over workweeks prior to August 2016 (the earliest possible statute of limitations date based on the earliest letter to the LWDA in this matter), instead of being distributed fairly among those who were aggrieved employees during the weeks covered by PAGA claims.

This problem is exacerbated by the addition of approximately 5,000 additional class members, who worked an aggregate 187,718 of workweeks (about 95,000 pay periods), without increasing the amounts to be paid to the LWDA or to be distributed to aggrieved employees.[3]  There is no description of changes in CVS' business practices sufficient to assuage concerns that the factual basis for every single potential PAGA claim has been eliminated as of August 5, 2020, so this information remains material to assessing the fairness of the proposed settlement.

Failure to include such necessary information to understand the value of PAGA claims is critical because those claims are not prone to several of the risk factors used to justify the settlement, including the existence of arbitration agreements, and a separate analysis of their viability should have been presented to the Court for it to assess the fairness of the proposed settlement as to PAGA claims. *See Conti v. L'Oreal USA S/D, Inc.*, 2020 WL 416403, at *11-13 (E.D. Cal., Jan. 27, 2020), *report and recommendation adopted*, 2020 WL 820155 (E.D. Cal., Feb. 19, 2020) (refusing to approve PAGA settlement where no estimate of the maximum potential penalties was provided, as the court could not determine whether the settlement was reasonable or fair without such information).

---

[3] Additional amounts were added to the settlement to reflect payments for Plaintiffs' attorneys' fees and costs, and settlement administration, but not to the LWDA.

### 2. The Scope of the Release is Overly Broad, Not Tailored to the Issues in the Lawsuit, and Not Commensurate with the Amounts Allocated for PAGA Claims.

This action began as a much smaller case than it is now.  Before consolidating with *Cabrera*, *Chalian* originally dealt with off-the-clock work arising from CVS requiring its employees to take training modules while not at work, as well as other claims arising from the same circumstances.  It included no PAGA cause of action.  The *Chalian* plaintiffs then started working with the *Cabrera* plaintiffs.  Two of those plaintiffs had been compelled to arbitration and could no longer pursue the class claims at issue here; they dismissed their individual claims and decided to pursue PAGA claims only, based on letters sent to the LWDA in June and August 2017.  The Court then entered judgment against the original *Cabrera* plaintiffs dismissing PAGA claims pursuant to FRCP 56, which they appealed; at the same time CVS appealed an order denying its motion to compel arbitration of the third plaintiff, and the action was stayed pending the outcome.  The *Chalian* and *Cabrera* cases became one by virtue of the Global Settlement Agreement here, which contained a provision requiring Plaintiffs to file a new consolidated complaint.

As a result, the procedural posture of Plaintiffs at the time the settlement was agreed upon contains several indicia of a weakened bargaining position:

- Due to the date on which he left CVS, the *Chalian* plaintiff could not have pursued any PAGA claims or the broad class claims in the proposed settlement unless his lawsuit incorporated the claims from the *Cabrera* lawsuit;

- Two of the *Cabrera* plaintiffs could not have pursued *any* class claims, could only pursue their PAGA claims after prevailing on appeal;

- The other *Cabrera* plaintiff could not proceed with discovery or other litigation until she prevailed on appeal; and

- Due to the procedural posture of the case, the *Cabrera* plaintiffs had not engaged in any discovery as to the substantive issues in their case, as they had battled CVS regarding their ability to proceed with their case at all – stating in

13

1   their opposition to CVS' motion for summary judgement that CVS had

2   withheld "documents related to [plaintiffs'] employment, including

3   involvement in past settlements, training records, and time record data." ECF

4   75, p. 13:25-14:2.

5   Meanwhile, a competing class and representative action entitled *Ryan Hyams, et al.*

6   *v. CVS Health Corporation, et al.*, Case No. 4:18-cv-06278, was pending in the

7   Northern District of California and was actively litigating some of the same claims in

8   the *Cabrera* case, ***as well as claims never asserted in either case***, which became

9   Plaintiffs' new PAGA claims.

10          After settlement negotiations with CVS, Plaintiffs agreed to a settlement that

11   required them to file a new complaint that, for the first time, alleged claims for

12   violation of Lab. Code §§ 246(i), 550-551, and 850-852.  It is problematic that those

13   new PAGA claims, as well as other claims being litigated in the *Hyams* action, are

14   proposed to be settled in Plaintiffs' consolidated case in exchange for zero additional

15   consideration.  *Murray, supra,* 2019 WL 6045146, at *11 (finding problematic the

16   release of claims valued as worth zero dollars, as "alleging claims that Plaintiff

17   believes are meritless and 'largely worthless in litigation' may violate Rule 11.")

18   (citing Fed. R. Civ. P. 11(b)(2)).

19          Instead of limiting the scope of the release to claims arising from the facts and

20   circumstances alleged in the *Chalian* or *Cabrera* cases, the language of the release

21   was as broad as possible.  As it pertains to PAGA claims, the scope of the release

22   includes:

23          "**[A]ll claims under PAGA that were or could have been asserted**
24          based on the facts, claims, causes of action or legal theories described
            above [including failure to pay minimum wage, failure to pay overtime
25          wages, failure to pay all wages due, failure to comply with Labor Code
            sections 850-852, failure to provide compliant meal breaks or premium
26          pay, failure to authorize or permit rest breaks or premium pay, failure to
            provide complete and accurate wage statements, failure to reimburse
27          necessary business expenses, an failure to pay wages, including final
            wages due], or on any of the claims, causes of action, facts or legal
28

                                          14

theories of relief pleaded in the [*Chalian* or *Cabrera*] Lawsuits,…" (emphasis added).

This type of overbroad release violates the due process rights of absent class members, who cannot possibly understand what claims might be released in this expansive language. *Gonzalez, supra*, 2018 WL 4388425, at *11 (finding the release overbroad where it sought to release all claims under several provisions of the Labor Code, including those that "could have been asserted," as "[w]hile these release provisions might arguably be limited slightly by the language narrowing the released claims to those based on facts asserted in the complaint, the language expanding this definition to those "that could have been asserted based on the facts ascertained ... in the Actions" renders that uncertain," and "creates serious due process issues with respect to absent class members" because they cannot know what "could have been asserted" in the case).

While Plaintiffs have claimed that the allegations in their consolidated complaint were carefully tailored to revolve around the same nucleus of common fact as the training module allegations, the release does not recognize such a limitation.  By including all claims that could have been asserted in any manner related to the released claims, Plaintiffs have substantially expanded the scope of the release beyond the scope of the lawsuit itself.  Simultaneously, Plaintiffs narrowed the scope of facts and legal theories it explored as part of its settlement investigation.

Closer examination of Plaintiffs' evaluation of the Lab. Code §§ 850-851 claims illustrates how Plaintiff's evaluation method resulted in an estimated settlement value that substantially devalued the claims encompassed in the release. Plaintiffs limited the "relevant time period"[4] to June 2016 through August 2018, assuming that it would cover one year prior to Cabrera's LWDA letter through the date that CVS allegedly stopped allowing employees to conduct training modules at

---

[4] Plaintiffs' imprecision in detailing their investigation makes the term "relevant time period" vague, but this appears to be the intended time frame (ECF 89 at 31:21-24).

home.  This cut the potential PAGA time period in half (the release covers up until August 2020, the date of preliminary approval).

Plaintiffs then limited their analysis of potential violations to include only Pharmacists, based solely on CVS' untested representations that the statute only covered Pharmacists.  Yet Lab. Code § 850 states "No person employed to sell at retail drugs and medicines or to compound physicians' prescriptions shall perform any work in any store, dispensary, pharmacy, laboratory, or office for more than an average of nine hours per day," and the applicable legislative history supports an interpretation of including all retail pharmacy employees within its scope.[5] Plaintiffs' counsel could not have effectively evaluated this claim without construing the statute, which their time entries do not reflect that they spent any time doing prior to entering into the settlement agreement.[6]

Plaintiffs further artificially limited their consideration of potential violations to only those instances where Pharmacists may have worked off-the-clock as a result of spending time on training modules that would have made their total shift longer than 9 hours in a day.

Based on these limitations, Plaintiffs concluded that there were a total of 26,000 potential violations at stake, for an estimated value of $2.6 million (utilizing a penalty calculation of $100).[7]  If this is broken down into pay periods, assuming that there are 26 pay periods a year (as CVS' payroll schedule indicates), the amount of total potential violations per pay period would be $50,000 per pay period.

Plaintiffs did not state whether they analyzed the number of times that the

---

[5] By contrast, a full explication of the statutory construction can be found in the briefing in the *Hyams* matter seeking partial summary judgment of the Lab. Code §§ 850-852 claims.  (Kramer Dec., Ex. G).

[6] Review of Plaintiffs' counsel's time entries reveals that only one time entry for 2.1 hours, dated June 1, 2020, refers to PAGA Lab. Code §§ 850-851 claims, in the context of preparing the motion for preliminary approval (well after the settlement had been reached).  ECF 160-3, p. 165.

[7] It appears that these results are based on cherry-picked data, making it imprecise.

timekeeping data indicated a shift length of longer than 9 hours in a day worked by Pharmacists; but it appears that they did not. This analysis was conducted in the *Hyams* matter, where, according to CVS' complete timekeeping data for the time period of July 2, 2017 to December 20, 2019, there were 148,038 such pay periods worked by all Retail Pharmacy employees.[8] To determine the amounts assessed as potential violations as to Pharmacists per pay period, the following assumptions may be made:

- Approximately 79% of the shifts with violations (317,246 out of 399,952) were worked by Pharmacists; 79% of the pay periods at issue is 117,425.

- If Plaintiffs' proposed penalty amount of $100 per violation is used to calculate damages for all of these Pharmacist pay periods combined,[9] the potential high-end damages amount would be $11,742,525.

- If this is broken down into pay periods (26 per year), the amount per pay period would be $301,190 per pay period. If extrapolated to a two-year period (52 pay periods), as Plaintiffs assumed, the amount of damages would be $15,656,700.

- In an "apples-to-apples" comparison of the amounts determined as "high end damages," the $50,000 per pay period Plaintiffs calculated based on their narrow scope of the claims during their evaluation process is only 17% of the potential high-end damages number of $301,190 per pay period. The high-end damages number of the claims falling within the scope of the release – for known existing claims – is 6 times greater.

- Before even adjusting for potential risk, Plaintiffs have given a discount of at

---

[8] Kramer Dec., Ex. G (*Hyams* ECF 84-16, p. 6:1-13 [Table 2])

[9] It is unclear why Plaintiffs essentially cut the potential damages in half by using a per-pay-period penalty amount of $100, when each subsequent violation should be calculated at $200 per pay period. *See Gonzalez, supra*, 2018 WL 4388425, at *8 (the failure to use the statutory rate of PAGA penalties at $200 per pay period was an improper evaluation of the high-end potential damages).

OBJECTION TO PAGA SETTLEMENT

least 83%, in the amount of $13,056,700 simply by the scope of the claims used to evaluate damages in comparison to the scope of the claims released.

- Further, if all the class members who would be subject to the full release of their PAGA claims are included (all Retail Pharmacy employees, not just the Pharmacists), based on the time period of July 2, 2017 to December 20, 2019, the high-end amount of damages increases to $329,585 per pay period, which reflects a discount of at least 87% in the amount of $17,138,400 – an amount 7.6 times greater.

These calculations are reflected in the chart below:

| | Settlement | Pharmacists | Difference | All Retail Pharmacy | Difference |
|---|---|---|---|---|---|
| Number of pay periods | 26,000 | 117,425 | 91,425 | 148,038 | 122,038 |
| PAGA penalties ($100/pay period) | $2,600,000 | $11,742,525 | $ 9,142,525 | $ 14,803,800 | $12,203,800 |
| Amount per pay period | $ 50,000 | $ 301,090 | $ 251,090 | $ 379,585 | $ 329,585 |
| Amount for 2-year period | $2,600,000 | $15,656,700 | $13,056,700 | $ 19,738,400 | $17,138,400 |
| Percentage discount | | | 83% | | 87% |
| Times greater | | 6.0 | | 7.6 | |

In order to accurately capture the scope of the release, the numbers in this chart should have been used as the starting numbers, from which risk was assessed, using specific identified risk factors. Plaintiffs did not do that. In fact, this same analysis should have been presented, in some fashion, to the Court for each of the Labor Code violations included in PAGA claim.

At a minimum, if Plaintiffs intended to rely on the risk that "stacking" of PAGA penalties would not be allowed (even though case law has allowed it, especially where the grounds for the various PAGA claims are distinct and separate), they should have assessed the full scope of the most viable PAGA claim covering the longest period of time. *See Gonzalez, supra,* 2018 WL 4388425, at *8 ("'stacking' PAGA penalties is not inappropriate under California law and, therefore, there is no obvious reason to use 'unstacked' calculations to estimate the value of the case") (citing *O'Connor, supra*, 2016 WL 3548370, at *7 (noting that "[p]laintiffs ignore the potential for stacking of PAGA penalties" and therefore their estimate of PAGA penalties "does not appear to rest on an accurate foundation"); and *Schiller v.*

*David's Bridal, Inc.,* 2010 WL 2793650, at *6 (E.D. Cal. July 14, 2010) (noting that courts include stacked PAGA penalties in calculating the amount in controversy)).

Instead, Plaintiffs lumped all of PAGA claims in together, and assessed them as worth a total settlement value of $75,000, which is approximately 0.38% of the potential value of the Retail Pharmacy claims for only a two-year period, and would be about 0.14% if Plaintiffs had not inappropriately limited potential damages as arising only from facts pertaining to a more limited claim.

This analysis highlights another problem – the proposed settlement is structured so that Pharmacists must share with the rest of the Retail Pharmacy aggrieved employees the amount of potential damages for which, according to Plaintiffs, only they can recover.  This is not fair to the Pharmacists, as they will receive 21% less when the pool of aggrieved employees is diluted with non-Pharmacists.  It is also not fair to the other Retail Pharmacy employees, as it prevents them from benefitting from the additional 21% of shifts they worked in violation of Lab. Code §§ 850-851.  As a result, the settlement amount is both overinclusive and underinclusive, and creates a conflict within the other aggrieved employees.

The same types of problems as listed above occur with the valuation of PAGA claims based on other violations.  Other than a marginal impact on the ability to take breaks impacted by the off-the-clock training module work, the briefing submitted does not examine the facts or data Plaintiffs relied upon in their alleged investigation of their rest break claim, or their meal break claim based on CVS' requirement that Pharmacists take on-duty meal breaks when they were the only Pharmacist on duty, or their business expense reimbursement claim.  The description of the investigation, again, seems limited to examining the effect of the training modules on these other claims.  There is no evidence that data was analyzed to assess the number of pay periods that might be at issue beyond that.

As set forth in the Motion for Class Certification filed in the *Hyams* action, there is a substantial amount of evidence to support those claims on a class-wide

basis, including during PAGA period.  (Kramer Dec., Ex F [*Hyams* ECF 101, pp. 9:1-21:22; 22:25-25:1; 25:12-33:19]).  Plaintiffs here seem unaware of any of those facts or potential number of pay periods that could be affected; nonetheless, they agreed to settle PAGA claims based on all potential facts and legal theories, including those in the *Hyams* action.

### 3. The Overly Broad Scope of the Release, Combined with the Addition of New PAGA Claims at the Last Minute for No Additional Value, Signifies Collusion.

The amounts at stake for the Lab. Code §§ 850-852 claims are not worth so little that they can just be added at the last minute to the settlement in this action without triggering serious concern about collusion.  As the court in *Gonzalez, supra*, 2018 WL 4388425, at *12, realized, a settlement should not be approved where

> [D]efendants sought a broad waiver from plaintiff, which included claims plaintiff did not allege, did not litigate, and did not believe had any value. Moreover, it would not be possible for absent class members to know the extent of the claims they are releasing, given the language of the settlement agreement. While plaintiff might not see a downside in waiving claims he had no interest in litigating, **this is the sort of behavior about which reviewing courts must be vigilant, because it is suggestive of collusion**.

(emphasis added) (citing *Belew v. Brink's, Inc.*, 721 Fed. App'x 734, 735 (9th Cir. 2018) ("One indication of collusion is an overbroad release of claims."); *Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 1671489, at *2 (S.D. Cal. Apr. 28, 2014) ("Courts have found that overly broad release provisions, which release a Defendant from all claims to settle their wage claims, including claims that are unrelated to the claims asserted in the complaint, are improper in [] class action settlements."); *Hendricks v. Starkist Co.*, 2016 WL 692739, at *4 (N.D. Cal. Feb. 19, 2016) (expressing skepticism at plaintiffs' "final-hour amendment expressly requiring the class to release [newly-added] claims.") (internal citations omitted)). If Plaintiffs wanted to add Lab. Code §§ 850-852 claims based solely on Pharmacists whose hours of work violated those provisions when they were engaged in off-the-clock

work associated with training modules, they could have structured a settlement and a release accordingly.  They did not do so.

Rather, they created a path for CVS to attempt to rid itself of the potential damages in the *Hyams* action for virtually no additional benefit to the aggrieved employees or to the LWDA.  Plaintiffs are participants in a form of an improper reverse auction, where they added claims to their case for the sole purpose of dismissing them for no additional consideration.  *See Conti, supra*,  2020 WL 416403, at *10, (in evaluating the "settlement timeline," the court was "troubled by the belated addition of [a new] claim, which appears to have been done after the parties had already at least agreed in principle on terms of settlement," and refused to approve the settlement on the ground that "the parties have assigned no value to the [newly-added] claim separate and apart from the remaining claims in the SAC, which suggests that Plaintiffs never seriously considered litigating the [new] claim and points toward possible collusion between the settling parties").  An actual reverse auction has occurred as to PAGA claims that were asserted in the *Cabrera* matter prior to the settlement, as there is no evidence that those claims were seriously investigated or evaluated.

The court's reasoning in the analogous case of *Gonzalez, supra*, 2018 WL 4388425, at *9, is instructive.  In refusing to approve a proposed settlement under similar circumstances, the *Gonzalez* court reasoned that:

> A trial court's discretion to reduce PAGA penalties might be a reason to ultimately discount the value of PAGA claims, perhaps even significantly, in reaching a settlement. However, before the court could exercise that discretion it would have to know the actual estimated values of PAGA claims. More critically, the court must be convinced that the plaintiff knows the value of the claims he proposes to settle and can adequately explain why he has discounted them in reaching that settlement. The inconsistencies in the valuation of PAGA penalties set forth above suggest either that plaintiff has not been entirely forthcoming or is unaware of the true value of PAGA claims. Either circumstance casts doubt on the basic fairness of the settlement.

In *Gonzalez*, like here, the court had denied an intervenor motion from a different plaintiff in a pending competing case who claimed that "only he had standing to bring PAGA claims related to the Labor Code violations alleged in these suits." *Id.* The court recognized that "the very existence of the other suit raises some additional concerns regarding the negotiated settlement in this case" as "[t]he fact that no party sought to add PAGA claims to this case until after the commencement of settlement negotiations and a full day mediation had been completed suggests the claims may have been added as part of a negotiating tactic, rather than out of a genuine intent to litigate them. This suggestion is enhanced by the inconsistencies in the value placed upon these claims, discussed above." *Id.* at *9-10. The reason the court did "not infer that the addition of PAGA claims was a collusive effort between the settling parties" was because the addition of the new PAGA claims was contested by the defendants through motion practice – which is not true here. *Id.* In this case, the opposite inference should be drawn. In fact, the *Gonzalez* court took into account the proposed intervenor's potential high-end damages estimate that was substantially higher than plaintiff's, and, while not assuming its accuracy, nonetheless refused to rubber-stamp a settlement with deficient information to explain the discrepancies, as "the significant difference between the valuations raises the specter that PAGA penalties may have been included in this settlement as a bargaining chip, rather than as an earnestly-litigated claim." *Id.*

Despite what Plaintiffs have stated in their motions filed with the Court, they have agreed with CVS to represent, in the Notice, their true intention to wrap the *Hyams* claims into the settlement, as demonstrated in the language stating:

> **By its terms, this release includes claims in other active litigation pending against CVS, including *Hyams v. CVS Health Corporation, No. 4:18-cv-06278-HSG* in the Northern District of California…Your legal rights with respect to any overlapping actions/claims will be impacted and/or waived if you participate in this Settlement**.

ECF 180-2, Ex. 1, p. 9 ("Effect of the Settlement").

So, while Plaintiffs are telling the court that the settlement release means one thing, they are joining with CVS to vaguely imply something else to the class.  This after-the-fact collaboration between Plaintiffs and CVS to expand the scope of the release falls squarely in line with what other courts have identified as collusion.[10]

Review of Plaintiffs' counsel's time records submitted in support of Plaintiffs' Counsel's motion for attorneys' fees bolsters this conclusion.  The time entries do not reflect a substantial amount of discovery, reviewing documents, interviewing putative class members, or taking depositions.  The majority of time appears to have been spent in mediation and preparing the settlement documents, not in obtaining facts or evaluating the case.  There are not a substantial number of hours spent communicating with an expert regarding the evaluation of claims.  In particular, the time entries do not indicate that time was spent assessing the risk factors or the amounts at stake in the new PAGA claims sought to be released prior to entering into the settlement. Only one time entry for 2.1 hours, dated June 1, 2020 (more than 3 months *after* the settlement agreement was signed), refers to research related to Lab. Code §§ 850-851 claims, as part of preparing the motion for preliminary approval. ECF 160-3, p. 165.  No other time entries refer to Lab. Code §§ 850-852, 246(i), or 550-551.  Plaintiffs do not describe what evidence or data they reviewed to assess these claims.  Quite simply, there is no excuse for sweeping these claims into the settlement as Plaintiffs propose.

---

[10] Adding to the indicia of collusion, the Parties hid the fact of the settlement for months from the Court and the public.  On October 19, 2019, the Court agreed to stay this matter pending the outcome of a mediation session scheduled for November 11, 2019.  ECF 72.  As part of that Order, the Parties were to file a Joint Status Report within 10 days of completion of the mediation.  *Id*.  However, despite completing mediation on November 11, 2019 and reaching a settlement, no Joint Status Report was filed until June 15, 2020.  ECF 82.  In fact, contrary to this Court's October 19, 2019 Order, the Parties agreed to keep the settlement confidential until the filing of a motion for preliminary approval.  ECF 89-1, p. 47 (11. Confidentiality/Non-Disclosure/No Solicitation).

Aside from the potential monetary loss, another compelling reason exists to stop collusion and/or a reverse auction:  It thwarts the dual purposes of PAGA to punish and deter wrongdoing from companies doing business in the State of California who violate California's labor laws.  CVS's net income for the 9 months prior to 9/30/2020 totaled $6.2 billion (an increase of over $1 billion for the same period a year prior).  **Exhibit D**, RJN.  There are at least 24,309 employees affected by its Labor Code violations.  Despite the long-standing existence of the Labor Code provisions included in PAGA claims, CVS has not complied with them.  As some of Plaintiffs' counsel should know, because they have sued and settled claims with CVS at least twice in the past,[11] CVS continues to violate California's labor laws.  When class action members receive small amounts of money in a settlement check in the mail, and then nothing changes, the laws are no longer working to protect employees.  Instead, CVS is incentivized to make a bottom-line business decision that settling litigation after-the-fact is cheaper than investing in compliance to eliminate potential violations.  The workers echo a recurring theme – that a settlement occurs, they get a small check in the mail, and CVS goes about with business as usual, continuing to violate the Labor Code. *See*, Declarations of Objectors.  As long as CVS can find plaintiffs' lawyers who help them to make that decision – releasing hundreds of millions of dollars of potential PAGA claims in exchange for their attorneys' fees while the workers get an average of $294 for eight years of working under conditions that the Labor Code is designed to prohibit – CVS will continue to do it.

Further, PAGA claims that are being released are not the types of claims that a court should find technical or insignificant so that PAGA penalties should be

---

[11] A review of past CVS PAGA settlements shows no release of Lab. Code §§ 850-851 claims. (Kramer Decl., ¶¶ 18-28)   Notably, despite there being grounds for doing so based on the same nucleus of operative fact, these attorneys did not pursue a Lab. Code § 852 claim.

reduced to the point of being nonexistent.  To the contrary, Lab. Code §§ 850-852 are designed to regulate the hours of work of pharmacy employees who are a critical part of the State's public health scheme.  Overwork and exhaustion caused by understaffing and failure to provide breaks for these employees can result in serious mistakes that have dangerous consequences.[12]  When the goals of PAGA are undermined, as the settlement here does, the losers are CVS' employees and the people of the State of California.

## III.    CONCLUSION

Because this Court lacks jurisdiction over some of PAGA violations pled here and Plaintiffs have ignored and/or arbitrarily undervalued all of PAGA claims for settlement purposes, the Court should sustain this objection and deny approval of the settlement of all PAGA claims in this case.  Alternatively, the Court should sustain this objection as to the new PAGA claims which should never have been incorporated into this case or the proposed settlement.

DATED:  November 13, 2020                         Respectfully sumbitted,

By:  /s/ Jennifer Kramer
Jennifer Kramer
Barbara DuVan-Clarke
Ashley Cruz
Beth A. Gunn
Catherine J. Coble

Attorneys for Settlement Class Members
TRENT ANDREWS, VICTORIA
COSIO, ELIZABETH GARCIA, AND
CYNTHIA CARDENAS

---

[12] The New York Times wrote about the dangers inherent in overworking these employees.  Exhibit D, Kramer Decl.