**ALEXANDER MORRISON + FEHR LLP**
Michael S. Morrison (State Bar No. 205320)
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: 310.394.0888 | F: 310.394.0811
E: mmorrison@amfllp.com

Attorneys for Plaintiffs
individually, on behalf of themselves,
all others similarly situated,
and the general public.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

SEVAG CHALIAN, an Individual, et al., on behalf of themselves and all others similarly situated and the general public,

Plaintiffs,

vs.

CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 through 100, inclusive,

Defendants.

CASE NO.: 2:16-cv-08979-AB-AGR

*Assigned to Hon. André Birotte Jr.*

State Case No.: BC 627757
State Action Filed: July 20, 2016
Removal Date: December 5, 2016

**PLAINTIFFS' REPLY TO THE OBJECTION TO CLASS ACTION SETTLEMENT FROM *HYAMS* OBJECTORS**

Date: December 4, 2020
Time: 10:00 am
Location: Crtm. 7B, 350 West First St.,
          Los Angeles, CA

1

**TABLE OF CONTENTS**

2    I.    Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3    II.   Legal Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4          A.    Plaintiffs' And Their Counsel Have Fairly Represented The Settlement Class
                 And Conducted an Adequate Investigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
5

6          B.    The Release Is Not Overbroad. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7          C.    The Settlement Amount Fairly Compensates Class Members for The Claims
                 Being Released. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8                1.    Solo Pharmacist Meal Period Theory. . . . . . . . . . . . . . . . . . . . . . . . . . 14

9                2.    Rest Break Theory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

10               3.    Off-the-Clock. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11               4.    There Was No Collusion Or Reverse Auction. . . . . . . . . . . . . . . . . . . . 17

12         D.    The Attorneys' Fees Requested Are Fair And Reasonable. . . . . . . . . . . . . . . . . 21

13         E.    The Proposed Enhancements Are Fair and Reasonable. . . . . . . . . . . . . . . . . . . . 23

14         F.    The Method of Notice Comports With Due Process. . . . . . . . . . . . . . . . . . . . . . 25

15   III.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**<u>CASES</u>**

3

*Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245 (N.D. Cal 2015). . . . . . . . . . . . . . . . . . . 14

4

*Bowling v. Pfizer, Inc*., 143 F.R.D. 141 (S.D. Ohio 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5

*Bravo v. Gale Triangle, Inc*., 2017 WL 708766 (C.D. Cal. Feb.16, 2017). . . . . . . . . . . . . . . . . 14

6

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

7

*Castro v. Paragon Indus., Inc*., 2020 WL 1984240s (E.D. Cal. April 27, 2020). . . . . . . . . . . . 12

8

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir.1974). . . . . . . . . . . . . . . . . . . . . . . . . 13

9

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . 26

10

*Elmore v. CVS Pharmacy, Inc*., 2016 WL 6635625 (C.D. Cal. November 9, 2016).. . . . . . . . . 20

11

*Emmons v. Quest Diagnostics Clinical Laboratories, Inc*., 2017 WL 749018
(E.D. Cal. Feb. 27, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

12

*Gonzalez v. CoreCivic of Tennessee, LLC*, 2018 WL 4388425 (E.D. Cal. Sept. 13, 2018). . 11, 12

13

*Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399 (E.D. Cal. Sept. 15, 2020). . . . . . . . 24

14

*Hadley v. Kellog Sales Co.*, 2020 WL 836673 (N.D. Cal. Feb. 20, 2020). . . . . . . . . . . . . . . . . 12

15

*Hadjavi v. CVS Pharmacy, Inc*., 2011 WL 3240763 (C.D. Cal. July 25, 2011). . . . . . . . . . . . 5, 10

16

*Hesse v. Sprint Corp*., 598 F.3d 581 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17

*Hyams, et al. v. CVS Health Corp*., et al., 4:18-cv-06278-HSG. . . . . . . . . . . . . . . . . . . . . Passim

18

*In re Chicken Antitrust Litig*., 669 F.2d 228 (5th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19

*In re Corrugated Container Antitrust Litig*., 643 F.2d 195 (5th Cir. 1981). . . . . . . . . . . . . . . . . 6

20

*In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454 (9th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . 24

21

*In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934 (9th Cir. 2015). . . . . . . . . . . . . . . . . . 24

22

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 1753784 (May 9, 2011). . . . . . . . 20

23

*IvanLopez-Marquez v. Subway No. 53786*, Los Angeles Superior Court Case No. BC475671. . 12

24

*Kim v. Reins Int'l California, Inc*., 9 Cal. 5th 73 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . 6, 8, 13

26

*Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338 (9th Cir.1980). . . . . . . . . . . . . . . . . . . . . . 26

27

*Nur v. Tatitlek Services, Inc*., 2016 WL 7626144 (C.D. Cal. August 23, 2016). . . . . . . . . . . . . 11

28

ii

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th Cir. 1982).. . 2, 13

*Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir.2013). . . . . . . . . . . . . . . 20

*Patel v. TransUnion, LLC,* 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018). . . . . . . . . . . . . . . . . 24

*Rodriguez v. Kraft Foods Group, Inc.*, 2016 WL 5844378 (E.D. Cal. Oct. 5, 2016). . . . . . . . . 24

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . 26

*Saleh v. Titan Corp.*, 353 F. Supp.2d 1087 (S.D. Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sanchez v. Frito-Lay, Inc.*, 2019 WL 4828775 (E.D. Cal. Sept. 30 2019). . . . . . . . . . . . . . . . 12

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016). . . . . . . . . . . . . . . . . . . . . . . 11, 24

*Woods v. Caremark PHC, LLC*, 198 F.Supp.3d 1046 (W.D. Mo. August 2, 2016). . . . . . . . . . 20


**STATUTES & REGULATIONS**

California Labor Code
      § 246, et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
      § 550.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
      § 551.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
      § 850.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
      § 851.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
      § 852.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Rules of Civil Procedure
      § 23, et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

## MEMORNADUM OF POINTS AND AUTHORITIES

I. <u>INTRODUCTION</u>

The *Hyams'* Objection to Class Action Settlement fails to advance any new arguments which would warrant denial of final approval.  In their "scorched-earth" approach to derailing this settlement, *Hyams* and their counsel resort to familiar tactics.  With little to no evidentiary support, they renew their arguments that Class Counsel colluded with CVS and sold out the Settlement Class to line their pockets. They grossly misrepresent Class Counsel's investigation into the claims in this case while touting their Herculean efforts which to date have yielded a recovery of exactly zero dollars.  They spend a great deal of time discussing their case and its value, while paying very little attention to facts and legal theories actually asserted by Plaintiffs in this action and Class Counsel's assessment. Whether it be the attorneys' fees sought, method of notice, or Class Representative enhancements, there is almost no aspect of this Settlement safe from *Hyams'* unwarranted and baseless criticisms.[1]

But a close examination of the *Hyams'* objections reveals something other than a valid basis to deny this Settlement – *hypocrisy.* Indeed, what is most remarkable about *Hyams'* objections is that many of the things they complain about are present in **<u>their own past class action settlements.</u>**  Before this case, *Hyams'* counsel had no problem with clear sailing agreements in settlement agreements, requests for attorneys' fees exceeding 25% of the gross settlement fund, class representative enhancements which are larger than the average recovery amount, or, as discussed in the response to parallel PAGA objection, similar allocations of PAGA and Class damages in order to provide more compensation to Class Members.  The fact that

---

[1] As discussed in the response to the Objection to Settlement Under Private Attorney General Act, this Court should reject *Hyams'* invitation to neatly split this settlement approval into two parts – i.e. the Class Settlement and the PAGA Settlement. "It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).

*Hyams'* counsel now takes issue with these things speaks volumes about their true motives and intentions.

Before addressing the merits of their objections, it is important to remind the Court why the current situation exists. *Chalian* and *Cabrera* filed their actions before *Hyams*. When they learned of each other's cases, they did not try to hide from one another. They collaborated, joined forces, and worked hard to achieve an eight-figure settlement. In this era of arbitration agreements and class action waivers, that is no small feat, especially considering that CVS is a large corporate entity that has been successful in beating back at least two similar attempts to certify a statewide class for meal and rest periods, overtime, etc. In reading *Hyams'* objection, one would think Plaintiffs achieved a paltry six-figure settlement and not over ten-million dollars.

Turning to the merits of the Objection, Class Counsel conducted a substantial investigation into the claims at issue in this case. Class Counsel relied on a mix of formal and informal discovery, numerous witness interviews, expert analysis, and their past experience litigating similar claims against CVS.

Concerning the Release, as demonstrated in the Motion for Final Approval and below, the Release is not overbroad and courts in this Circuit have routinely approved similar release language. To the extent *Hyams* are requesting that this Court determine the applicability of the Release to their case, this Court should decline to do so. Such a fact intensive inquiry, which requires a comparison of the complaints in the underlying action and the asserted facts and legal theories, is something that the court in their case will decide and in fact has been asked to do.

The Settlement is also a fair compromise of disputed claims. Class Counsel has analyzed each of the claims in this case in great detail, providing expert analysis regarding the likely value of claims, facts learned from their investigation into CVS's practices, and the relevant case law in the area. This analysis conclusively proves the reasonableness of the Settlement. And although Class Counsel are not required to analyze *Hyams'* case, they have taken a look below the hood of their lofty damages

projections and discovered facts which actually support rather than undermine the reasonableness of the Settlement.

*Hyams'* other objections – inequitable treatment of Settlement Class Members, collusion, excessive attorneys' fees and enhancements, and improper notice – are simply not grounded in the law and are contrary to their own, past settlements.

The Class Representatives and Class Counsel are proud of this Settlement. They worked hard to achieve this result. They do not deserve to have their reputations and integrity besmirched by Counsel who recently had to be enjoined for engaging in unethical behavior.  The Settlement should be approved in full.

## II.   **LEGAL ARGUMENT**

### A.   **Plaintiffs' And Their Counsel Have Fairly Represented The Settlement Class And Conducted an Adequate Investigation.**

The *Hyams'* Objectors make a number of misrepresentations when arguing Plaintiffs' investigation of the claims at issue in the Settlement and their representation of the Settlement Class were inadequate.  Specifically, the *Hyams* Objectors proclaim that "no formal discovery" was conducted by Class Counsel and that the only documents produced by CVS "were cherry-picked to advance its own position." *See* ECF No. 187, p. 4.  Both statements are patently false.

Indeed, Plaintiffs' Motion for Final Approval explicitly states that Plaintiffs propounded and responded to written discovery. *See* ECF No., 180, p. 46.  As part of this formal discovery, Defendants provided the relevant policies and procedures related to the claims in this case, contact information for pharmacy employees, a sampling of pay and time punch data, and LEARNet and Site Minder data. Additional data and information were provided during the mediation and settlement process informally, including pay information, time punches, and the length of employment for each of the employees in the *Cabrera* and *Chalian* classes.  This data and information (after expert analysis) were relied on to negotiate the Settlement and/or verify the reasonableness of the Settlement amount reached.  As the above makes

clear, given the breadth of the data and information provided, it cannot credibly be argued that the documents and information provided by CVS were "cherry-picked" by CVS. On the contrary, it is precisely the information Plaintiffs and their counsel needed to make an informed decision about Settlement. Supplemental Declaration of Michael Morrison ("Morrison Decl."), ¶ 2.

Plaintiffs' investigation of the case, however, was not limited to documents and data produced by CVS.  Plaintiffs' counsel interviewed over 100 persons about their experiences at CVS relating to the claims at issue in this Settlement. These interviews were conducted both before and after litigation commenced.  Morrison Decl., ¶¶ 3, 14; Declaration of Thomas W. Falvey In Support of Plaintiffs' Reply to Objections to Class Action Settlement from Hyams Objectors ("Falvey Decl."), ¶¶ 7-8. In addition, prior to the initiation of litigation, Plaintiffs and their counsel had already accumulated a great deal of knowledge about CVS's pay, meal and rest period, scheduling, and reimbursement policies from past cases litigated against CVS involving pharmacy employees by Class Counsel.  In particular, Mr. Falvey's office (at which Mr. Boyamian and Kizarian formerly worked) has been involved in 15 class action cases against CVS for wage and hour violations involving pharmacy employees.  In one of these cases, the District Court (Central District of California) denied plaintiff's motion for class certification of a state-wide meal and rest period and overtime case. *See Hadjavi v. CVS Pharmacy, Inc.*, 2011 WL 3240763, at *4 (C.D. Cal. July 25, 2011) ("In this present action, Plaintiffs have failed to demonstrate that Defendants had a uniform or common policy in place that "prevented" employees from taking meal and rest breaks and did not provide overtime wages throughout all California locations. Defendants proffered declarations from pharmacists employed at various locations that contradict Plaintiffs' claim that a system wide policy or practice was in place that prevented pharmacists from taking rest or meal breaks."). Morrison Decl., ¶ 5; Falvey Decl., ¶¶ 4-6.

The knowledge obtained by Class Counsel during previous, similar litigation is certainly relevant to the issue of whether Class Counsel had sufficient information to resolve the cases. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-1240 (9th Cir. 1998) ("In this case, [counsel] possessed a wealth of experience related to class actions, garnered after years of settlement negotiations with AT&T. A per se rule that would deprive new class counsel the benefit of such experience clearly would not be in the best interests of the class."; "[T]he district court and plaintiffs may rely on discovery developed in prior or related proceedings.") (emphasis added), *citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) and *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 162 (S.D. Ohio 1992) (holding that "a fair and reasonable settlement may be negotiated where the plaintiffs had access to discovery in other cases and the results of government investigations prior to agreeing to the class settlement.")  Morrison Decl., ¶ 6.

Below is a chart of the investigation and discovery used to analyze the primary claims at issue in this Settlement:

| CLAIM | INVESTIGATION AND DISCOVERY |
|---|---|
| Off-the-clock work | (1) Relevant written policies, (2) excel spreadsheets showing pay information, dates of employment, time punches, LEARNet and Site Minder data (to determine the length of time spent on trainings); (3) interviews with pharmacy employees; (4) expert analysis to arrive at damages and penalty amounts |
| Meal Period Violations | (1) Relevant written policies; (2) excel spreadsheets of time punches and corresponding pay data as well as dates |

| | |
|---|---|
| | of employment; (3) interviews with pharmacy employees; (4) expert analysis to arrive at damages and penalty amounts; (5) past experience litigating meal and rest period claims against CVS |
| Rest Period Violations | (1) Relevant written policies; (2) excel spread sheets of pay information and dates of employment; (3) interviews with pharmacy employees; (4) expert analysis to arrive at damages and penalty amounts; (5) past experience litigating meal and rest period claims against CVS |
| Labor Code 850-851, 550-551 claims | (1) .pdf of spreadsheet provided by CVS showing number of violations for pharmacists during the relevant period; (2) excel spreadsheets showing time punches, which was compared against training records for pharmacy employees to determine if off-the-clock work caused violations of statutes; (3) expert analysis to determine civil penalties. |
| Reimbursement claims | (1) Relevant written policies; (2) interviews with pharmacy employees; (3) past experience litigating reimbursement claims against CVS |
| Labor Code 246(i) | CVS written policies (and negative case law re: entitlement civil penalties) |

The derivative violations flowing from the above claims were analyzed in the same or similar manner.  Morrison Decl., ¶ 7.[2]

As for arbitration, Plaintiffs' expert analyzed a spreadsheet identifying which employees opted out of arbitration and the time-period they opted-out.  Plaintiffs also had to oppose multiple motions to compel arbitration, meaning they were familiar with the different sources for arbitration (e.g. training modules, on-boarding documents, and collective bargaining agreements) and the case law with respect to enforcing the arbitration agreements.  Morrison Decl., ¶ 9.

Whether the discovery and investigation described above is considered formal vs. informal is irrelevant to the fairness of the Settlement.  This is because courts have universally held that Parties can resolve class action lawsuits without extensive formal discovery, provided there is sufficient information to make an informed decision.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlement, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."), *quoting In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982).  The mix of formal and informal discovery, the experience of Class Counsel litigating these claims against CVS, the employee interviews, and the expert analysis were more than sufficient to inform Class Counsel as to what a reasonable Settlement value would be.  Morrison Decl., ¶ 10.

Despite the wealth of information Plaintiffs had to assess the value of the claims in this case, the *Hyams* Objectors nevertheless accuse Class Counsel of failing to challenge CVS's evidence in any meaningful way.  As proof of this, they criticize

---

[2] In terms of the expert's methodology, he: (1) determined average hourly rates for Pharmacist Settlement Class [$61.88] alone for the Retail Pharmacy Class [$38.40]; (2) determined the total number of shifts and/or pay periods depending upon the claim and relevant statute of limitations; and (3) determined the violation rate (where applicable) and applied it  to the entire Class.  For claims where violations could not be ascertained from the records, assumptions were used.  Morrison Decl., ¶ 8.

Class Counsel's reliance on a policy document provided by CVS authorizing pharmacists working alone on a shift to take a meal period, which *Hyams* claims CVS has failed to authenticate.  ECF No. 187, p. 6 [criticizing reliance on Ex. "6" from ECF No. 180-1]. However, the deposition testimony cited by *Hyams* does not include the actual policies being discussed as an exhibit, making it impossible to determine if the same policy documents are being discussed.  ECF No. 187-1, Ex. "A" and "B". In addition, the *Hyams'* analysis ignores that Class Counsel attached <u>two</u> policy documents created at different times indicating pharmacists could leave the premises to take meal and rest periods regardless of whether they are alone or not.  *See* ECF No. 180-1, Ex. "6" and "7".  More significantly, the cited deposition testimony does not establish that CVS could not authenticate its meal period policy for solo pharmacists. Instead, the witnesses seem to confirm that the policy document accurately reflected CVS's meal period policy and was intended to be distributed to California stores for employees to comply.  *See* ECF 187-1, Ex. "A". pp. 84-85 ("So our HR Partner and I gave direction during our region meeting that this document was to be posted in all break rooms."); ECF No. 187-1, Ex. "B", p. 145 ("[I]t's store management development because you see the SMD, so probably – at the end of this last page, so this would be a document that would reinforce our policies around California stores' meal and rest periods.").  Morrison Decl., ¶ 11.

But even if *Hyams* is correct that the policy document may not have been distributed to all California stores or employees, this does not change Plaintiffs' settlement analysis.  As explained in more detail in the Motion for Final Approval [ECF No. 180, pp. 32-34] and below, the meal period violation rate is extremely low for pharmacy employees and the *Hyams'* analysis <u>assumes</u> every pharmacist working alone had a meal period violation irrespective of whether his or her time punch records disclose a violation.  *See* ECF 187-1, Ex. "D", pp. 8 and 17 (Solo RPH [solo registered pharmacist] listed in damages table with designation "valid meal," which means a meal period was recorded).  In Class Counsel's view, when the records do

not disclose meal period violations, it is extremely difficult to certify a meal period class. A mountain of anecdotal evidence in the form of Class Member testimony would be required to establish that solo pharmacists were not permitted to leave the premises during meal periods. Further, CVS's opposition to *Hyams'* motion for class certification contains numerous declarations from CVS's employees attesting to pharmacy workers being allowed to leave the store for meal and rest periods. Compendium of Declarations and Evidence in Support of Defendants' Opposition to Motion for Class Certification, *Hyams, et al. v. CVS Health Corp.*, et al., 4:18-cv-06278-HSG, ECF No. 120-7. As noted above, the *Hadjavi* court pointed to conflicting class member testimony when denying class certification of a statewide meal period class of CVS employees.  Morrison Decl., ¶ 12.

### B.      The Release Is Not Overbroad.

Having just argued to its Court in the Northern District that Plaintiffs' inclusion of Labor Code sections 850-851 and 550-551 in the Settlement tracks the allegations previously asserted in the case,[3] the *Hyams* objectors return to this Court to advance the opposite argument. According to *Hyams*, the Release is overbroad because it encompasses claims "which could have been alleged in the lawsuits" based on the allegations in the complaint, which they now contend means unrelated claims may be swept into this action and forever barred.  ECF No. 187, pp. 7-8.  Of course, the problem with this analysis is the Ninth Circuit has repeatedly stated that released claims not presented in the underlying action can be released if they arise from the same allegations in the complaint.  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590-91 (9th Cir. 2010); *Kim v. Reins Int'l California, Inc.*, 9 Cal. 5th 73, 92-93 (2020) ("Generally speaking, a prior judgment between the same parties 'is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable.'") (emphasis in original); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 327-28 (C.D. Cal. 2016)

---

[3] *See* ECF No. 180-1, pp. 13-14 [Exhibit "11" to Morrison Decl.]

(approving release which applied to claims which "could have been asserted" as proper because it does not apply to claims other than those related to the subject matter of the litigation. "[T]he court finds that the release adequately balances fairness to the absent class members and recovery for plaintiffs with defendants' business interest in ending this litigation with finality.") (citation omitted); *Nur v. Tatitlek Services, Inc.*, 2016 WL 7626144, at *6 (C.D. Cal. August 23, 2016) (granting final approval where release applied to "all claims…of any and every kind that were or could have been asserted in any version of the complaints filed in this Action or are based on or arise out of the facts alleged in any version of the complaints filed in this Action."); *see* also ECF No. 180, pp. 17-18 (listing additional authority). A release of claims both asserted or which could have been asserted that is tied to the facts and theories in the complaint necessarily tracks the allegations of the complaint and is therefore lawful. There are dozens (if not hundreds) of class action settlements which have been approved with the same or similar language.

Given the above law, it is not surprising that even cursory review of *Hyams'* legal authority demonstrates significant differences between the Release in this case and those found improper by courts. For example, the issue in *Gonzalez v. CoreCivic of Tennessee, LLC*, 2018 WL 4388425, at *11 (E.D. Cal. Sept. 13, 2018) was a release which purported to release claims "that could have been asserted based on the facts *ascertained* ... in the Actions." (emphasis added). This was problematic to the court because class members would have no way of determining which facts were *ascertained* during the case. *Id.* ("While these release provisions might arguably be limited slightly by the language narrowing the released claims to those based on facts asserted in the complaint, the language expanding this definition to those 'that could have been asserted based on the facts ascertained ... in the Actions' renders that uncertain"). Here, by contrast, the scope of the Release is not tied to facts ascertained during the action, but the allegations actually asserted in the complaint(s) that Settlement Class Members can review. Moreover, the release in *Gonzalez* applied to

claims which were completely unrelated to the allegations in the complaint and not derivative.  That is not the situation here.  At its core, *Gonzalez* stands for the unremarkable proposition that a release of claims must reasonably track the allegations in the complaint.[4]

Concerning *Hadley v. Kellog Sales Co.*, 2020 WL 836673 (N.D. Cal. Feb. 20, 2020), while there is not much explanation, it appears the court took exception to the language that all claims of "*every nature and description whatsoever*" and "*related in any way*" to the allegations in the complaint were being released. *Id.* at *2 (emphasis in original). This type of sweeping language is noticeably absent from the Release in this case.

Overall, the Release in this case does not expand to any claims which are not alleged or derivative of the claims already plead.  Indeed, other than the derivative PAGA allegations added to the consolidated complaint (e.g. 850-851, 550-551 246(i)), *Hyams* has failed to identify any other claims which are improperly being released.[5]  To the extent *Hyams* is seeking a ruling from this Court that the Release does not cover certain claims in their case, this Court should avoid making such a ruling.  The analysis with respect to res judicata is a highly fact specific one – one that this Court undertook when CVS used a previous settlement to attack Plaintiff

---

[4] As for *Sanchez v. Frito-Lay, Inc.*, 2019 WL 4828775, at *11 (E.D. Cal. Sept. 30 2019), it appears the court piggy-backed off its earlier decision in *Gonzalez* to conclude that it is improper to release claims that could have been plead "based on the factual allegations in the Complaint." This holding directly contradicts the Ninth Circuit authority listed above. It is also curious that the same judge recently preliminarily approved a settlement where "[claims] that could have been plead" was contained in the release. *Castro v. Paragon Indus., Inc.*, 2020 WL 1984240, at *2 (E.D. Cal. April 27, 2020). This court should decline to follow *Sanchez*.

[5] In fact, *Hyams'* counsel have agreed to releases that are even broader than the one in this case without objections. " 'Released claims' are defined as: all claims, demands, rights, liabilities, and causes of action **that were or could have been asserted** in the Lawsuit, whether in tort, contract, statute, rule, ordinance, order, regulation, or otherwise." [*IvanLopez-Marquez v. Subway No.* 53786, Los Angeles Superior Court Case No. BC475671,  Exhibit "3" to Morrison Decl.

Chalian's claims. *Hyams* has squarely put the issue of the scope of the Release and its impact on their case before the court in the Northern District. Supplemental Declaration of Beth Gunn in Support of Plaintiff's Motion for Partial Summary Judgment, *Hyams, et al. v. CVS Health Corp.*, et al., 4:18-cv-06278-HSG, ECF No. 112-1, p. 13-16. That is the proper place to determine the application of the Release to their case. The only issue before this Court is whether the Release comports with the law, which is clearly does.

### C.   The Settlement Amount Fairly Compensates Class Members for The Claims Being Released.

The *Hyams* Objectors resort to familiar tactics when arguing the amount of the Settlement is too low. Rather than analyzing the claims and theories in this case, they discuss their case. *Hyams* throws out numbers showing a high potential recovery associated with certain claims they argue are being released without providing any context for this Court to assess the reasonableness of those assertions. At the same time, they also misrepresent Plaintiffs' projections and arguments.[6]

Before responding to the specific criticisms from *Hyams*, it is important to remind the Court that numerous settlements have been approved where only a fraction of the potential recovery was achieved in settlement. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (*quoting City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n. 2 (2nd Cir.1974)); *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir.1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential

---

[6] The chart purporting to show Class Counsel's evaluation of damages on page 9 of *Hyams* objection is inaccurate in a number of respects. Class Counsel urges the Court to review the Motion for Final Approval for an accurate accounting of Class Counsel's assessment of damages/penalties. *See* ECF No. 180, pp. 25-45 (describing Class Counsel's evaluation of the claims).

recovery does not per se render the settlement inadequate or unfair."); *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *10 (C.D. Cal. Feb.16, 2017) (approving a settlement where net recovery to class members was approximately 7.5% of the projected maximum recovery amount); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal 2015) (approving a settlement where the gross recovery to the class was approximately 8.5% of the maximum recovery amount).

Class Counsel believes that the eight-figure settlement achieved in this case is a great result given the defenses to this action, as discussed in the Motion for Final Approval. *See* ECF No. 180, pp. 25-45.  There were significant barriers to recovery in the form of arbitration agreements executed by almost every Settlement Class Member and class certification (predominance) issues, in addition to a number of merits issues. *Hyams* either glosses over these barriers or ignores them completely. For example, *Hyams* never analyzes class certification issues raised by CVS even though class certification is a necessary prerequisite to recovery on the class claims.

### 1. Solo Pharmacist Meal Period Theory

*Hyams* falsely argues that Plaintiffs have not evaluated the solo pharmacist meal period theory.  However, the solo pharmacist theory is clearly discussed in the final approval papers as well as the reply brief in support of preliminary approval. *See* ECF No. 180, pp. 32 and 106, pp. 19.

*Hyams* provides little information about the solo pharmacist theory.  They simply present the expert's damages calculations and then discount them based on arbitrary risk factors of 10 and 25%. *See* ECF No. 187, p. 10.  There is no discussion of the likelihood of class certification or merits issues which exist, unlike Plaintiffs' analysis.  For example, *Hyams* conceals the fact that CVS's time punches do not reveal high violation rates for solo pharmacists.  Instead, as pointed out above, *Hyams* simply assumes that regardless of whether the time records reveal a violation, a meal period violation should be assumed anytime a pharmacist worked as the only pharmacist.  This is contradicted by numerous declarations provided by CVS and

deposition testimony that pharmacists were allowed to leave the store for meal and rest periods.  WPlaintiffs' investigation also found variation amongst Settlement Class Members on this issue.  Falvey decl., ¶¶ 13-14. This conflict in the evidence will prove challenging for class certification.

In terms of the damages, if the Class is limited to persons who expressly opted out of arbitration, then the maximum recovery (assuming 100% violation rate) according to their expert is $2,666,492.  ECF No. 187-1, Ex. "D", p. 17 (Table 3D).  Using their arbitrary risk factors of 10 and 25%, the estimated range of damages is between approximately $266k and $666k.  These are hardly numbers which call into question the fairness of this Settlement, especially when their expert's estimate of the overall meal period violation rate for pharmacy employees is approximately 6%. *See* ECF No. 187-1, Ex. "D", p. 14 (Table 2D) (of 1,058,419 shifts, 63,272 show a meal period violation).  It should be noted that this meal period violation rate includes time records which reveal that the employee did not record a meal period for shifts lasting between 10 and 12 hours (which can be waived by employees). *Id.* at 10 (definition of "meal eligible violation").  Thus, the actual violation rate may be far lower.  Given these numbers, it is not surprising that CVS has prevailed twice in the last ten years of beating back a plaintiff's attempt to certify a statewide meal and rest period class.

## 2.   Rest Break Theory

*Hyams* objectors claim Plaintiffs have not addressed their "understaffing" rest period theory.  This is wrong.  The theory was evaluated in light of the other evidence Plaintiffs' uncovered during their investigation into the case.  *See* ECF No. 180, p. 36.  To briefly summarize, the issues with rest periods are: (1) CVS's policy appears to be facially lawful, even though for part of the class period it was silent on where a rest period could be taken; (2) in *Hyams,* CVS, as in prior cases, has submitted evidence in the form of declarations from supervisors and non-supervisory pharmacy employees that pharmacy employees have the opportunity to and do in fact take their rest period breaks in accordance with the law. Compendium of Declarations and

Evidence in Support of Defendants' Opposition to Motion for Class Certification, *Hyams, et al. v. CVS Health Corp.*, et al., 4:18-cv-06278-HSG, ECF No. 120-7; and (3) there are no records which reveal rest period violations. These facts cause significant class certification and merits issues.  Again, CVS has defeated two attempts to certify a statewide rest period class in the last ten years.

### 3.   Off-the-Clock

*Hyams* objectors fault Plaintiffs for not accounting for a potential off-the-clock claim involving <u>Target</u> pharmacists and 5 minutes of unpaid time incurred at the opening and closing of their shifts. Plaintiffs discuss the challenges associated with this claim in their motion for final approval. *See* ECF No. 180, p. 32, fn. 12. Excluding people who signed arbitration agreements and did not opt out, the total damages for this OTC time <u>according to *Hyams*' expert</u> is only $46,947 – an amount which does not call into question the fairness of the Settlement.  ECF No. 187-1, Ex. "D", p. 25 (Table).[7] [8]

### 4.   There Was No Collusion Or Reverse Auction.

*Hyams* Objectors renew their baseless allegations that Plaintiffs colluded with CVS and engaged in a reverse auction.  Plaintiffs address these arguments in great

---

[7] Plaintiffs' claim for inaccurate wage statements was plead as derivative claim of the other violations in the case.  Given the cap on 226(e) statutory penalties at $4000, the maximum recovery for persons who did not execute arbitration agreements (approximately 825 persons) is $3,300,000 (assuming everyone worked the maximum number of pay periods, which is not the case).  Given the risks associated with the claims above, the likely recovery is far less.  Moreover, it is unlikely a court would award both statutory and civil penalties for the same offense.

[8] While Plaintiffs did not plead a cell phone claim, such a claim would suffer from the same issues as reimbursement for use of personal computers and devices. There is no policy at CVS requiring use of a cell phone – nor have *Hyams* objectors identified one. According to *Hyams*' expert, when limited to people who opted-out of arbitration agreements, the maximum damages are $2,499,893.  If you apply a 50% risk factor, that is approximately $1.25 million. Again, this is not an amount which call into question the fairness of the settlement.

detail in their motion for final approval.  *See* ECF No. 180, pp. 23-25.  Plaintiffs will not repeat those arguments here. Plaintiffs will recite the following facts, however, which undermine the collusion and reverse auction arguments:

- Both *Chalian* and *Cabrera* were filed before *Hyams*;

- Because of the overlapping claims in the cases, when *Chalian* and *Cabrera* counsel learned of each others' cases in 2018, they decided to join forces and work cooperatively, executing a joint prosecution agreement to that effect;

- Despite knowing of the *Chalian* and *Cabrera* matters and the overlapping claims with their case, *Hyams* counsel decides not to reach out to the Plaintiffs' counsel.  Instead, they argued to their court their case was unrelated to *Chalian* and *Cabrera* because it was much broader in scope;

- *Chalian* and *Cabrera* counsel were unaware of the *Hyams* case at the time of Settlement;

- *Chalian* and *Cabrera* went to mediation seven and eleven months before *Hyams* was unsuccessfully mediated;

- Within 24 hours of learning of the *Chalian* Settlement, and without having done any real investigation, *Hyams* files a motion to intervene and accuses Class Counsel of collusion and reverse auction;

- The only new claims not previously plead or raised in letters to the LWDA in the Consolidated, Amended Complaint (Labor Code sections 850-852, 550-551, and 246(i)) were specifically plead as derivative violations of claims already asserted; and

- Class Counsel are very experienced in class actions and have obtained large recoveries on behalf of classes of employees.

*Hyams* repeatedly suggests malfeasance because the *Chalian* and *Cabrera* cases were eventually consolidated into a single action.  But this is hardly surprising given the joint prosecution agreement entered into in 2018 and the fact that the cases were mediated and settled together.  If *Hyams* counsel took a similar, cooperative approach to litigation, then the present dispute could have been avoided altogether.

Instead, the only time *Hyams* sought cooperation from any other counsel was after this Settlement was consummated in order to "rally" objectors and opt-outs. The malfeasance here is from *Hyams* counsel, who have taken a "scorched-earth" approach to disrupt this settlement through baseless allegations about Class Counsel in public pleadings, hypocritical positions about the Settlement (i.e. objecting to aspects of settlement which have been present in their past settlements), contradictory legal positions depending on the court they find themselves in, and improper communications to represented parties that this Court found misleading, coercive, and improper. Denying final approval here would only reward their unprofessional tactics.

*Hyams* also claim collusion can be inferred from an overbroad release. Plaintiffs have shown above that the Release is not overbroad and conforms to the law in this Circuit.  Moreover, if Plaintiffs were colluding with CVS, then they would not have insisted that the PAGA claims added to the Consolidated, Amended Complaint be plead as derivative of violations of claims already asserted.  No other claims were added (i.e. there was not some *great* expansion of claims as *Hyams* falsely suggest).

*Hyams* misrepresents the amount of time Plaintiffs investigated the meal and rest period claims.  The absence of specific time entries denoting "investigation of meal and rest period claims" is hardly surprising as such specificity rarely appears in time records. But even as to this fact, *Hyams* objectors again resort to fabrication over fact.  For example, the third through fifth time entries on Mr. Morrison's time sheets specifically refer to witness calls discussing meal and rest period violations. ECF No. 160-3, p. 161, Ex. "8" ("M&R violations, off the clock").  In other witness calls made by Mr. Morrison (of which there are almost 17 hours based on the time records), the topic of meal and rest period practices at CVS were discussed.  Other attorneys interviewed Settlement Class Members about their meal and rest period experiences too, including dozens of calls conducted by Thomas Falvey, who was involved in one

of the previous, unsuccessful meal and rest period statewide class actions against CVS. Falvey Decl., ¶¶ 5-8, 14.  All of this was in addition to reviewing the relevant policies and procedures and analyzing the time punch records with the assistance of an expert. After a Settlement was reached, additional legal research was conducted and new expert calculations were made to verify the fairness of the Settlement and to respond to the *Hyams'* objections.

*Hyams* also claims collusion because the Settlement Class contains persons who signed arbitration agreements as well as those who opted-out. *Hyams* ignores, however, that the original complaints in both actions, as well as the Consolidated, Amended Complaint, were not limited to persons who opted out of arbitration. Equally as important, at the time of mediation, CVS had provided class-wide data which allowed counsel to calculate damages for the whole class (at the time, 19+k employees), not just those who opted out of arbitration. Morrison Decl., ¶ 4. Plaintiffs are also unaware of any cases where a Settlement was not approved because it included persons who signed arbitration agreements and those who did not, or because the settlement did not allocate more money to those not bound by arbitration agreements.  Indeed, if the distribution formula in this Settlement had treated those who signed arbitration agreements less favorably, *Hyams* certainly would have taken the position this is inequitable.[9]

Finally, collusion cannot be inferred because Plaintiffs have heavily adjusted for the risk of arbitration. Again, one of the *Chalian* Plaintiffs was compelled to arbitration. Further, issues regarding the enforceability of CVS's arbitration agreement would be resolved by the arbitrator, not the court, given its specific

---

[9] *Hyams* also complains that the Settlement does not provide more compensation for pharmacists, who have claims that pharmacy techs do not. However, the only unique claim they identify is the solo pharmacist meal period claim, which is replete with proof problems.  In any event, because the distribution formula takes into account an employee's hourly rate, pharmacists will get more under this Settlement than pharmacy techs if they worked the same time period.

incorporation of AAA's procedural rules in agreements like that signed by one of the *Chalian* Plaintiffs. ECF No. 47-8, p. 3, Ex. "4";  *see Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("In *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir.2013) we observed that '[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'"); *see also Elmore v. CVS Pharmacy, Inc.*, 2016 WL 6635625, *3 (C.D. Cal. November 9, 2016) (finding CVS's arbitration agreement delegated arbitrability issues to the arbitrator).  The *Woods v. Caremark PHC, LLC*, 198 F.Supp.3d 1046, 1049 (W.D. Mo. August 2, 2016) case relied on by *Hyams* directly contradicts binding Ninth Circuit authority on the delegation issue.  Moreover, putative class members prior to class certification are not parties to the litigation and therefore would not have "pending" claims.  *See Saleh v. Titan Corp.*, 353 F. Supp.2d 1087, 1091 (S.D. Cal. 2004) (putative class members are not parties to an action before class certification); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 1753784, *3-4 (May 9, 2011) (Defendant did not waive right to compel arbitration against putative class because they were not parties prior to class certification). Class Counsel believes an arbitrator is unlikely to rule otherwise. This belief is based on counsel's experience with arbitrators when it comes to deciding his or her own jurisdiction.

### D.    The Attorneys' Fees Requested Are Fair And Reasonable.

Continuing with their scorched-earth approach to this Settlement, *Hyams* Objectors complain about the amount of attorney fees sought by Plaintiffs – i.e. 30% of the gross settlement amount, or $3,111,403.98.  *Hyams* first argue the requested fees are sign of collusion because of the presence of a clear sailing agreement in the Settlement. The motion for final approval addresses the "clear sailing agreement" argument. To briefly summarize, where: (1) the attorneys, like here, are not getting a disproportionate share of the settlement fees; (2) the attorneys' fees are to be paid from the settlement fund and not separately; and (3) the settlement was achieved with

the help of a mediator, courts have not hesitated to conclude there is no collusion.[10] *See* ECF No. 180, pp. 23-24. *Hyams* do not respond to any of these arguments.

*Hyams* counsel knows full well that clear sailing agreements are common in class action settlements. This is evidenced by the fact that **their own** past settlements have contained these agreements. *See* Exhibit "1" and 4" to Morrison Decl. (four class action settlements involving Jennifer Kramer, Gunn Cobble LLP and clear sailing agreements). These same cases demonstrate the *Hyams'* counsel is no stranger to asking – and receiving – more than 25% of the settlement fund. *Id.* Even more perplexing is the fact that a reduction of the attorneys' fees award is not a ground under the Settlement to deny enforcement. Stated another way, reducing the attorneys' fees award does nothing to assist *Hyams* in their alleged goal of defeating the Settlement in order to achieve a better result in their case. This attack appears to be motivated by a desire to extract revenge on Class Counsel for daring to settle an overlapping case filed well before theirs. *Hyams'* counsel do not really care that class action settlements have clear sailing agreements. They do not believe that it improper to receive 30% of a settlement fund in fees. They just want to punish Class Counsel.

*Hyams* next argues the time records do not support the requested attorneys' fees award. *Hyams* first complain that most of work performed by Mr. Morrison occurred after Settlement. There is good reason for this, however. Since *Hyams* and their counsel have made an appearance, Mr. Morrison has had to: (1) draft/oppose their motion to intervene; (2) draft the motion for preliminary approval; (3) draft the reply brief in support of preliminary approval; (4) help oppose the motion to stay; (5) assist on the motion for attorneys fees'; (6) draft an ex parte application and order to show cause; (7) assist on the reply brief re: OSC; and (8) draft the motion for final

---

[10] Nor do *Hyams* respond to any of Class Counsel's arguments in the motion for attorneys' fees as to why a modest upward departure of 5% to 30% of fees is justified here. *See* ECF No. 160, pp. 28-29 (justifying 30% of settlement fund and cases supporting it).

approval. Attendant to these activities Mr. Morrison argued each of the aforementioned motions and has taken the lead organizing and coordinating amongst Class Counsel in order to get this Settlement done.  Morrison Decl., ¶ 15.  It is always ironic when the persons most responsible for creating work and a resulting high lodestar complain about the amount of work at the time attorneys' fees are sought.

*Hyams* also make a number of false arguments based on Class Counsel's time records.  They claim, for example, that meal and rest period violations were only looked into after Settlement.  As addressed above, this is false.  They next claim that only 2.1 hours were devoted to analyzing the 850-851.  Wrong again. In addition to the legal research for purposes of the motion for preliminary approval (which is the entry they cite to), Class Counsel had already worked with an expert to determine the number of 850-851 violations caused by off-the-clock-work based on the time and data records in their possession in Excel format.  Counsel also had already reviewed CVS's analysis of this claim.  Morrison Decl., ¶ 16.  *Hyams* assume, without justification, that if the entries from Class Counsel's time records do not specifically identify a particular area of law being researched or facts analyzed, it never happened. That is not a credible position.  This Court should not accept *Hyams'* representations about how much time was spent by Class Counsel on certain activities without confirming with Class Counsel beforehand.

Since the motion for attorneys' fees was filed, Class Counsel's lodestar has increased significantly due to the volume of work created by *Hyams*.  Even if this additional work is not credited, the multiplier Plaintiffs' seek is modest – less than 2! While *Hyams* critique the degree of success achieved by Class Counsel, even they would have to admit that in this era of arbitration agreements and class action waivers, eight-figure settlements are few and far between. Make no mistake – this was an extremely challenging case.  There were procedural and legal hurdles everywhere.  But through collaboration amongst counsel and hard work, this Settlement was achieved. The Settlement amount was even increased through the

negotiated efforts of Class Counsel once it was discovered that the Escalator Clause of the Settlement was triggered.  Finally, Class Counsel advanced all costs in this matter and has not received any fees or costs to date.  Ultimately, the degree of success, the risks undertook, and small requested multiplier all justify the slight upward departure of 5%. The requested attorneys' fees should be granted.

### E.     The Proposed Enhancements Are Fair and Reasonable.

*Hyams* also attack the enhancement awards to the Class Representatives, arguing they are further proof of collusion and unjustified. As with the attorneys' fees, a reduction in the amount of the enhancement awards is not a ground to deny enforcement of the Settlement.

Plaintiffs' Motion for Attorneys' Fees (ECF NO. 160, pp. 37-44) and the attendant Class Representative declarations describe their role in the case and justification for the enhancement awards they seek.  *See* ECF Nos. 160-8, 10, 11 and 12.  *Hyams*' objection does not address the substance of these declarations. Moreover, *Hyams'* assertion that the Class Representatives' efforts did not assist Class Counsel is false and contrary to contents of their declarations, as well as the declarations Class Counsel has already filed.  *Id.  Hyams* also do not address the fact that each of the Class Representatives signed general releases giving up the right to pursue additional claims they may have against CVS in order to help achieve this Settlement.

The enhancement payments comprise 0.41% of the Settlement. Courts in this Circuit have approved similar enhancements under these circumstances. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457 & 463 (9th Cir. 2000) (approving $5,000 enhancement award where total value of Settlement was 1.75 million involving 5,400 class members; average settlement value just over $200); *Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399, at *4 (E.D. Cal. Sept. 15, 2020) (approving $10,000 enhancement, which was significantly larger than the average $155 class member recovery); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

934, 947-48 (9th Cir. 2015) (awarding $5,000 enhancement payment, which was 417 times greater than average award but only .17 percent of gross settlement); *see also Patel v. TransUnion, LLC*, 2018 WL 1258194, *3, 7–8 (N.D. Cal. Mar. 11, 2018) (awarding enhancement payment of $10,000, 25 times the average award and 0.125 percent of gross settlement); *Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*, 2017 WL 749018 at *8-9 (E.D. Cal. Feb. 27, 2017) (awarding enhancement payment of $8,000, 14.5 times average award and 0.3 percent of gross settlement); *Rodriguez v. Kraft Foods Group, Inc.*, 2016 WL 5844378 at *16 (E.D. Cal. Oct. 5, 2016) (awarding enhancement payment of $10,000, approximately 11 times average award and less than 0.5 percent of gross settlement); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265-66 (C.D. Cal. 2016) (awarding enhancement payment of $10,000, approximately 100 times average award and less than 0.25 percent of gross settlement).

But, again, what is most notable about *Hyams*' objection here is the hypocrisy. *Hyams* counsel have also agreed to class representative enhancements where the amounts awarded were far greater than the average recovery by Class Members. Exhibit "2" to Morrison Decl. [*Page v. Gruppo Chiarello* – class representative enhancement of $7,500, approximately nine times that of the average settlement award; *Cubillas v. Dav-El* - class representative enhancement of $17,500, approximately ten times that of the average settlement award; *Monteon v. Patriot Logistics* – class representative enhancement of $10,000, over six times that of the average settlement award; *Navarro v. Servisair* – class representative enhancement of $10,000 – over 17 times that of the average settlement award].

### F.    The Method of Notice Comports With Due Process.

*Hyams* renews the arguments advanced in opposition to the motion for preliminary approval that sending the Notice by first class mail to the Settlement Class does not comport with Due Process. The Court already considered and rejected those arguments when it approved the Parties' notice plan. The Parties' followed the

Court's order and the mailing was accomplished at a significant expense.

In this objection, the *Hyams* objectors spend a great deal of time discussing the pandemic and the recent postal crisis, but barely discuss the Settlement Administrator's declaration and the actual results of the mailing of the Notice.  In her November 4, 2020 declaration (ECF No. 180-2), Ms. Bulter states that out of 24,706 notices mailed, only 145 were returned as undeliverable with no forwarding address. That equates to 0.56% of Settlement Class Members. Plaintiffs are unaware of any case law which holds that notice distributed to over 99% percent of the class is ineffective and violates constitutional due process.  In fact, contrary to what *Hyams* objectors argue, the law in this Circuit is simply that the notice must be the best notice practicable under the circumstance. A 100% receipt record is not required. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (best practicable notice does not require every class member to actually receive the notice to comport with due process).

*Hyams* objectors also complain that even though the Notice identifies parallel litigation, it should have provided more information and specifically identified the overlapping claims. However, Rule 23 does not require such information. Fed. R. Civ. P. 23(c)(b)(2) and (e).  Indeed, the law in this Circuit did not even require Plaintiffs to mention parallel litigation in the first place.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1044 (9th Cir. 2020) ("[A]lthough Rule 23 lists seven items that must be included in the required notice, information about related lawsuits is not one of them. *See* Fed. R. Civ. P. 23(c)(2)(B) [requiring that the notice "clearly and concisely" state "the nature of the action," the "definition of the class certified," the "class claims, issues, or defenses," information about appearing and opting out, and "the binding effect of a class judgment on members] … Rule 23(e) simply 'requires notice that describes 'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.')" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting

Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir.1980)).

Similarly, Rule 23 does not require inclusion of an opt-out form or the creation of a website.  Nonetheless, the claims administrator has created a website for this case.  The Court should reject *Hyams'* transparent attempt to delay enforcement of this Settlement by extending the Notice period and delaying final approval, which appears to be the real objective here.

## III.   CONCLUSION

The Parties have reached a substantial settlement after a sharply contested, hard-fought adversarial process spanning more than four years.  There was no collusion and no reverse auction. The Class Representatives and Class Counsel fairly and adequately represented the Settlement Class and conducted an extensive investigation into merits, class certification, and damages issues.  The objections raised by *Hyams* are simply insufficient to defeat this excellent Settlement.  Accordingly, final approval should be granted in its entirety.

Dated: November 25, 2020         Respectfully submitted,

ALEXANDER MORRISON + FEHR LLP

By:  /s/ Michael Morrison
     Michael S. Morrison
     Attorneys for Plaintiffs and the proposed
     Classes

## CERTIFICATE OF SERVICE

I, Michael Morrison, an employee in the City of Los Angeles, certify that on November 25, 2020, caused a true and correct copies of the foregoing be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who has registered for receipt of documents filed in this matter:

**PLAINTIFFS' REPLY TO THE OBJECTION TO CLASS ACTION SETTLEMENT FROM HYAMS OBJECTORS ;**

**PLAINTIFFS' REPLY TO THE OBJECTION TO SETTLEMENT UNDER PRIVATE ATTORNEY GENERAL ACT BY CLASS MEMBERS TRENT ANDREWS, VICTORIAS COSIO, ELIZABETH GARCIA, AND CYNTHIA CARDENAS AND PROPOSED INTERVENORS ;**

**SUPPLEMENTAL DECLARATION OF MICHAEL MORRISON IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO THE HYAMS OBJECTION TO SETTLEMENT UNDER PRIVATE ATTORNEY GENERAL ACT AND OBJECTION TO CLASS ACTION SETTLEMENT**

***[SEE SERVICE LIST]***

November 25, 2020                    ALEXANDER MORRISON + FEHR LLP

                                     By:    s/ Michael Morrison
                                            MICHAEL MORRISON
                                            1900 Avenue of the Stars, Suite 900
                                            Los Angeles, CA 90067
                                            Attorneys for Plaintiff, Sevag Chalian

**[SERVICE LIST]**

| | |
|---|---|
| Counsel for Defendant:<br>Tyler R. Andrews, Esq.<br>Roger L. Scott, Esq.<br>Christina Signs, Esq.<br>James N. Boudreau, Esq.<br>**GREENBERG TRAURIG, LLP**<br>3161 Michelson Drive, Suite 1000<br>Irvine, California 92162<br>T:     949 732 6500<br>F:     949 732 6501<br>E:     andrewst@gtlaw.com<br>E:     scottro@gtlaw.com<br>E:     signsc@gtlaw.com<br>E:     boudreauj@gtlaw.com | *Counsel for Defendant:*<br>R. Craig Clark, Esq.<br>Alicja A. Urtnowski<br>**The Clark Law Group**<br>3258 Fourth Avenue<br>San Diego, California 92103<br>T:     619.239.1321<br>F:     888.273.4554<br>E:     cclark@clarklawyers.com<br>E:     aurtnowski@clarklawyers.com<br>E:     mrodriguez@clarklawyers.com |
| *Counsel for Plaintiffs-Intervenors:*<br>Jennifer Kramer<br>Ashley H. Cruz, Esq.<br>Barbara Du-Van-Clarke, Esq.<br>**Jennifer Kramer Legal, APC**<br>5015 Eagle Rock Blvd., Suite 202<br>Los Angeles, California 90041<br>T:     213.955.0200<br>F:     213.226.4358<br>E:     jennifer@laborlex.com<br>E:     ashleyhcruz@laborlex.com<br>E:     barbara@laborlex.com | *Counsel for Plaintiffs-Intervenors:*<br>Michael H. Boyamian, Esq.<br>Armand R. Kizirian, Esq.<br>**BOYAMIAN LAW, INC.**<br>550 N. Brand Blvd., Suite 1500<br>Glendale, California 91203<br>T:     818.547.52300<br>F:     818.547.5678<br>E:     michael@boyamianlaw.com<br>E:     armand@boyamianlaw.com |
| *Counsel for Plaintiffs-Intervenors:*<br>Beth A. Gunn, Esq.<br>Catherine J. Coble, Esq.<br>**GUNN COBLE LLP**<br>303 North Glenoaks Blvd., Suite 200<br>Burbank, CA 91502<br>T:     818.900.0695<br>F:     818.900.0723<br>E:     beth@gunncoble.com<br>E:     cathy@gunncoble.com | *Co-Counsel for Plaintiff:*<br>Elizabeth Gill, Esq.<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF NORTHERN<br>CALIFORNIA<br>39 Drumm St.<br>San Francisco, CA 94111<br>T:     (415) 621-2493<br>F:     (415) 225-8437<br>E:     egill@aclunc.org |
| *Co-Counsel for Plaintiff:*<br>Thomas W. Falvey, Esq.<br>**Law Offices of Thomas W. Falvey**<br>550 N. Brand Blvd., Suite 1500<br>Glendale, California 91203<br>T:     818.547.5200<br>F:     818.500.9307<br>E:     thomaswfalvey@gmail.com | *Co-Counsel for Plaintiff:*<br>R. Craig Clark, Esq.<br>**CLARK LAW GROUP**<br>3258 Fourth Avenue<br>San Diego, California 92103<br>T:     619.239.1321<br>F:     888.273.4554<br>E:     cclark@clarklawyers.com |