James N. Boudreau (SBN PA 77891)
Christiana L. Signs (SBN PA 317851)
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, Pennsylvania 19103
Telephone: 215.988.7800
Facsimile: 215.988.7801
boudreauj@gtlaw.com
signsc@gtlaw.com

Tyler R. Andrews (SBN CA 250686)
**GREENBERG TRAURIG, LLP**
18565 Jamboree Road, Suite 500
Irvine, California 92612
Telephone: 949.732.6500
Facsimile: 949.732.6501
andrewst@gtlaw.com

Attorneys for Defendants CVS PHARMACY, INC.,
CVS RX SERVICES, INC., and GARFIELD
BEACH CVS, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,<br><br>Defendants. | CASE NO.: 2:16-cv-08979-AB-AGR<br>*Related Case No.: 2:20-cv-02401-AB-AGR*<br><br>Assigned to Hon. Andre Birotte Jr.<br><br>**DEFENDANTS' RESPONSE TO RULE 23 CLASS OBJECTIONS**<br><br>Complaint Filed: July 20, 2016<br>Action Removed: December 5, 2016 |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................... 3

    A.   The *Chalian* Action ..................................................................... 3

    B.   The *Cabrera* Action .................................................................... 3

    C.   The Eldanaf PAGA Claim ............................................................. 6

    D.   The Pharmacy Claimants Execute A Global Settlement Agreement ............. 6

    E.   This Court *Preliminarily* Approves The Settlement ...................................... 8

    F.   Although Six People Object to the Settlement, Only Three Objections Are Valid And Timely. ........................................ 10

III.  ARGUMENT ........................................................................................ 11

    A.   The Settlement Amount Is Fair And Reasonable ......................................... 11

        1.   The Pharmacy Plaintiffs Thoroughly Investigated The Claims .......... 12

        2.   The Pharmacy Plaintiffs Obtained A Favorable Settlement .............. 13

    B.   The Scope Of The Release Comports with Ninth Circuit Law ...................... 16

    C.   The Settlement Is Not The Result Of Collusion ........................................... 18

    D.   The Settlement Classes Are Properly Certified ........................................... 19

    E.   Settlement Class Members Received Fair And Effective Notice ................. 20

    F.   Objectors' Arguments Against Attorneys' Fees And Enhancement Awards Do Not Warrant Rejecting The Settlement .................................................... 22

IV.   CONCLUSION .................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chavez v. Blue Sky Nat. Beverage Co.*,
   No. CV-06-06609 JSW, 2012 WL 12921300 (N.D. Cal. June 1, 2012) ........... 16

*Ctr. for Biological Diversity v. United States Forest Serv.*,
   925 F.3d 1041 (9th Cir. 2019) ...................................................................... 21

*Elmore v. CVS Pharmacy, Inc.*,
   2016 WL 6635625 (C.D. Cal. Nov. 9, 2016) .............................................. 13, 14

*Emetoh v. FedEx Freight, Inc.*,
   No. 17-CV-7272-YGR, 2020 WL 6216763 (N.D. Cal. Oct. 22, 2020) ............ 19

*Galicia Gonzalez v. BMC W., LLC*,
   No. 517CV00390JGBRAOX, 2018 WL 6318826 (C.D. Cal. Nov. 20,
   2018) ................................................................................................................... 16

*Hadjavi v. CVS Pharmacy, Inc.*,
   No. CV 10-04886 SJO RCX, 2011 WL 3240763 (C.D. Cal. July 25, 2011) .... 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 22

*Howard v. CVS Caremark Corp.*,
   No. CV1304748SJOPJWX, 2014 WL 11497793 (C.D. Cal. Dec. 19,
   2014), aff'd, 628 F. App'x 537 (9th Cir. 2016) ................................................. 14

*Hyams v. CVS Health Corporation*,
   No. 4:18-cv-06278-HSG ...................................................................... *passim*

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ........................................................................ 19

*Joh v. Am. Income Life Ins. Co.*,
   No. 18-CV-06364-TSH, 2020 WL 109067 (N.D. Cal. Jan. 9, 2020) ............... 19

*Kim v. Reins*.
   9 Cal. 5th 73 (March 12, 2020) ....................................................................... 6

*Kim v. Reins Int'l Cal., Inc.*,
   18 Cal. App. 5th 1052 (2017) ........................................................................ 5, 6

---

ii

*Kim v. Reins Int'l California, Inc.*,
   459 P.3d 1123 (Cal. 2020) ............................................................... 18

*La Clinica De La Raza v. Trump*,
   No. 19-CV-04980-PJH, 2020 WL 4569462 (N.D. Cal. Aug. 7, 2020) ............ 21

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ......................................................... 16

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   523 F.3d 1091 (9th Cir. 2008) ......................................................... 18

*Nen Thio v. Genji, LLC*,
   14 F. Supp. 3d 1324 (N.D. Cal. 2014) ............................................... 16

*O'Connor v. Uber Techs., Inc.*,
   904 F.3d 1087 (9th Cir. 2018) ......................................................... 14

*Opie v. CVS Health Corp.*,
   2017 WL 9324521 (D. Mont. June 30, 2017) ...................................... 14

*Ortiz v. CVS Caremark Corp.*,
   No. C-12-05859 EDL, 2013 WL 6236743 (N.D. Cal. Dec. 2, 2013) ............... 15

*Pierre v. CVS Pharmacy Inc.*,
   No. 4:13-CV-13202-TSH, 2016 WL 614369 (D. Mass. Feb. 16, 2016) ........... 14

*Rai v. CVS Caremark Corp.*,
   No. CV 12-08717-JGB ................................................................... 14

*Romulus v. CVS Pharmacy, Inc.*,
   321 F.R.D. 464 (D. Mass. 2017) ...................................................... 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................. 16

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 et seq. ............................................. 3, 4

Cal. Labor Code § 201-2013 .............................................................. 3

Cal. Labor Code § 226 .................................................................... 3, 4

Cal. Labor Code § 1194 .................................................................... 3

Cal. Labor Code § 226.7 ........................................................................ 4

Cal. Labor Code § 226.7 and 512 .......................................................... 4

Cal. Labor Code § 2800 ......................................................................... 4

Cal. Labor Code § 2802 ......................................................................... 4

PAGA ............................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23(e)(5) ........................................................................ 11

Federal Rules of Civil Procedure Rule 42 .............................................. 7

Rule 23 ...................................................................................... 8, 19, 22

## I.    **INTRODUCTION**

Of the six people who submitted objections to the class action settlement this Court preliminarily approved ("Objectors"), three lack standing to object. Specifically, one worked in front-store positions as opposed to the pharmacy positions the settlement concerns and is thus ineligible for class member status. The second purported Objector is likewise not a class member, having opted out of the settlement. The third purported Objector submitted her objection late. What the Court has before it for review, then, is three perfected class member objections to a settlement that 24,566 class members support (99.4% of the putative class).

As for the three timely objections to the settlement, they each lack merit. Each Objector claims s/he and/or class members are not getting enough money—notwithstanding the over $10.3 million gross settlement amount. They attribute this conclusion to Class Counsel's perceived lack of investigation vis-à-vis the class claims and the Objectors' own slanted estimates of what *would* be enough. CVS, however, can attest first-hand to the significant discovery undertaken by Class Counsel (having spent years responding to it). And as for Objectors' estimates of what would be enough, they undervalue and/or completely overlook the significant risks of further litigation. One cannot overstate the risk that the Court would ultimately send 98% of class members to individual arbitration. Indeed, the Court already enforced CVS's arbitration agreement in this case, sending a former named plaintiff to individual arbitration. And binding Ninth Circuit precedent prohibits certification of a class with arbitration agreements like the ones putative class members have here. What is more, certification is unlikely regardless. Despite all this, the Objectors—five out of six of whom agreed to arbitrate their claims with CVS—value their claims as worth at least $5,000 each and up to more than $133,573 each. Some Objectors value the class claims at a whopping $184.5 million (and that is on top of the more than $200 million they claim the Private Attorneys General Act ("PAGA") claims are worth). The Court should decline to measure the fairness or reasonableness of the settlement against these delusions.

The Objectors also claim the scope of the settlement release is overbroad because it releases all wage and hour claims that were alleged or that could have been alleged by non-exempt pharmacist employee class members in the underlying actions. They argue this is inconsistent with Ninth Circuit precedent, but they are wrong. The breadth of the factual allegations in the underlying actions here (which include two putative class actions with five different versions of constantly-amended complaints between them, as well as three different PAGA letters) are staggering. Named plaintiffs' claims reached from off-the-clock work (due to required training, the needs of the pharmacy, labor budgets, you name it…), to scheduling issues and missed breaks, to failure to reimburse for necessary business expenses. Given the scope of the underlying actions, plaintiffs could well have asserted any claims arising out of the hours they worked and the wages CVS paid them.

Attorneys litigating competing wage and hour class actions against CVS represent five of the six Objectors. These five Objectors (predictably) sling allegations of collusion and a "reverse-auction." But case law is clear that such allegations cannot in and of themselves hold up a settlement, and Objectors have no evidence of the collusion they perceive, which is what case law requires. The facts they point to are buried in Objectors' own interpretations, and when reviewed objectively, they do not support the finding these Objectors so desperately want in order to preserve their own competing class actions.

Finally, Objectors take issue with: certification of the settlement classes as defined; the class notice; and the proportion of the settlement amount attributable to attorneys' fees, costs and service awards. The objections vis-à-vis certification fail because of the lenient certification standard applicable to settlement classes and the fact that the lone Objector raising these concerns simply misunderstands the class definitions (as described below). As for the notice, this Court already approved it despite similar objections, and no new facts warrant a different result now. With respect to the attorneys' fees, costs and service award payments, they are not set in stone. Amounts so-allocated and not ultimately awarded go to the settlement class, which means the allocations do not justify rejecting the settlement. In

DEFENDANTS' RESPONSE TO RULE 23 CLASS OBJECTIONS

sum, given the futility of Objectors' arguments and the support from the vast majority of settlement class members, the Court should overrule the objections and grant final approval.

## II.   **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

### A.   **The *Chalian* Action**

On July 20, 2016, Plaintiff Sevag Chalian ("Mr. Chalian") filed a putative wage and hour class action against CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS LLC ("CVS") in the Los Angeles County Superior Court. On December 5, 2016, CVS removed the case to this Court, Case No. 2:16-cv-08979. ECF 1. Mr. Chalian alleged CVS violated the law by requiring California pharmacists in Regions 65 and 72 to work off-the-clock completing mandatory training modules. ECF 44, ¶ 1. He stated five causes of action on behalf of non-exempt California pharmacists in Regions 65 and 72 who completed mandatory training outside of their scheduled shifts. *Id.* at ¶ 15. The claims are for: (1) unpaid wages (Cal. Labor Code § 1194); (2) overtime (Cal. Labor Code § 1194); (3) failure to provide accurate itemized wage statements (Cal. Labor Code § 226); (4) waiting time penalties (Cal. Labor Code § 201-2013); and (5) unfair business practices (Cal. Bus. & Prof. Code §§ 17200 et seq.). *Id.* at ¶¶ 29 - 58.

### B.   **The *Cabrera* Action**

On August 3, 2017, slightly over one year after Mr. Chalian filed his action, Sigfredo Cabrera ("Mr. Cabrera") filed a much broader putative wage and hour class action against CVS in Alameda County Superior Court of the State of California. *See* Cabrera Compl., ECF 94-2, PageID 3032-61. Mr. Cabrera asserted his claims on behalf of not only pharmacists, but also pharmacy technicians, pharmacy managers, and pharmacy service associates (collectively, "pharmacy employees"). *Id.* at ¶ 1. He alleged pharmacy employees worked off-the-clock pre- and post- shift and during meal and rest breaks. This, Mr. Cabrera alleged, resulted from: the inherently busy and demanding nature of the pharmacies; the fact that CVS budgeted labor hours for each location based on the prior year's prescription volume and told managers not to go over allotted hours, which in turn resulted in managers disciplining employees who refused to work off-the-clock; and the fact that CVS similarly

budgeted time for employees to complete training and did not pay beyond the time budgeted. *See id.* at ¶¶ 28, 35 (related to demanding nature of pharmacies); 22-23, 36 (related to labor budgeting based on prior year's prescription volume); and 31-33 (related to training). Mr. Cabrera also claimed pharmacy employees clocked out but worked through some meal breaks and did not receive others. *Id.* at ¶¶ 38-40. He alleged CVS did not provide rest breaks required by law, *id.* at ¶ 42, and that CVS failed to reimburse pharmacy employees for business expenses, *id.* at ¶¶ 44-45. He took issue with the hours pharmacy employees worked, claiming they worked more than eight hours per day and more than 40 hours per week, even citing the Labor Code's prohibition against work on any seventh day of a workweek. *Id.* at ¶¶ 58, 66.

Mr. Cabrera's original complaint pled eight causes of action for: (1) minimum wages (Labor Code ¶¶ 204, 510, 1194, 1197, 1197.1, and 1198); (2) failure to provide legally compliant meal periods (Labor Code 226.7 and 512); (3) failure to provide legally compliant rest periods (Labor Code 226.7); (4) waiting time penalties (Labor Code 201-203); (5) failure to provide accurate itemized wage statements (Labor Code § 226); (6) failure to maintain accurate records (Labor Code §§ 226(a) and 1174); (7) failure to reimburse for necessary work expenses (Labor Code §§ 2800 and 2802); and (8) and unfair business practices (Cal. Bus. & Prof. Code §§ 17200 et seq.). *Id.* at ¶¶ 53-147. Mr. Cabrera also notified the Court and CVS that he was in the process of exhausting pre-filing administrative requirements and anticipated asserting a PAGA claim. *Id.* at ¶¶ 148-50.

On September 5, 2017, Mr. Cabrera amended his action to add Enko Telahun ("Mr. Telahun") as a second named plaintiff, to add factual allegations, and to add a PAGA claim for civil penalties (Count 9). *See* First Am. Cabrera Compl. ECF 94-2, PageID 3064-3100. The amended complaint specifically takes issue with CVS's scheduling practices. It claims CVS scheduled only a single pharmacist to be on duty for certain shifts, which resulted in a failure to provide meal and rest breaks. *Id.* at ¶¶ 42, 79, 84, 94. It also adds claims for civil penalties under PAGA for violations of Labor Code §§ 204, 510, 1194, 1197, 1197.1, 1198, 226.7, 512, 201-203, 226 and 226.3, 1174, 2800 and 2802. *Id.* at ¶ 163.

On October 9, 2017, CVS removed the *Cabrera* action to the United States District Court for the Northern District of California, Case No. 3:17-cv-05803. *See* Notice of Removal, ECF 94-2, PageID 3016-25. On January 11, 2018, CVS moved to compel Mr. Cabrera's and Mr. Telahun's claims to arbitration, *see* Motions to Compel Arbitration, ECF 94-3 and ECF 94-4, causing the *Cabrera* Plaintiffs to fortify their pleadings.

On March 16, 2018, the *Cabrera* Plaintiffs filed a Second Amended Complaint, which substituted Christine McNeely ("Ms. McNeely") for Mr. Cabrera and Mr. Telahun as the would-be class representative for Counts 1-8. Second Am. Cabrera Compl., ECF 94-6, PageID 3180-3232. Mr. Cabrera and Mr. Telahun remained in the case solely as to Count 9, which asserted a claim for civil penalties under PAGA. *Id.* CVS fought the amendment in part because Ms. McNeely's claims were also subject to arbitration, but the Court found Ms. McNeely's arguments against arbitration compelling and set an evidentiary hearing on whether Ms. McNeely was in fact subject to an arbitration agreement with CVS. *See* Order, ECF 94-5, PageID 3175. CVS timely appealed the District Court's refusal to enforce Ms. McNeely's arbitration agreement. *See* Notice of Appeal, Case No. 3:17-cv-05803-WHA, ECF 50.

Then, on July 10, 2018, Mr. Cabrera, Mr. Telahun, and Ms. McNeely sent CVS a proposed Third Amended Complaint, this one adding Patrick Brennan and Lynn Brickman as named plaintiffs and adding Longs Drug Stores as a defendant. *See* Declaration of C. Signs ("Signs Decl.") filed concurrently herewith, at ¶¶ 8-9 and Exs. 1-3. The Third Amended Complaint also adds allegations regarding CVS's alleged failure to timely pay all wages owed upon termination. Ex. 2 to Signs Decl. at ¶ 123. And, the *Cabrera* plaintiffs submitted yet a third amended letter to the LWDA. Ex. 3 to Signs Decl.

On August 9, 2018, CVS moved for summary judgment on Mr. Cabrera's and Mr. Telahun's PAGA claim. *See* Order on Mtn for Summ. J., ECF 94-7. CVS asserted Mr. Cabrera and Mr. Telahun were not "aggrieved employees" entitled to sue under PAGA because they previously waived their individual Labor Code claims. *Id.* at PageID 3244. The District Court agreed, relying on *Kim v. Reins Int'l Cal., Inc.*, 18 Cal. App. 5th 1052,

1055 (2017), in which "the California Court of Appeal held that a plaintiff who voluntarily dismissed his individual Labor Code claims with prejudice also lacked standing under PAGA as an 'aggrieved employee.'" ECF 94-7, PageID 3244-45 (discussing *Reins*).

But the District Court did not have the last word on the issue. On January 9, 2019, Mr. Cabrera and Mr. Telahun appealed the entry of partial summary judgment in CVS's favor on Count 9 to the United States Court of Appeals for the Ninth Circuit, Case No. 19-15059 ("PAGA Appeal").[1] Notice of Appeal, ECF 94-9. While the PAGA Appeal was pending, the California Supreme Court reversed the California Court of Appeals in *Kim v. Reins*. 9 Cal. 5th 73, 80 (March 12, 2020). The California Supreme Court held that settling individual Labor Code claims does not "strip" a plaintiff of the right "to pursue PAGA remedies . . . as the state's authorized representative." *Id.*

### C.    The Eldanaf PAGA Claim

On March 7, 2019, Mr. Chalian's counsel submitted a letter to the LWDA PAGA Administrator on behalf of yet another potential new plaintiff, May Eldanaf. *See* Signs Decl. at ¶ 10 and Ex. 4. The letter claims CVS failed to pay her and other pharmacists for work they performed off-the-clock due to, among other things, having to complete mandatory training modules. *Id.* at Ex. 4. It echoes the *Cabrera* plaintiffs' theories regarding labor hours, describing an instance when Ms. Eldanaf spoke with a district leader about she and her colleagues not being able to finish all work and trainings during scheduled shifts. *Id.* According to Ms. Eldanaf, "the district leader responded that 'the budget is the budget.'" *Id.* Ms. Eldanaf thus stated an intent to file a wage and hour action on behalf of herself and other aggrieved employees. *Id.*

### D.    The Pharmacy Claimants Execute A Global Settlement Agreement

Mr. Chalian and his counsel became aware of the *Cabrera* action in late 2017 and,

---

[1] The PAGA Appeal is the second appeal related to the *Cabrera* action. CVS moved to compel Ms. McNeely's claims to arbitration and the District Court denied the motion pending a hearing on the matter. On March 20, 2018, before any such hearing could occur, CVS appealed the denial of its Motion to Compel Arbitration ("Arbitration Appeal"), Case No. 18-15459. ECF 94-1, PageID 3248-51.  hud

unbeknownst to CVS, began to work collaboratively on their cases thereafter. *See* ECF 82, PageID 2376. In Spring 2019, due to the overlapping nature of their clients' allegations, counsel for Mr. Chalian suggested inviting counsel for the *Cabrera* Plaintiffs to the court-ordered mediation being scheduled in this case. That way, they reasoned, the claims of Mr. Chalian, Ms. Eldanaf, Mr. Cabrera, Mr. Telahun, Ms. McNeely, and Mr. Brennan (the "Pharmacy Plaintiffs") could all potentially resolve together. *Id.* CVS ultimately agreed to permit the *Cabrera* Plaintiffs to attend the *Chalian* mediation.

The parties mediated the cases and the claims collectively over the course of two days, July 29, 2019 and November 11, 2019. *Id.* On the second day, they reached an agreement in principal to resolve all pending wage and hour disputes between the Pharmacy Claimants and CVS and entered into a Memorandum of Understanding ("MOU"). *Id.* The MOU contemplated the parties documenting the terms of the settlement in a formal Global Settlement Agreement ("GSA"), which they did.

On March 2, 2020, the last signatory signed and dated the GSA. Among other things, the GSA contemplates cooperation amongst the Pharmacy Plaintiffs and CVS in transferring the later-filed *Cabrera* action to the Central District of California and consolidating it with *Chalian* for settlement purposes. Consistent with the GSA, the parties asked the Ninth Circuit Court of Appeals to dismiss the pending appeals without prejudice and to remand to the district court, which it did. Then, on March 9, 2020, the Northern District of California (Alsup, J.) granted the parties' stipulated request to transfer the later-filed *Cabrera* action to the Central District of California. The Court directed that on "transfer, the parties will move to consolidate the *Cabrera* Action with the first-filed *Chalian* Action pursuant to Rule 42 of the Federal Rules of Civil Procedure." *Id.*

Upon the *Cabrera* action arriving in this Court (Case No. 2:20-cv-02401-AB-AGR (C.D. Cal.)), the *Cabrera* plaintiffs filed a Notice of Related Cases identifying *Chalian* as a related, first-filed action. On March 23, 2020, the Central District of California reassigned the *Cabrera* action to Your Honor.

///

### E. __This Court *Preliminarily* Approves The Settlement__

On June 3, 2020, pursuant to the Settlement Agreement, the parties filed a Joint Stipulation to consolidate the *Chalian* and *Cabrera* actions. Two days later, the named plaintiffs in a competing putative Rule 23 class and representative PAGA action against CVS (the "*Hyams* Plaintiffs") moved to intervene. ECF 75. On June 19, 2020, the Pharmacy Plaintiffs moved for preliminary settlement approval. ECF 89.

The proposed settlement is significant. Pharmacy Plaintiffs entered into the settlement on behalf of two settlement classes. The Pharmacist Settlement Class consists of all hourly, non-exempt retail pharmacists who worked in Regions 65 and 72 in California between July 20, 2012 and August 5, 2020, whose claims are <u>not</u> subject to arbitration, whose LEARNet and/or SiteMinder data shows activity when time punch records do not show he or she was clocked in, and who have not previously released and/or adjudicated their claims against CVS. ECF 180-1, PageID 5558. The Retail Pharmacy Settlement Class is broader, consisting of anyone who held an hourly, non-exempt position in a CVS pharmacy in California between August 3, 2014 and August 5, 2020 and who has not previously released and/or adjudicated their claims against CVS (regardless of whether the person entered into an arbitration agreement). *Id.* There were, before the close of the opt-out period, 397 putative class members in the Pharmacist Settlement Class and 24,309 putative class members in the Retail Pharmacy Settlement Class, totaling __24,706 putative settlement class members__. In exchange for the release of all wage and hour claims that "were alleged or that could have been alleged or otherwise raised" in the relevant actions, CVS agreed to pay a gross settlement amount of __$10,371,346.60__. *See* Mot. for Order Grating Final Approval, ECF 180, PageID 5481-82.[2]

---

[2] At the time of preliminary approval, the gross settlement amount was $9,750,000.00. The GSA, however, contains an escalator clause permitting Class Counsel to negotiate an increased gross settlement amount if the number of putative class members is higher than expected (a possible result given employee roster changes between the points of an agreement in principle and preliminary approval). Class Counsel invoked the escalator clause and negotiated a higher gross settlement amount after the Court preliminarily

On July 3, 2020, to effectuate the settlement (and with the Court's permission), the Pharmacy Plaintiffs filed a Consolidated Amended Complaint ("CAC"). ECF 104. The CAC brings together the far-reaching factual allegations asserted by the Pharmacy Plaintiffs in their various prior amended complaints and PAGA letters. It makes clear that the Pharmacy Plaintiffs' allegations regarding their schedules and the hours they worked encompass claims that CVS violated Labor Code sections 246(i), 550-551, and 850-852.[3]

Although not party to the case, the *Hyams* Plaintiffs objected to preliminary approval of the proposed settlement. ECF 95. The Court, however, did not find their arguments persuasive. ECF 127, PageID 4260. On August 5, 2020 (six days after denying the *Hyams* Plaintiffs' motion to intervene, *see* ECF 125), the Court preliminarily approved the settlement. ECF 127.

The Court held on a preliminary basis that the parties' settlement is fair and reasonable "when balanced against the probable outcome of further litigation, liability and damages issues, and potential appeals of rulings." ECF 127, pageID 4261. It found "significant formal and informal discovery, investigation, research, and litigation has been conducted," such that counsel for the parties were well-positioned to evaluate their clients' positions. *Id.* The Court noted the settlement "will avoid substantial costs, delay and risks" attendant to further litigation and found the settlement appeared to have been "reached as the result of intensive, informed and non-collusive negotiations between the Parties." *Id.*

With respect to class notice, the Court held mailing to present and last known addresses "constitutes an effective method of notifying class members." *Id.* at PageID 4262. It ordered CVS to send the administrator class information, and it ordered the administrator to mail notice by first class mail, postage-prepaid. *Id.* at 4262-63. The Court approved the parties' proposed form of notice in connection with preliminary approval, *id.* at 4262, and

---

approved the settlement and the parties were thus able to identify the number of putative class members, which is a function of the preliminary approval date. *See id.*

[3] There are no private rights of action for such alleged violations. But the CAC seeks PAGA penalties for them. ECF 104, PageID 3826-27.

DEFENDANTS' RESPONSE TO RULE 23 CLASS OBJECTIONS

it also approved of a revised form of notice—the notice that ultimately went out—which explicitly states that the release contemplated by the settlement:

> includes claims in other active litigation pending against CVS, including *Hyams v. CVS Health Corporation*, No. 4:18-cv-06278-HSG in the Northern District of California and *Assar v. Longs Drug Stores California, LLC*, No. 2:19-cv-02086-KJM-KJN in the Eastern District of California. Your legal rights with respect to any overlapping actions/claims will be impacted and/or waived if you participate in this Settlement.

ECF 133, 136.

The Court set the settlement's final approval hearing for December 4, 2020. ECF 127, PageID 4263. It held, in accordance with the parties' settlement, that anyone wishing to object to the settlement must mail objections to the claims administrator on or before the 45th day after the administrator mailed out notice packets and objections must be received within seven (7) days of the close of the notice period. *Id.* at PageID 4263. Thus, to be timely, objections had to be postmarked by November 6, 2020 and received by November 13, 2020. *See* Decl. of Settlement Administrator, ECF 180-2, PageID 5976-77.

One exception to this exists vis-à-vis certain unidentified class members who either (a) signed retainer agreements with counsel for the *Hyams* Plaintiffs ("*Hyams* Counsel") or (b) were interviewed by *Hyams* Counsel when *Hyams* Counsel was in the process of obtaining declarations for the *Hyams* actions. ECF 179. The Court extended the deadline for these unidentified class members to object to the settlement to November 13, 2020.

## F. Although Six People Object to the Settlement, Only Three Objections Are Valid And Timely.

Six people objected to the parties' settlement: (1) Tina Lee timely submitted an objection on her own behalf. Lee Objection, Exhibit 5 to Signs Decl. (2) Parvin Ghassemian timely submitted an objection through her attorneys, Henning Ruiz & Singh PC. Ghassemian Objection, Exhibit 6 to Signs Decl. And (3) Trent Andrews, (4) Victoria Cosio, (5) Elizabeth Garcia, and (6) Cynthia Cardenas submitted objections through *Hyams* Counsel. Hyams Objections, ECF 187.

Not all Objectors, however, are eligible class members who submitted timely and

valid objections. First, it is unclear whether Victoria Cosio's objection is timely. It is postmarked November 13, 2020. Signs Decl. ¶ 16. Victoria Cosio did not submit a declaration in *Hyams*. *Cf. Hyams v. CVS Health Corporation*, No. 4:18-cv-06278-HSG (N.D. Cal.), ECF Nos. 101-1 and 101-10 ("Appendix of Evidence"). And *Hyams* Counsel have not identified who they interviewed in connection with that motion for class certification. *Cf.* ECF 179 (permitting these unidentified individuals more time to object). Second, Elizabeth Garcia submitted both a declaration purporting to object to the settlement, ECF 187-5, PageID 6868, and a letter opting out of the settlement, Signs. Decl. ¶ 15. Because she opted out, she cannot object. *See* Fed. R. Civ. P. 23(e)(5) (authorizing only class members to object). Third, Cynthia Cardenas is not part of the putative settlement class. She worked as a part-time store associate, ECF 187-4, PageID 6864, which is not a pharmacy position and therefore not a position covered by the parties' settlement. (Although she also claims she worked as a pharmacy associate, *see id.*, she in fact worked in "Store Associate Rx" and "Clerk/Cashier Rx" positions, which are front store positions cross-trained in the pharmacy and not implicated by the class settlement). So, she cannot object either. Fed. R. Civ. P. 23(e)(5).

   In short, although six people objected to the settlement, it appears only three have standing to object. Nonetheless, this Response considers the arguments raised by all Objectors. And none justifies denial of the settlement under consideration by this Court.

## III.   ARGUMENT

### A.   The Settlement Amount Is Fair And Reasonable

   One thing all Objectors have in common is they do not believe the over-$10 million settlement gives them—or class members generally—enough money. *See* Lee Objection, Ex. 5 to Signs Decl., at 1 ("Much too small a payment, for me . . . $1,281"); Ghassemian Objection, Ex. 6 to Signs Decl., at 17-19 ("The Amount Allocated To Class Members Is Inadequate"); Hyams Objections, ECF 187, PageID 6699-6703 (arguing Pharmacist Plaintiffs underestimated the value of the class claims). This breaks down into two lines of argument: first, that the Pharmacy Plaintiffs did not adequately investigate the claims at

issue, which, from CVS's perspective, cannot possibly be true; and second, that the dollar amount of the settlement is too small, an argument that seems to be a function of Objectors' grave miscalculations vis-à-vis the risks of litigating the class claims.

### 1.    The Pharmacy Plaintiffs Thoroughly Investigated The Claims

Objectors argue the Pharmacy Plaintiffs did not thoroughly or even adequately investigate all claims. *See* Lee Objection, Ex. 5 to Signs Decl. ("the settlement is premature"); Ghassemian Objection, Ex. 6 to Signs Decl., at 19 (Class Counsel failed to "conduct sufficient due diligence to investigate and analyze the realistic value of the claims"); Hyams Objections, ECF 187, PageID 6694-97. This is maddening from CVS's perspective, because Defendants spent years responding to discovery requests and providing relevant documents and data. There is simply no basis for Objectors' arguments.

CVS responded to three separate requests for production and three separate sets of interrogatories between the *Chalian* and *Cabrera* actions. Signs Decl. ¶ 3. It produced named plaintiffs' employment histories, personnel files, pay records, arbitration agreements, training transcripts, and time records. *Id.* at ¶ 4. And it produced policies and company documents including but not limited to: employee orientation and ongoing training policies; remote required training management guides and operational rollout documentation; separation pay policies; timekeeping and payroll practices policies; employee handbooks; reimbursement and travel and expense policies; meal and rest break policies; a paid sick leave policy and posted paid sick leave notice; and guidelines for operations during absence of pharmacists on meal or rest breaks.[4] *Id.* at ¶ 5.

Moreover, CVS produced robust class data. It produced employment history data, LearnNet data, Siteminder data, time punch data, and payroll data for the Pharmacist

---

[4] Objectors Cosio, Garcia, and Cardenas call CVS's "California Guidelines for Pharmacy Operations During Absence of Pharmacist for Meal and Rest Breaks" "suspicious-looking" and "unofficial," and they criticize the Pharmacy Plaintiffs for relying on it. ECF 187, PageID 6696. As many pharmacist employees well know, however, this operational guidance describes the practices in CVS's California pharmacies and is posted in pharmacies and breakrooms in California. *See* Declaration of K. Weiss, Case No. 4:18-cv-06278-HSG (*Hyams*), ECF 120-7.

Settlement Class. Signs Decl. ¶ 6. And for the larger Retail Pharmacy Settlement Class, it produced employment history, arbitration data, a sampling of scheduling data, and pay data. *Id.* In short, Class Counsel is not lacking information.

Objectors claim Pharmacy Plaintiffs only focused on off-the-clock work caused by completing mandatory training (*see* Hyams Objections, ECF 187, PageID 6694) when evaluating their claims, but they are demonstrably wrong. As established by the discovery described above, Pharmacy Plaintiffs' investigation ranged from meal and rest breaks to reimbursement practices to sick leave. Their Motion for Final Approval likewise establishes their investigation reached far beyond claims for off-the-clock training. *See, e.g.*, ECF 180, PageID 4598-5500 (describing investigation of meal break claim); *id.* at PageID 5501-02 (describing investigation of rest break claim); *id.* at PageID 5502-03 (describing investigation of reimbursement claim).

Objectors Cosio, Garcia, and Cardenas also suggest Pharmacy Plaintiffs failed to investigate the "substance of CVS's alleged arbitration agreements," ECF 187, PageID 6695, which is almost laughable in the context of the *Chalian* and *Cabrera* cases. CVS sought to compel three of the six Pharmacy Plaintiffs themselves to arbitration. It also moved to compel the claims of a former plaintiff in the *Chalian* matter to arbitration—a motion this Court granted. ECF 52. In short, CVS produced and filed numerous declarations and arbitration documents in connection with its enforcement of arbitration agreements with four separate people involved in the *Chalian* and *Cabrera* cases. And, it produced data identifying class members subject to arbitration agreement to boot. The Pharmacy Plaintiffs are very familiar with CVS's arbitration program.

### 2. The Pharmacy Plaintiffs Obtained A Favorable Settlement

It is perhaps because the Objectors themselves are not familiar with CVS's arbitration program that they argue the settlement amount of $10,371,346.60 is not enough. Lee Objection, Ex. 5 to Signs Decl., at 1; Ghassemian Objection, Ex. 6 to Signs Decl., at 17-19; Hyams Objections, ECF 187, PageID 6699-6703. The facts are these: (1) courts around the country uphold and enforce CVS's arbitration agreements. *See, e.g.*, ECF 52; *Elmore v. CVS*

*Pharmacy, Inc.*, 2016 WL 6635625 (C.D. Cal. Nov. 9, 2016); *Opie v. CVS Health Corp.*, 2017 WL 9324521 (D. Mont. June 30, 2017); and (2) about 98% of Settlement Class Members agreed to arbitrate and did not opt out. *See* Morrison Decl., ECF 89-1, PageID 2698, ¶ 30 (approximately 425 [of the 24,309] putative Retail Pharmacy Class members opted out of arbitration). In fact, five of the six Objectors themselves agreed to arbitrate disputes with CVS on an individual basis and chose not to opt out of the arbitration program. (Parvin Ghassemian is the only one who did not.) All this is to say, where approximately 23,822 people in a group of 24,706 have no chance of recovering anything outside of individual arbitration,[5] a group settlement that awards an average of more than $284.42 per person,[6] *see* ECF 180, PageID 5487, is a good outcome for the group.

The other glaring litigation risk Objectors undervalue is that, arbitration agreements aside, class certification is unlikely. CVS has been sued for wage and hour violations before, and the vast majority of such cases end with courts denying class certification. *See, e.g.*, *Howard v. CVS Caremark Corp.*, No. CV1304748SJOPJWX, 2014 WL 11497793, at *1 (C.D. Cal. Dec. 19, 2014), aff'd, 628 F. App'x 537 (9th Cir. 2016) (denying class certification in wage and hour case against CVS); *Rai v. CVS Caremark Corp.*, No. CV 12-08717-JGB VBKX, 2013 WL 10178675, at *1 (C.D. Cal. Oct. 11, 2013) (same); *Hadjavi v. CVS Pharmacy, Inc.*, No. CV 10-04886 SJO RCX, 2011 WL 3240763, at *1 (C.D. Cal. July 25, 2011) (same); *Ortiz v. CVS Caremark Corp.*, No. C-12-05859 EDL, 2013 WL 6236743, at *1 (N.D. Cal. Dec. 2, 2013) (same); *Pierre v. CVS Pharmacy Inc.*, No. 4:13-CV-13202-TSH, 2016 WL 614369, at *1 (D. Mass. Feb. 16, 2016) (denying class certification in case filed by pharmacy technicians employed by CVS in Massachusetts

---

[5] Disputes over the validity or enforceability of CVS's arbitration agreements do not change anything. CVS's arbitration agreement delegates arbitrability disputes to an arbitrator to decide. *Elmore*, 2016 WL 6635625. And binding Ninth Circuit precedent prohibits certification of classes that include putative class members subject to such arbitration agreements. *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094–95 (9th Cir. 2018).

[6] The average stated in the Settlement Administrator's previously filed declaration will go up because the gross settlement amount increased, *see, supra*, n. 2, and because the amounts attributable to opt-out's will be redistributed to participating class members.

seeking unpaid wages as a result of having engaged in off-the-clock work, including required training sessions); *Romulus v. CVS Pharmacy, Inc.*, 321 F.R.D. 464 (D. Mass. 2017) (denying certification in wage and hour class action); *Parker v. Garfield Beach CVS, L.L.C., et al.*, LASC Case No. BC547735 (same); *Murphy v. CVS Caremark Corporation, et al.*, LASC Case No. BC464785 (decertifying wage and hour case against CVS). In fact, the record is devoid of any California wage and hour case against CVS certified (and not subsequently decertified) as a class action. There is no reason to think this case would defy the odds. Acknowledging the low likelihood of class certification further supports the conclusion that the over- $10 million settlement is a very good outcome for the settlement classes here.

Objectors' arguments otherwise are grounded in valuations that cross the line between ambitious and absurd. For example, the Pharmacy Plaintiffs value class meal break claims at $3 million. ECF 180, PageID 4598. Hyams Objectors value these same claims at $51 million. ECF 95, PageID 3423. Pharmacy Plaintiffs value class meal break claims at $2.5 million, though they recognize that such claims are nearly impossible to litigate on a class basis and that CVS has defeated attempts to do so before. ECF 180, PageID 5501-02. Despite these hurdles, Hyams Objectors value the rest break claims at $100 million! ECF 95, PageID 3423. Interestingly, Pharmacy Plaintiffs value class unpaid wage and overtime claims at $5,157,072 and assign no additional value to the class reimbursement and pay records claims given difficulties of recovering on a class basis and because pay record violations must be "knowing and intentional" to be actionable. ECF 180, PageID 5496-97, 5502-04. Hyams Objectors, by contrast, value the unpaid wage and overtime claims at only $652,050. ECF 95, PageID 3423. They value the reimbursement claims that are so difficult to prove on a class basis at over $1.8 million, and the recordkeeping claims that require proof of a "knowing and intentional" violation at over $31 million. *Id.*

In a similar vein, Objector Ghassemian values her own claims in the context of her individual action against CVS and uses assumptions like (a) she worked 1-5 hours off-the-clock each and every workweek in the class period and (b) she missed a meal or rest period

every day that she worked, to conclude CVS owes her personally over $133,500. Ghassemian Objection, Ex. 6 to Signs Decl., at 18. Objector Andrews values *just his rest break claim* at $5,103.45. ECF 187-2, PageID 6831. Which is nothing compared to Objector Cosio, who values her rest break claim alone at $20,520. ECF 187-3, PageID 6849. Hyams Objectors also include declarations from non-class members—people who opted out of the settlement—who value their individual rest and meal break claims alone at $89,073.48 and $25,722.40, respectively. ECF 187-6, PageID 6878; ECF 187-8, PageID 6902. Notably, these individuals will have to assert such claim (if at all) in individual arbitration, as they agreed to arbitrate disputes with CVS.

In sum, Objectors' valuations of their and the class's claims are untethered from the reality. Proposed settlements are not to be judged against such wild speculation about what might have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). After all, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Id.* (internal citations omitted).

## B. The Scope Of The Release Comports with Ninth Circuit Law

The Hyams Objectors also complain that the scope of the release is too broad. They would have this Court believe it is not tethered to "facts and circumstances alleged in the *Chalian* or *Cabrera* cases" but rather includes any claims that could have been alleged, and therefore "violates the due process rights of absent class members." ECF 187, PageID 6697-98. This supposed distinction between the facts and circumstances alleged and the claims that could have been pled is a false dichotomy. It is the very facts and circumstances alleged in the five different versions of constantly-amended complaints and the three different PAGA letters, all of which culminated in the CAC, that prove non-exempt pharmacist employees could have asserted many wage and hour claims in the underlying litigation.[7]

---

[7] The fact that numerous courts have approved settlements releasing claims that could have been alleged in the underlying litigation also undermines Objectors' arguments vis-à-vis the scope of the release. *See, e.g., Galicia Gonzalez v. BMC W., LLC*, No. 517CV00390JGBRAOX, 2018 WL 6318826, at *2 (C.D. Cal. Nov. 20, 2018); *Chavez v. Blue Sky Nat. Beverage Co.*, No. CV-06-06609 JSW, 2012 WL 12921300, at *2 (N.D. Cal.

DEFENDANTS' RESPONSE TO RULE 23 CLASS OBJECTIONS

What the Hyams Objectors truly take issue with is that the facts alleged in the Pharmacy Plaintiffs' complaints are as expansive and wide-ranging as their own, albeit confined to the pharmacy. The Hyams Objectors want desperately to restrict the settlement before this Court to "off-the-clock training module allegations," ECF 187, PageID 6698, presumably to preserve some pharmacy class claims for themselves in the *Hyams* case. But the Pharmacy Plaintiffs' allegations are far, far broader than the Hyams Objectors pretend. In fact, Objector Ghassemian takes a view directly opposite the Hyams Objectors. She characterizes the Pharmacy Plaintiffs' allegations as including everything but the kitchen sink, describing the *Cabrera* plaintiffs as asserting, in addition to training time claims, "half a dozen other legal theories" on behalf of "twelve proposed class[es]" covering all pharmacist employees, "including for PAGA penalties under reach of these legal theories." *See* Ghassemian Objection, Ex. 6 to Signs Decl., at 13-14. She *Id.*

Indeed, a plain reading of the various complaints and PAGA letters makes clear that Pharmacy Plaintiffs have all along alleged they engaged in off-the-clock work, pre- and post-shift and during meal and rest breaks, for which CVS did not pay them. This, they have always claimed, resulted not just from engaging in required training, but from demanding and busy pharmacies and from labor budgeting based on the prior year's prescription volume, which in turn resulted in managers disciplining employees who refused to work off-the-clock. Cabrera FAC, ECF 94-2, ¶¶ 26-27, 43-44. The Pharmacist Plaintiffs also took issue with CVS's scheduling practices, claiming CVS only schedules one pharmacist for shifts of 4-6 hours, which results in solo pharmacists missing breaks. *Id.* at ¶¶ 48, 52, 90, 102. And, they alleged generally CVS failed to reimburse pharmacy employees for expenses incurred as a result of their employment, expenses "such as use of a personal computer or device, use of internet, licensing, background check, and travel." *Id.* at ¶ 141. They asserted recordkeeping violations, claimed waiting time penalties, and alleged wage statement

June 1, 2012); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1332 (N.D. Cal. 2014); ECF 180, PageID 5483-84 (collecting cases); *accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005) ("Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief.").

claims, which they based on, *inter alia*, claimed failures to reflect the number of hours actually worked, the gross and net wages properly earned, sick leave balances, and premium payments due for noncompliant meal and rest breaks. CAC, ECF 104, ¶¶ 65, 129-37, 144, 150-57, 187.[8]

Given the breadth of these allegations, the release of wage and hour claims that were alleged or that could have been alleged by non-exempt California pharmacist employees is perfectly tailored to this case. Indeed, it would make no sense for CVS to try to slice and dice non-exempt pharmacist employees' potential wage and hour claims into some smaller subcategories given the Pharmacy Plaintiffs' wide-ranging allegations.

## C.   The Settlement Is Not The Result Of Collusion

The Objectors represented by attorneys—four of whom are involved in competing putative class actions against CVS[9]—argue the settlement before this Court is the result of collusion. Hyams Objections, ECF 187, PageID 6703-07; Ghassemian Objection, Ex. 6 to Signs Decl., at 13-15. In the context of competing class actions, however, allegations like this mean nothing unless supported by facts and evidence. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099–100 (9th Cir. 2008) (noting if mere arguments were accepted, "no settlement could ever occur in the circumstances of parallel or multiple class actions" because "none of the competing cases could settle without being accused by another of participating in a collusive reverse auction") (internal citations omitted).

To support their arguments here, Objectors try to diminish the *Chalian* and *Cabrera* cases, but their arguments are misleading. They argue the three plaintiffs in *Cabrera* could

---

[8] The PAGA-only claims are likewise not limited solely to an off-the-clock theory as Plaintiffs allege violation of, for example, the maximum hours rules set forth in Labor Code 850/851 without any such limitation.

[9] Notably, *Hyams*, the competing class action, does not name Longs Stores California LLC as a defendant. This is a significant omission because Longs is both covered by the settlement here and employs all store employees except for licensed pharmacists in the hundreds of California stores that became part of CVS in 2009 as part of an acquisition. In other words, *Hyams* is only partially competing; it does not involve a significant portion of the settlement class members in this case.

only pursue their claims if they succeeded on appeal. ECF 187, PageID 6704. But one of those plaintiffs (Ms. McNealy) was the prevailing party before the District Court, so it was CVS that would have had to succeed on appeal. The other two appealed an issue that the California Supreme Court had yet to resolve when the District Court ruled against them on it, after which the California Supreme Court resolved the issue in the Pharmacy Plaintiffs' favor. *See Kim v. Reins Int'l California, Inc.*, 459 P.3d 1123, 1128 (Cal. 2020) (reversing California Court of Appeals decision on which District Court relied in ruling against two *Cabrera* plaintiffs). Thus, upon closer inspection, Objectors' argument that "the procedural posture" of the Pharmacist Plaintiffs' cases indicates "a weakened bargaining position" is simply untrue.

To the contrary, the evidence in this case is that the parties reached the settlement through the involvement of a neutral and well-respected mediator, which is in turn "evidence that settlement negotiations were conducted at arm's length." *See Joh v. Am. Income Life Ins. Co.*, No. 18-CV-06364-TSH, 2020 WL 109067, at *7 (N.D. Cal. Jan. 9, 2020) (rejecting arguments made by competing class counsel that class settlement was not reached at arms-length but rather as a result of "reverse auction").

**D.   The Settlement Classes Are Properly Certified**

Objector Ghassemian takes issue with the settlement class definitions and argues commonality is lacking, a necessary prerequisite to class certification under Fed. R. Civ. P. 23. Ghassemian Objection, Ex. 6 to Signs Decl., at 15. As the Ninth Circuit has succinctly explained, however, the criteria for class certification "are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019). This disposes of Ghassemian's third argument regarding the scope of the settlement classes, which she contends is too broad given her theory that class members "would not experience wage and hour violations in the exact same way." *Id.* at 16; *see also, e.g., Emetoh v. FedEx Freight,*

*Inc.*, No. 17-CV-7272-YGR, 2020 WL 6216763, at *3 (N.D. Cal. Oct. 22, 2020) (finally approving settlement class, finding commonality where focus was whether employer paid wages owed to non-exempt employees, including for missed meal and rest periods).

Objector Ghassemian's first and second arguments fare no better. She claims the class definitions potentially overlap because they "fail to clarify" whether a member of the Pharmacist Settlement Class could also be a member of the Retail Pharmacy Settlement Class. Ghassemian Objection, Ex. 6 to Signs Decl., at 15-16. But the class notice explicitly states Pharmacist Settlement Class members cannot also be Retail Pharmacy Settlement Class members. *See* ECF 180-2, PageID 5982. It cannot get much clearer. Objector Ghassemian also argues the settlement is somehow unfair because CVS has changed which stores fall within which regions over the years. Ghassemian Objection, Ex. 6 to Signs Decl., at 16. This is irrelevant, because the Retail Pharmacy Class captures all stores in California regardless of region. But in any event, the Pharmacist Settlement Class is limited to those who worked in stores historically part of Regions 65 and 72 regardless of whether those stores moved into different regions over the years. In short, Objector Ghassemian's arguments pertaining to the class definitions all lack merit.

### E.  Settlement Class Members Received Fair And Effective Notice

The Hyams Objectors argue the class notice this Court approved was not adequate for several ultimately unpersuasive reasons. First, they argue notice by first-class mail was insufficient because the U.S. Postal Service was too busy handling absentee election ballots during a pandemic and CVS's workforce "is not heavily mail-dependent." ECF 187, PageID 6716. The Settlement Administrator, however, managed to mail class notice through the U.S. Postal Service to 99.5% of class members. ECF 180-2, PageID 5977. And the Court already rejected arguments that notice should have been sent by electronic means. *See Hyams* Objections to Preliminary Approval, ECF 95 (arguing for notice by electronic means); Preliminary Approval Order, ECF 127 (ordering notice by first-class mail). Second, the Hyams Objectors argue the Settlement Administrator failed to set up a web site. ECF

187, PageID 6716. But visiting  https://www.simpluris.com/Case-Information and typing in "CVS" brings up documents relevant to this case.

Third, the Hyams Objectors argue notice was insufficient because, even though it explicitly called out other cases with overlapping claims, "it was unclear what claims from those cases were overlapping and the extent to which class members' participation in those cases would be affected or how to obtain such information." ECF 187, PageID 6717. This objection is troubling because it is, of course, up to the courts in the overlapping cases to decide the extent to which this settlement will affect "class members' participation in those cases." What Hyams Objectors seem to want is an advisory opinion. They want this Court to tell them and class members exactly what it believes the settlement at issue, if approved, would swallow vis-à-vis the *Hyams* case. Unfortunately for them, the U.S. Constitution limits federal court jurisdiction to actual cases or controversies. *See, e.g.*, *La Clinica De La Raza v. Trump*, No. 19-CV-04980-PJH, 2020 WL 4569462, at *3 (N.D. Cal. Aug. 7, 2020) (federal courts "may not render advisory opinions as to what the law ought to be or affecting a dispute that has not yet arisen").

A dispute is not justiciable—as opposed to a request for an advisory opinion—unless both (1) it presents "an honest and actual antagonistic assertion of rights by one [party] against another," and (2) the court to which is it presented is "empowered to issue a decision that serves as more than an advisement or recommendation." *Ctr. for Biological Diversity v. United States Forest Serv.*, 925 F.3d 1041, 1047–48 (9th Cir. 2019). There is no "antagonistic assertion of rights" vis-à-vis the Hyams Objectors' request. They are not party to *Hyams* and have no rights in that case. (Recall *Hyams* has not been certified as a class action.) So they have no basis for asking this Court to decide what potential rights they may have in the future now. Relatedly, if this Court gave them what they want, it would be giving them no more than an advisement that, in this Court's opinion, if the *Hyams* court did certify the case as a class action in the future, then they would be able to participate to some extent (or not). This would not even be binding. It would, at most, amount to a recommendation

DEFENDANTS' RESPONSE TO RULE 23 CLASS OBJECTIONS

to Judge Gilliam in the *Hyams* case. In short, what the *Hyams* Objectors want is a quintessential (and Constitutionally prohibited) advisory opinion.

Setting aside their request for an advisory opinion, the fourth reason the Hyams Objectors take issue with the class notice is because, in their view, there should have been a web site soliciting opt-out forms. ECF 187, PageID 6716. A web site, however, is not necessary. And it is certainly not necessary to provide opt-out forms. CASE CITES.

Fifth, the Hyams Objectors take issue with the form of notice, complaining about everything from the size of the font to the fact that it does not identify how many class members are in each class. This Court has already approved the notice (twice), however, and post-preliminary approval facts demonstrates the notice worked. The notice resulted in approximately 137 people exercising their right to opt out. Supplemental Decl. of M. Butler, ¶ 4. "This number reveals two things: (1) at least some portion of the class understood the notice and chose not to participate in the settlement for whatever reason; and (2) the vast majority of the class . . . agreed to be bound." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998). As the Ninth Circuit put it, "[t]his is how Rule 23 works," and objections to the form of class notice given this proof of it working are not well taken.

### F.   Objectors' Arguments Against Attorneys' Fees And Enhancement Awards Do Not Warrant Rejecting The Settlement.

Finally, all Objectors argue the attorneys' fees sought by Class Counsel are too high. And the Hyams Objectors complain about amount of the Pharmacy Plaintiffs' service payments, too. CVS leaves the responses to these objections to counsel for the Pharmacy Plaintiffs. It does, however, note that under any circumstances, these objections do not warrant rejecting the settlement. Any attorneys' fees and service awards the Court does not award it will simply redistribute amongst class members per the Settlement Agreement. ECF 180-1, PageID 5560-61.

### IV.   CONCLUSION

For the foregoing reasons, the Court should overrule the objections and enter an order finally approving of the parties' settlement.

Dated: November 25, 2020

**GREENBERG TRAURIG, LLP**

*/s/ James N. Boudreau*
James N. Boudreau
Christiana L. Signs
Tyler R. Andrews

Attorneys for Defendants
CVS Pharmacy, Inc., CVS Rx Services, Inc.,
and Garfield Beach CVS, LLC

DEFENDANTS' RESPONSE TO RULE 23 CLASS OBJECTIONS