# Exhibit 1

**Pinto, Barbara J. (Secy-Phil-Labor-EmpLaw-LT)**

| | |
|---|---|
| **From:** | Monique Rodriguez <mrodriguez@clarklawyers.com> |
| **Sent:** | Tuesday, July 10, 2018 3:11 PM |
| **To:** | Signs, Christiana L. (Shld-Phil-Labor-EmpLaw); Boudreau, James N. (Shld-Phi-Labor-EmpLaw); Andrews, Tyler (Shld-OC-LT) |
| **Cc:** | R. Craig Clark; Andrea Gorrino |
| **Subject:** | Cabrera v. CVS - Amended Complaint/Answer |
| **Attachments:** | 2018-07-10 (Cabrera) Third Amended Complaint_Redline.pdf; 2018-06-25 (LETTER) Amended PAGA Letter w- Brickman.pdf; Brennan, Patrick - Opt Out Letter to CVS.pdf |

Counsel,

As previously discussed, Defendants wish to amend their answer and Plaintiffs wish to amend their complaint.  As such, attached is a redlined version of Plaintiffs' proposed amended complaint.  As you will see, Plaintiffs seek to add Longs Drug Stores California, LLC as a defendant and two additional representatives.  Also attached please find a copy of Mr. Beckman's opt-out letter that was sent to CVS, as well as a copy of the second amended PAGA letter that was submitted to the LWDA.

Please advise if Defendants are amenable to the amendments.

Please contact our office if you have any questions.

Sincerely,
Monique

---
# Monique R. Rodriguez
*Attorney*

205 West Date Street
San Diego, CA 92101
**Tel:**  (619) 239 - 1321
**Fax:** (888) 273 - 4554



PRIVILEGED AND CONFIDENTIAL: The information contained in this e-mail message and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited.  If you received this e-mail message in error, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.

# Exhibit 2



R. Craig Clark (SBN 129219)
cclark@clarklawyers.com
Monique R. Rodriguez (SBN 304223)
mrodriguez@clarklawyers.com
**CLARK LAW GROUP**
205 West Date Street
San Diego, CA 92101
Telephone: (619) 239-1321
Facsimile:  (888) 273-4554

Walter Haines (SBN 071075)
**UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Telephone: (562) 256-1047

Facsimile:  (562) 256-4554

*Attorney for Plaintiffs*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

SIGFREDO CABRERA, ENKO TELAHUN, CHRISTINE MCNEELY, PATRICK BRENNAN, and LYNN BRICKMAN, as individuals, on behalf of themselves, and all other persons similarly situated,

Plaintiffs,

v.

CVS RX SERVICES, INC., a New York corporation, CVS PHARMACY, INC., a Rhode Island corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; LONGS DRUG STORES CALIFORNIA, LLC, a California limited liability company; and DOES 1 to 10 inclusive,

Defendants.

CASE NO.: 17-cv-05803-WHA

**CLASS & REPRESENTATIVE ACTION**

**THIRD AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF AND CIVIL PENALTIES:**

**(1) FAILURE TO PAY MINIMUM WAGES AND OVERTIME COMPENSATION (Labor Code §§ 204, 510, 558, 1194, 1197, 1197.1, and 1198);**

**(2) FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code §§ 226.7 and 512);**

**(3) FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS OR COMPENSATION IN LIEU THEREOF (Labor Code § 226.7);**

**(4) FAILURE TO PAY WAGES OWED (Labor Code §§ 201, 202, and 203);**

**(5) FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

**Deleted:** and

**Deleted:** SECOND

**Deleted:** SECOND

1
THIRD AMENDED COMPLAINT
17-cv-05803-WHA

(Labor Code §§ 226 and 226.3);

(6) **FAILURE TO MAINTAIN ACCURATE RECORDS**
(Labor Code §§ 226(a), 226.3, and 1174);

(7) **FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES**
(Labor Code §§ 2800 and 2802);

(8) **UNFAIR BUSINESS PRACTICES**
(Bus. & Prof. Code §§ 17200 *et. seq.*);

(9) **PRIVATE ATTORNEYS GENERAL ACT OF 2004**
(Labor Code §§ 2698 *et seq.*).

**DEMAND FOR JURY TRIAL**

Plaintiffs Sigfredo Cabrera, Enko Telahun, Christine McNeely, Patrick Brennan, and Lynn Brickman ("Plaintiffs"), by and through their attorneys of record, bring this action on behalf of themselves and all persons similarly situated, against Defendants CVS Rx Services, Inc., CVS Pharmacy, Inc., Garfield Beach CVS, LLC, and Longs Drug Stores California, LLC (collectively "Defendants" or "CVS"), on the following grounds:

**<u>INTRODUCTION</u>**

1.    This action is brought by Plaintiffs on behalf of themselves and all current or former employees of Defendants who held non-exempt hourly positions as pharmacists, pharmacy technicians, pharmacy managers, and pharmacy service associates (collectively "pharmacy employees") who worked at CVS locations throughout the state of California, who were not properly compensated for all hours worked, who were not provided with legally compliant meal and rest periods, who were not paid all wages owed upon termination of the employment relationship, who were provided with inaccurate wage statements, who were not reimbursed for necessary work expenses, who were subject to Defendants' unlawful, unfair, and

2

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: and

Deleted: and

Deleted: SECOND

1  fraudulent business practices, and whose information was not properly maintained
2  by Defendants.

3      2.     Plaintiffs seek damages, civil penalties, injunctive relief, and restitution,
4  as well as reasonable attorneys' fees and litigation costs, as provided under
5  California law.

6      3.     All allegations in this Third Amended Complaint ("TAC") are based
7  upon information and belief, except those allegations that pertain to Plaintiffs named
8  herein and their counsel, which are based upon personal knowledge. Each allegation
9  in this TAC has evidentiary support or is likely to have evidentiary support after a
10  reasonable opportunity for further investigation and discovery.

11                              **JURISDICTION AND VENUE**

12     4.     This Court has jurisdiction over this action pursuant to California Code
13  of Civil Procedure ("Code Civ. Proc.") § 410.10.  Pursuant to Code Civ. Proc. §
14  382, California Business and Professions Code ("Bus. & Prof. Code") § 17203, and
15  California Labor Code ("Labor Code") §§ 2698 *et seq.*, Plaintiffs bring this action
16  on behalf of themselves, and on behalf of all persons, as defined herein.

17     5.     This Court has jurisdiction over this action pursuant to the Class Action
18  Fairness Act, codified as 28 U.S.C. § 1332(d). On October 9, 2017, Defendants
19  removed this action from the Alameda County Superior Court based on evidence
20  that the aggregate claims of the putative Class(es), exclusive of interests, costs, and
21  attorneys' fees, exceeds $5 million. (Docket Nos. 1-4.)

22     6.     Venue as to Defendants is proper in this judicial district, pursuant to 28
23  U.S.C. § 1391.  Defendants transact business and maintain offices in Alameda
24  County and are otherwise within this Court's jurisdiction for purposes of service of
25  process.  The unlawful acts alleged herein have a direct effect on Plaintiffs and those
26  similarly situated within the county of Alameda and the state of California.

27     7.     Pursuant to Rule 3.400 of the California Rules of Court this case shall
28  be deemed a complex action because it is filed as a class and representative action

3
THIRD AMENDED COMPLAINT
17-cv-05803-WHA

Deleted: Second
Deleted: S
Deleted: S
Deleted: SECOND

1 and involves specialized case management, extensive discovery and evidence,

2 difficult and/or novel issues, and is likely to require extensive post judgment

3 supervision.

4 **CLASS DEFINITIONS**

5      8.     The members of the proposed classes are defined as follows during the

6 period commencing on the date that is within four years prior to the filing of the

7 initial complaint and through the present date (hereinafter the "Class Period"). To

8 the extent that equitable tolling operates to toll the claims by the class and/or classes

9 against Defendants, the Class Period should be adjusted accordingly.

10     (a)     All current or former non-exempt pharmacy employees employed

11         by Defendants in the state of California who "opted-out" of or did

12         not agree to CVS' arbitration agreement and who suffered any

13         violations of the Labor Code, Business and Professions Code

14         and/or the relevant California Industrial Welfare Commission's

15         ("IWC") Wage Orders during the Class Period.

16     (b)     All current or former non-exempt pharmacy employees employed

17         by Defendants in the state of California who "opted-out" of or did

18         not agree to CVS' arbitration agreement and who were not paid

19         for all hours worked in violation of California law during the

20         Class Period.

21     (c)     All current or former non-exempt pharmacy employees employed

22         by Defendants in the state of California who "opted-out" of or did

23         not agree to CVS' arbitration agreement and who were not

24         provided with legally compliant meal periods or compensation in

25         lieu thereof in violation of California law during the Class Period.

26     (d)     All current or former non-exempt pharmacists employed by

27         Defendants in the state of California who "opted-out" of or did

28         not agree to CVS' arbitration agreement and who were not

4

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: SECOND

provided with legally compliant meal periods because of Defendants' practice of scheduling only one pharmacist on-duty for a period of four to six hours, or who were not compensated for noncompliant meal periods in lieu thereof in violation of California law during the Class Period.

(e) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with legally compliant rest periods or compensation in lieu thereof in violation of California law during the Class Period.

(f) All current or former non-exempt pharmacists employed by Defendant in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with the opportunity to take legally compliant rest periods due to Defendants practice of scheduling one pharmacist on duty for a period of four to six hours, or who were not compensated for noncompliant rest periods in lieu thereof in violation of California law during the Class Period.

(g) All former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not paid all wages owed upon termination of the employment relationship in violation of California law during the Class Period.

(h) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with accurate itemized wage statements in violation of California law during the Class Period.

5

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: SECOND

(i)     All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and whose information was not accurately recorded and/or maintained in violation of California law during the Class Period.

(j)     All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not reimbursed for necessary work expenses in violation of California law during the Class Period.

(k)     All current or former non-exempt pharmacy technicians employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not reimbursed for their licensing, background check, and travel in violation of California law during the Class Period.

(l)     All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were subject to Defendants' unlawful, unfair, and/or fraudulent business practices in violation of California law during the Class Period.

9.     Members of the class and/or classes are all "employees" as the term is used in the Labor Code and the IWC Wage Orders regulating wages, hours, and working conditions in the state of California.

10.     A more precise definition of the class and/or classes may be determined after further investigation and discovery is conducted.

11.     Plaintiffs McNeely, Brennan and Brickman reserve their right to redefine the class and/or classes under California Rules of Court, rule 3.765(b) and

6

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: s

Deleted: her

Deleted: SECOND

1 | other applicable law at any time prior to the court's order on Plaintiffs' Motion for

2 | Class Certification.

**THE PARTIES**

I.    **PLAINTIFFS**

12.    Plaintiff Sigfredo Cabrera, at all material times mentioned herein:

(a)    Was employed by CVS from January 2016 to January 2017 as a non-exempt pharmacy service associate and a non-exempt pharmacy technician;

(b)    Worked at multiple CVS locations, including in Oakland, San Leandro and Palo Alto, California;

(c)    Was paid an hourly wage;

(d)    Was mandated by CVS to complete various training modules;

(e)    Was not paid for all his time spent completing the required training modules;

(f)    Was directed by CVS to work off the clock to meet the needs of the pharmacy and/or complete required training;

(g)    Was not paid for all his time spent working off the clock;

(h)    Was not provided with legally compliant meal periods or compensation in lieu thereof;

(i)    Was not provided with legally compliant rest periods or compensation in lieu thereof;

(j)    Was not paid all wages owed upon termination of the employment relationship;

(k)    Was provided with inaccurate and incomplete wage statements;

(l)    Was not reimbursed for necessary work expenses, including but not limited to the costs for his licensing and background check;

(m)    Was subject to CVS' unlawful, unfair, and fraudulent business practices;

7

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: '

Deleted: SECOND

1   (n)   Believes his payroll records are inaccurate and not properly

2         maintained by Defendants;

3   (o)   Is an "aggrieved employee" as defined by Labor Code § 2699(c);

4   (p)   Complied with all requirements outlined in Labor Code §§ 2698 *et*

5         *seq*.

6   13.   Plaintiff Enko Telahun, at all material times mentioned herein:

7   (a)   Was employed by CVS from June 2010 to February 2017 as a non-

8         exempt pharmacist and a non-exempt pharmacy manager;

9   (b)   Worked at a CVS location in San Diego, California;

10  (c)   Was paid an hourly wage;

11  (d)   Was required by CVS to complete various training modules;

12  (e)   Was not paid for all time spent completing the various training

13        modules;

14  (f)   Was required to work off the clock to complete the required

15        training and/or meet the needs of the pharmacy;

16  (g)   Was not paid for all his time spent working off the clock;

17  (h)   Was not provided with legally compliant meal periods or

18        compensation in lieu thereof;

19  (i)   Was not provided with legally complaint rest periods or

20        compensation in lieu thereof;

21  (j)   Was not paid all wages owed upon termination of the employment

22        relationship;

23  (k)   Was provided with inaccurate and incomplete wage statements;

24  (l)   Was not reimbursed for necessary work expenses;

25  (m)   Was subject to CVS' unlawful, unfair, and fraudulent business

26        practices;

27  (n)   Believes his payroll records are inaccurate and not properly

28        maintained by Defendants;

8

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: SECOND

1         (o)  Is an "aggrieved employee" as defined by Labor Code § 2699(c);

2         (p)  Complied with all requirements outlined in Labor Code §§ 2698 *et*

3             *seq.*

4   14.  Plaintiff Christine McNeely at all material times mentioned herein:

5         (a)  Was employed by CVS from March 2014 to July 2016 as a non-

6             exempt pharmacy technician;

7         (b)  Worked at two CVS locations in Auburn and Grass Valley,

8             California;

9         (c)  Was paid an hourly wage;

10        (d)  Was mandated by CVS to complete various training modules;

11        (e)  Sent an opt-out letter to CVS indicating she did not wish to be

12            bound by the arbitration agreement that she was forced agree to in

13            CVS' mandated training;

14        (f)  Was not paid for all her time spent completing the required training

15            modules;

16        (g)  Was directed by CVS to work off the clock to meet the needs of the

17            pharmacy and/or complete required training;

18        (h)  Was not paid for all her time spent working off the clock;

19        (i)  Was not provided with legally compliant meal periods or

20            compensation in lieu thereof;

21        (j)  Was not provided with legally compliant rest periods or

22            compensation in lieu thereof;

23        (k)  Was not paid all wages owed upon termination of the employment

24            relationship;

25        (l)  Was provided with inaccurate and incomplete wage statements;

26       (m)  Was not reimbursed for necessary work expenses, including but not

27            limited to the costs for her licensing and background check;

28

Deleted: SECOND

9

THIRD AMENDED COMPLAINT

1    (n)  Was subject to CVS' unlawful, unfair, and fraudulent business
2         practices;
3    (o)  Believes her payroll records are inaccurate and not properly
4         maintained by Defendants;
5    (p)  Is a member of the class and/or classes identified herein.
6    15.  Plaintiff Patrick Brennan at all material times mentioned herein:

**Deleted:** Plaintiff

7    (a)  Was employed by CVS from time CVS acquired Longs Drug Stores
8         until approximately April 2017 as a non-exempt pharmacist;
9    (b)  Worked at a CVS location in Grass Valley, California;
10   (c)  Was paid an hourly wage;
11   (d)  Was mandated by CVS to complete various training modules;
12   (e)  Sent an opt-out letter to CVS stating that he did not wish to
13        participate in the CVS arbitration program, nor did he ever agree to
14        participate in the CVS arbitration program by completing the
15        mandated training module;
16   (f)  Was not paid for all his time spent completing the required training
17        modules;
18   (g)  Was directed by CVS to work off the clock to meet the needs of the
19        pharmacy and/or complete required training;
20   (h)  Was not paid for all his time spent working off the clock;
21   (i)  Was not provided with legally compliant meal periods or
22        compensation in lieu thereof;
23   (j)  Was not provided with legally compliant rest periods or
24        compensation in lieu thereof;
25   (k)  Was not paid all wages owed upon termination of the employment
26        relationship;
27   (l)  Was provided with inaccurate and incomplete wage statements;
28

**Deleted:** SECOND

10
THIRD AMENDED COMPLAINT
17-cv-05803-WHA

(m)  Was not reimbursed for necessary work expenses, including but not limited to the costs for the use of his personal electronic devices and/or internet;

(n)  Was subject to CVS' unlawful, unfair, and fraudulent business practices;

(o)  Believes his payroll records are inaccurate and not properly maintained by Defendants;

(p)  Is a member of the class and/or classes identified herein.

16.  Plaintiff Lynn Brickman at all material times mentioned herein:

(a)  Was employed by CVS from approximately 2016 to March 8, 2018 as a non-exempt pharmacy technician;

(b)  Worked at three CVS locations in Vista, Escondido and South Lake Tahoe, California;

(c)  Was paid an hourly wage;

(d)  Was required by CVS to complete various training modules;

(e)  Was not paid for all time spent completing the various training modules;

(f)  Was required to work off the clock to complete the required training and/or meet the needs of the pharmacy;

(g)  Was not paid for all her time spent working off the clock;

(h)  Was not provided with legally compliant meal periods or compensation in lieu thereof;

(i)  Was not provided with legally complaint rest periods or compensation in lieu thereof;

(j)  Was not paid all wages owed upon termination of the employment relationship;

(k)  Was provided with inaccurate and incomplete wage statements;

(l)  Was not reimbursed for necessary work expenses;

11

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Formatted: Indent: Left: 1", Hanging: 0.38", Tab stops: Not at 1"

Deleted: Plaintiff

Deleted: SECOND

(m)  Was subject to CVS' unlawful, unfair, and fraudulent business practices;

(n)  Believes her payroll records are inaccurate and not properly maintained by Defendants;

(o)  Is a member of the class and/or classes identified herein;

(p)  Is an "aggrieved employee" as defined by Labor Code § 2699(c);

(q)  Has provided notice of CVS's alleged Labor Code violations as required by Labor Code §§ 2698 *et seq.*

**II.   DEFENDANTS**

17.   Defendant CVS Rx Services, Inc., is a New York corporation, which operates as a subsidiary of CVS Health Corporation that is engaged in the business of providing pharmacy services throughout the United States and the state of California.

18.   Defendant CVS Pharmacy, Inc., is a Rhode Island corporation, which operates as a subsidiary of CVS Health Corporation that is engaged in the business of providing pharmacy services and operating retail stores that sell pharmaceuticals and general merchandise throughout the United States and the state of California.

19.   Defendant Garfield Beach CVS, LLC, is a California limited liability company, which operates as a subsidiary of CVS Health Corporation that is engaged in the business of operating drug and proprietary stores throughout the state of California.

20.   Defendant Longs Drug Stores California, LLC, is a California limited liability company, which operates as a subsidiary of CVS Health Corporation that is engaged in the business of providing pharmacy services and operating retail stores that sell pharmaceuticals and general merchandise throughout the United States and the state of California.

21.   The true names and capacities, whether individual, corporate, subsidiary, partnership, associate, or otherwise of Defendant Does 1 through 10, are

12

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

1  unknown to Plaintiffs, who therefore sues these defendants by such fictitious names

2  pursuant to Code Civ. Proc. § 474. Plaintiffs will amend their complaint to allege

3  the true names and capacities of Does 1 through 10 when they are ascertained.

4  22.   At all times mentioned herein, each defendant acted as an agent,

5  servant, employee, co-conspirator, alter-ego and/or joint venture of the other

6  defendants, and in doing the things alleged herein acted within the course and scope

7  of such agency, employment, alter ego and/or in furtherance of the joint venture.

8  23.   At all times mentioned herein, the acts alleged to have been done and/or

9  caused by Defendants are also alleged to have been done and/or caused by the

10  unascertained defendants mentioned above, and by each of their agents and

11  employees who acted within the scope of their agency and/or employment.

12  24.   At all times mentioned herein, the acts and omissions of each of the

13  defendants concurrently contributed to the various acts and omissions of each and

14  every one of the other defendants in proximately causing the wrongful conduct,

15  harm, and damages alleged herein.  Each of the defendants approved of, condoned,

16  and/or otherwise ratified each and every one of the acts or omissions complained

17  herein. Each defendant and all doe defendants were and are acting with the authority

18  of each and every other defendant and are acting as agents of each and every other

19  defendant or doe defendant.

20  **FACTUAL ALLEGATIONS**

21  25.   Plaintiff Cabrera was employed by CVS from approximately January

22  2016 to January 2017.  During his employment, he worked at CVS locations in

23  Oakland, San Leandro, and Palo Alto, California. Plaintiff Cabrera worked as both a

24  pharmacy service associate and a pharmacy technician and was paid an hourly wage.

25  26.   Plaintiff Telahun was employed by CVS from about June 2010 to

26  February 2017. During his employment, he worked at a CVS location in San Diego,

27  California. Plaintiff Telahun worked as both a pharmacist and pharmacy manager

28  and was paid an hourly wage.

13

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

**Deleted:** SECOND

27.    Plaintiff McNeely was employed by CVS around March 2014 to July 2016 at a location in Grass Valley, California. During her employment, she worked as a pharmacy technician and was paid an hourly wage.

28.    Plaintiff Brennan was employed by CVS since it acquired Longs Drugs Stores until April 2017 at a location in Grass Valley, California.  During his employment, he worked as a pharmacist and was paid an hourly wage.

29.    Plaintiff Lynn Brickman was employed by CVS from approximately 2016 to March 8, 2018.  During her employment, she worked at three CVS locations in Vista, Escondido, and South Lake Tahoe, California as a non-exempt pharmacy technician. Despite being a pharmacy technician, Plaintiff Brickman often worked in the capacity of a pharmacy service associate by assisting customers with their purchases due to CVS's common practice of understaffing its locations and limiting the number of work hours.

30.    Plaintiffs assert that CVS employs individuals as non-exempt pharmacists, pharmacy managers, pharmacy technicians, and pharmacy service associates at its various CVS locations throughout the state of California. To their knowledge pharmacy employees are paid on an hourly basis.

31.    Plaintiffs allege, based on information and belief, that all pharmacy employees in the state of California are subject to the same and/or similar policies, practices, and/or procedures described herein.

32.    As a policy, practice, guideline and/or procedure CVS sets an amount of available work hours for each CVS location based on prescription volume from the previous year.

33.    As a policy, practice, guideline, and/or procedure CVS instructs its store managers and/or pharmacy managers not to go over the set amount of available work hours for each CVS location.

34.    Upon hire, CVS requires all pharmacy employees to complete an extensive, initial training session. As a policy, practice, guideline, and/or procedure

14

THIRD AMENDED COMPLAINT
17-cv-05803-WHA

Deleted: SECOND

1   CVS also requires pharmacy employees to complete ongoing training sessions,

2   which are offered about once a month.  Plaintiffs understood that they and other

3   pharmacy employees were subject to discipline, including termination, if they did

4   not complete the mandated trainings. To Plaintiffs' knowledge these training

5   sessions are not essential for any state certification, licensing, or regulation.

6         35.   As a policy, practice, guideline and/or procedure CVS routinely sends

7   notices via email to pharmacy employees when an upcoming training session is

8   required and available for completion. The notices provide information about the

9   upcoming training, a time estimate for completion, and a due date. CVS also sends

10  out reminder notices, as a policy, practice, guideline and/or procedure, to pharmacy

11  employees who have yet to complete the training by the upcoming due date.

12        36.   Based on information and belief, Plaintiffs allege thereon, that failure to

13  complete the training in a timely fashion may result in disciplinary action, including

14  but not limited to a reduction in assigned work hours.

15        37.   As a policy, practice, guideline and/or procedure CVS's training

16  modules are typically completed on a CVS web-based training system, usually

17  referred to as LEARNet. Plaintiffs believe that the web-based system keeps record

18  of all log-in and log-out times, as well as the total time the pharmacy employee

19  spends to complete each training module.

20        38.   As a policy, practice, guideline and/or procedure CVS purportedly

21  permits pharmacy employees to complete their training while clocked in during a

22  scheduled shift.  However, due to CVS's staffing policies, practices, and/or

23  procedures, and the busy nature of the pharmacy, Plaintiffs allege that they and

24  other pharmacy employees typically do not have time to complete the required

25  trainings during their scheduled shifts.

26        39.   As a policy, practice, guideline and/or procedure to ensure that

27  pharmacy employees complete their training, CVS provides all pharmacy employees

28

Deleted: SECOND

1  with unique remote access log-in credentials so that they may access the web-based

2  training system from a remote location, such as the employee's home.

3      40.    As a policy, practice, guideline and/or procedure CVS assigns an

4  approximate time frame that each training module should be completed in.

5  However, the trainings often take Plaintiffs and other pharmacy employees more

6  time to complete than the time prescribed.

7      41.    Even though CVS knows or should know that training takes more time

8  than suggested, it has a policy, procedure, guideline and/or practice of instructing

9  store managers to only compensate pharmacy employees for the allocated training

10  time instead of the actual time the pharmacy employees spend completing the

11  training.

12      42.    As a policy, procedure, guideline and/or practice CVS typically uses its

13  cash registers to operate as the CVS timekeeping system.  Based on information and

14  belief Plaintiffs allege thereon, that CVS training system is not integrated with the

15  timekeeping system. CVS does not keep track of training time nor does CVS

16  automatically add the training time to the pharmacy employees' clocked hours at

17  their work locations.  As a result, all training completed off the clock must be

18  entered manually by a store manager, despite the fact that log-in and log-out times

19  are available to CVS through the training software.

20      43.    As a policy, procedure, guideline and/or practice, CVS instructs

21  pharmacy employees to separately track their time spent engaging in training on a

22  separate sheet of paper that allegedly is to be manually entered by a store manager.

23  However, pharmacy employees often endure difficulties with management when

24  reporting their training time due to the direction and pressure by CVS to minimize

25  labor costs and restrict overtime. CVS's scheme has created a disincentive for store

26  managers to manually enter the actual time pharmacy employees spent completing

27  the training remotely. Ultimately, this scheme has knowingly deterred pharmacy

28  employees from reporting their actual time spent participating in training. Therefore

16

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

**Deleted:** SECOND

1  much, if not all, of the time pharmacy employees spend remotely completing the
2  required training is never logged by CVS and the employees are not paid for that
3  time.

4      44.    CVS is aware and/or should be aware of their failure to compensate
5  pharmacy employees because they have payroll records for all pharmacy employees,
6  as well as training records for all pharmacy employees. From such records, CVS has
7  the capability to determine whether or not a pharmacy employee is appropriately
8  compensated for their time spent participating in the mandated training.

9      45.    As a policy, procedure, guideline, and/or practice CVS also used its
10  training program to mandate pharmacy employees to participate in a training module
11  entitled "Arbitration of Workplace Legal Disputes" wherein the pharmacy employee
12  could not complete the training without agreeing to arbitrate his or her legal claims.
13  Instead the training quickly informed individuals that they had the "limited
14  opportunity" to "opt-out" by mailing a written notice to CVS indicating that they
15  wished to "opt-out" of the policy.

16      46.    Plaintiffs McNeely, Telahun and Brennan were subject to the training
17  module described above.  Plaintiffs allege that they were threatened by management
18  to complete the training thereby making them subject to the agreement.

19      47.    Shortly after completing the "Arbitration of Workplace Legal Disputes"
20  training module, Plaintiff McNeely, Plaintiff Brennan and a few other pharmacy
21  employees sent written letters to CVS headquarters stating that they did not wish to
22  be bound by the arbitration agreement.  Plaintiff McNeely further believes that a
23  copy of such letter is included in her personnel file as the pharmacist in charge at the
24  time told her that a copy of the letter was in her file.

25      48.    Based on information and belief, Plaintiffs assert that CVS provides an
26  arbitration agreement to pharmacy employees upon hire to which some pharmacy
27  employees have elected not to sign.

28

17
THIRD AMENDED COMPLAINT
17-cv-05803-WHA

Deleted: and
Deleted: SECOND

49.     Plaintiffs further allege that due CVS's policy, practice, guideline and/or procedure of strictly allocating work hours based on prescription volume from the previous year and the busy nature of the pharmacy, they and other pharmacy employees were often directed to work off the clock before and after their scheduled shifts, as well as during their meal and rest periods to meet the needs of the pharmacy and/or to complete the required training. As a result, pharmacy employees often worked more than eight hours in a day, and/or forty hours in a week.

50.     Plaintiffs allege that it is CVS's policy, practice, guideline and/or procedure to discipline pharmacy employees for refusing to work off the clock, such as by reducing the employee's scheduled work hours.

51.     CVS's policies, practices, and/or procedures have knowingly resulted in pharmacy employees not being compensated for some or all the time they were engaged in work.

52.     Plaintiffs further allege that as a policy, practice, guideline and/or procedure CVS required pharmacy employees to clock out for meal periods, even though pharmacy employees were working through their meal periods to meet the needs of the pharmacy and/or complete their required training(s).

53.     Plaintiffs contends that CVS knew or should have known that pharmacy employees were working through their meal periods because (a) various managers, supervisors, and personnel saw pharmacy employees working during their meal periods, (b) LEARNet shows that pharmacy employees were completing trainings, while they were clocked out for a meal period; (c) the work accomplished could not have been completed within the documented number of hours, and (d) Plaintiff Cabrera personally complained to his superiors about not receiving adequate meal and rest periods.

54.     California regulations provide that a pharmacist must be on the premises at all times and be fully aware of all activities performed by a pharmacy technician.

18

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

**Deleted:** SECOND

1  Plaintiffs Telahun and Brennan contends that as a policy, practice, guideline and/or

2  procedure CVS schedules only one pharmacist on duty for a period of four to six

3  hours.  Due to this scheduling practice, pharmacists, such as Plaintiffs Telahun and

4  Brennan, were not provided with meal periods that were free of all duty, as they

5  were on call during their meal periods and/or were unable to leave the premises. As

6  such, Plaintiff Telahun, Plaintiff Brennan and other current or former pharmacists

7  were not provided with legally compliant meal periods.

8       55.    Plaintiffs further allege that they and other current or former pharmacy

9  employees did not receive a second meal period when they worked more than ten

10  hours.  This was largely because Plaintiffs and other pharmacy employees were

11  working off the clock as described herein.

12       56.    Plaintiffs and other current or former pharmacy employees were not

13  compensated for noncompliant meal periods as provided by California law.

14       57.    As a policy, practice, guideline and/or procedure CVS did not provide

15  Plaintiffs and other current or former employees with lawful rest periods, despite its

16  written policy due to the busy nature of the pharmacy and the pressure of CVS to

17  meet its goals.

18       58.    Due to CVS's policy, practice, guideline and/or procedure of only

19  scheduling one pharmacist for a period of four to six hours and California

20  regulations, pharmacists, such as Plaintiffs Telahun and Brennan were unable to take

21  off-duty rest periods as they were expected to be on-call and available at all times.

22       59.    Plaintiffs and other current or former employees were not compensated

23  for noncompliant rest periods in violation of California law.

24       60.    CVS also has a policy, practice, guideline and/or procedure of failing to

25  reimburse and/or indemnify Plaintiffs and other current or former pharmacy

26  employees for expenses incurred as a direct result of their employment, such as the

27  use of personal computers and internet to complete the mandatory training from a

28  remote location, even though CVS knew and/or had reason to know that pharmacy

19

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

**Deleted:** SECOND

1  employees were completing the training from their personal computers and using

2  their own internet without reimbursement.

3      61.     Additionally, CVS has a policy, practice, guideline and/or procedure of

4  failing to reimburse and/or indemnify Plaintiff Cabrera, Plaintiff Brickman and other

5  current or former pharmacy technicians for the costs of their required license,

6  background check, and travel, which were required by CVS.  Thus, CVS knew or

7  had reason to know that pharmacy technicians were not being reimbursed for their

8  required work-related expenses.

9      62.     Since, CVS failed to pay Plaintiffs and other current or former

10  employees for all time worked, as well as premiums for noncompliant meal and rest

11  periods, CVS willfully failed to pay, in a timely manner, all wages owed to

12  Plaintiffs and other former employees upon termination of their employment.

13      63.     Plaintiffs further alleges that as a policy and practice CVS failed to

14  timely pay all wages owed upon termination of the employment relationship, as well

15  as failed to pay the required waiting time penalties.  For example, on March 8, 2018,

16  Plaintiff Brickman was personally notified that her employment was terminated.

17  However, at the time of termination CVS did not provide Plaintiff Brickman with

18  her final wages.  In fact, Plaintiff Brickman did not receive her final ways until

19  approximately six days after her termination. Plaintiff Brickman's final paycheck

20  also did not include the requisite waiting time penalties.

21      64.     Due to CVS's policies, practices, and procedures described herein, CVS

22  failed to provide accurate itemized wage statements to Plaintiffs and other current or

23  former pharmacy employees in violation of California law because the wage

24  statements did not properly reflect the number of hours worked, the gross wages and

25  net wages earned, nor was the information properly itemized in a that manner

26  pharmacy employees can easily determine the information.

27      65.     Because of CVS' policies, practices, and procedures, described herein,

28  CVS also failed to maintain accurate records by failing to accurately and properly

20

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

**Deleted:** SECOND

record all time worked and maintain accurate payroll records as required by
California law.

66.    On June 22, 2016, Plaintiff Cabrera submitted notice to the LWDA and
CVS informing them of CVS' alleged Labor Code violations pursuant to PAGA. A
true and correct copy of the notice is attached hereto as **Exhibit 1** and is
incorporated herein by this reference. On August 22, 2017, Plaintiffs Cabrera and
Telaun submitted an amended notice to the LWDA, which included Mr. Telahun as
an additional representative and included additional facts and theories to support the
alleged Labor Code violations. A true and correct copy of the amended notice is
attached hereto as **Exhibit 2** and is incorporated herein by this reference. As of the
date of this pleading the LWDA has yet to respond to either notice.  Furthermore, on
June 25, 2018, Plaintiffs Cabrera, Telahun and Brickman submitted an amended
notice to the LWDA, which included Ms. Brickman as an additional representative
and included additional facts and theories to support their alleged Labor Code
violations.  A true and correct copy of the second amended notice is attached hereto
as **Exhibit 3** and is incorporated herein by this reference.  As such, Plaintiffs
Cabrera and Telahun have filed this representative action in their representative
capacity pursuant to Labor Code §§ 2698 *et seq.* In the event, the LWDA does not
respond to the second amended notice, Plaintiffs will seek to amend their complaint
to include Plaintiff Brickman as a named representative pursuant to Labor Code §§
2698 *et esq.*

/ / /

/ / /

67.    Plaintiffs believe that other violations may be discovered and therefore
reserve their right to allege additional violations of law that may constitute
violations of the Business and Professions Code and/or Labor Code, as investigation
and discovery warrants. In the event Plaintiffs discover other violations through the
discovery process, Plaintiffs will seek to amend the operative complaint.

21
THIRD AMENDED COMPLAINT
17-cv-05803-WHA

---

Deleted: , to the LWDA

Formatted: Font: Bold, Underline

Deleted: now

Formatted: Font: Italic

Formatted:  No bullets or numbering, Tab stops: Not at  1"

Deleted: SECOND

**CLASS ALLEGATIONS**

68.     Plaintiffs Christine McNeely, Patrick Brennan and Lynn Brickman bring this action on behalf of themselves and on behalf of all persons within the defined class and/or classes included herein.

69.     This class action meets the statutory prerequisites for the maintenance of a class action, as set forth in Code Civ. Proc. § 382, Civ. Code § 1781 and the Federal Rues of Civil Procedure ("Fed. R. Civ. P."), Rule 23, in that:

(a)     The persons who comprise the class and/or classes are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

(b)     Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the Class and will apply uniformly to every member of the Class, and as a practical matter be dispositive of the interests of the other members not party to the adjudication;

(c)     The parties opposing the Class have acted or have refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole; and

(d)     Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

i.      The interests of Class Members in individually controlling the prosecution or defense of separate actions;

22
THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: <#>¶

Deleted: s

Deleted: herself

Deleted: SECOND

ii.   The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

iii.   The desirability or undesirability of concentrating the litigation of the claims in this particular forum; and

iv.   The difficulties likely to be encountered in the management of a class action.

70.   The Court should permit this action to be maintained as a class action pursuant to Code Civ. Proc. § 382, Civ. Code § 1781, and Fed. R. Civ. P. 23 because:

(a)   Questions of law and fact common to the Class are substantially similar and predominate over any questions affecting only individual members;

(b)   A class action is superior to any other available method for the fair and efficient adjudication of Class Members' claims;

(c)   The members of the Class are so numerous that it is impractical to bring all Class Members before the Court;

(d)   Plaintiffs' claims are typical of the claims of the Class;

(e)   Plaintiffs and the other members of the Class will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

(f)   There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations and other improprieties alleged, and in obtaining adequate compensation for the damages that Defendants' actions have inflicted upon the Class;

(g)   Plaintiffs can, and will, fairly and adequately protect the interest of the Class;

23

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: SECOND

1      (h)    There is a community of interest in ensuring that the combined assets
2      and available insurance of Defendants are sufficient to adequately
3      compensate the members of the Class for the injuries sustained; and
4      (i)    Defendants have acted or refused to act on grounds generally
5      applicable to the Class, thereby making final injunctive relief
6      appropriate with respect to the Class as a whole.

<u>**CAUSES OF ACTION**</u>

**FIRST CAUSE OF ACTION**

**(By Plaintiffs McNeely, Brennan and Brickman Individually and**
**on Behalf of the Class(es) against Defendants and Does 1-10)**

**FAILURE TO PAY MINIMUM WAGES AND OVERTIME COMPENSATION**
**[Labor Code §§ 204, 510, 558, 1194, and 1197, 1197.1, and 1198]**

71.    Plaintiffs McNeely, Brennan and Brickman reallege and incorporate by this reference, all paragraphs of this TAC and the previously filed complaints in this action.

72.    Plaintiffs McNeely, Brennan and Brickman allege that CVS willfully and intentionally violated the Labor Code by failing to adequately compensate them and other current or former pharmacy employees for all hours worked.

73.    Labor Code § 204 establishes the fundamental right of all employees in the state of California to be paid wages in a timely fashion for their work.

74.    Section 1197 of the Labor Code provides, "[t]he minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."

75.    Pursuant to California law, an employer must pay each employee "not less than the applicable minimum wage for all hours worked in the payroll period, whether the remunerations is measured by time, piece, commission, or otherwise." *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 44.

76.    Labor Code § 510(a) provides:

24
THIRD AMENDED COMPLAINT
17-cv-05803-WHA

| Deleted: s |
| Deleted: S |
| Deleted: , the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017 |
| Deleted: s |
| Deleted: her |
| Deleted: / / /¶ |
| Deleted: SECOND |

Eight hours of labor constitutes a day's work. <u>Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweeks shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.</u>  In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work. (Emphasis added.)

77.     An employee may not waive his or her right to overtime compensation and any agreement by the employee to accept less than the statutorily required rate is unenforceable as a matter of law. *Early v. Superior Court* (2000) 79 Cal.App.4th 1420, 1430.

78.     Labor Code § 1194(a) states:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

79.     Labor Code § 558(a) further provides:

Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

25

Deleted: SECOND

80.     As a policy, practice, guideline and/or procedure CVS requires all pharmacy employees to participate in regular training. CVS allegedly permits pharmacy employees to complete their training during scheduled shifts or from a remote location by using provided log-in credentials. However, when training is completed off-the-clock, the pharmacy employee's time is not automatically recorded. CVS management must manually enter any training time completed off-the-clock.

81.     CVS has a policy, practice, guideline and/or procedure of instructing and/or requiring store managers to only compensate pharmacy employees for the estimated time for completion of training instead of the actual time spent completing the training. Since, CVS requires store managers to limit their labor costs, CVS's policies, practices, and/or procedures serve as a disincentive for store managers to properly compensate pharmacy employees for their training time.  As a result, pharmacy employees are not compensated the legal minimum wage for all or some of the training time that occurs off-the-clock, and/or at the applicable rate of overtime.

82.     As described herein, CVS has a policy, practice, guideline and/or procedure of limiting the number of available work hours, based on performance from the prior year. CVS instructs its store managers to not go over the set amount of available work hours. As a result, pharmacy employees were often instructed and expected to work off the clock before and after their scheduled shifts, or during their meal and/or rest periods to meet the needs of the pharmacy. If a pharmacy employee refused to work off the clock, the pharmacy employee was often disciplined by having his or her hours cut.

83.     CVS has intentionally created a common scheme and practice to deter pharmacy employees from reporting and being paid for all hours worked.

84.     At all relevant times, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees worked more than eight

26

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

**Deleted:** SECOND

1  hours in a single workday and/or more than forty hours in a workweek due CVS's
2  mandatory training requirements and limited staffing practice. CVS knowingly
3  failed to compensate pharmacy employees for all hours worked, and/or the
4  applicable overtime in violation of the Labor Code.
5      85.     By virtue of CVS's unlawful failure to compensate Plaintiff McNeely,
6  Plaintiff Brennan, Plaintiff Brickman and current or former pharmacy employees for
7  their time worked, pharmacy employees have suffered, and will continue to suffer,
8  damages in amounts which are presently unknown to them, but which exceed the
9  jurisdictional limits of this Court and which will be ascertained according to proof at
10  trial.
11      86.     Having received less than the legal minimum wage and/or applicable
12  rate of overtime compensation, Plaintiff McNeely, Plaintiff Brennan, Plaintiff
13  Brickman and other current or former pharmacy employees are entitled to, and now
14  seek to recover all wages owed, penalties, including penalties available under Labor
15  Code § 558, as well as interest, reasonable attorneys' fees and costs pursuant to
16  Labor Code § 1194.
17      87.     Plaintiffs McNeely, Brennan and Brickman, on behalf of themselves
18  and other current or former pharmacy employees, also requests further relief as
19  described in the below prayer.
20  / / /
21  / / /
22  / / /
23              **SECOND CAUSE OF ACTION**
24      **(By Plaintiffs McNeely, Brennan and Brickman Individually and**
25      **on Behalf of the Class(es) against Defendants and Does 1-10)**
26  **FAILURE TO PROVIDE LEGALLY COMPLIANT MEAL PERIODS**
27      **OR COMPENSATION IN LIEU THEREOF**
28              **[Labor Code §§ 226.7 and 512]**

27
THIRD AMENDED COMPLAINT                    17-cv-05803-WHA

**Deleted:** herself

**Deleted:** SECOND

88.   Plaintiffs McNeely, Brennan and Brickman reallege and incorporate by this reference, all paragraphs of this TAC and the previously filed complaints in this action.

89.   Labor Code § 512(a) provides:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived. (Emphasis added.)

90.   In pertinent part, Labor Code § 226.7(c) provides:

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for workday that the meal or rest or recovery period is not provided.

91.   Under California law, the meal period requirement is generally satisfied if the employee: (a) has at least 30 minutes uninterrupted; (b) is free to leave the premises; and (c) is relieved of all duty for the entire period. *See Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1036 [citing DLSE Opn. Letter No. 1996.07.12 (July 12, 1996) p.1].

92.   At all relevant times, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees were typically scheduled to work an eight-hour day.

28

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

---

**Deleted:** s

**Deleted:** S

**Deleted:** , the First Amended Complaint filed on September 5, 2017, and Complaint filed on August 3, 2017

**Deleted:** SECOND

93.     Plaintiffs McNeely, Brennan and Brickman allege that they and other current or former pharmacy employees typically did not receive legally compliant meal periods.

94.     Plaintiffs McNeely, Brennan and Brickman allege that they and other current or former employees were directed to work through their meal periods to meet the needs of the pharmacy.

95.     Meal periods that are not free from all duty and/or are less than thirty (30) minutes violate California law.

96.     Plaintiffs McNeely, Brennan, Brickman believe that CVS knew or should have known that they and other current or former pharmacy employees were not receiving legally compliant meal periods because (a) various managers, supervisors, and personal saw pharmacy employees working during their meal periods; (b) LEARNet showed that pharmacy employees were completing training while they were clocked out for lunch, (c) the work accomplished could not have been completed in the number of documented hours; and (d) Plaintiffs complained to their superiors about not receiving legally compliant meal periods.

97.     Additionally, due to California regulations which require a pharmacist to be on the premises at all times and CVS's policy, practice, guideline and/or procedure of only scheduling on pharmacist on duty for a period of four to six hours, often times pharmacists, were not provided with the opportunity to take a duty-free meal period, as they were often on call and/or unable to leave the premises. As such, pharmacists were not provided with legally compliant meal periods.

98.     Plaintiffs McNeely, Brennan and Brickman further allege that they and other current or former pharmacy employees did not receive a second meal period when they worked more than ten hours.  Plaintiffs McNeely, Brennan, and Brickman contend that this largely resulted when pharmacy employees worked off the clock, as described herein.

Deleted: s
Deleted: she

Deleted: s
Deleted: she

Deleted: s
Deleted: she

Deleted: McNeely
Deleted: her

Deleted: s
Deleted: she

Deleted: s

Deleted: SECOND

99.   CVS failed to pay Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees the required premium wage for each noncompliant meal period, as required by California law.

100.   Due to CVS's unlawful conduct, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees suffered, and will continue to suffer, damages in an amount which is presently unknown, but which exceeds the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

101.   Pursuant to Labor Code § 226.7(c) and the relevant IWC Wage Orders, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees are entitled to, and seek to, recover the full amount of unpaid premium wages for noncompliant meal periods.

102.   Pursuant to Labor Code § 218.6, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees are entitled to, and seek to, also recover prejudgment interest on the amount of premium wages owed.

103.   Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees are entitled to, and seek to, recover reasonable attorneys' fees as permitted by Labor Code § 218.5.

104.   Plaintiffs McNeely, Brennan and Brickman, on behalf of themselves and other current or former pharmacy employees, requests further relief as described in the below prayer.

/ / /

**THIRD CAUSE OF ACTION**

**(By Plaintiffs McNeely, Brennan and Brickman Individually and**

**on Behalf of the Class(es) against Defendants and Does 1-10)**

**FAILURE TO PROVIDE LEGALLY COMPLIANT REST PERIODS**

**OR COMPENSATION IN LIEU THEREOF**

30

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: herself

Deleted: SECOND

**[Labor Code § 226.7]**

105.   Plaintiffs McNeely, *Brennan and Brickman* reallege and incorporate by this reference, all paragraphs of this TAC *and the previously filed complaints in this action.*

106.   In pertinent part, Labor Code § 226.7 provides:

> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and health.

> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Divisor of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for workday that the meal or rest or recovery period is not provided.

107.   At all relevant times, Plaintiff McNeely, *Plaintiff Brennan, Plaintiff Brickman* and other current or former pharmacy employees were typically scheduled to work an eight-hour work day.

108.   Plaintiffs McNeely, *Brennan and Brickman* allege that *they* and other current or former pharmacy employees regularly did not receive off-duty rest periods despite CVS's written policy because of busy nature of the pharmacy and the pressure by CVS to meet the stores goals.

109.   Additionally, pharmacists were also unable to take off-duty rest periods due to CVS's policy of only scheduling one pharmacist on duty for a period of four to six hours and California regulations, which require a pharmacist to always be on the premises.

110.   CVS did not compensate Plaintiff McNeely, *Plaintiff Brennan, Plaintiff Brickman* and other current or former pharmacy employees the required premium wage for each noncompliant rest period, as required by California law.

31
*THIRD* AMENDED COMPLAINT

17-cv-05803-WHA

---

Deleted: s

Deleted: S

Deleted: , the First Amended Complaint filed on September 5, 2017, and Complaint filed on August 3, 2017

Deleted: / / /

Deleted: s

Deleted:  she

Deleted: SECOND

111.   Plaintiffs McNeely, Brennan and Brickman assert that CVS knew or should have known that they and other current or former pharmacy employees were not receiving adequate rest periods due to the busy nature of the pharmacy, production, and staffing.

112.   As a result of CVS's unlawful conduct, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees suffered, and will continue to suffer, damages in an amount which is presently unknown, but which exceeds the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

113.   According to Labor Code § 226.7(c) and the relevant IWC wage orders, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees are entitled to, and seek to, recover the full amount of unpaid premium wages for noncompliant rest periods.

114.   Pursuant to Labor Code § 218.6, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees are entitled to, and seek to, also recover prejudgment interest on the amount of premium wages owed.

115.   Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees are entitled to, and seek to, recover reasonable attorneys' fees and costs as permitted by Labor Code § 218.5.

116.   Plaintiffs McNeely, Brennan and Brickman, on behalf of themselves and other current or former pharmacy employees, requests further relief as described in the prayer below.

**FOURTH CAUSE OF ACTION**

**(By Plaintiffs McNeely, Brennan and Brickman Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

**FAILURE TO PAY WAGES OWED**

**[Labor Code §§ 201, 202, and 203]**

32

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted:
Deleted: s
Deleted: she
Deleted: herself
Deleted: SECOND

117.   Plaintiffs McNeely, Brennan and Brickman reallege and incorporate by this reference all paragraphs of this TAC and the previously filed complaints in this action.

118.   The term "wages" is defined in Labor Code § 200(a) to include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time…or other method of calculation. Subsection (b) further defines "labor" to include all "labor, work or service whether rendered or performed under contract, subcontract, partnership…"

119.   Labor Code § 201(a) provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

120.   According to Labor Code § 202(a):

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of mailing shall constitute the date of payment for purposes of the requirement to provide payment with 72 hours of the notice of quitting.

121.   Labor Code § 203 further provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereof is commenced; but the wages shall not continue for more than 30 days.

33
THIRD AMENDED COMPLAINT
17-cv-05803-WHA

Deleted: s

Deleted: S

Deleted: , the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017

Deleted: / / /

Deleted: SECOND

122.   CVS's common scheme of limiting work hours and mandating training, knowingly prevented pharmacy employees from being compensated for all time worked.

123.   Plaintiffs McNeely, Brennan and Brickman allege that CVS has a policy, practice and/or procedure of failing to timely pay all wages owed upon termination of the employment relationship.  They further allege that CVS has also failed to pay the required waiting time penalties. For example, Plaintiff Brickman was not immediately provided with her final wages upon being terminated on or about March 8, 2018.  Plaintiff Brickman, did not receive her wage until about six days later.  Plaintiff Brickman's wages did not include all wages owed nor did it include the required waiting time penalties.

124.   A number of pharmacy employees, including Plaintiffs McNeely, Plaintiff Brennan and Plaintiff Brickman, are no longer employed by CVS.  To date, CVS has yet to pay the wages owed to them as required under California law.

125.   As a consequence of CVS's willful and deliberate refusal to tender such wages, affected pharmacy employees are entitled to, and therefore seek a maximum of 30 days' wages at their daily rate of pay as a waiting time penalty. *See* Labor Code § 203.

126.   Plaintiffs McNeely, Brennan and Brickman, on behalf of themselves and other pharmacy employees, also request further relief as described in the below prayer.

/ / /

/ / /

/ / /

/ / /

**FIFTH CAUSE OF ACTION**

**(By Plaintiffs McNeely, Brennan and Brickman Individually and**

**on Behalf of the Class(es) against Defendants and Does 1-10)**

34

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

**Deleted:** <#>¶

**Deleted:** herself

**Deleted:** s

**Deleted:** SECOND

**FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

**[Labor Code §§ 226 and 226.3]**

127.   Plaintiffs McNeely, Brennan and Brickman reallege and incorporate by this reference, all paragraphs of this TAC and the previously filed complaints in this action.

128.   Labor Code § 226 states in pertinent part:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee… (4) all deductions… (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid… (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during each pay period and the corresponding number of hours worked at each hourly rate by the employee…"

129.   Labor Code § 226(e)(1) further provides:

> An employee suffering injury as a result of knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

130.   Labor Code § 266(h) states "an employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorneys' fees."

131.   An injury occurs where the employer fails to provide accurate information and the employee cannot "promptly and easily determine" the total number of hours worked or the "applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." Labor Code § 226(a)(9)-(e)(2)(B)(i).

35

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

---

Deleted: s

Deleted: S

Deleted: , the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017

Deleted: //¶ //¶

Deleted: SECOND

132.   Labor Code § 226(e)(2)(c) explains that the phrase "promptly and easily determine" means that "a reasonable person would be able to readily ascertain the information without reference to documents or information."

133.   CVS's policies, practices, and procedures related to training, staffing, and payroll records has resulted in wage statements which do not accurately reflect the gross and/or net wages earned since, CVS has not paid pharmacy employees for all time worked. Additionally, the wage statements and subsequent records do not accurately reflect all time worked, since off the clock time was not properly tracked and/or entered into the payroll system.  Thus, the total hours worked listed on the wage statements are inaccurate. The wage statements also do not properly reflect premium payments received for noncompliant meal and rest periods. As a result, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees were unable to readily ascertain from their wage statements whether they were properly compensated.

134.   Pursuant to California law, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees are deemed to have suffered injury as a result of CVS's knowing and intentional failure to provide them with accurate itemized wage statements.

135.   According to Labor Code § 226(e), Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees are entitled to and seek to recover liquidated damages in the amount of $50.00 for the initial violation and $100.00 for each subsequent violation per employee, not to exceed $4,000.00.

136.   Additionally, pursuant to Labor Code § 226(h), Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees are entitled to, and therefore seek, injunctive relief in order to ensure that CVS complies with Labor Code § 266.

**Deleted:** SECOND

137.   Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees are entitled to, and seek, attorneys' fees and costs provided by Labor Code § 266(h).

138.   Plaintiffs McNeely, Brennan and Brickman, on behalf of herself and other current or former pharmacy employees, also request further relief as described in the below prayer.

**SIXTH CAUSE OF ACTION**

**(By Plaintiffs McNeely, Brennan and Brickman Individually and on Behalf of the Class(es) against Defendants and Does 1-10)**

**FAILURE TO MAINTAIN ACCURATE RECORDS**

**[Labor Code §§ 226(a), 226.3, and 1174]**

139.   Plaintiffs McNeely, Brennan and Brickman reallege and incorporates by this reference, all paragraphs of this TAC and the previously filed complaints in this action.

140.   In pertinent part Labor Code § 226(a) states "a copy of the statement and the record of deductions shall be kept on file by the employer for at least three years…"

141.   Labor Code § 1174(d) states:

> "[e]very person employing labor in this state shall keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by commission, but in case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned."

142.   Plaintiffs McNeely, Brennan and Brickman allege that CVS intentionally and willfully failed to maintain accurate payroll records showing the number of hours worked each day by Plaintiffs and other current or former

37

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

---

Deleted: s

Deleted: S

Deleted: , the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017

Deleted: s

Deleted: SECOND

1   pharmacy employees, including the time spent engaged in training and working off

2   the clock, because CVS knew or should have known that pharmacy employees were

3   working off the clock as described herein.

4        143.   As a result of CVS's deliberate and unlawful conduct, Plaintiff

5   McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former

6   pharmacy employees suffered, and continue to suffer, injuries and damages, because

7   CVS has failed to abide by the requirements outlined in the Labor Code.

8        144.   More specifically, Plaintiff McNeely, Plaintiff Brennan, Plaintiff

9   Brickman and other current or former pharmacy employees have been injured

10   because they were denied both their legal right and protected interest, in having

11   accurate and complete payroll records available to them.

12        145.   Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other

13   current or former pharmacy employees are entitled to and do seek the damages

14   outlined in Labor Code § 226.7(e)(1).

15        146.   Plaintiffs McNeely, Brennan and Brickman, on behalf of themselves

16   and other current or former pharmacy employees, also request further relief as

17   described in the below prayer.

18                      **SEVENTH CAUSE OF ACTION**

19        **(By Plaintiffs McNeely, Brennan and Brickman Individually and**

20        **on Behalf of the Class(es) against Defendants and Does 1-10)**

21        **FAILURE TO REIMBURSE FOR NECESSARY WORK EXPENSES**

22                       **[Labor Code §§ 2800 and 2802]**

23        147.   Plaintiffs McNeely, Brennan, and Brickman reallege and incorporate by

24   this reference, all paragraphs of this TAC and the previously filed complaints in this

25   action.

26        148.   Pursuant to Labor Code §§ 2800 and 2802, an employer must reimburse

27   employees for all necessary expenditures incurred by the employee in direct

28   consequence of the discharge of his or her job duties or in direct consequence of his

                                      38
                         THIRD AMENDED COMPLAINT
                                                          17-cv-05803-WHA

**Deleted:** s

**Deleted:** S

**Deleted:** , the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017

**Deleted:** SECOND

1   or her job duties or in direct consequence of his or her obedience to the directions of

2   the employer.

3       149.   Plaintiff McNeely, Brennan, Brickman and other current and former

4   pharmacy employees incurred necessary business-related expenses and costs, such

5   as use of a personal computer or device, use of internet, licensing, background

6   check, and travel.

7       150.   CVS has intentionally and willfully failed to reimburse Plaintiff

8   McNeely, Plaintiff Brickman and other current or former pharmacy employees for

9   all necessary business-related expenses and costs, even though CVS knew or had

10  reason to know that employees were using their personal computers/devices and

11  internet for work related activities.

12      151.   CVS also knew or had reason to know that pharmacy technicians were

13  paying for the cost of their license, background checks, and travel, because they

14  were requirements imposed by CVS.

15      152.   Plaintiff McNeely, Brennan, Brickman and other current or former

16  pharmacy employees are entitled to recover, and therefore seek to recover, from

17  CVS, their business-related expenses and costs incurred during the course and scope

18  of their employment, in addition to interest accrued from the date on which the

19  employee incurred the necessary expenditures at the same rate as judgments in civil

20  actions in the state of California.

21      153.   Plaintiff McNeely, Brennan and Brickman, on behalf of themselves and

22  other current or former pharmacy employees, also requests further relief as

23  described in the below prayer.

24  / / /

25  / / /

26                **EIGHTH CAUSE OF ACTION**

27      **(By Plaintiffs McNeely, Brennan and Brickman Individually and**

28      **on Behalf of the Class(es) against Defendants and Does 1-10)**

---

39

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: SECOND

**UNFAIR BUSINESS PRACTICES**

**[Bus. & Prof. Code §§ 17200 *et seq.*]**

154.   Plaintiff McNeely, Brennan and Brickman reallege and incorporate by this reference, all paragraphs of this TAC and the previously filed complaints in this action.

155.   As codified in Bus. & Prof. Code §§ 17200 *et seq.*, California's Unfair Competition Law ("UCL") broadly prohibits "any unlawful, unfair or fraudulent business act or practice."

156.   The UCL permits a cause of action to be brought if a practice violates some other law.  In effect, the "unlawful" prong of the UCL makes a violation of the underlying law a per se violation of Bus. & Prof. Code § 17200.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180. Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for a § 17200 "unlawful" violation. *Farmers Ins. Exch. v. Superior Court* (1992) 2 Cal.4th 377, 383.

157.   Under the UCL, a practice may be "unfair" even if some other law does not specifically proscribe it. *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 20 Cal.4th 1134, 1143 [internal citations omitted]. Pursuant to the California Supreme Court, the "unfair" standard is intentionally broad to allow courts maximum discretion in prohibiting new schemes to defraud. *Cel-Tech Commc'ns, Inc., supra*, 20 Cal.4th at 180-181.

158.   A business act or practice is deemed "fraudulent" under Bus. & Prof. Code § 17200 where "members of the public are likely to be deceived." *Blakemore v. Superior Court*, (2005) 129 Cal.App.4th 36, 49. A showing of actual deception, reasonable reliance, or damages is not required. *Id.* The fraudulent prong may be used to attack the deceptive manner in which otherwise lawful contract terms are presented to an individual. *Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253. As such, even a true statement may be unlawful under §

40

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: s

Deleted: S

Deleted: , the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 7, 2017

Deleted: SECOND

1   17200 if it is "couched in such a manner that is likely to mislead or deceive…, such

2   as by failing to disclose other relevant information." *Id.*

3       159.   As discussed herein, CVS's business practices violate all three prongs

4   of California's UCL.

5                                   <u>Unlawful</u>

6       160.   As described herein, CVS violated the Labor Code by refusing to

7   properly compensate pharmacy employees for all time worked.  Failure to

8   compensate pharmacy employees for all time worked is a clear violation of

9   California law, and thus a per se violation of the UCL. *Cel-Tech Commc'ns, Inc.,*

10  *supra*, 20 Cal.4th at 180. Additionally, CVS failed to compensate pharmacy

11  employees for non-compliant meal and rest periods as provided by California law.

12  CVS's failure to promptly pay wages owed upon termination, failure to furnish

13  accurate wage statements, failure to reimburse for necessary business expenses, as

14  well as failing to maintain accurate records are also violations of California law.

15  CVS has therefore engaged in unlawful business practices pursuant to Bus. & Prof.

16  Code § 17200.

17                                   <u>Unfair</u>

18      161.   CVS's practice of minimizing available work hours and staff, as well as

19  requiring pharmacy employees to work off the clock is an inherently unfair practice

20  because it knowingly prohibits pharmacy employees from being compensated for all

21  hours worked.

22      162.   CVS's practice of failing to provide off-duty meal and rest periods to its

23  pharmacy employees, is an unfair practice because it knowingly strips pharmacy

24  employees of the rights and protections afforded to them by the Labor Code.

25      163.   CVS's practice of failing to pay prompt wages upon termination, failing

26  to provide itemized and accurate wage statements, and failing to reimburse for

27  necessary business expenses are also unfair practices because such practices are

28  contrary to the Labor Code, as well as unethical.

41

<u>THIRD</u> AMENDED COMPLAINT

17-cv-05803-WHA

**Deleted:** SECOND

<u>Fraudulent</u>

164.   CVS's practice of providing Plaintiff McNeely, Brennan and Brickman and pharmacy employees with inaccurate and incomplete wage statements is not only unlawful but constitutes a fraudulent business practice under the UCL. This is particularly true as Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other pharmacy employees are likely to be, and actually are deceived as to their earned wages because they are unable to determine from their wage statements whether or not they were paid for all work performed.

165.   CVS's practice of failing to maintain accurate records is also a fraudulent business practice because the lack of records intentionally misled Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other pharmacy employees as to their total hours worked and total wages earned.

166.   As a direct and proximate result of CVS's unlawful, unfair, and fraudulent business practices, Plaintiff McNeely, Plaintiff Brennan, Plaintiff Brickman and other current or former pharmacy employees have suffered injury-in-fact and have lost wages rightfully owed to them.

167.   Through their unlawful, unfair, and fraudulent conduct, CVS has been unjustly enriched by receiving and continuing to receive benefits and profits at the expense of pharmacy employees. Therefore, pursuant to Bus. & Prof. Code § 17200, CVS should be enjoined from this activity and made to disgorge all ill-gotten gains and restore Plaintiffs McNeely, Brennan and Brickman and other current or former pharmacy employees the wages wrongfully withheld from them.

168.   The unlawful, unfair, and fraudulent conduct alleged herein has continued, and there is no indication that CVS will refrain from such activity in the future. This is especially true since CVS has purposefully created an atmosphere that deters the accurate reporting of work time. Plaintiffs McNeely, Brennan and Brickman believe and allege that if CVS is not enjoined from the conduct described herein, they will continue to violate California law at the expense of its pharmacy

42
THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: a

Deleted: s

Deleted: s

Deleted: SECOND

1  employees.  Accordingly, Plaintiffs McNeely, Brennan and Brickman request that

2  the Court issue a preliminary and permanent injunction against CVS.

3      169.  Plaintiffs McNeely, Brennan and Brickman, on behalf of themselves

4  and other current or former pharmacy employees, also request further relief as

5  described in the below prayer.

6                     **NINTH CAUSE OF ACTION**

7   **(By Plaintiffs Cabrera and Telahun in their Representative Capacity**

8                  **against Defendants and Does 1-10)**

9          **PRIVATE ATTORNEYS GENERAL ACT OF 2004**

10                  **(Labor Code §§ 2698 *et seq.*)**

11     170.  Plaintiffs Cabrera and Telahun reallege and incorporate by this

12  reference, all paragraphs of this TAC and the previously filed complaints in this

13  action.

14     171.  The Private Attorneys General Act of 2004 ("PAGA") expressly

15  provides that any provision of the Labor Code allowing for a civil penalty to be

16  assessed and collected by the Labor and Workforce Development Agency

17  ("LWDA"), or any of its departments, division, commissions, boards, agencies, or

18  employees, for a violation of the Labor Code may be recovered through a civil

19  action brought by an aggrieved employee on behalf of himself or herself, and other

20  current or former employees. These civil penalties are in addition to any other relief

21  available under the Labor Code, and pursuant to Labor Code § 2699(i), must be

22  allocated seventy-five percent (75%) to the LWDA and twenty-five percent (25%) to

23  the aggrieved employees.

24     172.  During all, or a portion of, the one-year period before Plaintiffs Cabrera

25  and Telahun filed notice of their claims with the LWDA. Plaintiffs Cabrera and

26  Telahun and each of the other current or former employees they represent were

27  employed by Defendants in the state of California.

28

43
THIRD AMENDED COMPLAINT
17-cv-05803-WHA

Deleted: s

Deleted: herself

Deleted: S

Deleted: , the First Amended Complaint filed on September 5, 2017, and the Complaint filed on August 3, 2017

Deleted: SECOND

173.   Plaintiff Cabrera, Plaintiff Telahun and other current or former pharmacy employees are "aggrieved employees" under PAGA, as they were employed by Defendants within the past year and suffered one or more violations of the Labor Code.

174.   Plaintiffs Cabrera and Telahun have complied with the notice requirements outlined in Labor Code § 2699.3.  On June 22, 2016, Plaintiff Cabrera submitted notice to the LWDA and Defendants informing them of CVS's alleged Labor Code violations pursuant to PAGA. *See* Exhibit 1. The LWDA had until August 28, 2017 to provide notice of whether it intended to investigate the alleged violations. As of the date of this SAC, the LWDA has not provided notice of whether it intends to investigate the alleged violations. Therefore, pursuant to Labor Code § 2699.3, Plaintiff Cabrera has the right to, and does seek to pursue his claims under PAGA in a representative capacity.

175.   On August 22, 2017, Plaintiffs Cabrerea and Telahun submitted an amended notice which included Mr. Telahun as an additional representative and included additional facts and theories to support the alleged Labor Code violations, to the LWDA. *See* Exhibit 2. The LWDA has 65 days from the date of submission to notify the parties whether it intends to investigate. As of the date of this SAC, the LWDA has not provided notice of whether it intends to investigate the alleged violations.  Therefore, pursuant to Labor Code § 2699.3, Plaintiffs Cabrera and Telahun have the right to, and do seek to pursue their claims under PAGA in a representative capacity.

176.   On June 25, 2018, Plaintiffs Cabrera, Telahun, and Brickman submitted a second amended notice to the LWDA, which included Ms. Brickman as an additional representative and included additional facts and theories to support the alleged Labor Code violations. *See* Exhibit 3. The LWDA has 65 days from the date of submission to notify the parties whether it intends to investigate. In the event, the

Deleted: SECOND

1  LWDA elects not to investigate or not respond to the notice, Plaintiffs will seek to
2  amend the complaint to include Ms. Brickman as a PAGA representative.

3      177.  As set forth herein, CVS has committed, and continues to commit,
4  numerous violations for which the Labor Code entitles Plaintiffs Cabrera and
5  Telahun, in their representative capacity, to recover, on behalf of themselves and all
6  other current or former employees, and the general public, attorneys' fees and costs,
7  as well as statutory penalties against CVS for its Labor Code violations.

8      178.  Plaintiffs Cabrera and Telahun, in their representative capacity, seek to
9  recover civil penalties pursuant to PAGA for violations of the following Labor Code
10  provisions for the reasons described herein:

11      (a)  Failure to pay minimum wages and overtime compensation in
12          violation of Labor Code §§ 204, 510, 1194, 1197, 1197.1, and
13          1198 and relevant IWC Wage Orders;

14      (b)  Failure to provide legally compliant meal periods or
15          compensation in lieu thereof in violation of Labor Code §§ 226.7
16          and 512 and relevant IWC Wage Orders;

17      (c)  Failure to provide legally compliant rest periods or compensation
18          in lieu thereof in violation of Labor Code § 226.7 and relevant
19          IWC Wage Orders;

20      (d)  Failure to pay wages owed in violation of Labor Code §§ 201 –
21          203;

22      (e)  Failure to furnish accurate itemized wage statements in violation
23          of Labor Code §§ 226 and 226.3 and relevant IWC Wage Orders;

24      (f)  Failure to maintain accurate records in violation of Labor Code §§
25          226, 226.3, and 1174 and relevant IWC Wage Orders;

26      (g)  Failure to reimburse for necessary work expenses in violation of
27          Labor Code §§ 2800 and 2802.

28

Deleted: SECOND

179. Labor Code § 226.3 imposes a civil penalty of $250 per pharmacy employee per violation and $1,000 per pharmacy employee for each subsequent violation of Labor Code § 226(a). Therefore, Plaintiff Cabrera, Plaintiff Telahun and other current or former employees are entitled to and seek the described civil penalty.

180. Labor Code § 2699(f) imposes a civil penalty of $100 per pay period, per pharmacy employee for initial violation, and $200 per pay period, per pharmacy employee for each subsequent violation for all Labor Code provisions for which a civil penalty is not specifically provided, including Labor Code §§ 201, 202, 203 204, 226, 226.3, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2800, 2802. Plaintiff Cabrera, Plaintiff Telahun and other current or former employees are entitled to, and therefore seek the above described civil penalty.

181. Lastly, Labor Code § 2699(g)(1) provides that an employee who prevails in a civil action brought pursuant to PAGA shall be entitled to an award of reasonable attorneys' fees and costs. As such, Plaintiff Cabrera and Plaintiff Telahun are entitled to and therefore seeks attorneys' fees and costs.

182. Plaintiffs Cabrera and Telahun, in their representative capacity, request further relief as described in the below prayer.

**PRAYER FOR RELIEF**

Plaintiffs, in their respective capacities, pray for judgment against Defendants as follows:

1. For an order determining that this action may be maintained as a class action with Plaintiffs McNeely, Brennan and Brickman as the class representatives;

2. For the attorneys appearing on the above caption to be named class counsel;

46

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: SECOND

3.   For an order determining that this action may be maintained as a representative action with Plaintiffs Cabrera and Telahun as the representatives;

4.   For all minimum wages and overtime compensation owed pursuant to Labor Code §§ 510, 1194, 1197.1, and/or other applicable law;

5.   For premium wages, pursuant to Labor Code § 226.7 and/or other applicable law;

6.   For waiting time penalties pursuant to Labor Code § 203 and/or other applicable law;

7.   For damages, pursuant to Labor Code § 226 and/or other applicable law;

8.   For unreimbursed business expenses, pursuant to Labor Code §§ 2800 and 2802 and/or other applicable law;

9.   For all liquidated damages, pursuant to Labor Code §§ 226(e), 1194.4(a), 1197.1, and/or other applicable law;

10.  For civil penalties, pursuant to Labor Code §§ 558, 1197.1, and/or other applicable law;

11.  For PAGA civil penalties pursuant to Labor Code §§ 2698 *et seq.*;

12.  For injunctive relief, pursuant to Labor Code § 266(h), Bus. & Prof. Code § 17203, and/or other applicable law;

13.  For restitution for Defendants' unfair, unlawful, and fraudulent business practices;

14.  For reasonable attorneys' fees and costs of suit pursuant to Labor Code §§ 266(e)(1), 2699(g), 1194, and/or other applicable law;

15.  For pre-judgment and post-judgment interest as provided by California law;

16.  For appropriate equitable relief; and

47
THIRD AMENDED COMPLAINT
17-cv-05803-WHA

**Deleted:** SECOND

17. For all such other and further relief, the Court may deem just and proper.

Dated: _____, 2018          **CLARK LAW GROUP**


By: _____
          R. Craig Clark
          Monique R. Rodriguez
          *Attorneys for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: _____, 2018          **CLARK LAW GROUP**


By: _____
          R. Craig Clark
          Monique R. Rodriguez
          *Attorneys for Plaintiffs*

48

THIRD AMENDED COMPLAINT

17-cv-05803-WHA

Deleted: SECOND

# Exhibit 3

# CLG Clark Law Group

• 205 West Date Street • San Diego, California 92101 •
• Phone: (619) 239-1321 • Facsimile: (888) 273-4554 •
• www.clarklawyers.com •

June 25, 2018

<u>Via Online Filing</u>

California Labor and Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, CA 94612

**Re:**   ***Sigfredo Cabrera et al. v. CVS Pharmacy, Inc., et al.***
**LWDA-CM-259668-17**

Dear PAGA Administrator,

The purpose of this correspondence is to inform you that Sigfredo Cabrera, Enko Telahun, and Lynn Brickman (collectively "Injured Parties") on behalf of themselves and all other current or former pharmacists, pharmacy managers, pharmacy service technicians, and pharmacy sales associates (collectively "pharmacy employees"), intend to assert their legal rights granted to them by the California Labor Code Private Attorneys General Act of 2004, as set forth in California Labor Code § 2698 et seq. ("The Act"). This amended letter serves to satisfy the notice requirements of The Act, as it includes the facts and theories to support the alleged violations, and will also be sent to CVS Health, CVS Rx Services, Inc., CVS Pharmacy, Inc., Garfield Beach CVS, LLC, Longs Drug Stores California, LLC, CVS 5828 CA, LLC, CVS 9674 CA, LLC, Target Corporation (collectively "CVS") through their agent for service of process via certified mail. By sending this correspondence, the Injured Parties are complying with The Act's statutory notice requirement.

## Factual Statement and Theories of Labor Code Violations

Mr. Cabrera was employed by CVS as an hourly non-exempt pharmacy service associate and a pharmacy technician at three different stores in Oakland, San Leandro and Palo Alto, California. Mr. Cabrera's employment with CVS began on or about January 2016 and ended on or about January 2017.

Mr. Telahun was employed by CVS as an hourly non-exempt pharmacist and pharmacy manager in the pharmacy department of a CVS store in San Diego, California from about June 2012 until February 2017.

Ms. Lynn Beckman was employed by CVS as an hourly non-exempt pharmacy technician from approximately 2016 to March 8, 2018. Ms. Beckman worked at three CVS locations in Vista, Escondido and South Lake Tahoe, California.

The Injured Parties assert that they and other current or former pharmacy employees were subject to the same policies, practices, and procedures described herein.  The Injured Parties further allege that they and other current or former pharmacy employees

suffered, and current pharmacy employees continue to suffer, the violations listed herein while employed by CVS.

Any and all claims alleged in this notice are asserted on behalf of the Injured Parties and all non-exempt pharmacy employees of CVS in California who have suffered the same or similar violations alleged herein. The Injured Parties also reserve their right to assert any other related claims and theories on behalf of themselves and other current or former pharmacy employees and employees against CVS and/or other persons discovered after the sending of this notice, including those person(s) who have acted as an agent, subsidiary, servant, employee, co-conspirator, alter-ego, and joint venture of CVS, as well as those who concurrently contributed to the various acts and omissions of each and every one of the others, including CVS, in proximately causing the wrongful conduct, harm and/or damages alleged of herein, or was otherwise ratified in each and every one of the acts or omissions complained of herein, and those who are acting within the authority and scope of CVS.

I.   **CVS Failed to Pay Minimum Wages and Overtime Compensation in Violation of Labor Code §§ 204, 510, 1194, 1197, 1197.1 and 1198.**

Labor Code § 204 establishes the fundamental right of all employees in the State of California to be paid wages in a timely fashion for their work. According to Labor Code § 1197 employers are required to pay its employees the fixed minimum wage set by the California Labor Commission. Labor Code § 1198 makes it unlawful to employ persons without compensating them at the rate of pay either time and one half or two times that person's regular rate of pay depending on the number of hours worked.  Accordingly, Labor Code § 510 specifies that any work in excess of eight hours in one workday and any work in excess of 40 hours in any one work week, and the first eight hours worked on the seventh day of work in any one work week shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Labor Code § 1194 permits an employee to recover any unpaid balance of the minimum wage or overtime compensation not paid for all hours worked. Labor Code § 1197.1 requires an employer to pay a civil penalty if it causes an employee to be paid a wage less than the fixed minimum wage.

Off the Clock Training Time

The Injured Parties allege that they and other current or former pharmacy employees are required to participate in mandatory training sessions about once a month.  The training sessions are not required for any state certification, licensing, or regulation. The trainings are typically completed on a web-based system usually referred to as LEARNet, which the Injured Parties believe keeps record of log-in and log-out times, as well as the total amount of time the pharmacy employees spend to complete each training module. As a policy, practice, and/or procedure CVS directs and permits pharmacy employees to complete the requisite trainings while clocked in during a schedule shift. However, due to CVS's staffing policies, the busy nature of the pharmacy, and the culture of deterring overtime, pharmacy employees frequently do not have the time to complete the mandatory training during their scheduled shifts. As a common practice, the mandatory trainings were often completed "off the clock" from remote locations in addition to their eight hours of work.

/ / /

2

Moreover, as a policy, practice, and/or procedure CVS may discipline pharmacy employees for failing to complete the mandated training modules. For example, the Injured Parties have witnessed employee work hours being cut for failing to complete training.

To ensure that pharmacy employees complete their required trainings, as a policy, practice, and/or procedure CVS provides all pharmacy employees with remote access log-in credentials, so that the pharmacy employees may access the web-based training system from a remote location, such as the employee's home. Based on information and belief, the Injured Parties allege that in 2017 CVS modified its policies and practices to restrict access to the web-based system from a remote location without permission.

The web-based training system and CVS's time keeping system are not integrated. Because time worked is largely recorded on store cash registers or by using other software, training conducted "off the clock" must be manually entered by a store manager. As a policy, practice, and/or procedure CVS directs store managers and/or pharmacy managers to use the minimal amount of work hours and employees necessary to operate the store. As a result of CVS's direction and pressure, many store managers and/or pharmacy managers are reluctant to enter the pharmacy employee's actual time spent participating in the mandated training because the training time largely dips into overtime hours. As a result, much if not all the time spent remotely participating in the required training by pharmacy employees is never recorded, or if it is recorded only part of the time spent participating in the training module is recorded. Thus, pharmacy employees are not paid for all the time they spent participating in the mandated training

As a policy, practice, and/or procedure CVS also instructs its store managers and/or pharmacy managers to only enter the predetermined time a training module is expected to take to complete, instead of the actual time spent participating in the training. As a result, even if the pharmacy employee's training time is recorded, often the actual time spent in training is not appropriately entered.

Thus, pharmacy employees are not paid for the actual time they spent participating in the required training. Due to the policies, practices, and/or procedures described above, which deter store managers from accurately recording training time and/or overtime, pharmacy employees were unable to properly record all their time spent participating in required trainings. As a result, the Injured Parties, along with other pharmacy employees were not compensated for all time worked throughout the statutory period in violation of Labor Code §§ 204, 510, 1194, and 1197.

<u>Off the Clock Work Time</u>

The Injured Parties allege that they and other pharmacy employees were often told to work off the clock before and after their scheduled shifts in order to meet the needs of the pharmacy.  As a policy, practice, and/or procedure CVS assigns each store and/or pharmacy department a set amount of work hours based on prescription volume from the previous year. As a policy, practice, and/or procedure CVS instructs its store managers and/or pharmacy managers to not to go over the allotted amount of work hours provided. As a result, pharmacy employees are often instructed to work off the clock.  In Mr. Cabrera's experience, if an employee asked to work off the clock the employee was often disciplined by having his or her hours cut.  As a policy, practice,

and/or procedure CVS would instruct pharmacy employees to clock out, while requiring and expecting them to work longer than their scheduled shifts. Often the pharmacy employees worked more than eight (8) hours a day, and/or forty (40) hours per week. Pharmacy employees, such as the Injured Parties, were not compensated for all time worked throughout the statutory period in violation of Labor Code §§ 204, 510, 1194, and 1197.

## II.  **CVS Failed to Provide Legally Compliant Meal Periods or Compensation in Lieu Thereof in Violation of California Labor Code §§ 226.7 and 512.**

Pursuant to Labor Code § 512, no employer shall employ any person for a work period of more than five (5) hours without providing a meal period of not less than thirty (30) minutes. During this meal period of not less than thirty (30) minutes, the employee is to be completely free of the employer's control and must not perform any work for the employer. If the employee does perform work for the employer during the thirty (30) minute meal period, the employee has not been provided a meal period in accordance with the law. In addition, an employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with another meal period of not less than thirty (30) minutes.

If the employer fails to provide an employee with a meal period, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

The Injured Parties allege that as a policy, practice, and/or procedure CVS required pharmacy employees to clock out for meal period despite the fact that pharmacy employees continued to work through their meal periods in order to meet the needs of the pharmacy and/or to complete the requisite training modules.  The Injured Parties allege that CVS knew or had reason to know that pharmacy employees were working through their meal periods because (1) various managers, supervisors, and personnel saw the pharmacy employees eating and working during their meal periods, (2) LEARNet shows that pharmacy employees were completing trainings, while they were clocked out at lunch, (3) the work accomplished could not have been completed in the number of documented hours, and (4) the Injured Parties complained about not receiving adequate meal periods to his superiors.

Additionally, the Injured Parties, as well as other pharmacy employees, did not receive a second meal period when they worked more than ten hours. This largely resulted when pharmacy employees were working off the clock, as described above.

California regulations provide that a pharmacist must be on the premises at all times and be fully aware of all activities performed by either a pharmacy technician or an intern pharmacist. Mr. Telahun contends that as a policy, practice, and/or procedure CVS schedules only one pharmacist on duty for a period of four to six hours. Due to this scheduling practice, pharmacists, such as Mr. Telahun, were not provided with meal periods that were free of all duty, as he and other pharmacists were on call during their meal periods and/or they were unable to leave the premises. As such, Mr. Telahun and other pharmacist were not provided with legally compliant meal periods.

The Injured Parties and other pharmacy employees were not compensated for noncompliant meal periods throughout the statutory period.  CVS, therefore, violated

4

Labor Code §§ 226.7 and 512.

### III.    CVS Failed to Provide Legally Complaint Rest Periods or Compensation in Lieu Thereof in Violation California Labor Code § 226.7.

Labor Code § 226.7 requires an employer to pay an employee one (1) additional hour of pay at the employee's regular rate of compensation for each work day that a lawful rest period was not provided.

The Injured Parties allege that as a policy, practice, and/or procedure CVS did not provide pharmacy employees with lawful rest periods, despite its written policy. Pharmacy employees, such as the Injured Parties, worked without the opportunity to take a rest period due to the busy nature of the pharmacy and the pressure by CVS to meet the stores goals, as outlined above.

Additionally, due to CVS's scheduling practices, which only provides for one pharmacist to be scheduled for a period of four to six hours, pharmacists, such as Mr. Telahun, were unable to take off-duty rest periods as they were expected to be on-call at all times due to California regulations.

CVS did not compensate the Injured Parties, or other pharmacy employees for noncompliant rest periods throughout the statutory period. Thus, CVS also violated of Labor Code § 226.7.

### IV.    CVS Failed to Pay Wages Owed at Termination in Violation of California Labor Code §§ 201-203.

Pursuant to Labor Code § 201, if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.  Labor Code § 202(a) provides that if an employee does not have a written contract for a definite period and quits his or her employment, the employee's wages are due and payable no later than 72 hours thereafter, unless the employee has given 72-hours previous notice of his/her intention to quit, then the employee is entitled to his/her wages at the time of quitting. If an employer willfully fails to pay an employee in accordance to Labor Code §§ 201 and 202, then the employee's wages shall continue as a penalty form the due date thereof at the same rate until paid or until an action is commenced, however, the wages shall not continue for more than thirty (30) days.

As discussed above, CVS failed to pay its employees for all time worked in violation of the California Labor Code.  As a result, CVS also willfully failed to pay, in a timely manner, wages owed to the Injured Parties, as well as other former pharmacy employees who were discharged from their employment with CVS during statutory period in violation of Labor Code §§ 201-203.

Additionally, the Injured Parties allege that CVS has a policy and practice of failing to timely pay all wages owed upon termination of the employment relationship. For example, upon termination Ms. Beckman was not provided with her final wages upon being notified that she was being terminated from her employment with CVS. In fact, Ms. Beckman was not provided with her final pay check until about six days after her termination.  Moreover, her final pay check did not include waiting time penalties, her earned paid time off, nor the unpaid wages for the violations discussed herein. As such,

CVS has violated and continues to violate California law.

**V.   CVS Failed to Timely Furnish Legally Compliant Wage Statements in Violation of California Labor Code § 226.**

Section 226(a) of the Labor Code requires that CVS provide accurate and itemized wage statements to its employees. Specifically, Labor Code § 226(a) requires that each wage statement show "(1) gross wages earned, (2) total hours worked by the employee... (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than the social security number, (8) the name and address of the legal entity that is the employer...(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate and the corresponding number of hours worked at each hourly rate by the employee..."

Labor Code § 226(b) further requires the employee to keep the information required by Labor Code § 226(a) and afford current and former employees the right to inspect or copy records pertaining to their employment.

CVS knowingly and intentionally failed to comply with Labor Code § 226 on each and every wage statement provided to the Injured Parties, as well as other current or former pharmacy employees. The Injured Parties allege that their wage statements did not include the gross and/or net wages earned because CVS failed to properly compensate them for all hours worked. The Injured Parties also allege that CVS failed to maintain accurate records of their gross and/or net wages earned because CVS failed to properly compensate them for all hours worked. Thus, the gross and/or net wages reflected on their wage statements, as well as other pharmacy employees' statements, were inaccurate in violation of Labor Code § 226.

Additionally, pursuant to CVS's policy, practice and/or procedure of not permitting employees to record their actual time worked, as described herein, CVS knowingly and intentionally failed to keep accurate records of the total hours worked. As indicated herein, the training system is not integrated into the time keeping system, as such pharmacy employee time spent participating in training was not properly recorded as time worked.

Moreover, CVS knowingly and intentionally failed to itemize the total hours worked on pharmacy employee wage statements. As a result, the total hours listed on his wage statement were inaccurate in violation of Labor Code § 226.

Furthermore, CVS failed to include the employee's name and the last four digits of their social security number and/or employee identification number on each of the wage statements provided to the Injured Parties, and other current or former pharmacy employees in violation of Labor Code § 226.

The wage statements provided by CVS also did not properly include the pay period information for each wage statement, the accurate rate of pay for the various types of

6

work, nor did the wage statements include the name and address of the legal entity that employed the Injured Parties, and the other current or former pharmacy employees in violation of Labor Code § 226.

During the statutory period, CVS knowingly and intentionally failed to abide by the requirements outlined in Labor Code § 226 by failing to maintain records and providing incomplete and inaccurate wage statements to the Injured Parties, and other current or former pharmacy employees.

**VI.** **CVS Failed to Fully Reimburse for Work Expenses in Violation of California Labor Code §§ 2800 and 2802.**

Pursuant to Labor Code § 2800 an employer shall indemnify employee losses caused by the employer's want of ordinary care. Accordingly, Labor Code § 2802 provides that an employer shall indemnify his/her employee for all necessary expenditures or losses incurred by the employees as a result of employment. Further, an employer shall not collect or receive from an employee any part of wages theretofore paid by employer to employee.

The Injured Parties allege that CVS has a policy, practice and/or procedure of failing to reimburse and/or indemnify him and other current or former pharmacy employees for expenses incurred as a direct result of their employment. The Injured Parties assert that they and other current or former pharmacy employees had to use their personal computers and/or devices, as well as their personal internet to complete the mandatory training from a remote location when they did not have the time to complete the required training during their scheduled shifts due CVS's staffing policies, the busy nature of the pharmacy, and the culture of deterring overtime. The Injured Parties and other current or former pharmacy employees were also not reimbursed for the reasonable use of their personal computers and/or internet, even though CVS knew and/or had reason to know that employees were using their personal computers and internet for work related activities without reimbursement in violation of Labor Code §§ 2800 and 2802.

Additionally, Mr. Cabrera and Ms. Brickman allege that CVS has a policy, practice and/or procedure CVS requires pharmacy technicians to obtain a license and background check. However, as a policy, practice, and/or procedure CVS refused to reimburse them and other pharmacy technicians for the costs of their license, background check, and travel, which are work related activities directly related to their employment with CVS in violation of Labor Code §§ 2800 and 2802.

**VII.** **CVS Failed to Maintain Accurate Payroll Records in Violation of California Labor Code §§ 226 and 1174.**

Labor Code § 1174(d) states "[e]very person employing labor in this state shall keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by commission, but in case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned."

As described herein, CVS has a policy, practice, and/or procedure of intentionally and willfully failing to maintain accurate payroll records properly showing the total hours worked each day and the wages paid to the Injured Parties, as well as other current or former pharmacy employees. Thus, CVS failed to maintain records of the total time worked and wages paid to the Injured Parties, as well as other current and former pharmacy employees in violation of Labor Code § 1174.

## <u>Conclusion</u>

As described herein, the Injured Parties are "aggrieved employees" as defined by Labor Code § 2699(c). CVS deprived the Injured Parties, and other current or former pharmacy employees of their statutory rights in violation of the California Labor Code, as described herein. As such, the Injured Parties have satisfied all the prerequisites to serve as a representative of the general public in order to enforce California's labor laws and the penalty provisions described herein.

If after 65 days from the date of this letter, the Labor and Workforce Development Agency does not act, or declines to intervene, the Injured Parties may elect to initiate and/or amend a civil action alleging the PAGA violations described herein, as well as other related claims.

Sincerely,
CLARK LAW GROUP


R. Craig Clark
Monique R. Rodriguez
Paige D. Chretien

Cc:      *Via Certified Mail*

| | | |
|---|---|---|
| CVS Health<br>One CVS Drive<br>Woonsocket, RI 02895 | CVS Rx Services, Inc.<br>c/o C T Corporation System<br>818 W. Seventh Street<br>Suite 930<br>Los Angeles, CA 90017 | CVS Pharmacy, Inc.<br>c/o C T Corporation System<br>818 W. Seventh Street<br>Suite 930<br>Los Angeles, CA 90017 |
| Garfield Beach CVS, LLC<br>c/o C T Corporation System<br>818 W. Seventh Street<br>Suite 930<br>Los Angeles, CA 90017 | Longs Drugs Stores California, LLC<br>c/o C T Corporation System<br>818 W. Seventh Street<br>Suite 930<br>Los Angeles, CA 90017 | CVS 5828 CA, LLC<br>c/o C T Corporation System<br>818 W. Seventh Street<br>Suite 930<br>Los Angeles, CA 90017 |
| CVS 9674 CA, LLC<br>c/o C T Corporation System<br>818 W. Seventh Street<br>Suite 930<br>Los Angeles, CA 90017 | Target Corporation<br>c/o C T Corporation System<br>818 W. Seventh Street<br>Suite 930<br>Los Angeles, CA 90017 | |

8

# Exhibit 4

**CT Corporation**

**Service of Process Transmittal**
03/11/2019
CT Log Number 535083112

| TO: | Serviceof Process<br>CVS Health Companies<br>1 Cvs Dr Mail Code 1160<br>Woonsocket, RI 02895-6146 |
|---|---|

**RE:** **Process Served in California**

**FOR:** CVS Pharmacy, Inc.  (Domestic State: RI)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | May Eldanaf, Pltf. vs. CVS Pharmacy, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter |
| **COURT/AGENCY:** | None Specified<br>Case # None Specified |
| **NATURE OF ACTION:** | Letter of Intent - Overview of Intended Civil Action and Violations Committed by CVS |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 03/11/2019 postmarked on 03/07/2019 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | Michael Morrison<br>ALEXANDER KRAKOW + CLICK LLP<br>1900 Avenue of the Stars<br>Suite 900<br>Los Angeles, CA 90067<br>310-394-0888 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/13/2019, Expected Purge Date: 03/18/2019<br><br>Image SOP<br><br>Email Notification,  Serviceof Process  Service_of_Process@cvs.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**ALEXANDER
KRAKOW +
GLICK** ɛ

1900 Avenue of the Stars
Suite 900
Los Angeles
California 90067

CERTIFIED MAIL®

7017 0660 0000 9172 7966

HASLER

015H14164732

**$6.95**

03/07/19

Mailed From 90401

US POSTAGE

CVS Pharmacy, Inc.
CVS Rx Services, Inc.
Garfield Beach CVS, LLC
CT Corporation System
818 W. 7th Street STE 930
Los Angeles, CA 90017

Employee Justice.

90017-947630



**ALEXANDER
KRAKOW +
GLICK** ᵣ

March 7, 2019

**VIA ELECTRONIC FILING**

Attn: PAGA Administrator
Labor and Workforce Development Agency (LWDA)

**VIA CERTIFIED MAIL**

CVS Pharmacy, Inc.                     CVS Pharmacy, Inc.
CVS Rx Services, Inc.                  CVS Rx Services, Inc.
Garfield Beach CVS, LLC               Garfield Beach CVS, LLC
One CVS Dr.                            CT Corporation System
Woonsocket, RI 02895                  818 W. 7th Street STE 930
                                       Los Angeles, CA 90017

RE:   **May Eldanaf v. CVS Pharmacy, Inc., CVS RX Services, Inc., and Garfield Beach CVS, LLC**

Dear PAGA Administrator:

Pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), May Eldanaf is an aggrieved employee under this act. Ms. Eldanaf worked as a pharmacist for CVS Pharmacy, Inc., CVS RX Services, Inc., and Garfield Beach CVS, LLC (collectively "CVS"). Ms. Eldanaf will file a civil action against CVS on behalf of herself and all other aggrieved employees in California who were pharmacists and were required to complete mandatory training for which they were not paid. On behalf of herself and all aggrieved pharmacist-employees, Ms. Eldanaf intends to pursue penalties under PAGA for the violations of the Labor Code described herein.[1]

According to the California Secretary of State's website, the entity addresses and addresses for service of process for the CVS entities are as follows:

---

[1] A check for the $75.00 filing fee required under California Labor Code section 2699.3 is being mailed under separate cover to the Department of Industrial Relations, Accounting Unit, 455 Golden Gate Avenue, 10th Floor, San Francisco, CA 94102.

1900 Avenue of the Stars
Suite 900
Los Angeles
California 90067

T: 310.394.0888
F: 310.394.0811
www.akgllp.com

Employee Justice

**ALEXANDER KRAKOW + GLICK ⸙**

| Entity Addresses | Service of Processes |
|---|---|
| CVS Pharmacy, Inc.<br>One CVS Dr.<br>Woonsocket, RI 02895 | CVS Pharmacy, Inc.<br>CT Corporation System<br>818 W. 7th Street STE 930<br>Los Angeles, CA 90017 |
| CVS Rx Services, Inc.<br>One CVS Dr.<br>Woonsocket, RI 02895 | CVS Rx Services, Inc.<br>CT Corporation System<br>818 W. 7th Street STE 930<br>Los Angeles, CA 90017 |
| Garfield Beach CVS, LLC<br>One CVS Dr.<br>Woonsocket, RI 02895 | Garfield Beach CVS, LLC<br>CT Corporation System<br>(CO168406) |

### Overview of Intended Civil Action and Violations Committed by CVS

This action will primarily be based on the fact that the CVS, among other things, has: (1) failed to pay all wages earned by pharmacists, including the required minimum wage for all hours worked; (2) failed to pay the applicable overtime for all hours worked; (3) failed to provide accurate wage statements; (4) failed to pay all wages by the appropriate pay period; and (5) failed to pay all wages at the time of termination or resignation.

The employers' acts give rise to the following violations, among others (as discussed in more detail below): CA Labor Code sections 1194, 1194.2, 1197, 1197.1 [failure to pay all wages; minimum wage violations]; CA Labor Code sections 1194, 510 [failure to pay all overtime]; CA Labor Code section 203 [waiting time penalties]; CA Labor Code sections 226 [inaccurate wage statement]; CA Labor Code section 204 [failure to pay all wages by the appropriate pay period]; CA Labor Code section 2699, et seq. (PAGA).

### Facts and Theories Supporting Employer's Violations of the Law

Ms. Eldanaf is a pharmacist who has worked for CVS in locations in Los Angeles, Victorville, and Adelanto, California from approximately October 2001 through the present.

Employee Justice.

2



**ALEXANDER KRAKOW + GLICK**

Employee Justice.

As pharmacist-employees of CVS, Ms. Eldanaf and other aggrieved pharmacists were properly classified as non-exempt employees.

During her employment by CVS as pharmacists, Ms. Eldanaf and other aggrieved pharmacists were required to complete mandatory training modules. These mandatory training modules were required by CVS, and were not part of any certification or licensure requirement imposed by the California Board of Pharmacy or any other regulatory agency.

CVS has failed and refused to compensate Ms. Eldanaf and other aggrieved pharmacists properly for their time spent completing CVS's mandatory training modules when the training was completed by Ms. Eldanaf and other aggrieved pharmacists while not on a shift. Ms. Eldanaf and other aggrieved pharmacists are required to complete all training modules at a CVS store, but are not given sufficient time to complete training modules during scheduled shifts. Supervisors of Ms. Eldanaf and other aggrieved pharmacists are aware that they are unable to complete training modules during scheduled shifts and that this is often done outside of their assigned shifts without pay.

During the year of 2018, Ms. Eldanaf estimates she was required to complete approximately 40 training modules, but she was never paid for her time spent completing these mandatory training modules, which were mostly done off the clock - before her shift, through her lunch "break", and after her shift. For instance, on December 31, 2018, Ms. Eldanaf had to stay after her shift and work off the clock to complete four separate training modules. That day, when Ms. Eldanaf was completing a training module off the clock, she was standing next to the pharmacy manager, who knew she was doing her training off the clock. Ms. Eldanaf has observed her pharmacy manager frequently work off the clock to complete his work. In the past, when Ms. Eldanaf has complained to him about not having enough time to complete trainings, his response has been: "Why can't you do it [the training] between the work?" Around the end of 2018, Ms. Eldanaf spoke to the district leader when he came for a store visit. Ms. Eldanaf told her manager that they could not finish all their work and trainings during their shifts due to lack of time. Her manager spoke to the district leader, waited for Ms. Eldanaf to clock out of her shift before telling her that she could talk the district leader, despite knowing that Ms. Eldanaf was asking about work-related duties. When Ms. Eldanaf asked the district leader how they would be able to improve at their store and that they needed more time to complete their work, the district leader responded that "the budget is the budget."



**ALEXANDER KRAKOW + GLICK**

Employee Justice.

Because the trainings must be completed from a CVS network computer, CVS is aware that Ms. Eldanaf and other aggrieved pharmacists are off the clock when they stay to complete trainings off shift because they must physically complete these mandatory trainings at the store.  CVS management tells its pharmacist-employees, such as Ms. Eldanaf, that that they need to complete certain mandatory trainings by a certain deadline, but do not provide a specific or separate time for these pharmacist-employees outside of their shifts to complete this work.  The pharmacy manager receives a memo that notes which individuals have not completed their trainings, and notifies the employees to complete the trainings.  But when Ms. Eldanaf and other aggrieved employees have verbally complained on multiple occasions to management that they did not have time to complete all their duties on shift as well as fit in time to complete the mandatory training, the response from management is "find the time."  Ms. Eldanaf has expressed to her pharmacy manager that it is challenging to complete the trainings while they are working.  CVS management and policy also stresses that if you work off the clock, you will be terminated immediately, such that Ms. Eldanaf and other aggrieved employees cannot even claim training time hours off the clock without risking termination.  CVS was aware that training modules were being completed outside of assigned shift times should have compensated Ms. Eldanaf and other aggrieved pharmacists for this time or had procedures in place to set aside time to complete the training, and track and record this time so that payment could be made.

In California, by law, any time which is not compensated automatically constitutes a minimum wage violation.  (See *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 324).  The unpaid training time thus constitutes a per se minimum wage violation.

To the extent any of the unpaid time would constitute overtime work, CVS was required to pay the required overtime premium.

<u>*Other Claims*</u>

The other alleged violations, including inaccurate wage statement, the failure to pay all wages by the appropriate pay period, and waiting time penalties, are largely derivative of the failure to pay pharmacists for all mandatory training.

### Scope of Anticipated Action

On behalf of herself and all aggrieved pharmacists, Ms. Eldanaf intends to seek all penalties that are available for these violations of the Labor Code.  The penalties include, but may not be limited to, those available under Labor Code section 201-203,

4



**ALEXANDER KRAKOW + GLICK ₴**

204, 210, 216, 225.5, 226, 226.3, 226.7, 510, 512, 558, 558.1, 1194, 1194.2, 1197, 1197.1, 1199, 2698, et seq.  Ms. Eldanaf further intends to recover the actual wages owed to her and other aggrieved employees under the Labor Code sections which permit the recovery of unpaid wages, including unpaid overtime and unpaid minimum wages.

Please inform us if you intend to investigate this matter.  If you require any additional information, please contact me.

Very truly yours,

Michael Morrison

ALEXANDER KRAKOW + GLICK LLP

Employee Justice.

5

# Exhibit 5

# TINA LEE
618 Sinaloa Road
Simi Valley, California 93065
Tel. (818) 442-2237

November 2, 2020

*Cabrera v. CVS Pharmacy*
P.O. Box 26170
Santa Ana, CA 92799

      Re:   OBJECTING TO SETTLEMENT

Dear Sir or Madam:

I am a member of the plaintiff class in the case entitled *Cabrera v. CVS Pharmacy*. I am a class member because I am an hourly, non-exempt Pharmacist in a CVS retail pharmacy located in Region 65 in the State of California between July 20, 2012 and the present and I did not sign an arbitration agreement or previously release and/or adjudicate certain wage and hour claims.

I object to the settlement in this lawsuit. My reasons for objecting are:

      1.     Mailing disclosure does not state the amount paid each of the law firms, this cannot be determined if this is a reasonable attorney fee without this information.

      2.     Basic Objection: the attorney fee is too high for the work apparently done and the large recovery.

      3.     Objection: the settlement is premature, should be negotiated later after the case is more fully developed.

      4.     Much too small a payment, for me the payment is for 313 weeks of denial of rights, with a payment of $1,281 which amounts to about $4 for each week, which is a pittance for a company making a lot more profits by denying payment of wages/benefits legally due employees.

      5.     Basically a 30% fee on a very substantial recovery, seems too high when there has been no trial.

      6.     No class certification motion, not even attempted. The settlement would be much greater if the class had been certified. Even with a class certification motion pending the defendants would be much more motivated to settle.

      7.     The attorney fee seems far too high without even a class certification motion pending. No work was done for that motion, which typically greatly increases the settlement value.

      8.     The wage violations by CVS were intentional and planned due to greed and a desire to evade the law for profit. This conduct is reprehensible, possibly entitling the plaintiffs to punitive damages, and certainly not some heavily discounted payment where the cheated employees get so little. Such planned wrongful conduct, by a large employer, over a long period of time, while being concealed the entire time, should have a compensable element that takes away all the benefits CVS got from cheating, lying and hiding. This settlement allows CVS to profit from its wrongdoing, in that CVS retains about 90% of money it got by cheating employees.

Very truly yours,

*T. Lee*

Tina Lee



U.S. POSTAGE PAID
FCM LG ENV
SIMI VALLEY, CA
NOV 04, 20
AMOUNT

$6.95

R2304M113851-51

92799

1000

RETURN RECEIPT
REQUESTED

7020 1290 0001 8090 6605

*Cabrera v. CVS Pharmacy*
P.O. Box 26170
Santa Ana, CA 92799

92799-617070

Tina Lee
618 Sinaloa Rd.
Simi Valley, CA 93065

11/06/2020

# Exhibit 6



■ HENNIG RUIZ & SINGH ■

November 6, 2020

**SENT BY FIRST CLASS MAIL AND BY OVERNIGHT DELIVERY**

Settlement Administrator
c/o Simpluris
P.O. Box 26170
Santa Ana, CA  92799

   Re: *California Central District Court Case No. 2:16-cv-08979-AB-AGR*
      *Cabrera v. CVS Pharmacy Claims*

Greetings:

The requirement that objections be sent to a Post Office Box with a signature in the middle of a pandemic represents an unreasonable and thoughtless burden.

Please find enclosed the Objections to the Final Approval of the Class Settlement on behalf of Class Member Parvin Ghassemian.

Should you have any questions, please feel free to contact me.

Very truly yours,

~ Rob Hennig

Enclosures

3600 Wilshire Blvd., Suite 1908       Phone (213) 310-8301
Los Angeles, CA 90010         Fax (213) 310-8302
WWW.EMPLOYMENTATTORNEYLA.COM

Rob Hennig (State Bar No. 174646)
rob@employmentattorneyla.com
Dat Tommy Phan (State Bar No. 316813)
dat@employmentattorneyla.com
Hennig Ruiz & Singh, p.c.
3600 Wilshire Blvd., Suite 1908
Los Angeles, CA 90010
Telephone: (213) 310-8301
Fax: (213) 310-8302

Attorneys for Class Member and Objector
PARVIN GHASSEMIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public,<br><br>         Plaintiffs,<br><br>         v.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,<br>        Defendants. | CASE NO.: 2:16-cv-08979-AB-AGR<br>Assigned to Hon. Andre Birotte Jr.<br>*Related Case No.:2:20-cv-02401-AB-AGR*<br><br>**OBJECTIONS OF PARVIN GHASSEMIAN TO PROPOSED CLASS ACTION SETTLEMENT; DECLARATION OF ROB HENNIG IN SUPPORT THEREOF DECLARATION OF PARVIN GHASSEMIAN IN SUPPORT THEREOF.**<br><br>DATE:    December 4, 2020<br>TIME:    10:00 a.m.<br>PLACE:  Courtroom 7B<br>            350 West First Street,<br>            Los Angeles, California |

Hennig
Ruiz,
Singh

i

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that absent Class Members and Objector PARVIN GHASSEMIAN submits this Objection to the Proposed Class Settlement in the above captioned matter.

Dated: November 6, 2020            HENNIG RUIZ & SINGH, P.C.

                                                /s/ Rob Hennig
                                                Rob Hennig
                                                Dat Tommy Phan
                                                Attorneys for Class Member and Objector
                                                PARVIN GHASSEMIAN

HENNIG
RUIZ,
SINGH

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

   A. Procedural History ............................................................................ 1

   B. Relevant Background Information. .................................................... 2

   C. Settlement Terms .............................................................................. 3

II.   ARGUMENT ............................................................................................ 5

   A. This Settlement Merits High Scrutiny .............................................. 5

   B. The Procedural Posture re Consolidation of the Chalian and Cabrera
   Complaints Suggests Collusion ............................................................ 7

        1. Brief History re *Chalian* Case. .................................................... 7

        2. Brief History re *Cabrera* Case. ................................................... 9

        3. Joint Prosecution of the Cases Given the Extreme Breadth of the
        *Cabrera* Case Suggests Collusion. ............................................... 11

   C. The Proposed Settlement is not Fair or Adequate as to Either Non-Exempt,
   Hourly Pharmacists in Regions 65 and 72, or to All Non-Exempt, Hourly
   Employees of CVS in California. ........................................................ 15

   D.  The Amount Allocated to Class Members Is Inadequate. ............ 17

   E. The Proposed Attorneys Fee Award is Windfall. ............................ 19

III.  CONCLUSION ........................................................................................ 20

# TABLE OF AUTHORITIES

**CASES**

*7-Eleven Owners for Fair Franchising v. The Southland Corp. (Watson)* (2000) 85
   Cal.App.4th 1135 ...................................................................................................5

*Bingham v. Obledo* (1983) 147 Cal.App.3d 401 .................................................5

*Deposit Guaranty National Bank of Jackson, Mississippi v. Roper*, 445 U.S. 326,
   (1980) ........................................................................................................................5

*Green v. Obledo* (1981) 29 Cal.3d 126 ................................................................6

*In re Bluetooth Headset Products Liab. Litig.* (9th Cir. 2011) 654 F.3d 935 ..........6, 7

*In re Microsoft I-V Cases* (2006) 135 Cal.App.4th 706 .......................................5

*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116 ..........................5

*Parvin Ghassemian v. CVS Pharmacy et al.*, Case No. 30-2019-01088926-CU-
   OE-CJC ...................................................................................................................1

*Sevag Chalian et al. v. CVS Pharmacy, Inc. et al*, Case No. 2:16-cv-08979 (C.D.
   Cal.) .................................................................................................................1, 4, 7

*Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al.*, Case No. 2:20-cv-02401
   (C.D. Cal.) ......................................................................................................1, 4, 7

*Wallace v. GEICO Gen. Ins. Co.* (2010) 183 Cal.App.4th 1390 .........................6

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ......................................15

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 ...........................5

**STATUTES**

Cal. Lab. Code § 1174 .....................................................................................9, 13

Cal. Lab. Code § 1194 ...........................................................................1, 8, 9, 12

Cal. Lab. Code § 1197 .....................................................................................9, 12

Cal. Lab. Code § 1197.1 ..................................................................................9, 12

Cal. Lab. Code § 1198 .....................................................................................9, 12

Cal. Lab. Code § 201 .......................................................................................8, 13

iv

Cal. Lab. Code § 203................................................................................................8, 13

Cal. Lab. Code § 204................................................................................................9, 12

Cal. Lab. Code § 226.......................................................................................1, 8, 9, 13

Cal. Lab. Code § 226.3...................................................................................................9

Cal. Lab. Code § 226.7.......................................................................................1, 9, 13

Cal. Lab. Code § 2698...............................................................................................1, 9

Cal. Lab. Code § 2800.............................................................................................9, 13

Cal. Lab. Code § 2802.............................................................................................9, 13

Cal. Lab. Code § 510...............................................................................................1, 9

Cal. Lab. Code § 512.......................................................................................1, 9, 13

Cal. Lab. Code § 558.............................................................................................9, 12

Cal. Lab. Code § 98.6...................................................................................................1

Cal. Lab. Code §1102.5.................................................................................................1

Cal. Labor Code § 202...........................................................................................8, 13

Cal. Rules of Court, Rule 3.769.....................................................................................5

Hennig
Ruiz,
Singh

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

### A.   Procedural History.

Class member and Objector Parvin Ghassemian ("hereinafter "Objector" or "Ghassemian") is currently pursuing an action against Defendants CVS Pharmacy, Inc. and CVS Rx Services, Inc., in Orange County Superior Court. The matter is titled *Parvin Ghassemian v. CVS Pharmacy et al.*, Case No. 30-2019-01088926-CU-OE-CJC, which was filed on August 8, 2019. *See* Declaration of Parvin Ghassemian ("Ghassemian Decl."), ¶ 1, Ex. A (State Complaint). In her action, Ghassemian alleges a number of claims against Defendants for discrimination, retaliation, failure to engage in a timely good-faith interactive process, among other causes of action under Fair Employment and Housing Act (hereinafter "FEHA"), and retaliation in violation of Cal. Lab. Code §§ 1102.5 and 98.6. *See* State Complaint at ¶ 2.

Ghassemian further alleges that Defendants violated numerous wage and hour laws under the California Labor Code, including by: (1) failing to provide meal periods and rest breaks (Cal. Lab. Code §§ 226.7 and 512); (2) failing to pay a minimum wage and overtime (Cal. Lab. Code §§ 510 and 1194); (3) failing to provide accurate itemized wage statements (Cal. Lab. Code § 226(a); and (4) failing to pay waiting time penalties (Cal. Lab. Code §§ 2698, *et seq.*). *See* State Complaint at ¶ 2. Jury trial in the matter is currently scheduled for January 29, 2021 at 9:00 a.m. in Department C-19, the Hon. Walter P Schwarm presiding.

On or about October 5, 2020, Ghassemian received a "Notice of Class Action Settlement and Release of Claims" in the mail. *See* Ghassemian Decl., ¶ 3, Ex. B. Ghassemian learned that there were two pending class actions in the U.S. District Court for the Central District of California: *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al*, Case No. 2:16-cv-08979 (C.D. Cal.) and *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al.*, Case No. 2:20-cv-02401 (C.D. Cal.).

1

1   After reviewing the notice, Ghassemian learned that she part of the putative

2   class and that as a part of the proposed class action settlement, she was expected to

3   receive approximately $894.64 based on 219.00 weeks worked for CVS during the

4   class period, less applicable withholdings. *See Id*. Given Ghassemian's belief that

5   the proposed settlement is vastly inadequate and unfair to her and all other silent

6   class members, she hereby submits her objections to the class actions settlement.

7   **B.    Relevant Background Information.**

8   Parvin Ghassemian worked as a Pharmacist-in-Charge ("PIC") in Orange

9   County, California, primarily out of the CVS store located at 28221 Crown Valley

10  Pkwy, Laguna Niguel, CA 92677. Ghassemian worked for Defendants CVS for

11  approximately twelve years, from December of 2006 until on or about October 12,

12  2018. At the time of Ghassemian's termination, she had reached the pay cap for her

13  classification and store volume. *See* Ghassemian Decl., ¶ 4.

14  Up until her termination in October 2018, Ghassemian's regular work

15  schedule called for four 8-hour days, amounting to 32 regular hours per week.

16  However, due to CVS's requirement for mandatory trainings, CVS's staffing

17  policies, and the busy nature of the pharmacy, Ghassemian regularly worked

18  approximately 2 overtime hours per week, and between 1-5 additional hours per

19  week off the clock. *See* Ghassemian Decl., ¶ 5.

20  In 2018, Ghassemian earned approximately $114,095 with a regular rate of

21  pay of $73.02 per hour. In 2017, Ghassemian earned approximately $128,267 with

22  a regular rate of pay of $73.02 per hour. In 2016, Ghassemian earned approximately

23  $132,171 with a regular rate of pay of $72.80 per hour. In 2015, Ghassemian earned

24  approximately $1432,322 with a regular rate of pay of $70.48 per hour. *See*

25  Ghassemian Decl., ¶ 6.

26  Ghassemian understood that as a policy and practice, CVS set the available

27  work hours, including overtime hours, for each CVS location based on past

28  prescription volume. Ghassemian also understood that as a policy and practice, she

Hennig
Ruiz,
Singh

2

1  was instructed not to over the set amount of available work hours for her CVS

2  location. Ghassemian understood that CVS had a policy and practice of only

3  staffing one pharmacist per shift, meaning legally compliant meal and rest breaks

4  cannot be taken during store hours because there is no one to relieve the pharmacist

5  from all work. *See* Ghassemian Decl., ¶ 7.

6        At Ghassemian's CVS store, the regular pharmacy hours were approximately

7  8:00 a.m. to 9:00 p.m., and later 9:00 a.m. to 9:00 p.m. Ghassemian was regularly

8  staffed as the only pharmacist during her 8-hour shifts. For example, if she was

9  staffed for 8:00 a.m. to 5:00 p.m., another pharmacist would usually not start until

10 at or near the end of her shift. As the only pharmacist on staff, and unable to close

11 the pharmacy except under limited circumstances, Ghassemian was regularly

12 unable to take her uninterrupted meal and rest periods during her shifts because

13 there was no one to relieve her from all work. Even during her breaks, she remained

14 on call and/or was unable to leave the premises. *See* Ghassemian Decl., ¶ 8.

15       During the relevant class period identified in the settlement notice,

16 Ghassemian estimates that she was compensated for about 2 hours of overtime a

17 week, but worked an additional 1-5 hours off per week off the clock, for which she

18 was not paid a minimum or overtime. *See* Ghassemian Decl., ¶ 9. She believes that

19 her wage statements were inaccurate because she was not compensated for all

20 overtime and wage earned, and meal and rest breaks that were missed. *See*

21 Ghassemian Decl., ¶ 10. After she was terminated, CVS did not promptly pay all

22 compensate and wages owed to her, making CVS liable for waiting time penalties.

23 *See* Ghassemian Decl., ¶ 11.

24     **C.**    **Settlement Terms**

25       Class Member and Objector, Parvin Ghassemian, submits this objection the

26 proposed class settlement in the above-captioned matter. Objector Ghassemian

27 worked primarily out of the CVS store located at 28221 Crown Valley Pkwy,

28 Laguna Niguel, CA 92677 during the Class Period. *See* Ghassemian Decl., ¶ 4.

HENNIG
RUIZ,
SINGH

3

1    This objection addresses four primary aspects of the proposed settlement:

2    (a)    the procedural posture re consolidation of the complaints for *Sevag*

3           *Chalian et al. v. CVS Pharmacy, Inc. et al*, Case No. 2:16-cv-08979

4           (C.D. Cal.) and *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al.*,

5           Case No. 2:20-cv-02401 (C.D. Cal.) suggest collusion;

6    (b)    the settlement was not fair or adequate to Class A (hourly, non-exempt

7           CVS pharmacists located in Region 65 or 72), and Class B (hourly,

8           non-exempt CVS employees);

9    (c)    the amount allocated to Class A and B is arbitrary and inadequate; and

10   (d)    the proposed attorneys' fee award is a windfall.

11   First and foremost, however, Objector Ghassemian is a member of the

12   putative class. The Notice of Class Action Settlement (hereinafter "Settlement

13   Notice") defines the Classes as follows:

14   (a) as an hourly, non-exempt Pharmacist in a CVS retail pharmacy
     located in Region 65 or 72 in the State of California between July 20,

15   2012 and the present and you did not sign an arbitration agreement or
     previously release and/or adjudicate certain wage and hour claims; or

16   (b) as an hourly, non-exempt employee in a CVS retail pharmacy in
     the State of California between August 3, 2014 and the present, who
     has not previously released and/or already adjudicated certain wage

17   and hour claims.

18   *See* Ghassemian Decl., ¶ 3, Ex. B.

19   First, the Class definitions themselves appear to have potential overlap and

20   be in conflict, as there is no definition as to the geographical boundaries of Region

21   65 or 72 in the State of California. Relatedly, there is also no explanation as to

22   whether Regions 65 and 72 themselves, and the CVS stores located therein, have

23   remained consistent between 2012 and the present, suggesting that the definition

24   may be both overinclusive and underinclusive.

25   Second, Class B, which convers hourly, non-exempt employee in a CVS

26   retail pharmacy in the State of California between August 3, 2014 and the present,

27   is an excessively overbroad class definition that is not tailored to actual questions of

28   law and fact common to the class.

Hennig
Ruiz,
Singh

4

1    These fundamental laws in the class definitions in the proposed settlement
2    themselves are sufficient for Final Approval to be denied.

3

4    **II.   ARGUMENT**

5       **A.   This Settlement Merits High Scrutiny**

6       As this Court is aware, the Court has an affirmative duty to protect the Class,
7    including any faction of putative class members who are similarly situated, during
8    all proceedings. *See generally, Deposit Guaranty National Bank of Jackson,*
9    *Mississippi v. Roper*, 445 U.S. 326, 331 (1980); *7-Eleven Owners for Fair*
10   *Franchising v. The Southland Corp. (Watson)* (2000) 85 Cal.App.4th 1135, 1151;
11   *Bingham v. Obledo* (1983) 147 Cal.App.3d 401, 406.   In fact, the trial court is
12   considered "the guardian" of the class. *Kullar v. Foot Locker Retail, Inc.* (2008)
13   168 Cal.App.4th 116, 129.

14       The settlement of a class action requires the approval of the court after
15   hearing. (Cal. Rules of Court, rule 3.769(a)).   A court may approve a class action
16   settlement only after determining that the settlement is fair, adequate and
17   reasonable. *In re Microsoft I-V Cases* (2006) 135 Cal.App.4th 706, 723.   The court
18   "has a fiduciary responsibility as guardian of the rights of the absentee class
19   members when deciding whether to approve a settlement agreement." (*Kullar v.*
20   *Foot Locker Retail, Inc., supra,* 168 Cal.App.4th at 129.)   In order to fulfill this
21   duty, the court is required to conduct "an independent assessment of the adequacy
22   of the settlement terms." *Id.* at 132; *see also, Wershba v. Apple Computer, Inc.*
23   (2001) 91 Cal.App.4th 224, 245 ["The court must therefore scrutinize the proposed
24   settlement agreement to the extent necessary to 'reach a reasoned judgment that the
25   agreement is not the product of fraud or overreaching by, or collusion between, the
26   negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and
27   adequate to all concerned.'"]. The terms of the proposed settlement presently before
28   the Court mandate that the Court execute its duties with particular and heightened

5

HENNIG RUIZ, SINGH

1    vigilance.

2       The Ninth Circuit in *In re Bluetooth Headset Products Liab. Litig.* (*In re*

3 *Bluetooth*) (9th Cir. 2011) 654 F.3d 935, 947, delineated three "warning signs" that

4 may suggest "that class counsel has allowed pursuit of their own self-interests and

5 that of certain class members to infect the negotiations," such that a heightened

6 reviewed of a proposed settlement is warranted[1]:

> "(1) 'when counsel receives a disproportionate distribution of the
> settlement, <u>or when the class receives no monetary distribution</u> but
> class counsel are amply rewarded,' [Citations].…'
> (2) when the parties negotiate a 'clear sailing' arrangement providing
> for the payment of attorneys' fees separate and apart from class funds,
> which carries "the potential of enabling a defendant to pay class
> counsel excessive fees and costs in exchange for counsel accepting an
> unfair settlement on behalf of the class," [Citations]; and
> (3) when the parties arrange for fees not awarded to revert to
> defendants rather than be added to the class fund."

12 (Citations omitted.)[2]

13       The settlement agreement presently before the Court clearly includes the first

14 and second of these warning signs.

15       First, out of the originally proposed $9,750,000 proposed class action

16 settlement, the attorneys for the plaintiffs' request fees in the amount of $2,925,000,

17 and after subtracting out other expected cost, leaves $6,600,750 to be allocated

18 amongst the class. (ECF No. 89, 13:24-14:13). Based on Defendant's estimates of

19 20,900 employees, each employee would receive approximately $315.83 for a

20 release of all of his or her claims against CVS. Thus, the average employee was

21 expected to receive a mere 0.0108 ($315.83/$2,925,000) percent of the expected

22 attorneys' fees going to class counsel. Class counsel is amply rewarded, while class

23 members receive virtually nothing after accounting for taxes and payroll

24

25    [1] This Court should be "even more scrupulous than usual in approving settlements where no class has yet been formally certified." *In re. General Motors*, 55 F.3d 768, 805 (3d. Cir. 1993)

26    [2] California courts must follow federal precedents in the area of class action procedure in the absence of contrary California authority. (*See, Wallace v. GEICO Gen. Ins. Co.* (2010) 183 Cal.App.4th 1390, 1399 n.7 ["In the context of class action procedure, federal authorities are instructive to the extent that California authorities do not provide guidance, as it 'is well established that in the absence of relevant state precedents our trial courts are urged to follow the procedures prescribed in rule 23 of the Federal Rules of Civil Procedure for conducting class actions.'"] (*quoting, Green v. Obledo* (1981) 29 Cal.3d 126, 145-146).)

deductions. Second, the proposed settlement includes a "clear sailing" agreement whereby defendant has agreed it will not oppose class counsel's application for fees and costs up to $50,000 in costs and $2,925,000 in attorneys' fees. (CM ECF No. 89, 34:26-35:5)

As the Ninth Circuit noted in Bluetooth, "[a]lthough clear sailing provisions are not prohibited, they 'by [their] nature deprive[ ] the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *In re Bluetooth, supra,* 654 F.3d at p. 949. As the court in *In re Bluetooth* explained:

> "[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." [Citations.] Therefore, when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested. [citations omitted.]

> Furthermore, that a provision is severable does not render it irrelevant to the overall reasonableness of the agreement, for "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.... The settlement must stand or fall in its entirety." [citations omitted.]

*In re Bluetooth, supra,* 654 F.3d at p. 948 [citations omitted].

Because the proposed settlement agreement evinces two of the three "warning signs" delineated by the court in *In re Bluetooth,* the Court must carefully and stringently review the proposed settlement in order to fulfill its "fiduciary responsibility as guardian of the rights of the absentee class members." (*Kullar, supra,* 168 Cal.App.4th at p. 129.)

**B.    The Procedural Posture re Consolidation of the Chalian and Cabrera Complaints Suggests Collusion.**

A review of the procedural posture leading up to the consolidation of the complaints for *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al,* Case No. 2:16-cv-08979 (C.D. Cal.) and *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al.,* Case No. 2:20-cv-02401 (C.D. Cal.) suggest collusion.

**1.    Brief History re *Chalian* Case.**

7

HENNIG
RUIZ,
SINGH

1    On or about July 20, 2016, Plaintiff Sevag Chalian filed a putative wage and

2   hour class action against CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield

3   Beach CVS LLC ("CVS") in the Los Angeles County Superior Court of the State of

4   California, and on December 5, 2016, CVS removed that action to the United States

5   District Court for the Central District of California, Case No. 2:16-cv-08979, where

6   it remains pending. *See* Declaration of Michael Morrison In Support of Motion for

7   Preliminary Approval of Settlement ("Morrison Decl. ISO Prelim. Appr."), ¶ 8.

8   (ECF No. 89)

9    On or about September 5, 2017, Plaintiff Chalian filed a First Amended

10   Complaint ("Chalian FAC") that alleged causes of action for: (1) Unpaid Wages

11   (Cal. Labor Code § 1194); (2) Failure to Pay Overtime Compensation (Cal. Labor

12   Code § 1194); (3) Failure to Provide Accurate Itemized Wage Statements (Cal.

13   Labor Code § 226); (4) Waiting Time Penalties (Cal. Labor Code §§ 201-203); and

14   (5) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, *et. seq.*) (ECF No.

15   44)

16    The Chalian plaintiffs' theory of the case was that CVS required pharmacists

17   to complete mandatory training modules at home, during breaks, and/or off-the

18   clock, who were not compensated for their time. *See* Chalian FAC. (ECF No. 44, ¶¶

19   17-28) Plaintiff Chalian was employed as a pharmacist in both Region 65 and

20   Region 72. (ECF No. 44, ¶ 7.) Plaintiff Tamara Aleksandryan was employed as a

21   pharmacist in Region 65. (ECF No. 44, ¶ 8.)

22    The Chalian plaintiffs proposed to certify two classes:

23   Region 65 Class:
24        All persons who are or were employed by DEFENDANTS as
     nonexempt pharmacists in DEFENDANTS' Region 65 in the State of
     California, and who completed mandatory training modules for
25        DEFENDANTS outside of their shifts.

26   Region 72 Class:
27        All persons who are or were employed by DEFENDANTS as
     nonexempt pharmacists in DEFENDANTS' Region 72 in the State of
     California, and who completed mandatory training modules for
28        DEFENDANTS outside of their shifts.

HENNIG
RUIZ,
SINGH

8

1    (ECF No. 44, ¶ 15.)

2            **2.    Brief History re *Cabrera* Case.**

3            On or about August 3, 2017, Plaintiff Sigfredo Cabrera filed a putative wage

4    and hour class action against CVS in Alameda County Superior Court of the State

5    of California. *See* Morrison Decl. ISO Prelim. Appr., ¶ 12. (ECF No. 89, 7:23-25.)

6    Plaintiff later amended his action to add Enko Telahun as a second named plaintiff.

7    *See* Morrison Decl. ISO Prelim. Appr., ¶ 13. (ECF No. 89, 7:26-27.) On or about

8    October 9, 2017, CVS removed the action to the United States District Court for the

9    Northern District of California, Case No. 3:17-cv-05803. *See* Morrison Decl. ISO

10   Prelim. Appr., ¶ 14. (ECF No. 89, 7:28-8:2.)

11           On or about March 19, 2018, Plaintiffs filed the second amended complaint

12   ("Cabrera SAC"), which alleges on behalf of pharmacy employees that CVS failed

13   to pay minimum wages and overtime compensation (Labor Code §§ 204, 510, 558,

14   1194, 1197, 1197.1 and 1198); failed to provide legally compliant meal periods or

15   compensation in lieu thereof (Labor Code §§ 226.7 and 512); failed to provide

16   legally compliant rest periods or compensation in lieu thereof (Labor Code §

17   226.7); failed to pay wages owed (Labor Code §§ 201-203); failed to furnish

18   accurate itemized wage statements (Labor Code §§ 226 and 226.3); failed to

19   maintain accurate records (Labor Code §§226(a), 226.3, and 1174); failed to

20   reimburse for necessary work expenses (Labor Code §§ 2800 and 2802); and

21   participated in unfair business practices (Bus. & Prof. Code §§ 17200 et seq.). The

22   second amended complaint also alleged pursuant to the California Private Attorney

23   General Act, Lab. Code §§ 2698, et seq. ("PAGA"), and on behalf of Plaintiffs

24   Cabrera and Telahun, and other aggrieved employees that CVS owes civil penalties

25   for alleged violations of Labor Code §§ 201-203, 204, 226, 226.3, 226.7, 510, 512,

26   1174, 1194, 1197, 1197.1, 1198, 2800, and 2802 and relevant IWC Wage Orders.

27   *See* Morrison Decl. ISO Prelim. Appr., ¶ 15. (ECF No. 89, 8:3-19.) (N.D. Cal. 2:20-

28   cv-02401-AB-AGR, ECF No. 49—"Cabrera SAC")

HENNIG
RUIZ,
SINGH

9

1      While one of the components of the Cabrera plaintiffs' theory of the case

2    included off the clock work related to mandatory training modules, Plaintiffs

3    further alleged a half dozen other theories for wage and hour liability that stem

4    from: (a) CVS allocating work hours based on prescription volume from the

5    previous year and the busy nature of the pharmacy, that pharmacist other pharmacy

6    employees were often directed to work off the clock before and after their

7    scheduled shifts, as well as during their meal and rest periods to meet the needs of

8    the pharmacy and/or to complete the required training; (b) CVS scheduling only

9    one pharmacist on duty for a period of four to six hour, and not providing meal

10   periods that were free of all duty, as they were on call during their meal periods

11   and/or were unable to leave the premises; (c) CVS failing to reimburse and/or

12   indemnify Plaintiffs and other current or former pharmacy employees for expenses

13   incurred as a direct result of their employment, such as the use of personal

14   computers and internet to complete the mandatory training from a remote location;

15   (d) CVS failing to reimburse and/or indemnify pharmacy technicians for the costs

16   of their required license, background check, and travel; and (e) PAGA penalties

17   related to the alleged violations. *See* Cabrera SAC, ¶¶ 28-38, 43, 48, 54, 55. (N.D.

18   Cal. 2:20-cv-02401-AB-AGR, ECF No. 49.)

19      The *Cabrera* plaintiffs proposed twelve (12) classes:

20   (a) All current or former non-exempt pharmacy employees employed by
       Defendants in the state of California who "opted-out" of or did not agree to
21     CVS' arbitration agreement and who suffered any violations of the Labor
       Code, Business and Professions Code and/or the relevant California
22     Industrial Welfare Commission's ("IWC") Wage Orders during the Class
       Period.
23   (b) All current or former non-exempt pharmacy employees employed by
       Defendants in the state of California who "opted-out" of or did not agree to
24     CVS' arbitration agreement and who were not paid for all hours worked in
       violation of California law during the Class Period.
25   (c) All current or former non-exempt pharmacy employees employed by
       Defendants in the state of California who "opted-out" of or did not agree to
26     CVS' arbitration agreement and who were not provided with legally
       compliant meal periods or compensation in lieu thereof in violation of
27     California law during the Class Period.
   (d) All current or former non-exempt pharmacists employed by Defendants in
28     the state of California who "opted-out" of or did not agree to CVS'
       arbitration agreement and who were not provided with legally compliant

1  meal periods because of Defendants' practice of scheduling only one pharmacist on-duty for a period of four to six hours, or who were not compensated for noncompliant meal periods in lieu thereof in violation of California law during the Class Period.

2  (e) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with legally compliant rest periods or compensation in lieu thereof in violation of California law during the Class Period.

3  (f) All current or former non-exempt pharmacists employed by Defendant in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with the opportunity to take legally compliant rest periods due to Defendants practice of scheduling one pharmacist on duty for a period of four to six hours, or who were not compensated for noncompliant rest periods in lieu thereof in violation of California law during the Class Period.

4

5

6

7

8

9  (g) All former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not paid all wages owed upon termination of the employment relationship in violation of California law during the Class Period.

10

11

12  (h) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with accurate itemized wage statements in violation of California law during the Class Period.

13

14  (i) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and whose information was not accurately recorded and/or maintained in violation of California law during the Class Period. (j) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not reimbursed for necessary work expenses in violation of California law during the Class Period. (k) All current or former non-exempt pharmacy technicians employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not reimbursed for their licensing, background check, and travel in violation of California law during the Class Period. (l) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were subject to Defendants' unlawful, unfair, and/or fraudulent business practices in violation of California law during the Class Period.

15

16

17

18

19

20

21

22

23  *See* Cabrera SAC, ¶ 8. (N.D. Cal. 2:20-cv-02401-AB-AGR, ECF No. 49.)

24  **3.   Joint Prosecution of the Cases Given the Extreme Breadth of the *Cabrera* Case Suggests Collusion.**

25  Plaintiff asserts that in 2018, counsel for the *Chalian* Plaintiffs in the Central

26  District of California Action and the *Cabrera* Plaintiffs in Northern District of

27  California Action decided to work cooperatively and jointly prosecute their

28  respective actions. *See* Morrison Decl. ISO Prelim. Appr., ¶ 19. (ECF No. 89.) The

11

HENNIG
RUIZ,
SINGH

Plaintiffs and CVS mediated the case with David A. Lowe, Esq., on July 29, 2019, and exchanged the following information:

1. Class list containing persons who did not execute arbitration agreements;
2. Excel spreadsheets detailing dates of employment, annual salary, and hourly rate for employees in the Class;
3. Excel spreadsheets containing LEARNet data, which shows when a sampling of Class Members logged into training;
4. Excel spreadsheet containing Site Minder data for 2017 and 2018, which reflects Class Member activity on the LEARNet training site;
5. Excel spreadsheets showing time punches for a sampling of Class Members, which, when compared to LEARNet data, identifies persons who logged onto LEARNet while not clocked in. The same data also helps reveal potential Labor Code section 850-851 and 550-551 violations;
6. Excel spreadsheet showing what was paid to Class Members each pay period; and
7. Relevant policies and procedures regarding training modules, off the clock work, sick pay, reimbursement policy, meal and rest periods, etc.

*See* Morrison Decl. ISO Prelim. Appr., ¶ 19. Plaintiffs hired an expert statistician to analyze the data and determine the damages, interest, and penalties (statutory and civil) owed to Class Members. *See* Morrison Decl. ISO Prelim. Appr., ¶ 23. Specifically, the LEARNet and Site Minder data was used to determine when Class Members logged into CVS's training system as well as the average duration of each session. *See Id.*

A second day of mediation took place on November 11, 2019, in which the parties came to an agreement to resolve all pending wage and hour disputes between them. *See* Morrison Decl. ISO Prelim. Appr., ¶ 24. The final settlement agreement was executed in late February, early March 2020. *See* Morrison Decl. ISO Prelim. Appr., ¶ 25, Ex. 1. The parties then stipulated to a transfer of the *Cabrera* case to the Central District for consolidation. *See* Morrison Decl. ISO Prelim. Appr., ¶ 25. Shortly thereafter, Plaintiffs filed a Consolidated Second Amended Complaint ("CSAC") (ECF No. 104.)

The behemoth CSAC combined all of the claims from both *Chalian* and *Cabrera* into a single class consolidated complaint alleging: (1) failure to pay minimum wages (labor code §§ 204, 558, 1194, 1197, 1197.1, and 1198); (2) failure to pay overtime compensation (labor code §§ 510 and 1994); (3) failure to

12

1   provide legally compliant meal periods or compensation in lieu thereof (labor code

2   §§ 226.7 and 512); (4) failure to provide legally compliant rest periods or

3   compensation in lieu thereof (labor code § 226.7); (5) failure to pay wages owed at

4   the time of separation (labor code §§ 201, 202, and 203); (6) failure to furnish

5   accurate itemized wage statements (labor code §§ 226 and 226.3); (7) failure to

6   maintain accurate records (labor code §§ 226(a), 226.3, and 1174); (8) failure to

7   reimburse for necessary work expenses (labor code §§ 2800 and 2802); (9) unfair

8   business practices (bus. & prof. code §§ 17200 et. seq.); (10) private attorneys

9   general act of 2004 (labor code §§ 2698 *et se*q.). *See* CSAC (ECF No. 104.)

10      The new proposed amalgamated class definitions became:

11   (a) All hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and continuing through the present, whose claims are not subject to arbitration and which have not previously been released and/or adjudicated, and whose LEARNet and/or Siteminder data indicates activity when time punch records do not show he or she was clocked-in (the "Pharmacist Settlement Class").

14   (b) All persons, other than those in the Pharmacist Settlement Class, who held an hourly, nonexempt position in a CVS retail pharmacy in the State of California between August 3, 2014 and continuing through the present who have not previously released and/or adjudicated the Released Claims (the "Retail Pharmacy Settlement Class").

17   *See* CSAC, ¶ 12 (ECF No. 104.)

18      The reason why the action taken in consolidating these actions suggest

19   collusion starts with the fact that *Chalian* and *Cabrera* share a single theory of the

20   case: CVS required pharmacists to complete mandatory training modules at home,

21   during breaks, and/or off-the clock, who were not compensated for their time. The

22   narrowly proposed classes, as articulated in the *Chalian* FAC, were simply

23   pharmacists in Regions 65 and 72, who completed mandatory training modules

24   outside of their shifts. (ECF No. 44, ¶ 15.)

25      However, in contrast, the *Cabrera* SAC additionally alleged a half dozen

26   other legal theories, and identify twelve proposed class definitions covering

27   pharmacists, pharmacy technicians, pharmacy associates, among other pharmacy

28   employees, including for PAGA penalties under reach of these legal theories. *See*

13

1    Cabrera SAC, ¶¶ 8, 28-38, 43, 48, 54, 55. (N.D. Cal. 2:20-cv-02401-AB-AGR, ECF

2    No. 49.)

3         Plaintiffs explain that during and around mediation, they received class lists

4    and excel sheets containing LEARNet data that allowed them to calculate the

5    estimated damages. *See* Morrison Decl. ISO Prelim. Appr., ¶ 19 According to

6    Plaintiffs' expert, the potential damages for OTC training is as follows: For the

7    Pharmacist Settlement Class, the total unpaid wages (regular and overtime wages)

8    are **$1,291,932** based on Site Minder data showing an average of 1.33 hrs (Region

9    65) and1.54 hrs (Region 72) of OTC time per training session. *See* Morrison Decl.

10   ISO Prelim. Appr., ¶ 42. (ECF No. 89) For the Retail Pharmacy Class, only 425

11   Class Members did not sign arbitration agreements. The approximate amount of

12   unpaid wages for those who did not sign arbitration agreements is **$1,642,726**. *See*

13   Morrison Decl. ISO Prelim. Appr., ¶ 42. (ECF No. 89) Plaintiffs stated that of the

14   more than 20,000 total Class Members, little more than 800 have individual wage

15   and hour claims that a court could adjudicate. *See* Morrison Decl. ISO Prelim.

16   Appr., ¶ 30. (ECF No. 89)[3]

17        Without including attorneys' fees and cost, and based on the data provided

18   by Defendant, Plaintiff's experts estimate that the damages for approximately 800

19   class members that have wage and hour claims the court could adjudicate was

20   essentially $1,291,932 + $1,642,726 = **$2,934,658**, so just shy of $3 million in

21   damages for plaintiffs who could be expected to be bound by any proposed

22   settlement. However, these damages are essentially those to be expected from the

23   single theory of liability articulated in *Chalian*, and for which *Cabrera* shared.

24   However, these calculations did not properly account for the half dozen other legal

25   theories that were articulated by *Cabrera*, including for PAGA penalties, which

26   would be unaffected by an agreement to arbitrate. The $75,000 payment for PAGA

27

28

---

[3] This does not appear to be correct because the Court can adjudicate PAGA claims notwithstanding any enforceable arbitration agreement.



HENNIG
RUIZ,
SINGH

14

1    appears to be inexplicably undervalued given class counsel's estimate that the

2    expected liability ranged between $10 million and $23 million. (ECF No. 89,

3    25:21-26:4.)

4         Essentially, the proposed settlement reserved for the class, $6,600,750, is

5    barely more than double of the expected damages from the *Chalian* liability alone,

6    and it appears to be an effort to release the liability against CVS for a half dozen

7    other legal theories CVS without any demonstration by the *Cabrera* plaintiffs that

8    adequate class discovery and/or depositions have been conducted.

9    **C.    The Proposed Settlement is not Fair or Adequate as to Either Non-Exempt, Hourly Pharmacists in Regions 65 and 72, or to All Non-Exempt, Hourly Employees of CVS in California.**

10

11        Under the terms of the settlement agreement, and reflected in the notice of

12   settlement sent to class members, the two classes are defined:

13   (a) as an hourly, non-exempt Pharmacist in a CVS retail pharmacy located in Region 65 or 72 in the State of California between July 20, 2012 and the present and you did not sign an arbitration agreement or previously release and/or adjudicate certain wage and hour claims; or

14

15   (b) as an hourly, non-exempt employee in a CVS retail pharmacy in the State of California between August 3, 2014 and the present, who has not previously released and/or already adjudicated certain wage and hour claims.

16

17   *See* Ghassemian Decl., ¶ 3, Ex. B. These class definitions are overbroad and do not

18   appear to be tailored to any common questions of law or fact. A question is

19   common to the class where it is capable of resolution on a class wide basis,

20   meaning that determination of its truth or falsity will directly resolve an issue that is

21   central and valid to each one of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564

22   U.S. 338, 350 (2011).

23        First, the Class definitions themselves appear to have potential overlap and

24   be in conflict. Neither the class attorneys or Defendants provide any definition as to

25   the geographical boundaries of Region 65 or 72 in the State of California. If there

26   are only two regions in California, Class A (Region 65 and 72) would seek to cover

27   all hourly, non-exempt pharmacists in California that have not previously released

28   or adjudicated their wage and hour claims. If there are a dozen or more regions in

15

HENNIG RUIZ, SINGH

California, Class A itself could potentially be very small, and not warrant class treatment at all. The class definitions fail to clarify whether there are any members of Class A, consisting of pharmacists in Regions 65 or 72 of California from July 20, 2020 and the present, that are also hourly non-exempt employees of CVS in California between August 3, 2014 and the present. As it appears that there is overlap, will those class members be receiving payments double payments? And if they do not, why not?

Second, there is also no explanation as to whether Regions 65 and 72 themselves, and the CVS stores located therein, have remained consistent between 2012 and the present. During the approximate twelve years that Objector Ghassemian worked as a pharmacist for CVS between December 2006 and October 2018, she recalls that CVS realigned divisions and/or districts 2-3 times during her tenure. *See* Ghassemian Decl., ¶ 4. This suggests that Class A may be both overinclusive and underinclusive because Regions 65 and 72 may include payments to pharmacists that were not subjected to particular wage and hour violations, while excluding payment to pharmacists that were in these regions but had been reclassified or realigned into another district.

Third, Class B, which convers hourly, non-exempt employee in a CVS retail pharmacy in the State of California between August 3, 2014 and the present, is an excessively overbroad class definition. It presumably includes pharmacists like Plaintiff Sevag Chalian, pharmacy techs like Plaintiff Christine McNeely, or pharmacy associates with Plaintiff Sigfredo Cabrera. Given the different job titles, different job responsibilities, different supervising managers, different locations of stores, it is reasonable to expect that each job classification would not experience wage and hour violations in the exact same way. Without any effort to provide proper subclassing, Class B is simply an overbroad class definition where class counsel would have a difficult time showing that there are questions of law and fact common to the class.

H ENNIG
R UIZ,
S INGH

16

**D.**   **The Amount Allocated to Class Members Is Inadequate.**

The arbitrary amount allocated to class members is clearly inadequate. First, out of the originally proposed $9,750,000 proposed class action settlement, the attorneys for the plaintiffs' request fees in the amount of $2,925,000, or approximately 30 percent of the total settlement. After deducting out the $75,000 payments to the Labor and Work Development Agency ("LWDA") under the Private Attorneys General Act ("PAGA")[4], the $43,000 incentive award for the class representatives, and the $75,000 for settlement administrator's expense, the class itself is left with a $6,600,750 remaining amount. (ECF No. 89, 13:24-14:13).

A review of the executed Settlement Agreement, which was attached as Exhibit 1 in the Declaration of Michael Morrison in Support of Plaintiffs' Motion for Preliminary Approval, estimated the class size to be approximately 19,000 individuals. (ECF No. 89-1, Ex. 1) The class list provided by Defendant prior to mediation increased that number to 20,900 employees, with an estimated 2,945,837 work weeks.[5] Based on the information stated about the original proposed class, and the remaining settlement amount of $6,600,750 reserved for the class, the average employee in the class about 140.95 weeks and was expected to receive a paltry settlement of $315.83 for release all of his or her claim against CVS. Thus, the average employee was expected to receive a mere 0.0108 ($315.83/$2,925,000) percent of the expected attorneys' fees going to class counsel.

And for Objector Ghassemian, despite earning a regular pay rate of $73.02 per hour as a pharmacist-in-charge, one of the highest rates among the class members, her estimated settlement check of $894.64 based on 219 workweeks (or 4.08 years), would be a mere 0.0305 percent ($894.64/$2,925,000) of the expected attorneys' fees going to class counsel.

---

[4] The $75,000 payment for PAGA appears to be inexplicably undervalued given class counsel's estimate that the expected liability ranged between $10 million and $23 million. (ECF No. 89, 25:21-26:4.)
[5] The final class list appeared to slightly increase to 24,309 employees with a total of 33,133,55 work weeks pursuant to the Elevator Clause, raising the total settlement amount to $10,371,346.60 and the attorneys' fees to $3,111,403.98, an increase of $186,403.98.

1    Based on conservative estimates, without interest, Objector Ghassemian

2  wage and hour damages against CVS are substantial.

3    <u>Meal and Rest Periods</u>: Based on her four-day work schedule, Ghassemian

4  estimates that she missed at least one meal period or rest period per day, for which

5  she did not receive premium pay. *See* Ghassemian Decl., ¶ 48 In a week,

6  Ghassemian would be entitled to four hours of premium pay at her pay rate of

7  $73.02 = $292.08. Based on the same 219 workweeks, she would be entitled to

8  **$63,965** during the class period.

9    <u>Overtime/Minimum Wage</u>: Ghassemian estimates that even though she

10  averaged about 2 hours of paid overtime per week, she regularly worked between 1-

11  5 hours off the clock per week. *See* Ghassemian Decl., ¶ 9. For simplicity,

12  assuming that Ghassemian worked 2 hours off the clock per week, based on her

13  overtime rate of $109.53, over 219 workweeks (2 hours x $109.53 x 219 weeks),

14  her unpaid overtime earnings would be **$46,440.72** during the class period.

15    <u>Inaccurate Wage Statements</u>: Because Ghassemian was not compensated for

16  all overtime hours and missed meal and rest breaks, her itemized wage statements

17  were inaccurate. *See* Ghassemian Decl., ¶ 10. Based on 26 issued paystubs a year, a

18  $50 first violation, and $100 subsequent violation, would amount to $2,550 a year.

19  As Ghassemian worked for CVS for 219 workweeks (or 4.08 years) during the

20  class period, the damages would cap at **$4,000**.

21    <u>Waiting Time</u>: For the aforementioned violations, Ghassemian believes she

22  was not provided with all of her owed wages at the time of her termination in

23  October 2018 for beyond 30 days. Her daily rate is based on 8 regular hours, and

24  0.5 overtime hours = $638.925 daily rate x 30 days = **$19,167**.

25    Based on conversative estimates of wage and hour violations alone,

26  Ghassemian estimates that her damages are **$133,573.47**. This would not include

27  any accrued interest nor any applicable PAGA penalties. Compared to the $894.64

28  offered to Ghassemian based on the class action settlement, this represents a mere

18

HENNIG
RUIZ,
SINGH

1 | **0.67 percent of the total value of her claims**.

2 Even if other pharmacy employee may earn a lower pay rate, it is abundantly

3 clear that the class action settlement is vastly inadequate and unfair. For other

4 pharmacists who had similar payrates and were subjected to similar working

5 conditions from CVS, their expected damages are comparable to that of

6 Ghassemian. And even for other pharmacy employees who earned a lower pay rate,

7 the proposed settlement payments represent pennies on the dollar given the value of

8 the potential claims, even if some of them needed to be pursued in arbitration. The

9 proposed settlement would foreclose the ability of 24,309 class members from even

10 pursuing their wage and hour claims in arbitration or through the California Labor

11 Commissioner. Plaintiff's Motion for Attorney's Fees, Craig S. Clark Decl. ¶ 31.

12 (ECF No. 160-2)

13 | **E.     The Proposed Attorneys Fee Award is Windfall.**

14 Objector Ghassemian believes that approving a requested attorney fee award

15 of $3,111,403.98, or 30 percent of the maximum settlement amount, would provide

16 class counsel with an unjustified windfall for the following reasons:

17 (A)     Objector believes the proposed settlement is not in the best interests of

18         the stated class, and that the amount of the settlement is woefully short

19         of what would be a fair settlement of the very broad release of claims

20         included in the proposed settlement.

21 (B)     There has been a failure of plaintiff's counsel to conduct sufficient due

22         diligence to investigate and analyze the realistic value of the claims.

23 (C)     The procedural history of how this settlement came about suggests

24         collusive conduct between the plaintiff's attorneys in this case and

25         defense counsel.

26 (D)     The attorneys' fees sought by plaintiff's counsel in this case based

27         upon a claimed 30 percent common fund is nothing short of an

28         unearned and inappropriate windfall to counsel.

19

(E)    The cross-check of the costs claimed in this case demonstrates how little work has been done by the attorneys in this case and, thus, why there has been a failure of due diligence in this case.

(F)    To approve this settlement would be an inappropriate abdication of this Court's obligation to determine and act in the best interests of the class. sufficient due diligence to investigate and analyze the realistic value of the claims. *See Id*

*See* Declaration of Rob Hennig, ¶ 6. The basis for Mr. Hennig's objections to the settlement are described fully in his declaration. See, generally, Hennig Decl. ¶¶ 34-76.

## III.    CONCLUSION

Objector submits that the proposed settlement as presently written cannot be approved.  The settlement must be revised to provide fair and adequate benefits to the proposed classes of CVS pharmacists and other non-exempt, hourly employees in California.


Dated: November 6, 2020            HENNIG RUIZ & SINGH, P.C.

                                    /s/ Rob Hennig
                                   Rob Hennig
                                   Dat Tommy Phan
                                   Attorneys for Class Member and Objector
                                   PARVIN GHASSEMIAN

HENNIG
RUIZ,
SINGH

20