1  Michael H. Boyamian, SBN 256107
   Armand R. Kizirian, SBN 293992
2  **BOYAMIAN LAW, INC.**
   550 N. Brand Blvd., Suite 1500
3  Glendale, CA 91203
   Telephone:  (818) 547-5300
4  Facsimile:   (818) 547-5678
   E-mail: michael@boyamianlaw.com
5         armand@boyamianlaw.com

6  Michael S. Morrison, SBN 205320
   **ALEXANDER MORRISON + FEHR LLP**
7  1900 Avenue of the Stars, Suite 900
   Los Angeles, California 90067
8  Telephone:  (310) 394-0888
   Facsimile:   (310) 394-0811
9  E-mail: mmorrison@amfllp.com

10 Attorneys for Plaintiffs SEVAG CHALIAN,
   SIGFREDO CABRERA, ENKO TELAHUN,
11 CHRISTINE MCNEELY, PATRICK BRENNAN,
   and the Settlement Class
12
   (*Additional Counsel Listed on Following Page*)
13
               **UNITED STATES DISTRICT COURT**
14
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
15

| | |
|---|---|
| 16 SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public, | Case No.: 2:16-cv-08979-AB-AGR |
| 17 | *Related Case No.: 2:20-cv-02401-AB-AGR* |
| 18  Plaintiffs, | *Assigned to Hon. Andre Birotte Jr.* |
| 19  v. | **PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE PROPOSED CLASS ACTION SETTLEMENT** |
| 20 CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive, | |
| 21 | |
| 22 | *[Filed Concurrently with the Declaration of Armand R. Kizirian]* |
| 23 | |
| 24  Defendants. | Date:          December 4, 2020 |
| 25 | Time:          10:00 a.m. |
| 26 | Location:    Courtroom 7B |
| | Complaint Filed: July 20, 2016 |
| | Action Removed: December 5, 2016 |

27

28

R. Craig Clark (SBN 129219)
cclark@clarklawyers.com
Alicja A. Urtnowski (SBN 321215)
aurtnowski@clarklawyers.com
**CLARK LAW GROUP**
3258 Fourth Avenue
San Diego, CA 92103
Telephone: (619) 239-1321
Facsimile: (888) 273-4554

Thomas W. Falvey, SBN 65744
**LAW OFFICES OF THOMAS W. FALVEY**
550 N. Brand Blvd., Suite 1500
Glendale, CA 91203
Telephone:   (818) 547-5200
Facsimile:    (818) 500-9307
E-mail: thomaswfalvey@gmail.com

Walter Haines, SBN 071075
**UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Telephone: (562) 256-1047
Facsimile: (562) 256-4554

Attorneys for Plaintiffs SEVAG CHALIAN,
SIGFREDO CABRERA, ENKO TELAHUN,
CHRISTINE MCNEELY, PATRICK BRENNAN,
and the Settlement Class

# Table of Contents

I.   INTRODUCTION ........................................................................... 1

II.  FACTUAL BACKGROUND........................................................... 3

III. DISCUSSION ............................................................................... 4

   A.  Legal Standard on Assessing Objections to Proposed Class Action
      Settlements ........................................................................... 4

   B.  Joint Prosecution of the *Chalian* and *Cabrera* Actions Was Proper; Nothing
      About the Procedural Posture of the Two Suits Remotely Suggests
      Collusion; Plaintiffs Properly Valued the Class's Claims at Settlement. ....... 5

   C.  The Proposed Settlement is Fair and Adequate; Objector's Ghassemian's
      Arguments Concerning the Difficulties of Class Certification Actually
      Support Approval of the Settlement ............................................. 11

   D.  The Amount Provided for by the Settlement is Reasonable and Eminently
      Fair to the Class. ................................................................. 14

   E.  The Requested Attorneys' Fees are Reasonable and in Accord with
      Numerous Other Class Action Settlements. .................................. 23

IV. CONCLUSION ........................................................................... 30

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE
PROPOSED CLASS ACTION SETTLEMENT

# I.    INTRODUCTION

Plaintiffs Sevag Chalian, Sigfredo Cabrera, Enko Telahun, Christine McNeely, and Patrick Brennan ("Plaintiffs") hereby respond to the objection submitted by Parvin Ghassemian to ("Objector Ghassemian") to the proposed class action settlement.

In objecting to the instant class settlement, Objector Ghassemian makes a number of specious arguments.  Central to their reproach of the proposed class action settlement is Objector Ghassemian's grossly inflated claim of "damages." She then attempts to leapfrog over obvious obstacles and deficiencies by failing to address them to reach the unsupportive conclusion that it is somehow attributable to the entirety of 24,000 Settlement Class Members.  Objector Ghassemian's falls woefully short in making that connection and the Court should not attempt to give any credence to such an unsubstantiated conclusion.  One employee's projection of damages – in this case Objector Ghassemian's - is not representative of the settlement class.

If Objector Ghassemian was representative – which she is not – nowhere does Objector Ghassemian identify a uniform or centralized policy or procedure for the Labor Code violations at issue.  The supporting declaration posits vague theories and assertions on what transpired that led to the claims that Objector Ghassemian declares is representative of the Settlement Class.  Objector Ghassemian makes bald and generalized allegations of "time shaving" and garden-variety meal and rest break violations but overlooks that CVS - and numerous other California decisions in accord - have denied class certification on such legal theories.  Objector Ghassemian also fails to take into account factors or obstacles to class certification.  She makes no effort to discuss Rule 23 principles, and fails to acknowledge that CVS foists arbitration agreements that are executed by almost every Settlement Class Member.

///

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE
PROPOSED CLASS ACTION SETTLEMENT

1    But then, in a somewhat bizarre and counterintuitive fashion, Objector

2    Ghassemian suddenly argues against the settlement because her counsel believes

3    that Plaintiffs cannot make a showing on the requirements of Rule 23 and gain

4    class certification.  Ghassemian Objection at 15.  However, Objector Ghassemian,

5    again, overlooks prevailing case law that there is a *relaxed* class certification

6    standard for settlement classes.  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d

7    539, 556–57 (9th Cir. 2019). *see also, e.g., Emetoh v. FedEx Freight, Inc.*, No. 17-

8    CV-7272-YGR, 2020 WL 6216763, at *3 (N.D. Cal. Oct. 22, 2020).  The Court

9    having already granted conditional certification for settlement purposes, any

10   concerns Objector Ghassemian raises as to the propriety of moving forward on a

11   class basis, fall flat.  If anything, the arguments advanced by Objector Ghassemian

12   actually support a grant of final approval of the settlement because they highlight

13   the risks Plaintiffs face if they are required to proceed with a contested Motion for

14   Class Certification.

15   In an effort to stave off final approval, Objector Ghassemian then resorts to

16   attacks on the character and professional reputation of Class Counsel but presents

17   no evidence to support such mudslinging, and misinterprets the law.  Objector

18   Ghassemian contends that because Plaintiffs in *Chalian* and *Cabrera* jointly

19   prosecuted their claims against CVS, their actions are indicative of collusion.

20   Ghassemian Objection at 7.  There is no case law supporting such a conclusion.  In

21   fact, two plaintiff groups working together against a common defendant is not

22   recognized by any court as constituting collusion.  *See In re Bluetooth Headset

23   Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  The only realistic conclusion

24   to be reached is that two plaintiff groups working together only strengthened the

25   class's hand against CVS and allowed Plaintiffs to secure a more robust settlement

26   from Defendants.

27   ///

28   ///

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE
PROPOSED CLASS ACTION SETTLEMENT

Finally, Objector Ghassemian argues that Plaintiffs' requested attorneys' fees of $3,111,403.98, representing 30% of the gross settlement amount and requiring a 1.62 multiplier on Plaintiffs' Counsel's lodestar represents a windfall. Declaration of Rob Hennig ISO Ghassemian Objection ("Hennig Decl."), ¶ 60. Objector Ghassemian, specifically her counsel, makes no credible showing of his expertise or experience in the field of class actions. If Objector Ghassemian had the requisite knowledge of how attorneys' fees in class settlements are assessed in this circuit, she would recognize at the outset that "[t]his circuit has established 25% of the common fund as a benchmark award for attorney fees." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The omission of this general and accepted principle in the class action arena underscores the lack of credibility and trustworthiness of Objector Ghassemian's counsel. The *handful* of class action cases Objector Ghassemian's counsel professes it gained experience and expertise is minuscule in comparison to the overwhelming experience and expertise of Class Counsel. But even more alarming – and consistent with the hypocrisy exhibited by *Hyams*' counsel - is that in the very few class action matters Objector Ghassemian's counsel handled, they apparently had no issue in requesting, among other similar issues it now takes upon, a 33.33% recovery for attorneys' fees in a class action case they filed and settled in less than 9 months. (*See* Plaintiffs' Request for Judicial Notice, Exh. 1, pp. 3-4)

For all of the foregoing reasons, Plaintiffs respectfully request that the court overrule the Ghassemian Objection in its entirety.

## II.    FACTUAL BACKGROUND

The factual background of this suit and the proposed settlement has been repeated by the Parties on numerous and recent occasions. Plaintiffs thus incorporate the factual background of this suit as set forth in their Motion for Final Approval of Class Action Settlement. *See* Dkt. No. 180 at 5-13.

///

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE
PROPOSED CLASS ACTION SETTLEMENT

## III.  DISCUSSION
### A.  Legal Standard on Assessing Objections to Proposed Class Action Settlements

As an initial matter, "[a]n objector to a proposed settlement agreement bears the burden of proving any assertions they raise challenging the reasonableness of a class action settlement." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015); *see United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) ("In this circuit, we have usually imposed the burden on the party objecting to a class action settlement."); *accord Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV1302529MMMVBKX, 2015 WL 12732462, at *27 n. 171 (C.D. Cal. May 29, 2015); *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1137 (N.D. Cal. 2015), aff'd, 869 F.3d 737 (9th Cir. 2017), vacated and remanded sub nom. on other grounds by *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019).

In addition, the "proper standard for approval of the proposed [class action] settlement is whether it is fair, reasonable, adequate, and free from collusion—not whether the class members could have received a better deal in exchange for the release of their claims." *In re Linkedin User Privacy Litig.*, 309 F.R.D. at 583. "In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class." *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *2 (S.D. Cal. Oct. 30, 2020); *Wilson v. TE Connectivity Networks, Inc.*, No. 14-CV-04872-EDL, 2019 WL 4242939, at *5 (N.D. Cal. Sept. 6, 2019) (same); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

In fact, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  As a result, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *In re Omnivision Techs., Inc.*, 559 F.

4

Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citations omitted); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 332 (N.D. Cal. 2014) (same); *Dawson v. Hitco Carbon Composites, Inc.*, No. CV1607337PSGFFMX, 2019 WL 7842550, at *5 (C.D. Cal. Nov. 25, 2019) (same).

Ultimately, it must be emphasized that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned. … This policy is also evident in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court, Central District of California, which encourage facilitating the settlement of cases." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

**B.**  **Joint Prosecution of the *Chalian* and *Cabrera* Actions Was Proper; Nothing About the Procedural Posture of the Two Suits Remotely Suggests Collusion; Plaintiffs Properly Valued the Class's Claims at Settlement.**

In opposing this settlement, Objector Ghassemian argues that "[a] review of the procedural posture leading up to the consolidation of the complaints for [*Chalian*] and [*Cabrera*] suggests collusion." Ghassemian Objection at 7. Ghassermian and her counsel do not sufficiently explain their qualifications to determine collusion. For example, while the Ninth Circuit has laid out factors to identify collusion, these factors are not properly discussed. Instead, in support of the collusion theory, Objector Ghassemian focuses on the joint prosecution of the case. As she states "[t]he reason why the action taken in consolidating these actions suggest collusion starts with the fact that *Chalian* and *Cabrera* share a single theory of the case: CVS required pharmacists to complete mandatory training modules at home, during breaks, and/or off-the clock, who were not

compensated for their time." Ghassemian Objection at 13. Stated another way, because there was not complete unity of claims between *Chalian* and *Cabrera*, there must be collusion when they decided to jointly prosecute their claims. According to this objector, cooperation amongst plaintiffs' counsel should only occur where every claim is in common. This is absurd. This is because jointly prosecuting related cases, i.e. two groups of plaintiffs working together against a common defendant, is not in the least bit collusive and completely unrelated to the concept of "collusion" as courts have defined that term. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (Noting three factors suggestive of collusion as relating to (1) counsel receiving a disproportionate share of attorneys' fees, (2) the presence of a 'clear sailing' provision, and (3) a reversionary provision for unclaimed funds); *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWX), 2015 WL 4698475, at *10 (C.D. Cal. Apr. 27, 2015) ("To determine whether there has been any collusion between the parties, courts must evaluate whether "fees and relief provisions clearly suggest the possibility that class interests gave way to self interests," thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others.") (citing *Staton v. Boeing Co.*, 327 F.3d 938, 961 (9th Cir. 2003)).

As such, the fact that counsel for *Chalian* and *Cabrera* began cooperating in their suit against a common defendant in CVS does not indicate collusion in the least bit. On the contrary, it shows a willingness to put aside differences in strategy , to avoid feuds on control over the litigation, and to agree on the sharing of any recovery in order to keep the litigation focused on behalf of employees against an employer as contrasted to one group of plaintiffs seeking to undermine a different group of plaintiffs, just as what is transpiring here.

///

///

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE PROPOSED CLASS ACTION SETTLEMENT

It is not lost on Plaintiffs that not all counsel who have appeared before this Court on behalf of a putative class in connection with this litigation can claim to have taken this pro-class approach. Indeed, that counsel for the *Hyams'* Plaintiffs, the other group of objectors in this litigation, pointedly chose not to coordinate in even the most minimal way with Plaintiffs when they learned of *Chalian* and *Cabrera* almost two years ago and instead opted to remain invisible to Plaintiffs is the *sine qua non* behind the significant post-settlement litigation that the Parties have had to engage in over these past several months.

Moreover, even though the instant settlement agreement contains a clear sailing provision, "the absence of a "kicker provision" stating that all fees not awarded would revert to defendants, weighs against a finding of collusion." *Klee v. Nissan N. Am., Inc.*, No. CV1208238AWTPJWX, 2015 WL 4538426, at *10 (C.D. Cal. July 7, 2015); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1260-61 (C.D. Cal. 2016); *cf. Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 223 (W.D.N.Y. 2017) ("Equally troublesome is the <u>combination</u> of a reversion clause and a "clear sailing" clause in the same settlement agreement.") (emphasis added); *see In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 374 (E.D. Pa. 2015) ("While Objectors are correct that a clear sailing provision "should put a court on its guard," *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir.1991), "not every 'clear sailing' provision demonstrates collusion." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir.2012). "[N]umerous cases ... have approved agreements containing such clear-sailing clauses." *Deepwater Horizon Clean–Up Settlement*, 295 F.R.D. at 138."). Moreover, as shown in the final approval motion, the fact the fees are being paid from the settlement fund and the Settlement was achieved with the assistance of a mediator cuts against the collusion argument. This is not addressed by the objector and her counsel.

///

1    Ghassemian next argues that collusion can be inferred because the value of

2    the Settlement far exceeds the damages caused by off the clock training.  In

3    addition to the fact that this Settlement encompasses more than off the clock

4    claims, it deliberately misrepresents the exposure for the off the clock training

5    claims.  *See* Morrison Decl. ISO Motion for Final Approval, ¶¶ 57-96.  In

6    reviewing Objector Ghassemian's contentions on damages, Ms. Ghassemian has

7    selectively cited Plaintiffs' damages analysis, as disclosed by Plaintiffs when they

8    moved for preliminary approval of the settlement.  Objector Ghassemian does not

9    adequately account for the between $10,000,000 and $23,000,000 in maximum

10   PAGA penalties that Plaintiffs calculated that could be awarded by a court as a

11   result of these off-the-clock claims, or liquidated damages.   Declaration of

12   Michael S. Morrison ISO Motion for Final Approval ("Morrison Decl. ISO Motion

13   for Final Approval"), ¶ 87.

14       Objector Ghassemian only considers PAGA separately, arguing that the

15   $75,000 PAGA allocation in the settlement undervalues the possible PAGA

16   claims.  However, Plaintiffs have been transparent that they allocated a significant

17   portion of the gross settlement amount to class claims in order to maximize the

18   individual recoveries of class members.  *See* Plaintiff's Reply ISO Motion for

19   Preliminary Approval at 22.  Indeed, numerous courts have approved settlements

20   that allocate a very large portion of the gross settlement fund to non-PAGA class

21   claims.  *See In re Uber FCRA Litigation*, 2017 WL 2806698, No. 14-CV-05200-

22   EMC (N.D. Cal., June 29, 2017) (Court approves a settlement agreement of $7.5

23   million, where the amount allocated to the PAGA claims was only $7,500 - .01%

24   of the total settlement amount); *Martino v. Ecolab Inc.*, 2017 WL 1165443, No.

25   3:14CV04358 (N.D. Cal. Feb. 1, 2017) ($100,000 allotted as PAGA penalties or

26   0.48% of $21,000,000 settlement amount); *Scott-George v. PVH Corporation*, No.,

27   2:13CV00441 (E.D. Cal. 2017) ($15,000 allotted as PAGA penalties or 0.46% of

28   $3,250,000 settlement amount).

1   However, as stated in Plaintiffs' Reply to the Objection to Settlement Under

2   Private Attorney General Act by Class Members Trent Andrews, et al. and

3   elsewhere, the case *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869 at *9 (N.D.

4   Cal. October 11, 2016) is particularly instructive and casts serious doubt into the

5   legitimacy of Objector Ghassemian's arguments.  In *Visceral* – a case extremely

6   analogous to the instant matter - the parties reached a $12,952,000 settlement

7   primarily involving off-the-clock (including unpaid training time) and meal and

8   rest period claims.  Only $20,000 was allocated to the PAGA, or 0.15% of the total

9   settlement.  In support of this allocation, the parties proffered two justifications –

10  the PAGA claims were subject to the same risks as the class claims (where there

11  was a real risk of recovering nothing) and the court has the discretion to lower the

12  PAGA penalty amounts.  *Id.* at 8.  While the court was "mindful of the need to

13  safeguard the statutory purposes of PAGA and to ensure that the parties do not use

14  a PAGA claim as a mere bargaining chip," it nonetheless approved the settlement

15  in light of the substantial risks of recovering nothing.  *Id.* at 9. As stated by the

16  court, "[W]hile the Court would ordinarily be highly skeptical of a settlement that

17  amounts to a tiny fraction of the value of the PAGA claim … where Plaintiffs face

18  a substantial risk of recovering nothing on either the PAGA or class claims, the

19  Court concludes that the settlement of the PAGA claim is reasonable in the context

20  of the settlement as a whole." *Id.*

21      Plaintiffs have explained in detail the risks associated with prevailing on the

22  class claims and PAGA claims.  ECF No. 180, pp. 25-45; Reply to Objection to

23  Class Action Settlement, section II(C) (concurrently filed).  These risks were more

24  than theoretical – they posed real challenges that could result in a recovery of zero.

25  Like *Viceral*, this Settlement – in light of the risks of moving ahead with litigation

26  – achieves the purposes of the PAGA.

27  ///

28  ///

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE
PROPOSED CLASS ACTION SETTLEMENT

Indeed, even counsel for Objector Ghassemian has tended to favor the class portion of settlements that he has been involved in. *See Foscue v. Ken Garff Automotive Group, et al*. (Los Angeles Sup. Ct. Case No. BC648132) (allocating $1,300 for PAGA which represented one percent of the Gross Settlement Amount) *See* Request for Judicial Notice, Exh. 1, pp. 3-4. Objector Ghassemian's counsel has gone so far as to agree to a settlement whereby class members released PAGA claims in a class settlement with a $0 allocation to PAGA. *See* Request for Judicial Notice, Ex. 4, Settlement Agreement and Release, ¶¶ 5(F), 9(D), re Jeffrey Winters v. Base Productions, Inc., LASC Case No. BC410650, attached as Exhibit "2" to Plaintiff Jeffrey Winters Notice of Motion and Unopposed Motion for Award of Reasonable Attorneys' Fees and Costs (releasing claims under Labor Code Section 2699 with no payment PAGA allocation to class members and no payment to the LWDA).

As such, Objector Ghassemian has wholly failed to carry her burden in showing that there was any sort of collusion between Plaintiffs and Defendants. What Objector Ghassemian has done is highlight the efforts Plaintiffs in *Chalian* and Plaintiffs in *Cabrera* made in cooperating each other to present a united front against a common defendant in CVS. If a reverse auction "is said to occur when 'the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant,'" then by making the concessions to each other necessary to join forces, Plaintiffs in *Chalian* and Plaintiffs in *Cabrera* did their part to take the necessary steps to make such conduct by Defendants impossible. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099 (9th Cir. 2008) (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir.2002)).

///

///

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE PROPOSED CLASS ACTION SETTLEMENT

Moreover, as shown above, Objector Ghassemian mischaracterizes Plaintiffs' settlement damages assessment to distort Plaintiffs' valuation of this case. That Plaintiffs chose to allocate a greater portion of the damages at issue to the class claims instead of for PAGA only benefits class members, including Objector Ghassemian herself, as it leads to a larger total amount being disbursed to the class.

**C.**   **The Proposed Settlement is Fair and Adequate; Objector's Ghassemian's Arguments Concerning the Difficulties of Class Certification Actually Support Approval of the Settlement**

Objector Ghassemian further argues that the settlement should not be approved because the "class definitions are overbroad and do not appear to be tailored to any common questions of law or fact". Ghassemian Objection at 15. This is incorrect. Commonality requires there be questions of law and fact common to the class. Fed. R. Civ. P. 23(a)(2). A question is common to the class where it is capable of resolution on a class wide basis, meaning that determination of its truth or falsity will directly resolve an issue that is central and valid to each one of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Notably, a single common question is sufficient to satisfy Rule 23(a)(2). *Id.* at 359.

Here, the commonality requirement is met. The classes only consist of persons who worked in the pharmacy (unlike *Hyams*, which includes front of the store employees as well). These persons are subject to the same written policies and procedures concerning off the clock work, meal and rest periods, reimbursements, etc. Tellingly, objectors do not identify any differences in the written policies applicable to the various persons who work in the pharmacy.

Objector Ghassemian argues that the class definitions are overbroad because they have the potential for overlap. Ghassemian Objection at 15. Objector Ghassemian does not explain why the chance for overlap in the two settlement classes should doom the settlement. The overlap seems to suggest that resolution

of the classes together makes sense.  In any case, the Parties anticipated the possibility of overlap and an individual who falls within the scope of both settlement classes "shall be eligible to receive whichever class settlement payment is larger."  *See* Declaration of Parvin Ghassemian ISO Objection ("Ghassemian Decl."), Exhibit "B", Notice of Class Action Settlement and Release of Claims, p. 3, 'Summary of the Proposed Settlement', Section B(2).

Furthermore, Objector Ghassemian complains that there is "no explanation as to whether Regions 65 and 72 themselves, and the CVS stores located therein, have remained consistent between 2012 and the present."  Ghassemian Objection at 16.  But this is irrelevant, because even if there was a change in classification of a store from inside Regions 65 and 72 to outside of those regions, or vice versa, individual settlement shares are based upon workweeks worked, accounting for even partial workweeks.  *See* Morrison Decl. ISO Motion for Final Approval, Exhibit "1" to Morrison Decl., Global Settlement Agreement, Section 3.6(e)(1). Thus, if hypothetically a CVS store was transferred into or out of these two regions during the class period, it would be no different than CVS opening up or closing down a store within these two regions during the class period – any time spent by a pharmacist during the class period in a store that did not fall within Regions 65 or 72 during the class period would simply not count as time worked for purposes of the Pharmacist Settlement Class because any such (hypothetical) store would not be a constituent part of Region 65 or 72 for the workweek in question.

Third, Objector Ghassemian argues that the Retail Pharmacy Class is overbroad because it includes pharmacists, pharmacy techs, and other pharmacy employees.  Ghassemian Objection at 16.  However, this type of variance in job titles and job duties is no bar to certification.  *See Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 330, 345-346 (C.D. Cal. 2016) (Certifying class composed of "individuals [employed] in various positions, including water truck driver, heavy equipment operator, solar installer, tractor operator, rough terrain crane operator,

1  and turbine installer, to name a few.") Again, as explained above, the relevant
2  written policies apply equally across the pharmacy.

3      Moreover, to the extent the Court were to credit Objector Ghassemian's
4  argument, it is nevertheless the case that when presented with a "request for
5  settlement-only class certification, a district court need not inquire whether the
6  case, if tried, would present intractable management problems." *Amchem Prod.,*
7  *Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see In re Hyundai & Kia Fuel Econ.*
8  *Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019) ("The criteria for class certification
9  are applied differently in litigation classes and settlement classes.  In deciding
10 whether to certify a litigation class, a district court must be concerned with
11 manageability at trial.  However, such manageability is not a concern in certifying
12 a settlement class where, by definition, there will be no trial.").  Indeed, when
13 contemplating class certification for purposes of settlement, courts apply a more
14 flexible and overall less demanding Rule 23 standard.  *Id.*; s*ee also, e.g., Emetoh v.*
15 *FedEx Freight, Inc.*, No. 17-CV-7272-YGR, 2020 WL 6216763, at *3 (N.D. Cal.
16 Oct. 22, 2020).

17     Objector Ghassemian further asserts that without "proper subclassing", the
18 Retail Pharmacy Class is overbroad because of the various job titles included
19 within this settlement class and the difficulties in showing common questions of
20 law and fact that this would allegedly result in.  Ghassemian Objection at 16.
21 However, Objector Ghassemian again misunderstands the requirements of Rule 23
22 in the context for certification of a settlement class.  "The criteria for class
23 certification are applied differently in litigation classes and settlement classes." *In*
24 *re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 556.  When deciding whether to
25 certify a litigation class, a district court must consider manageability at trial.  *Id.*
26 However, this concern is *not present in certifying a settlement class.  Id*. at 556–57.
27 Predominance and commonality are also not necessarily required.  *Jabbari v.*
28 *Farmer*, 965 F.3d 1001 (9th Cir. 2020) ("*Hanlon* affirmed a settlement class's

certification whereas *Mazza* reversed a certification for trial. Those cases align with the general rule that *predominance is easier to satisfy in the settlement context*.")

**D.     The Amount Provided for by the Settlement is Reasonable and Eminently Fair to the Class.**

Objector Ghassemian also takes issue with the net settlement amount. Ghassemian Objection at 17.  Specifically, Objector Ghassemian believes that based on her "conservative estimates," she would be entitled to $133,573.47 in damages for the underlying wage claims at issue in this suit.  Ghassemian Objection at 18.  As an initial matter, Objector Ghassemian calculates that she is owed $63,395 in meal and rest break penalties during the class period. Ghassemian Objection at 18.  However, she calculates this amount based upon literally one meal break violation and one rest break violation for every single shift she has in the class period, thus claiming the maximum amount she could possibly be entitled to under California law with her incredulous 100% violation rate.  *See United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 65 (2011) (Finding that under California law, an employee may be entitled to a maximum of one meal break and one rest break violation premium penalty per workday).

Notably, the *Hyams'* Plaintiffs, did not find anywhere near a 100% violation rate of meal break violations apparent from CVS's time records as their expert found meal break violations on 6.6% of shifts he analyzed.  *See* Plaintiffs' Reply in Support of Motion for Preliminary Approval at 19 (Dkt. No. 106).  Moreover, as is explained in more detail in the Motion for Final Approval [Dkt. No. 180, pp. 32-34], the meal period violation rate is extremely low for pharmacy employees like Objector Ghassemian.  *See* ECF 187-1, Ex. "D", pp. 8 and 17 (Solo RPH [solo registered pharmacist] listed in damages table with designation "valid meal," which means a meal period was recorded).  Moreover, like the *Hyams'* Plaintiffs' analysis, Objector Ghassemian <u>assumes</u> that whenever she was working alone, she

14

1    had a meal period violation irrespective of whether her time punch records disclose
2    a violation.  Ghassemian Decl., ¶ 8.

3        Importantly, Objector Ghassemian does not disclose the critical information
4    of what her time records reveal as to her ability to record meal breaks.
5    Ghassemian Decl., ¶ 8.  This lack of specificity is particularly jarring as trial in
6    Objector Ghassemian's suit is two months away and thus presumably she has
7    already secured possession of such records through discovery.  *See* Ghassemian
8    Objection at 1.  In Plaintiffs' Counsel's view, when the records do not disclose
9    meal period violations, it is extremely difficult to certify a meal period class.  A
10   mountain of anecdotal evidence in the form of Class Member testimony would be
11   required to establish that solo pharmacists, like Objector Ghassemian, were not
12   permitted to leave the premises during meal periods.  This applies just as forcefully
13   to rest breaks as there are no time entries that would capture class members
14   inability to take rest breaks.  Ghassemian Decl., ¶¶ 5, 9.

15       Further, CVS's opposition to the Motion for Class Certification filed by the
16   *Hyams'* Plaintiffs in the Northern District of California contains numerous
17   declarations from CVS's employees attesting to pharmacy workers being allowed
18   to leave the store for meal and rest periods.  *See* Compendium of Declarations and
19   Evidence in Support of Defendants' Opposition to Motion for Class Certification,
20   *Hyams, et al. v. CVS Health Corp.*, et al., 4:18-cv-06278-HSG, ECF No. 120-7.

21       Thus, Objector Ghassemian has not identified any legal theory as to meal or
22   rest breaks that has any reasonable chance of certification by a court under Rule
23   23.  Indeed, Thomas W. Falvey, one of the attorneys representing Plaintiffs in this
24   matter, was unable to gain certification on meal and rest break claims against CVS
25   in a prior wage and hour class action suit precisely because the court found that
26   conflicting statements by class members as to their ability to take meal and rest
27   breaks did not warrant certification.  *See Hadjavi v. CVS Pharmacy, Inc.*, 2011 WL
28   3240763, at *4 (C.D. Cal. July 25, 2011) ("In this present action, Plaintiffs have

failed to demonstrate that Defendants had a uniform or common policy in place that "prevented" employees from taking meal and rest breaks and did not provide overtime wages throughout all California locations. Defendants proffered declarations from pharmacists employed at various locations that contradict Plaintiffs' claim that a system wide policy or practice was in place that prevented pharmacists from taking rest or meal breaks."). Supplemental Declaration of Michael S. Morrison ISO Response to *Hyams* Objection ("Morrison Decl. ISO Response to Objections"), ¶ 5; Declaration of Thomas W. Falvey ISO Response to *Hyams* Objections ("Falvey Decl. ISO Response to Objections"), ¶¶ 4-6.

Objector Ghassemian also contends that she worked an average of two hours off the clock each week, time which she contends would have been paid entirely as overtime. Ghassemian Objection at 18. Based upon her stated schedule of eight-hour shifts, four days a week, this would amount to 30 minutes of off-the-clock work per day. Ghassemian Decl., ¶¶ 5-6. As with meal and rest breaks, Objector Ghassemian faces the same issue with off the clock work in that she does not reference any sort of records that would reflect the off-the-clock time that she may have incurred. Instead, she provides a grab bag of explanations for the off-the-clock work, e.g. "due to CVS's requirement for mandatory trainings, CVS's staffing policies, and the busy nature of the pharmacy". Ghassemian Decl., ¶ 5.

However, in the opinion of Plaintiffs' Counsel, just as with meal and rest breaks, an allegation of a *de facto* practice to violate the company's formal policy of requiring work to be recorded on the clock would be very difficult to certify. Indeed, as noted above, one of Plaintiffs' attorneys, Thomas W. Falvey brought just such a class claim against CVS in the Central District of California and was unsuccessful in gaining certification under Rule 23. *See Hadjavi v. CVS Pharmacy, Inc.*, 2011 WL 3240763, at *5 (C.D. Cal. July 25, 2011) ("Given that Plaintiffs' claims are predicated upon Defendants' purported act of maintaining inadequate records and incorrect wage statements …, individualized questions

would predominate as to whether employees worked "off-the-clock.").

The *Hadjavi* court is not unique in reaching the conclusion that it did given the conflicting evidence.  Numerous decisions involving California law claims are in accord in denying certification where individualized proof is required to demonstrate practices or conduct which encouraged off-the-clock work. *E.g., Ortiz v. CVS Caremark Corp*., No. C-12-05859 EDL, 2013 WL 6236743, *9 (N.D. Cal. Dec. 2, 2013) (denying certification because "the Court would have to conduct mini-trials of all putative class members to determine whether that employee performed the [work] off the clock, and if so, whether the employee was paid or not by adjusting the time records retroactively, as well as whether management had reason to know that the employee had worked without pay"); *Coleman v. Jenny Craig, Inc.*, No. 11CV1301- MMA DHB, 2013 WL 6500457, *8-9 (S.D. Cal. Nov. 27, 2013) (denying certification where plaintiff "offer[ed] insufficient evidence that any alleged off-the-clock work was due to a uniform policy or practice . . . rather than a result of an individual employee's own choices regarding how to manage her time");  *Campbell v. Best Buy Stores, L.P.*, No. LA CV12-07794 JAK, 2013 WL 5302217, at *11 (C.D. Cal. Sept. 20, 2013) (denying certification and rejecting argument that, despite policy prohibiting unpaid work, "high productivity levels" and requirement for "preapproval" of overtime created unofficial "policy to violate the policy"); *Collins v. ITT Educational Servs., Inc*., No. 12CV1395 DMS BGS, 2013 WL 6925827, *5 (S.D. Cal. July 30, 2013) (denying certification where evidence did not support plaintiff's allegations of "a uniform policy of discouraging [employees] from reporting overtime and pressuring them to work off-the-clock"); *In re AutoZone, Inc., Wage and Hour Employment Practices Litig*., 289 F.R.D. 526, 539 (N.D. Cal. 2012) (denying certification absent "substantial evidence that AutoZone requires its employees to work off-the-clock" in spite of prohibition); *Koike v. Starbucks Corp.*, No. C-06-3215 VRW, 2008 WL 7796650, at *8 (N.D. Cal. June 20, 2008) (denying certification of claim alleging unpaid work due to

labor budgets because "significant individual fact determinations would be required to establish that in fact this occurred . . . and that Starbucks knew of such off-the-clock work") ; *Campbell v. Vitran Express Inc.*, No. CV 11-5029 RGK (SHX), 2015 WL 7176110, at *6 (C.D. Cal. Nov. 12, 2015) ("Class certification is not proper in every instance where a plaintiff alleges an unofficial policy to violate wage-and-hour laws.").

Next, Objector Ghassemian claims damages under Labor Code Section 226(e)(1) for inaccurate wage statements. Ghassemian Objection at 18. However, her inaccurate wage statement claim is entirely derivative in nature. *Id.* As such, the success or failure of this claim would largely be based on the underlying claims at issue. Morrison Decl. ISO Motion for Final Approval, ¶ 84. *See e.g.*, *Dailey v. Sears, Roebuck and Co.*, 214 Cal. App. 4th 974, 1002 n.13 (2013) (because UCL, Section 226 and PAGA claims "are all derivative of [the plaintiff's] main claims regarding failure to pay overtime wages and provide uninterrupted rest and meal periods, we need not address separately the suitability of those claims for class certification.")

Moreover, separate and apart from the defenses that Defendants may present as to the underlying claims, Objector Ghassemian faces additional hurdles that are specific to a claim for wage statement penalties. Specifically, Labor Code Section 226(e)(1) requires the employee to show that they have 'suffered injury' as a result of the inaccurate wage statement, and that the employer's failure to include accurate information in the wage statement was 'knowing and intentional'. Objector Ghassemian made no effort to show that these crucial elements could be evaluated based on common evidence that is representative for all others.

As to Labor Code Section 226(e)(1)'s knowing an intentional requirement, "[w]here an employer has a good faith belief that it is not in violation of Section 226, any violation is not knowing and intentional." *Apodaca v. Costco Wholesale Corp.*, No. CV12-5664 DSF EX, 2014 WL 2533427, at *3 (C.D. Cal. June 5,

18

2014); *Ricaldai v. U.S. Investigations Servs., LLC*, 878 F. Supp. 2d 1038, 1047 (C.D. Cal. 2012); *Evans v. Wal-Mart Stores, Inc.*, No. CV 17-07641-AB (KKX), 2020 WL 6253695, at *7 (C.D. Cal. Sept. 14, 2020).

As Objector Ghassemian does not allege that CVS altered her timeclocks to mask pre- or post-shift work, or instructed her to work off-the-clock, it is not at all clear that CVS was aware of facts that called into question the accuracy of her wage statements, and thus, that CVS knowingly and intentionally issued inaccurate wage statements to Ms. Ghassemian. *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014) ("[T]he Court concludes that a "knowing and intentional" violation requires a showing that the defendant knew that facts existed that brought its actions or omissions within the provisions of section 226(a)").

Similarly, even if Objector Ghassemian were able to show that CVS knowingly and intentionally issued inaccurate wage statements to her, the penalty is still not available unless she is also able to show that she suffered an injury as a result of the inaccuracy. *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142–43 (2011) ("By employing the term " 'suffering injury,' " the statute requires that an employee may not recover for violations of section 226, subdivision (a) unless he or she demonstrates *an injury* arising from the missing information.") (emphasis in original). Objector Ghassemian's declaration is silent as to whether she (let alone the class) suffered any injury as a result of the inaccurate wage statements she states she received. Ghassemian Decl., ¶ 10.

Finally, the last claim Objector Ghassemian raises relates to waiting time penalties under Labor Code Section 203. This claim is dependent on her underlying wage and break claims. Because Objector Ghassemian has forsaken her burden in demonstrating a class wide, uniform policy, this derivative claim suffers from the same defect. Objector Ghassemian faces a similar issue with an award for waiting time penalties as she does with wage statement penalties. As with inaccurate wage statement penalties, Defendants could mount a good faith

defense to the imposition of this derivative penalty. *See Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2013 WL 1758815, at *9 (N.D. Cal. Apr. 24, 2013) ("There is no dispute by the parties that there is a comparable good faith defense for § 226 which, similar to § 203, requires knowing and intentional conduct.").

Specifically, California Code of Regulations, title 8, section 13520(a) states that "[a] 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." Cal. Code Regs. tit. 8, § 13520. The good faith defense to the penalty is not available if the defenses presented to the underlying claim are, "under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith". *Id.*; *see Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008). Thus, CVS may also be able to successfully raise a good faith defense to Objector Ghassemian's claim for waiting time penalties.

Moreover, a major issue which Objector Ghassemian completely fails to address in her objection is the impact of CVS's arbitration agreement on the class's claims. Beginning in or around October 2014, CVS implemented an arbitration program where all current employees (including Class Members in this case) were required to review CVS's arbitration program in an online training module. *See* Declaration of Robert Bailey, ¶¶ 3-4 [ECF No. 47-1]. CVS contends that its arbitration agreement contains a delegation clause, which means even challenges to enforceability would be decided by the arbitrator. *See Elmore v. CVS Pharmacy, Inc.*, No. 216CV05603ODWASX, 2016 663525 at *3 (C.D. Cal. Nov. 9, 2016) (holding CVS's arbitration agreement clearly and unmistakably demonstrates the parties' intent to arbitrate the issue of arbitrability). Binding Ninth Circuit authority prohibits the certification of a Rule 23 class that includes employees with

arbitration agreements containing a delegation clause.  *See O'Connor v. Uber Techs, Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018). Morrison Decl. ISO Motion for Final Approval, ¶ 51.

The arbitration agreements explicitly prohibit class proceedings, meaning the arbitrations would have to be conducted on an individual, bilateral basis.  *See Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407 (2019); *see also Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014) (acknowledging that, under the United States Supreme Court's decision in *Concepcion*, class action waivers in arbitration agreements are enforceable).  In the *Chalian* case, Defendants successfully compelled arbitration of the proposed class representative's (Tamara Aleksandryan) claims on an individual basis.  Morrison Decl. ISO Motion for Final Approval, ¶ 52.

Based on Plaintiffs' analysis of the data provided by CVS, only 425 people from the *Cabrera* class opted out of this program before the *Cabrera* lawsuit was filed.  The Pharmacist Settlement Class in Regions 65 and 72 (*Chalian* action) by definition does not include persons who agreed to arbitrate, and the total number of Pharmacist Settlement Class members is less than 400 hundred persons (approximately 397).  Thus, from the total Class Members, little more than 800 (approximately 825) have individual wage and hour claims that a court could adjudicate.  Morrison Decl. ISO Motion for Final Approval, ¶ 53.

Other factors also present raise further issues to Objector Ghassemian's claims.  For example, if she participated in prior class action settlements against CVS, she may have given up her claims for part of the statutory period due to *res judicata*.  MORRISON DECL ISO MPA, 34-35; *see Villacres v. ABM Industries, Inc.*, 189 Cal.App.4th 562 (2010).  Objector Ghassemian does not say whether she participated in a prior class action settlement(s) against CVS.

In the end, in her vague resuscitation of the allegations, Objector Ghassemian fails to identify any specific or cogent policy or practice which caused

her to work off the clock and miss her meal and rest breaks.  This is key because under Rule 23, Plaintiffs cannot pursue any and all instances of off-the-clock work or meal and rest break violations suffered by class members.  Instead, Plaintiffs can only pursue theories that comport with the requirements of class certification under Rule 23.

As such, it is worth noting that it is certainly possible that Objector Ghassemian had an uncommon and atypical experience working for Defendants, whereby she suffered far more wage and hour violations (e.g., at her claimed 100% violation rate for meal and rest breaks) than the average class member.  Indeed, Objector Ghassemian has sued CVS and her former supervisor for discrimination, harassment, and retaliation, in addition to the wage and hour claims discussed above, distinctly raising the possibility that something about her employment at CVS was different than that of most class members.  *See* Ghassemian Decl., Exhibit A, *Ghassemian v. CVS Pharmacy, Inc., et al.*, Orange County Superior Court Case No. 30-2019-01088926-CU-OE-CJC, Complaint.

However, to the extent Objector Ghassemian's particular circumstances have indeed given rise to an extraordinary rate of wage and hour violations for her, far and above what the average class member endured, she could simply have opted out from the settlement and pursued her own claims.  In fact, "[f]ederal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms." *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *7 (C.D. Cal. Jan. 30, 2014); *Corzine v. Whirlpool Corp.*, No. 15-CV-05764-BLF, 2019 WL 7372275, at *7 (N.D. Cal. Dec. 31, 2019).  This is particularly so in her case as Objector Ghassemian already has her own private counsel, already has filed suit on the wage and hour claims that she is concerned with, and is merely two months away from her trial on those claims.  Ghassemian Objection at 1.  *See Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 583-584, 588 (2010) (Rejecting an objector's

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE
PROPOSED CLASS ACTION SETTLEMENT

argument that the amount offered in settlement "grossly undervalue[d]" the potential exposure in Labor Code penalties where trial court properly weighed the employer's potential defenses against the claim for penalties and found the amount adequate).

In conclusion, Objector Ghassemian has not raised any argument as to valuation that would undermine the final approval of the proposed class action settlement. Her objection wholly fails to take into account broadly applicable considerations that make further litigation risky and tenuous for the *class*, namely the presence of an arbitration agreement that binds most class members and the Rule 23 concerns that could result in a denial of a contested class certification motion. Moreover, Objector Ghassemian focuses upon her own experiences without explaining how those experiences are broadly applicable to the settlement class. As an objector, this was Ms. Ghassemian's burden to carry. *In re Linkedin User Privacy Litig.*, 309 F.R.D. at 583. As such, this Court should overrule Ms. Ghassemian's objection to the proposed class action settlement.

### E. The Requested Attorneys' Fees are Reasonable and in Accord with Numerous Other Class Action Settlements.

In her final argument, Objector Ghassemian contends that Plaintiffs' requested attorneys' fees of 30% of the gross settlement amount, or approximately $3,111,403.98, are unreasonable. Ghassemian Objection at 19; Hennig Decl., ¶ 60.

To start with, Objector Ghassemian's counsel proclaims to be an expert in a class action matters and attorneys' fees, but their Objection is bereft of the legal standard governing attorney fee awards in this Circuit. When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award," as the starting point for analysis, and "justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, Ltd. P'ship.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citation omitted); *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268,

272 (9th Cir. 1989).  The percentage may be adjusted upward or downward based on "(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases." *Monterrubio*, 291 F.R.D. at 456 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048--50 (9th Cir. 2002)).  Nowhere does Objector Ghassemian make any attempt to parse through these enumerated factors in reaching her unsupported conclusion.  Objector Ghassemian's Objection is also devoid of any discussion of the risks, degree of success, and the lodestar cross check to confirm the propriety of the slight upward departure Class Counsel is seeking for the excellent result achieved on behalf of Settlement Class Members.

This critical omission by Objector Ghassemian's counsel speaks volumes about the purported skill and expertise Objector Ghassemian claims to possess in criticizing Class Counsel's request for attorneys' fees.[1]

But even performing a cursory review of similar fee awards in class action settlements, Objector Ghassemian undoubtedly would have come to the conclusion that courts have routinely approved <u>much greater multipliers</u> than the one Plaintiffs' Counsel are seeking here.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1050-51 (upholding 28% fee award that constituted a 3.65 multiplier); *id.* at 1052-54 (noting district court cases in the Ninth Circuit ***approving multipliers as high as 6.2***, and citing only 3 of 24 decisions with approved multipliers below 1.4); *McKenzie v. Federal Exp. Corp.*, 2012 WL 2930201 at *10 (C.D. Cal. July 2, 2012) (in wage and hour action, approving percentage-based fee award that

---

[1] Objector Ghassemian's counsel, the self-proclaimed fee expert that he claims to be, even miscalculates the lodestar of Plaintiffs' counsel.  While Mr. Hennig calculates it as $1,707,988, it was in fact $1,931,323.50 as stated in Plaintiffs' Motion for Attorneys' Fees at p. 22.  Mr. Hennig appears to have entirely omitted the time of attorney Armand R. Kizirian from his fee calculation.  Hennig Decl., ¶ 60.  Thus, Plaintiffs have requested $3,111,403.98 in fees on a lodestar of $1,931,323.50 with a multiplier of 1.62.  Plaintiffs' Motion for Attorneys' Fees at 22.  Given the amount of work required from Class Counsel since the Motion for Attorneys' Fees was filed, this multiplier is now even less.

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE PROPOSED CLASS ACTION SETTLEMENT

represented multiplier of **_3.2_**); *Johnson v. Brennan,* 2011 WL 4357376, at *20 (S.D.N.Y. 2011) (in wage and hour action, noting that "[c]ourts regularly award lodestar multipliers from **_two to six times_** lodestar") (emphasis added); *Beckman v. KeyBank N.A.,* 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (in wage and hour action, approving of **_6.3 multiplier_** in lodestar cross-check analysis); citing *Ramirez v. Lovin' Oven Catering Suffolk, Inc.,* 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (in wage and hour action, approving of **_6.8 multiplier_** in lodestar cross-check analysis); *Davis v. J.P. Morgan Chase & Co.,* 827 F.Supp.2d 172, 184–86 (W.D.N.Y.2011) (in wage and hour action, approving of **_5.3 multiplier_** in lodestar cross-check analysis); *see also Zeltser v. Merrill Lynch & Co., Inc.,* 2014 WL 4816134, at *10 (S.D.N.Y. 2014) (in wage and hour action, approving of **_5.1 multiplier_** in lodestar cross-check analysis and noting "[w]hile this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing Plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial."); *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 371 (S.D.N.Y. 2002) ("**_modest multiplier" of 4.65_** in wage and hour class action was "fair and reasonable") (emphasis added).

Consequently, Objector Ghassemian's argument that a multiplier of 1.62 on a lodestar of $1,931,323.50 should not be credited particularly as her argument is not grounded in any case law but is instead solely supported by the statement made by her counsel. Ghassemian Objection at 19-20; Henning Decl., ¶ 58-66.

Objector Ghassemian also argues that, apart from the multiplier request, the time records and costs statements submitted by Plaintiffs' Counsel do not show the appropriate work being done on this matter. Hennig Decl., ¶ 58-73. However, that is plainly not the case. Both the *Chalian* and *Cabrera* dockets reveal substantial litigation prior to settlement. In *Chalian,* Plaintiffs litigated a number of motions over the ensuing four years. *See* Morrison Decl. ISO Motion for Final Approval,

¶¶ 8-11, 45. Similarly, Plaintiffs were engaged in appellate litigation in the Ninth Circuit with *Cabrera* at the time of settlement. *See* Morrison Decl. ISO Motion for Final Approval, ¶¶ 12-18, 25, 45.

Moreover, it is important to note that "[a]n attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." *Steiny & Co. v. California Elec. Supply Co.*, 79 Cal. App. 4th 285, 293 (2000). Here, what the time records cannot capture is the significant and comprehensive knowledge that Plaintiffs' Counsel possess of Defendants' wage and hour policies and practices, having pursued substantial wage and hour class litigation against CVS on numerous prior occasions. Falvey Decl., ¶¶ 4-7, 15-16; Declaration of Michael H. Boyamian ISO Motion for Attorneys' Fees ("Boyamian Decl. ISO Motion for Attorneys' Fees"), ¶¶ 7-8. This suit, which is the _15th wage and hour class action suit against CVS_ pursued by the most experienced member of Plaintiffs' litigation team, Thomas W. Falvey, would naturally not require nearly as much formal discovery on the part of Plaintiffs to pursue. Falvey Decl., ¶ 4. Put differently, from day one of this suit, Plaintiffs' Counsel already had comprehensive knowledge of CVS's policies and practices and thus could focus their attention on litigation as opposed to formal discovery and the concomitant expenditure on expert and other costs. Falvey Decl., ¶¶ 4-7; Boyamian Decl. ISO Motion for Attorneys' Fees, ¶¶ 7-8.

Mr. Hennig's contrary opinion about the work of Plaintiffs' Counsel should not be credited by the Court, particularly as he does not appear to specialize in this type of litigation in his practice. Hennig Decl., ¶¶ 7-31. Mr. Hennig's declaration lists only ten class or PAGA matters that he has been involved in since becoming an attorney in 1994. In other words, someone with approximately ten class action/PAGA cases is opining as an expert on class actions and telling counsel with hundreds of millions of dollars in settlements how to appropriately litigate their case. If that sounds ridiculous, it is because it is. Hennig Decl., ¶¶ 8, 30-31.

In stark contrast to Mr. Hennig's light experience with complex litigation, Plaintiffs' Counsel have significant and substantial experience litigating wage and hour class action suits and other complex litigation. In example, Michael S. Morrison has been in practice for over 20 years, is lead counsel on 11 class action suits that are *presently* active, routinely speaks on class action matters (esp. wage and hour), otherwise has comprehensive experience in the wage and hour field and success which dwarfs that of Mr. Hennig. Declaration of Michael Morrison ISO Motion for Attorneys' Fees, Costs, and Service Awards ("Motion for Attorneys' Fees"), ¶¶ 2-6. Attorney R. Craig Clark has been in practice for over 30 years and similarly has broad and in-depth experience litigating wage and hour matters in state and federal court. Declaration of R. Craig Clark ISO Motion for Attorneys' Fees, ¶¶ 3-12. Another one of Plaintiffs' attorneys, Michael H. Boyamian similarly has years of experience litigating wage and hour claims and has presented on the topic at various seminars to other attorneys. Declaration of Michael H. Boyamian ISO Motion for Attorneys' Fees, ¶¶ 2-6. Finally, Thomas W. Falvey has over 40 years of experience in the field of employment law and has litigated 15 wage and hour class action suits against CVS alone. Declaration of Thomas W. Falvey in Support of Plaintiffs' Opposition to *Hyams'* Plaintiffs Objection, ¶¶ 2-6. Mr. Hennig's arrogance in criticizing these attorneys' work is hubris of the highest order.

Consequently, Objector Ghassemian's arguments on the propriety of the fee request made by Plaintiffs' Counsel are unavailing and should not be accepted by this Court.

**F.** ***Like the Hyams Objections, Counsel for Objector Ghassemian Suffers From the Same Level of Hypocrisy***

As with the objections lodged by the *Hyams'* Plaintiffs, this Court should also not overlook the glaring hypocrisy on the part of Mr. Hennig concerning the many items he disputes over in this matter, he apparently had no problem

27

advocating for in the limited class action cases his office previously handled on behalf of class members.

In particular, in *Foscue v. Ken Garff Automotive Group*, *et al.* (Los Angeles Sup. Ct. Case No. BC648132) ("*Foscue*"), filed on January 26, 2017, Mr. Hennig's office filed a hybrid individual and putative class action case. The individual case consisted of the following claims: (1) Retaliation in Violation of Cal. Lab. Code §1102.5; (2) Wrongful Termination in Violation of Public Policy; (3) FEHA — Discrimination; and (4) FEHA — Retaliation. In that same lawsuit, Mr. Hennig also pled a class action on behalf of a putative class of similarly situated employees for (4) Failure to Provide All Required Meal and Rest Breaks; (5) Failure to Pay All Wages Owed Semi-Monthly; (6) Unlawful Itemized Wage Statements; (7) Waiting Time Penalties; (8) Unfair Competition; and (9) Penalties under Labor Code §2698, et seq. [PAGA]. *See* Plaintiffs' Request for Judicial Notice, Ex. 1.

A cursory review of the docket and the documents filed in the *Foscue* matter reveal that within two months' time, the parties discussed the prospects of mediation and in the same calendar year, on September 28, 2017, a mediation was held before a private mediator in which the parties reached an agreement in principle. *See* Plaintiffs' Request for Judicial Notice, Ex. 1, p. 1.

The *Foscue* case consisted of the same (alleged) defects that Mr. Hennig now takes issue with in the *Chalian* and *Cabrera* matter. In particular, those include the following points:

(a)     The Gross Settlement Amount was for $125,000. However, Mr. Hennig's office calculated the Maximum Exposure to be $3,556,825.00. Accordingly, the recovery was 3.5% of what Mr. Hennig calculated the overall damages to be;

(b)     The allocation for penalties under the Private Attorneys General Act of 2004 was for $1,300, $975.00 was deemed to be the property of the LWDA. The PAGA allocation therefore was also approximately one percent of the

settlement;

(c)     The requested attorneys' fees was for $41,625 of 33% of the Gross Settlement Amount with reimbursement for costs incurred in the amount of $9,000, if approved, with administrator expenses would have accounted for almost fifty percent of the Gross Settlement Amount;

(d)     The basis for the calculations of the exposure, the determination of the reasonableness and fairness of the settlement, and the assessment of the claims at issue were exclusively based on "informal discovery" meaning no formal discovery whatsoever was conducted on the claims alleged in the complaint; and

(e)     The average recovery amount for 171 putative class members would have been $357.60 based on the net settlement amount of $61,150.  *See* Plaintiffs' Request for Judicial Notice, Ex. 1, pp. 3-4.

The court in *Foscue* ultimately denied – without prejudice – the motion for preliminary approval citing a myriad of concerns, most notably, the appearance of impropriety and conflict in settling both the individual and class action case at mediation, coupled with Mr. Hennig's steadfast refusal to disclose the amount Plaintiff Foscue received for his individual claims under the cloak of "confidentiality."  Instead of making any renewed attempt to rectify the issues the court in *Foscue* noted, Mr. Hennig's office opted to abandon the hopes of delivering class-wide relief for 171 class members and instead move forward on Mr. Foscue's individual settlement thus highlighting and acknowledging the apparent conflict the court in *Foscue* suspected.  *See* Plaintiffs' Request for Judicial Notice, Exs. 2, 3.

///

///

///

///

///

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE PROPOSED CLASS ACTION SETTLEMENT

# IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the court overrule the Ghassemian Objection in whole, grant final approval of class action settlement, and grant the requested attorneys' fees, costs, and service awards.

Dated: November 25, 2020　　　　BOYAMIAN LAW, INC.
　　　　　　　　　　　　　　　　ALEXANDER MORRISON + FEHR LLP
　　　　　　　　　　　　　　　　LAW OFFICES OF THOMAS W. FALVEY
　　　　　　　　　　　　　　　　CLARK LAW GROUP
　　　　　　　　　　　　　　　　UNITED EMPLOYEES LAW GROUP


　　　　　　　　　　　　　　　　By: /s/ Armand R. Kizirian
　　　　　　　　　　　　　　　　Armand R. Kizirian
　　　　　　　　　　　　　　　　Attorneys for Plaintiffs SEVAG CHALIAN,
　　　　　　　　　　　　　　　　SIGFREDO CABRERA, ENKO TELAHUN,
　　　　　　　　　　　　　　　　CHRISTINE MCNEELY, PATRICK
　　　　　　　　　　　　　　　　BRENNAN, and the Settlement Class

PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE
PROPOSED CLASS ACTION SETTLEMENT