1 | Michael H. Boyamian, SBN 256107
2 | Armand R. Kizirian, SBN 293992
**BOYAMIAN LAW, INC.**
3 | 550 N. Brand Blvd., Suite 1500
Glendale, CA 91203
4 | Telephone: (818) 547-5300
Facsimile: (818) 547-5678
5 | E-mail: michael@boyamianlaw.com
         armand@boyamianlaw.com

6 | Michael S. Morrison, SBN 205320
**ALEXANDER MORRISON + FEHR LLP**
7 | 1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
8 | Telephone: (310) 394-0888
Facsimile: (310) 394-0811
9 | E-mail: mmorrison@amfllp.com

10 | Attorneys for Plaintiffs SEVAG CHALIAN,
SIGFREDO CABRERA, ENKO TELAHUN,
11 | CHRISTINE MCNEELY, PATRICK BRENNAN,
and the Settlement Class

12 | (*Additional Counsel Listed on Following Page*)

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public, | Case No.: 2:16-cv-08979-AB-AGR |
| | *Related Case No.: 2:20-cv-02401-AB-AGR* |
| Plaintiffs, | *Assigned to Hon. Andre Birotte Jr.* |
| v. | **DECLARATION OF ARMAND R. KIZIRIAN IN SUPPORT OF PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARVIN GHASSEMIAN TO THE PROPOSED CLASS ACTION SETTLEMENT** |
| CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive, | |
| Defendants. | [*Filed Concurrently with Plaintiffs' Response to Objections of Parvin Ghassemian to the Proposed Class Action Settlement*] |
| | Date: December 4, 2020 |
| | Time: 10:00 a.m. |
| | Location: Courtroom 7B |
| | Complaint Filed: July 20, 2016 |
| | Action Removed: December 5, 2016 |

R. Craig Clark (SBN 129219)
cclark@clarklawyers.com
Alicja A. Urtnowski (SBN 321215)
aurtnowski@clarklawyers.com
**CLARK LAW GROUP**
3258 Fourth Avenue
San Diego, CA 92103
Telephone: (619) 239-1321
Facsimile:  (888) 273-4554

Thomas W. Falvey, SBN 65744
**LAW OFFICES OF THOMAS W. FALVEY**
550 N. Brand Blvd., Suite 1500
Glendale, CA 91203
Telephone:   (818) 547-5200
Facsimile:    (818) 500-9307
E-mail: thomaswfalvey@gmail.com

Walter Haines, SBN 071075
**UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Telephone: (562) 256-1047
Facsimile: (562) 256-4554

Attorneys for Plaintiffs SEVAG CHALIAN,
SIGFREDO CABRERA, ENKO TELAHUN,
CHRISTINE MCNEELY, PATRICK BRENNAN,
and the Settlement Class

1

## <u>DECLARATION OF ARMAND R. KIZIRIAN</u>

I, Armand R. Kizirian, declare as follows:

1.     I am an attorney duly licensed to practice law in the State of California.  I am a member in good standing of the State Bar of California, and the Central District of California.  I am one of the attorneys of record for Plaintiffs Sevag Chalian, Sigfredo Cabrera, Enko Telahun, Christine McNeely, and Patrick Brennan ("Plaintiffs") in the instant litigation.  All of the information set forth herein is based on my personal and firsthand knowledge and if called and sworn as a witness, I could and would competently testify thereto.

2.     Attached as Exhibit "1" to the Declaration of Armand R. Kizirian is a true and correct copy of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement dated February 2, 2018 in *Foscue v. Ken Garff Automotive Group, et al.* (Los Angeles Sup. Ct. Case No. BC648132).

3.     Attached as Exhibit "2" to the Declaration of Armand R. Kizirian is a true and correct copy of the Court's Order Denying Preliminary Approval of Class Action and PAGA Settlement dated July 3, 2018 in *Foscue v. Ken Garff Automotive Group, et al.* (Los Angeles Sup. Ct. Case No. BC648132).

4.     Attached as Exhibit "3" to the Declaration of Armand R. Kizirian is a true and correct copy of the Request for Dismissal of Class Action dated September 25, 2018 in *Foscue v. Ken Garff Automotive Group, et al.* (Los Angeles Sup. Ct. Case No. BC648132).

5.     Attached as Exhibit "4" to the Declaration of Armand R. Kizirian is a true and correct copy of Plaintiff Jeffrey Winters' Notice of Motion and Unopposed Motion for Award of Reasonable Attorneys' Fees and Costs dated August 17, 2011 in *Jeffrey Winters v. Base Productions, Inc.*, Los Angeles Superior Court Case No. BC410650.

I declare under penalty of perjury that under the laws of the State of California and the United States of America that the foregoing is true and correct.

2

Executed on November 25, 2020, in Glendale, California.

/s/ Armand R. Kizirian
Armand R. Kizirian

DECLARATION OF ARMAND R. KIZIRIAN IN SUPPORT OF PLAINTIFFS' RESPONSE TO GHASSEMIAN OBJECTIONS TO THE PROPOSED CLASS ACTION SETTLEMENT

# Exhibit "1"

1    ROB HENNIG (STATE BAR NO. 174646)
2    BRANDON RUIZ (STATE BAR NO. 264603)
     SHOSHEE JAU (STATE BAR NO. 311866)
3    HENNIG RUIZ P.C.
     3600 WILSHIRE BLVD, SUITE 820
4    LOS ANGELES, CA 90010
     TELEPHONE: 213-386-3741
5    FACSIMILE: 213-386-3740

6    Attorneys for Plaintiff John Foscue

**FILED**
Superior Court of California
County of Los Angeles

**FEB 02 2018**

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Rita Nazaryan

7

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **FOR THE COUNTY OF LOS ANGELES, UNLIMITED JURISDICTION**

10   JOHN FOSCUE, an individual, individually       CASE NO. BC648132
11   and on behalf of all others similarly situated,
                                                     Assigned for all purposes to:
12                    Plaintiff;                     Hon. Maren E. Nelson in Dept. 307

13          vs.                                      **CLASS ACTION**

14   KEN GARFF AUTOMOTIVE GROUP, d/b/a               **NOTICE OF MOTION AND MOTION**
15   CULVER CITY TOYOTA, a corporation;              **FOR ORDER PRELIMINARILY**
     CULVER CITY TOYOTA, d/b/a CULVER               **APPROVING CLASS ACTION**
16   CITY SCION, a corporation; and DOES 1           **SETTLEMENT**
17   THROUGH 90, inclusive,
                                                     Date: February 28, 2018
18                    Defendants.                    Time: 10:30 a.m.
                                                     Department: 307
19
20                                                   Complaint Filed: January 26, 2017
21
22
23   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**
24          Plaintiff John Foscue ("Class Representative") hereby moves for an Order (1)
25   preliminarily approving the proposed class action settlement in the above-captioned case, (2)
26   provisionally certifying a settlement class, (3) approving appointment of Phoenix Class Action
27   Administration Solutions as settlement administrator, (4) approving as to form and content the
28

1

MOTION FOR ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT

CIT/CASE:     BC648132
LEA/DEF#:

RECEIPT #: CCW477461016
DATE PAID: 02/02/18   02:39 PM
PAYMENT:  $60.00                 310
RECEIVED:

        CHECK:              $60.00
        CASH:                $0.00
        CHANGE:              $0.00
        CARD:                $0.00

1   proposed notice, claim form, and method used to request exclusion from the settlement, (5)

2   directing the mailing of the notice to the settlement class, and (6) scheduling a final approval

3   hearing on the question of whether the settlement, including the payment of attorneys' fees and

4   costs, penalties, and the Class Representative's enhancement payment, should be finally

5   approved as fair, reasonable, and adequate as to the members of the class.

6           This motion is made pursuant to Rule 3.769 of the California Rules of Court, which

7   provides for court approval of the settlement of a purported class action and allows the Court to

8   preliminarily certify a provisional class for settlement purposes.

9           The basis for this motion is that the proposed settlement is fair, adequate, and reasonable

10  and in the best interests of the class as a whole, and that the procedures proposed by the parties

11  are adequate to ensure the opportunity of class members to participate in, opt out of, or object to

12  the settlement.

13          This motion will be based on the Memorandum of Points and Authorities set forth herein,

14  the Class Action Settlement Agreement (the "Agreement") attached hereto as Exhibit A, the

15  Declaration of Brandon Ruiz, Esq. ("Ruiz Decl.") in support of the motion, and such evidence or

16  oral argument as may be presented at the hearing, and on the complete records and file herein.

17

18          DATED: February 2, 2018                    HENNIG RUIZ P.C.

19

20                                                     _____
                                                       Rob Hennig
21                                                     Brandon Ruiz
                                                       Shoshee Jau
22                                                     Attorneys for Plaintiff John Foscue

23

24

25

26

27

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION.**

Plaintiff John Foscue ("Plaintiff" or "Class Representative") filed this class action lawsuit, claiming that he and other current and former employees of Defendant GL CCT, LLC at Culver City Toyota ("Defendant") are entitled to compensation for missed meal periods, inaccurate itemized wage statements, waiting time penalties, and associated penalties for violations of the Labor Code. Defendant denies Plaintiff's allegations in their entirety, and further denies any wrongdoing or misconduct on its part. Defendant contends that neither Plaintiff nor the putative class of employees he purports to represent has sustained any damages in any way.

Plaintiff and Defendants (hereinafter the "Parties") engaged in informal discovery, exchanged voluminous documents and information, and thoroughly investigated their respective claims and defenses. The Parties began settlement discussions in April 2017. On or about September 28, 2017, the Parties reached a tentative settlement, in part with the aid of mediator Jeffrey Krivis. *See* Declaration of Brandon Ruiz ("Ruiz Decl.") ¶¶ 4-5.

The settlement is a fair result for the class. The settlement occurred as a result of arm's-length negotiations by experienced counsel after informal discovery was exchanged between the Parties. *See* Ruiz Decl. ¶¶ 6-7. The settlement will result in significant financial benefit to the participating claimants, under terms that are by any measure fair, reasonable and adequate. *See* Ruiz Decl. ¶¶ 6-7; *See Dunk v. Ford Motor Co.*, (1996) 48 Cal. App. 4th 1794, 1801-02.

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed settlement and stipulation, (2) provisionally certify the proposed settlement class, (3) approve the appointment of the proposed settlement administrator, (4) approve as to form and content the proposed notice and claim form, (5) direct the mailing of the notice to the settlement class, and (6) schedule a final fairness and approval hearing.

///

///

## II.   PROCEDURAL BACKGROUND AND SETTLEMENT OVERVIEW.

### A.   <u>Class Definition</u>

Solely for purposes of this Settlement, the Parties have stipulated to define the settlement "Class" as meaning any and all persons who are employed or who have been employed by Defendant Culver City Toyota in a non-exempt sales position at any time during the Class Period.  The Class does not include, however, (i) any person who timely and properly requests exclusion from the Class and (ii) any person who, prior to the Court's approval of this Settlement, released any Defendant from wage and hour claims, including but not limited to claims for unpaid wages or overtime, as a result of a settlement reached in any other matter.  The "Class Period" is January 26, 2013 through the date of preliminary approval of the Settlement. *See* Class Action Settlement Agreement ("Agreement"), ¶ 3.  The parties estimate that the class size is approximately 171 employees.

### B.   <u>Case Summary</u>

Named Plaintiff John Foscue filed the initial Complaint in this action against Defendants on January 26, 2017, a First Amended Complaint on February 7, 2017, and a Second Amended Complaint on November 15, 2017 (the "Complaint"). The Complaint alleges that Plaintiff and other "similarly situated" current and former employees of Defendants have been denied, among other things, wages, meal periods, and accurate itemized wage statements.  The Complaint seeks compensation for statutory penalties, civil penalties, injunctive relief, costs, interest, and attorneys' fees, as allegedly due to Plaintiff and putative class who worked for Defendants in the four years prior to the filing of the lawsuit, and asserts causes of action for (1) failure to provide lawful meal periods; (2) failure to pay all wages owed semi-monthly, (3) failure to furnish accurate itemized wage statements, (4) waiting time penalties, (5) unfair competition; and (6) violations under the Private Attorney General Act ("PAGA").  *See* Ruiz Decl. ¶ 4.

The parties mediated this case on September 28, 2017 with mediator Jeffrey Krivis, and at the mediation, the parties reached an agreement to settle in principal. The parties then executed a written Class Action Settlement Agreement on November 28, 2017.  To date, no class

1   has been certified, and no court has made any findings that Defendants engaged in any

2   wrongdoing or in any wrongful conduct or otherwise acted improperly or in violation of any

3   state or federal law, rule or regulation, with respect to the issues presented in the litigation.

4       The Parties engaged in investigation and informal discovery into the factual and legal

5   claims presented in the Complaint. *See* Ruiz Decl. ¶ 5.  Broad informal discovery took place

6   between the Parties in which Defendants and Plaintiff exchanged a considerable amount of

7   information and documentation.  Plaintiff and Defendants have collectively reviewed and

8   analyzed hundreds of pages of documents.  *Id.*  The parties also apprised each other of their

9   respective factual contentions, legal theories, and defenses. *See* Ruiz Decl. ¶¶ 5-7.  Additionally,

10  during the course of their information exchange, the Parties have engaged in good faith, arms-

11  length negotiations aimed at settling their dispute.  *Id.*

12      Armed with data regarding the composition of the putative class members, the Parties

13  were able to engage in informed negotiations of possible settlement alternatives. *Id.*  Defendants

14  provided Plaintiff's counsel with data regarding the class composition.  Based on the data

15  provided by Defendants, Plaintiff's counsel prepared a damages model.  Plaintiff's counsel

16  calculated maximum damages of $887,895.  The estimated potential damages for missed meal

17  breaks totaled $345,895 and the estimated potential damages for waiting time penalties totaled

18  $542,000.  Plaintiff asserts that if he prevailed this would be the outside exposure for

19  Defendants.  Plaintiff calculated this number using the class composition information provided

20  by Defendants, including a random representative sample of timekeeping and payroll data that

21  indicated that Defendants failed to provide meal breaks to its employees approximately 55

22  percent of the time.  Defendants dispute that they owe any sums to Plaintiff or the putative class.

23  In settling this case, Plaintiff took into account Defendants' defenses to the claims asserted.  *See*

24  Ruiz Decl. ¶¶ 6.

25      **C.**     **Settlement Terms**

26      The settlement, described more fully in the parties' proposed Class Action Settlement

27  Agreement ("Agreement") attached as Exhibit A hereto, provides for certification of a

28

3

1  provisional settlement class for settlement purposes only, and for a gross settlement amount of

2  one hundred twenty-five thousand dollars ($125,000.00) (the "Gross Settlement Amount"). *See*

3  Agreement, ¶ 11.

4      The Gross Settlement Amount will be allocated as follows: (a) a settlement payment to

5  each settlement class member who does not request to be excluded (an "Authorized Claimant")

6  in an amount determined by a formula that takes into account the net amount of the Gross

7  Settlement Amount available for settlement and the number of days worked by the Authorized

8  Claimant in the Class Period; (b) the attorneys' fees awarded to Class Counsel in an amount not

9  to exceed $41,625 (one third of the Gross Settlement Amount); (c) reimbursement of litigation

10  costs incurred by Class Counsel in an amount not to exceed $9,000; (d) an Enhancement Award

11  to Plaintiff in an amount not to exceed $5,000; (e) all Claims Administration expenses by the

12  settlement administrator, Phoenix Class Action Administration Solutions, estimated to be $7,250

13  to; and (f) payment to the California Labor Workforce Development Agency for Private

14  Attorney General Act ("PAGA") penalties and damages under California Labor Code section

15  2699 et seq. in an amount not to exceed $975.00. The balance of the Gross Settlement Amount

16  that is not allocated as above or claimed by putative class members eligible to submit a claim

17  shall be transmitted as follows: 25% to the State of California State Treasury for deposit in the

18  Trial Court Improvement and Modernization Fund; 25% to the State of California State Treasury

19  for deposit into the Equal Access Fund of the Judicial Brand; 50% to Legal Aid at Work. If the

20  Court grants final approval to the settlement, there shall be no reversion of unclaimed amounts of

21  the Gross Settlement Amount to Defendants. *See* Agreement, ¶ 35.

        **1.**      **Nature of Any Injunctive Relief**

22

23      There is no injunctive relief requested as part of this settlement.

        **2.**      **Amount and Manner of Distribution of Compensation**

24

25      The amount and manner of the distribution of the Gross Settlement Amount is set forth in

26  Paragraph 35 of the Agreement. Payments from the Gross Settlement Amount shall be made, as

27  specified in this Agreement and approved by the Court, for: (1) Individual Settlement Payments

28

1  to Settlement Class Members who do not request to be excluded, (2) Class Representative

2  Enhancement Award, (3) Class Counsel Award, (4) PAGA Payment, and (6) the Settlement

3  Administration Costs.  The amount of the Maximum Gross Settlement Amount remaining after

4  these deductions will constitute the "Net Settlement Amount."  Individual Settlement Payments

5  will be paid from the Net Settlement Amount and shall be paid pursuant to the terms set forth as

6  follows.  Defendant will calculate the Total Hours Worked by each Settlement Class Member.

7  The respective Total Hours Worked for each Settlement Class Member will be divided by the

8  Total Hours Worked for all Settlement Class Members, resulting in the Payment Ratio for each

9  Settlement Class Member.  Each Settlement Class Member's Payment Ratio is then multiplied

10  by the Net Settlement Amount to determine his or her Individual Settlement Payment.  Each

11  Individual Settlement Payment will be reduced by any legally mandated deductions for each

12  Settlement Class Member.  Settlement Class Members are not eligible to receive any

13  compensation under the Settlement other than Individual Settlement Payments.  *See* Agreement,

14  ¶ 35(a).

15  **3.      Right to Terminate Settlement**

16  If more than five percent (5%) of all Settlement Class Members submit written requests

17  for exclusion from the Settlement, Defendant shall have, in its sole discretion, the option to

18  terminate this Settlement.  *See* Agreement, ¶ 37.

19  **4.      Scope of the Release**

20  The scope of the release is set forth in Paragraph 29 of the Agreement.  As of either (a)

21  the date sixty (60) days after the entry of the Final Judgment and order finally approving the

22  Settlement, if no motions for reconsideration and no appeals or other efforts to obtain review

23  have been filed, or (b) in the event that a motion for reconsideration, an appeal or other effort to

24  obtain review of the Final Judgment and order finally approving the Settlement, the date sixty

25  (60) days after such reconsideration, appeal or review has been finally concluded and is no

26  longer subject to review, whether by appeal, petition for rehearing, petition for review or

27  otherwise, Plaintiff and the Settlement Class Members who are not excluded from this

28

1   Settlement, on behalf of themselves and each of their heirs, representatives, successors, assigns

2   and attorneys, hereby release Defendant and any parent, subsidiary, affiliate, predecessor or

3   successor, and all agents, employees (current and former), officers, directors, insurers, and

4   attorneys of Defendant from any and all known and unknown claims, losses, damages, liquidated

5   damages, penalties, interest, liabilities, causes of action, civil complaints, arbitration demands or

6   suits which arise or could have arisen from the facts asserted in the Action, including the Second

7   Amended Complaint, without limited to the foregoing, all claims under the California Labor

8   Code as alleged in the Action, including, but not limited to, violations of section 512, 226.7, 201-

9   204, 510, 1194, 1197.1, 1198, 226, 2698, et seq., and California Unfair Competition Law (Cal.

10   Bus. & Prof. Code §§ 17200, et seq.) or other remuneration whether sought under statute, tort,

11   contract or as an unfair business practice, as consideration for Defendant's payment of the Gross

12   Settlement Amount.  Plaintiff and the Class Members are not waiving any rights that cannot

13   legally be waived, including (i) any claims for unemployment compensation or workers'

14   compensation benefits or (ii) any claims relating solely to the validity or enforceability of this

15   Agreement. *See* Agreement, ¶ 29.

16        **5.**    **Tax**

17       The parties make no representations as to the tax treatment or legal effect of the payment

18   of the Gross Settlement Amount, and Settlement Class Members are not relying on any statement

19   or representation by the parties in this regard. *See* Agreement, ¶ 31.

20        **6.**    **Affirmative Obligations by Class Members and Class Counsel**

21       All Settlement Class Members who do not request to be excluded from the Settlement

22   will receive Individual Settlement Payments from the Net Settlement Amount; submission of a

23   claim form is not necessary to receive an Individual Settlement Payment. *See* Agreement, ¶ 34.

24       In order to receive payment of attorney's fees and costs, Class Counsel must file an

25   application with the Court to be heard at the time of the final approval hearing. *See* Agreement,

26   ¶ 35.

27

28

6

### 7.   *Cy Pres* Distributions

Any unpaid cash residue or unclaimed or abandoned class member funds generally attributable to California residents, plus any accrued interest that has not otherwise been distributed pursuant to order of this Court, shall be transmitted as follows: (1) Twenty-five percent (25%) to the State of California State Treasury for deposit in the Trial Court Improvement and Modernization Fund, established in section 77209 of the Government Code, and subject to appropriation in the annual Budget Act for the Judicial Council to provide grants to trial courts for new or expanded collaborative courts or grants for Sargent Shriver Civil Counsel; (2) Twenty-five percent (25%) to the State of California State Treasury for deposit into the Equal Access Fund of the Judicial Branch, to be distributed in accordance with sections 6216 through 6223, inclusive, of the Business and Professions Code, except that administrative costs shall not be paid to the State Bar or the Judicial Council from this sum; (3) The remaining fifty percent (50%) of any such unclaimed funds will be sent to Legal Aid at Work. *See* Agreement, ¶ 35(b).

### 8.   Statement Regarding Class Notice

Upon receipt of the Class Information, the Settlement Administrator will perform a search based on the National Change of Address Database to update and correct any known or identifiable address changes.  Within ten (10) business days after receiving the Class Information from Defendant as provided herein, the Settlement Administrator shall mail copies of the Notice to all Settlement Class Members via regular First Class U.S. Mail.  The Settlement Administrator shall exercise its best judgment to determine the current mailing address for each Settlement Class Member.  The address identified by the Settlement Administrator as the current mailing address shall be presumed to be the best mailing address for each Settlement Class Member. Any Notice returned to the Settlement Administrator as non-delivered on or before the Response Deadline shall be re-mailed to the forwarding address affixed thereto.  If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine a correct address by use of skip-tracing, or other search using the name, address and/or Social Security number of

1 the respective Settlement Class Member, and shall then perform a re-mailing, if another mailing

2 address is identified by the Settlement Administrator.  If a Settlement Class Member's Notice is

3 returned to the Settlement Administrator more than once as non-deliverable on or before the

4 Response Deadline, then an additional Notice need not be re-mailed and the Settlement Class

5 Member is deemed to have received Notice.  *See* Agreement, ¶ 34(a).

6          The manner of giving notice complies with CRC 3.776(e)-(f).  The mailed notice

7 program provides the best practicable notice to members of the Settlement Class.  The proposed

8 notice program, both in the manner of dissemination and in its content, provides the most direct

9 way of apprising the Settlement Class members of this Settlement.  The "standard [for

10 disseminating notice] is whether the notice has "a reasonable chance of reaching a substantial

11 percentage of the class members.'"  *Wershba v. Apple Computer*, (2001) 91 Cal. App. 4th 224,

12 251 (*quoting Cartt v. Superior Court* (1975) 50 Cal. App. 3d 960, 973-974).  This notice

13 program is reasonably calculated to provide meaningful notice and is the best notice practicable

14 under the circumstances and clearly satisfies California law and due process requirements.

15 *Wershba, supra*, 91 Cal. App. 4th at p. 251.

16          **9.        Typicality and Adequacy of Representation.**

17          A class representative's claims are typical when they arise from the same event or course

18 of conduct that gives rise to the claims of the class, and are based on the same legal theory.

19 *Classen v. Weller*, (1983) 145 Cal. App. 3d 27, 46-47.  In this case, Plaintiff asserts he has

20 suffered the same harms as the class members he seeks to represent.

21          Plaintiff asserts that he has also demonstrated that he will aggressively and competently

22 assert the interests of the proposed settlement class.  He has retained competent counsel,

23 experienced in litigating class action claims in the employment context.  *See* Ruiz Decl. ¶¶ 11-12.

24          There are two requirements for the adequacy of representation requirement to be

25 satisfied.  First, "[a]dequacy of representation depends on whether the Plaintiffs' attorney is

26 qualified to conduct the proposed litigation."  *McGhee v. Bank of Am.*, (1976) 60 Cal.App.3d

27

28

MOTION FOR ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT

1   442, 450.  Second, the adequacy of representation depends on whether the "Plaintiffs' interests

2   are…antagonistic to the interests of the class." *Id.*

3          Plaintiff asserts that he is similarly situated to the other class members.  He asserts that he

4   was subject to the same meal break and wage violations as were the putative class.  He further

5   alleges that Defendants' policies and procedures applied to Plaintiff and the other class members

6   in a uniform manner.

7          Plaintiff further asserts that he can and will adequately represent the class in this matter.

8   Plaintiff asserts that he has no actual conflict of interest that would hinder the prosecution of this

9   matter on behalf of the class.  Plaintiff believes that he has aggressively and competently asserted

10  the interests of the class members, and that he has acted in the best interests of the putative class

11  as a whole, rather than in his own interests.  *See Ruiz Decl.* ¶¶ 11-12.

12          **10.    Costs and Fees**

13         Per the Agreement, Plaintiff's Counsel may request, and Defendants agree to not oppose

14  or object to any application or motion by Class Counsel for attorneys' fees not to exceed Forty-

15  One Thousand Six Hundred Twenty-Five Dollars ($41,625) or 33.3% of the Gross Settlement

16  Amount.  Defendant also agrees not to oppose any application or motion by Class Counsel for

17  the reimbursement of actual costs of up to Nine Thousand Dollars ($9,000), subject to

18  submission of records to the Court, associated with Class Counsel's prosecution of this Action

19  from the Gross Settlement Amount, and Class Counsel agrees not to appeal any award of

20  attorneys' fees or costs.  Any portion of the requested Class Counsel Award that is not awarded

21  to Class Counsel shall be part of the Net Settlement Amount and distributed to Settlement Class

22  Members as provided in the Agreement.  *See* Agreement, ¶ 35(d).

23         Plaintiff's Counsel shall submit an application in support of their request for fees and

24  costs at the time of the final approval hearing.  Plaintiff's Counsel represents that the requested

25  fees and costs reflect the reasonable value of the actual hours and costs incurred by Plaintiff's

26  Counsel in this matter.  Plaintiff asserts that the requested fee award of one third of the

27  settlement consideration here falls well within the percentages awarded in other class action

28

litigation by this Court and numerous California trial courts. See Elizabeth J. Cabraser, *California Class Actions Practice and Procedure* § 15.03 at pp. 15-3- 15.4.1 (2006) (discussing that California Courts recognize a third of the recovery as a benchmark and citing cases). Accordingly, Plaintiff and his Counsel assert that Plaintiff's Counsel's fee request is fair and reasonable, is consistent with such awards in California, and is reasonable given the history of this action and the results obtained by Plaintiff's Counsel.

## 11.   Incentive Payments

Plaintiff's Counsel intends to request an Enhancement Award to Plaintiff in an amount not to exceed $5,000.00 for Plaintiff's time, effort and risks undertaken in pursuing the lawsuit. The amounts typically awarded to representative plaintiffs often consist of a mix of a compromise of individual damages, class awards, and incentive awards as class representatives. Courts approve incentive awards to plaintiffs when justified and appropriate to compensate plaintiffs for time, effort, and inconvenience. *Van Vranken v. Atlantic Richfield Co.* (N.D. 1995) 901 F.Supp. 294, 299.

As with any plaintiff who files a civil action, Plaintiff undertook a financial risk that he could be personally saddled with a costs award if the Court entered a judgment in favor of Defendants in this lawsuit. Furthermore, by this lawsuit, Plaintiff contends that he jeopardized his future employability because prospective employers are more likely to hire an employee who has not sued his or her employer over one who has.  In this respect, courts have recognized that assuming potentially career-damaging risks for the vindication of the rights of fellow employees is a factor justifying enhancement awards. *See, e.g., Roberts v. Texaco,* (S.D.N.Y. 1997) 979 F.Supp. 185, 201 (finding that "present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril, a substantial enhancement award is justified"); *Staton v. Boeing*, (9th Cir. 2003) 327 F.3d 938, 977. *See* Ruiz Decl. ¶ 13.

10

1    In this case, Plaintiff represents that he performed the following tasks, among others: (1)

2   assisted counsel in investigating and substantiating the claims alleged in this action; (2) assisted

3   in the preparation of the complaints in this action; (3) produced evidentiary documents to his

4   counsel; (4) reviewed pleadings, correspondence, and other documentation received from

5   Plaintiff's Counsel in order to keep himself apprised of the progress of the litigation; and (5)

6   attended the mediation. *Id.*

7    **12.    Costs of Administration**

8    Phoenix Class Action Administration Solutions will serve as the settlement administrator

9   in this action and have estimated the cost associated with this work to be $7,250. *See*

10  Agreement, ¶ 35(f).

11

12  **III.   LEGAL ANALYSIS.**

13   **A.    The Proposed Settlement Class.**

14   Solely for purposes of this Settlement, the Settlement Class Members and Defendants

15  (collectively referred to as the "Parties") stipulate and agree to define the "Class Members" as all

16  persons employed by Defendant at Culver City Toyota in a non-exempt sales position at any

17  time during the Class Period.  The Class or Class Members do not include, however, (i) any and

18  all persons who timely and properly request exclusion from the Class, as set forth in Section

19  34(c) of the Agreement, and (ii) any and all persons who, prior to the Court's approval of this

20  Settlement, released any Defendant from wage and hour claims, including but not limited to

21  claims for unpaid wages or overtime, as a result of a settlement reached in any other matter.  The

22  Parties have agreed that this class be certified on a provisional, non-mandatory basis for the

23  purposes of this settlement only.

24   **B.    Two-Step Approval Process.**

25   Any settlement of class litigation must be reviewed and approved by the Court.  This is

26  done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final review after

27  notice has been distributed to the class members for their comment or objections. The Manual for

28

11

MOTION FOR ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT

1   Complex Litigation (Fourth) states: "Review of a proposed class action settlement generally

2   involves two hearings. First, counsel submit the proposed terms of settlement and the judge

3   makes a preliminary fairness evaluation." § 21.632. Courts have endorsed a presumption that the

4   settlement is valid if the negotiations have been reached as a result of arms-length negotiations

5   between experienced, capable counsel after meaningful discovery. Manual for Complex

6   Litigation (Fourth) § 21.63.

7         Thus, the preliminary approval by the trial court is simply a conditional finding that the

8   settlement appears to be within the range of acceptable settlements. As Professor Newberg

9   comments, "[t]he strength of the findings made by a judge at a preliminary hearing or conference

10  concerning a tentative settlement proposal may vary. The court may find that the settlement

11  proposal contains some merit, is within the range of reasonableness required for a settlement

12  offer, or is presumptively valid subject only to any objections that may be raised at a final

13  hearing." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions,* § 11.26 (4th ed.

14  2002).

15        The procedures for the parties' submission of a proposed settlement for preliminary

16  approval by the court also are discussed in 4 Newberg on Class Actions:

17  
18      When the parties to an action reach a monetary settlement, they will usually prepare and execute a joint stipulation of settlement, which is submitted to the court for preliminary approval. The stipulation should set forth the essential terms of the agreement, including but not limited to, the amount of settlement, form of payment, manner of determining the effective date of settlement and any recapture clause.

19  

20  

21       *Id.* at § 11.24. Here, the Parties have reached such an agreement and have submitted to

22  this Court in connection with this Application a copy of the proposed settlement agreement fully

23  setting forth the agreement reached among the Parties. The Class Action Settlement Agreement

24  sets forth all terms of the agreement reached by the Parties, which include, among other things,

25  that the class members may recover damages flowing from Plaintiff's allegations. *See* Ruiz

26  Decl. ¶ 14, Ex. A.

27  

28

**C.**   **Procedures for Settlement Before Class Certification.**

Pursuant to California Rules of Court, Rule 3.769, the parties also may, at the preliminary approval stage, request that the court provisionally approve certification of the class – conditional upon final approval of the settlement. "[P]re-certification settlements are routinely approved if found to be fair and reasonable." *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 240 (2001). *Accord Dunk v. Ford Motor Co.,* 48 Cal. App. 4th 1794, 1803 (1996) (although the settlement was reached before any "adversary certification," the court was satisfied that it was "fair, adequate and reasonable."). *See also In re Baldwin-United Corp.,* 105 F.R.D. 475, 478 (S.D.N.Y. 1984)[1] ("many courts have employed this practice in the name of judicial efficiency in order to facilitate apparently beneficial settlement proposals.")

> The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal . . . may be set out in conditional orders granting tentative approval to the various items submitted to the court. Three basic rulings are often conditionally entered at this preliminary hearing. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.

4 *Newberg on Class Actions,* at §11.26.

**1.**   **The Class Should Be Certified for Settlement Purposes.**

It is well established that trial courts should use a lower standard for determining the propriety of certifying a settlement class, as opposed to a litigation class. *Dunk, supra,* 48 Cal. App. 4th at 1807, fn. 19.  The reason for this is that no trial is anticipated in a settlement class, so the case management issues inherent in determining if the class should be certified need not be confronted. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620, (1987).  The proposed settlement class meets all requirements for certification, as discussed below.

**a.**   *The Settlement Class is Ascertainable.*

The proposed class is ascertainable.  The class definition, the size of the class and the means for identifying the members of the class determine whether the class is ascertainable.

---

[1] In determining the fairness and reasonableness of a proposed settlement, California courts may look to federal cases for guidance. *See Wershba,* 91 Cal. App. 4th at 239-40.

13

1    *Reyes v. Board of Supervisors,* 196 Cal. App. 3d 1263, 1274 (1987). In this case, the members

2    of the class are identifiable from Defendants' records. In fact, Defendants already identified the

3    putative members of the class. *See* Ruiz Decl. ¶ 6. Further, Plaintiff contends the putative class

4    is sufficiently numerous to warrant certification. According to Defendants' records, the putative

     class is comprised of approximately 171 current and former employees.

5
                         b.        *Questions of Law or Fact Common to Members of the Settlement*
6                                  *Class Predominate.*

7          Plaintiff contends the proposed settlement class members' claims all stem from a

8    common source: Defendants' meal break practices. Plaintiff further contends that the following

9    common questions apply to the class:

10         (1) Whether Defendant's policies and practices regarding meal periods violated

11             California law;

12         (2) Whether the Settlement Class members are entitled to compensation as a result of

13             Defendant's failure to provide 30-minute uninterrupted meal periods for a work

14             period of more than five hours, no later than the end of the employee's fifth hour of

15             work;

16         (3) Whether the Settlement Class members are entitled to compensation as a result of

17             Defendant's failure to provide a second 30-minute uninterrupted meal period no later

18             than the end of the employee's tenth hour of work when an employee works for a

19             period of more than 10 hours; and

20         (4) Whether Defendant violated California law by failing to pay Settlement Class

21             members meal period and rest period premiums, as well as other owed wages, at the

22             time of separation of employment.

23         Under these circumstances, Plaintiff contends the commonality requirement is satisfied

24    for purposes of certifying the class for settlement.

25                       c.        *The Class Representative's Claims are Typical of the Class.*

26         A class representative's claims are typical when they arise from the same event or course

27    of conduct that gives rise to the claims of the class, and are based on the same legal theory.

28

                                                    14

1   *Classen v. Weller,* 145 Cal. App. 3d 27, 46-47 (1983). In this case, the class representative

2   asserts claims for unpaid wages, missed meal breaks, and associated penalties. Specifically,

3   Plaintiff alleges:

    (1) While working for Defendant, Plaintiff's time records show that he was not provided

4

5          with uninterrupted 30-minute meal breaks for a work period of more than five hours,

6          no later than his fifth hour of work;

    (2) While working for Defendant, Plaintiff's time records show that he was not provided

7

8          with a second 30-minute uninterrupted meal period no later than the end of his tenth

9          hour of work when he worked for a period of more than 10 hours;

    (3) While working for Defendant, Plaintiff's payroll records show that he was not

10

11         provided with meal period premiums; and

    (4) While working for Defendant, Plaintiff's payroll records show that he was not

12

13         provided with all his owed wages at the time of separation of employment.

14        These claims are those that the class would reasonably be expected to bring based on the

15  course of conduct alleged herein.

16        Plaintiff asserts that he has also demonstrated that he will aggressively and competently

17  assert and represent the interests of the proposed settlement class. He has retained competent

18  counsel, experienced in litigating class action claims in the employment context. *See* Ruiz Decl.

19  ¶ 11. Thus, the Court should conditionally certify the class for settlement purposes.

20           **2.     The Settlement Is Fair and Reasonable.**

21        Courts presume the absence of fraud or collusion in the negotiation of settlement unless

22  evidence to the contrary is offered. *Priddy v. Edelman,* 883 F.2d 438, 447 (6th Cir. 1989); *Mars*

23  *Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.,* 834 F.2d 677, 682 (7th Cir. 1987*); In*

24  *re Chicken Antitrust Litig.,* 560 F. Supp. 957, 962 (N.D. Ga. 1980). Courts do not substitute

25  their judgment for that of the proponents, particularly where, as here, settlement has been

26  reached with the participation of experienced counsel familiar with the litigation. *Nat'l Rural*

27  *Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Hammon v. Barry,*

28

MOTION FOR ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT

1   752 F. Supp. 1087, 1093 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y.

2   1979); *Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 580 (E.D. Pa.

3   1978).

4          While the recommendations of counsel proposing the settlement are not conclusive, the

5   Court can properly take them into account, particularly where, as here, such counsel have been

6   involved in discovery and negotiations for some period of time, appear to be competent, have

7   experience with this type of litigation, and have exchanged substantial evidence with the

8   opposing party. *See Newberg on Class Actions, supra,* §11.47; *In re Paine Webber Ltd. P'ships*

9   *Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("[s]o long as the integrity of the arm's length

10  negotiation process is preserved, however, a strong initial presumption of fairness attaches to the

11  proposed settlement . . . [citations] and 'great weight' is accorded to the recommendations of

12  counsel, who are most closely acquainted with the facts of the underlying litigation")).

13         Here, Plaintiff's counsel has significant experience in wage and hour class action

14  litigation. *See* Ruiz Decl. ¶¶ 9-12. Indeed, Plaintiff's counsel has been approved as class counsel

15  in many other class action cases, including unpaid wage cases. *See* Ruiz Decl. ¶ 11.

16         Moreover, both class counsel and defense counsel conducted an intensive investigation of

17  the factual allegations involved in this case. *See* Ruiz Decl. ¶ 6. The Parties have completed

18  broad mutual informal discovery and exchanged voluminous documents, records and other

19  information. *Id.* Each side has apprised the other of their respective factual contentions, legal

20  theories and defenses, resulting in arms-length negotiations taking place among the Parties. *See*

21  Ruiz Decl. ¶¶ 6-7.

22         The settlement for each participating class member is fair, reasonable and adequate, given

23  the inherent risk of litigation, the risk relative to class certification and the costs of pursuing such

24  litigation. *Id.* The settlement shall finally resolve all claims arising out of the facts alleged in the

25  pleadings filed in this Action.

26         As noted, the settlement compensates class members for amounts for meal and rest

27  breaks they claim not to have properly received as well as applicable civil penalties. *Id.* It also

28

1  compensates the individual named Plaintiff for his claims and provides him an additional

2  incentive payment, thus taking into consideration the risks, time, effort, and expenses incurred by

3  him in coming forward to provide invaluable information, negotiate, and litigate this matter on

4  behalf of all class members. *See* Ruiz Decl. ¶ 13.

5        Fairness of the settlement is further demonstrated by the uncertainty and risks to Plaintiff

6  involved both in not prevailing on one or more of the causes of action or theories alleged in the

7  complaint and in non-certification. Were the class not certified, a number of class members

8  (whose individual claims, even accounting for interest and waiting time and other penalties, may

9  not be large enough to provide incentive to litigate individually) might not maintain individual

10 actions against Defendants.

11       Despite the asserted fairness of the settlement terms, should any potential class member,

12 upon reviewing the notice of proposed settlement, object to the terms of the settlement as set

13 forth in the settlement Agreement, each has the right to submit a request for exclusion (i.e., opt

14 out) from the settlement, pursuant to which the class member would retain any claim he or she

15 may have against Defendant. Moreover, class members who do not opt out may, upon providing

16 proper notice to the Parties and the Court, attend the final fairness and approval hearing for the

17 purpose of objecting to one or more of the settlement terms set forth in the settlement

18 Agreement.

19

20 **IV.    CONCLUSION.**

21       Based on the foregoing, the Parties request this Court, as part of its preliminary approval

22 of the settlement, to do the following:

23       1.    Review the proposed Agreement setting forth the settlement terms;

24       2.    Consider whether the proposed settlement preliminarily appears to be fair,

25 reasonable and adequate, and whether the proposed class of settling preliminarily appears to

26 meet the applicable certification criteria.

27

28

3.     Confirm Plaintiff John Foscue as Class Representative and Class Counsel as Hennig Ruiz P.C.

4.     Approve Phoenix Class Action Administration Solutions as Settlement Administrator.

5.     Enter an Order provisionally approving the proposed settlement class on a non-mandatory basis, approve notice forms to be distributed to the class, direct notice to be given to the class, all as specified in the Agreement, and set the following schedule of settlement proceedings:

        (a)     Deadline for Defendant to provide Settlement Administrator with Class Information (full names, last known address, last known home telephone number, Social Security Number, dates of employment, and total hours worked during the Class Period) for the purpose of mailing the Notice to Settlement Class Members: 30 days after Preliminary Approval.

        (b)     Deadline for Settlement Administrator to mail copies of the Notice to Settlement Class Members: 10 business days after receiving Class Information.

        (c)     Deadline to submit requests for exclusion: 30 days after the date on which the Notice is mailed to Settlement Class Members.

        (d)     Deadline to submit objections to the proposed settlement to the Court and to Plaintiff's and Defendants' counsel: 30 days after the date on which the notice of settlement is mailed to potential class members.

        (e)     Deadline for Plaintiff to file motion and supporting documents for final approval of class action settlement: 16 court days before final approval hearing

        (f)     Deadline for Class Counsel to file application for an award of attorneys' fees, costs, and a class representative enhancement award: 16 court days before final approval hearing

18

(e)     Date of final fairness and approval hearing: To be determined.

DATED: February 2, 2018              HENNIG RUIZ P.C.

Rob Hennig
Brandon Ruiz
Shoshee Jau
Attorneys for Plaintiff John Foscue

19

Exhibit "2"

**FILED**

LOS ANGELES SUPERIOR COURT

**JUL 03 2018**

~~~~~~~~~~~~ ~~ OFFICER/CLERK

BY _N. Navarro_ , Deputy

NANCY NAVARRO

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| JOHN FOSCUE, an individual, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KEN GARFF AUTOMOTIVE GROUP, d/b/a CULVER CITY TOYOTA, a corporation; CULVER CITY TOYOTA, d/b/a CULVER CITY SCION, a corporation; and DOES 1 through 90, inclusive,<br><br>Defendants. | Case No.: BC648132<br><br>ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE (PAGA) SETTLEMENT<br><br>Date: June 20, 2018<br>Time: 9:00 a.m.<br>Dept.: SSC-17 |

# I. BACKGROUND

Plaintiff John Foscue (Foscue) was employed as a sales associate for Defendant Ken Garff Automotive Group d/b/a Culver City Toyota, et al. He filed this action January 26, 2017. The operative Second Amended Complaint (SAC) alleges four claims brought by Foscue as an individual: (1) Retaliation in Violation of Cal. Lab. Code §1102.5; (2) Wrongful Termination in

Violation of Public Policy; (3)  FEHA – Discrimination; and (4) FEHA – Retaliation.  Foscue also brought claims on behalf of a class of similarly situated employees for (3) Failure to Provide All Required Meal and Rest Breaks; (4) Failure to Pay All Wages Owed Semi-Monthly; (5) Unlawful Itemized Wage Statements; (6)  Waiting Time Penalties; (7)  Unfair Competition; and (8) Penalties under Labor Code §2698, et seq. [PAGA]. The PAGA claim is pled as a representative action rather than a class action.

Foscue's individual claims are alleged to arise from the fact that he brought to his employer's attention what he perceived to be unlawful practices, including leaving sensitive customer information in open and unprotected locations throughout the dealership, failing to comply with required financial disclosures to customers, and altering information on customers' forms, such as their employers, pay, or rent amounts. (SAC ¶ 9.) Foscue contends that his employer then took retaliatory measures against him (*Id.* at ¶¶15-16) and that he was ultimately terminated for reasons he asserts were pretextual. (*Id.* at ¶ 18.)  In addition, he alleged age discrimination. (*Id.* at ¶11.)  He sought actual and punitive damages, as well as statutory attorneys' fees. (See Prayer to SAC.)

The Parties represent they began settlement discussions in April 2017.  On or about September 28, 2017 they attended a mediation.  At the mediation, Foscue's individual claims were settled in principle on a "confidential" basis. At the same mediation, the parties reached agreement regarding a settlement of the class claims. The parties subsequently executed a Class Action Settlement Agreement, a copy of which was filed with the Court.  They then sought approval of the settlement of the class action, including fees.

Prior to the initial hearing on this motion, the Court issued a checklist of items in need of further briefing. In response, on April 12, 2018, the parties filed further briefing and a signed, amended Settlement Agreement. At the hearing on April 26, 2018, the Court and counsel

1  discussed issues regarding the Plaintiff's individual settlement with Defendant and his adequacy

2  to serve as representative for the class.  The matter was continued.

3        On May 21, 2018, the parties filed further supplemental briefing including the following:

4  (1) Declaration of John Foscue; (2) Declaration of Linh T. Hua (Counsel for Defendant); (3)

5  Declaration of Jeffrey Krivis (Mediator); (4) Supplemental Declaration of Brandon Ruiz

6  (Plaintiff's Counsel); and (5) a supplemental brief in support of preliminary approval.  Counsel

7  indicated they would, in part, waive the mediation privilege, but declined to provide any

8  information as to Foscue's individual settlement beyond representing that Foscue has been paid

9  for the settlement of his individual claims and Plaintiff's Counsel had filed a Request for

10 Dismissal of Plaintiff's individual causes of action alleged in the operative Second Amended

11 Complaint.

12        The Court heard argument on June 20, 2018 and denied the motion to approve the class

13 action settlement, without prejudice.

14        In order to complete the record and to assist counsel in their further discussions, the

15 Court now issues its written order.

16

17                              **II. DISCUSSION**

18 **A.  <u>SETTLEMENT STANDARDS AND PROCEDURE</u>**

19        [T]he court has a fiduciary responsibility as guardians of the rights of the absentee class

20 members when deciding whether to approve a [class] settlement agreement." *Kullar v. Foot*

21 *Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129 (*Kullar*). California Rules of Court, rule

22 3.769(a) provides: "A settlement or compromise of an entire class action, or of a cause of action

23 in a class action, or as to a party, requires the approval of the court after hearing."

24        The parties argue that there is no requirement that the Court approve the settlement of

25 Foscue's individual claims.  However, "[i] a class action lawsuit, the court undertakes the

3

responsibility to assess fairness in order to prevent fraud, collusion or unfairness to the class, the settlement or dismissal of a class action.  The purpose of the requirement [of court review] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2006) 141 Cal. App.4th 46, 60 (internal quotation marks omitted); *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245 (*Wershba*) (Court needs to "scrutinize the proposed settlement agreement to the extent necessary to  reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned" (internal quotation marks omitted).

It is to be recognized that "[a] settlement need not obtain 100 percent of the damages sought in order to be fair and reasonable.  Compromise is inherent and necessary in the settlement process.  Thus, even if 'the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated,' this is no bar to a class settlement because 'the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation.'" *Id.* at 250.  However, it is also true that "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required [under Rule 23(e)] before securing the court's approval as fair." *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth Headset*") (9th Cir. 2011) 654 F.3d 935, 946.

"The burden is on the proponent of the settlement to show that it is fair and reasonable…. A presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the

court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.'" *Wershba* at 245 (citing *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1802 ).

Notwithstanding any presumption of fairness, "the court should not give rubber-stamp approval." *Kullar,* 168 Cal.App.4th at 130. "Rather, to protect the interests of absent class members, the court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished." *Ibid.* The court need not rely on representations made by counsel, but instead may press "the parties to substantiate their bald assertions with corroborating evidence." *Bluetooth Headset, supra* at  948; See also *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation* (3d Cir. 1995) 55 F.3d 768, 804 ("In considering the adequacy of representation, we are loath to place such dispositive weight on the parties' self-serving remarks." )

The Court has broad discretion to determine whether a class action settlement is fair and reasonable. *Carter v. City of Los Angeles* (2014) 224 Cal.App.4th 808, 819; *Wershba, supra* at 245. Courts should consider factors such as "the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Kullar, supra* at 128. "Th[is] list of factors is not exclusive and the court is free to engage in a balancing and weighing of factors depending on the circumstances of each case." *Wershba, supra* at 245.

Claims under PAGA are reviewed under a similar standard. Labor Code section 2699(*l*)(2) requires courts to "review and approve any settlement of any civil action filed pursuant to this part." The California Supreme Court explains that a PAGA claim is a form of a

qui tam action. *Iskanian v. CLS Transportation Los Angeles LLC* (2014) 59 Cal. 4th 348, 382.

As such, the Court looks to qui tam standards in evaluating this settlement, i.e. that the

settlement is "fair, adequate, and reasonable." Cf. Gov. Code, § 12652 (In a qui tam action a

state or political subdivision may settle the action with the defendant notwithstanding the

objections of the qui tam plaintiff if the court determines, after a hearing providing the qui tam

plaintiff an opportunity to present evidence, that the proposed settlement is fair, adequate, and

reasonable under all of the circumstances.) While PAGA actions are distinct from class actions,

the class action standard (fair, reasonable, and adequate settlement) is adopted here for these

reasons.

## B.  TERMS OF THE SETTLEMENT AGREEMENTS

The Court is provided no information as to the terms of the individual settlement.

As to the proposed class settlement the disclosed terms are:

The "Settlement Class Members" means all persons who are employed or who have been

employed by Defendant at Culver City Toyota in a non-exempt sales position at any time during

the Class Period. (Settlement Agreement, ¶25)

The Class Period is from January 26, 2013 through the date of entry of the order granting

preliminary approval. (¶5)

The Parties agree to stipulate to class action certification only for purposes of the

Settlement. (¶27)

- The Gross Settlement Amount ("GSA") is $125,000, non-reversionary. (¶11)

- The Net Settlement Fund ($61,150) is the Gross Settlement Amount minus:

    o Up to $41,625 (33.33%) for attorney fees (¶35.d);

    o Up to $9,000 for attorney costs (*Ibid.*);

    o Up to $5,000 for a Service Award to Foscue (¶35.c);

    o Estimated $7,250 for claims administration costs (¶35.f); and

     o    $975 (75% of $1,300 PAGA penalty) payable to the LWDA (¶35.c).

          ▪    The proposed Settlement Agreement was served on the LWDA on April 11, 2018. (Supplemental Declaration of Brandon Ruiz, ¶12 and Ex. C.). Insofar as the Court can determine, the LWDA was neither advised that Foscue settled his individual claims at the same time as his representative claim nor advised of the terms of the individual settlement.

- Defendant's share of employer taxes on the wage portion of Individual Settlement Payments will be paid in addition to the GSA. (¶35, as amended.)

- There is no claims process. Class members will receive a settlement payment unless they opt-out. (¶34.b)

- Opt-out/Objection Rights:  Within 45 days after the Settlement Administrator mails the Notice to Settlement Class Members Settlement Class Members may postmark written requests for exclusion or a Notice of Objection to the Settlement. For Settlement Class Members who receive re-mailed Class Notices, the response deadline will be 60 calendar days after the initial mailing of the Notice. (¶21, as amended.)

     o    Defendant has the right to rescind if more than 5% of Class Members opt out of the settlement class. (¶37)

- Calculation of Individual Settlement Payments: Defendant will calculate the Total Hours Worked by each Settlement Class Member. The respective Total Hours Worked for each Settlement Class Member will be divided by the Total Hours Worked for all Settlement Class Members who do not opt out, resulting in the Payment Ratio for each Settlement Class Member. Each Settlement Class Member's Payment Ratio is then multiplied by the Net Settlement Amount to determine his or her Individual Settlement Payment. Each Individual Settlement Payment will be reduced by any legally mandated deductions. (¶35.a.i, as amended.)

- For tax purposes, payments to class members will be allocated as follows:  20% as wages, 55% as penalties, and 25% as interest. (¶35.a, as amended.)
- Any checks issued by the Claims Administrator to Participating Class Members will be negotiable for 180 calendar days from issuance. (¶35.a.) Thereafter, any uncashed checks will be cancelled and funds remaining in the settlement account will be transmitted according to California Code of Civil Procedure § 384 as follows: 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund; 25% to the State Treasury for deposit into the Equal Access Fund of the Judicial Branch; and 50% to Legal Aid at Work. (¶35.b).  This provision may need revision in light of recent amendments to the statute.
- Phoenix Settlement Administrators will perform settlement administration.  (¶24)
- All class members who do not opt out will release certain claims against Defendant. (See further discussion below)
- Assuming full participation, the average settlement share for each class member will be approximately $357.60.  [$61,150 Net ÷ 171 class members = $357.60] (See below)

## C.    ANALYSIS OF CLASS/ REPRESENTATIVE AGREEMENT

Counsel argue vigorously that the information provided in the moving and supplemental declarations is all that the Court needs to evaluate this settlement.  Foscue's counsel goes so far as to state that "the Court does not have authority over Foscue's individual settlement and Plaintiff is unaware of any authority under which the Court could review his individual settlement." (Plaintiff's Supplemental Briefing in Support of Motion for Preliminary Approval at page 5, lines 16-18.)  Counsel further argues that because Plaintiff's individual discrimination and retaliation claims are not brought on class basis, Foscue "is not under any requirement to disclose the terms of his individual FEHA-based claims." (Id at. Page 5, lines 24-25.)  At oral argument it was posited that it was appropriate to settle Foscue's individual claims in the same

8

mediation as the class claims to save resources.  The Court disagrees with these various assertions, as both Foscue and the Court (as well as class counsel) have fiduciary responsibilities that require a level of transparency lacking in this case.

The various declarations state that at all times during the mediation "separate numbers" were provided for Foscue's individual FEHA and retaliation claims and for the class action claims. It is also represented that at no point did Defendants ever indicate that the settlement of the individual claims was dependent upon the parties reaching agreement as to the class claims or vice versa. It is also stated that at no point was any sort of "discount" provided as to the class claims in exchange for a more favorable settlement as to Foscue's individual claims. To Class Counsel's recollection, the parties reached agreement as to Foscue's individual claims prior to reaching agreement as to the class claims.  The settlement of the class claims is reported to be the result of lengthy discussions and argument with Ms. Hua and Mr. Krivis regarding the realistic prospects of the class claims. (Supplemental Declaration of Brandon Ruiz ISO Further Brief, ¶20; See also, Declaration of Linh T. Hua, ¶¶ 3-4; Declaration of Jeffrey Krivis, ¶5-9.) It is also represented by Foscue that he understands that he may not attempt to obtain personal benefit at the expense of his former coworkers. (Foscue Decl. ¶ 5.)

The parties cite no authority for the proposition that individual and class claims (as well as attorneys' fees) are appropriately resolved in the same confidential mediation with the terms of the individual settlement being withheld when the class settlement is approved. The  Court is aware of none.  Given this absence of authority, the Court concludes that on the facts of this case and to discharge its fiduciary obligations to the absent class members, the terms of the settlement of Foscue's individual claims, including the amounts paid to Foscue and his counsel, and the terms of any release, must be disclosed. Without that information the Court, the absent class members, and the LWDA lack fundamental information to assess the fairness of the settlement, as discussed below.

**1.  There Is An Inadequate Showing of an Arms' Length Negotiation**

Counsel and the mediator represent in their declarations that there was no collusion leading to the class settlement and that the settlement is the result of an "arms' length" negotiation. However, the Court notes that (1) Foscue has signed a settlement agreement with Defendants, the terms of which are undisclosed and about which the parties vigorously argue the Court may not inquire; (2) Foscue has been paid and asked to dismiss his individual claims; and (3) notwithstanding those facts, Foscue seeks both fees and an enhancement payment to himself in this action, as well as additional monies for his wage and hour claims. These raise facts raise questions as to the nature of the negotiations.

The fact that a mediator was involved in the parties' discussions does not assuage the Court's concerns.  The Court recognizes that the mediator and both counsel have experience in wage and hour class actions.  Nonetheless, neither the mediator nor defense counsel have fiduciary obligations to the class.

Without knowing the amounts paid and the scope of the release provided by Foscue (i.e., whether it is general in nature or limited to the individual claims alleged) the Court cannot determine whether the amount Foscue received for his individual claims was out of proportion to their value, a key indicator of fairness.  Further unanswered and relevant inquires include the amount of fees awarded to Plaintiff's counsel, whether these fees are duplicative of those requested as part of the class settlement, and whether other promises were made in the individual settlement that relate to the settlement of the class claims. *Cf. Lofton v. Wells Fargo Home Mortgage* (2014) 230 Cal. App. 4th 1050,1064 (Where counsel failed to advise the Court that a separate related class action settlement was primarily to be awarded as attorneys' fees, counsel failed to comply with CRC 3.769(b) and Court properly issued a temporary restraining order enjoining the settlement from going forward.)  The answers to these questions would go far further to lay to rest any question of impropriety than the Declarations received. Without those

10

1 | answers the Court simply lacks sufficient information to assess whether the settlement was

2 | reached at "arms-length" or not.

### 2. The Fairness of the Amount to Be Paid Cannot be Fully Assessed

4 | "The trial court may not determine the adequacy of a class action settlement 'without

5 | independently satisfying itself that the consideration being received for the release of the class

6 | members' claims is reasonable in light of the strengths and weaknesses of the claims and the

7 | risks of the particular litigation." *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010)

8 | 186 Cal.App.4th 399, 408, citing *Kullar* at 129.

9 | Consistent with that teaching Class Counsel has provided information, summarized

10 | below, regarding the strengths, weaknesses, and estimated values of the class claims alleged.

| Violation | Maximum Exposure | "Provable Damages" |
|---|---|---|
| Meal Breaks | $345,895.00 | $345,895.00 |
| Rest Breaks | $0.00 | $0.00 |
| Pay Wages Semi-Monthly | $1,946,835.00 | $0.00 |
| Wage Statements | $376,200.00 | $376,200.00 |
| Waiting Time Penalties | $887,895.00 | $0.00 |
| **Total** | **$3,556,825.00** | **$722,095.00** |

16 | (Ruiz Decl., ¶6; Supp. Ruiz Decl., ¶7; Supp. Ruiz Decl. ISO Further Brief, ¶23.)

17 | In Class Counsel's analysis of the class damages, both before and during the mediation,

18 | there were a number of concerns he believed affected both damages and the likelihood of class

19 | certification. First, there was no meal break policy that Class Counsel believed to be prima facie

20 | unlawful. Second, given the lack of a clearly unlawful policy, the apparent violation rate

21 | presented an incomplete picture of possible damages. Class counsel represent that in past cases,

22 | where a meal break policy was facially valid, the question of whether the employee was

23 | "allowed" to take his or her meal breaks became the primary point of contention. Such

24 | arguments have often led to a determination that individualized inquiries predominate and that

25 | damages are difficult to ascertain. (Supp. Ruiz Decl. ISO Further Brief, ¶22.)

Third, Class Counsel believed that the claims for failure to pay wages owed semi-monthly and for failure to furnish accurate itemized wage statements had a very low chance of success due to the reasonable dispute regarding amounts owed and the resulting difficulty of proving violations. Moreover, Defendants cited to recent case law suggesting that meal period penalties were not subject to waiting time penalties. (*Ibid.*)

Class Counsel obtained a gross settlement valued at $125,000. This is 3.5% of Defendant's maximum exposure and 17.3% of the "provable damages." Assuming that the Court approves all of the maximum requested deductions, approximately $61,150 will be available for automatic distribution to participating class members. Assuming full participation, the average settlement share will be approximately $357.60. [$61,150 Net ÷ 171 class members = $357.60]

The Court is mindful that a settlement is a compromise and that the reasons for same may be many. And, in many settlements presented for approval there is no available benchmark for comparison and the information available to the Court may not exceed the information the parties have already provided. It is also possible that this case is different. If the individual settlement amount is disproportionate to the possible claimed damages collusion may be suggested. If it is not disproportionate, fairness would be indicated. Without that information in this case the Court cannot determine whether the amount proposed is likely the best outcome for the class.

### 3. Adequacy of the Representation Cannot Be Determined

Foscue urges that he is an adequate representative because his wage and hour claims are similar to those of the absent class members and he cites numerous cases which, he asserts, affirm his adequacy as class representative despite his individual claims. (Plaintiff's Supplemental Briefing at 4:4-22.) However, the cases on which Plaintiff relies are distinguishable from the instant action.

The cited cases address a plaintiff's adequacy in the context of class certification motions *unaccompanied by settlement*. By contrast, in the instant case, the Court has made no prior finding regarding the adequacy of the class representative. The Supreme Court noted in *Amchem Products, Inc. v. Winsor* (1997) 521 U.S. 591, 620 that inquiries [under Rule 23] relating to the protection of absentee class members "demand undiluted, even heightened, attention in the settlement context." The Court explained that "such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Ibid.*

Plaintiff cites just one case, *Krzesniak v. Cendant Corp.* (N.D. Cal., June 20, 2007, No. C 05-05156 MEJ) 2007 WL 1795703, at *10, which directly addresses the adequacy of a plaintiff with individual claims for wrongful termination and retaliation, when those claims are alleged together with class claims for wage and hour violations. In *Krzesniak*, defendants contended at class certification that plaintiff was an inadequate representative because his "interest in recovering a personal judgment on his discharge claims fatally compromise[ed] his undivided loyalty to the class," and that "Plaintiff may use his class action allegations to leverage a larger settlement of his individual retaliation claims, which may come at the expense of absent class members."

In determining that plaintiff was an adequate representative, the Court reasoned that (1) "class certification pursuant to Rule 23(b)(3) contains an "opt out" provision which could be exercised by any individual class member who feels its interests are not adequately protected by the class representatives"; (2) "should the existence of non-class claims lead the class representatives to enter into a settlement agreement unfavorable to the class members (or refuse to enter into an advantageous agreement) the court retains the power to decertify the class at that point"; and (3) Plaintiff indicated a willingness to dismiss his individual claims should the Court

1  determine that his retaliation claims prevent him from being an adequate class representative."

2  *Ibid.*

3      None of the factors leading the Court in *Kresniak* to determine Plaintiff was an adequate

4  representative are present in the instant action. First, while class members are able to able to opt-

5  out of the settlement class, the notice to Class Members makes no mention of the existence

6  Plaintiff's individual claims or the fact that he has already settled and received payment for these

7  claims so that they might make a reasoned choice. (See Hua Decl. ¶4.) Second, given that the

8  Court is asked to certify this class for purposes of settlement, there will be no future opportunity

9  to decertify the class should indications of unfairness arise, absent the possible presence of an

10  objector or intervenor. Third, while Foscue has filed a request for dismissal of his individual

11  claims, as noted above, this dismissal is motivated by the fact that he has already settled and

12  received payment for these claims and not out of a desire to act in the best interests of the class.

13      The remaining cases cited by Plaintiff discuss adequacy of the class representative under

14  circumstances bearing little resemblance to the instant action. See *McGhee v. Bank of Am.*

15  (1976) 60 Cal.App.3d 442, 450-452 (holding that plaintiffs were adequate representatives even

16  though (1) their lack of experience and financial resources made class counsel the true directors

17  of the lawsuit; and (2) financial difficulties might force plaintiffs into an unfavorable settlement

18  because the Court has the authority to review and, if necessary, deny approval of an inadequate

19  settlement); *Probe v. State Teachers' Retirement System* (9th Cir. 1986) 780 F.2d 776, 780

20  (finding that plaintiffs' pursuit of individual claims along with class claims, alone, did not make

21  the action "confusing and unmanageable" and that defendant had not "raise[ed] any particular

22  problems posed by the plaintiffs' pursuit of both individual and class claims."); *Marshall v.*

23  *Kirkland* (8th Cir. 1979) 602 F.2d 1282, 1295 (District Court not precluded from "determining

24  issues of individual relief incidental to class-wide issues in a Rule 23(b)(2) class action"); *Equal*

25  *Employment Opportunity Commission v. General Tel. Co. of Northwest, Inc.* (9th Cir. 1979) 599

F.2d 322, 332 (discussing the applicability of class certification requirements to actions brought by the EEOC under § 706 of the Civil Rights Act); *Winkler v. DTE, Inc.* (D. Ariz. 2001) 205 F.R.D. 235, 240-241 (finding that "[t]he claims pursued by the named representatives are sufficiently coextensive with the claims pursued on behalf of the class to provide sufficient assurance that the named Plaintiffs will adequately represent the class," but noting that "[i]f evidence of a conflict of interest arises, the court retains the authority to modify the order."

In addition to the fact that settlement of Foscue's individual claims were negotiated in the same mediation as the class claims, the Court is concerned regarding the scope of the release, if any, he provided in his individual settlement. If Foscue executed a general release as to his individual claims with a waiver under Civil Code section 1542, he may lack standing. See *Watkins v. Wachovia* (2009) 172 Cal. App. 4th 1576. Likewise, he may not be an "aggrieved employee" for purposes of PAGA. *Kim v. Reins Internat. California, Inc.* (2017) 18 Cal. App. 5th 1052, *review granted* 230 Cal. Rptr. 681 (March 28, 2018). This could render him inadequate. The Court can make no finding in this regard without knowing the terms of the release of the individual claims.

**4. There Are Potential Defects in the Notice**

A copy of the revised, proposed class notice is attached to the Supplemental Declaration of Brandon Ruiz as Exhibit 1. The Court cannot determine whether the notice is acceptable. It includes information such as: a summary of the litigation; the nature of the settlement; the terms of the settlement agreement; the maximum deductions to be made from the gross settlement amount (i.e., attorney fees and costs, the enhancement award, and claims administration costs); the procedures and deadlines for participating in (do nothing), opting out of, or objecting to, the settlement; the consequences of participating in, opting out of, or objecting to, the settlement; and the date, time, and place of the final approval hearing. The Notice will also provide each Class Member with the total number of workweeks he or she worked for Defendant during the

Class Period and his or her estimated individual settlement payment.  However, without information as to the terms of Foscue's individual settlement the Court cannot determine whether the Notice should disclose information to Class members regarding the terms of this individual settlement.

**5. Further Information on Attorneys' Fees and Costs is Required**

CRC rule 3.769(b) states: "Any agreement, express or implied, that has been entered into with respect to the payment of attorney fees or the submission of an application for the approval of attorney fees must be set forth in full in any application for approval of the dismissal or settlement of an action that has been certified as a class action."

Ultimately, the award of attorney fees is made by the court at the fairness hearing, using the lodestar method with a multiplier, if appropriate. *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4$^{th}$ 1084, 1095-1096; *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4$^{th}$ 615, 625-626; *Ketchum III v. Moses* (2000) 24 Cal.4$^{th}$ 1122, 1132-1136.  In common fund cases, the court may use the percentage method. *Laffitte v. Robert Half International, Inc.* (2016) 1 Cal.5$^{th}$ 480, 503. Despite any agreement by the parties to the contrary, "the court ha[s] an independent right and responsibility to review the attorney fee provision of the settlement agreement and award only so much as it determined reasonable." *Garabedian v. Los Angeles Cellular Telephone Company* (2004) 118 Cal.App.4$^{th}$ 123, 128.

Should the parties opt to disclose sufficient information to allow the Court to grant preliminary approval, the question of class counsel's entitlement to $41,625 in attorney fees will be addressed at the fairness hearing when class counsel brings a noticed motion for attorney fees.  Disclosure of fees received with respect to the individual claims is necessary as it appears the work in some respects overlapped. In addition, if Class counsel seek fees based on a "lodestar" method  they must provide the court with billing information so that it can properly apply the lodestar method, and must indicate what multiplier (if applicable) is being sought.

Class counsel should also be prepared to justify the costs sought (capped at **$9,000**) by detailing how they were incurred.

### 6. Further Information Is Required Regarding An Enhancement Award

The Settlement Agreement provides for an enhancement award of up to $5,000 to be paid to Foscue. (Settlement Agreement, ¶35.c.) In connection with any settlement  Foscue must submit a declaration attesting to why he should be entitled an enhancement award in the proposed amount.  Particularly in light of his individual settlement Foscue must explain why he "should be compensated for the expense or risk he has incurred in conferring a benefit on other members of the class." *Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785, 806.  Trial courts should not sanction enhancement awards of thousands of dollars with "nothing more than *pro forma* claims as to 'countless' hours expended, 'potential stigma' and 'potential risk.' Significantly more specificity, in the form of quantification of time and effort expended on the litigation, and in the form of reasoned explanation of financial or other risks incurred by the named plaintiffs, is required in order for the trial court to conclude that an enhancement was 'necessary to induce [the named plaintiff] to participate in the suit . . . .'" *Id.* at 806-807, italics and ellipsis in original.  This is particularly so when Foscue has already been paid in settlement of his individual claims.

### III. CONCLUSION AND ORDER

For the reasons described above, the Court denies the motion without prejudice.  A further status conference shall be conducted on August 27, 2018 at 9:00 a.m. Counsel shall file a joint status report 5 court days in advance. Counsel shall serve a copy of this Order on the LWDA within ten days pursuant to Cal. Labor Code § 2699 l (3).

Dated:   7/3/18

MAREN E. NELSON

Judge of the Superior Court

Exhibit "3"

1  ROB HENNIG (STATE BAR NO. 174646)
2  BRANDON RUIZ (STATE BAR NO. 264603)
   SHOSHEE JAU (STATE BAR NO. 311866)
3  HENNIG RUIZ & SINGH
   3600 WILSHIRE BLVD, SUITE 1908
4  LOS ANGELES, CA 90010
   TELEPHONE: (213) 310-8301
5  FACSIMILE: (213) 310-8302

6  Attorneys for Plaintiff John Foscue

7

**FILED**
Superior Court of California
County of Los Angeles

**SEP 25 2018**

Sherri R. Carter, Executive Officer/Clerk of Court
By_____Betty Smith_____, Deputy
Brittny Smith

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF LOS ANGELES, UNLIMITED JURISDICTION

10

11  JOHN FOSCUE, an individual, individually and      CASE NO. BC648132
    on behalf of all others similarly situated,

12                    Plaintiff;                      **CLASS ACTION**

13         vs.

14                                                    Assigned for all purposes to:
                                                      Hon. Maren E. Nelson in Dept. SSC 17
15  KEN GARFF AUTOMOTIVE GROUP, d/b/a
    CULVER CITY TOYOTA, a corporation;
16  CULVER CITY TOYOTA, d/b/a CULVER             **PLAINTIFF JOHN FOSCUE'S**
    CITY SCION, a corporation; and DOES 1        **REQUEST TO DISMISS CLASS**
17  THROUGH 90, inclusive,                        **ACTION; DECLARATION OF ROB**
                                                  **HENNIG IN SUPPORT THEREOF**
18                    Defendants.

19

20

21

22

23

24

25

26

27

28                                1

PLAINTIFF JOHN FOSCUE'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION; DECLARATION OF
ROB HENNIG IN SUPPORT THEREOF

## I. INTRODUCTION.

In putative class actions such as here, the Court may dismiss the class action without a hearing and without notice to class members if the requirements of Rule 3.770 of the California Rules of Court have been met and if no prejudice to class members results. Plaintiff's motion to dismiss the instant class action satisfies these standards.

First, Plaintiff has submitted a declaration in support of this Motion which sets forth the facts supporting his request for dismissal. *See* Declaration of Rob Hennig (hereinafter "Hennig Decl.") ¶¶ 3, 6-8. Second, the declaration clearly states that no consideration of any kind is being given for this dismissal. *Id.* at ¶ 9. Finally, this case is still in its very early stages— discovery has barely commenced, the Court has not certified any class and no motion for class certification is pending, and no trial date has been set. *Id.* at ¶¶ 6-8. Accordingly, class members will not be prejudiced by the dismissal.

Consistent with the Rule 3.770 of the California Rules of Court, the Court should therefore grant this motion and dismiss the class action without a hearing and without notice to class members.

## II. FACTUAL BACKGROUND.

On January 26, 2017, Plaintiff filed the putative class action in Los Angeles Superior Court against Defendants Ken Garff Automotive Group d/b/a Culver City Toyota and Culver City Toyota d/b/a Culver City Scion. *See* Hennig Decl., ¶ 4. Plaintiff brought claims on behalf of similarly-situated sales associates working at the Culver City Toyota location for failure to provide all required meal breaks and rest breaks, failure to pay all wages owed semimonthly, unlawful itemized wage statements, waiting time penalties, violation of the California Unfair Competition Law, Cal. Bus. and Professions Code Section 17200, *et seq.*, and penalties under the Private Attorney General Act, Cal. Lab. Code Section 2698, *et seq.*

The parties conducted some informal discovery in preparation for a mediation they agreed to undertake on September 28, 2017. *Id.* at ¶ 4. At the mediation, the parties were able to

2

1  reach a settlement of Plaintiff's class claims. *Id.* The Parties drafted a Class Action Settlement

2  Agreement and sought the Court's approval beginning early 2018. Plaintiff Foscue filed his

3  Motion for Preliminary Approval of Class Action Settlement on February 2, 2018. At the

4  request of the Court, Plaintiff submitted further briefing on April 12, 2018, along with supporting

5  declarations of class counsel, Rob Hennig and Brandon Ruiz. Plaintiff's Motion was heard on

6  April 26, 2018 and continued based on the Court's request to submit additional further briefing.

7  Plaintiff again filed further briefing on May 21, 2018, along with a declaration from Plaintiff

8  John Foscue, Plaintiff's counsel Brandon Ruiz, Defendants' counsel Linh Hua, and the mediator,

9  Jeffery Krivis. Plaintiff's Motion was again heard on June 20, 2018, and on July 3, 2018, the

10 Court denied Plaintiff's Motion without prejudice. *Id.* at ¶ 5. On August 27, 2018, the Parties

11 appeared before this Court for a status conference; at the hearing, Plaintiff notified the Court of

12 his intention to move for dismissal of the action without prejudice, given the numerous

13 challenges presented by this action, including the difficulty of obtaining class certification and

14 the Court's denial of class settlement approval. *Id.* at ¶ 6.

15      This case is in its very early stages. Discovery has not formally commenced, the Court

16 has not certified the class nor is a motion for class certification pending, and no trial date has

17 been set. *Id.* at ¶ 8. No consideration, whether direct or indirect, is being given by any party for

18 the dismissal. *Id.* at ¶ 9.

19

20      **III. ARGUMENT.**

21      Dismissal is proper under Cal. Code Civ Proc. Section 581(c), which provides that "a

22 plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or

23 as to any defendant or defendants, with or without prejudice prior to the actual commencement

24 of trial."[1] Under Section 581(k), dismissal of a class action requires court approval and, for

25 certified class actions, notice to class members pursuant to Cal. Rules of Court 3.770. Rule

26  _____

27  [1] Separately, Plaintiff Foscue has individual claims for discrimination and retaliation against Defendants, which were resolved in 2017. A request to dismiss these individual claims pursuant to Cal. Civ. Proc. Section 581(c) was filed on May 21, 2018.

28                                    3

_____

PLAINTIFF JOHN FOSCUE'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION: DECLARATION OF ROB HENNIG IN SUPPORT THEREOF

1 | 3.770(a) of the California Rules of Court sets forth the procedure for dismissal of a class action:

2 |
> A dismissal of an entire class action … requires court approval. … Requests for
3 | dismissal must be accompanied by a declaration setting forth the facts on which
> the party relies. The declaration must clearly state whether consideration, direct or
> indirect, is being given for the dismissal and must describe the consideration in
4 | detail.

5 | Pursuant to Rule 3.770(b), the Court is authorized to grant a request for dismissal of a class

6 | action without a hearing. Further, Rule 3.770(c) provides:

7 |
> If the court has not ruled on class certification, or if notice of the pendency of the
> action has not been provided to class members in a case in which such notice was
8 | required, notice of the proposed dismissal may be given in the manner and to
> those class members specified by the court, or the action may be dismissed
9 | without notice to the class members if the court finds that the dismissal will not
> prejudice them. *(Emphasis added)*

10 |

11 | Dismissal of the Complaint in this case, without a hearing and without notice to class members,

12 | is proper because all of the requirements of Rules 3.770 have been met.  Specifically, Plaintiff,

13 | through his counsel, has submitted herewith a declaration detailing the facts supporting his

14 | request for dismissal. The dismissal of these claims without prejudice should not impact the

15 | interests of absent class members. Notice of the claims has not yet been sent to absent class

16 | members, and dismissal without prejudice would not bar any putative class members from

17 | bringing individual or representative suits on their own in the future. *See* Hennig Decl. ¶ 7. Due

18 | to the Parties' efforts to engage in earlier settlement efforts, this case is in its very early stages.

19 | Discovery has not formally commenced, the Court has not certified the class nor is a motion for

20 | class certification pending, and no trial date has been set. *See* Hennig Decl. ¶ 8. Further,

21 | Plaintiff's declaration clearly states that no consideration whatsoever is being given for the

22 | dismissal. *See* Hennig Decl. ¶ 9. Finally, since the instant case is still in its early stages,

23 | dismissal of this case without notice to class members is not unfair and will not result in undue

24 | prejudice to them. *See* Hennig Decl. ¶ 7-8.

25 |

26 | ///

27 | ///

28 |

4

PLAINTIFF JOHN FOSCUE'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION; DECLARATION OF
ROB HENNIG IN SUPPORT THEREOF

1    **IV. CONCLUSION.**

2         For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion

3    and approve Plaintiff's request for dismissal of this case in its entirety.  Plaintiff further requests

4    that such dismissal occur without a hearing and without notice to class members in accordance

5    with Rule 3.770(b) and (c) of the California Rules of Court.  Plaintiff submits a [Proposed] Order

6    Granting Plaintiff's Motion to Dismiss Class Action Pursuant to Cal. Rules of Court, Rule 3.770.

7    Plaintiff respectfully asks the Court to grant such Order.

8

9    DATED: September 25, 2018                    HENNIG RUIZ & SINGH

10

11                                    By:
                                             /s/ Shoshee J. Hui
12                                           Rob Hennig
                                             Brandon Ruiz
13                                           Shoshee Jau
                                             Attorney for Plaintiff John Foscue
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF JOHN FOSCUE'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION; DECLARATION OF
ROB HENNIG IN SUPPORT THEREOF

## DECLARATION OF ROB HENNIG

I, ROB HENNIG, declare as follows:

1.      I am an attorney at law duly admitted to practice before all the courts of the State of California and a partner at Hennig Ruiz & Singh, the counsel of record for Plaintiff John Foscue in this lawsuit.

2.      I have personal knowledge of the facts I am hereafter attesting to.  This personal knowledge has been attained either through my own observations and actions and/or through the underlying records and documents of this litigation.

3.      This declaration is being made in support of Plaintiff John Foscue's Request for Dismissal of Class Action.

4.      Plaintiff filed his Complaint on January 26, 2017.  Beginning in or around March 2017, the parties began settlement discussions and scheduled a mediation to take place on September 28, 2017.  The parties conducted some informal discovery in preparation for a mediation.  At the mediation, the parties were able to reach a settlement of Plaintiff's class claims.

5.      The Parties drafted a Class Action Settlement Agreement in or around November 2017 and sought the Court's approval beginning early 2018.  Plaintiff Foscue filed his Motion for Preliminary Approval of Class Action Settlement on February 2, 2018.  At the request of the Court, Plaintiff submitted further briefing on April 12, 2018, along with supporting declarations of class counsel, Rob Hennig and Brandon Ruiz.  Plaintiff's Motion was heard on April 26, 2018 and continued based on the Court's request to submit additional further briefing.  Plaintiff again filed further briefing on May 21, 2018, along with a declaration from Plaintiff John Foscue, Plaintiff's counsel Brandon Ruiz, Defendants' counsel Linh Hua, and the mediator, Jeffrey Krivis.  Plaintiff's Motion was again heard on June 20, 2018, and on July 3, 2018, the Court denied Plaintiff's Motion without prejudice.

6.      On August 27, 2018, the Parties appeared before this Court for a status conference; at the hearing, Plaintiff notified the Court of his intention to move for dismissal of

the action without prejudice, given the numerous challenges presented by this action, including the expected difficulty of obtaining class certification and the Court's denial of class settlement approval.

7.      At this stage, I believe that it is impractical to continue to pursue the class claims on a class basis. As such, I, on behalf of my client, am seeking to dismiss the class claims and thus, the entire action, without prejudice. Dismissal without prejudice would not bar any putative class members from bringing individual or representative suits on their own in the future.  Notice of the claims has not yet been sent to absent class members through the *Pioneer* Notice mechanism. Plaintiff believes that dismissal of the present action is in the best interest of the class, as the hurdles to preliminary approval currently posed in the instant case appear to completely bar recovery for any class member.

8.      Due to the Parties' efforts to engage in earlier settlement efforts, this case is in its very early stages.  Discovery has not formally commenced, the Court has not certified the class nor is a motion for class certification pending, and no trial date has been set.

9.      No consideration, whether direct or indirect, is being given by any party for the dismissal.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and, if called to testify, I could and would competently testify to the above facts.

Executed this 25th day of September, 2018, at Los Angeles, CA.



_____
ROB HENNIG

PLAINTIFF JOHN FOSCUE'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION; DECLARATION OF
ROB HENNIG IN SUPPORT THEREOF

# PROOF OF SERVICE

**Case Name:**             ***Foscue v. Ken Garff Automotive Group, et al.***
**Court and Case No.:**    ***Los Angeles Superior Court Case Number BC648132***

I am employed in the city of Los Angeles, county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 3600 Wilshire Blvd. Suite 1908, Los Angeles, CA 90010.

On <u>September 25, 2018,</u> I served the document(s) described as:

**PLAINTIFF JOHN FOSCUE'S REQUEST TO DISMISS CLASS ACTION; DECLARATION OF ROB HENNIG IN SUPPORT THEREOF**

**[PROPOSED] ORDER GRANTING PLAINTIFF JOHN FOSCUE'S REQUEST TO DISMISS CLASS ACTION WITHOUT PREJUDICE**

on the party or parties addressed as follows:

Linh T. Hua                                    Attorney for Defendants
Gordon & Rees
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

[ ]          (BY MAIL) I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]          (BY OVERNIGHT DELIVERY SERVICE) I caused said envelope(s) to be delivered over-night via overnight delivery service in lieu of delivery by mail to the addressee. I am readily familiar with my firm's business practice of delivering documents by the use of an overnight delivery service with the expectation that documents given to the service are reasonably calculated to be delivered the next day to their addressee.

[ ]          (BY PERSONAL SERVICE) I delivered or caused to be delivered said envelope by hand to the offices of the addressee(s). I am readily familiar with my firm's business practice of personally serving documents.

[X]          (BY ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent via CASE ANYWHERE to the persons on the service list below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on September 25, 2018, at Los Angeles, California.

SHOSHEE HUI

---

PROOF OF SERVICE

Exhibit "4"

1 GALEN GENTRY (State Bar No. 149413)
  Law Offices of Galen Gentry, P.C.
2 ROB HENNIG (State Bar No. 174646)
  Law Offices of Rob Hennig

3 1875 Century Park East, Suite 1770
4 Los Angeles, CA 90067

5 Telephone: (310) 282-7521
  Facsimile: (310) 282-7522
6
  Attorneys for Plaintiffs
7 JEFFRY WINTERS, on behalf of himself and others
  similarly situated

8

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 17 2011

John A. Clarke, Executive Officer/Clerk
BY_____, Deputy
    Shaunya Wesley

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9

**FOR THE COUNTY OF LOS ANGELES**

10

11

12 JEFFRY WINTERS, an individual, on
   behalf of himself and others similarly
   situated,

13                    Plaintiffs,

14          v.

15 BASE PRODUCTIONS, INC.; and
16 DOES 1 through 50, inclusive

17                    Defendants.

18

19

20

21

**CASE NO. BC410650**

**PLAINTIFF'S NOTICE OF MOTION
AND UNOPPOSED MOTION FOR
AWARD OF REASONABLE
ATTORNEYS' FEES AND COSTS**

Date:    September 7, 2011
Time:    8:30 a.m.
Dept.:   36
Hon. Gregory W. Alarcon

Complaint Filed: March 27, 2009
Hearing September 7, 2011

Time: 8:30 AM

22

23

24

25

26

27

28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 7, 2011 at 8:30 a.m. in Department 36 of this Court, located at 111 North Hill Street, Los Angeles, California 90012, Plaintiff and Class Representative Jeffry Winters will and hereby does move for an order granting class counsels' application for attorneys' fees in the amount of $122,500, and awarding class counsel reimbursement of its costs in the amount of $5,000.   The terms of the settlement are contained in the Order for Preliminary Approval for Class Action Settlement.

This motion will be based on this Notice and accompanying Memorandum of Points and Authorities, the Declaration of Galen Gentry (including exhibits), and the Declaration of Robert Hennig, and the Declaration of Jeffry Winters, all filed herewith, and on such further evidence and argument as may be presented at the hearing.

Dated:   August 8, 2011                    LAW OFFICES OF GALEN GENTRY

GALEN GENTRY
Attorney for Plaintiff JEFFRY WINTERS

PLAINTIFF'S UNOPPOSED MOTION FOR AWARD OF REASONABLE ATTYS' FEES & COSTS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By way of this unopposed motion, Plaintiff and Class Representative Jeffry Winters seeks the Court's approval of reasonable attorneys' fees in the amount of $122,500 and $5,000 of costs.   Pursuant to the parties' settlement agreement, Base Productions agreed to establish a settlement fund of up to $350,000 which includes payments to class members, the representative Plaintiff, attorneys' fees and costs, and costs of administration.   (The net settlement amount will be the gross settlement amount less attorneys' fees and costs and cost of claims administration.)   Class members will be paid on a claims-made basis.   The settlement requires Defendant to pay at least 50 percent of the net settlement amount.   Unclaimed funds that are not distributed to the class members, in excess of the minimum, will revert to the Defendant.

On March 28, 2011, class notice packets were mailed to all 267 class members via first class U.S. mail.   Thirty-eight notice packets were returned by the post office as undeliverable.   After taking reasonable steps to attain current addresses the class action administrator re-mailed 29 notice packets.   Ultimately, 16 of those notice packets remained undeliverable.   As of August 4, 2011, Simpluris has received 75 claim forms. Three were untimely and one was deficient.   As of said date, the 71 valid claim forms comprised 26.39% of the class.   Altogether participating class members represent approximately 55.88% of the $195,000 net settlement fund available.   The class claims administrator received 1 request for exclusion and no objections to the settlement. Simpluris estimates administration costs to be $12,500 (See Declaration of Michael Bui, served and filed concurrently).

Class counsels negotiated a settlement that provides excellent returns for participating class members.   Pursuant to the Court's preliminary approval order, the class notice was sent to the class members, who had until May 12, 2011 to submit claims, request exclusion or object to the settlement. Because the settlement achieves good results

for the class, plaintiff respectfully requests the court approve the payment of class counsel's fees of $122,500 which is 35% of the gross settlement value.   The benchmark for fee awards in California is 25% of the total settlement value.   *Vizcaino v. Microsoft Corporation* 290 F.3d 1043, 1047 (9th Cir. 2002) (*See Lealao v. Beneficial California, Inc.* 82 Cal.App.4th 19, 24, n.1 (2000). In practice fee awards in class actions average around one-third of the recovery. *Chavez v. Netflix, Inc.,* 162 Cal.App.4th 43, 66 n.11 (2008). Plaintiff's request for an award of attorneys' fees of $122,500 is reasonable in light of the work performed by class counsels, the contingent nature of this action, the lodestar in this matter, and the results achieved under the settlement.   *See Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001).   While the amount sought is 35% of the gross settlement it is less than the lodestar amount as set out in the Declaration of Galen Gentry, filed concurrently herewith.   Plaintiff also requests that class counsels be reimbursed for $5,000 in reasonable costs incurred in litigating this action, which amount is less than the cost actually incurred by class counsels.

## II. PROCEDURAL HISTORY AND SUMMARY OF CLAIMS

On March 27, 2009, Plaintiff Jeffry Winters filed this class action complaint against Base Productions, Inc. ("Defendant"), and DOES 1 through 50.   Plaintiff alleges various labor code violations against Defendant on behalf of himself and the class of individuals who worked for defendant in the previous 4 years as described in the complaint.   The complaint alleges: (1) failure to pay overtime; (2) failure to provide meal breaks; (3) failure to provide rest periods; (4) waiting time penalties; (5) failure to pay all wages at least semi-monthly; (6) failure to provide accurate itemized wage statements; (7) unfair competition; (8) penalties pursuant to PAGA; and (9) preliminary and permanent injunction.   Following the court's denial of defendant's demurrer and motion to strike, defendant answered the complaint on October 23, 2009.   Throughout this litigation Base Productions denied each of the allegations made by Plaintiff and has asserted it has no liability for claims of plaintiff or the class.   Further, defendant believes plaintiff's claims

are not suitable for class action treatment, and that plaintiff cannot satisfy the procedural requirements for a class action.

After filing the motion, absent settlement, for an order preliminarily approving the class action settlement, Plaintiff filed supplemental briefing on January 26, 2011. Defendant filed a statement of non-opposition on the same date.   At the February 3, 2011 hearing, the court ordered further briefing regarding the factors of conditional class certification.   Plaintiff filed a supplemental declaration on February 7, 2011.   The Court granted the motion for preliminary approval of the class action settlement on March 8, 2011.

## III. TERMS OF SETTLEMENT

The settlement covers 267 class members who comprised the class as alleged in the complaint. The settlement provides that Base Productions will create a $350,000 settlement fund, the majority of which will be distributed to individual class members depending on the number of days they worked.   The settlement provides that subject to approval of the court the following will be deducted from the settlement fund: (1) enhancement award to the class representative not to exceed $15,000; (2) fees to the administrator estimated to be $12,500; (3) class counsel's attorneys' fees, not to exceed 35% of the settlement fund; and (4) litigation costs not to exceed 5,000. A summary of the disbursements from the settlement fund is attached hereto as **Exhibit 1**.   Seventy-five class members, comprising 26.3 percent of the Class, submitted claims. Three claims forms were deficient and one claims form was untimely. (See Declaration of Simpluris Class Claims Administrator Michael Bui filed and served concurrently herewith).   If the Court approves all requested deductions, the net settlement amount to be distributed to the class will be $101,551.32 and the 71 class members receive different amounts as set forth in **Exhibit 1**.   Class members will be paid on a claims-made basis.   Defendant will pay out a minimum of 50% of the net settlement.   All funds of the net settlement that are not distributed to the class members will revert to the Defendant.

5

Pursuant to Attachment B to the Settlement Agreement, attached hereto as **Exhibit 2**, the qualifying class members have been divided into three subclasses. **Subclass One:** Subclass One includes those members who hold highly specialized positions that are likely to be found independent contractors or exempt employees.   These positions are presumed to spend the majority of their time engaged in administration, management or the creative process, or to perform specialized functions under little or no supervision often with their own tools and equipment.   Class members in Subclass One will collectively receive a total settlement payment of $33,587.78. *See Exhibit 1*.   **Subclass Two:**   Class members who hold positions that include specialized "assistants" or those positions that involve some amount of time engaged in administration, management or the creative process, but may *or may not* constitute the majority of their time.   This subclass includes job positions that are less likely to be found independent contractors or exempt employees than the job categories included in subclass one.   Subclass Two will receive an overall total sum of $38,117.40.   *See Exhibit 1*.   **Subclass Three:** Subclass three includes those members who hold positions that are not specialized, do not work independently and are not believed to involve meaningful administration, management or the creative process.   These job positions are less likely to be found to be independent contractors or exempt employees, but wages paid to this subclass were relatively low. Subclass Three will receive a total $29,846.14. *See Exhibit 1.*

### IV. CLASS NOTICE AND CLAIMS PROCESS

Defendant provided the claims administrators, Simpluris, with a list containing the class members' name, last known address and employment information on March 11, 2011.   The class list contained data for 267 class members.   The mailing addresses were processed and updated using the National Change of Address ("NCOA") database operated by the U.S. Postal Service.   On March 28, 2011, class notice packets were mailed to all 267 class members via first class mail.   The NCOA contained request for change of addresses filed with the U.S. Postal Service.   Twenty-nine were returned.

Simpluris found new addresses for 13 of the 29.   Sixteen class notice packets remain
undeliverable because Simpluris was unable to find an address.   The claims deadline was
May 12, 2011.   The opt-out deadline was May 12, 2011, and the objection deadline was
May 12, 2011.

Simpluris received one request for exclusion and no objections to the settlement.
Simpluris received 71 valid claims forms comprising 26.39% of the class as of August 4,
2011.

## V. LEGAL ARGUMENT

### A. Class Counsels' Request for Fees are Reasonable and Less Than the Lodestar Amount

Class counsels request for fees is reasonable under the percentage-of-common-fund
doctrine and under the lodestar method. California courts have recognized the common
fund or common benefit doctrine, under which attorneys who create a common fund or
benefit for a group of persons may be awarded their fees and costs to be paid out of the
fund.   *Serrano v. Priest*, 20 Cal.3d 25, 34 (1977), quoting *D'Amico v. Board of Medical
Examiners*, 11 Cal. 3 d 1 (1974); *Glendale City Employees' Assoc'n v. City of Glendale*,
15 Cal.3d 328, 341 n.19 (1975); *Quinn v. California*, 15 Cal.3d 162, 167 (1995); *see also
Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.*, 396
U.S. 375, 391-392 (1970); *Vizcaino*, 290 F.3d at 1047.

The California Supreme Court has held that, "when a number of persons are
entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for
the benefit of all results in the creation of that fund, such plaintiff or plaintiffs may be
awarded attorneys' fees out of the fund." *Serrano v. Priest*, 20 Cal.3d at 34, quoting
*D'Amico*, 11 Cal.3d .1.

The percentage-of-the-fund approach may be the preferred method of awarding
fees in traditional common fund cases such as this one.   Where the settlement amount is
a certain or easily calculable sum of money, use of this method is appropriate. *Serrano v.*

7

*Priest*, 20 Cal.3d at 35.   This method has also been endorsed by the Ninth Circuit and at least seven other appellate courts.   *See e.g., Vizcaino*, 290 F.3d at 1047; *In re Sumitomo Copper Litig.* 74 F. Supp. 2d 393, 396-98 (S.D.N.Y. 1999) (describing the overwhelming weight of federal authority in favor of the percentage fee method).

Here, the settlement amount is certain or easily calculable.   The settlement sets forth a specific lump sum allocation to the class for monetary payouts, as well as a distribution formula through which each class member who submits a valid and timely claim form will receive an easily calculable monetary payment.

The percentage requested is within the acceptable range.   Like the Ninth Circuit, California courts recognize the typical range for acceptable attorneys' fees is 20% - 33% of the total settlement value, with 25% considered the benchmark. *See Lealao*, 82 Cal. App.4th at 24, n.1. Attorneys' fee awards of higher amounts are frequently upheld. *See e.g., Chavez v. Netflix, Inc.*, 162 Cal.App.4th. 43, 66 n.1 (ultimately most fee awards average around 33%); *see also, Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663, 664 (9th Cir.2003) (upholding 33% fee award); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (approving a 30% fee award).

**B. The Lodestar Fee Amount is $149,940 Which is More Than the $122,500 Sought by Plaintiff's Counsel**

The attorneys' fees requested are $27,440 less than the lodestar amount for this case.   As set out in the Declaration of Galen Gentry and the attorneys' time and expense report which is **Exhibit 4** to Mr. Gentry's declaration, the lodestar for this case is $149,940.   The U.S. Supreme Court has described the "lodestar" method as the guiding light of fee-shifting jurisprudence and has established a strong presumption that the lodestar represents a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The lodestar is calculated using the reasonable rate for comparable legal services in the local community for non-contingent litigation of the same type, multiplied by the reasonable number of hours spent on the case. *Ketchum v. Moses*, 24 Cal.4th 1122, 1131-

1132 (2001).    The number of hours reasonably worked is determined by looking at the time spent on the matter including time spent drafting and revising pleadings, meeting with clients, engaging in discovery, law and motion practice, and preparing the case for trial.    *See Hensley v. Eckerhert* 461, U.S. 424, 430. Reasonable hours may include time spent by more than one attorney on a particular issue or task provided there is no duplication of effort.    In this instance the plaintiff's co-counsel have been careful to avoid requesting fees for work that has even the appearance of duplication.    The only tasks for which both attorneys seek compensation for their time was the mediation.    Both Mr. Hennig and Mr. Gentry attended the mediation and plaintiff and the class were better served for it.

In determining the reasonable rate for attorney services the court usually considers the prevailing rate charged by attorneys of similar skill and experience for comparable legal services in the community, the nature of the work performed and the attorneys' customary billing rates. *See Serrano v. Unruh*, 32 Cal.3rd 621, 643 (1982).    The party seeking an award of attorneys' fees bears the burden of submitting evidence of the hours worked and the rates claimed, and that information is set forth in detail in **Exhibit 4** of the Declaration of Galen Gentry.

From the outset of the case to the present the prosecution of the action has involved significant financial risk for class counsel.    Counsel undertook the matter solely on a contingent basis with no guarantee of recovery.    Over two years the action has been hard fought.    Class counsels' ability to develop an extensive factual record, and engage in successful motion practice were essential to achieving the settlement.    Through their skills class counsels obtained a settlement that provides outstanding results for the class members.    Class counsels' hourly rates are reasonable for their skill level.    In comparison to hourly rates for private attorneys conducting non-contingent litigation of the same type the rates are low.    Class counsels' time record indicates that they spent a reasonable amount of time on the tasks necessary to prosecute the case, which included

fact investigation, interviews with the class representative Jeffry Winters and other potential class members and witnesses, researching and drafting the complaint, opposing the demurrer and motion to strike, propounding and responding to written discovery, successfully moving the court for an order to compel further responses to interrogatories, preparing and defending the deposition of the class representative, Jeffry Winters, drafting the various motions filed herein, attending the hearings, preparing for and representing Plaintiff and the putative class at the mediation, and negotiating the settlement.

Class counsels' request for costs is also reasonable.   In the course of the litigation class counsels have incurred out-of-pocket expenses of $8,929.04.   Recoverable costs generally include out-of-pocket expenses that would normally be charged to a fee-paying client.   *Harris v. Marhoefar* 24, F.3d 16, 19 (1994).   A detailed listing of the cost is included in **Exhibit 4** of the Declaration of Galen Gentry.   The cost for which class counsels seek for reimbursement are filing fees, mediator fees, deposition transcript fees, and the like.   Such costs are appropriate for cost reimbursement in these types of cases.

## VI. CONCLUSION

For the foregoing reasons Plaintiff requests the Court approve class counsels' request for an award of $122,500 in attorneys' fees and $5,000 in costs as provided for in the settlement.

Dated:   August 8, 2011                    LAW OFFICES OF GALEN GENTRY

GALEN GENTRY
Attorney for Plaintiff JEFFRY WINTERS



08/17/11

**Exhibit 1**

11/27/88

| Name | Address | City | St | Zip | Amount | Description | Approved at Final |
|------|---------|------|----|----|--------|-------------|-------------------|
| | | | | | | | |

### BaseProductions_Winters Final Calculations

| | | | | | | | |
|------|---------|------|----|----|--------|-------------|-------------------|
| **GSF** | | | | | **350,000.00** | | |
| | | | | | | | |
| Plaintiff Attorney | | | | | (122,500.00) | Attorney Fees | |
| Plaintiff Attorney | | | | | (5,000.00) | Attorney Costs | |
| | | | | | | | |
| Lead Plaintiff | | | | | (15,000.00) | Enhancement Payment | |
| | | | | | | Administration | |
| Simpluris Inc. | 3176 Pullman | Costa Mesa | CA | 92626 | (12,500.00) | Fees | |
| **NSF** | | | | | **195,000.00** | | |

| | Total Days Worked | Percentage of Class | Potential OT | Chances of Prevailing | Weighted Wages | Apportionment Ratio | Available Distribution Pool | Daily Settlement Rate |
|------|-------------------|---------------------|--------------|-----------------------|----------------|---------------------|----------------------------|-----------------------|
| Subclass 1 | 7015.25 | 51.36% | $100,151.82 | 15% | $15,022.77 | 26% | 50,869.33 | 7.25 |
| Subclass 2 | 5023.75 | 36.78% | $71,720.57 | 40% | $28,688.23 | 50% | 97,142.57 | 19.34 |
| Subclass 3 | 1620.00 | 11.86% | $23,127.61 | 60% | $13,876.56 | 24% | 46,988.10 | 29.00 |

*floor 50%*   *$97,500.00*   *Met*

| | | |
|------|---|---|
| Subclass 1 Settlement Payments Claims | | (33,587.79) |
| Subclass 2 Settlement Payments Claims | | (38,117.40) |
| Subclass 3 Settlement Payments Claims | | (29,846.14) |
| **Balance** | | **93,448.67** |

| | |
|------|---|
| **Total to deposit in QSF:** |  256,551.33 |
| *Payment Received* | |
| **Balance Due:** | 256,551.33 |



08/17/11

**Exhibit 2**

## SETTLEMENT AGREEMENT AND RELEASE

### 1. PREFATORY STATEMENT

This SETTLEMENT AGREEMENT AND RELEASE ("Settlement Agreement") is made and entered into as of August 27, 2010, by and between named Plaintiff Jeffry Winters ("Winters" or "Plaintiff"), individually and on behalf of the Settlement Class described below, by and through their counsel of record, Robert Hennig and Galen Gentry; and Defendant Base Productions, Inc. ("Base"), by and through its counsel of record, Loeb & Loeb LLP. Winters and Base are hereafter referred to individually as a "Party," and collectively as the "Parties."

### 2. RECITALS

A.      On or about March 27, 2009, a class action Complaint was filed against Base in the Los Angeles Superior Court, bearing Case No. BC410650 and entitled *Jeffry Winters v. Base Productions, Inc., a Maryland Corporation; and Does 1 through 50, Inclusive* ("the Action"). The Action is currently pending before the Honorable Gregory Alarcon, Los Angeles Superior Court ("Court"). The Parties agree that the Court has jurisdiction to approve any settlement of the Action.

B.      The Action arose from Winters' retention by Base as a Production Assistant and Production Coordinator between approximately July 23, 2007 to approximately May 9, 2008. In the Complaint, Winters alleges that Defendant improperly paid him as an independent contractor rather than employee, did not pay him overtime wages, did not provide meal and rest periods and did not provide itemized wage statements in accordance with applicable law. Winters contends that the alleged conduct of Defendant violated California Labor Code §§ 201, 202, 510, 1194, 1198, 204, 226, 226.7 and 512 and California Business and Professions Code § 17200, and seeks remedies under California Labor Code §§ 203, 210, 226, 226.7, 558, 1194, 1199 and 2699, California Business and Professions Code §§ 17200 *et seq.*, and attorneys' fees, both individually and on behalf of all others similarly situated. Defendant denies all of these contentions.

C.      As a result of the proceedings in the Action, an exchange of discovery, extensive negotiations between Plaintiff's counsel and Defendant's counsel, and a mediation before mediator Deborah Rothman, Esq., which was attended by all Parties, a settlement, as hereinafter more fully described, has been reached in writing, pending Court approval. Plaintiff and his counsel have concluded that the settlement of the litigation on the terms and conditions hereinafter set forth is fair, reasonable, adequate and in the best interests of the Settlement Class.

D.      Defendant denies any and all liability to Plaintiff and to the Settlement Class for any and all claims asserted or that might have been asserted in these proceedings. Defendant, however, considers it desirable that the Action be

1

LA2097157.1
212795-10005

compromised, settled, and dismissed because this will eliminate the controversy between Defendant on the one hand, and Plaintiff and the Settlement Class on the other hand, and will avoid further expense, inconvenience, and distraction to Defendant.

3.  DEFINITIONS

      A.    For the purposes of this Settlement Agreement, the "Settlement Class" shall be defined as all individuals retained by Base as independent contractors in California from January 1, 2007 through October 31, 2009, who held the job positions listed in Attachment "A" hereto.

      B.    "Final Effective Settlement Date" means the date upon which the order of the Court granting final approval of the Settlement Agreement and the entry of judgment by the Court becomes final either by the time for appeal having elapsed without any appeal having been taken by any Party or by any member of the Settlement Class or on such date when, an appeal having been taken, such appeal is finally resolved by affirming the order granting final approval. In the event an appeal is taken by any member of the Settlement Class, this final effective date is to be calculated by including the time within which any person taking such appeal might petition the California Supreme Court for a writ of certiorari.

      C.    The "Settlement Administrator" shall be a qualified and experienced claims administrator as may be agreed to between the Parties and appointed by the Court.

      D.    "Qualifying Class Member" means each Settlement Class member who timely submits a Claim Form.

4.  CERTIFICATION OF A SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY.

The parties to this Settlement Agreement agree that, solely and exclusively for the purposes of effectuating this Settlement Agreement, the Settlement Class shall be certified.

Defendant does not waive and expressly reserves its right to challenge the validity of any and all claims asserted by members of the proposed Settlement Class and to object to any attempt to obtain certification of a plaintiffs' class or subclasses for any purpose should the Court not approve this Settlement Agreement, or should any condition precedent to the occurrence of the Final Effective Settlement date not occur or be satisfied.

2

## 5. SETTLEMENT PAYMENTS

For and in consideration of the mutual covenants contained herein, the Settlement
Class and Defendant agree, subject to approval by the Court, as follows:

A.      Defendant shall, subject to the conditions hereinafter set forth, be
obligated to pay a maximum amount of $350,000, which shall be deposited in an
account to be used to fund this Settlement Agreement ("Settlement Funds").

B.      The above paragraph is intended to mean and shall be construed to
mean that the Settlement Fund may be used solely for the purpose of: paying such
attorneys' fees as shall be specifically approved by order of the Court; payment of
costs and fees associated with administration of the class; and disbursement to
members of the Settlement Class, as hereinafter provided and as ordered by the Court.

C.      It is expressly agreed and understood that the Settlement Fund
represents the maximum aggregate monetary compensation that Defendant will
contribute to the settlement in any manner. Except as otherwise stated herein,
Defendant shall not have any monetary obligation whatsoever toward the costs or
attorneys' fees incurred by the Plaintiff, Plaintiff's Counsel or the Settlement Class.
It is understood that, at the time of applying to the Court for final approval of the
Settlement Agreement, Plaintiff's counsel intends to apply to the Court for an award
of attorneys' fees and costs, and that any sum awarded to counsel by the Court will be
a deduction from the Settlement Fund. It is further expressly agreed by the Parties
that the amount, if any, to be awarded to Plaintiff's counsel shall be determined solely
by the Court and that the Parties have not agreed upon nor will they agree upon any
specific sum to be awarded. Defendant will not object to Plaintiff's counsel applying
for a fee up to 35% of the Settlement Fund, exclusive of costs incurred by Plaintiff's
counsel.

D.      Within thirty (30) days after preliminary approval, Defendant shall pay
the sum of $350,000 to a separate account maintained by or on behalf of the
Settlement Administrator, to be held for future distribution in accordance with this
Settlement Agreement.

E.      When and if the Court enters orders giving final approval to the
settlement and determining the amount of attorneys' fees and costs to be awarded to
Plaintiff's counsel, it shall be the duty of Plaintiff's counsel to serve forthwith a copy
of such orders on counsel of record for Defendants.

F.      After the Final Effective Settlement Date, the Settlement
Administrator shall calculate the amounts to be distributed from the settlement fund,
not to exceed the aggregate maximum amount of $350,000, as follows:  (a) the
amount of attorneys' fees and costs awarded to Plaintiff's counsel by the Court
(which amount is to be paid by check to Plaintiff's counsel); (b) the sum of Fifteen

3

Thousand Dollars ($15,000.00) payable to Plaintiff as an incentive for acting as a
"representative plaintiff," the amount of which will be disclosed in any motion
seeking preliminary approval or final approval, and is subject to the approval of the
Court (which amount is to be paid by check to Winters c/o Plaintiff's counsel); (c)
Court approved costs incurred by the Settlement Administrator (which amount is to
be paid directly to the Settlement Administrator); and (d) payments to Qualifying
Class Members subject to a formula to be provided to the Settlement Administrator
by Defendant's counsel as agreed to by Plaintiff's counsel and approved by the Court.
All payments to Settlement Class members made hereunder shall be deemed to be
payments pursuant to and in satisfaction of their claims under Sections 203, 210,
218.6, 226, 226.7, 558, 1194, 1199 and 2699 of the California Labor Code and
California Business and Professions Code Section 17200 *et seq.*, and Defendants will
not be liable for payment of any federal, state or local taxes and penalties that may be
due as a result of the payments referred to herein.

G.     This is a claims-made settlement. As a condition to this Settlement, at
least 50% of the Net Proceeds available for distribution to the Settlement Class shall
be paid to Qualifying Class Members. "Net Proceeds" is the amount of funds
available after payment of counsel fees and costs, costs associated with the
administration of the class action and the incentive payment to Plaintiff Winters. Any
unclaimed amounts remaining after deductions for attorneys' fees and costs,
administration costs, Plaintiff Winters' incentive payment and the 50% payment
guarantee shall be returned to Base by the Settlement Administrator.

H.     The Settlement Administrator shall make the payments described in
the foregoing subparagraph 5.F within fifteen (15) business days after the Final
Effective Settlement Date.

6.  COSTS OF ADMINISTRATION

All costs and expenses associated with the administration of this Settlement
Agreement, including disseminating Class Notice and Claim Form, shall be paid from
the settlement funds.

7.  PRELIMINARY APPROVAL OF SETTLEMENT

Within sixty days following execution of this Settlement Agreement by the named
Plaintiff on behalf of himself and the Settlement Class, by Plaintiff's counsel, and by
Defendant and its counsel, the Parties shall cause to be filed with the Court a motion,
to be prepared by Plaintiff's counsel and subject to the approval of Defendants'
counsel, seeking: (1) preliminary approval of the Settlement Agreement by the Court,
(2) certification for settlement purposes only of the Settlement Class, (3) approval of
a form of notice to be sent to members of the Settlement Class, (4) approval of a
method of giving such notice, (5) the appointment of a Settlement Administrator, and
(6) the setting of a date for hearing any objections to the proposed settlement and

4

giving final approval to the settlement.

8.  NOTICE TO SETTLEMENT CLASS AND RELATED MATTERS

A.  The form of notice to be given to the Settlement Class ("Class Notice") and the Claim Form shall be approved by the Court as part of the order preliminarily approving the settlement. The proposed Class Notice to be presented to the Court shall advise each member of the Settlement Class of the pendency of the Action, the general nature of the claims asserted in the Action, the general terms of this Settlement Agreement, including the provision for the application of Plaintiff's counsel for fees and expenses and the incentive payment to the representative plaintiff, the effect of final approval of the settlement, if granted, in extinguishing the claims of all members of the Settlement Class who have not made a timely election to opt out, the right of each member of the Settlement Class to participate in the settlement by submitting the Claim Form, the right of each member of the Settlement Class to opt out of this settlement, the right of each member of the Settlement Class to object to the terms of the Settlement Agreement and the means by which any such objection may be asserted, and stating that each member of the Settlement Class who does not timely opt out will be bound by the release provisions in this Settlement Agreement.

B.  The method of giving notice shall be determined by the Court and set forth in the order preliminarily approving the settlement. The Parties will jointly request the Court to order, and it is a material element of the parties' negotiated settlement, that the method to be utilized shall be by first class mail and that only a single Class Notice shall be sent to putative class members. The Class Notice shall be promptly disseminated by the Settlement Administrator to the members of the Settlement Class at the last known address of such persons.

C.  The Settlement Administrator shall be responsible for disseminating the Class Notice and Claim Form in accordance with the terms of the preliminary approval order, processing all Claim Forms submitted by members of the Settlement Class, distributing payments to Qualifying Class Members, and making any payment from the settlement funds that is required by this Settlement Agreement.

D.  Members of the Settlement Class shall have the right to opt out of this settlement. To opt out of this settlement, the members of the Settlement Class must mail a written request for exclusion from the settlement to the Settlement Administrator by first class mail, with a postmark that is no later than the 45th day from the date the Class Notice is mailed, as set forth in the Class Notice ("Opt Out Deadline"). Any member of the Settlement Class who fails to timely mail such a request and who has not made timely submission of a Claim Form shall be barred from receiving any settlement payment pursuant to this Settlement Agreement, but shall still be bound by the releases contained in this Settlement Agreement.

5

E.    The Class Notice will provide that the deadline for objecting to the Settlement Agreement and for filing Claim Forms will be no later than the 45th day from the date the Class Notice is mailed.

9.  RELEASE OF CLAIMS

A.    It is the mutual intent of all Parties that, in exchange for the consideration to be provided as stated herein, this Settlement Agreement shall, to the maximum extent permitted by law, operate as a general release that shall forever settle, compromise, and extinguish any and all claims, judgments, and/or awards of Plaintiff Jeffry Winters, whether known or unknown.

B.    Except for the rights and obligations created or preserved by this Agreement, Defendant, on the one hand, and Plaintiff Jeffry Winters on the other hand, for themselves and their respective employees, insurers, affiliates, parent and subsidiary entities, shareholders, officers, directors, attorneys, heirs, executors and administrators, release and forever discharge each other and their employees, insurers, affiliates, parent and subsidiary entities, shareholders, officers, directors, attorneys, insurers, heirs, executors and administrators, from any and all claims, rights, demands, obligations, agreements, contracts, representations, promises, liens, accounts, debts, liabilities, expenses, damages, costs, interest, attorneys' fees, judgments, orders, and causes of actions of every kind and nature, whether known or unknown, suspected or unsuspected, existing or claimed to exist, which Defendant, on the one hand, and, Plaintiff on the other hand, ever had, now have, or claim to have against the other from the beginning of time up to the Final Effective Settlement Date.

C.    It is the mutual intent of all Parties that, in exchange for the consideration to be provided as stated herein, this Settlement Agreement shall, to the maximum extent permitted by law, operate to settle, compromise, and extinguish any and all claims, judgments, and/or awards of the of all members of the Settlement Class who do not opt out of this Settlement Agreement, to the extent such claims are included within the matters released below.

D.    Except for the rights and obligations created or preserved by this Agreement, Defendant, on the one hand, and all members of the Settlement Class who do not opt out of this Settlement Agreement, on the other hand, for themselves and their respective employees, insurers, affiliates, parent and subsidiary entities, shareholders, officers, directors, attorneys, heirs, executors and administrators, release and forever discharge each other and their employees, insurers, affiliates, parent and subsidiary entities, shareholders, officers, directors, attorneys, insurers, heirs, executors and administrators, from any and all claims, rights, demands, obligations, agreements, contracts, representations, promises, liens, accounts, debts, liabilities, expenses, damages, costs, interest, attorneys' fees, judgments, orders, and causes of actions of every kind and nature, whether known or unknown, suspected or

6

unsuspected, existing or claimed to exist, which Defendants, on the one hand, and all members of the Settlement Class who do not opt out of this Settlement Agreement, on the other hand, ever had, now have, or claim to have against the other that have been, could have been, may be or could be alleged in the Action by a Member of the Settlement Class, against Base, relating to claims for violation of the Fair Labor Standards Act, California Labor Code, including but not limited to, sections 201 – 204, 210, 226, 226.7, 510, 512, 558, 1174, 1194, 1199 and 2699 (and related Wage Orders), Business and Professions Code Section 17200 *et seq.*, claims for recovery of statutory penalties and/or attorneys' fees, California Code of Civil Procedure section 1021.5, from the beginning of time up to the Final Effective Settlement Date.

E.  Plaintiff Jeffry Winters waives all rights under the provisions of section 1542 of the California Civil Code only for claims or actions described in Paragraph 9.B. supra, which presently reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THIS RELEASE, WHICH, IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Plaintiff Jeffry Winters expressly waives any and all rights he has or may have under Civil Code Section 1542 with regard to the claims described above, as applicable to them. In connection with this waiver, Plaintiff Winters acknowledges that he is aware he may hereafter discover claims presently unknown or unsuspected or facts in addition to or different from those which he now knows or believes to be true with respect to the claims, matters and causes of action released by this Settlement Agreement as set forth above, as applicable to him. Nevertheless, Plaintiff Winters intends by this Settlement Agreement to release fully, finally, and forever all such matters as described herein. In furtherance of such intention, the releases as set forth in this Settlement Agreement shall be and remain in effect as a full and complete release of such matters released herein notwithstanding the discovery or existence of any additional or different claims or facts relevant thereto. It is expressly understood and agreed that this waiver of Civil Code Section 1542 and the releases set forth herein are material terms of this Settlement Agreement, and were separately negotiated between the Parties.

F.  All members of the Settlement Class who do not opt out of this Settlement Agreement waive all rights under the provisions of section 1542 of the California Civil Code only for claims or actions described in Paragraph 9.D. supra, which presently reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO

7

EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THIS RELEASE, WHICH, IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

All such persons expressly waive any and all rights they have or may have under Civil Code Section 1542 with regard to the claims described above, as applicable to them. In connection with this waiver, they acknowledge that they are aware they may hereafter discover claims presently unknown or unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to the claims, matters and causes of action released by this Settlement Agreement as set forth above, as applicable to them. Nevertheless, such Party intends by this Settlement Agreement to release fully, finally, and forever all such matters as described herein. In furtherance of such intention, the releases as set forth in this Settlement Agreement shall be and remain in effect as a full and complete release of such matters released herein notwithstanding the discovery or existence of any additional or different claims or facts relevant thereto. It is expressly understood and agreed that this waiver of Civil Code Section 1542 and the releases set forth herein are material terms of this Settlement Agreement, and were separately negotiated between the Parties.

G.      The releases described herein will become effective only upon final approval of this Settlement Agreement by the Court and the expiration of the Final Effective Settlement Date. It is agreed that as part of any order granting final approval to this Settlement Agreement, the Court shall enter an order and judgment that, to the extent permitted by law, permanently restrains and enjoins Plaintiff and any members of the Settlement Class who did not timely request exclusion from the Settlement Agreement from enforcing, initiating, prosecuting, or otherwise maintaining any legal proceeding, judgment, or award against the released parties that asserts or is based on any claim arising out of or in any way related to the claims described in this paragraph, as is as applicable to them. The release and injunction provided for herein shall not bar any action to enforce the provisions of this Settlement Agreement. The release and injunction provided for herein shall inure to the benefit of the released parties.

10. FINAL SETTLEMENT APPROVAL HEARING

A.      This Settlement Agreement will not become effective as to the Settlement Class until the Court conducts the final settlement approval hearing (at a date to be set by the Court) and enters an order and judgment approving without modification all of the material terms of this Settlement Agreement.

B.      Counsel for Plaintiff shall be responsible for ensuring that at least the following documents are filed with the Court in advance of the final settlement approval hearing so that the Court will have a sufficient basis upon which to evaluate

8

and approve the settlement:

(i) A report that includes: (a) a declaration by the Settlement Administrator confirming that the Class Notice, the Claim Form, and all other required documents have been timely provided to members of the Settlement Class as required by this Settlement Agreement; (b) an indication of the total number of objections, if any, received from the members of the Settlement Class, and (c) the total number of persons who submitted timely exclusion requests;

(ii) A Memorandum of Points and Authorities approved by all Parties and such other pleadings, evidence, or documents as may be necessary for the Court to determine that the settlement terms contained in this Settlement Agreement are fair, reasonable, and adequate;

(iii) A judgment and order for the Court's signature (a) approving the material terms of the settlement contained in this Settlement Agreement as being fair, reasonable, and adequate; (b) permanently enjoining all members of the Settlement Class who have not timely requested exclusion from pursuing the claims that are being released in the Action as against Defendant; and (c) dismissing the Action as against all Defendants.

## 11. SETTLEMENT AGREEMENT CONTINGENCIES

The relief to be provided to Settlement Class members under this Settlement Agreement will become effective only if the following conditions are satisfied:

A. The Court grants preliminary approval of the terms of this Settlement Agreement and finds that its terms are sufficient to warrant sending notice to members of the Settlement Class.

B. The Court preliminarily certifies for settlement purposes only the Settlement Class.

C. The Court designates a Settlement Administrator.

D. The Court approves the forms of Class Notice and Claim Form, as approved by Counsel for all Parties, and the manner of giving notice to the Settlement Class.

E. The Court holds a final approval hearing as required by this Settlement Agreement.

F. The Court enters an order at or after the final approval hearing finding that this Settlement Agreement is fair, reasonable, and adequate to members of the Settlement Class.

9

LA2097157.1
212795-10005

G. The Court enters a final judgment that releases the claims of the members of the Settlement Class and dismisses the Action with prejudice as against Defendant, in a form agreeable to counsel for all Parties.

H. No appeal challenging the Court's final judgment is filed or if such appeal is filed, at the conclusion of any and all appeals challenging the Court's entry of final judgment.

## 12. DEFENDANT'S OPTIONAL TERMINATION RIGHT

Defendant may, in its sole and absolute discretion, elect to terminate this Agreement if exclusion requests as provided for in the preliminary approval are in excess of ten (10) percent, by serving a written notice of termination on the Court and Plaintiff's Counsel, by hand delivery or first class mail, delivered or postmarked no later than ten (10) days after the last day for the receipt of exclusion requests as provided in the Class Notice.

## 13. CALCULATION OF PAYMENTS TO SETTLEMENT CLASS MEMBERS AND CLAIMS PROCEDI

A. The Settlement Class members shall be entitled to compensation based on the payment matrix attached hereto as Attachment "B."

B. Members of the Settlement Class shall provide to the Settlement Administrator the information required by the Claim Form. Any Settlement Class member desiring to be paid under the terms of the Settlement Agreement shall submit the completed Claim Form to the Settlement Administrator by first class mail, with a postmark that is no later than the 45th day from the date the Class Notice is mailed, or submit it electronically by the same date. This date will be set forth on the Claim Form ("Claims Deadline").

C. After receiving the Claim Form, the Settlement Administrator shall conduct an initial examination to determine the validity of the claims submitted and whether the person who submitted the Claim Form is a Qualifying Class Member. The Settlement Administrator may, if it deems it appropriate or necessary, ask the person submitting the Claim Form to furnish additional information to establish the validity of the claim, or complete or provide any missing information.

D. The Settlement Administrator shall furnish copies of all Claim Forms, and its recommended determination as to the validity of all claims submitted to counsel for Defendant no later than 15 calendar days after the Claims Deadline. Defendant shall have 10 days after receipt of the Claim Forms to verify whether each person is a Qualifying Class Member. If Defendant believes that one or more individuals identified is not, in fact, a Qualifying Class Member, they shall provide the Settlement Administrator and Plaintiff's counsel with the names of those individuals, along with documentation believed to establish that such individuals are

10

not Qualifying Class Members. Within 7 days of that submission, Defendant's counsel and Plaintiff's counsel shall meet and confer regarding the eligibility status of such individuals. If counsel agree that such individuals are not Qualifying Class Members, within 7 days from such determination, the person who submitted the Claim Form shall be sent a notice of rejected claim by the Settlement Administrator. If they are determined to be a Qualifying Class Member, their Claim Forms will be processed. To the extent that counsel are not able to agree on the eligibility status of an individual who has been identified as a potential Qualifying Class Member, counsel may request that the Court promptly resolve the issue as expeditiously and in as informal a manner as is consistent with the due process rights of Settlement Class members. Any member of the Settlement Class who fails to fully complete or return the Claim Form and who does not thereafter respond to or comply with any follow-up requests made by the Settlement Administrator to cure any material deficiencies, shall be barred from receiving any settlement payment pursuant to this Settlement Agreement, but shall still be bound by the releases contained in this Settlement Agreement.

E.    Upon occurrence of the Final Effective Settlement Date, and after all contingencies specified in Paragraph 11 entitled "Settlement Agreement Contingencies" have been satisfied, the Settlement Administrator shall promptly disburse to each member of the Settlement Class, who has not been successfully challenged, the settlement funds to which each such person is entitled, as set forth in Paragraph 5 above. The Settlement Administrator shall send each Qualifying Class Member a check for the amount to which each person is entitled. The check shall be valid for 180 days after its issuance. If any check remains uncashed after 180 days, it shall be voided, and the funds shall be remitted to the State of California.

F.    Within 60 days after the Claims Deadline, the Settlement Administrator shall send to counsel for all Parties the total number of Qualifying Class Members and the dollar amounts payable to each. Thereafter, the Settlement Administrator shall remit to counsel for Defendant any unclaimed funds.

## 14. GENERAL PROVISIONS

A.    It being the mutual intention of all the Parties that the dispute between the Plaintiff and the Settlement Class members on the one hand, and Defendant on the other hand, be finally resolved, each of the Parties agrees to use its best efforts to effectuate the terms and conditions of this Settlement Agreement and to cooperate in good faith to secure Court approval, both preliminary and final, in an expeditious manner. The Parties agree to support the terms of the settlement and will not take any action or make any comment that might undermine the settlement approval process or the settlement.

B.    This Settlement Agreement shall be construed and interpreted under the laws of the State of California and, as applicable, the laws of the United States. It

11

is agreed that each of the Parties has had the benefit of legal counsel of such Party's choosing and that the language of the Settlement Agreement has been reviewed by counsel for all Parties. Accordingly, in the event that any ambiguity appears in any term, condition, or provision of this Settlement Agreement, such ambiguity is to be resolved in favor of carrying out the underlying purpose of the agreement, *i.e.*, to achieve a final settlement of the dispute, rather than on the basis of resolving such ambiguity in favor of or against a Party or Parties claimed to have been responsible for the drafting of the Settlement Agreement or of the portion claimed to be ambiguous.

C.     This Agreement is deemed to be executed and delivered within the County of Los Angeles, State of California, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California or, as to issues of federal law, the laws of the United States. If legal action is necessary to enforce any of its terms and such action may not properly be brought in the Court where the Action is pending, such action shall be brought in a court having appropriate jurisdiction within the County of Los Angeles. Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs in connection with the Action identified in the recitals above and in connection with this Settlement Agreement.

D.     The Parties agree, covenant, and represent that this Settlement Agreement is and shall be construed to constitute a compromise of, and full accord and satisfaction of, doubtful and disputed claims. The Parties further agree, covenant, and represent that this Settlement Agreement shall not be treated as an admission of liability by Defendant at any time.

E.     The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Settlement Agreement, and that this Settlement Agreement has been executed with the consent and advice of counsel.

F.     This Settlement Agreement comprises the entire agreement of the Parties, and supersedes any documents previously exchanged between the Parties. There is no other agreement, written, oral, express, or implied, between the Parties with respect to the subject matter hereof, except this Settlement Agreement. The Parties acknowledge that no representations, statements or promises made by the other Parties, or by their respective agents or attorneys, have been relied upon in entering into this Settlement Agreement. The Parties explicitly recognize California Civil Code Section 1625 and California Code of Civil Procedure Section 1856(a) and their applicability to this Settlement Agreement.

G.     This Settlement Agreement may be modified or amended only if such modification or amendment is agreed to in writing and signed by a duly authorized representative of each Party hereto.

12

LA2097157.1
212795-10005

H.      This Settlement Agreement shall be binding upon and shall inure to the benefit of the respective heirs, assigns, executors, administrators, successors, subsidiaries, divisions, and affiliated corporations and partnerships, past and present, and trustees, directors, officers, shareholders, partners, attorneys, producers, investors, joint venturers, principals, agents, and employees, past and present, of Defendant, Plaintiff, and members of the Settlement Class.

I.      The Court shall retain jurisdiction under California Code of Civil Procedure 664.6 to enforce the terms of this settlement.

## 15. EXECUTION

This Settlement Agreement may be executed in counterparts, it being agreed that, when submitted to the Court, signature pages containing the signatures of the Plaintiff, Plaintiff's counsel, Defendant's authorized representative, and Defendant's counsel shall be attached. It is agreed that electronic printouts, photocopies, or facsimile copies of the Settlement Agreement signatures may be used with the same force and effect as the originals or duplicates thereof.

This Agreement is entered into as of the date set forth above.

Jeffry Winters

Base Productions, Inc.

By: _____

Its: _____

APPROVED AS TO FORM BY:

Date:  12/22/10

Robert Hennig
Attorney for Plaintiff Jeffry Winters
and the Settlement Class

Date: _____

Michael Mallow
Attorney for Defendant
Base Productions, Inc.

13

LA2097157.1
212795-10005

H.    This Settlement Agreement shall be binding upon and shall inure to the benefit of the respective heirs, assigns, executors, administrators, successors, subsidiaries, divisions, and affiliated corporations and partnerships, past and present, and trustees, directors, officers, shareholders, partners, attorneys, producers, investors, joint venturers, principals, agents, and employees, past and present, of Defendant, Plaintiff, and members of the Settlement Class.

I.    The Court shall retain jurisdiction under California Code of Civil Procedure 664.6 to enforce the terms of this settlement.

## 15. EXECUTION

This Settlement Agreement may be executed in counterparts, it being agreed that, when submitted to the Court, signature pages containing the signatures of the Plaintiff, Plaintiff's counsel, Defendant's authorized representative, and Defendant's counsel shall be attached.  It is agreed that electronic printouts, photocopies, or facsimile copies of the Settlement Agreement signatures may be used with the same force and effect as the originals or duplicates thereof.

This Agreement is entered into as of the date set forth above.

_____
Jeffry Winters

Base Productions, Inc.

By: _____

Its: _____

**APPROVED AS TO FORM BY:**

Date: _____

_____
Robert Hennig
Attorney for Plaintiff Jeffry Winters
and the Settlement Class

Date: _____

_____
Michael Mallow
Attorney for Defendant
Base Productions, Inc.

13

LA2097157.1
212795-10005

H.     This Settlement Agreement shall be binding upon and shall inure to the benefit of the respective heirs, assigns, executors, administrators, successors, subsidiaries, divisions, and affiliated corporations and partnerships, past and present, and trustees, directors, officers, shareholders, partners, attorneys, producers, investors, joint venturers, principals, agents, and employees, past and present, of Defendant, Plaintiff, and members of the Settlement Class.

I.     The Court shall retain jurisdiction under California Code of Civil Procedure 664.6 to enforce the terms of this settlement.

## 15. EXECUTION

This Settlement Agreement may be executed in counterparts, it being agreed that, when submitted to the Court, signature pages containing the signatures of the Plaintiff, Plaintiff's counsel, Defendant's authorized representative, and Defendant's counsel shall be attached. It is agreed that electronic printouts, photocopies, or facsimile copies of the Settlement Agreement signatures may be used with the same force and effect as the originals or duplicates thereof.

This Agreement is entered into as of the date set forth above.


_____
Jeffry Winters


Base Productions, Inc.

By: _____

Its: _____


APPROVED AS TO FORM BY:


Date: _____        _____
                                     Robert Hennig
                                     Attorney for Plaintiff Jeffry Winters
                                     and the Settlement Class


Date:   12-22-10                     _____
                                     Michael Mallow
                                     Catherine Brito
                                     Attorney for Defendant
                                     Base Productions, Inc.


13

## ATTACHMENT A
## LIST OF POSITIONS INCLUDED IN THE CLASS

| Job Category |
| --- |
| 1st Assistant Camera |
| 2nd Assistant Camera |
| 2nd Assistant Director |
| 2nd Phantom DIT |
| A2 Back up |
| After Affects |
| Animator |
| Art Dept |
| Art Wrap |
| Assistant Editor |
| Associate Producer |
| B Camera |
| Best Boy |
| Board Operator |
| Boom Operator |
| BTS Camera |
| Camera Operator |
| Carpenter |
| Coordinator |
| Costumer |
| Crane Operator |
| Editor |
| Electricians |
| Electricians/Grip |
| Field Production Assistants |
| Foreperson |
| Graphics Artists |
| Grip |
| Grip/lights |
| Jib Assistant |
| Jib Operator |
| Labor (stage) |
| Labor/Swing Person |
| Lipstick Cam Op |
| Logger |

14

| |
|---|
| On Set Logger |
| Online Editor |
| P2 Logger |
| Production Assistant |
| Production Coordinator |
| Post Production Assistant |
| Prerig Labor/Grip |
| Production Supplies |
| Prop Master |
| Property Handler |
| Researcher |
| Set Decorator |
| Set Dresser |
| Set Lighting |
| Set Prep |
| SLT |
| Sound/Boom Op |
| Strike crew |
| Tape Librarian |
| Transcriber |
| Wardrobe Assistant |
| Wardrobe |
| Wrap Crew |

15

LA2097157.1
212795-10005

# ATTACHMENT B
# PAYMENT MATRIX

## I.    SETTLEMENT SUB-CLASSES

Defendant denies any and all liability to Plaintiff and to the Settlement Class for any and
all claims asserted or that might have been asserted in these proceedings.

However, for the purposes of allocating and distributing payments from the Settlement
Fund to Qualifying Class Members, members of the Settlement Class shall be divided
into three Settlement Sub-classes. The Settlement Sub-classes shall be comprised of
various job categories (identified in Attachment A hereto). For the purposes of
settlement only, the job categories in Attachment A shall be divided and grouped among
the three Settlement Sub-classes based on the Parties' mutual understanding of the
likelihood that Plaintiff will prevail as to each job category (again, recognizing that
Defendant does not admit that Plaintiff or members of the Settlement Class have any
meritorious claims). Specifically, each job category will be placed in the three
Settlement Sub-classes based on the likelihood that it is comprised of non-exempt
employees, rather than exempt employees or independent contractors. The Parties'
mutual understanding, for the purposes of settlement, as to Plaintiffs' chance of success
with respect to each job category is based on well-established state and federal standards
for identifying independent contractors and employees exempt from the overtime wage
requirements.

The three Settlement Sub-classes shall be as follows:

Settlement Sub-class One. [Includes all settled positions that constitute "keys,"
"seconds" and highly specialized positions that are likely to be found independent
contractors or exempt employees. These positions are presumed to spend the majority of
their time engaged in administration, management or the creative process, or to perform
specialized functions under little or no supervision often with their own tools and
equipment.]

Class One Positions include: $1^{st}$ Assistant Camera; $2^{nd}$ Assistant Director; After Effects;
Associate Producer; B Camera Operator; Best Boy; BTS Camera; Camera Operator;
Costumer; Crane Operator; Editor; Electrician; Foreperson; Jib Operator; Lipstick
Camera Operator; Online Editor; Prop Master and Wardrobe.

Settlement Sub-class Two. [Includes all settled positions that include specialized
"assistants" or those positions that involve some amount of time engaged in
administration, management or the creative process, but may or may not constitute the
majority of their time. This Settlement Sub-Class includes job categories that are less
likely to be found independent contractors or exempt employees than the job categories
included in Settlement Sub-Class One, but more likely to be found independent
contractors or exempt employees than those included in Settlement Sub-Class Three.]

16

LA2097157.1
212795-10005

Class Two Positions include: $2^{nd}$ Phantom DIT; $2^{nd}$ Assistant Camera; Art Department; Assistant Editor; Board Operator; Boom Operator; Electric/Grip; Graphic Artist; Grip; Grip/Lights; Jib Assistant; Production Coordinator; Set Lighting; Sound/Boom Operator; Transcriber.

<u>Settlement Sub-class Three</u>. [Includes all settled positions that are not specialized, do not work independently and are not believed to involve meaningful administration, management or the creative process. These job positions are less likely to be found to be independent contractors or exempt employees than those included in Settlement Sub-Classes One and Two.]

Class Three Positions include: A2 Back Up; Art Wrap; Carpenter; Labor; Logger; On Set Logger; P2 Logger; Production Assistant; Production Supplies; Property Handler; Researcher; Set Decorator; Set Dresser; Set Prep; SLT; Strike Crew; Swing; Tape Librarian; Wardrobe Assistant; and Wrap Crew.

II.     METHOD FOR ALLOCATING PAYMENTS TO CLASS MEMBERS IN
        EACH SETTLEMENT SUB-CLASS

Each Settlement Sub-class will be assigned a specific Daily Settlement Rate. Each Settlement Sub-class member will receive their corresponding Daily Settlement Rate for each day he or she worked during the class period.

Daily Settlement Rates will be calculated by determining the likely amount of money to paid to putative class members after deducting court-approved attorneys' fees and costs, Plaintiff's enhancement and settlement administration costs.

Daily Settlement Rates will be calculated by first determining the likely amount of money to be paid to each Settlement Sub-class (the Weighted Wages). <u>For the purpose of this settlement only</u>, the Parties agree that the chances of each Settlement Sub-class prevailing are as follows:
Settlement Sub-Class One: 15%
Settlement Sub-Class Two: 40%
Settlement Sub-Class Three: 60%.

The total potential overtime payable to the members of each Settlement Sub-class will be calculated. The Weighted Wages for each Settlement Sub-Class will be determined by applying the above-noted chances for success to the total potential overtime payable to each Settlement Sub-class. For example, if total potential claims for the three Settlement Sub-classes were $500,000, $250,000 and $150,000, respectively, and the chance of success was 20%, 50% and 70% respectively, the Weighted Wages for the Settlement Sub-classes would be $100,000, $125,000 and $105,000, respectively.

The available Distribution Pool will then be calculated by deducting from the Settlement Fund all court-approved attorneys fees and costs, Plaintiff's enhancement payment and settlement administration costs.

17

LA2097157.1
212795-10005

The formula for determining the available Distribution Pool is as follows: Distribution pool = $350,000 Settlement Fund - $122,500 (or other court-approved Attorney Fees) - Attorney Costs - $15,000 (Plaintiff Incentive) - Settlement Administrator Fees.

The Distribution Pool will then be apportioned among the three Settlement Sub-Classes based on their Weighted Wages. An Apportionment Ratio for each Settlement Sub-Class will be calculated based on their respective portions of the total Weighted Wages. For example, if the Weighted Wages for the Settlement Sub-classes were $100,000, $125,000 and $105,000, respectively, the total Weighted Wages would be $330,000. Thus, the Apportionment Ratio for the Settlement Sub-classes would be 30%, 38% and 32% respectively. The three Settlement Sub-Classes would therefore receive 30%, 38% and 32%, respectively, of the available Distribution Pool (their Apportioned Amounts).

In order to determine the Daily Settlement Rate for each Settlement Sub-Class, the estimated number of days worked by each of the members in each Settlement Sub-class will be added for a total number of days worked in each Settlement Sub-Class.

The Apportioned Amount for each Settlement Sub-class will then be divided by the total number of days worked in that Settlement Sub-Class to calculate the Daily Settlement Rate for each Settlement Sub-class.

Each Settlement Sub-class member will receive their corresponding Daily Settlement Rate for each day he or she worked during the class period.

18

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                                                 )          ss
COUNTY OF LOS ANGELES   )

     I am over the age of 18 and not a party to the within action.  My business address is 1875 Century Park East, Suite 1770, Los Angeles, California 90067.

     On **August 15, 2011**, I served the foregoing document(s) described as **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AWARD OF REASONABLE ATTYS FEES AND COSTS** true copies thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Michael Mallow<br>Loeb & Loeb LLP<br>10100 Santa Monica Blvd.<br>Suite 2200<br>Los Angeles, CA 90067 | Counsel for Defendant<br>Base Productions Inc. |
| | |

**X**   BY MAIL
     I placed said envelope, postage prepaid, in a United States Mail Receptacle.

____   (By facsimile) In addition to regular mail, I sent this document via facsimile, number(s) as listed on the attached mailing list.

____   BY PERSONAL SERVICE:

____ (By Overnight Mail) I arranged for such envelope to be delivered to the following address by overnight mail.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed on **August 15, 2011** at Los Angeles, California.

                                            _____

                                          ESTHER KIM