ROB HENNIG (STATE BAR NO. 174646)
rob@employmentattorneyla.com
DAT TOMMY PHAN (STATE BAR NO. 316813)
dat@employmentattorneyla.com
HENNIG RUIZ & SINGH, P.C.
3600 Wilshire Blvd., Suite 1908
Los Angeles, CA 90010
Telephone: (213) 310-8301
Fax: (213) 310-8302

Attorneys for Proposed Intervenor
PARVIN GHASSEMIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public,<br>　　　　　Plaintiffs,<br><br>　　　　　*v.*<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,<br>Defendants. | CASE NO.: 2:16-cv-08979-AB-AGR<br>Assigned to Hon. Andre Birotte Jr.<br>*Related Case No.:2:20-cv-02401-AB-AGR*<br><br>**COMPLAINT IN INTERVENTION.** |

HENNIG
RUIZ,
SINGH

## INTRODUCTION

Intervenor Parvin Ghassemian ("Intervenor" or "Ghassemian") files this Complaint in Intervention contemporaneous with her *Ex Parte* Motion to Intervene for the express purpose of protecting her interest, given that Plaintiffs Sevag Chalian ("Plaintiff" or "Chalian") and related plaintiffs Sigfredo Cabrera ("Cabrera"), Enko Telahun ("Telahun"), and Christine McNeely ("McNeely") (collectively, "Plaintiffs"), working jointly with Defendants CVS Pharmacy, Inc. and CVS Rx Services, Inc. (collectively, "Defendants" or "CVS"), have failed to do so. Specifically, the parties have failed to provide the entirety of Ghassemian's Objections to the proposed class action settlement to the Court, which included two supporting evidentiary declarations.

## STATEMENT OF RELEVANT FACTS

1.      Ghassemian is the Plaintiff in the matter of *Parvin Ghassemian v. CVS Pharmacy et al.*, Case No. 30-2019-01088926-CU-OE-CJC, which was filed in Orange County Superior Court on or about August 8, 2019.

2.      Ghassemian alleges a number of claims against Defendants for discrimination, retaliation, failure to engage in a timely good-faith interactive process, among other causes of action under Fair Employment and Housing Act (hereinafter "FEHA"), and retaliation in violation of Cal. Lab. Code §§ 1102.5 and 98.6. Ghassemian further alleges that Defendants violated numerous wage and hour laws under the California Labor Code, including by: (1) failing to provide meal periods and rest breaks (Cal. Lab. Code §§ 226.7 and 512); (2) failing to pay a minimum wage and overtime (Cal. Lab. Code §§ 510 and 1194); (3) failing to provide accurate itemized wage statements (Cal. Lab. Code § 226(a); and (4) failing to pay waiting time penalties (Cal. Lab. Code §§ 2698, *et seq.*).

3.      Ghassemian retained the law firm of Hennig Ruiz & Singh, p.c., which is currently located at 3600 Wilshire Blvd., Suite 1908, Los Angeles, California,

90010, to represent her in the action.

4. On or about October 5, 2020, Ghassemian received a "Notice of Class Action Settlement and Release of Claims" in the mail. Ghassemian learned that there were two pending class actions in the United States District Court for the Central District of California: *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al*, Case No. 2:16-cv-08979 (C.D. Cal.) and *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al.*, Case No. 2:20-cv-02401 (C.D. Cal.). After reviewing the notice, Ghassemian learned that she part of the putative class and that as a part of the proposed class action settlement, she was expected to receive approximately $894.64 based on 219.00 weeks worked for CVS during the class period, less applicable withholdings.

5. On or about November 6, 2020, Ghassemian's submitted Objections to Simpluris, Inc. ("Simpluris"), the claims administrator for the action, with two supporting evidentiary declarations from herself and her counsel Rob Hennig, Esq., detailing why she believed that the proposed class action settlement was vastly inadequate and unfair to her and all other silent class members. True and correct copies of Ghassemian's Objections to the Proposed Class Action Settlement, Declaration of Parvin Ghassemian in Support Thereof, and Declaration of Rob Hennig in Support Thereof, are attached hereto and incorporated herein as **Exhibits A, B, and C**, respectively.

6. Over the Thanksgiving weekend, Ghassemian learned that counsel for Defendants had filed a declaration to the Court that buried Ghassemian Objections to the proposed class action settlement as the final exhibit in the Declaration of Christiana L. Signs (ECF No. 203-1, Ex. 6). However, Ghassemian's own declaration and that of her counsel, Mr. Hennig, were inexplicably excluded from the documents filed with and provided to the Court in advance of the hearing on approval of class action settlement scheduled for December 4, 2020 at 10:00 a.m.

7. On November 30, 2020, Mary Butler, the Case Manager for Simpluris,

3

submitted a supplemental declaration that similarly failed to include either of Ghassemian's two supporting declarations to the Court.

8. Later that day, Ghassemian gave *ex parte* notice to counsel for Plaintiffs and Defendants of her intention to intervene. Counsel for Plaintiffs and CVS both stated they would oppose Ghassemian's *ex parte* motion.

## **INTERVENOR AND HER INTEREST IN THE LITIGATION**

9. Ghassemian seeks to intervene because it is apparent that her interest is not being protected in this case by any of the current parties. The proposed class action settlement specifically seeks to settle out Ghassemian's wage and hour claims under the California Labor Code for meal and rest break violations; minimum wage and overtime violations; inaccurate itemized wage statements, and waiting time penalties.

10. Intervenor may, with leave of Court, intervene as of right or, alternatively, permissively in this matter pursuant to Fed R. Civ. Proc. 24(a) & (b)

11. Intervenor Ghassemian has a right to intervene in this action because she has a "significant protectable" interest in this litigation to ensure that she receives fair value for releasing her wage and hour claims under the California Labor Code, and is able to present her Objections to the Court as to the perceived unfairness and inadequacy of the proposed class actions settlement. Ghassemian conservatively estimates that based on her regular rate of pay of $73.02, her economic damages from wage and hour violations while employed with Defendants were about $133,573.47. That amount Ghassemian purports to receive from the class settlement, $894.64, represents a mere 0.67 percent of the total estimated value of her claims.

12. Instead, Ghassemian's Objections was buried as the last exhibit in Defendants' declaration in support of Defendants' response to the Rule 23 Class and PAGA Settlement Objections. To Ghassemian's knowledge, Plaintiffs' have

not provided the Court with Ghassemian's two supporting declarations, her own and that of her counsel, in advance of the final approval hearing, which as a practical matter impairs and impedes the Ghassemian's ability to protect her interest. Plaintiffs' counsel has not only failed to adequately represent Ghassemian's interest, but has actively thwarted Ghassemian's efforts to represent her own interest.

13.    Ghassemian also has a cognizable interest in ensuring that the final class action settlement is fair and adequate. Ghassemian believes that the posture re consolidation of the complaints for *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:16-cv-08979 (C.D. Cal.) and *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al.*, Case No. 2:20-cv-02401 (C.D. Cal.) and expansion of the claims in this litigation *after* settlement suggests collusion. Ghassemian believes that the settlement was not fair or adequate to what has been identified as Class A (hourly, non-exempt CVS pharmacists located in Region 65 or 72), and Class B (hourly, non-exempt CVS employees). She further believes that the amount allocated to Class A and B is arbitrary and inadequate, and that the proposed attorneys' fee award is an unearned windfall.

14.    In seeking to protect these interests, as part of her *ex parte* application, Ghassemian specifically requested a 45-day continuance of the December 4, 2020 hearing on final approval of class action settlement to allow time to conduct specific discovery as to Plaintiff's counsel's due diligence in prosecuting this action. Specifically, Ghassemian seeks a person most qualified ("PMQ") deposition on the due diligence done by Plaintiffs' prior to settlement being signed, including any due diligence during the negotiations with CVS. Ghassemian further seeks a sur-reply to Plaintiffs' response to the Ghassemian's objections to the proposed class actions settlement, which raises new arguments. (ECF No. 204).

///

///

**INTERVENORS CLAIMS**

15.     Intervenor Ghassemian has an important stake in the underlying action. Ghassemian became a class member only after Plaintiffs filed a consolidated second amended complaint on July 3, 2020, which included underlying violations of California Labor Code Sections 850-852. (ECF No. 104).

16.     Ghassemian also has claims for: (a) failure to provide rest and meal breaks in violation of Cal. Lab. Code §§ 226.7 and 512, (b) failure to pay minimum wage and overtime in violation of Cal. Lab. Code §§ 510 and 1194, (c) failure to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226(a), and (d) waiting time penalties pursuant to Cal. Lab. Code §§ 2698, *et seq*.

WHEREFORE, Ghassemian requests relief as hereafter provided.

1.     For an Order granting Ghassemian's *ex parte* application to intervene in this case,

2.     For an Order granting a continuance of the hearing on final approval of class action settlement by at least 45 days.

3.     For an Order granting Ghassemian specific discovery, a PMQ deposition of Plaintiff's counsel as to their due diligence in prosecuting the action.

4.     For a Sur-Reply to Plaintiffs' response to the Ghassemian's Objections to the proposed class actions settlement

5.     Such other and further relief that the court deems just and proper.

Dated: December 2, 2020          HENNIG RUIZ & SINGH, P.C.

                                         /s/ Rob Hennig
                                         Rob Hennig
                                         Dat Tommy Phan
                                         Attorneys for Proposed Intervenor
                                         PARVIN GHASSEMIAN

# Exhibit A

ROB HENNIG (STATE BAR NO. 174646)
rob@employmentattorneyla.com
DAT TOMMY PHAN (STATE BAR NO. 316813)
dat@employmentattorneyla.com
HENNIG RUIZ & SINGH, P.C.
3600 Wilshire Blvd., Suite 1908
Los Angeles, CA 90010
Telephone: (213) 310-8301
Fax: (213) 310-8302

Attorneys for Class Member and Objector
PARVIN GHASSEMIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAG CHALIAN, an Individual, Individually and on behalf of all others similarly situated and the general public,<br><br>                    Plaintiffs,<br><br>         v.<br><br>CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,<br>Defendants. | CASE NO.: 2:16-cv-08979-AB-AGR<br>Assigned to Hon. Andre Birotte Jr.<br>*Related Case No.:2:20-cv-02401-AB-AGR*<br><br>**OBJECTIONS OF PARVIN GHASSEMIAN TO PROPOSED CLASS ACTION SETTLEMENT; DECLARATION OF ROB HENNIG IN SUPPORT THEREOF DECLARATION OF PARVIN GHASSEMIAN IN SUPPORT THEREOF.**<br><br>DATE:     December 4, 2020<br>TIME:     10:00 a.m.<br>PLACE:   Courtroom 7B<br>              350 West First Street,<br>              Los Angeles, California |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that absent Class Members and Objector

PARVIN GHASSEMIAN submits this Objection to the Proposed Class Settlement

in the above captioned matter.


Dated: November 6, 2020   HENNIG RUIZ & SINGH, P.C.

                 _/s/ Rob Hennig_____
                Rob Hennig
                Dat Tommy Phan
                Attorneys for Class Member and Objector
                PARVIN GHASSEMIAN

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................1

   A. Procedural History .....................................................................................1

   B. Relevant Background Information. .............................................................2

   C. Settlement Terms ........................................................................................3

II.  ARGUMENT .....................................................................................................5

   A. This Settlement Merits High Scrutiny ........................................................5

   B. The Procedural Posture re Consolidation of the Chalian and Cabrera
   Complaints Suggests Collusion....................................................................7

      1. Brief History re *Chalian* Case.............................................................7

      2. Brief History re *Cabrera* Case. ...........................................................9

      3. Joint Prosecution of the Cases Given the Extreme Breadth of the
      *Cabrera* Case Suggests Collusion. ....................................................11

   C. The Proposed Settlement is not Fair or Adequate as to Either Non-Exempt,
   Hourly Pharmacists in Regions 65 and 72, or to All Non-Exempt, Hourly
   Employees of CVS in California....................................................................15

   D.  The Amount Allocated to Class Members Is Inadequate. ........................17

   E. The Proposed Attorneys Fee Award is Windfall.........................................19

III.  CONCLUSION ...............................................................................................20

HENNIG
RUIZ,
SINGH

2    **CASES**

3    *7-Eleven Owners for Fair Franchising v. The Southland Corp. (Watson)* (2000) 85

4        Cal.App.4th 1135 ........................................................................................... 5

5    *Bingham v. Obledo* (1983) 147 Cal.App.3d 401 ................................................. 5

6    *Deposit Guaranty National Bank of Jackson, Mississippi v. Roper*, 445 U.S. 326,

7        (1980) ........................................................................................................... 5

8    *Green v. Obledo* (1981) 29 Cal.3d 126 .............................................................. 6

9    *In re Bluetooth Headset Products Liab. Litig.* (9th Cir. 2011) 654 F.3d 935 .......... 6, 7

10   *In re Microsoft I-V Cases* (2006) 135 Cal.App.4th 706 ..................................... 5

11   *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116 ........................ 5

12   *Parvin Ghassemian v. CVS Pharmacy et al.*, Case No. 30-2019-01088926-CU-

13       OE-CJC .......................................................................................................... 1

14   *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al*, Case No. 2:16-cv-08979 (C.D.

15       Cal.) ......................................................................................................... 1, 4, 7

16   *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al.*, Case No. 2:20-cv-02401

17       (C.D. Cal.) ................................................................................................ 1, 4, 7

18   *Wallace v. GEICO Gen. Ins. Co.* (2010) 183 Cal.App.4th 1390 ...................... 6

19   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................... 15

20   *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 ......................... 5

21

22   **STATUTES**

23   Cal. Lab. Code § 1174 ................................................................................. 9, 13

24   Cal. Lab. Code § 1194 ......................................................................... 1, 8, 9, 12

25   Cal. Lab. Code § 1197 ................................................................................. 9, 12

26   Cal. Lab. Code § 1197.1 .............................................................................. 9, 12

27   Cal. Lab. Code § 1198 ................................................................................. 9, 12

28   Cal. Lab. Code § 201 .................................................................................. 8, 13

HENNIG
RUIZ,
SINGH

Cal. Lab. Code § 203...................................................................................................8, 13

Cal. Lab. Code § 204...................................................................................................9, 12

Cal. Lab. Code § 226...........................................................................................1, 8, 9, 13

Cal. Lab. Code § 226.3......................................................................................................9

Cal. Lab. Code § 226.7...............................................................................................1, 9, 13

Cal. Lab. Code § 2698....................................................................................................1, 9

Cal. Lab. Code § 2800..................................................................................................9, 13

Cal. Lab. Code § 2802..................................................................................................9, 13

Cal. Lab. Code § 510......................................................................................................1, 9

Cal. Lab. Code § 512................................................................................................1, 9, 13

Cal. Lab. Code § 558..................................................................................................9, 12

Cal. Lab. Code § 98.6.........................................................................................................1

Cal. Lab. Code §1102.5......................................................................................................1

Cal. Labor Code § 202..................................................................................................8, 13

Cal. Rules of Court, Rule 3.769.........................................................................................5

HENNIG
RUIZ,
SINGH

GHASSEMIAN'S OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

### A. Procedural History.

Class member and Objector Parvin Ghassemian ("hereinafter "Objector" or "Ghassemian") is currently pursuing an action against Defendants CVS Pharmacy, Inc. and CVS Rx Services, Inc., in Orange County Superior Court. The matter is titled *Parvin Ghassemian v. CVS Pharmacy et al.*, Case No. 30-2019-01088926-CU-OE-CJC, which was filed on August 8, 2019. *See* Declaration of Parvin Ghassemian ("Ghassemian Decl."), ¶ 1, Ex. A (State Complaint). In her action, Ghassemian alleges a number of claims against Defendants for discrimination, retaliation, failure to engage in a timely good-faith interactive process, among other causes of action under Fair Employment and Housing Act (hereinafter "FEHA"), and retaliation in violation of Cal. Lab. Code §§ 1102.5 and 98.6. *See* State Complaint at ¶ 2.

Ghassemian further alleges that Defendants violated numerous wage and hour laws under the California Labor Code, including by: (1) failing to provide meal periods and rest breaks (Cal. Lab. Code §§ 226.7 and 512); (2) failing to pay a minimum wage and overtime (Cal. Lab. Code §§ 510 and 1194); (3) failing to provide accurate itemized wage statements (Cal. Lab. Code § 226(a); and (4) failing to pay waiting time penalties (Cal. Lab. Code §§ 2698, *et seq*.). *See* State Complaint at ¶ 2. Jury trial in the matter is currently scheduled for January 29, 2021 at 9:00 a.m. in Department C-19, the Hon. Walter P Schwarm presiding.

On or about October 5, 2020, Ghassemian received a "Notice of Class Action Settlement and Release of Claims" in the mail. *See* Ghassemian Decl., ¶ 3, Ex. B. Ghassemian learned that there were two pending class actions in the U.S. District Court for the Central District of California: *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al*, Case No. 2:16-cv-08979 (C.D. Cal.) and *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al*., Case No. 2:20-cv-02401 (C.D. Cal.).

After reviewing the notice, Ghassemian learned that she part of the putative class and that as a part of the proposed class action settlement, she was expected to receive approximately $894.64 based on 219.00 weeks worked for CVS during the class period, less applicable withholdings. *See Id*. Given Ghassemian's belief that the proposed settlement is vastly inadequate and unfair to her and all other silent class members, she hereby submits her objections to the class actions settlement.

## B. Relevant Background Information.

Parvin Ghassemian worked as a Pharmacist-in-Charge ("PIC") in Orange County, California, primarily out of the CVS store located at 28221 Crown Valley Pkwy, Laguna Niguel, CA 92677. Ghassemian worked for Defendants CVS for approximately twelve years, from December of 2006 until on or about October 12, 2018. At the time of Ghassemian's termination, she had reached the pay cap for her classification and store volume. *See* Ghassemian Decl., ¶ 4.

Up until her termination in October 2018, Ghassemian's regular work schedule called for four 8-hour days, amounting to 32 regular hours per week. However, due to CVS's requirement for mandatory trainings, CVS's staffing policies, and the busy nature of the pharmacy, Ghassemian regularly worked approximately 2 overtime hours per week, and between 1-5 additional hours per week off the clock. *See* Ghassemian Decl., ¶ 5.

In 2018, Ghassemian earned approximately $114,095 with a regular rate of pay of $73.02 per hour. In 2017, Ghassemian earned approximately $128,267 with a regular rate of pay of $73.02 per hour. In 2016, Ghassemian earned approximately $132,171 with a regular rate of pay of $72.80 per hour. In 2015, Ghassemian earned approximately $1432,322 with a regular rate of pay of $70.48 per hour. *See* Ghassemian Decl., ¶ 6.

Ghassemian understood that as a policy and practice, CVS set the available work hours, including overtime hours, for each CVS location based on past prescription volume. Ghassemian also understood that as a policy and practice, she

2

HENNIG RUIZ, SINGH

was instructed not to over the set amount of available work hours for her CVS location. Ghassemian understood that CVS had a policy and practice of only staffing one pharmacist per shift, meaning legally compliant meal and rest breaks cannot be taken during store hours because there is no one to relieve the pharmacist from all work. *See* Ghassemian Decl., ¶ 7.

At Ghassemian's CVS store, the regular pharmacy hours were approximately 8:00 a.m. to 9:00 p.m., and later 9:00 a.m. to 9:00 p.m. Ghassemian was regularly staffed as the only pharmacist during her 8-hour shifts. For example, if she was staffed for 8:00 a.m. to 5:00 p.m., another pharmacist would usually not start until at or near the end of her shift. As the only pharmacist on staff, and unable to close the pharmacy except under limited circumstances, Ghassemian was regularly unable to take her uninterrupted meal and rest periods during her shifts because there was no one to relieve her from all work. Even during her breaks, she remained on call and/or was unable to leave the premises. *See* Ghassemian Decl., ¶ 8.

During the relevant class period identified in the settlement notice, Ghassemian estimates that she was compensated for about 2 hours of overtime a week, but worked an additional 1-5 hours off per week off the clock, for which she was not paid a minimum or overtime. *See* Ghassemian Decl., ¶ 9. She believes that her wage statements were inaccurate because she was not compensated for all overtime and wage earned, and meal and rest breaks that were missed. *See* Ghassemian Decl., ¶ 10. After she was terminated, CVS did not promptly pay all compensate and wages owed to her, making CVS liable for waiting time penalties. *See* Ghassemian Decl., ¶ 11.

### C.    Settlement Terms

Class Member and Objector, Parvin Ghassemian, submits this objection the proposed class settlement in the above-captioned matter. Objector Ghassemian worked primarily out of the CVS store located at 28221 Crown Valley Pkwy, Laguna Niguel, CA 92677 during the Class Period. *See* Ghassemian Decl., ¶ 4.

3

HENNIG
RUIZ,
SINGH

This objection addresses four primary aspects of the proposed settlement:

(a)     the procedural posture re consolidation of the complaints for *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al*, Case No. 2:16-cv-08979 (C.D. Cal.) and *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al.*, Case No. 2:20-cv-02401 (C.D. Cal.) suggest collusion;

(b)     the settlement was not fair or adequate to Class A (hourly, non-exempt CVS pharmacists located in Region 65 or 72), and Class B (hourly, non-exempt CVS employees);

(c)     the amount allocated to Class A and B is arbitrary and inadequate; and

(d)     the proposed attorneys' fee award is a windfall.

First and foremost, however, Objector Ghassemian is a member of the putative class. The Notice of Class Action Settlement (hereinafter "Settlement Notice") defines the Classes as follows:

> (a) as an hourly, non-exempt Pharmacist in a CVS retail pharmacy located in Region 65 or 72 in the State of California between July 20, 2012 and the present and you did not sign an arbitration agreement or previously release and/or adjudicate certain wage and hour claims; or (b) as an hourly, non-exempt employee in a CVS retail pharmacy in the State of California between August 3, 2014 and the present, who has not previously released and/or already adjudicated certain wage and hour claims.

*See* Ghassemian Decl., ¶ 3, Ex. B.

First, the Class definitions themselves appear to have potential overlap and be in conflict, as there is no definition as to the geographical boundaries of Region 65 or 72 in the State of California. Relatedly, there is also no explanation as to whether Regions 65 and 72 themselves, and the CVS stores located therein, have remained consistent between 2012 and the present, suggesting that the definition may be both overinclusive and underinclusive.

Second, Class B, which convers hourly, non-exempt employee in a CVS retail pharmacy in the State of California between August 3, 2014 and the present, is an excessively overbroad class definition that is not tailored to actual questions of law and fact common to the class.

HENNIG
RUIZ,
SINGH

These fundamental laws in the class definitions in the proposed settlement themselves are sufficient for Final Approval to be denied.

## II.    ARGUMENT

### A.    This Settlement Merits High Scrutiny

As this Court is aware, the Court has an affirmative duty to protect the Class, including any faction of putative class members who are similarly situated, during all proceedings. *See generally, Deposit Guaranty National Bank of Jackson, Mississippi v. Roper*, 445 U.S. 326, 331 (1980); *7-Eleven Owners for Fair Franchising v. The Southland Corp. (Watson)* (2000) 85 Cal.App.4th 1135, 1151; *Bingham v. Obledo* (1983) 147 Cal.App.3d 401, 406.    In fact, the trial court is considered "the guardian" of the class. *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129.

The settlement of a class action requires the approval of the court after hearing. (Cal. Rules of Court, rule 3.769(a)).    A court may approve a class action settlement only after determining that the settlement is fair, adequate and reasonable. *In re Microsoft I-V Cases* (2006) 135 Cal.App.4th 706, 723.    The court "has a fiduciary responsibility as guardian of the rights of the absentee class members when deciding whether to approve a settlement agreement." (*Kullar v. Foot Locker Retail, Inc., supra,* 168 Cal.App.4th at 129.)    In order to fulfill this duty, the court is required to conduct "an independent assessment of the adequacy of the settlement terms." *Id*. at 132; *see also*, *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245 ["The court must therefore scrutinize the proposed settlement agreement to the extent necessary to 'reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'"]. The terms of the proposed settlement presently before the Court mandate that the Court execute its duties with particular and heightened

vigilance.

The Ninth Circuit in *In re Bluetooth Headset Products Liab. Litig.* (*In re Bluetooth*) (9th Cir. 2011) 654 F.3d 935, 947, delineated three "warning signs" that may suggest "that class counsel has allowed pursuit of their own self-interests and that of certain class members to infect the negotiations," such that a heightened reviewed of a proposed settlement is warranted[1]:

"(1) 'when counsel receives a disproportionate distribution of the settlement, <u>or when the class receives no monetary distribution</u> but class counsel are amply rewarded,' [Citations]….'
(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class," [Citations]; and
(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."

(Citations omitted.)[2]

The settlement agreement presently before the Court clearly includes the first and second of these warning signs.

First, out of the originally proposed $9,750,000 proposed class action settlement, the attorneys for the plaintiffs' request fees in the amount of $2,925,000, and after subtracting out other expected cost, leaves $6,600,750 to be allocated amongst the class. (ECF No. 89, 13:24-14:13). Based on Defendant's estimates of 20,900 employees, each employee would receive approximately $315.83 for a release of all of his or her claims against CVS. Thus, the average employee was expected to receive a mere 0.0108 ($315.83/$2,925,000) percent of the expected attorneys' fees going to class counsel. Class counsel is amply rewarded, while class members receive virtually nothing after accounting for taxes and payroll

---

[1] This Court should be "even more scrupulous than usual in approving settlements where no class has yet been formally certified." *In re. General Motors*, 55 F.3d 768, 805 (3d. Cir. 1993)

[2] California courts must follow federal precedents in the area of class action procedure in the absence of contrary California authority. (*See, Wallace v. GEICO Gen. Ins. Co.* (2010) 183 Cal.App.4th 1390, 1399 n.7 ["In the context of class action procedure, federal authorities are instructive to the extent that California authorities do not provide guidance, as it 'is well established that in the absence of relevant state precedents our trial courts are urged to follow the procedures prescribed in rule 23 of the Federal Rules of Civil Procedure for conducting class actions.'"] (*quoting, Green v. Obledo* (1981) 29 Cal.3d 126, 145-146).)

6

deductions. Second, the proposed settlement includes a "clear sailing" agreement whereby defendant has agreed it will not oppose class counsel's application for fees and costs up to $50,000 in costs and $2,925,000 in attorneys' fees. (CM ECF No. 89, 34:26-35:5)

As the Ninth Circuit noted in Bluetooth, "[a]lthough clear sailing provisions are not prohibited, they 'by [their] nature deprive[ ] the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *In re Bluetooth*, *supra*, 654 F.3d at p. 949. As the court in *In re Bluetooth* explained:

> "[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." [Citations.] Therefore, when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested. [citations omitted.]
>
> Furthermore, that a provision is severable does not render it irrelevant to the overall reasonableness of the agreement, for "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.... The settlement must stand or fall in its entirety." [citations omitted.]

*In re Bluetooth*, *supra*, 654 F.3d at p. 948 [citations omitted].

Because the proposed settlement agreement evinces two of the three "warning signs" delineated by the court in *In re Bluetooth*, the Court must carefully and stringently review the proposed settlement in order to fulfill its "fiduciary responsibility as guardian of the rights of the absentee class members." (*Kullar*, *supra*, 168 Cal.App.4th at p. 129.)

**B.** **The Procedural Posture re Consolidation of the Chalian and Cabrera Complaints Suggests Collusion.**

A review of the procedural posture leading up to the consolidation of the complaints for *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al*, Case No. 2:16-cv-08979 (C.D. Cal.) and *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al*., Case No. 2:20-cv-02401 (C.D. Cal.) suggest collusion.

**1.** **Brief History re *Chalian* Case.**

HENNIG
RUIZ,
SINGH

On or about July 20, 2016, Plaintiff Sevag Chalian filed a putative wage and hour class action against CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS LLC ("CVS") in the Los Angeles County Superior Court of the State of California, and on December 5, 2016, CVS removed that action to the United States District Court for the Central District of California, Case No. 2:16-cv-08979, where it remains pending. *See* Declaration of Michael Morrison In Support of Motion for Preliminary Approval of Settlement ("Morrison Decl. ISO Prelim. Appr."), ¶ 8. (ECF No. 89)

On or about September 5, 2017, Plaintiff Chalian filed a First Amended Complaint ("Chalian FAC") that alleged causes of action for: (1) Unpaid Wages (Cal. Labor Code § 1194); (2) Failure to Pay Overtime Compensation (Cal. Labor Code § 1194); (3) Failure to Provide Accurate Itemized Wage Statements (Cal. Labor Code § 226); (4) Waiting Time Penalties (Cal. Labor Code §§ 201-203); and (5) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, *et. seq.*) (ECF No. 44)

The Chalian plaintiffs' theory of the case was that CVS required pharmacists to complete mandatory training modules at home, during breaks, and/or off-the clock, who were not compensated for their time. *See* Chalian FAC. (ECF No. 44, ¶¶ 17-28) Plaintiff Chalian was employed as a pharmacist in both Region 65 and Region 72. (ECF No. 44, ¶ 7.) Plaintiff Tamara Aleksandryan was employed as a pharmacist in Region 65. (ECF No. 44, ¶ 8.)

The Chalian plaintiffs proposed to certify two classes:

Region 65 Class:
> All persons who are or were employed by DEFENDANTS as nonexempt pharmacists in DEFENDANTS' Region 65 in the State of California, and who completed mandatory training modules for DEFENDANTS outside of their shifts.

Region 72 Class:
> All persons who are or were employed by DEFENDANTS as nonexempt pharmacists in DEFENDANTS' Region 72 in the State of California, and who completed mandatory training modules for DEFENDANTS outside of their shifts.

(ECF No. 44, ¶ 15.)

### 2.     Brief History re *Cabrera* Case.

On or about August 3, 2017, Plaintiff Sigfredo Cabrera filed a putative wage and hour class action against CVS in Alameda County Superior Court of the State of California. *See* Morrison Decl. ISO Prelim. Appr., ¶ 12. (ECF No. 89, 7:23-25.) Plaintiff later amended his action to add Enko Telahun as a second named plaintiff. *See* Morrison Decl. ISO Prelim. Appr., ¶ 13. (ECF No. 89, 7:26-27.) On or about October 9, 2017, CVS removed the action to the United States District Court for the Northern District of California, Case No. 3:17-cv-05803. *See* Morrison Decl. ISO Prelim. Appr., ¶ 14. (ECF No. 89, 7:28-8:2.)

On or about March 19, 2018, Plaintiffs filed the second amended complaint ("Cabrera SAC"), which alleges on behalf of pharmacy employees that CVS failed to pay minimum wages and overtime compensation (Labor Code §§ 204, 510, 558, 1194, 1197, 1197.1 and 1198); failed to provide legally compliant meal periods or compensation in lieu thereof (Labor Code §§ 226.7 and 512); failed to provide legally compliant rest periods or compensation in lieu thereof (Labor Code § 226.7); failed to pay wages owed (Labor Code §§ 201-203); failed to furnish accurate itemized wage statements (Labor Code §§ 226 and 226.3); failed to maintain accurate records (Labor Code §§226(a), 226.3, and 1174); failed to reimburse for necessary work expenses (Labor Code §§ 2800 and 2802); and participated in unfair business practices (Bus. & Prof. Code §§ 17200 et seq.). The second amended complaint also alleged pursuant to the California Private Attorney General Act, Lab. Code §§ 2698, et seq. ("PAGA"), and on behalf of Plaintiffs Cabrera and Telahun, and other aggrieved employees that CVS owes civil penalties for alleged violations of Labor Code §§ 201-203, 204, 226, 226.3, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2800, and 2802 and relevant IWC Wage Orders. *See* Morrison Decl. ISO Prelim. Appr., ¶ 15. (ECF No. 89, 8:3-19.) (N.D. Cal. 2:20-cv-02401-AB-AGR, ECF No. 49—"Cabrera SAC")

HENNIG
RUIZ,
SINGH

While one of the components of the Cabrera plaintiffs' theory of the case included off the clock work related to mandatory training modules, Plaintiffs further alleged a half dozen other theories for wage and hour liability that stem from: (a) CVS allocating work hours based on prescription volume from the previous year and the busy nature of the pharmacy, that pharmacist other pharmacy employees were often directed to work off the clock before and after their scheduled shifts, as well as during their meal and rest periods to meet the needs of the pharmacy and/or to complete the required training; (b) CVS scheduling only one pharmacist on duty for a period of four to six hour, and not providing meal periods that were free of all duty, as they were on call during their meal periods and/or were unable to leave the premises; (c) CVS failing to reimburse and/or indemnify Plaintiffs and other current or former pharmacy employees for expenses incurred as a direct result of their employment, such as the use of personal computers and internet to complete the mandatory training from a remote location; (d) CVS failing to reimburse and/or indemnify pharmacy technicians for the costs of their required license, background check, and travel; and (e) PAGA penalties related to the alleged violations. *See* Cabrera SAC, ¶¶ 28-38, 43, 48, 54, 55. (N.D. Cal. 2:20-cv-02401-AB-AGR, ECF No. 49.)

The *Cabrera* plaintiffs proposed twelve (12) classes:

(a) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who suffered any violations of the Labor Code, Business and Professions Code and/or the relevant California Industrial Welfare Commission's ("IWC") Wage Orders during the Class Period.

(b) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not paid for all hours worked in violation of California law during the Class Period.

(c) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with legally compliant meal periods or compensation in lieu thereof in violation of California law during the Class Period.

(d) All current or former non-exempt pharmacists employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with legally compliant

10

meal periods because of Defendants' practice of scheduling only one pharmacist on-duty for a period of four to six hours, or who were not compensated for noncompliant meal periods in lieu thereof in violation of California law during the Class Period.

(e) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with legally compliant rest periods or compensation in lieu thereof in violation of California law during the Class Period.

(f) All current or former non-exempt pharmacists employed by Defendant in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with the opportunity to take legally compliant rest periods due to Defendants practice of scheduling one pharmacist on duty for a period of four to six hours, or who were not compensated for noncompliant rest periods in lieu thereof in violation of California law during the Class Period.

(g) All former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not paid all wages owed upon termination of the employment relationship in violation of California law during the Class Period.

(h) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not provided with accurate itemized wage statements in violation of California law during the Class Period.

(i) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and whose information was not accurately recorded and/or maintained in violation of California law during the Class Period. (j) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not reimbursed for necessary work expenses in violation of California law during the Class Period. (k) All current or former non-exempt pharmacy technicians employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were not reimbursed for their licensing, background check, and travel in violation of California law during the Class Period. (l) All current or former non-exempt pharmacy employees employed by Defendants in the state of California who "opted-out" of or did not agree to CVS' arbitration agreement and who were subject to Defendants' unlawful, unfair, and/or fraudulent business practices in violation of California law during the Class Period.

*See* Cabrera SAC, ¶ 8. (N.D. Cal. 2:20-cv-02401-AB-AGR, ECF No. 49.)

### 3. Joint Prosecution of the Cases Given the Extreme Breadth of the *Cabrera* Case Suggests Collusion.

Plaintiff asserts that in 2018, counsel for the *Chalian* Plaintiffs in the Central District of California Action and the *Cabrera* Plaintiffs in Northern District of California Action decided to work cooperatively and jointly prosecute their respective actions. *See* Morrison Decl. ISO Prelim. Appr., ¶ 19. (ECF No. 89.) The

HENNIG
RUIZ,
SINGH

Plaintiffs and CVS mediated the case with David A. Lowe, Esq., on July 29, 2019, and exchanged the following information:

1. Class list containing persons who did not execute arbitration agreements;
2. Excel spreadsheets detailing dates of employment, annual salary, and hourly rate for employees in the Class;
3. Excel spreadsheets containing LEARNet data, which shows when a sampling of Class Members logged into training;
4. Excel spreadsheet containing Site Minder data for 2017 and 2018, which reflects Class Member activity on the LEARNet training site;
5. Excel spreadsheets showing time punches for a sampling of Class Members, which, when compared to LEARNet data, identifies persons who logged onto LEARNet while not clocked in. The same data also helps reveal potential Labor Code section 850-851 and 550-551 violations;
6. Excel spreadsheet showing what was paid to Class Members each pay period; and
7. Relevant policies and procedures regarding training modules, off the clock work, sick pay, reimbursement policy, meal and rest periods, etc.

*See* Morrison Decl. ISO Prelim. Appr., ¶ 19. Plaintiffs hired an expert statistician to analyze the data and determine the damages, interest, and penalties (statutory and civil) owed to Class Members. *See* Morrison Decl. ISO Prelim. Appr., ¶ 23. Specifically, the LEARNet and Site Minder data was used to determine when Class Members logged into CVS's training system as well as the average duration of each session. *See Id.*

A second day of mediation took place on November 11, 2019, in which the parties came to an agreement to resolve all pending wage and hour disputes between them. *See* Morrison Decl. ISO Prelim. Appr., ¶ 24. The final settlement agreement was executed in late February, early March 2020. *See* Morrison Decl. ISO Prelim. Appr., ¶ 25, Ex. 1. The parties then stipulated to a transfer of the *Cabrera* case to the Central District for consolidation. *See* Morrison Decl. ISO Prelim. Appr., ¶ 25. Shortly thereafter, Plaintiffs filed a Consolidated Second Amended Complaint ("CSAC") (ECF No. 104).

The behemoth CSAC combined all of the claims from both *Chalian* and *Cabrera* into a single class consolidated complaint alleging: (1) failure to pay minimum wages (labor code §§ 204, 558, 1194, 1197, 1197.1, and 1198); (2) failure to pay overtime compensation (labor code §§ 510 and 1994); (3) failure to

12

provide legally compliant meal periods or compensation in lieu thereof (labor code §§ 226.7 and 512); (4) failure to provide legally compliant rest periods or compensation in lieu thereof (labor code § 226.7); (5) failure to pay wages owed at the time of separation (labor code §§ 201, 202, and 203); (6) failure to furnish accurate itemized wage statements (labor code §§ 226 and 226.3); (7) failure to maintain accurate records (labor code §§ 226(a), 226.3, and 1174); (8) failure to reimburse for necessary work expenses (labor code §§ 2800 and 2802); (9) unfair business practices (bus. & prof. code §§ 17200 et. seq.); (10) private attorneys general act of 2004 (labor code §§ 2698 *et se*q.). *See* CSAC (ECF No. 104.)

> The new proposed amalgamated class definitions became:
> (a) All hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and continuing through the present, whose claims are not subject to arbitration and which have not previously been released and/or adjudicated, and whose LEARNet and/or Siteminder data indicates activity when time punch records do not show he or she was clocked-in (the "Pharmacist Settlement Class").
>
> (b) All persons, other than those in the Pharmacist Settlement Class, who held an hourly, nonexempt position in a CVS retail pharmacy in the State of California between August 3, 2014 and continuing through the present who have not previously released and/or adjudicated the Released Claims (the "Retail Pharmacy Settlement Class").

*See* CSAC, ¶ 12 (ECF No. 104.)

The reason why the action taken in consolidating these actions suggest collusion starts with the fact that *Chalian* and *Cabrera* share a single theory of the case: CVS required pharmacists to complete mandatory training modules at home, during breaks, and/or off-the clock, who were not compensated for their time. The narrowly proposed classes, as articulated in the *Chalian* FAC, were simply pharmacists in Regions 65 and 72, who completed mandatory training modules outside of their shifts. (ECF No. 44, ¶ 15.)

However, in contrast, the *Cabrera* SAC additionally alleged a half dozen other legal theories, and identify twelve proposed class definitions covering pharmacists, pharmacy technicians, pharmacy associates, among other pharmacy employees, including for PAGA penalties under reach of these legal theories. *See*

13

HENNIG RUIZ, SINGH

Cabrera SAC, ¶¶ 8, 28-38, 43, 48, 54, 55. (N.D. Cal. 2:20-cv-02401-AB-AGR, ECF No. 49.)

Plaintiffs explain that during and around mediation, they received class lists and excel sheets containing LEARNet data that allowed them to calculate the estimated damages. *See* Morrison Decl. ISO Prelim. Appr., ¶ 19 According to Plaintiffs' expert, the potential damages for OTC training is as follows: For the Pharmacist Settlement Class, the total unpaid wages (regular and overtime wages) are **$1,291,932** based on Site Minder data showing an average of 1.33 hrs (Region 65) and 1.54 hrs (Region 72) of OTC time per training session. *See* Morrison Decl. ISO Prelim. Appr., ¶ 42. (ECF No. 89) For the Retail Pharmacy Class, only 425 Class Members did not sign arbitration agreements. The approximate amount of unpaid wages for those who did not sign arbitration agreements is **$1,642,726**. *See* Morrison Decl. ISO Prelim. Appr., ¶ 42. (ECF No. 89) Plaintiffs stated that of the more than 20,000 total Class Members, little more than 800 have individual wage and hour claims that a court could adjudicate. *See* Morrison Decl. ISO Prelim. Appr., ¶ 30. (ECF No. 89)[3]

Without including attorneys' fees and cost, and based on the data provided by Defendant, Plaintiff's experts estimate that the damages for approximately 800 class members that have wage and hour claims the court could adjudicate was essentially $1,291,932 + $1,642,726 = **$2,934,658**, so just shy of $3 million in damages for plaintiffs who could be expected to be bound by any proposed settlement. However, these damages are essentially those to be expected from the single theory of liability articulated in *Chalian*, and for which *Cabrera* shared. However, these calculations did not properly account for the half dozen other legal theories that were articulated by *Cabrera*, including for PAGA penalties, which would be unaffected by an agreement to arbitrate. The $75,000 payment for PAGA

---

[3] This does not appear to be correct because the Court can adjudicate PAGA claims notwithstanding any enforceable arbitration agreement.

HENNIG
RUIZ,
SINGH

appears to be inexplicably undervalued given class counsel's estimate that the expected liability ranged between $10 million and $23 million. (ECF No. 89, 25:21-26:4.)

Essentially, the proposed settlement reserved for the class, $6,600,750, is barely more than double of the expected damages from the *Chalian* liability alone, and it appears to be an effort to release the liability against CVS for a half dozen other legal theories CVS without any demonstration by the *Cabrera* plaintiffs that adequate class discovery and/or depositions have been conducted.

**C.     The Proposed Settlement is not Fair or Adequate as to Either Non-Exempt, Hourly Pharmacists in Regions 65 and 72, or to All Non-Exempt, Hourly Employees of CVS in California.**

Under the terms of the settlement agreement, and reflected in the notice of settlement sent to class members, the two classes are defined:

> (a) as an hourly, non-exempt Pharmacist in a CVS retail pharmacy located in Region 65 or 72 in the State of California between July 20, 2012 and the present and you did not sign an arbitration agreement or previously release and/or adjudicate certain wage and hour claims; or (b) as an hourly, non-exempt employee in a CVS retail pharmacy in the State of California between August 3, 2014 and the present, who has not previously released and/or already adjudicated certain wage and hour claims.

*See* Ghassemian Decl., ¶ 3, Ex. B. These class definitions are overbroad and do not appear to be tailored to any common questions of law or fact. A question is common to the class where it is capable of resolution on a class wide basis, meaning that determination of its truth or falsity will directly resolve an issue that is central and valid to each one of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

First, the Class definitions themselves appear to have potential overlap and be in conflict. Neither the class attorneys or Defendants provide any definition as to the geographical boundaries of Region 65 or 72 in the State of California. If there are only two regions in California, Class A (Region 65 and 72) would seek to cover all hourly, non-exempt pharmacists in California that have not previously released or adjudicated their wage and hour claims. If there are a dozen or more regions in

15

GHASSEMIAN'S OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT

HENNIG
RUIZ,
SINGH

California, Class A itself could potentially be very small, and not warrant class treatment at all. The class definitions fail to clarify whether there are any members of Class A, consisting of pharmacists in Regions 65 or 72 of California from July 20, 2020 and the present, that are also hourly non-exempt employees of CVS in California between August 3, 2014 and the present. As it appears that there is overlap, will those class members be receiving payments double payments? And if they do not, why not?

Second, there is also no explanation as to whether Regions 65 and 72 themselves, and the CVS stores located therein, have remained consistent between 2012 and the present. During the approximate twelve years that Objector Ghassemian worked as a pharmacist for CVS between December 2006 and October 2018, she recalls that CVS realigned divisions and/or districts 2-3 times during her tenure. *See* Ghassemian Decl., ¶ 4. This suggests that Class A may be both overinclusive and underinclusive because Regions 65 and 72 may include payments to pharmacists that were not subjected to particular wage and hour violations, while excluding payment to pharmacists that were in these regions but had been reclassified or realigned into another district.

Third, Class B, which convers hourly, non-exempt employee in a CVS retail pharmacy in the State of California between August 3, 2014 and the present, is an excessively overbroad class definition. It presumably includes pharmacists like Plaintiff Sevag Chalian, pharmacy techs like Plaintiff Christine McNeely, or pharmacy associates with Plaintiff Sigfredo Cabrera. Given the different job titles, different job responsibilities, different supervising managers, different locations of stores, it is reasonable to expect that each job classification would not experience wage and hour violations in the exact same way. Without any effort to provide proper subclassing, Class B is simply an overbroad class definition where class counsel would have a difficult time showing that there are questions of law and fact common to the class.

## D. The Amount Allocated to Class Members Is Inadequate.

The arbitrary amount allocated to class members is clearly inadequate. First, out of the originally proposed $9,750,000 proposed class action settlement, the attorneys for the plaintiffs' request fees in the amount of $2,925,000, or approximately 30 percent of the total settlement. After deducting out the $75,000 payments to the Labor and Work Development Agency ("LWDA") under the Private Attorneys General Act ("PAGA")[4], the $43,000 incentive award for the class representatives, and the $75,000 for settlement administrator's expense, the class itself is left with a $6,600,750 remaining amount. (ECF No. 89, 13:24-14:13).

A review of the executed Settlement Agreement, which was attached as Exhibit 1 in the Declaration of Michael Morrison in Support of Plaintiffs' Motion for Preliminary Approval, estimated the class size to be approximately 19,000 individuals. (ECF No. 89-1, Ex. 1) The class list provided by Defendant prior to mediation increased that number to 20,900 employees, with an estimated 2,945,837 work weeks.[5] Based on the information stated about the original proposed class, and the remaining settlement amount of $6,600,750 reserved for the class, the average employee in the class about 140.95 weeks and was expected to receive a paltry settlement of $315.83 for release all of his or her claim against CVS. Thus, the average employee was expected to receive a mere 0.0108 ($315.83/$2,925,000) percent of the expected attorneys' fees going to class counsel.

And for Objector Ghassemian, despite earning a regular pay rate of $73.02 per hour as a pharmacist-in-charge, one of the highest rates among the class members, her estimated settlement check of $894.64 based on 219 workweeks (or 4.08 years), would be a mere 0.0305 percent ($894.64/$2,925,000) of the expected attorneys' fees going to class counsel.

---

[4] The $75,000 payment for PAGA appears to be inexplicably undervalued given class counsel's estimate that the expected liability ranged between $10 million and $23 million. (ECF No. 89, 25:21-26:4.)

[5] The final class list appeared to slightly increase to 24,309 employees with a total of 33,133,55 work weeks pursuant to the Elevator Clause, raising the total settlement amount to $10,371,346.60 and the attorneys' fees to $3,111,403.98, an increase of $186,403.98.

1    Based on conservative estimates, without interest, Objector Ghassemian

2    wage and hour damages against CVS are substantial.

3    <u>Meal and Rest Periods</u>: Based on her four-day work schedule, Ghassemian

4    estimates that she missed at least one meal period or rest period per day, for which

5    she did not receive premium pay. *See* Ghassemian Decl., ¶ 48 In a week,

6    Ghassemian would be entitled to four hours of premium pay at her pay rate of

7    $73.02 = $292.08. Based on the same 219 workweeks, she would be entitled to

8    **<u>$63,965</u>** during the class period.

9    <u>Overtime/Minimum Wage</u>: Ghassemian estimates that even though she

10   averaged about 2 hours of paid overtime per week, she regularly worked between 1-

11   5 hours off the clock per week. *See* Ghassemian Decl., ¶ 9. For simplicity,

12   assuming that Ghassemian worked 2 hours off the clock per week, based on her

13   overtime rate of $109.53, over 219 workweeks (2 hours x $109.53 x 219 weeks),

14   her unpaid overtime earnings would be **<u>$46,440.72</u>** during the class period.

15   <u>Inaccurate Wage Statements</u>: Because Ghassemian was not compensated for

16   all overtime hours and missed meal and rest breaks, her itemized wage statements

17   were inaccurate. *See* Ghassemian Decl., ¶ 10. Based on 26 issued paystubs a year, a

18   $50 first violation, and $100 subsequent violation, would amount to $2,550 a year.

19   As Ghassemian worked for CVS for 219 workweeks (or 4.08 years) during the

20   class period, the damages would cap at **<u>$4,000</u>**.

21   <u>Waiting Time</u>: For the aforementioned violations, Ghassemian believes she

22   was not provided with all of her owed wages at the time of her termination in

23   October 2018 for beyond 30 days. Her daily rate is based on 8 regular hours, and

24   0.5 overtime hours = $638.925 daily rate x 30 days = **<u>$19,167</u>**.

25   Based on conversative estimates of wage and hour violations alone,

26   Ghassemian estimates that her damages are **<u>$133,573.47</u>**. This would not include

27   any accrued interest nor any applicable PAGA penalties. Compared to the $894.64

28   offered to Ghassemian based on the class action settlement, this represents a mere

**0.67 percent of the total value of her claims**.

Even if other pharmacy employee may earn a lower pay rate, it is abundantly clear that the class action settlement is vastly inadequate and unfair. For other pharmacists who had similar payrates and were subjected to similar working conditions from CVS, their expected damages are comparable to that of Ghassemian. And even for other pharmacy employees who earned a lower pay rate, the proposed settlement payments represent pennies on the dollar given the value of the potential claims, even if some of them needed to be pursued in arbitration. The proposed settlement would foreclose the ability of 24,309 class members from even pursuing their wage and hour claims in arbitration or through the California Labor Commissioner. Plaintiff's Motion for Attorney's Fees, Craig S. Clark Decl. ¶ 31. (ECF No. 160-2)

### E. The Proposed Attorneys Fee Award is Windfall.

Objector Ghassemian believes that approving a requested attorney fee award of $3,111,403.98, or 30 percent of the maximum settlement amount, would provide class counsel with an unjustified windfall for the following reasons:

(A)   Objector believes the proposed settlement is not in the best interests of the stated class, and that the amount of the settlement is woefully short of what would be a fair settlement of the very broad release of claims included in the proposed settlement.

(B)   There has been a failure of plaintiff's counsel to conduct sufficient due diligence to investigate and analyze the realistic value of the claims.

(C)   The procedural history of how this settlement came about suggests collusive conduct between the plaintiff's attorneys in this case and defense counsel.

(D)   The attorneys' fees sought by plaintiff's counsel in this case based upon a claimed 30 percent common fund is nothing short of an unearned and inappropriate windfall to counsel.

(E)     The cross-check of the costs claimed in this case demonstrates how little work has been done by the attorneys in this case and, thus, why there has been a failure of due diligence in this case.

(F)     To approve this settlement would be an inappropriate abdication of this Court's obligation to determine and act in the best interests of the class. sufficient due diligence to investigate and analyze the realistic value of the claims. *See Id*

*See* Declaration of Rob Hennig, ¶ 6. The basis for Mr. Hennig's objections to the settlement are described fully in his declaration. See, generally, Hennig Decl. ¶¶ 34-76.

## III.     CONCLUSION

Objector submits that the proposed settlement as presently written cannot be approved.  The settlement must be revised to provide fair and adequate benefits to the proposed classes of CVS pharmacists and other non-exempt, hourly employees in California.

Dated: November 6, 2020          HENNIG RUIZ & SINGH, P.C.

        /s/ Rob Hennig
Rob Hennig
Dat Tommy Phan
Attorneys for Class Member and Objector
PARVIN GHASSEMIAN

**Exhibit B**

1   ROB HENNIG (STATE BAR NO. 174646)
    rob@employmentattorneyla.com
2   DAT TOMMY PHAN (STATE BAR NO. 316813)
    dat@employmentattorneyla.com
3   HENNIG RUIZ & SINGH, P.C.
    3600 Wilshire Blvd., Suite 1908
4   Los Angeles, CA 90010
    Telephone: (213) 310-8301
5   Fax: (213) 310-8302

6   Attorneys for Class Member and Objector
    PARVIN GHASSEMIAN

7

8

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12   SEVAG CHALIAN, an Individual,      CASE NO.: 2:16-cv-08979-AB-AGR
     Individually and on behalf of all  Assigned to Hon. Andre Birotte Jr.
13   others similarly situated and the  *Related Case No.:2:20-cv-02401-AB-AGR*
     general public,
14                    Plaintiffs,        **DECLARATION OF PARVIN**
                                         **GHASSEMIAN IN SUPPORT OF**
15                                       **OBJECTIONS TO THE PROPOSED**
               *v.*                      **CLASS ACTION SETTLEMENT.**
16
                                         DATE:     December 4, 2020
17   CVS PHARMACY, INC., a Rhode         TIME:     10:00 a.m.
     Island corporation; CVS RX          PLACE:    Courtroom 7B
18   SERVICES, INC., a New York                    350 West First Street,
     corporation; GARFIELD BEACH                   Los Angeles, California
19   CVS, LLC, a California limited
     liability company; and DOES 1 thru
20   100, inclusive,
     Defendants.
21

22

23

24

25

26

27

28

HENNIG
RUIZ,
SINGH

# DECLARATION OF PARVIN GHASSEMIAN

I, PARVIN GHASSEMIAN, declare as follows:

1.      I am over the age of 18. I am the Plaintiff in the matter of *Parvin Ghassemian v. CVS Pharmacy et al.*, Case No. 30-2019-01088926-CU-OE-CJC, which was filed in Orange County Superior Court on or about August 8, 2019. I am also class member and objector in the matters of *Sevag Chalian et al. v. CVS Pharmacy, Inc.et al.*, Case No. 2:16-cv-08979 (C.D. Cal.) and *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al.*, Case No. 2:20-cv-02401 (C.D. Cal.). A true and correct copy of my e-filed state complaint court complaint is attached hereto and incorporated herein as **Exhibit A**.

2.      I have personal knowledge of the facts that I am hereafter attesting to. This personal knowledge has been attained either by my own observations or the underlying records and documents of this litigation. If called to testify, I could and would competently testify to the facts contained herein.

3.      On or about October 5, 2020, I received a "Notice of Class Action Settlement and Release of Claims" in the mail. After reviewing the notice, I learned that there were two pending class actions in the U.S. District Court for the Central District of California: *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al*, Case No. 2:16-cv-08979 (C.D. Cal.) and *Sigfredo-Cabrera et al. v. CVS Pharmacy., Inc. et al.*, Case No. 2:20-cv-02401 (C.D. Cal.) I learned that I was part of the putative class and that as a part of the proposed settlement, I was expected to receive approximately $894.64 based on 219.00 weeks worked for CVS during the class period, less applicable withholdings. A true and correct copy of the Notice of Class Action Settlement is attached hereto and incorporated herein as **Exhibit B**.

4.      I worked as a Pharmacist-in-Charge ("PIC") in Orange County, California, primarily out of the CVS store located at 28221 Crown Valley Pkwy, Laguna Niguel, CA 92677. I worked for CVS for approximately twelve years, from

DECLARATION OF PARVIN GHASSEMIAN ISO OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT

December of 2006 until on or about October 12, 2018. I was a long-term employee, who had received consistently received positive performance evaluations and regular pay increases. At the time of my termination, I had reached the pay cap for my classification and store volume. I recall that CVS realigned divisions and/or districts 2-3 times during my tenure with CVS.

5. **Weekly Hours Worked** – Up until my termination in October 2018, my regular work schedule called for four 8-hour days, amounting to 32 regular hours per week. However, due to CVS's requirement for mandatory trainings, CVS's staffing policies, and the busy nature of the pharmacy, I regularly worked approximately 2 overtime hours per week, and between 1-5 additional hours per week off the clock.

6. **Earnings and Pay Rate** – In 2018, I earned approximately $114,095 with a regular rate of pay of $73.02 per hour. In 2017, I earned approximately $128,267 with a regular rate of pay of $73.02 per hour. In 2016, I earned approximately $132,171 with a regular rate of pay of $72.80 per hour. In 2015, I earned approximately $1432,322 with a regular rate of pay of $70.48 per hour.

7. **CVS Policy** – I understood that as a policy and practice, CVS set the available work hours, including overtime hours, for each CVS location based on past prescription volume. I also understood that as a policy and practice, I was instructed not to go over the set amount of available work hours for my CVS location. I understood that CVS had a policy and practice of only staffing one pharmacist per shift, meaning legally compliant meal and rest breaks cannot be taken during store hours because there is no one to relieve the pharmacist from all work.

8. **Meal and Rest Breaks** – At my CVS store, the regular pharmacy hours at my CVS store was approximately 8:00 a.m. to 9:00 p.m., and later 9:00 a.m. to 9:00 p.m. I was regularly staffed as the only pharmacist during my 8-hour

shifts. For example, if I was staffed for 8:00 a.m. to 5:00 p.m., another pharmacist would not start until at or near the end of my shift. As the only pharmacist on staff, and unable to close the pharmacy except under limited circumstances, I was regularly unable to take my uninterrupted meal and rest periods during my shifts because there was no one to relieve me from all work. Even during my breaks, I remained on call and/or was unable to leave the premises. Based on a four-day work schedule, I estimate that I missed at least one meal period or rest period per day, but did not receive premium pay.

9. **Overtime and Minimum Wage** – During the relevant class period identified in the settlement notice, I estimate that I was compensated for about 2 hours of overtime a week, but worked an additional 1-5 hours off per week off the clock, for which I was not paid a minimum or overtime. I believe I should have been paid 1.5 times my regular rate of pay for all hours worked in excess of eight hours up to twelve hours, and in excess of forty hours in a workweek. I believe I should have further been paid twice my regular rate of pay for all hours worked in excess of twelve hours in a workday.

10. **Inaccurate Itemized Wage Statements** – During the relevant class period identified in the settlement notice, because I was not compensated for all overtime and wage earned, and meal and rest breaks that were missed, my itemized wage statements were inaccurate.

11. **Waiting Time Penalties** – After I was unlawfully terminated from my employment with CVS in October 2018, due to the aforementioned violations, I was not promptly paid all compensation and wages owed to me including unpaid wages for overtime, minimum wage, and missed meal and rest breaks, which makes CVS liability for waiting time penalties. More than 30 days have passed.

I declare under penalty of perjury under the laws of the United States that the

HENNIG
RUIZ,
SINGH

foregoing is true and correct of my own personal knowledge, excepting those matters stated upon information and belief, in which case I believe them to be true.

Executed this 6th day of November, 2020, at Dana Point, California

 /s/ Parvin Ghassemian

Parvin Ghassemian

# Exhibit A

1   ROB HENNIG (STATE BAR NO. 174646)
    BRANDON RUIZ (STATE BAR NO. 264603)
2   DAT TOMMY PHAN (STATE BAR NO. 316813)
3   HENNIG RUIZ & SINGH, P.C.
    3600 Wilshire Blvd., Suite 1908
4   Los Angeles, CA 90010
    Telephone: (213) 310-8301
5   Fax: (213) 310-8302

6   Attorneys for Plaintiff PARVIN GHASSEMIAN

7

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**08/08/2019** at 09:45:32 AM

Clerk of the Superior Court
By Amy Van Arkel,Deputy Clerk

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           FOR THE COUNTY OF ORANGE, UNLIMITED JURISDICTION

10                              30-2019-01088926-CU-OE-CJC

11  PARVIN GHASSEMIAN, an individual,      CASE NO. Judge Walter Schwarm      C19
                                           **UNLIMITED JURISDICTION**
12              Plaintiff,
                                           **COMPLAINT FOR:**
13
        vs.
14                                          1.  **FEHA – DISCRIMINATION;**
                                            2.  **FEHA – HARASSMENT;**
15  CVS PHARMACY, INC., a Rhode Island      3.  **FEHA – RETALIATION;**
    Corporation; CVS RX SERVICES, INC., a   4.  **FEHA – FAILURE TO TAKE ALL**
16  Rhode Island Corporation; JACQUELINE        **STEPS NECESSARY TO STOP**
    ABELSOHN, an individual, and DOES 1         **DISCRIMINATION, HARASSMENT,**
17  through 120, inclusive,                     **AND RETALIATION;**
18                                          5.  **FEHA – FAILURE TO ENGAGE IN A**
                Defendants.                     **TIMELY GOOD-FAITH**
19                                              **INTERACTIVE PROCESS;**
                                            6.  **FEHA – FAILURE TO PROVIDE**
20                                              **REASONABLE ACCOMMODATION;**
                                            7.  **FAILURE TO PROVIDE REST AND**
21                                              **MEAL BREAKS, CAL. LAB. CODE §§**
                                                **226.7, 512;**
22                                          8.  **FAILURE TO PAY MINIMUM WAGE**
                                                **AND OVERTIME, CAL. LAB. CODE §**
23                                              **510, 1194;**
                                            9.  **FAILURE TO PROVIDE ACCURATE**
24                                              **ITEMIZED WAGE STATEMENTS,**
                                                **CAL. LAB. CODE § 226(a);**
25                                          10. **WAITING TIME PENALTIES, CAL.**
                                                **LAB. CODE §§ 201-203;**
26                                          11. **RETALIATION AND WRONGFUL**
                                                **TERMINATION IN VIOLATION OF**
27                                              **CAL. LAB. CODE § 1102.5;**
                                            12. **RETALIATION AND WRONGFUL**
28                                              **TERMINATION IN VIOLATION OF**
                                                **CAL. LAB. CODE § 98.6; AND**

HENNIG                                  1
RUIZ,
SINGH      COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR A JURY TRIAL

**DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.      Plaintiff PARVIN GHASSEMIAN (hereinafter "Plaintiff" or "Ghassemian") files this Complaint for Damages and injunctive relief related to Plaintiff's employment with Defendants CVS PHARMACY, INC. and CVS RX SERVICES, INC. (hereinafter "CVS"), JACQUELINE ABELSOHN, and DOES 1 through 120 inclusive (collectively, "Defendants").

2.      Plaintiff brings the following causes of action for (1) discrimination in violation of the Fair Employment and Housing Act (hereinafter "FEHA"); (2) harassment in violation of FEHA; (3) retaliation in violation of FEHA; (4) failure to take all steps necessary to prevent discrimination, harassment, and/or retaliation from occurring in violation of FEHA; (5) failure to engage in a timely good-faith interactive process in violation of FEHA; (6) failure to provide a reasonable accommodation in violation of FEHA; (7) failure to provide rest and meal breaks in violation of Cal. Lab. Code §§ 226.7 and 512, (8) failure to pay minimum wage and overtime in violation of Cal. Lab. Code §§ 510 and 1194, (9) failure to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226(a), (10) waiting time penalties pursuant to Cal. Lab. Code §§ 2698, et seq., (11) retaliation and wrongful termination in violation of Cal. Lab. Code § 1102.5, and (12) retaliation and wrongful termination in violation of Cal. Lab. Code § 98.6.

**PARTIES AND JURISDICTION**

3.      Plaintiff is informed and believes, and thereon alleges that, at all times material to this Complaint, Defendants CVS Pharmacy, Inc. and CVS RX Services were and are Rhode Island Corporations, all with business locations in Orange County, California.

4.      Plaintiff is informed and believes, and thereon alleges that, at all times material to this Complaint, Defendant Abelsohn is a citizen of the State of California, and resides in or around Orange County, California.

2

1       5.      Plaintiff is a former employee of Defendants CVS and, at all relevant times, was

2   working as a Pharmacist-in-Charge in Orange County, California. Plaintiff worked primarily out

3   of the CVS store located at 28221 Crown Valley Pkwy, Laguna Niguel, CA 92677. Plaintiff is a

4   citizen of the State of California, and resides in Orange County, California.

5       6.      Defendants sued herein as Does 1 through 120 are sued under said fictitious names

6   pursuant to California Code of Civil Procedure section 474. Plaintiff is informed and believes,

7   and thereon alleges that each defendant sued under such fictitious names is in some manner

8   responsible for the wrongs and damages as alleged herein, and in so acting was functioning as the

9   agent, servant, manager, supervisor, employee, subsidiary, and/or joint venturer of Defendants

10  and acted at the direction of or with the permission and consent of Defendants.

11      7.      Plaintiff is informed and believes, and thereon alleges that each and all of the acts

12  and omissions alleged herein were performed by, and/or attributable to, all Defendants, each

13  acting as agents and/or employees, and/or under the direction and control of each of the other

14  Defendants, and that said acts and failures to act were within the course and scope of said agency,

15  employment and/or direction and control. Plaintiff is informed and believes, and thereon alleges

16  that, at all times material hereto, Defendants were and are the agents of each other.

17      8.      This Court is the proper court and this action is properly filed in the County of

18  Orange and in this judicial district because (a) Defendants CVS maintains office(s) and transacts

19  business in Orange County, (b) contracts of employment between Plaintiff and Defendants CVS

20  were made in Orange County, (c) work relevant to this action was performed in whole or

21  primarily in Orange County, and (d) material transactions between Plaintiff and Defendants took

22  place within Orange County.

23      9.      As a direct and proximate result of the unlawful acts of Defendants, Plaintiff has

24  suffered and continues to suffer from humiliation, embarrassment, emotional pain and suffering,

25  and other damages in amounts not yet ascertained, but subject to proof at trial.

26      10.    Plaintiff is informed and believes, and thereon alleges, that Defendants engaged in

27  malice, fraud, and/or oppression in their actions against Plaintiff.

28

HENNIG
RUIZ,
SINGH

# FACTS

2       11.    Plaintiff Parvin Ghassemian was a Pharmacist-in-Charge in Orange County,

3   California. Plaintiff worked primarily out of the CVS store located at 28221 Crown Valley Pkwy,

4   Laguna Niguel, CA 92677.

5       12.    Plaintiff worked for Defendants CVS for approximately twelve years, from

6   December of 2006 until on or about October 12, 2018.

7       13.    Plaintiff was a long-term employee of Defendants CVS. Throughout Plaintiff's

8   tenure with CVS, she consistently received positive performance evaluations and regular pay

9   increases. As of the time of her termination, Ghassemian had reached the pay cap for her

10  classification and store volume.

11      14.    Throughout Ghassemian's employment with CVS, Ghassemian, like many

12  Pharmacists-in-Charge, worked a four-day work schedule of 8 hours per day. Ghassemian's four-

13  day work schedule was pursuant to her doctor's orders as part of an ongoing Workers

14  Compensation claim. Plaintiff is, and was known by CVS to have a disability and/or medical

15  condition, namely nerve damage known as Complex Regional Pain Syndrome (CRPS).

16      15.    In or around December of 2017, Defendant Jacqueline Abelsohn became

17  Plaintiff's direct supervisor. This position placed Abelsohn in charge of all store managers and

18  Pharmacists-in-Charge.

19      16.    On or about April 4, 2018, Abelsohn accused Ghassemian of not working

20  weekends because Ghassemian had taken two days off on March 24, 2018 and March 25, 2018 to

21  celebrate a cultural/religious holiday: Nowruz, Persian New Year. Ghassemian's time off was

22  pre-approved by the district scheduler in November of 2017. When Ghassemian explained the

23  circumstances of her approved days off, Abelsohn stated that she did not care and that since

24  Ghassemian worked a four-day schedule, she should not be taking time off to celebrate religious

25  holidays.

26      17.    Between April and July of 2018, Abelsohn told the Pharmacists-in-Charge under

27  her supervision that they had to work a five-day work schedule rather than the four-day schedule

28  which several of them worked, and that this scheduling change had to be completed by August of

4

1    2018. Following this announcement, Ghassemian approached Abelsohn and told her that

2    Ghassemian was working a four-day schedule pursuant to doctor's orders as part of an ongoing

3    Workers' Compensation claim. At the time, Abelsohn stated that she was unaware of

4    Ghassemian's restriction, and that it was not a problem. Abelsohn did not make any request that

5    Ghassemian make a formal request for reasonable accommodation.

6        18.    In or around August of 2018, Abelsohn again demanded that Ghassemian work

7    five days per week, claiming that it was a job requirement. Again, Ghassemian reminded

8    Abelsohn of her restrictions. Abelsohn then stated that she would set up a meeting to review the

9    requirements of Ghassemian's position in person. On information and belief, there was no

10   requirement that Ghassemian or any other Pharmacist-in-Charge work five days per week, other

11   than pursuant to the demand of Abelsohn.

12       19.    On or about August 21, 2018, Abelsohn demanded to know why Ghassemian had

13   taken August 18, 2018 and August 19, 2018 off of work. Ghassemian responded that she was

14   approved to take those days off to seek medical treatment, an infusion. Per Ghassemian's doctor's

15   orders, she was supposed to be off-work until August 21, 2018, but, under pressure from

16   Abelsohn, Ghassemian returned to work on August 20, 2018. During this exchange, Abelsohn

17   asked Ghassemian what kind of infusion Ghassemian had received and asked about Ghassemian's

18   worker's compensation injury. Ghassemian explained to Abelsohn the nature of her injury, to

19   which Abelsohn responded "I don't see anything wrong with you." Abelsohn told Ghassemian to

20   contact Human Resources to request accommodation even though other Pharmacists-in-Charge

21   who worked four-day schedules had been able to do so without any formal accommodation

22   request. To Ghassemian's knowledge, multiple Pharmacists-in-Charge under Abelsohn continue

23   to work four-day schedules without requesting reasonable accommodation.

24       20.    On or about August 22, 2018, Ghassemian contacted CVS's Human

25   Resources/Reasonable Accommodation Unit to file a reasonable accommodation request. She

26   was asked why she was making a request for accommodation to work four days per week when

27   she was already working a four-day per week schedule. Ghassemian was specifically told that she

28   must miss work in order to be accommodated, and that, as Ghassemian was already working the

HENNIG
RUIZ,
SINGH

1  schedule she was requesting, CVS would not make any accommodation.

2      21.    Throughout August of 2018, and on direction from Abelsohn, Ghassemian made

3  several further attempts to request accommodation from CVS, but her requests were rejected each

4  time as CVS would not consider an accommodation when Ghassemian was already working a

5  four-day work schedule. Ghassemian opened a second reasonable accommodation request, which

6  she later canceled at the instruction of CVS's human resources/reasonable accommodation unit as

7  Ghassemian was already working a four-day schedule.

8      22.    On or about August 31, 2018, and shortly after Ghassemian canceled her

9  reasonable accommodation request at the direction of CVS's human resources/reasonable

10  accommodation unit, Abelsohn called Ghassemian demanding to know why Ghassemian

11  canceled her reasonable accommodation request.

12      23.    Throughout September of 2018, Abelsohn continued to insist that business needs

13  had changed and Ghassemian had to work five days per week rather than her customary four-day

14  work schedule. Abelsohn further stated that Ghassemian's reasonable accommodation case

15  should be re-evaluated. Abelsohn later prepared reports containing false allegations against

16  Ghassemian and again indicated that Ghassemian must be available to work five days per week,

17  notwithstanding Ghassemian's known restrictions. During this time period, Ghassemian also

18  asked how she could file a reasonable accommodation request in light of the fact that CVS's

19  reasonable accommodation/human resources unit refused to allow her to do so.

20      24.    On or about October 3, 2018, Abelsohn came to Ghassemian's store to conduct an

21  audit based upon alleged complaints that Abelsohn refused to show to Ghassemian. On

22  information and belief, Ghassemian believes that Abelsohn made and/or sought false statements

23  from Ghassemian's co-workers and subordinates in order to set Ghassemian up for termination.

24      25.    On or about October 5, 2018, Ghassemian called CVS's reasonable

25  accommodation/human resources unit to again inquire about how to have her request for

26  accommodation approved. She was told that there was no point in opening a request, because

27  Ghassemian was already working a four-day schedule.

28      26.    On or about October 9, 2018, Ghassemian complained to John Seymour in CVS's

HENNIG
RUIZ,
SINGH

1   Advice and Counsel unit about Abelsohn attempting to force Ghassemian to work against her

2   doctor's orders and that Abelsohn was targeting Ghassemian because of her medical condition.

3   On information and belief, CVS did not investigate or respond to this complaint.

4         27.     On or about October 10, 2018, during a meeting between Ghassemian, Abelsohn,

5   and several others, Abelsohn alleged that there were three complaints regarding the pharmacy in

6   the past 60 days, but refused to provide detailed information when requested by Ghassemian. On

7   information and belief, Ghassemian believes that these complaints were false and/or exaggerated.

8   Moreover, such complaints were typically investigated by the Pharmacist-in-Charge – Ms.

9   Ghassemian – as such investigations require knowledge of pharmacology, regulations, and

10  protocol. To Ghassemian's knowledge, such an investigation is typically conducted by a trained

11  pharmacist due to the legal and regulatory issues involved. To the extent that Ghassemian was

12  able to determine the source of the complaints, they had been either resolved, were inaccurately

13  reported, or appeared to be misleading, if not outright fabricated. Ghassemian requested the

14  results of the investigation, and Abelsohn stated that she would email them to Ghassemian by

15  October 12, or October 15, 2018, but failed to do so.

16        28.     On or about October 12, 2018, Ghassemian had to leave work early due to severe

17  migraines. Ghassemian went to her healthcare provider, who diagnosed her with anxiety and

18  stress, and placed Ghassemian off work until October 17, 2018. On this same day, Abelsohn

19  called and texted Ghassemian numerous times, claiming that Abelsohn was supposed to have a

20  meeting with Ghassemian – to Ghassemian's knowledge, no meeting had been scheduled.

21  Ghassemian emailed Abelsohn a copy of her doctor's note placing her off-work. That same day,

22  Ghassemian made a complaint against Abelsohn, outlining Abelsohn's harassment and

23  discrimination against Ghassemian as a result of Ghassemian's disability and requests for

24  accommodation. Also, on this same day, attorneys representing Ghassemian sent correspondence

25  to CVS detailing some of Abelsohn's misconduct and possible legal violations with respect to

26  Ghassemian. Specifically, Ghassemian alleged, among other things, that: (1) Abelsohn interfered

27  with Ghassemian's ability to comply with state and federal law pursuant to Cal. Bus. & Prof.

28  Code § 4330(b); (2) Abelsohn refused to share information with Ghassemian that Ghassemian

HENNIG
RUIZ,
SINGH

needed in order to comply with her duties under Cal. Bus. & Prof. Code § 4125; and (3) CVS

refused to provide Ghassemian a copy of a DEA Form 106, which was necessary to comply with

21 C.F.R. 1301.76(b).

29.     On or about October 16, 2018, CVS sent Ghassemian a letter informing her that

she was being terminated effective October 12, 2018. That same day, Abelsohn called

Ghassemian demanding to know why Ghassemian was not at work. Ghassemian responded that

she had already sent her doctor's note and that she had already been terminated. Ghassemian's

termination letter indicated that Ghassemian's termination was a "level 4" disciplinary action,

termination, meaning that, generally speaking, the employee has been subjected to three prior

levels of disciplinary activity. To Ghassemian's knowledge, Ghassemian had never had a write-

up or negative performance evaluation prior to her termination. On information and belief,

Ghassemian was terminated without any progressive disciplinary action having been taken

against her in violation of CVS's internal policies and practices. Ghassemian is informed and

believes, and on that basis alleges that she was terminated in retaliation for her complaints against

Abelsohn and for her requests for accommodation for a known medical condition or disability.

30.     Following her termination, Ghassemian emailed CVS's human resources unit

regarding her complaints against Abelsohn, her emails never received any substantive response.

31.     As a pharmacist, Ghassemian is a non-exempt employee pursuant to 8 Cal. Code

Regs. § 11040, 1(A)(3)(f). Ghassemian regularly worked more than 8 hours per day while

employed with CVS, but was not paid either a minimum wage or overtime for all of the time she

spent working off the clock. Specifically, Ghassemian was not paid for the time she spent

performing work at home, on her sick days, on days she was on paid time off, etc. For example,

Ghassemian would often receive text messages on her days off about scheduling employees,

which would require that she call that employee and find coverage for his or her shifts.

Ghassemian would also be expected to join for conference call, even if she was off-work and at

home. Ghassemian was expected to and regularly reviewed work emails during her days off.

Ghassemian estimates that this issue took up about three to four hours per week, and continued up

until she was terminated from her employment with CVS. Ghassemian recalls raising this issue

HENNIG
RUIZ,
SINGH

1     with her immediate supervisor Abelsohn on several occasions between March and August 2018,

2     but the matter was not addressed. Ghassemian is informed and believes that her complaints about

3     this matter may have contributed towards CVS's decision to terminate her employment.

4          32.     Ghassemian also regularly had short, late, interrupted, and/or missed altogether

5     meal periods and rest breaks in violation of California law. Ghassemian did not receive all of the

6     requisite premium pay from CVS to compensate her for the missed meal periods and/or rest

7     breaks that occurred. For example, Ghassemian was expected to and regularly answered work

8     phone calls during her half hour lunch, often returned to the pharmacy early to tend to urgent

9     work matters. Ghassemian regularly received texts messages during her meal period and/or

10     breaks from pharmacy technicians, her supervisor(s), etc. Ghassemian recalls that one of her

11     former supervisors often sent her lengthy pages of text messages during her breaks. Ghassemian

12     also was not able to regularly take rest periods because of how busy the store was. Ghassemian

13     estimates that this occurred several times a week, and continued up until she was terminated from

14     her employment with CVS.

15          33.     Ghassemian is informed and believes that her wage statements are inaccurate

16     because they fail to reflect the wages owed for overtime, minimum wage, meal breaks, and rest

17     periods.

18          34.     Ghassemian is also informed and believes that as a result of CVS's failure to pay

19     all wages owed for her overtime and meal and rest period, Ghassemian did not and has not

20     received all wages at the time of her termination.

21          35.     Plaintiff has exhausted her administrative remedies under the California Fair

22     Employment and Housing Act and has received a "Right to Sue" letter. Plaintiff brings this action

23     within one year of the issuance of her Right to Sue letter.

24     ///

25     ///

26     ///

27     ///

28     ///

HENNIG
RUIZ,
SINGH

## FIRST CAUSE OF ACTION

### DISCRIMINATION IN VIOLATION OF FEHA

### CAL. GOV. CODE SECTION 12940(a)

### (Against Defendants CVS Pharmacy, Inc.,

### CVS Rx Services, Inc., and DOES 1 through 10)

36.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in the Complaint, and incorporates them by reference to this cause of action as though fully set forth herein, excepting those allegations that are inconsistent with this cause of action. This cause of action is brought against Defendants CVS, and DOES 1 through 10.

37.     During all relevant time periods, Defendants CVS regularly employed five or more persons, bringing Defendants CVS within the provisions of FEHA.

38.     Plaintiff was employed by Defendants CVS during all applicable times mentioned in this complaint, and was directly supervised by Defendant Jacqueline Abelsohn.

39.     Plaintiff is, and was known by CVS to have a disability and/or medical condition, namely nerve damage known as Complex Regional Pain Syndrome (CRPS). This disability affected Ghassemian's ability to work, and Ghassemian repeatedly communicated to CVS and Abelsohn that she could not work more than 4 days per week per her doctor's orders.

40.     Plaintiff was discriminated against by Defendants on the basis of her disability and/or medical condition in violation of FEHA.

41.     As a result of Defendants' discriminatory acts against Plaintiff on the basis of disability and/or medical condition, Plaintiff suffered adverse employment actions by and through Defendants including, but not limited to: rescission of Ghassemian's ability to work a four-day work schedule, initiating false or exaggerated investigations into Ghassemian's job performance, differential treatment based on her disability, heightened work scrutiny, micro-management, and termination.

42.     Plaintiff's disability and/or medical condition was a substantial motivating reason for Defendants' discrimination against Plaintiff.

43.     Plaintiff was harmed.

10



HENNIG
RUIZ,
SINGH

1    44.    Defendants' discrimination of Plaintiff in violation of FEHA was a substantial

2    factor in causing Plaintiff's harm

3    45.    As a proximate result of Defendant's willful, and knowing and intentional

4    violation(s) of FEHA, Plaintiff has suffered and continues to suffer humiliation, emotional

5    distress, and mental and physical pain and anguish, in a sum according to proof.

6    46.    Plaintiff has adequately exhausted all of her administrative remedies under FEHA

7    and obtained a "right to sue" letter from the Department of Fair Employment and Housing.

8    47.    Plaintiff has incurred and continues to incur legal expenses and attorney fees.

9    Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of

10   court to amend this Complaint when the amounts are more fully known.

11   48.    Plaintiff is informed and believes and thereon alleges that the aforesaid acts

12   directed toward Plaintiff were carried out with a conscious disregard of her right to be free from

13   such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code

14   § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an

15   example of each of the Defendants.

16   WHEREFORE, Plaintiff requests relief as hereafter provided.

17

18   ## SECOND CAUSE OF ACTION

19   ### HARASSMENT IN VIOLATION OF FEHA

20   ### CAL. GOV. CODE SECTION 12940(j)

21   **(Against Defendants CVS Pharmacy, Inc., CVS Rx Services, Inc.,**

22   **Jacqueline Abelsohn, and DOES 11 through 20)**

23   49.    As a separate and distinct cause of action, Plaintiff complains and realleges all the

24   allegations contained in this Complaint, and incorporates them by reference into this cause of

25   action as though fully set forth herein, excepting those allegations that are inconsistent with this

26   cause of action. Plaintiff brings this cause of action against Defendants CVS, and DOES 11

27   through 20.

28   50.    Plaintiff was employed by Defendants CVS during all applicable times mentioned

11

HENNIG
RUIZ,
SINGH

1    in this complaint, and was directly supervised by Defendant Jacqueline Abelsohn.

2          51.    At all applicable times mentioned in this Complaint, Defendants CVS regularly

3    employed five or more persons in California bringing Defendant within the provisions of the

4    California Fair Employment and Housing Act.

5          52.    Plaintiff is informed and believes, and thereon alleges that Defendants willfully

6    and intentionally engaged in a course of conduct designed to harass and humiliate Plaintiff by

7    creating a hostile work environment that Plaintiff did not want and resisted.

8          53.    The harassment included, but was not limited to: rescission of Plaintiff's ability to

9    work a four-day work schedule, initiating false or exaggerated investigations into Plaintiff's job

10   performance, differential treatment based on her disability and/or medical condition, heightened

11   work scrutiny, micro-management, and termination.

12         54.    Plaintiff is, and was known by CVS to have a disability and/or medical condition,

13   namely nerve damage known as Complex regional pain syndrome (CRPS). This disability and/or

14   medical condition affected Ghassemian's ability to work, and Ghassemian repeatedly

15   communicated to CVS and Abelsohn that she could not work more than 4 days per week per her

16   doctor's orders.

17         55.    The conduct of Defendants CVS and Abelsohn, as described herein, was offensive

18   and abusive and based on Plaintiff's disability and/or medical condition. The conduct of

19   Defendant was so severe and/or pervasive that this conduct altered the terms and conditions of

20   Plaintiff's employment.

21         56.    A reasonable person with Plaintiff's disability and/or medical condition would

22   have considered the work environment to be hostile or abusive.

23         57.    Plaintiff considered the work environment to be hostile or abusive.

24         58.    Plaintiff is informed and believes, and thereon alleges that Defendants CVS and

25   Abelsohn knew or should have known about the conduct of Defendants because Plaintiff

26   complained to both Defendants Abelsohn and to Human Resources of CVS. Plaintiff is informed

27   and believes, and thereon alleges that Defendants have failed to take immediate and appropriate

28   corrective action.

HENNIG
RUIZ,
SINGH

12

1   59.    Plaintiff is informed and believes, and thereon alleges that Defendants' conduct

2   was a substantial factor in causing Plaintiff's harm, because Defendants' harassment of Plaintiff

3   based on her disability and/or medical condition resulted in differential treatment, heightened

4   work scrutiny, micromanagement, false investigations, and termination. Defendants knew or

5   should have known about the conduct of Defendants, but failed to take corrective action.

6   60.    As a proximate result of Defendant's willful, and knowing and intentional

7   violation(s) of FEHA, Plaintiff has suffered and continues to suffer humiliation, emotional

8   distress, and mental and physical pain and anguish, in a sum according to proof.

9   61.    Plaintiff has adequately exhausted all of her administrative remedies under FEHA

10  and obtained a "right to sue" letter from the Department of Fair Employment and Housing.

11  62.    Plaintiff has incurred and continues to incur legal expenses and attorney fees.

12  Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of

13  court to amend this Complaint when the amounts are more fully known.

14  63.    Plaintiff is informed and believes and thereon alleges that the aforesaid acts

15  directed toward Plaintiff were carried out with a conscious disregard of her right to be free from

16  such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code

17  § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an

18  example of each of the Defendants.

19  WHEREFORE, Plaintiff requests relief as hereafter provided.

20

21  **THIRD CAUSE OF ACTION**

22  **RETALIATION IN VIOLATION OF FEHA**

23  **CAL. GOV. CODE SECTION 12940(h)**

24  **(Against Defendants CVS Pharmacy, Inc.,**

25  **CVS Rx Services, Inc., and DOES 21 through 30)**

26  64.    As a separate and distinct cause of action, Plaintiff complains and realleges all the

27  allegations contained in this Complaint, and incorporates them by reference into this cause of

28  action as though fully set forth herein, excepting those allegations that are inconsistent with this

13

HENNIG
RUIZ,
SINGH

1  cause of action. Plaintiff brings this cause of action against Defendants CVS, and DOES 11
2  through 20.
3      65.    Plaintiff was employed by Defendants CVS during all applicable times mentioned
4  in this complaint, and was supervised by Abelsohn.
5      66.    At all applicable times mentioned in this Complaint, Defendants CVS regularly
6  employed five or more persons in California bringing Defendant within the provisions of the
7  California Fair Employment and Housing Act.
8      67.    Plaintiff was retaliated against by Defendant for seeking to exercise her protected
9  rights under FEHA. Specifically, Plaintiff sought reasonable accommodation and complained of
10  discrimination and/or differential treatment on the basis of her disability and/or medical
11  condition.
12      68.    Defendants undertook adverse employment actions against Plaintiff including, but
13  not limited to: rescission of Ghassemian's ability to work a four-day work schedule, initiating
14  false or exaggerated investigations into Ghassemian's job performance, differential treatment
15  based on her disability and/or medical condition, heightened work scrutiny, micro-management,
16  and termination.
17      69.    Plaintiff's protected activities, including her good faith complaints of differential
18  treatment and seeking reasonable accommodation, were a substantial motivating reason for
19  Defendants' decision to engage in adverse employment actions against Plaintiff including as
20  described herein.
21      70.    The retaliation included, but was not limited to: rescission of Ghassemian's ability
22  to work a four-day work schedule, initiating false or exaggerated investigations into
23  Ghassemian's job performance, differential treatment based on her disability and/or medical
24  condition, heightened work scrutiny, micro-management, and termination.
25      71.    The conduct of Defendants as alleged above, constituted unlawful retaliation in
26  employment on account of Plaintiff's complaints of discrimination/differential treatment and
27  seeking reasonable accommodation.
28      72.    Plaintiff was harmed.

14

HENNIG
RUIZ,
SINGH

73.     Defendant's retaliation against Plaintiff in violation of FEHA was a substantial factor in causing Plaintiff's harm, because Defendants' actions were based on Plaintiff's protected activity, as described herein, and resulted in differential treatment, false or misleading complaints and/or investigations being brought against Plaintiff, and termination.

74.     As a proximate result of Defendants' willful, knowing and intentional actions against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, in a sum according to proof.

75.     Plaintiff has adequately exhausted all of her administrative remedies under FEHA and obtained a "right to sue" letter from the Department of Fair Employment and Housing.

76.     Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees, and prays leave of court to amend this Complaint when the amounts are more fully known.

77.     Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each of the Defendants.

WHEREFORE, Plaintiff requests relief as hereafter provided.


## FOURTH CAUSE OF ACTION

### FAILURE TO TAKE ALL STEPS NECESSARY TO STOP DISCRIMINATION, HARASSMENT, AND RETALIATION IN VIOLATION OF FEHA CALIFORNIA GOVERNMENT CODE SECTION 12940(k)

**(Against Defendants CVS Pharmacy, Inc.,**

**CVS Rx Services, Inc., and DOES 31 through 40)**

78.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this Complaint, and incorporate them by reference into this cause of action as though fully set forth herein, excepting those allegations that are inconsistent with this

15

HENNIG
RUIZ,
SINGH

cause of action. Plaintiff brings this cause of action against Defendants CVS and DOES 31 through 40.

79. During all relevant time periods, Defendants CVS regularly employed five or more persons, bringing Defendant within the provisions of FEHA.

80. Defendants CVS, and DOES 21 through 30 failed to take all steps necessary to prevent discrimination, harassment, and/or retaliation from occurring in violation of California Government Code section 12940(k). Defendants failed to take immediate and appropriate corrective action to end discrimination, harassment and/or retaliation.

81. As a result, Plaintiff was subjected to discriminatory and retaliatory conduct in violation of FEHA as described herein.

82. The conduct included, but was not limited to: rescission of Ghassemian's ability to work a four-day work schedule, initiating false or exaggerated investigations into Ghassemian's job performance, differential treatment based on her disability and/or medical condition, heightened work scrutiny, micro-management, and termination.

83. Plaintiff was harmed.

84. Defendants' failure to take reasonable steps to prevent the discrimination, harassment, and/or retaliation of Plaintiff was a substantial factor in causing Plaintiff's harm. Plaintiff is informed and believes, and thereon alleges that Defendants CVS has failed to take immediate and appropriate corrective action despite Plaintiff's various complaints that the actions were being taken against Plaintiff based on her disability, medical condition, and/or her complaints as alleged herein.

85. As a proximate result of Defendants' willful, knowing, and intentional actions against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, in sum according to proof.

86. Plaintiff has adequately exhausted all of her administrative remedies under FEHA and obtained a "right to sue" letter from the Department of Fair Employment and Housing.

87. Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of the expenses and fees and prays leave of

16

HENNIG
RUIZ,
SINGH

1    court to amend this Complaint when the amounts are more fully known.

2        88.    Plaintiff is informed and believes and thereon alleges that the aforesaid acts

3    directed toward Plaintiff were carried out with a conscious disregard of her right to be free from

4    such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code

5    § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an

6    example of each of the Defendants.

7        WHEREFORE, Plaintiff requests relief as hereafter provided.

8

9                        **FIFTH CAUSE OF ACTION**

10   **FAILURE TO ENGAGE IN A TIMELY GOOD-FAITH INTERACTICE PROCESS**

11        **IN VIOLATION OF FEHA, CAL. GOV. CODE § 12940**

12                **(Against Defendants CVS Pharmacy, Inc.,**

13            **CVS Rx Services, Inc., and DOES 41 through 50)**

14       89.    As a separate and distinct cause of action, Plaintiff complains and realleges all the

15   allegations contained in her Complaint, and incorporates them by reference into this cause of

16   action as though fully set forth herein, excepting those allegations that are inconsistent with this

17   cause of action. This action is brought against Defendants CVS, and DOES 41 through 50.

18       90.    At all applicable times mentioned in her Complaint, Defendants CVS regularly

19   employed five or more persons in California bringing Defendant subject to the provisions of

20   FEHA.

21       91.    At the time of the events described herein, Plaintiff was an employee of

22   Defendants CVS.

23       92.    Plaintiff had at least one disability and/or medical condition including, but not

24   limited to Complex Regional Pain Syndrome (CRPS), that affected her major life activities

25   including, but not limited to her ability to work.

26       93.    Plaintiff's disability status and/or medical condition was made known to

27   Defendants by Plaintiff, at minimum, when Ghassemian told Abelsohn that she had a doctor's

28   restriction that she could work no more than four days per week.

HENNIG
RUIZ,
SINGH

94.     Plaintiff requested reasonable accommodations from Defendants CVS for her disability and/or condition such that Plaintiff would be able to perform the essential job requirements of her job.

95.     Plaintiff was willing to participate in a good-faith interactive process to determine whether reasonable accommodations could be made so that she would be able to perform the essential job requirements.

96.     Defendants failed to participate in a timely, good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made in violation of Government Code Section 12940(n).

97.     Plaintiff was harmed.

98.     Defendants' failure to participate in a good-faith interactive process was a substantial factor in causing harm to Plaintiff.

99.     As a proximate result of Defendants' willful, knowing and intentional violation(s) of FEHA, Plaintiff has sustained and continues to sustain losses in earnings and other employment benefits.

100.     As a proximate result of Defendants' willful, knowing and intentional actions against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, in a sum according to proof.

101.     Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees, and prays leave of court to amend the Complaint when the amounts are more fully known.

102.     Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each of the Defendants.

WHEREFORE, Plaintiff requests relief as hereafter provided.

HENNIG
RUIZ,
SINGH

# SIXTH CAUSE OF ACTION

## FAILURE TO PROVIDE REAONSABLE ACCOMMODATION

## IN VIOLATION OF FEHA, CAL. GOV. CODE § 12940(m)

### (Against Defendants CVS Pharmacy, Inc.,

### CVS Rx Services, Inc., and DOES 51 through 60)

103.    As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in the Complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations that are inconsistent with this cause of action.  This cause of action is brought against Defendants CVS and DOES 51 through 60.

104.    At all applicable times mentioned in the Complaint, Defendants CVS regularly employed five or more persons in California bringing Defendant subject to the provisions of FEHA.

105.    At the time of the events described herein, Plaintiff was an employee of Defendants CVS.

106.    Plaintiff had at least one disability and/or medical condition including, but not limited, to Complex regional pain syndrome (CRPS), that limited her major life activities including, but not limited, to her ability to work.

107.    Plaintiff's disability status and/or medical condition was made known to Defendants by Plaintiff, at minimum, when Ghassemian told Abelsohn that she had a doctor's restriction that she could work no more than four days per week.

108.    Plaintiff was able to perform the essential functions of her job with reasonable accommodation for her medical condition and/or disability.

109.    Defendants failed to provide reasonable accommodation for the known disability and/or medical condition of Plaintiff in violation of Government Code Section 12940(m).  In particular, Plaintiff requested to continue to work a four-day work schedule, but was denied the ability to do so by Abelsohn who repeatedly demanded that Ghassemian work a five-day schedule. CVS further failed to accommodate Ghassemian by refusing to consider the

19

accommodation of allowing Ghassemian to formally work a four-day work schedule. CVS made no effort to offer a counter proposal or alternate reasonable accommodation or to properly engage in the interactive process.

110.    Plaintiff Ghassemian was harmed.

111.    Defendants' failure to provide a reasonable accommodation was a substantial factor in causing harm to Plaintiff Ghassemian.

112.    As a proximate result of Defendants' willful, knowing and intentional violation(s) of FEHA, Plaintiff has sustained and continues to sustain losses in earnings and other employment benefits.

113.    As a proximate result of Defendants' willful, knowing and intentional actions against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental pain and anguish, in a sum according to proof.

114.    Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees, and prays leave of court to amend the Complaint when the amounts are more fully known.

115.    Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each of the Defendants.

WHEREFORE, Plaintiff requests relief as hereafter provided.


## SEVENTH CAUSE OF ACTION

### FAILURE TO PROVIDE MEAL AND REST BREAKS

### LABOR CODE SECTIONS 226.7 AND 512

### (Against Defendants CVS Pharmacy Inc., CVS Rx Services, Inc.,

### and DOES 61 through 70)

116.    As a separate and distinct cause of action, Plaintiff complains and realleges all the

20

allegations contained in the Complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations that are inconsistent with this cause of action. This cause of action is brought against Defendants CVS and DOES 61 through 70.

117. During all relevant times, Plaintiff was an employee of Defendants CVS.

118. Cal. Lab. Code § 512 provides that each employee is entitled to appropriate meal and rest breaks for any and all work days of more than four hours in duration.

119. Defendants violated or caused to be violated Cal. Lab. Code § 512 by requiring Plaintiff to work and not relieving Plaintiff of work for at least thirty minutes in each work day lasting more than five hours. Defendant also violated these provisions by failing to provide a rest break of not less than ten (10) minutes for each four hours of work or major fraction thereof.

120. Accordingly, Defendant is liable to Plaintiff for premium pay as defined by Cal. Lab. Code § 226.7 of one hour of wages for each meal or rest break violation for each work day. Plaintiff is also entitled to waiting time penalties pursuant to Cal. Lab. Code § 203.

121. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

122. Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees, and prays leave of court to amend the Complaint when the amounts are more fully known.

123. Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each of the Defendants.

WHEREFORE, Plaintiff requests relief as hereafter provided.

///

///

HENNIG
RUIZ,
SINGH

## EIGHTH CAUSE OF ACTION

## FAILURE TO PAY EARNED WAGES,

## INCLUDING OVERTIME AND MINIMUM WAGE

## LABOR CODE SECTIONS 510 AND 1194

**(Against Defendants CVS Pharmacy Inc.,**

**CVS Rx Services, Inc., and DOES 71 through 80)**

124. As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in the Complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations that are inconsistent with this cause of action. This cause of action is brought against Defendants CVS and DOES 71 through 80.

125. During all relevant times, Plaintiff was an employee of Defendants CVS.

126. Defendants failed to pay Plaintiff as an hourly worker a minimum wage for all hours worked. Cal. Lab. Code § 1194 entitles Plaintiff to recover unpaid minimum wages. Cal. Lab. Code § 1194.2 also entitles Plaintiff to recover liquidated damages in an equal amount. Defendants failed to pay for all hours suffered and permitted to work.

127. Defendants also failed to pay overtime wages to Plaintiff. Cal. Lab. Code §§ 510 and 1198, et seq., provide that (a) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight hours, up to twelve hours, in a workday, or in excess of forty hours in a work week, and (b) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of twelve hours in a workday, and in excess of eight hours on the seventh consecutive day of work in a workweek. Cal. Lab. Code § 1198 provides a private right of action for failure to pay legal compensation for all overtime hours worked.

128. This cause of action is brought pursuant to Cal. Lab. Code § 200 et seq., which provides that employees are entitled to wages and compensation for work performed, and provides a private right of action for failure to pay wages and compensation for said work performed. Cal. Lab. Code § 1194 entitles a plaintiff to recover unpaid wages.

HENNIG
RUIZ,
SINGH

1    129.   Such a pattern, practice and uniform administration of corporate policy regarding

2    illegal employee compensation as described herein is unlawful and creates an entitlement to

3    recovery by Plaintiff in a civil action, for the unpaid balance of the full amount of compensation

4    owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit

5    according to the mandate of Cal. Lab. Code §1194, et seq.

6    130.   Accordingly, Defendant is liable to Plaintiff for overtime pay as defined by Cal.

7    Lab. Code §§ 510 and 1198 of (1) one and one-half times her regular rate of pay for all hours

8    worked in excess of eight hours, up to twelve hours, in a workday, or in excess of forty hours in a

9    work week and (2) compensation at the rate of twice her regular rate of pay for all hours worked

10   in excess of twelve hours in a workday, and in excess of eight hours on the seventh consecutive

11   day of work in a workweek. Plaintiff is also entitled to waiting time penalties pursuant to Cal.

12   Lab. Code § 203.

13   131.   As an actual and proximate result of the aforementioned violations, Plaintiff has

14   been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of

15   this Court.

16   132.   Plaintiff has incurred and continues to incur legal expenses and attorney fees.

17   Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of

18   the court to amend this complaint when the amounts are more fully known.

19   133.   Plaintiff is informed and believes and thereon alleges that the aforesaid acts

20   directed toward Plaintiff were carried out with a conscious disregard of her right to be free from

21   such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code

22   § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an

23   example of each of the Defendants.

24          WHEREFORE, Plaintiff requests relief as hereafter provided.

25   ///

26   ///

27   ///

28   ///

HENNIG
RUIZ.
SINGH

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR A JURY TRIAL

# NINTH CAUSE OF ACTION

## FAILURE TO PROVIDE ACCURATE ITEMIZED STATEMENT

## LABOR CODE SECTION 226(a)

### (Against Defendants CVS Pharmacy Inc.,

### CVS Rx Services, Inc., and DOES 81 through 90)

134. As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in the Complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations that are inconsistent with this cause of action. This cause of action is brought against Defendants CVS and DOES 81 through 90.

135. During all relevant times, Plaintiff was an employee of Defendants CVS.

136. Cal. Lab. Code § 226(a) requires an employer to provide with each wage payment an itemized statement that gives specific and accurate information for each pay period.

137. For a significant period, spanning the entire length of each Plaintiff's employment with Defendant, overtime pay, minimum wage, meal and rest breaks have not been paid, and therefore are inaccurately reported on wage statements. As a result, the itemized wage statements provided were not accurate and indeed false and misleading.

138. Plaintiff is therefore entitled to recover monetary damages as stated in Cal. Lab. Code § 226(e) as well as injunctive relief as provided in Cal. Lab. Code § 226(g).

139. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

140. Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

141. Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code

24

HENNIG
RUIZ,
SINGH

§ 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each of the Defendants.

WHEREFORE, Plaintiff requests relief as hereafter provided.

## TENTH CAUSE OF ACTION
### WAITING TIME PENALTIES
### LABOR CODE SECTIONS 201 THROUGH 203
### (Against Defendants CVS Pharmacy Inc.,
### CVS Rx Services, Inc., and DOES 91 through 100)

142. As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in the Complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations that are inconsistent with this cause of action. This cause of action is brought against Defendants CVS and DOES 91 through 100.

143. During all relevant times, Plaintiff was an employee of Defendants CVS.

144. Cal. Lab. Code § 201 requires an employer who discharges an employee to pay compensation due and owing to said employee immediately upon discharge.

145. Cal. Lab. Code § 203 provides that an employer who willfully fails to pay compensation promptly upon discharge or resignation, as required under Cal. Lab. Code §§ 201 and 202, is liable for waiting time penalties in the form of continued compensation of up to thirty (30) work days.

146. Defendant willfully failed and refused, and continues willfully to fail and refuse, to pay promptly all compensation and wages owed including unpaid wages, including overtime, minimum wage, meal and rest breaks, to Plaintiff whose employment terminated, as required by Cal. Lab. Code § 201. As a result, Defendant is liable to Plaintiff for waiting time penalties, together with interest thereon and attorneys' fees and costs, under Cal. Lab. Code § 203.

147. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of

25

HENNIG
RUIZ,
SINGH

1  this Court.

2      148.    Plaintiff has incurred and continues to incur legal expenses and attorney fees.

3  Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of

4  the court to amend this complaint when the amounts are more fully known.

5      149.    Plaintiff is informed and believes and thereon alleges that the aforesaid acts

6  directed toward Plaintiff were carried out with a conscious disregard of her right to be free from

7  such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code

8  § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an

9  example of each of the Defendants.

10      WHEREFORE, Plaintiff requests relief as hereafter provided.

11

12                          **ELEVENTH CAUSE OF ACTION**

13                          **RETALIATION IN VIOLATION OF**

14                          **LABOR CODE SECTION 1102.5**

15                  **(Against Defendants CVS, and DOES 101 through 110)**

16      150.    As a separate and distinct cause of action, Plaintiff complains and realleges all the

17  allegations contained in the Complaint, and incorporates them by reference into this cause of

18  action as though fully set forth herein, excepting those allegations that are inconsistent with this

19  cause of action.  This cause of action is brought against Defendants CVS and DOES 101 through

20  110.

21      151.    During all relevant times, Plaintiff was an employee of Defendants CVS.

22      152.    During her employment, Plaintiff engaged in protected activity subject to the

23  protection of Cal. Lab. Code § 1102.5(b) by disclosing information to a person with authority

24  over the employee or to another employee who has the authority to investigate, discover, or

25  correct the violation or noncompliance, where Plaintiff had reasonable cause to believe that the

26  information disclosed involved a violation of state or federal statutes.

27      153.    Plaintiff had disclosed her reasonable belief that Defendants CVS were: (1)

28  violating FEHA with respects to her disability and protected complaints, (2) failing to pay all

26

HENNIG
RUIZ,
SINGH

wages for her overtime, minimum wage, meal and rest periods, (3) failing to adhere to Cal. Bus. & Prof. Code §§ 4125, 4330(b) and 21 C.F.R. 1301.76(b), among other state and/or federal statutes. Defendants retaliated against Plaintiff by terminating her employment in violation of FEHA, the Labor Code, and Cal. Bus. & Prof. Code.

154.    As a result of the protected activity described herein, Plaintiff was subjected to retaliation by Defendants. This retaliation was with knowledge of Plaintiff's protected activity since his protected activity was within the company and communicated to Defendants.

155.    Defendants' violation of Cal. Lab. Code § 1102.5 was a substantial factor in causing Plaintiff's injury.

156.    As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. As a proximate result of the retaliation against Plaintiff by Defendants in violation of Cal. Lab. Code § 1102.5, Plaintiff has suffered general damages and special damages of wage loss.

157.    Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

158.    Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each of the Defendants.

WHEREFORE, Plaintiff requests relief as hereafter provided.

///

///

///

///

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR A JURY TRIAL

# TWELFTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF

## LABOR CODE SECTION 98.6

### (Against Defendants CVS, and DOES 111 through 120)

159. As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in the Complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations that are inconsistent with this cause of action. This cause of action is brought against Defendants CVS and DOES 111 through 120.

160. During all relevant times, Cal. Lab. Code § 98.6 was in effect and binding upon Defendants. Cal. Lab. Code § 98.6 prohibits any person from retaliating, discriminating, or taking any other adverse action against an employee for, among other activities, making a written or oral complaint that she is owed unpaid wages, or exercising on behalf of herself or others any rights afforded to him under the Labor Code.

161. During employment, Plaintiff has complained to her immediate supervisors that she was not paid overtime and/or a minimum wage for all of the time she spent working off the clock. Specifically, Ghassemian was not paid for the time she spent performing work at home, on her sick days, on days she was on paid time off, etc. For example, Ghassemian would often receive text messages on her days off about scheduling employees, which would require that she call that employee and find coverage for his or her shifts. Ghassemian would also be expected to join for conference call, even if she was off-work and at home. Ghassemian was expected to and regularly reviewed work emails during her days off. Ghassemian estimates that this issue took up about three to four hours per week, and continued up until she was terminated from her employment with CVS.

162. During his employment, Plaintiff also engaged in protected activity subject to the protection of Cal. Lab. Code § 1102.5(b) by disclosing information to a person with authority over the employee or to another employee who has the authority to investigate, discover, or correct the violation or noncompliance, where Plaintiff had reasonable cause to believe that the

28

HENNIG
RUIZ,
SINGH

information disclosed involved a violation of state or federal statutes, or a violation or noncompliance with a local, state, or federal rule or regulation.

163. Plaintiff had disclosed her reasonable belief that Defendants CVS were: (1) violating FEHA with respects to her disability and protected complaints, (2) failing to pay all wages for her overtime and meal and rest periods, (3) failing to adhere to Cal. Bus. & Prof. Code §§ 4125, 4330(b) and 21 C.F.R. 1301.76(b), among other state and/or federal statutes. Defendants retaliated against Plaintiff by terminating her employment in violation of FEHA, the Labor Code, and Cal. Bus. & Prof. Code.

164. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

165. Defendants' violation of Cal. Lab. Code § 98.6 was a substantial motivating factor in causing Plaintiff's injury.

166. Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

167. Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each of the Defendants.

WHEREFORE, Plaintiff requests relief as hereafter provided.

///
///
///
///
///
///

HENNIG
RUIZ,
SINGH

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against all Defendants, jointly and severally, as to her First through Twelfth Causes of Action, as follows:

1.  For restitution of all monies due Plaintiff including back pay, front pay, lost employment benefits and other compensation, and other special damages according to proof;

2.  For general damages to compensate Plaintiff for her past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

3.  For all applicable injunctive relief as allowed by law;

4.  For punitive damages as to the individual Defendants, allowed by law;

5.  For all applicable civil penalties as allowed by law;

6.  For an award of interest, including prejudgment interest, at the legal rate;

7.  For costs of suit incurred;

8.  For an award of attorney fees as allowed by law; and

9.  For such other and further relief as this Court deems appropriate.


Dated: August 7, 2019                    HENNIG RUIZ & SINGH, P.C.


_____
Rob Hennig
Brandon Ruiz
Dat Tommy Phan
Attorneys for Plaintiff PARVIN GHASSEMIAN

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR A JURY TRIAL

HENNIG
RUIZ,
SINGH

# DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this matter.

Dated: August 7, 2019                    HENNIG RUIZ & SINGH, P.C.

_____

Rob Hennig
Brandon Ruiz
Dat Tommy Phan

Attorneys for Plaintiff PARVIN GHASSEMIAN

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR A JURY TRIAL

HENNIG
RUIZ,
SINGH

# Exhibit B

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
*Sevag Chalian et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:16-cv-08979 (C.D. Cal.)
*Sigfredo Cabrera et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:20-cv-02401 (C.D. Cal.)

## NOTICE OF CLASS ACTION SETTLEMENT AND RELEASE OF CLAIMS



ᵘ|ₗₗIIIIₗₗ|ₐ|ₐ|ₐₗₗₙₙₐ|ₐₗₗₐₗₗₙₐₐ|ₐₗ|ₐₗ|ₐₐₗ|IIIIₗ|ₐₗ|ₐₐₗ|Iₗ

PARVIN GHASSEMIAN
24551 DEL PRADO UNIT 206
DANA POINT, CA 92629-6210

### PLEASE READ THIS COURT-APPROVED NOTICE CAREFULLY.
### IT INFORMS YOU ABOUT YOUR LEGAL RIGHTS.

### BASIC INFORMATION

#### 1. What is the purpose of this notice?

The purpose of this notice is to inform you of your rights and options **and the deadlines to exercise them** under a class action and California Private Attorneys General Act of 2004 ("PAGA") settlement in the lawsuits identified above, which the parties reached after two full days of mediation before David A. Lowe, Esq., and which the United States District Court for the Central District of California (Birotte, J.) has provisionally certified for purposes of settlement. The Court still must decide whether finally to approve the settlement. Settlement payments will only be made if the Court finally approves the settlement and after any appeals are resolved.

#### 2. Why am I receiving this notice?

You are receiving this notice because CVS records show you were employed: (a) as an hourly, non-exempt Pharmacist in a CVS retail pharmacy located in Region 65 or 72 in the State of California between July 20, 2012 and the present and you did not sign an arbitration agreement or previously release and/or adjudicate certain wage and hour claims; or (b) as an hourly, non-exempt employee in a CVS retail pharmacy in the State of California between August 3, 2014 and the present, who has not previously released and/or already adjudicated certain wage and hour claims. Based on this information, you are believed to be a provisional Settlement Class Member in the consolidated cases captioned *Sevag Chalian et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:16-cv-08979, and *Sigfredo Cabrera et al. v. CVS Pharmacy, Inc. et al.*, Case No. 2:20-cv-02401 (together, the "Lawsuits").

### THE SETTLEMENT BENEFITS - WHAT YOU GET

#### 3. What does the settlement provide?

CVS has agreed to pay a total amount not to exceed $9,750,000.00 to settle the claims asserted in the Lawsuits. This includes payments for attorneys' fees and costs, enhancement payments to the named Plaintiffs, payment of amounts under PAGA allocated to the State of California, and the cost of administering the settlement, as summarized below. If the Court finally approves the settlement, all Settlement Class Members will receive a settlement check representing an allocated portion of the PAGA settlement and all Settlement Class Members who do not opt out in accordance with the procedure described below will be mailed an additional settlement check and deemed to have released all claims that were pled in the Lawsuits or that could have been pled in the Lawsuits in accordance with the settlement agreement.

#### 4. How much will my payment be?

Each Settlement Class Member will receive a share of the settlement based on his or her dates of employment and pay rate (See Section B(1)-(2) below for payment formula.) Based on the settlement terms, you should expect to receive approximately $894.64 based on 219.00 weeks that you worked for CVS during the class period, less applicable withholdings. If you wish to challenge the information set forth above, then you must submit a written, signed dispute challenging the information along with supporting documents, to the Settlement Administrator at *Cabrera v. CVS Pharmacy*, P.O. Box 26170, Santa Ana, CA 92799, Phone: (833) 200-8581 no later than November 6, 2020.



As noted above, the Court has preliminarily approved the settlement as fair and reasonable. If the Court finally approves the settlement and it is not reversed by an appellate court, individuals who receive this notice will receive a settlement check representing an allocated portion of the PAGA settlement and all Settlement Class Members who do not opt out of the class will be eligible to receive an additional check for their settlement shares. (See Summary of Settlement Terms, section B, below, for the payment formula.)

## LAWSUIT BACKGROUND

On July 20, 2016, Plaintiff Sevag Chalian filed a complaint in the Los Angeles County Superior Court entitled *Sevag Chalian v. CVS Pharmacy, Inc., et al.*, case number BC627757, on behalf of himself and a proposed class of allegedly similarly situated pharmacists. The complaint originally alleged claims for: (1) failure to pay all wages due (Cal. Labor Code § 1194), (2) failure to pay overtime compensation allegedly due (Cal. Labor Code § 1194), (3) failure to provide accurate itemized statements (Cal. Labor Code § 226), (4) waiting time penalties (Cal. Labor Code §§ 201-203), and (5) unfair business practices (Cal. Business and Professions Code §§ 17200 *et seq.*). On December 5, 2016, CVS removed the case to the United States District Court for the Central District of California. On September 5, 2017, the complaint was amended to name Tamara Aleksandryan as a plaintiff on behalf of herself and the proposed class. On October 17, 2017, the Court ordered Ms. Aleksandryan to proceed with her claims on an individual basis in arbitration.

On August 3, 2017, Plaintiff Sigfredo Cabrera filed a complaint in the Alameda County Superior Court entitled *Sigfredo Cabrera v. CVS Rx Services, Inc. et al.*, case number RG 17870184, on behalf of himself and a proposed class of allegedly similarly situated individuals. The complaint alleged claims for: (1) failure to pay minimum wages and overtime compensation (Cal. Labor Code §§ 204, 510, 1194, 1197, 1197.1, and 1198), (2) failure to provide legally compliant meal periods or compensation in lieu thereof (Cal. Labor Code §§ 226.7 and 512), (3) failure to provide legally compliant rest periods or compensation in lieu thereof (Cal. Labor Code § 226.7), (4) failure to pay wages owed (Cal. Labor Code §§ 201, 202, and 203), (5) failure to furnish accurate itemized wage statements (Cal. Labor Code § 226), (6) failure to maintain accurate records (Cal. Labor Code §§ 226(a) and 1174), (7) failure to reimburse for necessary work expenses (Cal. Labor Code §§ 2800 and 2802), and (8) unfair business practices (Cal. Business and Professions Code §§ 17200 *et seq.*). On September 5, 2017, the complaint was amended to name Enko Telahun as a named plaintiff on behalf of himself and the proposed class and to add a claim under the: (9) Private Attorneys General Act of 2004 (Cal. Labor Code § 2698 *et seq.*). On October 9, 2017, CVS removed the case to the United States District Court for the Northern District of California. On March 19, 2018, the complaint was amended to add Christine McNeely as a named plaintiff on behalf of herself and the proposed class in the place of Sigfredo Cabrera and Enko Telahun as to Counts 1-8. On August 3, 2018, a draft amended complaint adding Patrick Brennan as a named plaintiff on behalf of himself and the proposed class with respect to Counts 1-8 was circulated. The draft amended complaint added claims under Labor Code Sections 558 and 226.3, and incorporated by reference class member Lynn Brickman's June 28, 2018 letter to the California Department of Labor and Workforce Development Agency ("LWDA").

On September 25, 2018, the court granted summary judgment in CVS's favor on Mr. Cabrera's and Mr. Telahun's Count 9 under the Private Attorneys General Act of 2004. On January 2, 2019, at the request of Messrs. Cabrera and Telahun, the court entered partial judgment in CVS's favor, and on January 9, 2019, Mr. Cabrera and Mr. Telahun appealed that judgment to the Ninth Circuit Court of Appeals. Meanwhile, by letter dated March 7, 2019, class member May Eldanaf informed the LWDA of her intent to pursue claims to recover all wages and associated penalties owed to her and other aggrieved pharmacy employees under all Labor Code sections which permit the recovery of unpaid wages and penalties.

All parties subsequently agreed to mediate the disputes in accordance with certain court orders. On July 29, 2020, the parties attended a mediation before David A. Lowe, Esq. of the law firm Rudy, Exelrod, Zieff & Lowe, L.L.P. in San Francisco, California. The parties did not reach an agreement and, on November 11, 2019, held a second day of mediation before David A. Lowe, Esq., at which the parties reached a fair and reasonable settlement of their disputes.

By order dated March 5, 2020, pursuant to the agreement of the parties, the Ninth Circuit dismissed the Cabrera appeal without prejudice and, on March 10, 2020, the United States District Court for the Northern District of California transferred the case to the United States District Court for the Central District of California so the case could be joined with the first-filed *Chalian* case and the claims could be resolved together per the terms of the settlement agreement. On July 1, 2020, the United States District Court for the Central District of California (Birotte, J.) consolidated the *Chalian* and *Cabrera* actions and designated the *Chalian* action as the lead case and approved the filing of an amended, consolidated complaint.

CVS contends the claims in these Lawsuits are without merit and disputes all claims for damages and other relief. CVS also contends that many of the potential Class Members have agreed to individual arbitration of any potential claims precluding those persons from claims in these consolidated lawsuits. No court has ruled fully on the merits of the Lawsuits. Plaintiffs have vigorously prosecuted these and related cases, and CVS has vigorously defended the cases. The Parties have engaged in discovery, both formal and informal, to assess the relative merits of the various alleged claims and CVS's defenses to those claims. Plaintiffs' attorneys have extensively litigated this matter, interviewed numerous potential settlement class members, reviewed extensive documents and data produced by CVS, and filed, opposed, and argued motions.



The Class Representatives and Class Counsel support this settlement. Class Counsel believe further proceedings in these cases, including a trial and multiple potential appeals, would be very expensive and protracted. There is a real risk class certification could be denied in whole or in part and that the Court may find that the PAGA claims are not manageable. There is also a prevalence of legal issues, including but not limited to the fact that many Settlement Class Members are subject to collective bargaining agreements, individual arbitration agreements, and individual res judicata arguments, that render the prospect of any class-wide relief such as achieved here difficult to obtain, and Defendants claim unlikely. No one can predict how the various legal questions at issue, including the amount of damages, would ultimately be resolved. Therefore, upon careful consideration of all facts and circumstances of these cases, Class Counsel believe the proposed settlement is fair, reasonable and adequate.

## SUMMARY OF THE PROPOSED SETTLEMENT

A.  There are two settlement classes:

1.  "Pharmacist Settlement Class" means hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and the date of the Preliminary Approval Order, whose claims are not subject to arbitration and which have not previously been released and/or adjudicated, and whose LEARNet and/or Siteminder data indicates activity when time punch records do not show he or she was clocked-in.

2.  "Retail Pharmacy Settlement Class" means persons, other than those in the Pharmacist Settlement Class, who held certain hourly, nonexempt positions in a CVS retail pharmacy in the State of California between August 3, 2014 and the date of the Preliminary Approval Order who have not previously released and/or adjudicated the Released Claims.

B.  Settlement Formula:

1.  Each Settlement Class Member will be entitled to a payment based on a payment ratio that considers the total number of weeks he or she worked and his or her weekly pay rate. If a Settlement Class Member was employed for only part of a workweek, he or she will be credited for purposes of this Settlement with a fraction of the workweek, rounded up or down to the nearest two-digit decimal and based upon a five-day work week.

2.  Each Settlement Class Member's share shall be determined by multiplying the Member's number of qualifying workweeks by the Member's weekly pay rate (i.e., the individual's rate of pay for a week, which is his or her hourly rate of pay multiplied by 40 hours) during the applicable class period. This number will then be divided by the total number of workweeks worked by all Settlement Class Members multiplied by the total amount of weekly rates for all Settlement Class Members (i.e., sum of all Settlement Class Members' weekly rates) during the applicable class period. To the extent an individual is a Class Member in both classes, he or she shall be eligible to receive whichever class settlement payment is larger.

C.  Class Representatives: The Court has approved Named Plaintiffs Sevag Chalian and Patrick Brennan as Class Representatives for the Pharmacist Settlement Class and Named Plaintiff Christine McNeely as the Class Representative for the Retail Pharmacy Settlement Class. The Class Representatives will apply to the Court for service awards and will be eligible for such amounts as the Court determines to be fair and reasonable. The parties' agreement proposes a payment of no more than $43,000 total for service awards to the Class Representatives and three other named plaintiffs. Class Counsel considers this amount to be fair, reasonable and adequate given the time the Class Representatives and the other named plaintiffs expended and their agreement to release all claims against CVS.

D.  Attorneys' Fees and Costs: Plaintiffs' attorneys' fees request shall not exceed 30% of the settlement amount, or $2,925,000.00. In addition, Class Counsel will seek to be reimbursed for all costs and expenses incurred by them in prosecuting the Lawsuits, in an amount not to exceed $50,000.00.

E.  Costs of Settlement Administration: Class Counsel will seek costs of settlement administration not to exceed $75,000 to be paid from the Settlement Amount to the third-party settlement administrator.

F.  PAGA Payment: The parties have designated $75,000 of the settlement amount as payment for civil penalties under the California Labor Code Private Attorneys General Act of 2004. Seventy-five percent of that amount – by law – will be provided to the State of California and 25% will go to Class Members.



# EFFECT OF THE SETTLEMENT

Each Settlement Class Member who does not opt out will release and forever discharge CVS from all claims, causes of action, and legal theories of relief that were alleged or that could have been alleged or otherwise raised in the Lawsuits, from August 3, 2014 until the date of the Preliminary Approval Order for Retail Pharmacy Settlement Class members and from July 20, 2012 until the date of the Preliminary Approval Order for Pharmacist Class members (the "Released Claims"). The Released Claims include, but are not limited to: (a) failure to pay minimum wages; (b) failure to pay overtime wages; (c) failure to pay all wages or amounts due under the Labor Code and/or federal Fair Labor Standards Act; (d) failure to comply with Labor Code Sections 850, 851, 851.5, 852 and/or 29 U.S.C. § 201 et seq.; (e) failure to provide proper meal periods, or premium pay for non-compliant meal periods; (f) failure to authorize and permit rest periods, or premium pay for non-compliant rest periods; (g) failure to provide complete, accurate, and/or properly formatted wage statements; (h) failure to reimburse all necessary business expenses; (i) failure to timely pay wages due or final wages due; (j) all claims under PAGA that were or could have been asserted based on the facts, claims, causes of action or legal theories described above or on any of the claims, causes of action, facts or legal theories of relief pleaded in the Lawsuits; and (k) all damages, penalties, including penalties under Labor Code Sections 203 and 558, interest, costs (including attorney's fees) and other amounts recoverable under said claims or causes of action as to the facts and/or legal theories alleged or which could have been alleged in the Lawsuits. This release shall not apply to claims for workers' compensation benefits, unemployment insurance benefits, or any other claim or right that as a matter of law cannot be waived or released.

By its terms, this release includes claims in other active litigation pending against CVS, including *Hyams v. CVS Health Corporation*, No. 4:18-cv-06278-HSG in the Northern District of California and *Assar v. Longs Drug Stores California, LLC*, No. 2:19-cv-02086-KJM-KJN in the Eastern District of California. Your legal rights with respect to any overlapping actions/claims will be impacted and/or waived if you participate in this Settlement.

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| **DO NOTHING TO PARTICIPATE IN THE SETTLEMENT AND RECEIVE A PAYMENT** | If you wish to settle your claims and receive a payment, you do not have to do anything at this time. If the settlement is finally approved by the Court, you will receive a check in the mail. |
| **OPT OUT** | By opting out of the settlement, you give up any right to receive a payment from this settlement for the non-PAGA portion. You will keep any rights to sue CVS on the same legal claims asserted in the Lawsuits other than those made pursuant to PAGA, provided you do so within the applicable statute of limitations. If you are subject to an arbitration agreement, you may also be required to litigate any such potential claims in arbitration and not in a State or Federal court. |
| **OBJECT** | You may write to the Court about why you do not like the class action settlement. |

## HOW YOU GET A PAYMENT

### 5. How can I get my payment?

If you wish to receive a settlement payment from the settlement fund, you do not need to do anything at this time. If the settlement is finally approved by the Court, you will receive a check in the mail.

### 6. When will I get my settlement payment?

The Court will hold a final approval/fairness hearing on December 4, 2020, to decide whether to grant final approval of the settlement. If the Court approves the settlement and there are no appeals, then your payment will be mailed to you after the Settlement Effective Date.

### 7. Will I still get a payment if I have filed for bankruptcy while the lawsuit was pending?

If you filed for bankruptcy while these Lawsuits were pending, contact your bankruptcy attorney to discuss whether the bankruptcy will have any impact on your ability to collect a settlement payment. In consultation with your bankruptcy attorney, you must take the necessary steps to advise the bankruptcy trustee of your settlement payment.



## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 8. How do I exclude myself from the settlement?

If you want to keep the right to sue CVS on your own about the legal issues in this case, other than for relief under the PAGA, then you must exclude yourself from the class. The process for excluding yourself is sometimes referred to as "opting out."

To opt out, you must send by First Class U.S. mail a written, signed statement to the Settlement Administrator that includes your name, address, telephone numbers, signature, and last four digits of your social security number and states that you want to opt out of or be excluded from the settlement. To be effective, your opt-out statement must be postmarked no later than November 6, 2020 and must be mailed to: *Cabrera v. CVS Pharmacy*, P.O. Box 26170, Santa Ana, CA 92799; Phone: (833) 200-8581.

If you opt out, you will not receive a settlement payment and you cannot object to the settlement.

## OBJECTING TO THE SETTLEMENT

### 9. How do I tell the Court that I object to the settlement?

You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval of the settlement, then no settlement payments will be sent out and the Lawsuits will continue. If that is what you want to happen, you must object.

To object, you must first present your objections to the Settlement Administrator in writing. Such objections must be postmarked no later than November 6, 2020 and received no later than November 13, 2020 by: *Cabrera v. CVS Pharmacy*, P.O. Box 26170, Santa Ana, CA 92799. You can also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.

### 10. What's the difference between objecting to the settlement and opting out?

Objecting is telling the Court that you do not like something about the settlement. To object, you must remain a Settlement Class Member. In contrast, opting out is telling the Court that you do not want to be part of the Lawsuits. If you opt out, you cannot object because the Lawsuits no longer affect you. Based on objections, the Court may require the parties to revise the settlement or refuse to approve it, in which case no payments will issue and the case will be rescheduled for trial. Also, if the settlement is not approved, many of the Settlement Class Members may be subject to individual arbitration clauses and thus unable to recover as part of any Class wide trial.

## THE LAWYERS REPRESENTING YOU

### 11. Do I have a lawyer in this case?

Yes. Every Settlement Class Member in the Lawsuits is represented by the following attorneys, who the Court has appointed as Class Counsel. You may obtain information about Class Counsel, their practices, and their lawyers' experience by visiting their respective websites.

**Class Counsel:**

| | |
|---|---|
| **ALEXANDER KRAKOW + GLICK LLP**<br>Michael S. Morrison (State Bar No. 205320)<br>1900 Ave. of the Stars, Suite 900<br>Los Angeles, California 90067<br>T: 310.394.0888 \| F: 310.394.0811<br>E: mmorrison@akgllp.com | **LAW OFFICES OF THOMAS W. FALVEY**<br>Thomas W. Falvey, SBN 65744<br>550 North Brand Boulevard, Suite 1500<br>Glendale, California 91203<br>T: (818) 547-5200 \| F: (818) 500-9307<br>E-mail: thomaswfalvey@gmail.com |
| **BOYAMIAN LAW, INC.**<br>Michael H. Boyamian, SBN 256107<br>Armand R. Kizirian, SBN 293992<br>550 North Brand Boulevard, Suite 1500<br>Glendale, California 91203<br>T: (818) 547-5300 \| F: (818) 547-5678<br>E: michael@boyamianlaw.com,<br>E: armand@boyamianlaw.com | **UNITED EMPLOYEES LAW GROUP**<br>Walter Haines, SBN 071075<br>5500 Bolsa Avenue, Suite 201<br>Huntington Beach, CA 92649<br>Telephone: (562) 256-1047<br>Fax: (562) 256-4554 |



| CLARK LAW GROUP | |
| --- | --- |
| R. Craig Clark, SBN 129219<br>3258 4th Ave.<br>San Diego, CA 92103<br>T: (619) 239-1321 \| F: (888) 273-4554<br>E: cclark@clarklawyers.com<br>E: clgadmin@clarklawyers.com | |

## 12. How will the lawyers be paid?

As noted above, the settlement agreement provides that Class Counsel will ask the Court to approve payment to them of attorneys' fees from the settlement fund in an amount not to exceed $2,925,000.00, or 30% of the Maximum Settlement Amount. In addition, Class Counsel will ask the Court to approve payment to them for reasonable litigation costs incurred by Class Counsel in the litigation and settlement of the Lawsuits.

## THE COURT'S FAIRNESS HEARING

### 13. When and where will the Court decide whether to approve the settlement agreement?

The Court will hold a fairness hearing at 10:00 a.m. on December 4, 2020 at the United States District Court for the Central District of California at 350 West First Street, Los Angeles, CA 90012, before Judge André Birotte Jr. in Courtroom 7B. You may attend and you may ask to speak, but you do not have to. At the fairness hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are any objections, the Court will consider them at that time. After the hearing, the Court will decide whether to grant final approval of the settlement.

### 14. Do I have to come to the fairness hearing?

Class Counsel will represent you at the hearing and you do not need to attend. Of course, you are welcome to attend (at your own expense) if you so desire. The Court will consider any objections received in a timely manner, even if the individual who sent in the objection does not appear at the fairness hearing. You may also pay a different lawyer of your own choosing to attend the fairness hearing and represent your interests.

### 15. May I speak at the fairness hearing?

If you send in your objection by the deadline, you may ask the Court for permission to speak at the fairness hearing. To be eligible to raise an objection at the fairness hearing, you must first present your objections to the Settlement Administrator in writing. Such objections must be postmarked no later than November 6, 2020 and received no later than November 13, 2020 by *Cabrera v. CVS Pharmacy*, P.O. Box 26170, Santa Ana, CA 92799.

Again, you cannot speak at the hearing if you opt out.

## GETTING MORE INFORMATION

### 16. Are there more details about the settlement?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please read the settlement agreement. You may obtain a copy by visiting www.Simpluris.com/Case-Information, contacting class counsel at their email addresses and phone numbers listed above, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Central District of California-Western Division, 350 West 1st Street, Los Angeles, CA 90012-4565, Courtroom 7B, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

**VISIT www.Simpluris.com/Case-Information FOR FURTHER INFORMATION AND ANNOUNCEMENTS REGARDING THE SETTLEMENT. NOTICE OF ANY RULINGS, INCLUDING ISSUANCE OF A FINAL JUDGMENT, WILL BE POSTED ON THE WEBSITE.**



# Exhibit C

1 | ROB HENNIG (STATE BAR NO. 174646)
BRANDON K. RUIZ (STATE BAR NO. 264603)
2 | DAT TOMMY. PHAN (STATE BAR NO. 316813)
HENNIG RUIZ & SINGH P.C.
3 | 3600 WILSHIRE BLVD, SUITE 1908
LOS ANGELES, CA 90010
4 | PHONE: (213) 310-8301
FAX: (213) 310-8302
5 |
| Attorneys for Class Member and Objector
6 | PARVIN GHASSEMIAN
7 |
8 |
| **UNITED STATES DISTRICT COURT**
9 |
| **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10 |
11 |
| ) CASE NO.: 2:16-cv-08979-AB-AGR
12 | SEVAG CHALIAN, an Individual, et )
al., on behalf of themselves and all ) *Assigned to Hon. André Birotte, Jr.*
13 | others similarly situated and the )
general public, )
14 | ) State Case No.: BC 627757
Plaintiffs, ) State Action Filed: July 20, 2016
15 | ) Removal Date: December 5, 2016
v. )
16 | CVS PHARMACY, INC., a Rhode ) **DECLARATION OF ROB HENNIG**
Island corporation; CVS RX ) **IN SUPPORT OF OBJECTIONS**
17 | SERVICES, INC., a New York ) **FROM CLASS MEMBER PARVIN**
corporation; GARFIELD BEACH ) **GHASSEMIAN TO THE PROPOSED**
18 | CVS, LLC, a California limited ) **CLASS ACTION SETTLEMENT**
liability company; and DOES 1 )
19 | through 100, inclusive, ) Date:        December 4, 2020
) Time:        10:00 am
20 | Defendants. ) Location:   Crtm. 7B,
)                 350 West First St.
21 | _____ )
22 |
23 |
24 |
25 |
26 |
27 |
28 |

I, ROB HENNIG, declare as follows:

1.     I am the managing partner of Hennig Ruiz & Singh P.C.  I am a licensed, active member of the State Bar of California.  I am also a member of the Bar of the United Stated District Courts for the Central District of California, the Northern District of California and the Second Circuit Court of Appeals, the Ninth Circuit Court of Appeals, and the Supreme Court of the United States.

2.     I have personal knowledge of the facts I am hereafter attesting to.  This personal knowledge has been attained by my own actions and experiences and also observations as to this litigation.

3.     I write this declaration as one of the attorneys of record for Parvin Ghassemian.  Ms. Ghassemian currently has wage and hour claims pending in *Ghassemian v. CVS Pharmacy, Inc., et al.*, Orange County Superior Court Case No. 30-2019-01088926-CU-OE-CJC.

4.     In order to write this declaration, I have reviewed the following papers as to the relevant Motion for Final Approval of the Settlement and Class Certification including:

A.     First Amended Class Action Complaint of Plaintiffs Sevag Cahlian and Tamara Aleksandryan (Dkt. No. 44);

B.     Second Amended Complaint for Plaintiffs Sigfredo Cabrera and Christine McNeely (Case No. N.D. Cal. 17-cv-05803-WHA, Dct. No. 49);

C.     Consolidated Second Amended Complaint of Plaintiffs Sevag Cahlian, Sigredo Cabrera, Enko Telahun, Christine McNeely, and Patrick Brenan for Damages, Restitution, Injunctive Relief and Civil Penalties (Dct. No. 104);

D.     Plaintiff's Notice of Motion and Motion for Preliminary Approval of Settlement and Direction of Notice Under Rule 23(E) of the Federal Rules of Civil Procedure; Memorandum of Points and Authorities (Dkt. No. 89);

-2-

1         E.     Declaration of Michael Morrison in Support of Plaintiffs'

2  Motion for Preliminary Approval of Settlement and Direction of Notice under Rule

3  23(E) of the Federal Rules of Civil Procedure (Dkt No. 89-1);

4         F.     Declaration of Michael Morrison in Support of Plaintiff's

5  Motion for Attorney's Fees, Costs, Claims Administration Expenses, and

6  Incentive/Service/Awards to the Class Representatives (Dkt. No. 89-1);

7         G.     Order Granting Preliminary Approval of Class action

8  Settlement, Setting a Final Approval Hearing, and Approval of Notice to the Class

9  (Dkt No. 127);

10         H.     Notice of Motion and Motion for Award of Attorneys' Fees,

11  Costs, Settlement Administration Expenses and Class Representative Enhancement

12  Awards; Memorandum of Points and Authorities in Support Thereof (Dkt No. 160);

13         I.     Declaration of R. Craig Clark in Support of Plaintiffs' Motion

14  for Attorneys' Fees, Costs, Claims Administration Expenses, and Incentive/Service

15  Awards to the Class Representatives (Dkt. No. 160-2);

16         J.     Declaration of Michael Morrison in Support of Plaintiffs'

17  Motion for Attorneys' Fees, Costs, Claims Administration Expenses, and

18  Incentive/Service Awards to the Class Representatives (Dkt. No. 160-3);

19         K.     Declaration of Michael H. Boyamian in Support of Plaintiffs'

20  Motion for Attorneys' Fees, Costs, and for Final Approval of Class Action

21  Settlement (Dkt. No. 160-4);

22         L.     Declaration of Armand R. Kizirian in Support of Plaintiffs'

23  Motion for Attorneys' Fees, Costs, and for Final Approval of Class Action

24  Settlement (Dkt. No. 160-5);

25         M.     Declaration of Thomas R. Falvey in Support of Plaintiffs'

26  Motion for Attorneys' Fees, Costs, and for Final Approval of Class Action

27  Settlement (Dkt. No. 160-6); and

28  ///

N. Declaration of Walter Haines in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and for Final Approval of Class Action Settlement (Dkt. No. 160-7).

5. I also base my conclusions upon my knowledge, skill, and experience as the Founding and Managing Partner of one of the largest and most reputable plaintiff's employment law firms in Los Angeles, California.

6. As stated herein, I have come to several conclusions as to this Motion that will be detailed and supported in this declaration:

**A.** **The proposed settlement is not in the best interests of the stated class. In my experience, the amount of the settlement is woefully short of what would be a fair settlement of the very broad release of claims included in the proposed settlement.**

**B.** **There has been an failure of plaintiff's counsel to conduct sufficient due diligence to investigate and analyze the realistic value of the claims.**

**C.** **The procedural history of how this settlement came about suggests collusive conduct between the plaintiff's attorneys in this case and defense counsel.**

**D.** **The attorneys' fees sought by plaintiff's counsel in this case based upon a claimed 30 percent common fund is nothing short of an unearned and inappropriate windfall to counsel.**

**E.** **The cross-check of the costs claimed in this case demonstrates how little work has been done by the attorneys in this case and, thus, why there has been a failure of due diligence in this case.**

**F.** **To approve this settlement would be an inappropriate abdication of this Court's obligation to determine and act in the best interests of the class.**

///

-4-

**EDUCATION, PROFESSIONAL BACKGROUND, AND RECOGNITION**

7.    I graduated from the University of Notre Dame, Notre Dame, Indiana, in 1989 with honors with a bachelor of arts degree in Economics.  I also had a concentration in Politics, Philosophy, and Economics.  In my senior year at Notre Dame, I was the recipient of the Breen Medal in recognition for my role in the speech and debate program at the University.  The Breen Medal is awarded annually to one senior as the premier orator of the University.  In my sophomore and junior years, I was also awarded the "speaker of the year" – the highest award in the program – for the speech and debate program.  At Notre Dame, I also received numerous awards both internal to the university and at tournaments across the country for my participation in the speech and debate team at Notre Dame.  In my senior year, I wrote a senior thesis on the concept of institutional rigidity in the United State steel industry.  This work explored the break-down of institutions in achieving optimal efficiency (market failure) due to continuing past practices instead of adopting new more innovative practices.

8.    I received my law degree from the University of California at Berkeley (Boalt Hall) in 1994.  I took the Bar Exam during July, 1994 and passed the Bar and was admitted to the practice of law in December, 1994.

9.    I have a Masters degree (1995) and a Ph.D. (1997) from the Program in Jurisprudence and Social Policy from the University of California at Berkeley – a graduate program at Boalt Hall drawing on law school faculty.  I had graduate concentrations in the economic analysis of law and American political institutions. I was awarded a John M. Olin Foundation Law and Economics Fellowship for multiple years of graduate study.  I also served as a teaching assistant for undergraduate courses in Law and Economics.  I was a teaching assistant in Law and Economics courses taught, among others, by Gillian Hadfield, now the Richard L. and Antoinette Kirtland Professor of Law and Professor of Economics at the University of Southern California and Robert Cooter, now the Herman F. Selvin

-5-

1  Professor of Law and Co-Director, Law and Economics Program at the University

2  of California at Berkeley.  My dissertation was an analysis of partisanship in

3  conference committees and has been cited in the political science literature for

4  creating a new measure of partisanship in the United States Congress.

5         10.    I was also a teaching assistant for an undergraduate Constitutional Law

6  course at Berkeley taught by Martin Shapiro, the emeritus James W. and Isabel

7  Coffroth Professor of Law at Berkeley.  Professor Shapiro has taught at several

8  prestigious law schools across the county. Professor Shapiro also was the chair of

9  my dissertation committee.  Also on my dissertation committee were Mathew D.

10  McCubbins, now Professor of Law and Political Science at Duke University and

11  formerly the Provost Professor of Business, Law and Political Economy at the

12  University of Southern California; Robert Kagan, the emeritus Emanuel S. Heller

13  Professor of Law at Berkeley, and the late Nelson W. Polsby, Professor of Political

14  Science at Berkeley.

15         11.    Upon completion of my graduate education, I accepted a full time

16  lecturer position in the Department of Political Science at UCLA.  I served in that

17  position at UCLA for six years, specializing in courses on the judiciary and

18  constitutional law.  Since then, I have continued to teach in the Political Science

19  Department at UCLA in Summer Session and in UCLA Extension.

20         12.    I was awarded a faculty teaching award for outstanding teaching from

21  the undergraduate Political Science Honor Society, Phi Sigma Alpha, for three

22  consecutive years.  My teacher course evaluations were consistently among the

23  highest in the Department of Political Science.  I have taught approximately 5,000

24  UCLA students.  Many of my former students are now attorneys and I have been

25  greeted by former students when I am at the courthouse.

26         13.    I have been interviewed by a number of media outlets for expert

27  information and opinions on a variety of legal topics including commenting for the

28  local NBC affiliate, Channel 4 concerning the 2000 Presidential election

-6-

controversy and the United States Supreme Court's decision of *PGA Tour, Inc. v.*

*Martin*. I have also appeared on Channel 4's Evening News Program to discuss the

case of *Dupree v. Sajahtera, Inc.* I have also been an on camera expert in a series of

video presentations on the Supreme Court and judicial system.

14. I have appeared at numerous national and regional academic

conferences and presented academic papers on a variety of legal topics. Some of

my papers have included a paper on court deference to administrative

determination; the limitations of an equality model for civil rights enforcement and

presenting an alternative framework; and commentary upon recent Supreme Court

decisions. I have made presentations at the annual meetings of the Law and Society

Association, the American Political Science Association, and the Western Political

Science Association.

15. In 2001, I was one of eight finalists for the Supreme Court Fellows

Program of the Supreme Court of the United States.

16. I was a founding co-chair of the Board of Directors for what is now

named Equality California, the largest statewide LGBT civil rights organization. I

was also the original President of what is now called the Equality California

Institute, a non-profit tax deductible research and educational organization.

17. I am currently a member of the Executive Committee and the Board of

Directors for the American Civil Liberties Union of Southern California

Foundation. I previously served two terms on the Board of Directors of the

American Civil Liberties Union of Southern California. I also served as a volunteer

for many years with the ACLU of Southern California. My first contact with the

organization was as a Summer Legal Intern for the ACLU of Southern California in

1992.

18. I have made presentations for Continuing Legal Education programs

on issues related to Employment Law litigation including such topics as legal

ethics, disability discrimination, workplace investigations, alternative dispute

resolution in the employment context, mental examinations of plaintiffs, and law practice management. I have made substantive presentations for the California Employment Lawyers Association ("CELA"), the Labor and Employment Law Section of the Los Angeles County Bar Association, the Beverly Hills Bar Association, the Los Angeles Plaintiff Employment Lawyers' Group ("LEFT-JAW"), and the Orange County Plaintiff Employment Lawyers Group ("Orange County CELA"). I have also been an active member of various bar associations associated with my areas of practice.

19. I have been a trainer and/or presenter for the CELA Trial College in 2015, 2016, 2017, and 2018. The CELA Trial College is an intensive three day seminar on trial skills for attorneys practicing in employment law. I have repeatedly received outstanding evaluations from participants for my feedback and assistance in developing trial skills.

20. I am a past Chair of the Beverly Hills Bar Association's Labor and Employment Law section, where I was a member of the Section Board for many years.

21. I have been a member of the Education Committee of the California Employment Lawyers Association since January, 2018. The Education Committee plans and executes the annual conference – the largest gathering of plaintiff employment lawyers in California every year.

22. In 2016, 2017, 2018, 2019, 2020, and for 2021, I was recognized by my peers as a "Super Lawyer" for Southern California in the area of employment litigation. The Super Lawyer distinction is limited to the top five percent of all practicing attorneys in Southern California.

23. During the past five years, my firm has also seen a significant rise in its reputation. Since 2016, I have been selected each year as a SuperLawyer by Findlaw in Employment Law Litigation. I was also the subject of a high profile ///

-8-

question and answer interview in the *Los Angeles Lawyer* in its December, 2018 issue.

24.     My firm has also undergone a significant restructuring from being the Law Offices of Rob Hennig (pre-2015) to being Hennig Ruiz (2015 to 2017) and then Hennig Ruiz & Singh (from 2018 forward). The firm has also significantly expanded from being a solo practice as late in 2013 to now having seven attorneys with a law clerk currently awaiting Bar results. The firm's growth further reflects the professional success of Hennig Ruiz & Singh.

## TRIAL AND CLASS ACTION LITIGATION QUALIFICATIONS

25.     I am often asked by other plaintiff attorneys to associate in on cases, particularly in litigation that is approaching trial. Referrals from my colleagues reflects, I believe, my reputation within the plaintiff's employment bar. Currently, approximately a quarter of our case load, reflects cases that were brought to us by other attorneys. I am generally the lead trial counsel for our referral cases.

26.     I have had success in prevailing in litigation that goes to a verdict. I have been lead trial counsel in the following successful cases:

A.     In the case of *Funez v. Millennium Shoes, Inc., et al.*, an award of $3,805.75 on wage and hour claims was rendered in arbitration in October, 2009. The award was subsequently amended to included $25,000 in attorneys fees (L.A.S.C. Case No. BC387679).

B.     In the case of *Modugno v. Northrup Grummon, Inc., et al.*, an arbitration award of $123,656.92 was rendered in favor or my client in September, 2011 (L.A.S.C. Case No. BC402619).

C.     In *Kamali v. State of California, Dept. of Transp.*, a jury verdict of $663,983.00 was rendered on November 16, 2012 on FEHA and retaliation claims for a current employee of Caltrans. Attorneys' fees were later awarded in the amount of $889,280.00. After the appeal affirmed the jury verdict, the total paid

-9-

by Defendant inclusive of attorneys fees, costs, and interest exceeded $2,000,000
(L.A.S.C. Case No. BC 426247).

          D.      In *Brake v. Cal. Dept. of Transp.*, a jury verdict of $571,797.00
was rendered on behalf of my client on or about October 31, 2013 on FEHA claims
for a current employee of Caltrans.  An award of attorneys' fees in the amount of
$375,000 followed for a total judgment, including costs, of $998,586.  The
Defendant paid the judgment without an appeal in that case (L.A.S.C. Case No.
BC474796).

          E.      In *Self v. Equinox Holdings, Inc., et al.*, after a short bench trial,
the Court rendered a final judgment on or about February 15, 2017 in favor of
Plaintiff that Equinox had an illegal "no hire" mutual agreement with SoulCycle
that prevented our client from obtaining a position at SoulCycle (L.A.S.C. Case No.
BC561279).

          F.      In *Zhang v. Amgen, Inc.*, a jury verdict of $178,199.87 was
obtained on a single plaintiff's wage and hour claims on May 3, 2017.  Amgen was
presented by Paul Hastings LLP and was intensively litigated (Ventura County
Superior Court Case No. 56-2012-00420162-CU-OE-VTA).

          G.      In *Moinuddin v. State of California, Dept. of Transportation*, a
jury in August, 2018 found in favor of my client, Sheik Moinuddin, on allegations
of discrimination, retaliation, and failure to take all reasonable steps to stop
discrimination and retaliation. Furthermore, injunctive relief was Ordered against
the State of California and attorney's fees and costs of $715,098.25 (Los Angeles
Superior Court Case No. BC656161).

          H.      In *Saxton v. Sourceasy, Inc.*, a jury verdict of $1,200,000.00 was
obtained on September 14, 2018 based upon Mr. Saxton's claims of fraudulent
inducement to move (violation of Cal. Lab. Code § 970) (San Francisco Superior
Court Case No. CGC-16-554302).

///

1    27.    I have argued before the California Court of Appeal on eight different

2    occasions.  I have also drafted over a dozen appellate briefs.  I have argued before

3    the federal Court of Appeals for the Second Circuit and the Ninth Circuit.   In

4    addition, I have filed two *writs of mandate* where the trial court has been ordered to

5    respond, one leading to an outright granting of the *writ*.

6    28.    I have had numerous large six and seven figure settlements in

7    employment law cases.  I represented Don Hanks in the case of *U.S. ex rel. Hanks v.*

8    *Amgen, Inc., et al* that, along with cases from several other Relators, resulted in a

9    settlement of approximately $762,000,000.00 in December 2012 by Amgen with

10    the United States and various states to resolve claims of health care fraud by Amgen

11    (E.D.N.Y. Case No.: CV-08-3096).

12    29.    For several years, my firm was on retainer as employment law

13    consultants to two different employers. Each of these companies specifically sought

14    me out to function as its consultant on employment law matters.

15    30.    I have been appointed class counsel or co-counsel in *Jones v. Nissan*

16    *North America, Inc.* (L.A.S.C. case number BC336349); *Amaro, et al. v. Taste*

17    *America Foods Group, Inc*. (L.A.S.C. case number BC372557); *Winters v. Base*

18    *Productions, Inc.* (L.A.S.C. case number BC 410650); and *Vinson v. County of San*

19    *Bernardino* (San Bernardino Superior Court case number CIVDS1209922).

20    31.    I was also lead counsel or co-counsel in the representative or PAGA

21    actions involving settlements approved by the Court in *Santos v. Design Select*

22    (Contra Costa Superior Court case number C 08-01867); *Espinoza v. Allstate*

23    *Contract Floors* (Contra Costa Superior Court case number C 08-01917); *Langford*

24    *v. Hollywood Toys and Costumes, Inc.*, *et al.* (Los Angeles Superior Court Case No.

25    BC364551); *Acuna, et al. v. FS Hotels (LA), Inc., et al*. (Los Angeles Superior

26    Court Case No. BC395269); and *Luis v. Columbia Sussex Management LLC* (Los

27    Angeles Superior court Case No. BC 543454).

28    ///

## SPECIFIC SKILL AND RECOGNITION AS TO ATTORNEYS' FEES

32.     My expertise in the area of hourly rates is known by other attorneys practicing in employment law.  Since 2018, I have provided eight declarations assessing the professional hourly rates for employment attorneys for cases in the greater Southern California area. I have provided these fee assessment declarations in *Antonio v. Spicers Papers, Inc.* (AAA Arbitration Case No. 01-18-002-9000; *Cao v. Magnolia HiFi, LLC* (AAA Arbitration Case No. 01-17-0002-2568); *McPherson v. EF Intercultural Foundation, Inc.* (L.A.S.C. Case No. BC609090); *The International Brotherhood of Boilermakers, et al. v. Nassco Holdings Inc., et al* (San Diego Superior Court Case No. 37-2014-00041676-CU-OE-CTL); *Aguilar v. Ivy Bridge Group (West Coast), Inc.* (L.A.S.C. Case No. BC608030); and others.

33.     I am a faculty member for the National Association of Legal Fee Analysis (hereinafter "NALFA").  I was a featured speaker for NALFA's program "Attorney Fees in Class Action Litigation" on May 28, 2020.

## THE PROPOSED SETTLEMENT IS NOT IN THE BEST INTERESTS OF THE PROPOSED CLASS

34.     Based upon my review of documents, knowledge, and experience, the proposed class action settlement is not in the best interests of the proposed class.

35.     The total amount of the settlement – is **$10,371,346.60** – represents a significant settlement in terms of actual dollars.

36.     But the key measure of any employment wage and hour settlement is not the total value of the settlement, but the discount as to the total fair value of the claims asserted.  In my review of the approximate class size of 24,309 – that means that recovery to the proposed class averages approximately $293 per class member after subtracting non-class payments such as attorney's fees, costs, and class representative bonuses (Dkt. No. 160-2, ¶¶ 28-32).

///

-12-

1      37.    The release included in the settlement is unusually broad.  In fact, the

2    release stated in section 4.3 of the settlement agreement requires all class members

3    to release *any and all* potential wage and hour claims that were or could have been

4    raised (Dkt. No. 89-1, pp. 39-40).  There is simply no rationale for why this release

5    is so much broader than the actual claims involved in this case or, for that matter, as

6    to the claims that contain any actual value.  To the extent that there are claims that

7    Mr. Morrison or the plaintiffs' counsel claim have no value at all, the most

8    appropriate thing to have done would have been to dismiss those claims from the

9    complaint and exclude them from the class wide release.  Instead, Mr. Morrison and

10   the other plaintiff attorney did the exact opposite – expanding their claims *after the*

11   *settlement had already been reached.*

12     38.    As noted below, there has been a failure to conduct any meaningful

13   discovery and investigation into the potential value of the claims and, therefore, a

14   failure of due diligence by plaintiffs' attorneys on behalf of the class as to this

15   proposed settlement.  But in terms of a substantive recovery, this proposed class

16   action settlement provides what can only be described as a relatively trivial

17   recovery that is entirely inappropriate and should be rejected as inadequate on its

18   face.

19

20   **THE INVESTIGATION AND ANALYSIS OF THE CLASS CLAIMS IS**

21   **INADEQUATE AND DRAMATICALLY UNDERVALUES THE VALUE OF**

22   **THIS CASE AND THE PROPOSED RECOVERY TO CLASS MEMBERS**

23     39.    There has been an failure of plaintiff's counsel to investigate and

24   analyze the realistic value of the claims.  Plaintiffs' counsel have an obligation to

25   conduct due diligence to be able to engage in meaningful settlement negotiations

26   and to justify the proposed settlement amount.

27     40.    Here, a review of the analysis of Michael Morrison – the only

28   declaration filed in support of plaintiff's analysis of the proposed class settlement

-13-

amount – amply demonstrates the deficiencies of the due diligence (Dkt. No. 89-1, ¶¶ 29-60).

41.     For example, Mr. Morrison finds potential exposure for PAGA penalties of $3.4 million (Dkt. No. 89-1, ¶¶ 55-60) Yet, the settlement includes an allocation of only $75,000 for PAGA penalties – approximately 2.2 percent of the potential value – even as recognized by Mr. Morrison.

42.     My review of Mr. Morrison's analysis, however, leads me to conclude that I am unable to put any faith in his perspective that this settlement is fair and just to the over 24,000 class members. In other words, I am directly questioning Mr. Morrison's due diligence in being able to state any conclusions at all.

43.     A review of Mr. Morrison's time data for this case reflects a paltry amount of substantive discovery and investigation work on this case (Dkt No. 160-3, Exhibit 8).  For example, Mr. Morrison claims a total of 538.2 hours of work in this case.  Yet that majority of the claimed time – a total of 318.7 hours – comes after March 13, 2020 when the settlement agreement had already been signed.  That means only 219.5 hours (40.8 %) of the work performed in this case came prior to the signing of the final settlement agreement.  Mr. Morrison claimed almost 10 percent of that total for 18 hours of work on a single day – November 11, 2019 – to travel to and from and then attend the mediation.

44.     In terms of actual discovery and investigation of the potential value for the class claims, I could find only entries of May 14, 2019, June 4, 2019, October 22, 2019, October 31, 2019 that reflect any sort of class wide analysis of the potential claims in this case for a total of 8.0 hours of total time (Dkt. No. 160-3, Exhibit 8).

45.     My own knowledge and experience of class action settlements leads me to conclude that Mr. Morrison failed in his obligation to conduct due diligence in this case prior to the settlement agreement.  Even the most generous allocation of his stated time finds that he simply did not put in the necessary time to be able to

-14-

determine whether this settlement is fair or just or in the interests of the proposed class.

46. Typically, as the lead attorney, I would expect in a case having over 24,000 class members that the lead attorney would have well over 1,000 hours of specifically *in discovery or investigation* of the claims and their potential value *prior to any settlement discussions.* Mr. Morrison's own time records reflect his lack of preparation and diligence prior to the mediation and reaching of a settlement.

47. My review of the time records of Michael H. Boyamian confirms the same story as to his time. (Exhibit 1, Dkt. No. 160-4). Of Mr. Boyamian's claimed time of 345.9 hours, 53.5 hours of time was in 2015-2017 and appear to be entries almost exclusively related to the filing of the initial complaint and procedural work. A total of 91.6 hours of time is claimed *prior* to the settlement agreement being signed on February 26, 2020.

48. I could find no meaningful entries for Mr. Boyamian that indicate an examination or investigation of the potential damages or the meaningful analysis for the class action's potential value of the claims asserted. Instead, most of Mr. Boyamian's time appears to be process work. Entries for January 21 and 22, 2020, or for February 6 and 7, 2020, for example, consist mostly of individual entries for .1 for reading emails and, for January 22, 2020, a .1 entry for "updating calendar." This is the type of hyper-individualized recording of hours that is or should be disfavored because it makes discrete tasks that last only a few seconds or perhaps a minute at most into 6 minute intervals. For the page of the time records covering February 11 through 27, 2020, 66 out of 67 time entries are for .1 work that is of little to no substance. Put another way, Mr. Boyamian is padding his time in this case as to these examples.

49. The declaration of Mr. Clark claims total time of 1,308.6 hours (Dkt. No. 160-2, Ex. 2). Unfortunately, the time sheet is so small as to be unreadable. It

-15-

1    appears that there are at least seven separate time keepers listed on this single

2    timesheet – so it is practically impossible to follow the work of each timekeeper and

3    the appropriate breakdown for each.  It is, again, nearly impossible to understand

4    the time that was spent as to an actual analysis of the claims, the class size, and any

5    realistic evaluation of the possible value of the class claims.

6         50.    From my best attempt to review Mr. Clark's firmwide time sheet in

7    very tiny font, I could not make out *any* time that I would classify as time spent

8    undertaking a due diligence of the class claims and potential value of these claims

9    so as to afford an informed opinion of a fair settlement value. Mr. Clark's time

10   sheets seem to be deliberately intended to be unreviewable as they are being

11   presented to this Court.  (Dkt. No. 160-2, Ex. 2).

12        51.    Likewise, my review of the time records of Armand R. Kizirian (Dkt.

13   No. 160-5) and Thomas R. Falvey (Dkt. No. 160-6) shows no significant work in

14   discovery and investigation of the claims, the class members, or the potential value

15   of the class claims as a whole.

16        52.    Mr. Haines includes no contemporaneous time records at all – just a

17   rough breakdown of his hours (Dkt. No. 160-7).  Mr. Haines time records are below

18   the standard acceptable for attorneys in federal class action records and, as a result,

19   his time records should be given no weight at all.

20

21        **THE PROCEDURAL HISTORY OF THIS SETTLEMENT SUGGESTS**

22                          **COLLUSIVE CONDUCT**

23        53.    The procedural history – and in particular the settlement negotiations

24   suggests this settlement is the product of collusion between plaintiff and defense

25   counsel.

26        54.    According to Mr. Morrison's declaration, the parties engaged in two

27   mediations and came to an agreement in principal on November 11, 2019 – the date

28   ///

                                         -16-

of the second mediation (at ¶ 24). A settlement agreement, however, was not

signed until March, 2020 (Dkt No. 89-1, ¶ 25).

55. A new amended consolidated complaint was filed on June 3, 2020 –

after the settlement agreement had already been signed. Crucially, even by Mr.

Morrison's own declaration, this amended consolidated complaint added entirely

new claims under the California Private Attorneys General Act (hereinafter

"PAGA") as to Labor Code sections 246, 550-551, and 850-851 (Dkt No. 89-1, ¶

26).

56. The procedural history of this case has all the hallmarks of a "reverse

auction" where the employer negotiates a settlement with plaintiff attorneys in one

of several competing class action cases with similar or overlapping classes. In this

case, however, it appears that this situation is worse than a reverse auction because

of the deliberate expansion of the claims in the complaint that occurred and was

necessary to obtain this settlement. In other words, the attorneys in this case had to

expand the claims being made in this case in order to effectuate a reverse auction.

57. Given the procedural history of this case – expanding the claims *after*

settlement has been reached – there is also a strong suspicion that *no due diligence*

was performed at all as to the added claims. In my review of the time and costs

records of all of the plaintiffs' attorneys, I was unable to find any indication that

there was any discovery and investigation as to the PAGA claims that were added

after the settlement agreement was finalized.


**THE COMMON FUND REQUEST FOR 30 PERCENT FOR ATTORNEYS'**
**FEES IS AN INAPPROPRIATE WINDFALL TO PLAINTIFFS'**
**ATTORNEYS**

58. The attorneys' fees sought by plaintiff's counsel in this case based

upon a claimed 30 percent common fund is nothing short of an unearned and

inappropriate windfall to counsel.

-17-

59. According to the declaration of Mr. Clark, the revised request for attorneys' fee is for $3,111,403.98 and up to $50,000 in actual litigation costs in addition to administration costs in the amount of $98,750.00 (Dkt. No. 160-2).

60. A review of the time records – as indicated above – demonstrates how little actual discovery and investigation was performed by the attorneys seeking to represent the class in this case. A cross check of the total lodestar in this case also demonstrates how out of proportion the fees claimed are. The total lodestar *claimed* in this case by the plaintiffs' attorneys equals:

| | |
|---|---|
| Michael Morrison | $417,105.00 |
| Jessica Choi (Morrison associate) | $ 50,050.00 |
| David Ramirez-Galvez (Morrison associate) | $ 2,887.50 |
| The Clark Firm (undifferentiated) | $750,963.50 |
| Michael H. Boyamian | $207,540.00 |
| Thomas R. Falvey | $228,750.00 |
| Walter Haines | $ 50,692.50 |
| **TOTAL** | **$1,707,988.00** |

61. The lodestar cross-check is approximately half of the total fees being sought by the plaintiffs' attorneys in this case.

62. Even the lodestar, however, is an inflated recovery in this litigation. A review of the time records shows that there is so little work done in terms of actual discovery in this case. For example, there is no evidence that a single deposition was taken.

63. There was minimal time recorded as to actual discovery and investigation in this case. Indeed, there was also minimal billing of costs for expert review of time records in this case (approximately $5,000 total – approximately 10 to 15 hours – for a class of over 24,000 members).

///

1     64.    I have reviewed all of the billing records of all of the attorneys

2 submitted in support of these fees. It is my opinion that there has been inadequate

3 discovery and investigative work performed by the attorneys' to support their

4 Motion for Final Approval. As a result, this Motion should simply be denied.

5     65.    Should this Court reject my opinion and grant the Motion for Final

6 Approval, I am further of the opinion that this Court deny the request for a common

7 fund distribution of attorneys' fees of 30 percent. My opinion is that awarding of

8 attorney's fees from the common fund be reduced to no more than 12.5 percent of

9 the total recovery amount of $10,371,346.60 – or no more than $1,296, 418.33 –

10 with the remainder to go the members of the class.

11    66.    An award of attorneys' fees of $1,296, 418.33 – with the remainder to

12 go to the class is a much more appropriate common fund recovery given the size of

13 the settlement (over $10 million) and the comparatively little amount of substantive

14 discovery and investigative work done by the plaintiffs' attorneys for the benefit of

15 the class.

16

## A CROSS-CHECK OF THE COSTS IN THIS CASE DEMONSTRATES
## HOW LITTLE WORK HAS BEEN DONE IN THIS CASE

19    67.    A review of the records for reimbursement of the costs in this case

20 demonstrates how little *actual* discovery and investigation has been done in this

21 litigation by *all* of the plaintiffs' attorneys.

22    68.    According to Mr. Morrison, his firm's costs as to this litigation is

23 $6,820.12 (Dkt No. 160-3, ¶ 35). Exhibit 6 to Mr. Morrison's declaration shows

24 that two-thirds of those costs were fees for the mediation ($4,250). In other words,

25 the chief plaintiff's counsel has spent a total of $2,570.12 in actual litigation costs

26 related to this case. The settlement costs for Simpluris, Inc. to notify the class is

27 over ten times that amount – $98,750 (Dkt No. 160-3, ¶ 36).

28 ///

1   69.   The costs from Mr. Clark, similarly, indicate how little actual work

2   was performed in this case. (Dkt. No. 160-2, Exhibit 3). Mr. Clark claims expenses

3   of $13,065.01. Missing from this detailed report are any expenses related to a

4   single deposition – because none were taken. Missing from Mr. Clark's claims for

5   reimbursement in fact are any real litigation costs. Almost all of his costs are

6   related to transportation for himself or others. Less than $4,000 was for expert fees

7   for analysis. Given a reasonable rate by any expert, that cannot be for anything

8   more than a trivial amount of work in a case involving over 24,000 class members –

9   approximately 10 hours of total time.

10   70.   The Declaration of Eric Boyamian claims costs of $9,429.02 (Dkt. No.

11   160-5, Exhibit 2). Less than $1,800 were consulting costs. Over half were related

12   to the mediation including a charge for $616 for a JetBlue ticket to San Francisco.

13   71.   The Declaration of Thomas R. Falvey requests reimbursement of costs

14   in the amount of $3,041.18 includes costs related to investigation and discovery in

15   the amount of $446.00. Almost half of the claimed fees is the initial filing fee

16   claimed for Los Angeles Superior Court. (Dkt. No. 160-6, Exhibit 2).

17   72.   One of the best measures for whether there has been active due

18   diligence and investigation by the attorneys is to review the costs expended on a

19   class action. In a case such as this, involving 24,000 class members, a reasonable

20   expenditure of costs would be approximately $1 million.

21   73.   Total claimed costs in this case, therefore, are $32,355.33. For a

22   claimed class action involving over 24,000 class members, this is a paltry amount

23   for costs in litigation. Again, this case is over 3 years old. No depositions were

24   taken. Very little was spent – about $4,000 on expert fees. It is very hard to justify

25   that plaintiffs' counsel have done adequate work to represent to this Court that this

26   proposed settlement is fair and just to the class members.

27   ///

28   ///

**THIS PROPOSED SETTLEMENT SHOULD BE REJECTED OUTRIGHT**
**BY THIS COURT**

74.   To approve this settlement would be an inappropriate abdication of this Court's obligation to determine and act in the best interests of the class.

75.   For the reasons stated, my analysis of the proposed class action settlement is that there has been a failure of due diligence to be able to justify the proposed settlement amount.  In light of the inadequate discovery and investigation by plaintiffs' attorneys, this Court should not accept the representations of these attorneys.

76.   The only reasonable thing to do under these circumstances is to deny the Motion for Final Approval of this settlement.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and, if called to testify, I could and would competently testify to the above facts.


Executed this 6th day of November, 2020, at Los Angeles, California.


/ s /

_____
ROB HENNIG