UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 16-08979 AB (AGRx) | Date: | February 18, 2021 |
|---|---|---|---|

| Title: | *Sevag Chalian v. CVS Pharmacy, Inc et al.* |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR., United States District Judge |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER RE: SUPPLEMENTAL BRIEFING

As the Court continues to work on Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, the Court has additional questions for Class Counsel. Answers to these questions will help the Court resolve the Motions.

1. **Class Counsel's Valuation of the Claims and Allocation of Settlement Amount**

The Court has reviewed Class Counsel's valuations of the class claims. Counsel valued many claims at zero, and valued the following three categories of claims as worth more than zero: off-the-clock training claims valued at $5,157,072 in total (Morrison Decl. ¶¶ 66, 67); meal period claims based on training and Defendants' 1-pharmacist-on-duty policy valued at about $3,000,000 (Morrison Decl. ¶ 71); rest period claims valued at $1,000,000 to $3,000,000 (Morrison Decl. ¶ 79). The meal period valuation reflects discounts for risks of non-certification, and for arbitration and merits risks, *see* Morrison Decl. ¶79 (stating valuation of meal period claims is based on 10-25% chance of prevailing, in light of arbitration,

merits, and class certification issue) but it is not clear whether the other valuations reflect risk discounts. Regardless, these valuations total between about $9,000,000 and $11,000,000—a valuation that would tend to support the adequacy of the approximately $10,000,0000 settlement amount. However, upon close reading, Counsel's valuations derive solely from the claims of the approximately 825 class members who did not sign arbitration agreements. Counsel did not present valuations of these claims (or perhaps of any other claim) for the other nearly 24,000 members of the class who signed arbitration agreements. The Court therefore raises the following questions:

  i.  Did Counsel value the claims of the nearly 24,000 class members who signed arbitration agreements? Please provide any valuations and explanations, along with a declaration from the expert. Counsel is invited to use tables and charts to clearly explain the valuation.

  ii. The settlement's allocation formula is the same for all class members, whether they did or did not sign an arbitration agreement. Does treating these groups the same adequately reflect (1) any difference in the value of each groups' claims, and, relatedly, (2) any difference in the risks each group faces? Does treating the two groups of class members the same cause a conflict between class members? Please explain.

**2.  Limiting the Recovery of Persons Who Belong to Both Classes**

It appears that a person could be a member of both classes. For example, assuming the time-frames stated in the class definitions are satisfied, a pharmacist from Region 65 (Pharmacist Class) who transferred to a pharmacy in nearby Region 60 (Retail Pharmacy Class) has compensable work weeks as a member of both classes.

  i.  Are there persons who are members of both classes? If so, how many?

  ii. The Notice tells members that if someone is a member of both classes, they will receive payment based only on their membership in one class (they will receive the higher of the two possible payments). *See* Notice Settlement Formula H(2). This means such persons won't get paid for their membership in the other class. However, the Settlement Agreement does not appear to so limit the payments to those who are members of both classes. Does the Settlement Agreement limit members of both classes to payment based on their membership in one class only?

    iii.    It does not appear that the class definitions overlap, so there should be no risk of a person who is a member of both classes getting a double recovery. Accordingly, limiting a person who is a member of both classes to payment based only on their membership in one class seems arbitrary, even if they receive the higher recovery of the two, because they are releasing their claims from both classes. Please explain the reasoning for limiting class members who are members of both classes to a recovery based only on their membership in one class.

### 3. The release language

    i.    The last clause of the release releases "other amounts recoverable under said claims or causes of action as **to the facts and/or legal theories alleged or which could have been alleged in the operative complaint."** Settlement Agreement § 4.3 (emphasis added). Because the release purportedly releases causes of action based on "facts . . . alleged or which could have been alleged…," the Court is concerned that the release is overbroad because a class action settlement release can only release claims based on the factual predicates actually alleged. *See, e.g., Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir.2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action."). Please address this apparent conflict and/or revise the settlement language to be consistent with the case law.

### 4. Requests for Exclusion / Opt-Outs

        In Dkt. No. 96, the Court ordered Counsel to file by December 14 a final list of the opt-outs. The Supplemental Declaration of Mary Butler (Dkt. No. 224), filed on December 14, is not a final list of the opt-outs. Instead, the Supplemental Butler Decl. says 157 requests for exclusion were received (¶ 5) and then goes on to state how many were in various categories, but ultimately this is not a list of all the opt-outs, and the categories do not fully help the Court determine which opt-outs are valid. In addition, the last paragraph says there were 146 requests for exclusion (¶ 14), fewer than the 157 previously stated, and there is no explanation for the difference. Plaintiffs' Revised Proposed Order (Dkt. No. 225) lists what it characterizes as the "valid opt-outs" but does not quantify them (although the

Court has counted 122 opt-outs on this list), nor is there any explanation for what criteria were used to determine this list.

Because determining who the valid opt-outs are in this case is more complicated than usual, the parties are **ORDERED** to file a supplemental declaration (1) explaining which requests for exclusion are valid and/or should be honored, and which requests are invalid and/or should not be honored, and (2) attaching an Excel spreadsheet of all the class members who submitted requests for exclusion, clearly identifying what relevant categories they belong to and whether these requests are valid and/or should be honored. Item (2) should also be emailed to the CRD in an editable form for the Court's use.

In summary, the parties need to evaluate the requests for exclusion, propose how to treat them, make a transparent record, and provide the Court with a document it can easily use to determine the opt-outs and list them in a final order should the Court finally approve the settlement.

****************

The Supplemental Briefing is due by March 19, 2021. Where appropriate, some or all of the Supplemental Briefing may be a joint submission by Plaintiffs and Defendants, but must so indicate. The Supplemental Briefing must not exceed 20 pages (excluding supporting evidence, which the Court urges counsel to be judicious with).

The Supplemental Declaration re: Opt-Outs is also due by March 19, 2021.

**This Order seeks clarification from Plaintiffs and Defendants on issues already raised in the record. This Order DOES NOT invite briefing from any other persons on these issues or any other issues, as the record is already extensive.**

**IT IS SO ORDERED**.