JS-6

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

SEVAG CHALIAN, et al.,

      Plaintiffs,

      v.

CVS PHARMACY, INC., a Rhode Island corporation; CVS RX SERVICES, INC., a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company; and DOES 1 thru 100, inclusive,

      Defendants.

CASE NO.: 2:16-cv-08979-AB-AGR

*Related Case No.: 2:20-cv-02401-AB-AGR*

*Assigned to Hon. André Birotte Jr.*

**[PROPOSED] ORDER AND JUDGMENT GRANTING (1) MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE/SERVICE AWARDS**

DATE:      December 4, 2020
TIME:      10:00 am
PLACE:   Crtm. 7B, 350 West First St., Los Angeles, CA

Complaint Filed: July 20, 2016
Action Removed: December 5, 2016

This matter came before the Court for hearing on December 4, 2020 for final approval of the Settlement. The parties have submitted their Global Settlement Agreement ("Settlement Agreement") evidencing their proposed settlement (the "Settlement"), which this Court preliminarily approved in its August 5, 2020 Order. In accordance with the preliminary approval order, Settlement Class Members have been given notice of the terms of the Settlement and the opportunity to object to it. In addition, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), the Attorney Generals of each state where Settlement Class members resided at the time notice was issued have been given notice of the Settlement. Notice of this Settlement was also provided to the Labor and Workforce Development Agency.

The Court has received and considered the Global Settlement Agreement dated March 2, 2020, as amended by the First Amendment to Global Settlement Agreement dated November 6, 2020 and the Second Amendment to Global Settlement Agreement dated March 19, 2021 which the Court hereby approves (all attached hereto as Exhibit A), the supporting papers filed by the parties, and the evidence and argument received by the Court at the final approval hearing on December 4, 2020. For the reasons explained at length in the Court's concurrently-issued ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL AND FOR AN AWARD OF ATTORNEYS' FEES, AND OVERRULING OBJECTIONS, the Court GRANTS final approval of the Settlement, and HEREBY ORDERS and MAKES DETERMINATIONS as follows:

1. The Motion for Order Granting Final Approval of Class Action Settlement and Motion for Award of Attorneys' Fees, Costs, and Class Representative Incentive/Service Awards are hereby granted in their entirety.

2. All terms used herein shall have the same meaning as defined in the

Settlement Agreement, attached as Exhibit A.

3. This Court has jurisdiction over the subject matter of this litigation and over all Parties to this litigation pursuant to the CAFA, including all Settlement Class Members.

4. Pursuant to Federal Rules of Civil Procedure and due process, the Court hereby finally approves the Settlement set forth in the Settlement Agreement, as amended, and finds that such Settlement is, in all respects, fair, reasonable and adequate to the Settlement Class and to each Settlement Class Member, that the Settlement is ordered finally approved, and that all terms and provisions of the Settlement should be and hereby are ordered to be consummated. The Court further finds that the Settlement Agreement, as amended, and the Settlement set forth therein were entered into in good faith following arms-length negotiations and is non-collusive, and that the Settlement Classes as defined in the Settlement Agreement be certified for settlement purposes only pursuant to Fed. R. Civ. P. 23(b)(3).

5. The Court further finds that the Parties have conducted extensive and costly investigation and research and counsel for the Parties are able to reasonably evaluate their respective positions. The Court also finds that settlement at this time will avoid additional substantial costs, as well as avoid the delay and risks that would be presented by the further prosecution of this case. The Court has noted the significant benefits to the Settlement Class Members under the Settlement. The Court also finds that the Settlement Classes (defined in the Settlement Agreement and below) are properly certified for settlement purposes only under Fed. R. Civ. P. 23(b)(3) and are therefore finally certified for settlement purposes only.

6. The Settlement Agreement, as amended, attached as Exhibit A, shall be

1  enforced according to its terms.

2

3      7.      For purposes of this Judgment, the following Settlement Classes will be

4  certified (collectively referred to as the "Settlement Class"):

5              a.      <u>Pharmacist Settlement Class</u>: All hourly, non-exempt retail

6  pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and

7  the date of the Preliminary Approval Order, whose claims are not subject to arbitration

8  and who have not previously released and/or adjudicated the Released Claims, and

9  whose LEARNet and/or Site Minder data indicates activity when time punch records do

10  not show he or she was clocked-in; and

11              b.      <u>Retail Pharmacy Settlement Class</u>: Any person who is not a member

12  of the Pharmacist Settlement Class who held an hourly, non-exempt position in a CVS

13  retail pharmacy in the State of California between August 3, 2014 and the date of the

14  Preliminary Approval Order who has not previously released and/or adjudicated the

15  Released Claims.

16

17      8.      The following Settlement Class Members have validly opted-out of this

18  action and are thus not bound by the Rule 23 settlement:

| SIMID | FirstName | LastName |
|-------|-----------|----------|
| 5748 | Neil | Patel |
| 6269 | Felicia | Ivy |
| 6315 | Daisy | Tavares |
| 13684 | Kazim | Cevik |
| 14595 | Yousef | Trabouly |
| 19651 | Pauline | Mikhail |
| 12570 | Marlcos | Abayhon |
| 19341 | Mehrnaz | Akhavan |
| 8294 | Isabel | Alexander |
| 4173 | Behnam | Amir-Behboudi |
| 6538 | Samantha | Andrews |
| 15149 | Jaweed | Assar |
| 20088 | Marisol | Baez |

| | | |
|---|---|---|
| 17671 | Kristina | Bailey |
| 13016 | Johni | Ballout |
| 11486 | Brianna | Bertrand |
| 272 | Carmen | Blanco |
| 16870 | Dayna | Bowles |
| 7181 | Anne | Cabrera |
| 2340 | Abel | Cachola |
| 8946 | Deisy | Campbell |
| 2352 | Heather | Cano |
| 828 | Celia | Carlton |
| 5157 | Steven | Chalker |
| 9424 | Maisha | Cherry |
| 2267 | Robyn | Corry |
| 16088 | Margee Mae | Dela Cruz |
| 9972 | Jose | Delgado |
| 17656 | Hardeep | Dhillon |
| 19069 | Michelle | Dias |
| 10940 | Meredieth | Dorado |
| 18907 | Regine Angela | Duhon |
| 2871 | Lamise | Elsayed |
| 2026 | Masoumeh | Esfandiari |
| 16671 | Consuelo | Estrada- Rodriguez |
| 17291 | Mary | Fatouh Albana |
| 17259 | Brittany | Francisco |
| 10054 | Diane | Gailey |
| 7533 | Candice | Gamez |
| 13048 | Elizabeth | Gardner |
| 12988 | Beshoy | Gerges |
| 2794 | Randall | Gibbs |
| 13626 | Devonna | Gilmore |
| 153 | Rachel | Goff |
| 8421 | Roxanna | Gonzalez |
| 1447 | Mehrnaz | Hakimi |
| 3166 | Stephanie | Han |
| 4997 | Tatiana | Hartz |
| 18078 | Jasmine | Hashemieh-Estes |
| 17146 | Deborah | Haycox |
| 3253 | Lisa | Helgerson |
| 10376 | Joanna | Hernandez |
| 17789 | Maribel | Hernandez |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | | |
|---|---|---|
| 16630 | Kaitlyn | Holdren |
| 5596 | Heng | Hsu |
| 22165 | Ryan | Hyams |
| 2439 | Mahran | Izoli |
| 23025 | Nikkolae | Jacinto |
| 23411 | Melanie | Jipp |
| 16937 | Jeanny | Keota |
| 8450 | Harleen | Khaira |
| 9308 | Myoungja | Kim |
| 23150 | Diane | Kim |
| 20697 | Tiffany | King |
| 8620 | Philip | Kitchen |
| 4404 | Amaris | Lane |
| 19661 | Shaina | Larmore |
| 18278 | Lyna | Le |
| 13859 | Michelle | Masshar |
| 2924 | Kelly | Matsuura |
| 13251 | Nora | Meincke |
| 8236 | Kyrollos | Mekail |
| 18263 | Shirin | Moghtanei |
| 19186 | Patricia | Moore |
| 5123 | Betty | Nabizadeh |
| 18384 | Maikel | Nagib |
| 22403 | Trent | Nelson |
| 12127 | Nikkie | Nguyen |
| 1718 | Marlon | Ordenana |
| 19930 | Shivjot | Pabla |
| 13117 | Elisha | Pennington |
| 23700 | Silva | Petrosyan |
| 3275 | Lieu | Pham |
| 23101 | Sarah | Pollard |
| 19579 | Steve | Quan |
| 24118 | Aryan | Rabbani |
| 23179 | Randall | Radtke |
| 23811 | Mariam | Rafiqi |
| 15683 | Tiffany | Samouha |
| 15855 | Michael | Schmidt |
| 4561 | Debbie | Schultz |
| 1178 | Daniel | Setiawan |
| 18681 | Pontea | Shabkhiz |

| | | |
|---|---|---|
| 23120 | Azaria | Shahbazian |
| 19351 | David | Stillman |
| 7464 | Jay | Surati |
| 600 | Amaar | Taha |
| 16850 | Alani | Tong |
| 923 | Robert | Wilson |
| 20569 | Mitchell | Woothen |
| 5031 | Jessica | Xe |
| 17989 | Amir | Zand |

Three (3) Settlement Class Members validly objected to the Settlement:

1. Tina Lee

2. Parvin Ghassemian

3. Trent Andrews

After thorough review and careful consideration, the Court overrules all objections made to the Settlement. The "proper standard for approval of the proposed [class action] settlement is whether it is fair, reasonable, adequate, and free from collusion—not whether the class members could have received a better deal in exchange for the release of their claims." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015). "In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class." *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *2 (S.D. Cal. Oct. 30, 2020); *Wilson v. TE Connectivity Networks, Inc.*, No. 14-CV-04872-EDL, 2019 WL 4242939, at *5 (N.D. Cal. Sept. 6, 2019) (same); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). For the reasons explained in the concurrently-issued Order, the Court finds the proposed Settlement is fair, reasonable, adequate, and free from collusion. The Court further finds Plaintiffs and their counsel have met their fiduciary obligations to the class.

9.     As of the Settlement Effective Date, each and every Released Claim as set forth in the Settlement Agreement, as amended, of each and every Settlement Class Member is and shall be deemed to be conclusively released as against the Released Parties.  All Settlement Class Members as of the Effective Date are hereby forever barred and enjoined from prosecuting the Released Claims against the Released Parties.

10.     The Settlement Administrator, Simpluris, Inc., shall establish a settlement fund to be funded by Defendants in accordance with the provisions of the Parties' Settlement Agreement.  The Settlement Administrator shall distribute: (1) checks representing the individual settlement amounts made payable to the Settlement Class Members; (2) Class Counsel's reasonable attorneys' fees and costs; (3) the Class Representatives Incentive/Service Awards; (4) payment to the LWDA; and (5) employee and employer payroll taxes.  The manner and timing of said payments shall be in accordance with the Settlement Agreement attached hereto as Exhibit A. The Court finds the manner and timing of payment is fair and reasonable. Any residual settlement funds remaining as a result of settlement checks that remain uncashed for the period set forth in the Settlement Agreement shall be paid to the unclaimed wages fund of the State of California. For administering the settlement, Simpluris shall be paid $98,750.00 out of the Gross Settlement Amount.

11.     Pursuant to Rule 23(g) of the Federal Rules of Civil Procedures, the Court hereby confirms the appointment of Michael S. Morrison of Alexander Morrison and Fehr LLP, Michael H. Boyamian and Armand R. Kizirian of Boyamian Law, Inc., Thomas W. Falvey of the Law Offices of Thomas W. Falvey, R. Craig Clark and Alicja A. Urtnowski of Clark Law Group, and Walter Haines of United Employees Law Group as Class Counsel.

1

2   12. The Court hereby awards Class Counsel a reasonable attorneys' fee in

3 the amount of $2,592,836.65, and their litigation costs in the amount of $32,385.77.

4 As explained in the concurrently-issued Order, these amounts are fair and reasonable

5 in light of Class Counsel's experience, the degree of success and the benefits being

6 conferred on the Class, the work performed on the case, and the litigation costs

7 incurred, among other factors. The Court further finds that Class Counsel has

8 adequately represented the interests of the Settlement Class and do not have any

9 conflicts of interests with respect to their representation of the Settlement Class.  The

10 Court further finds that the $2,592,836.65 of the $10,371,346.60 common fund

11 requested by Class Counsel for attorneys' fees is also reasonable under the lodestar

12 cross-check. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

13 2011). This amount represents a 1.34 multiplier of the lodestar, which the Court finds

14 reasonable.

15

16   13. The Court further approves the Class Representative Incentive/Service

17 awards for the Class Representatives as follows: Ten Thousand U.S. Dollars and

18 Zero Cents ($10,000.00 U.S.D.), each, to Sevag Chalian, Sigfredo Cabrera, Enko

19 Telahun, and Christine McNeely; and Three Thousand U.S Dollars and Zero Cents

20 ($3,000.00) to Patrick Brennan, each ($43,000 in total). The Court finds that the

21 Class Representatives have adequately represented the Settlement Class and do not

22 have any conflicts of interest affecting their status as Class Representatives for the

23 Settlement Class.

24

25   14. The California Labor and Workforce Development Agency ("LWDA"

26 shall be paid $56,250, which is its 75% share of the PAGA penalty.

27

28

15.     The Court finds that the Settlement treats Class Members equitably relative to each other and that the distribution formula for the Settlement is fair, reasonable, and equitable.

16.     The Court finds that the Notice provided to the Settlement Class complied with the Requirements of Fed. R. Civ. Proc. R. 23.  Specifically, the Notice to the Settlement Class Members was the best notice that was practicable under the circumstances, and provided individual notice to all Settlement Class Members who could be identified through reasonable effort. The Notice also clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

17.     The term "Final Effective Date" as used herein refers to the date the settlement becomes final as stated in the Settlement Agreement attached herewith.

18.     The Court shall maintain jurisdiction of this matter pursuant to enforce the terms of the Settlement Agreement.

//
//
//
//

19.     Each party is to bear their own costs, except as expressly provided in this Order and Judgment.

ENTERED:

DATED: <u>July 16, 2021</u>

_____
The Honorable André Birotte Jr.
Judge of the United States District Court for
the Central District of California

# EXHIBIT A

## GLOBAL SETTLEMENT AGREEMENT

This Global Settlement Agreement (the "**Agreement**"), is made and entered into by and between Claimants Sevag Chalian, Sigfredo Cabrera, Enko Telahun, Christine McNeely, Patrick Brennan, and May Eldanaf (together, "**Claimants**"), on behalf of themselves and on behalf of the putative class members proposed in this Agreement, on the one hand, and CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS, LLC ("**CVS**"), on the other, and by Alexander Krakow & Glick, the Law Offices of Thomas W. Falvey, Boyamian Law, Inc., Clark Law Group and United Employees Law Group.

WHEREAS, on July 20, 2016, Sevag Chalian filed a putative wage and hour class action against CVS in the Los Angeles County Superior Court of the State of California, and on December 5, 2016, CVS removed that action to the United States District Court for the Central District of California, Case No. 2:16-cv-08979, where it remains pending (the "**Central District of California Action**");

WHEREAS, on August 3, 2017, Sigfredo Cabrera filed a putative wage and hour class action against CVS in Alameda County Superior Court of the State of California;

WHEREAS, on September 5, 2017, Mr. Cabrera amended his action to add Enko Telahun as a second named plaintiff;

WHEREAS, on October 9, 2017, CVS removed Mr. Cabrera's and Mr. Telahun's action to the United States District Court for the Northern District of California, Case No. 3:17-cv-05803 (the "**Northern District of California Action**");

WHEREAS, on March 19, 2018, Mr. Cabrera and Mr. Telahun filed a Second Amended Complaint naming Christine McNeely as a third named plaintiff in the Northern District of California Action;

WHEREAS, on July 10, 2018, Mr. Cabrera, Mr. Telahun, and Ms. McNeely sent CVS a proposed Third Amended Complaint naming Patrick Brennan as a fourth named plaintiff in the Northern District of California Action;

WHEREAS, on September 14, 2018, the Northern District of California (Hon. William Alsup) denied CVS's motion to compel Ms. McNeely's claims to arbitration, which decision CVS appealed to the United States Court of Appeals for the Ninth Circuit, Case No. 18-15459 (the "**McNeely Appeal**");

WHEREAS, on September 25, 2018, the Northern District of California (Judge William Alsup) granted summary judgment in CVS's favor on Mr. Cabrera's and Mr. Telahun's claims and, on January 1, 2019, entered partial judgment pursuant to Fed. R. Civ. P. 54(b), which decision Mr. Cabrera and Mr. Telahun appealed to the United States Court of Appeals for the Ninth Circuit, Case No. 19-15059 (the "**Cabrera/Telahun Appeal**");

EXHIBIT "A"

WHEREAS, on March 7, 2019, May Eldanaf submitted a letter pursuant to the California Private Attorney General Act, Cal. Lab. Code §§ 2698, *et seq.* ("**PAGA**") to the California Labor and Workforce Development Agency PAGA Administrator. The letter claimed CVS failed to pay her and other pharmacists for mandatory training they were required to complete and that she intended to file a wage and hour class action (the "**Eldanaf PAGA Claim**");

WHEREAS, on July 29, 2019, Claimants and CVS (together, "**the Parties**") mediated the Central District of California Action, the Northern District of California Action (as set forth in the proposed Third Amended Complaint), and the Eldanaf PAGA Claim (collectively, the "**Wage and Hour Actions**") in San Francisco, California before David A. Lowe, Esq., of Rudy Exelrod Zieff & Lowe LLP, a prominent and well-respected mediator in wage and hour class litigation;

WHEREAS, although the Actions did not settle at the July 29, 2019 mediation, subsequent discussions and arms-length negotiations through Mr. Lowe caused the parties to schedule a second day of mediation;

WHEREAS, on November 11, 2019, the Parties engaged in a second day of mediation before David A. Lowe, Esq., and came to an agreement in principal to resolve all pending wage and hour disputes between them;

WHEREAS, CVS denies that is has committed any wrongdoing or violated any state or federal law pertaining to payment of wages or hours of work and has vigorously defended the claims asserted by Claimants;

WHEREAS, to avoid the expense and burden of further litigation and/or arbitration, the Parties now desire to resolve any and all California wage and hour claims, including PAGA claims, that were or could have been asserted by Claimants on behalf of (i) anyone who held an hourly, non-exempt retail pharmacy position in California from August 3, 2014 to the date the court enters an order granting preliminary approval of the class action settlement; and (ii) anyone who worked in an hourly, non-exempt retail pharmacist position in Regions 65 and 72 from July 20, 2012 to the date the court enters an order granting preliminary approval of the class action settlement whose claims are not subject to arbitration and whose LEARNet and/or Siteminder data indicates activity when time punch records do not show he or she was clocked in; and

WHEREAS, for purposes of settlement, CVS represents that there are approximately 19,000 people who have or could have asserted the claims identified in the preceding paragraph;

NOW, THEREFORE, in consideration of the foregoing and the promises contained herein, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **DEFINITIONS.**

    In addition to various terms defined elsewhere, the terms listed in this Section shall have the meanings ascribed to them for purposes of this Agreement:

EXHIBIT "A"

1.1 **Settlement Administrator** means Simpluris, Inc., the entity jointly selected by the Parties to provide notice to the Settlement Classes (as defined herein) and administer payments under the terms of this Agreement.

1.2 **Class Counsel** means Alexander Krakow + Glick LLP, the Law Offices of Thomas W. Falvey, Boyamian Law, Inc., Clark Law Group, and United Employees Law Group. For purposes of providing any notices required under this Agreement, Class Counsel shall refer to Michael Morrison, Alexander Krakow + Glick LLP, 1900 Avenue of the Stars, Suite 900, Los Angeles, California 90067.

1.3 **Defendant's Counsel or CVS's Counsel** means Greenberg Traurig LLP. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to James N. Boudreau, Greenberg Traurig LLP, 1717 Arch Street, Suite 400, Philadelphia, Pennsylvania 19103.

1.4 **Final Approval Order** means the order entered by the United States District Court for the Central District of California that finally and unconditionally approves of the settlement, grants final certification of the Settlement Class for settlement purposes only, authorizes payment to Settlement Class Members, the Settlement Administrator, Class Counsel, and the State of California, as provided for in this Agreement, fully and finally extinguishes the Released Claims as set forth herein, and dismisses the consolidated Central District of California and Northern District of California Actions in their entirety with prejudice and without costs (except as otherwise provided herein), with the Court retaining jurisdiction over the Actions for purposes of ensuring compliance with the terms of this Agreement and any order of the Court issued in connection therewith.

1.5 **Notice Period** means the period beginning on the date the Settlement Administrator mails notice of the Parties' settlement, as provided for in Section 7.2, and ending on the date forty-five (45) days thereafter, except that the Parties may agree to extend the Notice Period for people to whom notice was mailed and returned as undeliverable, to the extent that the Settlement Administrator re-sends notice after following up through skip-tracing efforts. The Notice Period may only be extended under these circumstances upon agreement and consent of all Parties.

1.6 **Pharmacist Settlement Class** means hourly, non-exempt retail pharmacists who worked in Regions 65 or 72 in California between July 20, 2012 and the date of the Preliminary Approval Order, whose claims are not subject to arbitration and which have not previously been released and/or adjudicated, and whose LEARNet and/or Siteminder data indicates activity when time punch records do not show he or she was clocked-in.

1.7 **Retail Pharmacy Settlement Class** means any person who held an hourly, non-exempt position in a CVS retail pharmacy in the State of California between August 3, 2014 and the date of the Preliminary Approval Order who has not previously released and/or adjudicated the Released Claims.

1.8   **Preliminary Approval Order** means an order entered by the United States District Court for the Central District of California that conditionally certifies the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class for settlement purposes only, for the purposes of providing notice as described in Section 7, that preliminarily approves of the Parties' proposed settlement, that requires any requests for exclusion from the settlement or objections to the settlement to be postmarked and received by the last day of the Notice Period, and that sets a date for a hearing concerning final approval of the settlement (the **"Final Approval Hearing"**) no sooner than 100 days but no later than 125 days after the entry of the Preliminary Approval Order.

1.9   **QSF** means a qualified settlement fund, within the meaning of Treasury Regulation § 1.468B-1, *et seq.*, set up by the Settlement Administrator for administration of the settlement.

1.10  **Released Claims** means those claims released by the Settlement Class Members as set forth in Section 4.3.

1.11  **Settlement Class Members** or **Settlement Class** refers to the people in the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class who do not opt out of this settlement pursuant to Section 7.4.

1.12  **Settlement Effective Date** means the date after which the Final Approval Order will be final and no longer subject to appeal. Specifically:

    a.   If no appeal is taken, on the date on which the time to appeal (including any possible extension of time to appeal) has expired (sixty-one (61) days absent a longer extension), or

    b.   If an appeal is taken, the date on which all appeals, including petitions for rehearing or re-argument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal (including any potential extension of time) has expired.

1.13  **Wage and Hour Actions** means the Central District of California Action, the Northern District of California Action (as set forth in the proposed Third Amended Complaint), and the Eldanaf PAGA Claim, collectively.

## 2. NO ADMISSION OF LIABILITY AND NO CONCESSION AS TO THE MERITS.

CVS enters into this Agreement to avoid the risks, uncertainty, expense and burden of further litigation. CVS denies that it violated the law in any manner and specifically denies that it violated any statutory or common law as alleged by Claimants. The Parties agree and acknowledge that neither this Agreement nor their settlement shall be alleged or construed by anyone to be an admission of any violation of any federal, state or local statute, ordinance, or regulation, or of any duty owed by CVS to current or former employees, and that the sole purpose of this Agreement is to avoid the cost of further

litigation. This Agreement is a settlement document and shall be inadmissible as evidence in any proceeding, except in a proceeding to approve, interpret, or enforce its terms.

## 3. MAXIMUM SETTLEMENT AMOUNT AND ALLOCATION

3.1 **Maximum Settlement Amount** as used herein means the maximum amount that will be paid under this Agreement, inclusive of all payments made to Settlement Class Members, to Claimants, including any service awards paid to Claimants, to Class Counsel for attorneys' fees and costs, to the California Labor and Workforce Development Agency ("LWDA") in settlement of PAGA claims, to the Settlement Administrator for settlement administration costs, including CAFA notices, and of penalties, interest and taxes.

The Maximum Settlement Amount is equal to Nine Million Seven Hundred Fifty Thousand U.S. Dollars and Zero Cents ($9,750,000.00 U.S.D.). In no event shall CVS be liable for more than the Maximum Settlement Amount as a result of this settlement, except for the employer's share of payroll taxes, which CVS shall be obligated to pay separate and apart from the Maximum Settlement Amount. The Maximum Settlement Amount shall be allocated as described in this Section 3.

3.2 **Attorneys' Fees And Litigation Costs.**

a. Class Counsel may seek court approval of, and CVS will not oppose Class Counsel's request for, attorneys' fees in an amount not to exceed 30% of the Maximum Settlement Amount, Two Million Nine Hundred and Twenty-Five U.S. Dollars and Zero Cents ($2,925,000.00 U.S.D.), in addition to reasonable litigation costs incurred by Class Counsel in litigation and settlement of the Wage and Hour Actions (not to exceed $50,000). Any such request shall be filed no later than twenty-eight (28) calendar days before the Final Approval Hearing.

b. Any attorneys' fees and costs approved and paid as part of this settlement ("**Attorneys' Fees and Costs**") shall be paid from the Maximum Settlement Amount.

c. Any amounts not approved and awarded by the Court shall be added to the portion of the Net Settlement Amount that does not include PAGA payments for pro rata distribution to Settlement Class Members.

d. If the Court reduces or does not approve the requested Attorneys' Fees and Costs, Class Counsel shall not have the right to revoke this settlement or Agreement, which shall remain binding.

e. The Settlement Administrator shall issue Class Counsel an IRS Form 1099 for the payment of Attorneys' Fees and Costs, as required by law.

f.    Attorneys' Fees and Costs shall be paid directly to Class Counsel, by wire transfer from the QSF within fourteen (14) calendar days after the Settlement Effective Date.

### 3.3   Service Awards.

a.    In exchange for their service as Class Representatives and/or as Representative for the State of California under PAGA, Class Counsel may petition for an award of service payments to Claimants. Any such petition shall be filed no later than twenty-eight (28) calendar days before the date of the Final Approval Hearing.

b.    Any service payments awarded to Claimants shall be paid from the Maximum Settlement Amount and shall reduce the Net Settlement Amount.

c.    Any service payments awarded to Claimants shall be in addition to any payments they are entitled to receive as members of the Settlement Class pursuant to Section 3.6.

d.    Any such service payments awarded by the Court shall be distributed by the Settlement Administrator in separate checks mailed contemporaneously with the mailing of checks pursuant to Section 3.6(d). Such service payment checks shall be allocated 100% as non-wage income, for which a Form 1099 shall issue to the Claimant, and shall be reported to state and federal taxing authorities as such. These checks will expire one-hundred and eighty (180) calendar days after they are issued, but a failure to deposit or cash a check within this time shall have no effect on the Claimant's release of Released Claims pursuant to Section 4.2.

e.    CVS will not oppose any request by Class Counsel for service payments to the Claimants of up to the following amounts:

    i.    Ten Thousand U.S. Dollars and Zero Cents ($10,000.00 U.S.D.) each to Sevag Chalian, Sigfredo Cabrera, Enko Telahun, and Christine McNeely; and

    ii.    Three Thousand U.S Dollars and Zero Cents ($3,000.00) to Patrick Brennan.

f.    To the extent that the Court does not approve the entire amount of service payments requested by Class Counsel for each Claimant, the outstanding and unapproved portion of the total requested amount shall be added to the portion of the Net Settlement Amount that does not include PAGA payments for pro rata distribution to Settlement Class Members.

### 3.4   PAGA Payments. Seventy-Five Thousand U.S. Dollars ($75,000.00 U.S.D.) of the Maximum Settlement Amount shall be allocated to the settlement of the PAGA claims asserted by Claimants. Seventy-five percent (75%) of the PAGA allocation,

or $56,250.00 U.S.D., shall be paid to the State of California LWDA no later than fourteen (14) calendar days following the Settlement Effective Date. Twenty-five percent (25%) of the PAGA allocation, or $18,750.00 U.S.D., shall be paid to Retail Pharmacy Settlement Class members employed between August 3, 2016 and the date of preliminary approval ("PAGA Payment"), as described below.

3.5 **Settlement Administration Costs.** Settlement administration costs, including but not limited to the costs of printing, distributing, and tracking documents for this settlement; distributing notices and settlement payments to Settlement Class Members; providing necessary reports and declarations; and other duties and responsibilities necessary to administer this settlement, as requested jointly by the Parties, shall be paid out of the Maximum Settlement Amount by wire transfer from the QSF within One-Hundred and Eighty (180) calendar days after the Settlement Effective Date. Settlement Administration Costs shall not exceed $75,000.00.

3.6 **Net Settlement Amount.** The "Net Settlement Amount" is the Maximum Settlement Amount less Attorneys' Fees and Litigation Costs, Service Awards, PAGA Payment to the California LWDA, and Settlement Administration Costs.

    a. A portion of the Net Settlement Amount equal to $75,000.00 U.S.D. shall be deemed penalties and interest paid pursuant to the PAGA (of which 75% (or $56,250.00 U.S.D.) shall be distributed to the LWDA and 25% of which (or $18,750.00 U.S.D.) shall be allocated for settlement of employees' PAGA claims and thus remain in the Net Settlement Amount). A separate PAGA-only fund will be created from the Net Settlement Amount to distribute the PAGA Payment ($18,750.00) to Retail Pharmacy Settlement Class members employed between August 3, 2016 and the date of preliminary approval.

    b. Of the remaining Net Settlement Amount (which excludes the $18,750.00 PAGA Payment to employees), one-third (1/3) shall be deemed wages subject to Form W-2 reporting, one-third (1/3) shall be deemed non-PAGA civil penalties subject to Form 1099 reporting, and one-third (1/3) shall be deemed interest subject to Form 1099 reporting. The Settlement Administrator shall be responsible for issuing to Settlement Class Members a form W-2 for the amounts deemed wages and an IRS Form 1099 for the amounts allocated as penalties and interest. The PAGA portion will be treated as civil penalties subject to Form 1099 reporting.

    c. Payments of the Net Settlement Amount to Settlement Class Members shall be reduced as necessary to account for mandatory payroll withholdings. Recipients of payments pursuant to this Agreement are exclusively responsible for all other tax obligations except the employer's share of payroll taxes, which shall be paid by CVS separate and apart from the Maximum Settlement Amount.

    d. The Settlement Administrator shall issue and mail all settlement payment checks to each Settlement Class Member who does not opt out of the settlement within twenty-one (21) calendar days of the Settlement Effective Date.

e. **Payments to Settlement Class Members:** Except as otherwise provided for herein, the Settlement Administrator shall allocate the non-PAGA portion of the Net Settlement Amount among Settlement Class Members as follows.

    i. The Settlement Administrator shall calculate the total number of weeks worked and the weekly rate for all members of the Pharmacist Settlement Class Members and the Retail Pharmacy Settlement Class. If a Settlement Class Member was employed for only part of a workweek, he or she will be credited for purposes of this Settlement with a fraction of the workweek, rounded up or down to the nearest two-digit decimal and based upon a five-day work week. Each Settlement Class Member's share shall be determined by multiplying an individual's number of qualifying workweeks by the individual's weekly rate (i.e., the individual's rate of pay for a week, which is his or her hourly rate of pay multiplied by 40 hours) for the applicable class period. This number will be divided by the total number of workweeks worked by all Settlement Class Members multiplied by the total amount of weekly rates for all Settlement Class Members (i.e., sum of all Settlement Class Members' weekly rates) during the applicable class period. The Settlement Administrator shall withhold and separately pay to the relevant government entities all applicable employee-side payroll tax withholdings from the individual settlement shares of the Settlement Class Members.

$$\text{Net Settlement Amount} \quad \text{X} \quad \frac{(\text{Individual Weekly Pay Rate x Individual Workweeks})}{(\text{Total of all Settlement Class Members' Weekly Pay Rates x Total Workweeks for all Settlement Class Members})}$$

    ii. With respect to the PAGA-portion of the Net Settlement Amount, this shall be distributed in the same manner as the non-PAGA portion, except that payments will be made to all members of the Retail Pharmacy Settlement Class employed between August 3, 2016 and the date of preliminary approval regardless of whether they opt-out.

## 4. RELEASES

4.1 The releases contained in this Section apply to release CVS and their parent companies, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, business units, shareholders, members, and all of its and their predecessors and successors, officers, directors, agents, employees and assigns, and all persons acting through, under or in concert with them (the **"Released Parties"**), as set forth below.

EXHIBIT "A"

4.2  **General Release By Claimants (Except May Eldanaf).** As of the Settlement Effective Date, in consideration for the promises set for this in this Agreement, including the service awards, each Claimant, individually, with the exception of May Eldanaf, and for their successors, assigns, agents, executors, heirs, and personal representatives, voluntarily waives and releases any and all claims, obligations, demands, actions, rights, causes of action and liabilities against the Released Parties of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, state, federal and/or local law, statute, ordinance, regulation, constitution, common law, or other source of law or contract, whether known or unknown and whether anticipated or unanticipated, including all claims arising from or relating to any and all acts, events and omissions occurring prior to the date of the signing of this Agreement, including but not limited to, all claims which relate in any way to each Claimant's employment and/or separation of employment with CVS or any of the Released Parties.

**Section 1542 of the California Civil Code**. This Agreement is intended to be effective as a general release of and bar to all claims as stated in this Section 4.2. Claimants specifically waive the protections of California Civil Code Section 1542, which states:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

CVS and Claimants, except May Eldanaf, acknowledge that Claimants may later discover claims or facts in addition to or different from those which Claimants now know of or believe to exist with regards to the subject matter of this Agreement, and which if known or suspected at the time of executing this Agreement, may have materially affected its terms. Claimants, except May Eldanaf, nevertheless waive any and all claims that might arise as a result of such different or additional claims or facts.

**Specific Release of ADEA Claims**. In further consideration of the payments and benefits provided to Claimants in this Agreement, Claimants, with the exception of May Eldanaf, irrevocably and unconditionally waive, release, and discharge the Released Parties from any and all claims, whether known or unknown, arising under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, as amended, and its implementing regulations. By signing this Agreement, Claimants each acknowledge and confirm that they:

     (a)     have read this Agreement in its entirety and understand all of its terms;

     (b)     have been advised in writing to consult with an attorney and have in fact consulted with an attorney before signing this Agreement;

     (c)     knowingly, freely, and voluntarily agree to all of the terms and conditions set out in this Agreement including, without limitation, the waiver, release, and covenants contained in it;

     (d)     are executing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which Claimants are otherwise entitled;

     (e)     were given at least twenty-one (21) days to consider the terms of this Agreement and to consult with an attorney of their choice before signing it, although Claimants may sign the Agreement sooner if desired;

     (f)     understand that they have seven (7) days from the date of signing this Agreement to revoke it by delivering notice of revocation to James N. Boudreau, Esq., Greenberg Traurig LLP, 1717 Arch Street, Suite 400, Philadelphia, Pennsylvania, 19103 by overnight delivery in a manner in which receipt can be confirmed before the end of the seven (7) day period; and

     (g)     understand that the release in this paragraph does not apply to rights and/or claims that may arise after the date on which Claimants sign this Agreement.

4.3    **Release by Settlement Class Members.** As of the Settlement Effective Date, all Settlement Class Members (including Claimants) forever, fully, irrevocably and unconditionally release and discharge the Released Parties from all claims, causes of action, and legal theories of relief that were alleged or that could have been alleged or otherwise raised in Wage and Hour Actions, from August 3, 2014 until the date of the Preliminary Approval Order for Retail Pharmacy Settlement Class members and from July 20, 2012 until the date of the Preliminary Approval Order for Pharmacist Class members (whichever period is longer if a Settlement Class Member is a member of both the Retail Pharmacy and Pharmacist Classes) (the "**Released Claims**"). The Released Claims include, but are not limited to: (a) failure to pay minimum wages; (b) failure to pay overtime wages; (c) failure to pay all wages or amounts due under the Labor Code and/or federal Fair Labor Standards Act; (d) failure to comply with Labor Code Sections 850, 851, 851.5, 852 and/or 29 U.S.C. § 201 *et seq.*; (e) failure to provide proper meal periods, or premium pay for non-compliant meal periods; (f) failure to authorize and permit rest periods, or premium pay for non-compliant rest periods; (g) failure to provide complete, accurate, and/or properly formatted wage statements; (h) failure to reimburse all necessary business expenses; (i) failure to timely pay wages due or final wages due; (j) all claims under the California Private Attorneys General Act of 2004 ("PAGA") that were or could have been asserted based on the facts, claims, causes of action

EXHIBIT "A"

or legal theories described above or on any of the claims, causes of action, facts or legal theories of relief pleaded in the Wage and Hour Actions; and (k) all damages, penalties, including penalties under Labor Code Sections 203 and 558, interest, costs (including attorney's fees) and other amounts recoverable under said claims or causes of action as to the facts and/or legal theories alleged or which could have been alleged in the operative complaint. The period of the Released Claims shall extend to the date of the Preliminary Approval Order.

4.4     All Settlement Class Members understand and agree that the Releases described above are full and final releases applying to both those Released Claims that are presently known, anticipated, or disclosed to the Settlement Class Members and to the Released Claims that are presently unknown, unanticipated, or undisclosed to the Settlement Class Members.

4.5     To release claims under the Fair Labor Standards Act that were or could have been asserted based on the facts, claims, causes of action or legal theories described above or on any of the claims, causes of action, facts or legal theories of relief pleaded in the Wage and Hour Actions, each check shall be affixed with the following language on the back: "I have received and read the Class Notice in *Chalian, et al. v. CVS*. By negotiating this check and accepting payment, I: (i) consent to join this lawsuit; (ii) elect to participate in the Settlement, and (iii) agree I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and Notice. This Release shall become effective on the Settlement Effective Date." Uncashed checks shall be deposited in California's Unclaimed Property Fund, as set forth in section 10.5 below.

5. **PRELIMINARY APPROVAL OF SETTLEMENT.** All terms of this Agreement are contingent upon final approval of the Parties' settlement and final certification by the Court of the Settlement Class for settlement purposes only. The Parties agree to cooperate and take all steps necessary and appropriate to obtain a Preliminary Approval Order and a Final Approval Order and to otherwise effectuate all aspects of this Agreement.

5.1 **Voluntary Dismissal of Appeals.** No later than seven (7) calendar days after the date on which all Parties to this Agreement have executed it, the Parties shall file a stipulated motion to voluntarily dismiss the appeals without prejudice to reinstate them in the event this Agreement is not approved and final judgment is not entered. The stipulated motions shall inform the Ninth Circuit Court of Appeals that Appellants and Appellees have reached a settlement of said Appeals contingent on the settlement being finally approved in the Central District of California. The stipulated motions shall also request the Ninth Circuit Court of Appeals transfer the Northern District of California Action to the United States District Court for the Central District of California, as a related first-filed Action.

5.2 **Transfer of Northern District of California Action.** In the event the Ninth Circuit Court of Appeals does not transfer the Northern District of California Action within seven (7) calendar days of the Ninth Circuit Court of Appeals approving the stipulated motions set forth in in Paragraph 5.1, the Parties shall file a stipulation requesting the Northern District of California Action be transferred to the Central District of California (the first-filed Action), and that the two Actions be consolidated in the Central District of California for settlement purposes in accordance with 28 U.S.C. §§ 1404, 1407 and Fed. R. Civ. P. 42. Should the Northern District of California decline to transfer the Northern District of California Action for whatever reason, Claimants agree that no later than seven (7) calendar days after such declination is entered on the docket, they will file a joint stipulation of voluntary dismissal without prejudice of the Northern District of California Action so the claims that were asserted or could have been asserted in the Northern District of California Action may be resolved via settlement in the Central District of California Action as per Section 5.3.

EXHIBIT "A"

5.3 **Amended Complaint.** Within thirty (30) calendar days of the date on which the Northern District of California Action is transferred and/or voluntarily dismissed without prejudice, Class Counsel shall, with CVS's written consent, file an Amended Complaint in the Central District of California Action pursuant to Fed. R. Civ. P. 15(a)(2). The Parties agree that the purpose of this Amended Complaint is to consolidate the parties and claims, to the extent possible, asserted in the Wage and Hours Actions in the Central District of California for settlement purposes only, and that said claims added via the amendment (*i.e.*, the claims alleged or that could have been alleged in the Northern District of California Action) shall relate back to August 3, 2014, and no earlier, notwithstanding any statute of limitations that might provide for an earlier relation back date. The Parties agree to cooperate and not oppose any actions necessary to effectuate the consolidation of the Wage and Hour Actions.

    a. The Parties stipulate and agree that CVS shall not be required to serve or file a response to the Amended Complaint. If for any reason: (i) the Court denies the Parties' request for Preliminary Approval, (ii) the Court does not enter a Final Approval order; or (iii) the Settlement Effective Date does not occur, Class Counsel shall withdraw the Amended Complaint. In the event Class Counsel withdraws the Amended Complaint pursuant to this paragraph, no Party shall argue CVS's consent to the filing of the Amended Complaint or Class Counsel's withdrawal of the same has any bearing on the merits of any subsequent motion or effort to amend or dismiss the operative complaint in the Central District of California Action, and Claimants shall be free to refile the Appeals in the Northern District of California Action as if they had not been voluntarily dismissed without prejudice.

5.4 **Class Certification for Settlement Purposes Only.** CVS stipulates to the certification of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class, defined in Section 1 to include the alleged putative PAGA representative action, for settlement purposes only. If the Court does not grant either preliminary or final approval of this settlement, the Parties stipulate that class certification will be revoked without prejudice.

    a. If the Court does not enter a Final Approval Order or the settlement or the Settlement Effective Date does not occur, CVS expressly reserves its right to challenge the propriety of class certification and/or or the appropriateness of any PAGA representative action for any purpose as if the Parties had never entered into this Agreement.

    b. The proposed form of class certification order shall expressly state the Parties and Class Counsel agree certification of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class is a conditional certification for settlement purposes only, and that CVS retains its right to object to class certification and/or the appropriateness of a representative action in the Central District of California Action or in any other putative class or representative action, whether a wage and hour action or otherwise.

13 of 23

c. The Parties and Class Counsel agree that, if approved, certification of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class is in no way an admission by CVS that certification is proper in the Central District of California Action or in any other putative class or representative action. The Parties and Class Counsel further agree that the certification of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class for settlement purposes, and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, shall not be admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation the Wage and Hour Actions.

## 5.5 Motion for Preliminary Approval of Settlement.

a. The Parties agree that they will sign a mutually agreeable Joint Motion for Settlement Class Certification and Preliminary Approval of Class Action (the "**Joint Motion**") seeking class certification for settlement purposes only and preliminary approval of the Parties' proposed class action settlement. Claimants will file the Joint Motion within twenty-eight (28) calendar days of filing their Amended Complaint in the Central District of California Action, unless another date is agreed to in writing by the Parties.

b. The Parties agree that if the Court does not approve any material term in the Parties' Joint Motion or requires as a condition to granting the Joint Motion any term that effects a material change in this Agreement, then this Agreement may be voided at either Party's option. The Parties further agree that CVS being required to pay any amount greater than the amount specified in Section 3.1 (with the exception of employer taxes) shall be deemed a material change that will allow CVS (at its option) to void the Settlement. If CVS exercises its option under this section to void the Settlement, it alone shall be responsible for any expenses incurred as a result of administering the Settlement to date, including, but not limited to, expenses associated with the mailing of Class Notice. The Parties further agree that any ruling the Court may make regarding Class Counsel's attorneys' fees and costs pursuant to Section 3.2 shall not constitute a material change in this Agreement, unless such award has the effect of increasing the total amount CVS must pay in complete settlement of all claims addressed by this Agreement.

c. In conjunction with the filing of the Joint Motion, the Parties will jointly request that the Court hold a fairness hearing regarding the Parties' request for approval of their proposed settlement not less than one hundred (100) calendar days after the filing of the Joint Motion. Counsel for the Parties will communicate with the Clerk of the Court and make any further filings necessary to secure the approval of their request.

EXHIBIT "A"

## 6. NOTICES MANDATED BY STATUTE.

6.1     Upon the filing of the Joint Motion pursuant to Section 5.5, the Parties will instruct the Settlement Administrator to mail notices of the Parties' proposed settlement to an "appropriate federal official" and "appropriate state officials" (collectively, "Government Officials") no later than ten (10) days thereafter as required by 28 U.S.C. § 1715.

6.2     The Settlement Administrator, with CVS's assistance, shall prepare the notices referenced in the preceding Section, which shall include the information required by 28 U.S.C. § 1715.

6.3     The mailings described in this Section shall not be subject to the non-disclosure obligations in Section 11, and neither Party shall be deemed in breach of those non-disclosure obligations as a result of the Settlement Administrator's mailing of such materials to the Government Officials or as a result of any other disclosures made to Government Officials regarding such mailings.

6.4     Pursuant to Labor Code § 2689 *et seq.*, Claimants Cabrera, Telahun, and Eldanaf filed a PAGA claim notice with the LWDA and sent a copy to CVS. More than 60 days have elapsed since the filing of the PAGA claim notice(s). Accordingly, the Amended Complaint contemplated by Section 5.3 will include a PAGA claim. Claimants agree to provide a file-stamped copy of the Amended Complaint to the LWDA. Claimants further agree to provide a copy of this Agreement to the LWDA, along with any judgments or orders from the Court pertaining to PAGA penalties.

## 7. NOTICE TO POTENTIAL SETTLEMENT CLASS MEMBERS.

7.1     **Class Member Data.** Within fourteen (14) calendar days after the Court grants Preliminary Approval of the Parties' proposed settlement, CVS will provide the Settlement Administrator and Class Counsel with a list, in electronic form, of the names, last known addresses, telephone numbers (to the extent readily available), dates of employment, and gross pay rates, of all Pharmacist Settlement Class and the Retail Pharmacy Settlement Class members. The data provided by CVS to the Settlement Administrator pursuant to this Agreement (other than the address and telephone information) shall be presumed to be accurate unless otherwise challenged by a Settlement Class Member as provided in Section 7.3.

7.2     **Mailing of Notices.**

a.     Within twenty-eight (28) calendar days after the Court grants Preliminary Approval of the Parties' proposed settlement, the Settlement Administrator will compile and mail to members of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class notice of the Parties' proposed settlement in a form agreed upon by the Parties (the "**Class Notice**"). The Class Notice will contain an estimated individual settlement payment, dates of employment, instructions for opting out of the settlement, and instructions for objecting to the settlement and/or the motion for attorneys' fees and costs.

EXHIBIT "A"

b.   The Settlement Administrator shall send the Notice by certified First Class U.S. Mail to each member of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class at such individuals' last known address as provided by CVS.

c.   For any returned Notices, the Settlement Administrator shall conduct reasonable address verification efforts consistent with the customary practices in the settlement administration industry and, within forty-five calendar (45) calendar days of the initial mailing, shall re-mail Notice Packets to any class member whose initial Notice Packet was returned to the Settlement Administrator as undeliverable.

d.   The Settlement Administrator shall notify Class Counsel and CVS's Counsel of any Notice Packets returned as undeliverable.

7.3   **Disputes to Class Member Data.** Settlement Class Members will have the opportunity, should they disagree with CVS's records regarding their dates of employment, to provide documentation and/or an explanation to show contrary dates of employment. If there is a dispute the Settlement Administrator shall determine the eligibility for, and the amounts of, any payments under the agreement. The Settlement Administrator's determination shall be binding upon the Settlement Class Member and the Parties.

7.4   **Opting Out of the Settlement.** Individuals may request to be excluded from the Settlement Class (but not the PAGA representative action) by sending a written letter to the Settlement Administrator stating that they want to opt out of or be excluded from the Settlement Classes. This letter must include the individual's name, address, telephone number, signature and the last four digits of his or her Social Security Number ("**Opt-Out Letter**"). To be effective, an Opt-Out Letter must be (A) postmarked during the Notice Period and (B) received by the Settlement Administrator no later than seven (7) calendar days after the close of the Notice Period. Any Pharmacist Settlement Class member and/or Retail Pharmacy Settlement Class member who does not timely opt out will become a Settlement Class Member and will be bound by the release(s) set forth in Section 4.3. The Settlement Administrator will periodically inform both Class Counsel and CVS of any Opt-Out Letters received.

7.5   **Objecting to the Settlement and/or Motion for Attorneys' Fees and Costs.** Individuals (other than those who have opted out pursuant to Section 7.4) may present objections to the proposed settlement and/or motion for attorneys' fees and costs at the Final Approval Hearing. To do so, an objector must first present his or her objections to the Settlement Administrator in writing. To be considered, such objections must be postmarked during the Notice Period and received by the Settlement Administrator no later than seven (7) calendar days after the close of the Notice Period. The Settlement Administrator shall file any and all objections with the Court within fourteen (14) calendar days of the close of the Notice Period.

a.  An objector has the right to appear at the Final Approval Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Final Approval Hearing must state his or her intention to do so at the time he/she submits his/her written objections to the Settlement Administrator. Any objector may withdraw his/her objections at any time. No Settlement Class Member may appear at the Final Approval Hearing to object to the settlement and/or motion for attorneys' fees and costs unless he/she has filed a timely objection that complies with Section 7.5.

## 8. FINAL APPROVAL OF SETTLEMENT.

8.1  Within 35 days of the close of the Notice Period, the Parties will file a joint motion seeking a Final Approval Order as defined in Section 1.4 above.

8.2  The Parties may file written responses to any filed objections with the Court at the same time they file their motion for final approval of the settlement.

8.3  The Parties agree that if the settlement does not become final for any reason, the Parties will cooperate to place themselves in the exact position as if no settlement had been attempted. The Parties agree the Amended Complaint in the Central District of California Action shall be withdrawn, any settlement classes shall be decertified without prejudice, and the Action shall proceed in the exact form it was in before this Agreement. Similarly, the Eldanaf PAGA Claim may proceed as if no settlement has been attempted. Regarding the Northern District of California Action, Claimants may refile their appeals in the exact same form as they existed immediately prior to the execution of this Agreement, and CVS agrees that any applicable statute(s) of limitation shall relate back to the same extent as if the Action had not been voluntarily dismissed pursuant to this Agreement. CVS retains the right to contest the merits of any and all claims as if the settlement had never been contemplated. This includes, but is not limited to, the right to contest class certification and/or the propriety of a representative action in any form in any proceeding. During the period of the Settlement approval process, all statues of limitations shall be tolled as to the Eldanaf PAGA claim.

## 9. FUNDING OF SETTLEMENT ACCOUNT.

Within ten (10) business days after entry of a Final Approval Order by the Court, CVS, as transferor, will transfer funds in the amount of the Maximum Settlement Amount into the QSF. The Settlement Administrator will be the administrator of the QSF.

9.1  The amount deposited into the QSF plus interest, less any notice and administrative costs that have been incurred, shall be returned to CVS within 5 business days of any of the following events: (i) CVS elects to terminate the settlement in accordance with the terms of this Agreement, including Section 5.5(b) or Section 13 below; (ii) a Final Approval Order entered by the District Court is set aside by an appellate court, unless otherwise agreed in writing by the Parties; or (iii) the settlement is terminated in accordance with Section 14.

EXHIBIT "A"

9.2 Except as provided for in the preceding paragraph, all funds specified in this section shall remain in the QSF until the Settlement Effective Date.

## 10. PAYMENTS TO SETTLEMENT CLASS MEMBERS.

10.1 Following the Settlement Effective Date, the Settlement Administrator shall mail each Settlement Class Member his or her share of the Net Settlement Amount.

10.2 Checks issued pursuant to this Agreement shall expire one hundred and eighty (180) calendar days after they are issued, but a failure by any Settlement Class Member to deposit or cash a check within the period allotted shall have no effect on that individual's release pursuant to Section 4.3. Subject to good cause shown by the Settlement Class Member, the Settlement Administrator may reissue a check for up to an additional thirty (30) calendar days following the original one hundred and eighty (180) day period.

10.3 If any issued checks are not cashed or deposited after 60 calendar days of issuance, the Settlement Administrator will send a written reminder to each individual reminding them that if they fail to cash their check by the 180-day deadline, it will expire and become non-negotiable, and offer to reissue the check if it was lost or misplaced. Any issued checks that are not cashed or deposited after 120 calendar days of issuance, the Settlement Administrator will send a written reminder and make a telephone call to each individual who has an outstanding settlement check reminding them that if they fail to cash their check by the 180-day deadline, it will expire and become non-negotiable, and offer to reissue the check if it was lost or misplaced.

10.4 The payments to Settlement Class Members are fully dependent and conditioned upon a full and complete release of all Released Claims as defined in Section 4.3.

10.5 All funds represented by uncashed checks remaining in the QSF 211 days after CVS funded the QSF shall be tendered to California's Unclaimed Property Fund.

## 11. CONFIDENTIALITY/NON-DISCLOSURE/NO SOLICITATION.

11.1 The Parties will keep the terms of this Agreement confidential until they file their Joint Motion for preliminary approval of the settlement as contemplated by Section 5.5 above. Up through and including Final Approval, Claimants, CVS, and counsel for the respective Parties agree not to issue any press release(s) or otherwise make any public statement about this settlement or its terms, except as required by law to secure approval of this settlement. To the extent Class Counsel or Claimants are approached by outside persons regarding this settlement, they may state, in substance, only that this matter has been resolved. CVS may respond to inquiries from media outlets regarding the settlement by stating, in substance, that the company denies any liability, is committed to complying with the law, and has settled to avoid the burden of continued litigation. CVS may further make public disclosures as required to comply with regulatory disclosure obligations and/or

Generally Accepted Accounting Principles. Notwithstanding the foregoing, nothing herein shall prevent Class Counsel from communicating with members of the Settlement Class about the Parties' settlement or the Agreement, and nothing herein shall prevent CVS from communicating with its current employees on any subject.

11.2 To the extent consistent with professional rules and law, Class Counsel and CVS's Counsel will not solicit or encourage any member of the Pharmacist Settlement Class or the Retail Pharmacy Settlement Class to reject, contest, or opt out of this settlement. Further, to the extent consistent with professional rules and law, up until Final Approval of this settlement, Class Counsel will not represent, encourage, solicit, or otherwise assist any member of the Pharmacist Settlement Class or the Retail Pharmacy Settlement Class who contests the settlement or attempts to litigate with CVS over the Released Claims. Nothing in this Paragraph is intended to prevent or restrain Class Counsel from suggesting to any rejecting, contesting or opting-out member of the Pharmacist Settlement Class or the Retail Pharmacy Settlement Class the option of obtaining separate counsel.

## 12. DOCUMENTS AND DISCOVERY.

Within sixty (60) days after the Settlement Effective Date, Class Counsel shall take steps necessary to destroy or erase all documents and data CVS produced under a protective order to Class Counsel in connection with the Wage and Hour Actions that are currently in Class Counsel's possession, custody, or control. Class Counsel shall certify to CVS in writing they have made good faith efforts to comply with their obligations under this provision. In accordance with the professional rules and law, Class Counsel may retain all papers and property to which the client is entitled, and may keep their own work product and filed briefs and pleadings that may refer to, quote, or incorporate documents and data.

## 13. TERMINATION OF SETTLEMENT AGREEMENT

If five percent (5%) or more of the members of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class, in the aggregate, seek to be excluded from the Parties' settlement, this Agreement shall be voidable at CVS's option, provided that CVS exercises this option no later than fourteen (14) calendar days before the Final Approval Hearing. If CVS exercises its option to void the Agreement pursuant to this Section, CVS, and CVS alone, shall be responsible for any costs incurred to date relating to administration of the Settlement per Section 3.5. In addition, the Agreement shall be null and void and of no effect whatsoever, except for Section 11.1. By signing this Agreement, Claimants agree they will not seek to be excluded from the Parties' settlement.

## 14. ESCALATOR CLAUSE

If the size of the Retail Pharmacy Settlement Class, which CVS represents to be approximately 19,000 individuals, increases by more than ten percent (10%) (*i.e.* by at least 1,900 individuals), Plaintiffs may re-negotiate for an increase in the Maximum Settlement Amount. If this clause is triggered, and the Parties cannot reach agreement on a revised Maximum Settlement Amount within thirty (30) days of Claimants requesting

in writing to renegotiate the Maximum Settlement Amount, the Agreement shall be voidable by Plaintiffs upon seven (7) days written notice to CVS.

## 15. DISPUTES REGARDING ADMINISTRATION OF SETTLEMENT

Any disputes not resolved by the Parties, following a good faith effort to meet and confer, concerning administration of the settlement will be resolved by the Central District of California under the laws of the state of California.

## 16. COMPLETE AGREEMENT.

Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility, therefore. This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

## 17. MODIFICATION OF AGREEMENT

This Agreement, and any and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their counsel of record.

## 18. KNOWING AND VOLUNTARY AGREEMENT

Claimants each agree they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Each further affirms that s/he has not been coerced, threatened, or intimidated into signing this Agreement and that s/he has been advised to and has in fact consulted with an attorney before signing this Agreement. Class Counsel represent that they have conducted a thorough investigation into the facts of the Wage and Hour Cases and have diligently pursued an investigation of the claims asserted on behalf of members of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class against CVS. Based on their own independent investigation and analysis of information provided by CVS, Class Counsel is of the opinion that the settlement with CVS is fair, reasonable, and adequate, and in the best interest of members of the Pharmacist Settlement Class and the Retail Pharmacy Settlement Class, in light of all known facts and circumstances, including the risks of significant delay and defenses asserted by CVS.

## 19. GOVERNING LAW.

This Agreement shall be governed by the laws of California, without regard to that state's choice of law provisions or any other jurisdiction, and, when applicable, the laws of the United States.

EXHIBIT "A"

## 20. EXCLUSIVE AND CONTINUING JURISDICTION

The Parties agree to submit to the exclusive and continuing jurisdiction of the United States District Court for the Central District of California for all purposes relating to the review, approval, and enforcement of the terms of this Agreement, including any post-judgment matters as may be appropriate.

## 21. BINDING ON SUCCESSORS AND ASSIGNS.

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, issue, next-of-kin, executors, administrators, successors, and assigns.

## 22. COUNTERPARTS AND SIGNATURES.

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties. Facsimile or electronic signatures will be accepted and shall be binding on the Parties.

## 23. HEADINGS.

The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

**IN WITNESS WHEREOF,** the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered as of the respective dates written below.

CLASS COUNSEL:

_____
Alexander Krakow + Glick LLP

Dated: 2-28-20

CVS PHARMACY, INC.; CVS RX
SERVICES, INC., AND GARFIELD
BEACH CVS, LLC:

_____

Title: _____

Dated: _____

EXHIBIT "A"

## 20. EXCLUSIVE AND CONTINUING JURISDICTION

The Parties agree to submit to the exclusive and continuing jurisdiction of the United States District Court for the Central District of California for all purposes relating to the review, approval, and enforcement of the terms of this Agreement, including any post-judgment matters as may be appropriate.

## 21. BINDING ON SUCCESSORS AND ASSIGNS.

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, issue, next-of-kin, executors, administrators, successors, and assigns.

## 22. COUNTERPARTS AND SIGNATURES.

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties. Facsimile or electronic signatures will be accepted and shall be binding on the Parties.

## 23. HEADINGS.

The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

**IN WITNESS WHEREOF**, the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered as of the respective dates written below.

CLASS COUNSEL:

CVS PHARMACY, INC.; CVS RX SERVICES, INC., AND GARFIELD BEACH CVS, LLC:

_____

Alexander Krakow + Glick LLP

Title: Senior Vice President

Dated: _____

Dated: 2/25/2020

CLASS COUNSEL:                          CVS'S COUNSEL:

_____                 _____
Clark Law Group                         Greenberg Traurig, LLP

Dated    February 27, 2020              Dated: _____


CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

Dated: _____

CLASS COUNSEL:

_____
BeAcumen Law, Inc.

Dated: February 27, 2020

CLASS COUNSEL:

_____
United Employees Law Group

Dated    Feb 20, 2020


SEAN McCLELLAN    Dated: _____


NICHOLAS GARRETT    Dated: _____

                          35 of 58



EXHIBIT "A"

CLASS COUNSEL:

_____
Clark Law Group

Dated: _____

CVS'S COUNSEL: _____

_____
Greenberg Traurig, LLP

Dated: 3/2/2020


CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

Dated: _____

CLASS COUNSEL:

_____
Boyamian Law, Inc.

Dated: _____

CLASS COUNSEL:

_____
United Employees Law Group

Dated: _____


_____
SEVAG CHALIAN     Dated: _____


_____
SIGFREDO CABRERA   Dated: _____

EXHIBIT "A"

CLASS COUNSEL:                          CVS'S COUNSEL:

_____             _____
Clark Law Group                         Greenberg Traurig, LLP

Dated: _____                  Dated: _____


CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

Dated: 2/26/2020


CLASS COUNSEL:


_____
Boyamian Law, Inc.

Dated: _____


CLASS COUNSEL:


_____
United Employees Law Group

Dated: _____


_____
SEVAG CHALIAN   Dated: _____


_____
SIGFREDO CABRERA  Dated: _____

EXHIBIT "A"

CLASS COUNSEL:                              CVS'S COUNSEL:

_____             _____
Clark Law Group                            Greenberg Traurig, LLP

Dated: _____              Dated: _____


CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

Dated: _____


CLASS COUNSEL:

_____
Boyamian Law, Inc.

Dated: _____


CLASS COUNSEL:

_____
United Employees Law Group

Dated: _____

_____
SEVAG CHALIAN   Dated: __2/27/2020__

_____
SIGFREDO CABRERA  Dated: _____

EXHIBIT "A"

CLASS COUNSEL:                          CVS'S COUNSEL:

_____             _____
Clark Law Group                         Greenberg Traurig, LLP

Dated: _____              Dated: _____


CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

Dated: _____

CLASS COUNSEL:

_____
Boyamian Law, Inc.

Dated: _____

CLASS COUNSEL:

_____
United Employees Law Group

Dated: _____

_____
SEVAG CHALIAN    Dated: _____

_____
SIGFREDO CABRERA    Dated: 2/26/2020

ENKO TELAHUN    Dated: 2-21-20

CHRISTINE MCNEELY Dated:_____

PATRICK BRENNAN Dated:_____

MAY ELDANDAF    Dated:_____

EXHIBIT "A"

ENKO TELAHUN     Dated: _____

CHRISTINE MCNEELY Dated: _2/24/20_

PATRICK BRENNAN Dated: _____

MAY ELDANDAF     Dated: _____

EXHIBIT "A"

ENKO TELAHUN    Dated:_____

CHRISTINE MCNEELY Dated:_____

PATRICK BRENNAN Dated:  2/24/2020

MAY ELDANDAF    Dated:_____

EXHIBIT "A"

ENKO TELAHUN          Dated: _____

CHRISTINE MCNEELY Dated: _____

PATRICK BRENNAN Dated: _____

MAY ELDANDAF     Dated: 02/27/2020

EXHIBIT "A"

# FIRST AMENDMENT TO GLOBAL SETTLEMENT AGREEMENT

This First Amendment to Global Settlement Agreement ("**Amendment**") is made and entered into by and between Claimants Sevag Chalian, Sigfredo Cabrera, Enko Telahun, Christine McNeely, Patrick Brennan, and May Eldanaf (together, "**Claimants**"), on behalf of themselves and on behalf of the putative class members proposed in the Global Settlement Agreement, on the one hand, and CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS, LLC ("**CVS**") and the Released Parties as defined in the Global Settlement Agreement, including but not limited to CVS parents companies, subsidiaries, and affiliates, on the other, and Alexander Krakow & Glick, the Law Offices of Thomas W. Falvey, Boyamian Law, Inc., Clark Law Group and United Employees Law Group (collectively, "**Class Counsel**," and together with Claimants and CVS, the "**Parties**") pursuant to Paragraph 17 of the Global Settlement Agreement.

WHEREAS, on March 2, 2020, the Parties entered into the Global Settlement Agreement;

WHEREAS, Paragraph 14 of the Global Settlement Agreement provides that if the size of the Retail Pharmacy Settlement Class, as defined in the Global Settlement Agreement, increases by more than ten percent (10%) (*i.e.*, by at least 1,900 individuals (or more than 20,900 individuals), Plaintiffs may re-negotiate for an increase in the Maximum Settlement Amount, as defined in the Global Settlement Agreement;

WHEREAS, on September 18, 2020, Class Counsel notified counsel for CVS that Plaintiffs wished to re-negotiate for an increase in the Maximum Settlement Amount pursuant to Paragraph 14 of the Global Settlement Agreement because the Retail Pharmacy Settlement Class size had increased by more than ten percent (10%);

WHEREAS, at arm's length, the Parties subsequently negotiated an increase in the Maximum Settlement Amount;

WHEREAS, Paragraph 17 of the Global Settlement Agreement provides that the Global Settlement Agreement may be amended by an express written instrument signed by all Parties or their counsel of record;

NOW, THEREFORE, pursuant to Paragraph 17 of the Global Settlement Agreement, the Parties agree that Paragraph 3.1 of the Global Settlement Agreement is amended to read: "The Maximum Settlement Amount is equal to Ten Million Three Hundred Seventy-One Thousand Three Hundred and Forty-Six Dollars and Sixty Cents ($10,371,346.60 U.S.D.)."

Furthermore, Paragraph 16 of the Global Settlement Agreement is amended to read: "Other than as stated herein and in the First Amendment to Global Settlement Agreement, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility, therefore. This Agreement and the First Amendment to Global Settlement Agreement contain and constitute the entire understanding and agreement between the Parties and supersede all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties."

All other provisions of the Global Settlement Agreement remain the same.

**IN WITNESS WHEREOF,** the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered as of the respective dates written below.

CLASS COUNSEL:

_Michael Morrison_

Alexander ~~Krakow~~ + ~~Glick~~ LLP
Morrison +Fehr

Dated: 11/6/20

CLASS COUNSEL:

Clark Law Group

Dated: _____

CLASS COUNSEL:

The Law Office of Thomas W. Falvey

Dated: _____

CLASS COUNSEL:

Boyamian Law, Inc.

Dated: _____

CLASS COUNSEL:

CVS PHARMACY, INC.; CVS RX SERVICES, INC., AND GARFIELD BEACH CVS, LLC:

_Colleen Nihill_

Title: Senior Vice President

Dated: 11 6 2020

CVS'S COUNSEL:

_James N. Boudreau_

Greenberg Traurig, LLP

Dated: 11/6/2020

3 of 4

EXHIBIT "A"

EXHIBIT "A"

**IN WITNESS WHEREOF,** the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered as of the respective dates written below.

CLASS COUNSEL:

_____
Alexander Krakow + Glick LLP

Dated: _____

CLASS COUNSEL:

_____
Clark Law Group

Dated: _____

CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

Dated: _____

CLASS COUNSEL:

_____
Boyamian Law, Inc.

Dated: _____

CLASS COUNSEL:

CVS PHARMACY, INC.; CVS RX
SERVICES, INC., AND GARFIELD
BEACH CVS, LLC:

_____

Title: _Senior Vice President_

Dated: _11 / 6 / 20 20_

CVS'S COUNSEL:

_James N. Boudreau_
_____
Greenberg Traurig, LLP

Dated: _____11/6/2020_____

United Employees Law Group

Dated:_____

_____
SEVAG CHALIAN

_____
SIGFREDO CABRERA

_____
ENKO TELAHUN

_____
CHRISTINE MCNEELY

_____
PATRICK BRENNAN

_____
MAY ELDANDAF

EXHIBIT "A"

# SECOND AMENDMENT TO
# GLOBAL SETTLEMENT AGREEMENT

## SECOND AMENDMENT TO GLOBAL SETTLEMENT AGREEMENT

This Second Amendment to Global Settlement Agreement ("**Second Amendment**") is made and entered into by and between Claimants Sevag Chalian, Sigfredo Cabrera, Enko Telahun, Christine McNeely, Patrick Brennan, and May Eldanaf (together, "**Claimants**"), on behalf of themselves and on behalf of the putative class members proposed in the Global Settlement Agreement, on the one hand, and CVS Pharmacy, Inc., CVS Rx Services, Inc., and Garfield Beach CVS, LLC ("**CVS**") and the Released Parties as defined in the Global Settlement Agreement, including but not limited to CVS parents companies, subsidiaries, and affiliates, on the other, and Alexander Krakow & Glick [now Alexander Morrison +Fehr LLP], the Law Offices of Thomas W. Falvey, Boyamian Law, Inc., Clark Law Group and United Employees Law Group (collectively, "**Class Counsel**," and together with Claimants and CVS, the "**Parties**") pursuant to Paragraph 17 of the Global Settlement Agreement.

WHEREAS, on March 2, 2020, the Parties entered into the Global Settlement Agreement;

WHEREAS, on February 18, 2021, in connection with its review of the Parties' proposed settlement, the United States District Court for the Central District of California issued an order seeking clarification on the release set forth in the Global Settlement Agreement (ECF 231); and

WHEREAS, Paragraph 17 of the Global Settlement Agreement provides that the Global Settlement Agreement may be amended by an express written instrument signed by all Parties or their counsel of record;

NOW, THEREFORE, as of March 19, 2021, pursuant to Paragraph 17 of the Global Settlement Agreement, the Parties agree that Paragraph 4.3 of the Global Settlement Agreement is hereby deleted and replaced by the following:

**Release by Settlement Class Members**. As of the Settlement Effective Date, all Settlement Class Members (including Claimants) forever, fully, irrevocably and unconditionally release and discharge the Released Parties from all claims, causes of action, and legal theories of relief that were alleged or that could have been alleged or otherwise raised in Wage and Hour Actions, from August 3, 2014 until the date of the Preliminary Approval Order for Retail Pharmacy Settlement Class members and from July 20, 2012 until the date of the Preliminary Approval Order for Pharmacist Class members (whichever period is longer if a Settlement Class Member is a member of both the Retail Pharmacy and Pharmacist Classes) (the "Released Claims"). The Released Claims include, but are not limited to: (a) failure to pay minimum wages; (b) failure to pay overtime wages; (c) failure to pay all wages or amounts due under the Labor Code and/or federal Fair Labor Standards Act; (d) failure to comply with Labor Code Sections 850, 851, 851.5, 852 and/or 29 U.S.C. § 201 et seq.; (e) failure to provide proper meal periods, or premium pay for non-compliant meal periods; (f) failure to authorize and permit rest periods, or premium pay for non-compliant rest periods; (g) failure to provide complete, accurate, and/or properly formatted wage statements; (h) failure to reimburse all necessary business expenses; (i) failure to timely pay wages due or final wages due; (j) all claims under the California Private Attorneys General Act of 2004 ("PAGA") that were or could have been asserted based on the facts, claims, causes of action or legal theories described above or on any of the claims, causes of action, facts or legal theories of relief pleaded in the Wage and Hour Actions; and (k) all damages, penalties, including penalties under Labor Code Sections 203 and 558, interest, costs (including attorney's fees) and other amounts recoverable under said claims or causes of action as to the facts and/or legal theories alleged or which could have been alleged in the operative complaint. This Release applies only to claims, whether asserted or unasserted, based on the same factual predicate underlying the claims asserted in the Wage and Hour Actions. The period of the Released Claims shall extend to the date of the Preliminary Approval Order.

All other provisions of the Global Settlement Agreement will remain the same.

**IN WITNESS WHEREOF,** the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered.

CLASS COUNSEL:

_Muhl Mon_
Alexander Morrison + Fehr LLP

CVS PHARMACY, INC.; CVS RX SERVICES, INC., AND GARFIELD BEACH CVS, LLC:

_____

Title: _____

CLASS COUNSEL:

_____
Clark Law Group

COUNSEL FOR DEFENDANTS:

_____
Greenberg Traurig, LLP

CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

CLASS COUNSEL:

_____
Boyamian Law, Inc.

CLASS COUNSEL:

_____
United Employees Law Group

**IN WITNESS WHEREOF,** the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered as of the respective dates written below.

CLASS COUNSEL:

_____
Alexander Morrison + Fehr LLP

CVS PHARMACY, INC.; CVS RX
SERVICES, INC., AND GARFIELD
BEACH CVS, LLC:

_____

Title: SVP, Corporate Secretary and Assistant
General Counsel

CLASS COUNSEL:

_____
Clark Law Group

COUNSEL FOR DEFENDANTS:

_____
Greenberg Traurig, LLP

CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

CLASS COUNSEL:

_____
Boyamian Law, Inc.

CLASS COUNSEL:

_____
United Employees Law Group

**IN WITNESS WHEREOF,** the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered.

CLASS COUNSEL:

_____

Alexander Morrison + Fehr LLP

CVS PHARMACY, INC.; CVS RX SERVICES, INC., AND GARFIELD BEACH CVS, LLC:

_____

Title: _____

CLASS COUNSEL:

_____

Clark Law Group

COUNSEL FOR DEFENDANTS:

_____

Greenberg Traurig, LLP

CLASS COUNSEL:

_____

The Law Office of Thomas W. Falvey

CLASS COUNSEL:

_____

Boyamian Law, Inc.

CLASS COUNSEL:

_____

United Employees Law Group

**IN WITNESS WHEREOF,** the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered.

CLASS COUNSEL:

CVS PHARMACY, INC.; CVS RX SERVICES, INC., AND GARFIELD BEACH CVS, LLC:

_____
Alexander Morrison + Fehr LLP

Title: _____

CLASS COUNSEL:

COUNSEL FOR DEFENDANTS:

_____
Clark Law Group

_____
Greenberg Traurig, LLP

CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

CLASS COUNSEL:

_____
Boyamian Law, Inc.

CLASS COUNSEL:

_____
United Employees Law Group

**IN WITNESS WHEREOF,** the Parties, Class Counsel and CVS's counsel each voluntarily and without coercion cause this Agreement to be signed and entered.

CLASS COUNSEL:

_____
Alexander Morrison + Fehr LLP

CVS PHARMACY, INC.; CVS RX SERVICES, INC., AND GARFIELD BEACH CVS, LLC:

_____

Title: _____

CLASS COUNSEL:

_____
Clark Law Group

COUNSEL FOR DEFENDANTS:

_____
Greenberg Traurig, LLP

CLASS COUNSEL:

_____
The Law Office of Thomas W. Falvey

CLASS COUNSEL:

_____
Boyamian Law, Inc.

CLASS COUNSEL:

_____
United Employees Law Group